```
 1                    UNITED STATES DISTRICT COURT

 2               FOR THE MIDDLE DISTRICT OF ALABAMA

 3                         NORTHERN DIVISION

 4

 5   ADIN GESS, et al.,

 6          Plaintiffs,

 7      vs.                        CASE NO.: 2:24cv134-ECM

 8   BAM TRADING SERVICES, INC.,
     et al.,
 9
            Defendants.

10

11                  *  *  *  *  *  *  *  *  *  *

12                         MOTION HEARING

13                  *  *  *  *  *  *  *  *  *  *

14          BEFORE THE HONORABLE CHAD W. BRYAN, UNITED STATES

15   MAGISTRATE JUDGE, at Montgomery, Alabama, on Tuesday, October

16   22, 2024, commencing at 10:14 a.m.

17                            APPEARANCES:

18   FOR THE PLAINTIFFS:     Mr. David I. Schoen
                             THE LAW OFFICE OF DAVID SCHOEN
19                           2800 Zelda Road, Suite 100-6
                             Montgomery, Alabama  36106
20
                             Mr. Ben Schlager
21                           GOLDFEDER and TERRY, LLC
                             666 Harless Place
22                           West Hampstead, New York  11552

23                           Mr. Mark Goldfeder
                             NATIONAL JEWISH ADVOCACY CENTER, INC.
24                           1718 General George Patton Drive
                             Brentwood, Tennessee  37027

25
```

APPEARANCES, continuing:

| | |
|---|---|
| FOR DEFENDANT<br>BAM TRADING SERVICES,<br>INC.: | Mr. Kenneth D. Sansom<br>SPOTSWOOD, SANSOM & SANSBURY, LLC<br>505 20th Street North, Suite 700<br>Birmingham, Alabama  35203 |
| FOR DEFENDANT<br>BINANCE HOLDINGS, LTS,<br>and CHANGPENG ZHAO: | Mr. Samson Aaron Enzer<br>CAHILL GORDON & REINDELL, LLP<br>32 Old Slip<br>New York, New York  10005 |
| | Mr. Harlan I. Prater, IV<br>Ms. Mary P. McCracken<br>LIGHTFOOT FRANKLIN & WHITE<br>400 20th Street North<br>Birmingham, Alabama  35203 |

Proceedings recorded by digital sound recording;
transcript produced by stenography and computer.

* * * * * * * * * *

(The following proceedings were heard before the Honorable
Chad W. Bryan, United States Magistrate Judge, at Montgomery,
Alabama, on Tuesday, October 22, 2024, commencing at
10:14 a.m.:)

(Call to order of the court)

THE COURT:  Good morning, everybody.  You may not be
able to tell, but I have what is likely to be the world's
largest walking boot on, but you probably noticed I had a
little bit of difficulty coming in this morning.  All I can say
is sometimes these hearings do get a little out of hand, but
hopefully everybody will be well-behaved today.

MR. SCHOEN:  Your Honor, I know that they can only
hear us if we're at the podium.  I just want to make sure they

1    can hear the Court.

2         THE COURT:  I believe so.

3              Ms. Strong, isn't that the arrangement?

4              And can everyone on the Zoom hear me?

5         MR. SCHLAGER:  Yes.

6         MR. GOLDFEDER:  We hear you, Your Honor.

7         THE COURT:  Okay.  And, Ms. Strong, do we have FTR up

8    and running?

9         COURTROOM DEPUTY STRONG:  Yes, sir.

10        THE COURT:  We are here this morning in the matter of

11   Gess and others versus BAM Trading Services, Inc., d/b/a

12   Binance U.S., Binance Holdings Limited d/b/a Binance, and

13   ChangPeng Zhao.  And our Case Number is 24cv134.

14              The Court set this hearing on the defendants' --

15   or the foreign defendants' -- which would be Binance Holdings

16   Limited, which I'll refer to today as Binance, and ChangPeng

17   Zhao, who, obviously, I will refer to as Mr. Zhao -- the motion

18   to transfer to Southern District of New York.  That is in the

19   record I believe as Document 31.  Those parties requested that

20   the matter be set for oral argument.  And after the Court's

21   preliminary status conference by telephone, the Court concluded

22   that oral argument would be beneficial and appropriate.

23              So let's begin the proceedings today by making

24   sure we've got a clear record as to who is in attendance, who

25   is representing which party, and then who we have participating

1    remotely via Zoom.

2              So let's begin with counsel for the plaintiffs.

3         MR. SCHOEN:  Yes, Your Honor.  I'm David Schoen

4    representing the plaintiffs.  And on Zoom with me is Mark

5    Goldfeder and Ben Schlager.

6         THE COURT:  All right.  And could you -- I only have

7    one name.  I have Mr. Goldfeder's name.  So good morning to

8    you, sir.

9              And I'm sorry.  Who else, Mr. Schoen?

10        MR. SCHOEN:  Ben Schlager is the fellow on the -- on

11   our screen, top right corner.

12        THE COURT:  If you would raise your hand, please, sir,

13   just so I can make sure I'm identifying you correctly.  And is

14   the last name --

15        MR. SCHOEN:  S-C-H-L-A-G-E-R.

16        THE COURT:  Okay.  Schlager.

17        MR. SCHOEN:  Yes, sir.

18        THE COURT:  All right.  Thank you, Mr. Schoen.

19              Who do we have for Binance?

20        MR. PRATER:  May it please the Court, Harlan Prater

21   and Mary Parrish McCracken from Lightfoot, Franklin & White.

22   And appearing remotely, and who will be taking the lead for

23   Binance Holdings Limited and Mr. Zhao, is Samuel Enzer with the

24   Cahill Gordon firm in New York.

25        MR. ENZER:  Good morning, Your Honor.

1          THE COURT:  Good morning, counsel.

2          MR. PRATER:  Good morning.

3          THE COURT:  Good morning to you, Mr. Enzer.

4              And, Mr. Prater, how do you pronounce the

5    individual defendant's name?  I may have said it incorrectly.

6    I want to make sure that I say it correctly.

7          MR. PRATER:  I pronounce it Zhao, but I'll defer to

8    Mr. Enzer about that.

9          MR. ENZER:  It's -- it's Mr. Zhao, and he goes -- we

10   can also call him CZ.  That's his nickname.

11         THE COURT:  CZ or Zhao.

12             All right.  Good morning to each of you.

13             And who do we have present for BAM?

14         MR. SANSOM:  Good morning, Your Honor.  I'm Kenneth

15   Samson for BAM.  I go by Ken.  And I'm sole counsel today for

16   BAM.

17         THE COURT:  Okay.  So you don't have anyone -- well, I

18   guess we're out of people on Zoom.  So you're --

19         MR. SANSOM:  Yes, Your Honor.

20         THE COURT:  All right.  And I note there's a lot at

21   stake here.  And I'm going to give everybody as much time as

22   they want and need to talk through these issues; but because of

23   the logistics and ensuring that everyone who is participating

24   virtually is able to hear, let's try to avoid a scenario where

25   we're interjecting when the other side is speaking,

1  particularly given that I don't believe they will be able to

2  hear anything unless we're -- counsel is at the lectern.

3           I've spent a good deal of time going through the

4  filings on this issue.  And I say this to say the briefing here

5  has been very good.  It's been very helpful.  So I don't know

6  that we need really to lay out, start-to-finish, the arguments,

7  but I do want to give each side a moment at the beginning to

8  just summarize their main points, and then we'll get into some

9  discussion with issues that have been raised regarding the

10  other side's position and some questions and concerns and

11  suggestions the Court has.

12           I want to speak first, though, to BAM, who, as I

13  understand it, has not joined in the motion.

14           MR. SANSOM:  Good morning, Your Honor.

15           THE COURT:  Good morning.

16           And so that's correct?  At this point, BAM is not

17  taking the position -- or taking a position in support of

18  transfer; is that correct?

19           MR. SANSOM:  We do not object to transfer of the

20  entire case, including our client, to New York.  And that is

21  our position.

22           THE COURT:  Okay.  Well, and that was my understanding

23  is you're not affirmatively asserting the position in favor of

24  transfer, but you're not, conversely, asserting the position

25  where you don't want the case to be transferred.

1    MR. SANSOM:  Well, we -- we did not join the transfer

2 motion, but we would be in favor of transfer of the -- of the

3 whole case to New York, if that's what happens.

4    THE COURT:  Okay.  And let me ask, since so much of

5 what we're going to be talking about today involves personal

6 jurisdiction and how personal jurisdiction may be asserted --

7 or may be absent with respect to the foreign defendants -- does

8 BAM have any personal jurisdiction arguments that it plans to

9 assert either in this court or in the Southern District of New

10 York if the case is transferred to that court?

11    MR. SANSOM:  I think the answer is almost certainly in

12 this court, Your Honor.  So I think we anticipate almost

13 certainly challenging personal jurisdiction in this court.  I

14 do not know the answer for New York.

15    THE COURT:  And I understand that that issue is not

16 before the Court at this time.  It hasn't been formally

17 asserted.  It hasn't been briefed.  But in a nutshell, to help

18 me understand how that piece of the puzzle fits in, what would

19 the essential nature of the argument against personal

20 jurisdiction be?

21    MR. SANSOM:  In this court.  So we don't think there's

22 general personal jurisdiction under the *Daimler* criteria.  We

23 don't think that there would be specific personal jurisdiction

24 for lack of connection between the con- -- any contacts that

25 our client does have with Alabama and the alleged facts of the

1    case.  And then I guess the third piece these days is the

2    *Mallory* case piece, which involves registration.  And -- and we

3    think that Alabama law here would not make that an obstacle

4    moving to dismiss for lack of personal jurisdiction.

5         THE COURT:  All right.  So that is something you would

6    intend to take up here, but if I heard you correctly, you're

7    uncertain as to whether any or all of those arguments would be

8    pursued if this case were proceeding against BAM in the

9    Southern District of New York?

10        MR. SANSOM:  That's correct, Your Honor.  I'd have to

11   go back and get some answers on that.

12        THE COURT:  And then in terms of what I've seen -- and

13   I haven't undertaken to review all of the briefing in the New

14   York case by any means; but it does appear that the foreign

15   defendants, in addition to jurisdictional arguments in that

16   court, have raised 12(b)(6) arguments.

17        Does BAM anticipate raising 12(b)(6) arguments

18   either here or in New York once the case is proceeding?

19        MR. SANSOM:  Yes, Your Honor, I anticipate we will.

20        THE COURT:  Okay.  I think those are my questions for

21   BAM at this point in time.  But some of the issues that I may

22   be discussing with the other parties may tie in, to some

23   extent, with how a stay or how a transfer or how a denial of

24   the transfer motion would potentially affect the case under

25   various scenarios.  So having some idea as to how the case

1  would likely move forward as to BAM, whether it be here or

2  whether it be in New York, is very helpful, and that's why I

3  wanted to go ahead and get that frame of reference going in.

4          MR. SANSOM:  Yes, Your Honor.

5          THE COURT:  So you may be seated.

6          MR. SANSOM:  Thank you.

7          THE COURT:  When I set this hearing today, I thought

8  we would take up first the issue of whether to stay proceedings

9  or hold the transfer issue in abeyance until there is a

10  decision in New York.  As I sat down to outline my thoughts on

11  the matter, generally it seemed to me that a lot of the

12  considerations regarding a stay or abeyance really tie in to

13  the underlying issue of how a case would proceed here, how it

14  would proceed in New York, and what would happen if personal

15  jurisdiction is or isn't determined to apply in New York.

16          So I don't necessarily want to separate it out,

17  but I do want, Mr. Prater, at the outset to get a response from

18  you on the position asserted by plaintiffs' counsel that when

19  this matter was discussed and there was a schedule determined

20  for briefing -- and I do understand and acknowledge in the

21  briefing, you were transparent and candid that you intended to

22  challenge jurisdiction in the Southern District of New York.

23  So that's not really my concern.  My concern is how do you

24  respond to the argument that, well, this should have been

25  discussed when we were agreeing to allow this period of time

1    for briefing; we weren't contemplating that.  Well, at the

2    conclusion of that briefing, you would then be seeking for

3    additional time for the case to be withheld here and the view

4    that maybe you weren't entirely transparent with that intention

5    at the outset.

6            MR. PRATER:  Yes, Your Honor.  May it please the

7    Court.  Harlan Prater.

8                Your Honor, particularly at these preliminary

9    stages, we have been local counsel for the Cahill Gordon firm

10   primarily because they already have litigation like this

11   pending in the Southern District of New York in which they are

12   participating on behalf of Binance Holdings and Mr. Zhao.  So I

13   would like to defer your question to Mr. Enzer, who will be

14   making the argument for our clients today.

15           THE COURT:  And thank you for that, Mr. Prater.  It

16   did occur to me that you, in introducing Mr. Enzer, indicated

17   that he would be taking the lead today.  It's simply I'm

18   looking at who's in the courtroom, and sometimes I forget that

19   I've got other people here on the screen.

20           MR. PRATER:  Perfectly fair and understandable.  And

21   I'll now sit down and not be white anymore.

22           THE COURT:  And, Mr. Prater, I have always, as a

23   lawyer, been very good at deflecting the court to another

24   lawyer to answer questions.  I appreciate that strategy.

25           MR. PRATER:  How did I do?

 1          THE COURT:  We'll have to wait and see.

 2          MR. PRATER:  Fair enough.

 3          THE COURT:  It's the whole body of work that's going

 4   to be relevant today.

 5          MR. PRATER:  Thank you, Your Honor.

 6          THE COURT:  So, Mr. Enzer, what is the position, then,

 7   because I obviously wasn't privy to those discussions, but I do

 8   see Mr. Schoen's point of perhaps the plaintiffs would not have

 9   been so agreeable or accommodating if they knew going in that

10   they were essentially buying time -- or the defendants were

11   essentially buying time and then they were going to ask to buy

12   more time?

13          MR. ENZER:  Certainly, Your Honor.  And happy to be in

14   the hot seat here to receive the question.

15          Let me -- we certainly did not intend to mislead

16   anyone.  And I believe we were fully transparent about our

17   intentions in terms of raising a personal jurisdiction

18   challenge if the case was transferred.  Let me just back up and

19   put some context on this.

20          I think, first of all, it's important to note

21   that my clients, the foreign defendants, Binance Holdings

22   Limited and Mr. Zhao, are foreigners.  Mr. Zhao is a foreign

23   citizen, and he is currently abroad.  Binance Holdings Limited

24   is a foreign company.  They were not served in this case.

25          And so it's important to take a step back and

1  note that the context of this stipulation, we were not trying

2  to delay this case.  If we were trying to delay this case, we

3  would not have entered into a stipulation to come to court,

4  answer the charges, and begin to participate in the process.

5  We could have sat back and waited for the plaintiffs to serve

6  us.  They didn't.  Instead, they decided that it was more

7  expedient -- and, indeed, it was more expedient -- for us to

8  enter into an arrangement where we would, for efficiency sake,

9  stay discovery, tee up the issue of whether transfer was

10 appropriate for the efficiency of the parties, the Court,

11 witnesses and others, and then litigate in an appropriate way

12 with the least resource intensive manner for the Court and the

13 parties if that were to happen.  So we were not trying to delay

14 anything here.

15             And it was contemplated in the stipulation, which

16 plaintiffs agreed to, that there would be a stay of discovery

17 while the Court decided the motion to transfer.  Indeed, I'm

18 sure plaintiffs understood when they agreed to that that the

19 Court -- we have no power or ability to make the Court rush to

20 a judgment on that.  The Court could have taken a year to

21 decide that, two years.

22             And so our request that the -- that the Court

23 hold this motion in abeyance while we wait to see what happens

24 on the ruling and the motion to dismiss in the Raanan case in

25 the Southern District of New York is in no way prejudicial to

1  the plaintiffs and certainly was not intended in any way to

2  mislead them.  We would expect that they contemplated the risk

3  of delay of a -- of a ruling on the motion to transfer when

4  they entered into the stipulation, as plaintiffs' counsel are

5  very sophisticated.

6           Now, in -- in terms of the -- the issue of

7  whether that is practical -- whether that is practical, we

8  think it makes perfect sense and, indeed, will not cause undue

9  delay here.  In -- in the -- in the Raanan case, the motion to

10 dismiss, which Your Honor, it sounds like, has looked at, was

11 fully briefed as of -- as of August 2nd.  So it's been fully

12 briefed for almost three months now.  We would expect a ruling

13 on that either at the -- either later this year or early next

14 year at the latest.  Obviously, I cannot -- I don't have a

15 crystal ball, but that is my expectation from how Judge Koeltl

16 usually runs things.

17          And as an additional factor -- factor to think

18 that we could get a ruling soon, there is -- as I mentioned at

19 the last call before Your Honor, there is another case that's

20 now been filed, Troell versus Binance.  It also asserts

21 Antiterrorism Act claims against Binance Holdings Limited and

22 Mr. Zhao.  It is not as closely related to the Raanan and Gess

23 cases in that Raanan and Gess are both predicated on a single

24 terrorist attack, the October 7, 2023, attacks, whereas the

25 Troell case involves Antiterrorism Act allegations arising from

1    a number of attacks.  I believe approximately 17 different

2    attacks, including the October 7 attacks.

3             But in any event, that case is before Judge

4    Rakoff in the Southern District of New York.  His Honor has set

5    a briefing schedule for our motion to dismiss.  So our motion

6    to dismiss in that case is due November 1.  It will be fully

7    briefed as of November 22nd.  And there will be a hearing on

8    that motion before Judge Rakoff on November 27th, and a final

9    pretrial conference has been set for June 26 of next year

10   before Judge Rakoff.

11            And if you're not -- Your Honor is not familiar

12   with Judge Rakoff, he is colloquially known as a rocket docket

13   judge.  He frequently sets a very rapid trial date and does not

14   move it.  And so we -- we know that Judge Rakoff is aware of

15   the Raanan case and we know that Judge Koeltl, who has the

16   Raanan case, is aware of the Troell case because they decided

17   that the two were not related enough to transfer Troell to

18   Judge Koeltl for the Raanan action.  But in any event, they are

19   both aware of that.  That conversation, I'm sure, reminded

20   Judge Koeltl about the pending motion to dismiss, as did a

21   recent letter we filed a few days ago letting him know about

22   this proceeding about the -- the motion to transfer.

23            And so given that Judge Rakoff will likely issue

24   a motion to dismiss ruling soon, the fact that we've had a

25   fully briefed motion to dismiss brief in front of Judge Koeltl

1    for three months, I -- I would expect that we will soon get a

2    ruling on -- on that.  And -- and for efficiency sake and

3    prudential reasons, you know, if the -- if the -- if the motion

4    to dismiss is granted and the Raanan action is dismissed, as we

5    say in our papers, we will withdraw our motion to transfer and

6    we'd be happy to litigate this case here if the Raanan case

7    gets dismissed; but if it's not, then we would ask that the

8    Court transfer the case.

9              And -- and if Judge  Koeltl determines that

10   there's personal jurisdiction in the Southern District of New

11   York, that resolves the principal objection that the plaintiffs

12   have asserted, which is the concept of whether or not this

13   action, quote, might have been brought in the Southern District

14   of New York within the meaning of the venue statute -- venue

15   transfer statute, 1404(a).

16        THE COURT:  Since you brought up the new case, is it

17   pronounced Troell or Troell?

18        MR. ENZER:  I'm not sure, Your Honor.  I call it

19   Troell.

20        THE COURT:  Okay.  Well, I'm going to call it Troell,

21   then.

22              When you say that there are motions to dismiss

23   being briefed and that there's a hearing coming up in a few

24   weeks, will that motion include the same jurisdictional --

25   personal jurisdiction arguments that are currently pending in

1    the Raanan case?

2         MR. ENZER:  I -- I -- we're not sure, Your Honor.  I'm

3    not -- I'm -- I'm not sure if we're going to argue personal

4    jurisdiction.  I do expect we would argue 12(b)(6) -- we would

5    make 12(b)(6) arguments, including arguments based on a Supreme

6    Court's decision in Twitter; but I -- I'm not sure yet and

7    don't have client authorization to comment today on whether we

8    would argue personal jurisdiction in Troell.

9         THE COURT:  Understood that that decision hasn't been

10   made yet as a matter of strategy.  I was just trying to figure

11   out if there were likely to be, even though they're in the same

12   court, two judges in two different cases looking at the

13   jurisdictional issue.  Because one of the arguments, as I

14   understand it, that you're making, if not maybe the crux of

15   your entire argument, is efficiency.  And if we're going to

16   have two courts already weighing in on that issue, it seems to

17   me less compelling then that this Court should sit back to not

18   require duplication of effort if that's being done elsewhere.

19         So at this point, there is not a pending motion

20   to dismiss based on personal jurisdiction in the Troell case;

21   is that right?

22         MR. ENZER:  Yeah.  And, Your Honor, I'll give you two

23   pieces of information that bear on the point you just raised.

24         So one is as a factual matter.  In the Troell

25   case, the plaintiffs purported to serve a Binance Holdings

1    employee in -- in New York.  So there's a Binance Holdings

2    employee who was physically in New York and he was personally

3    handed a copy of the papers.  And so that may influence whether

4    or not the personal jurisdiction issue is raised there.  In

5    other words, it's differently situated than Raanan and Gess,

6    but no decisions are made.  I should also say that the only

7    purported service is on Binance Holdings Limited and not

8    Mr. Zhao.  He has not appeared in -- in the Troell case, and I

9    don't represent him in the Troell case.

10           And as to your point, Your Honor, about the

11   efficiencies, I -- I think there's two issues, really.  There's

12   efficiency, and then there's the risk of inconsistent rulings.

13   In terms of the risk of inconsistent rulings, both Judge Rakoff

14   and Judge Koeltl are bound by Second Circuit law.  And so I

15   think the risk of inconsistent rulings is lower in having two

16   judges there bound by the same circuit law looking at Twitter

17   and making other decisions about the merits of whether the --

18   the case is sufficiently pled or whether jurisdiction exists as

19   opposed to a court in the Eleventh Circuit, which may be bound

20   by a different law to the extent that the Eleventh Circuit is

21   different than the Second Circuit might be.

22           And then in -- in terms of efficiencies, it -- it

23   is true that no matter what, we're going to have some

24   incremental inefficiency in that -- in that Raanan and Troell

25   are not going to be before the same judge.  We asked for them

1  to be before the same judge.  That was denied.  So there is

2  some incremental inefficiency there.  But what I would submit,

3  respectfully, Your Honor, is that's not a reason to increase

4  the incremental efficiency by having yet a third judge have to

5  master these issues, rule on these issues, and subjecting the

6  witnesses, who may be common to all three cases, get deposed or

7  have to testify at trial in three separate cases, two of

8  which -- one of which is in, you know, a different part of the

9  country.

10         THE COURT:  And to back up -- and then I think we'll

11  be done with the Troell case -- you indicated there was a

12  specific individual who was personally served in New York?

13         MR. ENZER:  That's correct, Your Honor.  An employee

14  of Binance Holdings Limited.

15         THE COURT:  Okay.  And that was going to be my

16  question.  I assume that that would be an agent or employee,

17  someone connected to the corporate defendant.  I was just

18  trying to understand the potential impact that could have on a

19  personal jurisdiction argument.

20             But at this point in the Raanan case, you don't

21  have any indication from the court as to when a determination

22  on the issue may be entered?

23         MR. ENZER:  That's correct, Your Honor.

24         THE COURT:  Has there been or is there likely to be

25  any jurisdictional discovery in the Raanan case?  I saw that

1    there was -- in some of the attachments filed here, that there

2    was some discussion about potential jurisdictional discovery.

3    Maybe that was even being requested of the court.  But as I

4    take it from your argument, everything has been briefed up and

5    is pending decision.  So I assume there's no jurisdictional

6    discovery that may hang that decision up.

7         MR. ENZER:  That's correct, Your Honor.  There was --

8    our -- our motion, as you may recall from reading it, focused

9    on the sufficiency of the pleading in terms of whether the

10   plaintiff, in the four corners of their pleading, had alleged

11   jurisdiction.  We say they haven't; they say they have.  So

12   it's a legal issue.  They requested jurisdictional discovery.

13   That was de- -- or their request to submit briefing for

14   personal jur- -- for discovery into jurisdiction was denied.

15        Now, so for -- I don't expect any reason why --

16   there is no discovery in that case right now.  It's been stayed

17   by order of the court and stipulation of the parties.  And I

18   don't expect any reason why there would be jurisdiction to hold

19   up a ruling or delay a ruling on the motion to dismiss.  I

20   think if the -- if Judge Koeltl -- depending on what His Honor

21   says in his ruling, it may be that there's something in his

22   ruling on jurisdiction that leads to discovery later, but in

23   terms of what -- the timing of a ruling, there is no discovery

24   happening in that case right now.  The -- it -- the -- the ball

25   is in the judge's court.

1    THE COURT:  And I did see in the Raanan case how you

2    framed your argument on personal jurisdiction and that it -- it

3    was a relatively brief argument.  And as I recall it, it was

4    constrained to the issue you just identified, how the complaint

5    was pled.  I did not look on the docket and pull any additional

6    documents or filings to see if that argument morphed into a

7    different argument, but what I understand from you is it's

8    purely the same legal -- narrow legal issue.

9    MR. ENZER:  That's correct, Your Honor.

10   THE COURT:  If proceedings move forward in this court

11   based upon the complaint that is filed in this case, would you

12   anticipate that your jurisdictional motion here would track the

13   same narrow argument as what is currently before the court in

14   New York, or would it be a different argument that would

15   require perhaps more factual analysis of the contacts of the

16   defendants with the United States?

17   MR. ENZER:  Your Honor, I believe our jurisdiction

18   argument here in Alabama would be substantially identical.

19   Obviously, it would be pegged off the pleading in this case,

20   but it would be a -- an -- an examination of the Gess

21   plaintiffs' pleading and whether that pleading has adequately

22   alleged personal jurisdiction.  It would not be an exploration

23   of facts.

24   THE COURT:  Well, ultimately, though, Mr. Enzer, isn't

25   a determination of personal jurisdiction in this type of case

1  going to be fact-dependent upon the foreign defendants'

2  contacts with the United States and whether they satisfy a

3  minimum contact standard to trigger the national jurisdiction?

4       MR. ENZER:  Yes, I agree with Your Honor.  When I

5  mentioned facts, what I was referring to is -- I was trying to

6  draw a distinction between allegations in a pleading versus a

7  factual record beyond the pleading, such as affidavits,

8  declarations and the like.

9           And what I'm saying is I do expect that if the --

10 the Gess case proceeds in this court, that we -- Binance

11 Holdings Limited and Mr. Zhao would move to dismiss and that

12 one of the bases for the motion to dismiss would be a lack of

13 jurisdiction -- lack of personal jurisdiction.  And in framing

14 that argument, we expect, like we did in the Raanan case, to

15 focus on whether the allegations in the Gess complaint have set

16 forth sufficient facts and circumstances to establish the

17 requisite minimum contacts to satisfy both the -- the statutory

18 and common law standard and the constitutional due process

19 requirement.

20      THE COURT:  Well, is it possible, Mr. Enzer, that the

21 Southern District of New York could say that the plaintiff has

22 alleged at least enough facts to warrant some jurisdictional

23 discovery because the plaintiffs may not know what they don't

24 know regarding those contacts?

25      MR. ENZER:  It is -- I can't rule it out, Your Honor.

1   It's possible.  I think it's unlikely because I think if the

2   Court is deciding that there are -- that the pleading lacks

3   sufficient allegations to establish jurisdiction, that the --

4   the normal course would be for the judge to dismiss for lack of

5   jurisdiction and perhaps do that without prejudice to give them

6   a shot of repleading.  But I -- I would not expect that to

7   be -- I don't think you have enough, but go ahead and get

8   discovery.

9         THE COURT:  And that was going to be my second

10  question is, as an alternative, could the New York court not

11  permit the plaintiff an opportunity to replead?  That would

12  then extend, potentially, the amount of time before this Court

13  would know what was or wasn't going to move forward in New

14  York.

15        MR. ENZER:  It -- it is possible that the court --

16  that Judge Koeltl will not give the plaintiffs an opportunity

17  to replead.  But I -- I think if we're in that scenario, I

18  expect that would be a situation where the judge is dismissing

19  the Raanan case.  And -- and if so, we have agreed in our reply

20  briefing -- and we stand by that commitment -- if the Raanan

21  case is dismissed, we will withdraw our motion to transfer and

22  litigate this case here.

23        THE COURT:  And it strikes me that the various

24  scenarios that I've just asked you about as potentially taking

25  place in New York could be the same scenarios that would unfold

1  in this court.  And I guess that would bring you back to your

2  primary point, which is the ball is already rolling and

3  substantially farther down the field there than it is here, so

4  why potentially duplicate that same work in two different

5  locations potentially with two different outcomes.

6          Now, I guess converse to that would be the

7  plaintiffs here may have different and additional information

8  than what the plaintiffs in New York may have, or vice versa,

9  where perhaps the pleadings may be more specific in one place

10 or the other or could be -- the complaint could be repled in

11 one place or the other with additional facts that would be

12 sufficient.  So I don't know that it necessarily means, based

13 on how you framed your argument, that the courts could not

14 reach different conclusions based on the different pleadings in

15 the two cases.

16          MR. ENZER:  Your Honor, if I may.  I think --

17          THE COURT:  Now --

18          MR. ENZER:  I think that's correct as a hypothetical;

19 but as a -- as a practical matter, as a matter of what's

20 actually going on in these two cases, there is very substantial

21 overlap.  In terms of the parties, two of the three defendants,

22 my clients, are the same in both cases.  The plaintiffs in both

23 cases differ, but they are similarly situated; that is, they're

24 all either alleged victims or alleged relatives of victims of

25 the October 7 attacks.

1          Both cases are asserting either claims of primary

2    or secondary liability principally under the Antiterrorism Act

3    that seek to hold my clients liable for effectively conspiring,

4    aiding and abetting, or providing material support to the

5    terrorists that committed those attacks.  Both rise or fall on

6    virtually the same legal theory; namely, that my clients, in

7    facilitating transactions, did not do enough know your customer

8    anti-money laundering or sanctions controls and, thus,

9    facilitated these payments and allegedly did so with -- with

10   the requisite knowledge.

11         So the same legal issue, the same predicate

12   factual issue, and both rely on essentially the same evidence,

13   which is principally my clients' resolutions with various U.S.

14   government agencies from November of 2023.  And as Your Honor,

15   I'm sure, saw in Appendix A to our moving brief, we set forth a

16   chart with line-by-line comparison of the similarities in the

17   allegations.  And by my count, there are more than 30

18   allegations in the two complaints that are virtually identical.

19   So there may be some daylight between the two, but not on the

20   core issues we would move on in a motion to dismiss.

21         It's not really -- you know, while two snowflakes

22   are different, every snowflake is unique when you examine them

23   up close, from afar and for purposes of the Court's decisions,

24   I -- I think they are virtually identical.  There's really no

25   daylight in what the Court would be confronted with.  And one

1   of the main issues would be the Twitter issue.  And on

2   jurisdiction, if that's raised, it's virtually the same issue

3   as well.

4        THE COURT:  And I've gotten a little far afield with

5   the original direction of the questions at this point in the

6   proceeding, but going back to the discussions that were had

7   when the stipulation and the schedule here were agreed to by

8   the parties, did your clients -- and that would include you as

9   counsel.  Was there an awareness back when that stipulation was

10  entered, which I believe was -- I know it was in the spring.

11  Was that in April or May?  Late April, early May?

12       MR. ENZER:  The stipulation was signed, Your Honor, on

13  May 9 and filed with the court that day, and then it was

14  ordered by the court on May 14.

15       THE COURT:  So on May 9, where were the proceedings in

16  the New York case in terms of having some awareness of when the

17  motion to dismiss would be ripe in that court?  Was it

18  anticipated that that briefing would be concluded by

19  approximately August when it was concluded, or was it not known

20  at that time that the New York case was going to be in a

21  posture to go ahead and have this issue submitted on briefs

22  that quickly?

23       MR. ENZER:  It was known, Your Honor.  In the Raanan

24  case, we had filed a stipulation report on March 4 which set

25  forth a stay of discovery, a motion to dismiss briefing

1    schedule.  And we proceeded to brief a motion to dismiss on the

2    schedule that was set forth in that stipulation for March 4.

3    So we filed our motion to dismiss in Raanan on June 14, and the

4    motion was fully briefed as of August 2nd as per the schedule

5    in the stipulation of March 4th.

6         THE COURT:  Okay.  So this isn't a situation where

7    there was some intervening event that maybe altered what the

8    expectation was on your part.  There was already a briefing

9    schedule in place.  You had a very good idea of when that

10   matter would be submitted to the court for determination, as I

11   understand your response.

12        MR. ENZER:  That's right, Your Honor.  Well, I would

13   say there was no change in expectations as to Raanan.  I think

14   that where there was somewhat of a, perhaps, change of

15   expectation -- or in terms of understanding the evolution of

16   our briefs and why -- why this came up in our reply, we -- we

17   made our motion relying on the fact that the plaintiffs were

18   taking the position that there is jurisdiction --

19        Let me -- let me back up.  Implicit in the

20   plaintiffs' position -- because this statute, the Antiterrorism

21   Act, has a nationwide service of process provision.  By -- and

22   because Alabama and New York are no different -- or, if

23   anything, there are more contacts to New York than Alabama, but

24   certainly Alabama is not better situated -- or doesn't have

25   stronger contacts or factual bases for venue, because Alabama

1   and New York are similarly situated in our mind, implicit in

2   the plaintiffs' position that they have jurisdiction in Alabama

3   is the notion that they think they would have jurisdiction in

4   New York.  That is confirmed by the fact that the Raanan

5   plaintiffs, who are similarly situated, filed their case in New

6   York.  So in our mind, that was a sufficient basis to meet our

7   burden of meeting the might-have-been-brought element of a

8   1404(a) transfer.

9           We made our motion.  And then in the opposition,

10  the plaintiffs said, no, no, no, you're challenging

11  jurisdiction in the other court and that means -- that negates

12  your -- your -- your effort to meet your burden on that

13  element.  And so we said, okay, well, the court can make a

14  reaction to that and reply to that.  We reacted to that and

15  said, well, look, look at the -- look at the chessboard here.

16  If you look at the chessboard, we've got Raanan further along

17  at this point.  It makes no practical sense for the -- the Gess

18  court to have to wade into these issues when all of this could

19  be resolved tomorrow.  For efficiency' sake for the court and

20  for the parties, let's just wait.  It's not going to be that

21  much longer, and also that avoids the risk of inconsistent

22  rulings.

23          So that's sort of the evolution.  And I -- I

24  think their position and their opposition was, you could say, a

25  change of expectation.

1          THE COURT:  And I will say this, Mr. Enzer.  That when

2    I was reading through the submissions in sequence, that was

3    really more how your position struck me.  I mean, we're not

4    dealing here with a freestanding motion to stay.  It seemed to

5    me that your response was just what you indicated of, well, if

6    that's going to be an issue that's important to the Court in

7    evaluating this issue, it may be more efficient to wait for

8    this other court to speak to the issue that is already further

9    down the road in that regard.

10          And I do think in addition to efficiency, as

11   you've pointed out in your briefs, that court has -- and the

12   judge that has that case has some particularized experience in

13   these types of cases.  And even though what the court decided

14   there might not be binding on this Court, this Court could find

15   good guidance from what that court decided to do.  And also

16   from an efficiency -- a judicial efficiency standpoint, it

17   would avoid a situation where perhaps this Court were knee deep

18   in the weeds on this issue and then, while we're working on it,

19   something comes out in that court where we've just invented a

20   wheel that if we had waited a few weeks, we did not have to

21   invent.  So I think all that makes some sense.

22          But before I move to Mr. Schoen, let me ask this

23   question.  And I don't want to get into the merits of the

24   first-to-file rule.  We'll come back to that.  But we're

25   talking about potentially holding in abeyance a decision on

1    transfer while the New York court determines personal

2    jurisdiction.  And I understand why that could be significant

3    to a 1404(a) transfer, but under a first-to-file transfer, as I

4    understand your position -- or tell me if I'm wrong.  Well,

5    I'll just ask you this way.  Is a personal jurisdiction

6    determination relevant to whether the Court can decide a

7    first-to-file rule transfer?  I mean, obviously, it's a -- I

8    understand there may be competing arguments on this, but it

9    clearly is relevant to a 1404(a) in some regard.  Is it

10   relevant at all on first-to-file?

11           MR. ENZER:  Yes, Your Honor.  Good -- it's a fair

12   question, and I'll do my best to answer.

13                Our position is that it is not relevant.  And

14   here is how I think this shakes out.  The -- we are not aware

15   of authority in the Eleventh Circuit that says a party --

16   that -- that a court needs to have personal jurisdiction in the

17   transferee court, the case -- the court that will receive the

18   case, in order to transfer a case there under the first-to-file

19   rule.  We're not aware of that in the Eleventh Circuit.  And we

20   are aware and we cite in our brief some district court level

21   cases from within the Eleventh Circuit that seem to suggest the

22   opposite, that the 1404(a) requirements do not get grafted onto

23   the first-to-file doctrine; that is, that this is a separate

24   silo of authority outside of 1404(a) that the court has.  I

25   acknowledge those are district court level cases; they're not

1    an intermediate appellate court.

2              And I'm not aware of any other appellate court

3    case that adopts or disagrees with the Ninth Circuit case that

4    the plaintiffs rely on *In Re Bozic*.  But In Re *Bozic* -- and in

5    full candor, Your Honor, the *In Re Bozic* case, which is a Ninth

6    Circuit case, says that you do need personal jurisdiction in

7    the transferee court.  So that is the Ninth Circuit's position,

8    which is not binding in this circuit.

9              But it is interesting in the *In Re Bozic* case,

10   the court acknowledges that the remedy under first-to-file,

11   there -- there are three remedies worth discussing.  One is a

12   transfer.  And the court says that that requires personal

13   jurisdiction in the transferee court.  But it notes the two

14   other remedies are dismissal or a stay.  And in that case, the

15   court declines to reverse a lower court transfer ruling

16   because -- and was on -- in the posture of a writ of mandamus.

17   It declined because there was a stay below, and in the

18   circumstances there, the statement, there was no prejudice even

19   though there had been an error on the issue of transfer.

20             And so I respectfully submit that case, to the

21   extent this Court decides to follow, actually supports our

22   position, the very fair, reasonable position we've taken in our

23   reply, that the thing to do here is to hold the motion to

24   transfer in abeyance, wait to see what Judge Koeltl does in

25   Raanan.  And then if -- if he denies the motion, Your Honor can

1  then take up the issue of transfer and, we submit, should

2  transfer the case there.  And if he dismisses the case, we will

3  withdraw our motion.

4         But the -- the court in *Bozic* -- that's the

5  plaintiffs' case -- acknowledges that stay or dismissal are

6  appropriate remedies under the first-to-file rule.  So in other

7  words, if plaintiffs are right that this Court should be

8  following *In Re Bozic*, then the Court doesn't have the power to

9  transfer the case.  But that doesn't mean the Court's hands are

10  tied.  The Court can stay this case to see what happens in

11  Raanan or can dismiss it.

12         THE COURT:  It does strike me that this is a bit of a

13  unique scenario.  And correct me if I misunderstand this, but

14  it's unique in that if there's personal jurisdiction in New

15  York, there would be personal jurisdiction anywhere in the

16  country; and, conversely, if there's personal jurisdiction in

17  Alabama, there would be jurisdiction anywhere.  So it's an

18  all-or-nothing nationwide determination.

19         But taking it out of that context, if this were a

20  different scenario, it does seem to me to be somewhat illogical

21  to say, well, there's a similar case in another district that

22  has some overlap in issues and parties and that I would

23  transfer a case from here, where there is personal jurisdiction

24  over certain defendants, potentially to a court that was first

25  filed, but where there would be no jurisdiction.  There could

1  be a reason that there were two separately filed actions.  Does
2  that make sense?

3            So I don't know that you can completely divorce a
4  consideration of personal jurisdiction from the analysis.
5  Perhaps you can in this unique case.  But even if I agree with
6  you that -- if I were to agree that the better reasoned cases
7  and the cases from the district courts in this circuit have
8  said 1404(a) is a different analysis than first-to-file, I
9  don't know that that results in a complete disregard of
10 personal jurisdiction, although it might be less compelling in
11 this case than it would be in a different case, because it's
12 not as if there could be jurisdiction there and not here.  It's
13 really, as I said, all or nothing.

14           Am I off base on that, or is that tracking with
15 the nature of this particular case?

16      MR. ENZER:  No, Your Honor.  I think you hit it on the
17 head.

18           And one of the reasons that I like being a trial
19 lawyer rather than a (unintelligible) lawyer is I don't have to
20 deal with what the policy should be.  I deal with the facts of
21 this case.

22           And -- and Your Honor is right that this would be
23 a much tougher position for us if we were dealing in a case
24 where there clearly was jurisdiction in Alabama, there clearly
25 was not in New York, and we were asking the Court to use the

1  first-to-file rule to transfer from a court with a proper basis

2  of jurisdiction to one that has none.  That would be unfair to

3  the plaintiffs.  That's not the situation here.  The -- the New

4  York and Alabama courts are similarly situated, indeed, perhaps

5  identically situated given that we are operating in the -- in

6  the very -- in what may be unique.

7            I am not -- certainly, I am not aware of a case

8  that has ruled on this issue.  And maybe Mr. Schoen is aware of

9  one, but I am not aware of a case that deals with this issue

10  when we're talking about a nationwide service of process

11  statute where the jurisdiction question is really about

12  nationwide contacts, not state-by-state contacts.

13       THE COURT:  And what I was about to say was --

14  Mr. Enzer, just to make sure that the recording got that, if

15  you could repeat the -- you hit that on the head or you hit the

16  nail on the head just so we've got a clear record.  Because

17  given the nature of these issues, I might frame that quote and

18  put it up somewhere.  Even though I don't think it is entirely

19  accurate, I will accept it.

20            Well, to me, that comes back with respect to

21  first-to-file.  As I understand the case law on that doctrine,

22  it's more of a fluid, case-by-case analysis rather than being

23  wed to a consideration of certain specific factors and a

24  checklist type of analysis.  So perhaps the Court could

25  consider the unique nature of this case and reach a result that

1  potentially would be different from the scenarios you describe,
2  where there would be clearly jurisdiction here and much less
3  argument for personal jurisdiction in another district.
4      MR. ENZER:  And, Your Honor, if Your Honor was eager
5  to make law, I think this would be the case to do it.  But in
6  the interest of the theme that I started with, practicality and
7  prudential conservation of resources, the most practical thing
8  is why wade into it.  *Bozic* says when you've got a
9  first-to-file issue, you can stay a case.
10      So, you know, whether you call it holding the
11  motion to transfer in abeyance or you call it a stay, it's the
12  same result.  It's conserving judicial resources until the
13  court that's about to rule on these issues rules on it; and
14  then we'll have that, as Your Honor noted, right?  Why reinvent
15  the wheel?  We've already got one wheel built -- or we will
16  soon have one wheel built.  But certainly if Your Honor was
17  inclined to go beyond that and to look at how the first-to-file
18  rule may apply, I -- I think that it would be fair and
19  reasonable in the unique circumstances we have here to apply it
20  the way Your Honor just described.
21      THE COURT:  Well, and as a lawyer, I always thought in
22  certain circumstances that the court might be employing a third
23  option in a case like this, which is to neither grant the stay
24  or take action on the motion.  The third option would be just
25  disappear into a black hole for a while and let the case

1    percolate.  But that's not what -- I say that in jest.  That's
2    not what I think the best recourse here is.  I think the
3    parties need -- deserve and need to know what is taking place
4    one way or the other.
5              I do see a practical concern.  And again, this is
6    if the Court were inclined to go in your direction and consider
7    a transfer at this stage, which I understand you're not really
8    pushing for at this point.  It sounds that you believe the best
9    recourse for everyone involved would be a wait-and-see
10   approach.
11             MR. ENZER:  That's correct, Your Honor.
12             THE COURT:  But it seems to me if the Court were
13   inclined to go with Mr. Schoen and say, well, I'm going to
14   reach a decision so that this isn't held up for some unknown
15   period of time while we wait on another court.  And if the
16   Court were to decide that the case should be transferred under
17   the first-to-file rule -- because it's going to have a
18   different reaction to the personal jurisdiction argument versus
19   a 1404(a) argument -- then transfer takes place.  And if the
20   Southern District of New York determines that your clients are
21   due to be dismissed, whether it be for jurisdictional reasons
22   or for 12(b)(6) reasons, then wouldn't that leave BAM in New
23   York presumably to move forward as the sole defendant in the
24   case?
25             MR. ENZER:  I'm -- Your Honor, I think it would depend

1  on whether they track the same arguments and whether they make

2  the -- the personal jurisdiction argument there, and I don't

3  know -- I don't know whether they would.

4       THE COURT:  Well, and that's a good point.  We don't

5  know at this point what their arguments will or won't be

6  because they haven't been -- they haven't been briefed.

7       But what my concern would be in that potential

8  scenario would be if your clients are successful in their

9  motion for whatever reason, BAM is left.  And let's say the

10  Court reaches a different decision because there are different

11  considerations that may be applicable to BAM, then that would

12  undermine the plaintiffs' choice of forum to sue -- pursue BAM

13  here.  And if we stayed the proceedings and the time for the

14  time being, then the plaintiffs could proceed against BAM here

15  even if there were no jurisdiction to proceed against your

16  clients.

17       And I may be saying that very inartfully because

18  you're giving me a very puzzled look, but what I want to

19  avoid -- what I'm trying to respect here is the plaintiffs'

20  choice of forum and balance that against efficiencies and avoid

21  a result where the case might be transferred to the Southern

22  District of New York for efficiency and we do that prematurely,

23  let's say, and then your motion is successful there, leaving

24  BAM to argue its positions in that court rather than arguing

25  their position in this court, which is where the plaintiffs

1  want to be.

2      MR. ENZER:  I got the issue, Your Honor, and let me

3  try to address it.

4          So I think two points.  One is if we assume the

5  premise -- which the premise of that point is that the

6  plaintiffs' choice of forum should be given deference in this

7  case.  I respectfully submit in this case it shouldn't be.  But

8  let's assume the premise.

9          If we assume that premise, I think it's very

10  unlikely that we'd have that kind of scenario because our

11  12(b)(6) arguments or our merits defenses for Binance Holdings

12  Limited are going to be very similar, if not the same, as those

13  that BAM would advance.  They're similarly situated to us in

14  terms of the Twitter argument and the other kinds of defenses

15  they would make on the merits.

16          And, you know, perhaps they're somewhat

17  differently situated for jurisdiction.  I haven't analyzed

18  that, although -- but I do think in terms of the ultimate

19  merits, we're -- we're in lockstep -- or we should be in

20  lockstep.  But the premise I think, Your Honor, is wrong in

21  this case.  And that's because this is a case with literally no

22  connection to Alabama, at least none that's not manufactured.

23          The plaintiffs -- none of the plaintiffs here are

24  from Alabama.  The complaint identifies the location of -- the

25  only U.S.-based plaintiff, according to the complaint, is a

1  plaintiff who lives -- or who, according to the complaint,
2  lives in New York, not Alabama.  The only Alabama allegations
3  in the -- in the complaint are very generic allegations that
4  BAM is licensed to do business in 40 states, one of which is
5  Alabama.  But that doesn't give us an Alabama-specific
6  connection or one to prefer New York.  And indeed, the -- the
7  plaintiffs' own complaint contain al- -- contains allegations
8  that I think create a stronger connection to New York.
9         For example, page 9 of the Gess complaint notes
10 that it -- it alleges that the native currency that was traded
11 on the Binance exchange was a stablecoin known as BUSD, which
12 is essentially a crypto currency token that is pegged to the
13 value of U.S. dollars, and it says that those were issued by a
14 New York company called Paxos.  So the idea is that folks
15 deposit dollars with Paxos.  For each dollar, a token is issued
16 that is redeemable for the dollar and, thus, that token is
17 pegged to the value of the dollar.  And it's a base currency.
18 So if you want to buy Bitcoin, you pay in a bunch of
19 stablecoins.  Let's say $30,000 worth of stablecoins.  And if
20 you want to sell your Bitcoin, you sell it for BUSD
21 stablecoins.  And if you want to liquidate those stablecoins,
22 you can then do that for fiat currency in U.S. dollars.
23        Now, that's in their complaint.  That's a New
24 York connection in their complaint.  And it's a more
25 substantial New York connection than the fact that Alabama --

1  that -- that BAM does business in 40 states, including Alabama.

2  It's particularly important because that bears a much closer

3  relationship to the claims than the fact that BAM happens to be

4  licensed in 40 states.

5          If their allegation is that Binance and BAM were

6  a vehicle for terrorists to launder money, well, it would seem

7  to me very relevant, if I was the plaintiff, that that could

8  have occurred, according to their allegations, using

9  stablecoins.  And those stablecoins, according to their

10  complaint at page 9, were issued in New York.

11          THE COURT:  And this may be the last question,

12  Mr. Enzer, that I have for you while we're talking about the

13  stay, which I'm glad I said I was just going to touch on it

14  briefly, but this has all been very helpful.  And this is,

15  understandably a question that's maybe more appropriately

16  directed to counsel for BAM, and I'll -- I'll pose that

17  shortly.

18          But could there be, from your client's

19  standpoint, a scenario if the Court were inclined to say,

20  Mr. Enzer, I understand the efficiencies here, you've briefed

21  these issues already in the New York court, they're teed up for

22  determination, and it would potentially result in unnecessary

23  time and expense on your client's part to essentially have to

24  regroup the same arguments here?  It would be inefficient and a

25  drain on the Court's resources to undertake the argument here

1  without at least waiting guidance from the New York court that

2  could either moot the issue or provide some assistance in not

3  having to invent the same wheel that someone else is already

4  working on?

5              So is there a scenario where if I were to agree

6  with you to stay as to your clients, where the case could move

7  forward in some fashion as to BAM, who hasn't briefed anything

8  at this point, and at least be getting that briefing done?  And

9  by the time it's done, we may have a decision on your motions

10 in the other court.  And I'll ask them -- I'm not asking you to

11 speak for them.  I'm asking you to speak for your clients.

12 Does that impose any sort of hardship or prejudice upon your

13 clients, or do you see any problem with that type of scenario?

14             MR. ENZER:  Thank you, Your Honor.

15             So if BAM was briefing a motion to dismiss and

16 Binance Holdings Limited and Mr. Zhao were subject to a stay --

17 the litigation was stayed as to them, we're not going to be

18 bearing any -- and -- and assuming discovery is stayed during

19 that, we're not going to be bearing a financial burden at that

20 time, but there is still the risk of an inconsistent ruling.

21 You still have the risk that they are going to brief --

22             THE COURT:  And I'll jump in and -- because that's not

23 the direction that I was thinking.  I was thinking more in

24 the -- along the lines of they haven't briefed anything, so

25 their responsive deadline was continued along with your

1   clients'.  Do you see any prejudice that would be worked upon

2   your clients if the Court stayed further action here with

3   respect to your clients but directed BAM to proceed with filing

4   some sort of response?

5          It doesn't mean the Court here would not

6   entertain a request for BAM to stay a ruling on whatever was

7   filed, but that would assist the plaintiffs in at least knowing

8   the case is moving forward in some capacity and that we don't

9   wait six or nine months for a decision from New York, then

10   potentially to have BAM start from scratch and result in

11   additional months of delay while its dispositive arguments are

12   pending -- or being briefed and then determined.

13          MR. ENZER:  Yes, certainly, Your Honor.  So aside from

14   the risk of inconsistent rulings, if we're talking about BAM

15   litigating a 12(b)(6) motion or a motion to challenge the

16   jurisdiction while Binance Holdings Limited and Mr. Zhao are

17   subject to this sort of stay, there is no prejudice I see from

18   that aside from the risk of inconsistent rulings.

19          THE COURT:  Which the Court could avoid that risk if

20   it accepts a similar argument that the Court shouldn't rule on

21   that motion.  But that way, if the Court were to transfer the

22   case, then it's in a posture for that motion to be decided in

23   the New York court.  If it determines a transfer is not

24   appropriate, then this Court is in a position to do it without

25   imposing upon the plaintiffs potentially months of additional

1  delay.

2        MR. ENZER:  That's right, Your Honor.

3             I will just say, to reassure the plaintiffs, you

4  know, we're not -- we're not trying to delay here.  You know,

5  if -- if this case ends up getting synced with the Raanan case

6  and the Raanan case proceeds into discovery, we would want

7  discovery to be coordinated even if that means that this case

8  has to move a little bit quicker to get there.  Because for us,

9  this is all about trying to avoid a situation where our

10  people -- our witnesses don't have to be deposed two X or three

11  X times or we don't have to testify two X or three X times or

12  at least that there's some coordination of those -- of those

13  efforts.

14        THE COURT:  And frankly, this wasn't a thought that I

15  had coming into today, but as I'm listening to your argument,

16  it's one that has occurred to me as maybe something to explore,

17  particularly if the endgame, as I heard you just state it,

18  would be to sync the cases up in the same court; that whatever

19  action could be moving forward as to BAM in the interim would

20  assist with your clients' desire to sync the cases up if there

21  is a transfer.

22             Now, this all presupposes there is a transfer.

23  And I'm not suggesting that I'm leaning one way or the other.

24  But it would seem to me that it might promote efficiency for

25  the case, potentially, to proceed against BAM at least with

1  respect to briefing in this court.  And I'm not hear -- barring

2  a decision that could then create a risk of inconsistency.  I'm

3  not hearing from you any prejudice to your clients by having

4  the case move forward here, at least on briefing or whatever

5  response that BAM wanted to file, whether it be an answer or a

6  motion to dismiss, whatever they want to file.

7        MR. ENZER:  That's right, Your Honor.

8        THE COURT:  Okay.  And let me ask counsel for BAM

9  about that.

10        And just for the record, BAM is not a defendant

11  in the Raanan case, which is the Southern District of New York

12  case.  So at this point, it is in a different posture than

13  Binance and Zhao because it is not in the position to have

14  filed any motions or briefed any issues in that court.

15        So my question would be would there be any

16  prejudice to BAM to be put on a schedule here while we're

17  awaiting determination on the foreign defendants' motions in

18  the Southern District of New York?  Because you're obviously

19  going to have to file a response at some point, whether it be

20  here or there.  And it seems to me that filing it here might

21  have some efficiencies if there is a transfer for getting the

22  cases back in a similar posture where they can then move

23  forward with discovery on the same track and at the same pace

24  if they end up in the same forum.

25        So what would BAM's position on that be?

1      MR. SANSOM:  So I think I have to think about it as
2  the 12(b)(2) piece and the 12(b)(6) piece.  On the 12(b)(6)
3  piece, obviously BHL and CZ have the cases in New York, and
4  they're in the lead on addressing the legal issues on the
5  merits.  I agree with Mr. Enzer that from what I understand so
6  far, we would expect that those merits arguments under the ATA
7  and JOFTA and the underlying substantive issues would be
8  substantially similar or the same.  So I guess it puts us in
9  the position of having to address, in the 12(b)(6) posture, the
10 law on the merits, you know, far ahead of when we were
11 anticipating doing that and, I guess, you know, when we were
12 thinking, you know, that, you know, they were kind of leading
13 the briefing on that in the New York case.  I don't know if
14 that's prejudice or not, but we would obviously have to do
15 whatever additional work is necessary for us to -- to address
16 the merits.
17      THE COURT:  But aren't you going to have to do that
18 anyway?  It's just a matter of --
19      MR. SANSOM:  Yeah.  It's a matter of when.
20      THE COURT:  -- if you do it in this court, do you do
21 it in that court, do you do it now, do you do it a year from
22 now or whenever there's a decision in that court.  I mean,
23 aren't we talking about the same work regardless of when or
24 where it's done?
25      MR. SANSOM:  I think that we would -- well, I -- I

1  guess I -- the piece I don't know to that is our anticipated

2  nonmerits things in New York.  So I can't really speak to the

3  New York piece of that because I don't -- I haven't looked that

4  far down the road, as counsel here in Alabama for BAM, about

5  what the anticipated defense would be if BAM was in New York,

6  other than on the merits.  The merits piece is going to be the

7  same.  I guess it's really a matter of a difference between

8  what's being briefed on the schedules that Mr. Enzer outlined

9  for the other defendants in the New York cases versus what we

10  might have to do uniquely for ourselves here.

11          Again, it's just -- I think it just would be the

12  cost of that briefing, whatever that addition is.  And then I

13  guess if the case were to be transferred -- so -- so 12(b)(2)

14  issues have to be raised in the first dispositive motion under

15  I think 12(h).  So we would to have to brief our personal

16  jurisdictional arguments here.  I'm just thinking about this

17  real time.  We would have to brief our personal jurisdiction

18  arguments here, which, in the event of transfer to New York,

19  might be an unnecessary undertaking.

20          THE COURT:  Well, how would the argument be different

21  here versus New York?

22          MR. SANSOM:  I don't know enough about -- I only know

23  like little pieces of New York.  I just really don't know

24  enough about -- I have a -- I guess it's a bit ahead of when I

25  was, you know, thinking about things, but I have a bit of a

1  vision of the personal jurisdiction arguments here.  I really

2  don't know our posture as to personal jurisdiction here.  But,

3  obviously, as you -- as the Court pointed out, the plaintiffs

4  chose to sue here.  So whatever attributes come with that in

5  terms of our briefing of the personal jurisdiction issues, if

6  the case were transferred to New York, I don't think we would

7  ever have to address those.

8          THE COURT:  And --

9          MR. SANSOM:  So we'd address them unnecessarily in the

10  event of transfer, I think.

11          THE COURT:  And I too am thinking about this off the

12  cuff and in real time.  And perhaps what I could do or may do

13  is give you some time and an opportunity to think through the

14  issues, speak with your client, and then file a position

15  statement on why, if the Court is inclined to grant a stay as

16  to the foreign defendants, that it should also continue the

17  stay as to your client or whether the Court should move forward

18  with respect to having your client at least brief any dismissal

19  issues so that that work is done and not holding up proceedings

20  potentially later and then, obviously, subject to your right to

21  ask the Court to hold those motions in abeyance if we don't yet

22  have a decision in New York.

23          So --

24          MR. SANSOM:  Yes, Your Honor.

25          THE COURT:  -- that's helpful to talk through.  And if

1    I were inclined to not continue a stay as to BAM, I would

2    afford you an opportunity to speak to it and provide any

3    justifications for not doing so.

4           MR. SANSOM:  I think that would be constructive, Your

5    Honor.  I don't know that I have all the pieces of the puzzle

6    here, as I stand here, about especially the New York piece and

7    personal jurisdiction.

8           THE COURT:  Understood.  Understood.  Thank you for

9    coming up to the podium.

10          MR. SANSOM:  Thank you, Your Honor.

11          THE COURT:  You may be seated.

12               And final question, Mr. Enzer.  I thought of one

13   more.  You said Mr. Zhao -- I believe you stated that he is

14   currently not in the United States.  Is that what you stated?

15   What is his current location?

16          MR. ENZER:  He is -- he is currently at a location in

17   the Middle East, Your Honor.

18          THE COURT:  Okay.  Mr. Schoen, welcome.  You could

19   have shown up fashionably late and still been okay.  I

20   apologize for going longer with the defense group than maybe I

21   had anticipated.

22          MR. SCHOEN:  Judge, if I may, maybe it would help --

23   it's helpful to weigh in on the last issue first --

24          THE COURT:  Okay.

25          MR. SCHOEN:  -- since -- I mean, that's something the

1  Court thought up today.  So I don't want to either rain on the

2  Court's parade or suggest that, you know, we don't want to move

3  forward, because we do.  I don't think it would work, quite

4  frankly.

5        THE COURT:  Okay.  Well, and I was actually going to

6  ask you that.  That is really the threshold question of --

7  again, one of my concerns here is not -- as it is in all cases,

8  is not holding up the plaintiffs' ability to move forward at

9  least in some capacity if there is an opportunity to do that.

10 So if you feel that the approach I'm brainstorming is

11 inefficient for your clients, then I can also save the defense

12 group some work in maybe speaking to that issue by motion.  So

13 tell me the issues there, and then we'll move on to something

14 different.

15       MR. SCHOEN:  I just like that the Court is

16 brainstorming.  And again, I hate to rain on the parade, but

17 I -- I think there are a couple of issues.

18           Number one, I don't think that it adds to the

19 efficiencies, because if this case were transferred, God

20 forbid, then we're not going to necessarily be bound by the New

21 York court's decision as to Binance and Zhao.  We have

22 different issues, potentially.

23           But more to the point, I think if we were to go

24 forward here, certainly we'd have at least two rounds of

25 briefing, either here and there, but I think our theory of the

1   case is that BAM and Binance and Zhao are inextricably

2   intertwined.  And this relates both to the conspiracy

3   allegation in the complaint, it's going to relate to a service

4   issue in the case.  And I -- I'd like to get into that a tiny

5   bit based on where the Court started the whole conversation

6   with Mr. Enzer today.  And that was about this -- you know,

7   where we -- I don't want to use the word "misled," but do we

8   have different understandings of how we were proceeding.

9            But in any event, to finish this subject, I think

10  on whether it makes sense from our perspective to go forward

11  with BAM doing briefing, I think that would be inefficient,

12  although I very much appreciate the Court's interest in moving

13  something about the case forward.

14       THE COURT:  Okay.  So let me just make sure I

15  understand this.  Even if the Court were to withhold ruling on

16  any such motion, you do not believe having the issues briefed

17  would provide any increase in efficiencies?

18       MR. SCHOEN:  I don't think so, Your Honor.  And -- and

19  I think, frankly, if the Court were to impose a stay at that

20  point, we really would have shot ourselves in the foot in a

21  sense because we'd be no further along.  That's my view about

22  that idea.

23            Look, the cases are clear that the Court can

24  sever a defendant for who -- over whom the Court has personal

25  jurisdiction if it finds it doesn't over the other.  Those are

1  all options.  I don't think, in this case, that is efficient

2  for anybody's interest; but I think the Court had a great idea.

3      THE COURT:  Well, you know, great ideas that don't

4  work, I think you question how great they are.

5      MR. SCHOEN:  It may work.  It's just my view.

6      If I could return, Judge, to the decision -- the

7  discussion at the very beginning.  I don't know that this is so

8  important, but the Court raised it, and we heard from

9  Mr. Enzer, so I'd like to just address it.  And that was the

10  idea that they were operating under two very different

11  assumptions when we came to this stipulation about how we were

12  going to move forward.

13      Today is the first time I've heard, candidly,

14  that the defendant somehow had the assumption that we were

15  going to agree that New York had jurisdiction and, therefore,

16  they didn't have to prove it.  The cases are clear and 1404(a)

17  is clear.  Irrespective of what we think, say, or otherwise,

18  unless we consent -- and we certainly didn't -- the burden is

19  on them at all times to prove that the transferee court has

20  jurisdiction.  That's, you know, Hornbook law, 1404(a).  And it

21  gets short shrift in their brief.  And the idea -- I didn't

22  even see in their reply that that was based on some assumption

23  that, oh, well, you know, we agreed that New York would have

24  jurisdiction; therefore, it wasn't an issue.  That's -- I'm

25  hearing that for the first time today.

1          But let's go back to these discussions the Court

2    asked about with respect to the stipulation.  And this -- the

3    underlying issue here is our desire to move forward for our

4    clients who have been through un- -- inconceivable trauma.

5          At the time Mr. Enzer proposed this stipulation,

6    this method of proceeding -- and we have -- again, these are

7    personal discussions, and I don't share emails and so on, but

8    we have emails on all of this -- I raised the concern that the

9    schedule they proposed was too long; it was too delayed,

10   because we wanted to move forward.  And I originally -- our

11   plan was, as I expressed to Mr. Enzer, to proceed with service

12   in the case.  I first proposed a waiver of service, and I sent

13   them a waiver of service for Zhao and Binance.  We had served

14   BAM already.  But then we were prepared to proceed with the

15   Hague Convention if that's what it took.  Not to Zhao.  Zhao

16   was in this country.  Zhao just got out of prison.

17         When he says he's living in the Middle East

18   someplace, there's a reason he's not telling us exactly where.

19   And one of those reasons is in the Southern District of New

20   York, Judge Rakoff has allowed the appointment of a special

21   process server to serve Zhao.  He really wasn't amenable to

22   service.  I was surprised, because we thought about it when he

23   was in prison.

24         But in any event, so we were pressing forward on

25   the timing issue.  And I had said at the time I didn't think

1    the period they asked for was acceptable, but finally I

2    relented, and we agreed to that.  But as the Court pointed out

3    and Mr. Enzer acknowledged, the motion to dismiss was well-

4    known in the Southern District.  And the timing for the

5    briefing, that was well-known.  There was never any discussion

6    about staying this case pending a resolution there.

7            And as to when that case will be resolved, what

8    Judge Moses, the magistrate judge in that case, did in denying

9    jurisdictional discovery was to say she was denying it as

10   premature.  And she cites cases in her order that say that

11   maybe it's not right to decide a jurisdictional -- whether to

12   go forward with jurisdictional discovery before the

13   jurisdiction issue is decided.  She cites several cases for

14   that.

15           So we may be in a position in the Southern

16   District of New York in which they say -- they rule one way or

17   the other on jurisdiction, and then there's jurisdictional

18   discovery.  Because she specifically left -- denied it without

19   prejudice to make the motion again after Judge Koeltl makes a

20   decision on the motion to dismiss.  I have Judge Moses's order

21   here.  I think it was number 35 in that case, but I'm not sure.

22           So anyway, I just -- I just want to be clear

23   about expectations and understandings from the start.  I don't

24   say that -- in any way that Mr. Enzer intentionally misled us

25   at the time, but we certainly made clear our expectations of

1  moving forward in the case.  That -- so that -- I just wanted
2  to address that issue.
3          THE COURT:  And I appreciate that, Mr. Schoen, because
4  one of the questions and concerns that I had earlier for
5  Mr. Enzer was is there a possibility even if jurisdictional
6  discovery has not yet occurred or has not yet been allowed that
7  the pending jurisdictional question could result in an outcome
8  that would open the door, allowing discovery to resolve certain
9  questions.  And it sounds like from the magistrate judge's
10 order, it doesn't say that it will happen or is even likely to
11 happen, but it doesn't say under no circumstances could it
12 happen.
13         MR. SCHOEN:  Right, Your Honor.  Just the opposite.
14 She specifically says that it's without prejudice to remake the
15 motion after Judge Koeltl decides on the jurisdictional
16 question.
17             I don't know why I'm not finding the order in
18 here.  I was just reading it while the Court was talking.
19         THE COURT:  Well, that brings this thought to mind.
20 If there is jurisdictional discovery that's opened in the
21 Southern District of New York, it seems to me that much, if not
22 all, of the relevant facts that would come from that discovery
23 would also be relevant if this Court were to independently
24 undertake to decide the jurisdiction issue.  And it doesn't
25 seem efficient to me to have jurisdictional discovery moving

1    forward in two different courts when, ultimately, the question,
2    as I understand it, is the same:  Is there sufficient contact
3    with the United States to warrant jurisdiction anywhere.  Is
4    there any scenario where -- I don't think the Court could order
5    this, but where the parties could stipulate to some sort of
6    joint participation in jurisdictional discovery that moves
7    forward in that court, that whatever discovery is taken there
8    can be used in this court, and that you, as counsel for the
9    plaintiffs, could participate to the extent you need to ask
10   additional questions that you would need to make your argument
11   in this court.  Is that a potential scenario?
12       MR. SCHOEN:  Potential is the operative word, I
13   suppose, Judge.  We may have different views.
14           Let me say, just to give a little bit of
15   background to order the record, as they say, the reason their
16   case was filed first is that we were still investigating it.  I
17   was in Israel meeting with the clients.  This case was planned
18   long before theirs.  The lawyers in New York were advertising
19   on social media for clients at the time.  We didn't want to be
20   a part of that scenario.  We met with our clients, and we
21   did -- we filed our complaint less than a month after they did,
22   which I think is relevant to the first-file issue.  So I don't
23   know that we would be sort of on the same page in terms of how
24   to pursue the cases.  I -- I don't know the answer to that.
25           This is -- and -- and I may not do it well at

1  all, but this is an area of the law that I've been doing for a

2  long time, and I certainly have a particular way of going about

3  it and a way that I don't.  And so, in fact, that's not

4  particularly relevant, but I was lead counsel in the *Sokolow*

5  case that ended up resulting in a $655 million judgment, but I

6  withdrew before the trial because I wasn't satisfied with some

7  ethical things that I was seeing on the plaintiffs' side.  So I

8  don't know, you know, how it would work in coordinating with

9  them.

10         Ms. Strong, have we lost the connection?  I don't

11  want to prejudice anyone.

12         COURTROOM DEPUTY STRONG:  No, sir.  I believe they

13  turned their cameras off.

14         MR. SCHOEN:  Thank you.  I'm sorry.

15         Judge, one thing I wanted to say, though.  I know

16  I'm skipping around a little bit, but the Court covered a lot

17  of territory.  I don't know that I have to address everything,

18  but I want to address everything the Court is interested in.

19  With respect to the Troell case in New York, it seems

20  defendants have great facility in marshaling one argument in

21  one jurisdiction and another in the other.  I do think that's

22  relevant, by the way.  Under *New Hampshire versus Maine* and

23  other cases, they're not permitted to take a position that the

24  New York court doesn't have jurisdiction and here take the

25  position as an essential element of 1404(a) that it does.

1          But putting that aside, the Troell case, which

2   also has allegations about Hamas and Binance and funds and

3   other allegations, as Mr. Enzer correctly pointed out, the

4   parties argued to Judge Rakoff, as Mr. Enzer said, on the 16th

5   of October that the cases should be joined as related cases.

6   He not only denied that, he set a schedule not just on a motion

7   to dismiss, he has set a full trial schedule.  And he did that

8   on October 16th with a trial in that case ready for trial on

9   June 20th of next year.  So that case is moving forward.  And

10  that is a case in the same jurisdiction that the parties argued

11  was a related case and the judge disagreed with.

12          So we often have cases pending.  We have cases

13  against the PLO, for example, with similar factual scenarios

14  that are in different jurisdictions.  That's part of the -- I

15  don't know if you want to call it advantage or otherwise, but

16  that's part of a function of 2334(a), the jurisdictional --

17  nationwide jurisdictional statute.

18          And as far as -- you know, we heard there's no

19  connection to Alabama.  Again, our allegations in the case,

20  which we will have to prove -- but the government's allegations

21  on which they piggyback are that BAM is a scam in a sense.  BAM

22  was a creation of Zhao and Binance to circumvent United States

23  law.  And our allegations are -- and we flesh this out even

24  more in the response to the motion to dismiss -- is that money

25  is fungible and that BAM offered an opportunity for Binance and

1  Zhao to have another source of revenue that they could move

2  through and mingle with -- commingle with terrorist funds,

3  illegal funds, drug running funds and that sort of thing.  It

4  helped promote their business, which provided them material

5  support for -- for Hamas and other terrorist organizations and

6  illegal activities.  That's part of our theory of the case.

7           And -- and the -- the connection with Alabama is

8  it may be in other states, but BAM came to Alabama and

9  solicited business from Alabama citizens.  As we refer to in

10 the complaint and elsewhere, they got a money transfer license

11 in Alabama and they have a registered agent in Alabama.  And

12 that's what's relevant for 2334(a).  And it may be that BAM is

13 Binance and BAM is Zhao for jurisdictional purposes, but we're

14 not at that point yet.

15      THE COURT:  Well, let me go ahead and ask this now

16 while it's on my mind since we're talking about contacts with

17 Alabama.  There's no plaintiff identified in the complaint as

18 residing in or being a citizen of Alabama; is that correct?

19      MR. SCHOEN:  Correct, Your Honor.

20      THE COURT:  Are any of the plaintiffs Alabama

21 residents or citizens?

22      MR. SCHOEN:  No, Your Honor.  And that includes, Your

23 Honor, by way of full disclosure -- I mentioned at the status

24 conference we had that we intend to amend to add other

25 plaintiffs to the case.  Very tragic cases.  Neither of them --

1    none of them would affect my answer to that question, Your

2    Honor.

3                THE COURT:  Okay.  And thank you for that candor.

4                And in terms of witnesses, are there any --

5    currently -- I know we're very early, but do you anticipate any

6    witnesses being located in Alabama?

7                MR. SCHOEN:  I think witnesses that are relevant to

8    jurisdictional questions; that is, the application for the

9    money transfer, licenses in Alabama, the solicitation of

10   business in Alabama, customers in Alabama who invested with

11   them, potentially a registered agent in Alabama.  I'm not sure

12   that we'll have to put on witnesses about that.  Maybe we can

13   arrive at some stipulations.  But there's relevant evidence to

14   the Alabama connection.  And then that evidence, obviously,

15   needs to build into the connection between BAM, Binance, and

16   Zhao, much of which has been fleshed out by the government and

17   different government agencies already.

18               In terms of, you know, the resources for Binance

19   to have to defend against similar allegations, I pointed out in

20   the papers that I found at least, on Pacer, some 61 cases

21   around the country in courts all over the place in which

22   Binance is required to defend.  Now, certainly, they're not all

23   with the same allegations.  There's certainly overlap of theory

24   in those cases.

25               THE COURT:  And I'm not -- and I recall reading that.

1  And I'm not particularly concerned about the hardship to

2  Binance if they were to have to litigate in this court.  I'm

3  thinking right now in terms of convenience of parties and

4  witnesses.  I understand from the complaint and from the

5  briefing that at least one of the plaintiffs is in New York.

6         MR. SCHOEN:  She's a New York resident.  She happens

7  to be in Israel now.

8         THE COURT:  Well, she resides in New York.

9         MR. SCHOEN:  I think that's right, Your Honor.

10        THE COURT:  Do any of the other currently named

11 plaintiffs either reside in New York or are they -- would they

12 be citizens of New York?

13        MR. SCHOEN:  No, Your Honor, not that I'm aware of.  I

14 don't believe so.

15        THE COURT:  Are any of the other named plaintiffs

16 citizens of any state within the United States where -- for

17 example, would they be in New Jersey, which would obviously

18 have a different convenience analysis than if they were in

19 Florida?

20        MR. SCHOEN:  Right.  They're living in Israel, so I

21 don't think it's relevant.  But for example, some of the people

22 who we will be amending -- there's a couple who they're

23 American citizens and Israeli citizens, and Chicago would be

24 their home base if they were in America.  And there's another

25 family whose parents were killed who --

1              Excuse me.

2          THE COURT:  Take your time.

3          MR. SCHOEN:  -- would be in a different state also,

4  Judge.  That's a -- it's a very prominent case that's been -- I

5  see -- the pictures have been in the newspaper and all of that.

6  Every time I think about them, I see a picture of the parents

7  who were killed while taking a walk that day on their kibbutz.

8          THE COURT:  And I don't think, Mr. Schoen, there's any

9  disagreement among the parties whatsoever as to --

10          MR. SCHOEN:  Sure.

11          THE COURT:  -- the abhorrent nature of what this case

12  is about.

13          MR. SCHOEN:  Mr. Enzer has made clear -- all counsel

14  has made clear about that from day one, Your Honor.

15          THE COURT:  And it's been very clear in the briefing.

16  And I found the briefing, in addition to being legally and

17  grammatically very well done, to also be very professional in

18  the treatment of both sides and not taking unnecessary shots,

19  which I always say at seminars that's one thing that frustrates

20  me.  Let's focus on the issues, not on how good a claim is, how

21  bad a claim is, how good a defense is, how bad a defense is.

22  Let's just focus on the law and the facts.  And I think both

23  sides have done a very good job here.

24          MR. SCHOEN:  I'll say this, Judge.  I resent Mr. Enzer

25  calling me sophisticated earlier.  He might have been talking

1 about the other lawyers, but the lawyering on that side is
2 terrific, I must say.
3        THE COURT:  Well, when he referred to you, Mr. Schoen,
4 as sophisticated, he immediately lost all credibility in this
5 court.
6        MR. SCHOEN:  Exactly.  That's what I'm talking about.
7        THE COURT:  I think it was really a win for you.
8            Now, the witnesses -- and I understand your
9 witnesses on the jurisdictional issue.  I've got that.  But on
10 the substantive claims against Binance and Zhao, are there any
11 currently known witnesses or anticipated witnesses that would
12 be in New York or Alabama?
13        MR. SCHOEN:  I don't know about New York.  I don't
14 believe there are substantive witnesses in Alabama.  I think in
15 Washington D.C.
16            Remember, some of these cases, there's evidence
17 in many jurisdictions around the country.  Some of the cases
18 the government has brought against Binance have been as far as
19 the state of Washington, the state of Illinois and so on.  And
20 there -- some of them are based on -- agencies based in
21 Washington D.C., but they're field offices investigating the
22 cases, all of that.  So I would anticipate, you know, witnesses
23 around the country.
24            I -- I don't think -- you know, the -- the Court
25 may have seen the lawyers for the plaintiffs in the Raanan case

1  finally said in one of their pleadings, you know, it is

2  incumbent on Binance to pick some jurisdiction.  And they

3  haven't done that.  So there's no reason for believing -- I

4  heard Mr. Enzer pick out on page 9 one allegation about crypto

5  currency, New York, and so on.

6  The complaint is also filled with alle- -- motion

7  to dismiss papers with the connection to Alabama, which we

8  believe is, you know, more directly relevant.  If they're going

9  to come to Alabama and solicit business that helps facilitate

10  what we believe to be a criminal enterprise, then Alabama

11  courts ought to have the right, the people of Alabama ought to

12  have the right to sit in judgment over the case or to decide if

13  the case is going to be dismissed by an Alabama judge.

14  THE COURT:  And I understand -- I understand that

15  motivation.  But balanced against that, it seems to me that if

16  we have plaintiffs in both cases that may really not be either

17  permanently in New York or Alabama or maybe not even a

18  significant period of time at one of those two jurisdictions

19  and you've got witnesses who I understand now are perhaps far

20  flung across the country, if not other locations, then that

21  creates a bit of a different dynamic in terms of the expense

22  and really the inconvenience of the witnesses, but also the

23  parties somewhat inconvenienced, but definitely from an expense

24  standpoint of having to go take in two different cases, two

25  different tracks what will ultimately be, at least as I

1  understand it, very similar discovery.  It just seems that
2  that's not really perhaps the most efficient way to proceed
3  from the Court's standpoint or from the parties' standpoint or
4  from the witnesses' standpoint.
5       MR. SCHOEN:  But, you know, Your Honor, you raised
6  something earlier -- Your Honor raised something earlier that's
7  a very interesting proposition if it would work; and that is if
8  the court cases were going forward and there were a way to
9  coordinate on discovery.
10      I can tell you this.  We certainly would be -- I
11 said earlier, you know, I don't know much about these lawyers
12 other than that they were advertising for clients.  But if it
13 meant the difference I think in keeping the cases -- the
14 integrity of the cases as they are now, then I think we would
15 have to find a way to coordinate on discovery, to participate
16 in the same deposition, that sort of thing, if it happened.
17      Look, New York might dismiss based on personal
18 jurisdiction, but that might be a guiding principle we have if
19 it goes forward.  As Mr. Enzer said, if New York dismisses on
20 personal jurisdiction, we're going forward here one way or
21 another.  The Court may dismiss here.  Hopefully it wouldn't.
22 But -- but, you know, I -- I think the Court, in its great
23 wisdom, the idea of coordinating on that in this particular
24 case.  Because we are talking about a finite set of events on
25 October 7 and before and after and allegations that the

1    government has made with respect to Binance's conduct.

2            I would disagree with -- one of the things

3    with -- one of the things I would disagree with that Mr. Enzer

4    said, and that is that our pleadings are based on a resolution

5    of the cases with Binance and Zhao.  That's not the case, from

6    our perspective.  What they were able to negotiate for a plea

7    doesn't set the outer limits of what the conduct was or what

8    our proof will be in trial on this case.  And I think that our

9    proof will be much more like what the allegations were by the

10   government agencies, which we believe we can prove.

11       THE COURT:  And I did understand your point in making

12   that distinction in the briefing.

13       MR. SCHOEN:  Yes, Your Honor.

14            In terms of -- you know, I know that the Court

15   said in the status conference -- and it came up today -- the

16   Court wanted to discuss the commonality of claims and all that.

17   I know the Court has a handle on that now.  I would point out

18   that Mr. Enzer said eight differences.  We have a conspiracy

19   claim, which is relevant to Alabama directly in this case also,

20   and we have an alien tort statute in this case, which they

21   don't have.

22            When I originally briefed this, as I pointed out,

23   the Raanan plaintiffs also had Iran and Syria as defendants,

24   which is a whole 'nother -- you know, as the Court is aware, a

25   whole 'nother avenue to go down.  They've withdrawn those

1    claims, apparently.

2              In terms of, you know, inconsistent rulings, we

3    have sometimes the Eleventh Circuit disagreeing with the Second

4    Circuit.  Even on that court -- and I know Mr. Enzer knows

5    them, but I feel like I know Judge Rakoff pretty well.  The

6    idea that we're going to even have consistent decisions in that

7    district is a question to me.  Judge Rakoff, a long time ago,

8    before the -- when these guys were -- they're a lot longer than

9    I am.  Judge Rakoff ruled the death penalty unconstitutional.

10   That wasn't really the way the other judges were going in the

11   district, nor was the Second Circuit.

12             So, you know, we don't know.  We're guessing

13   about all of these things.  I do know that he's going forward

14   with a full trial schedule in that case.

15             THE COURT:  Well, tell me this, Mr. Schoen.  What

16   would the prejudice be of waiting at least some limited period

17   of time, whether it be three months, four months, six months,

18   to see what happens in the New York case?  Because obviously,

19   it is farther down the road.  And even if the Court were

20   inclined to not transfer the case, there would still be a

21   period of time here where we've got to brief the same issues

22   that are being brief -- it just seems, from an efficiency

23   standpoint -- because you just alluded to the fact that

24   depending on what they find there, it could moot the transfer

25   argument altogether and then the case would have to move

1    forward here.

2                What is the prejudice to your clients -- other

3    than understanding that they want to move and deserve to move

4    forward with the case as expeditiously as possible.  But at the

5    end of the day, we've got a court in New York that has

6    experience in this area of the law, that has a fully briefed

7    issue already pending that this Court, whether it's bound by it

8    or not, could find beneficial to the analysis of the issues

9    that are being raised.  What -- how does that formulate --

10   corollary to what I asked, how would this scenario harm

11   Mr. Enzer's clients?  If it was partially stayed, how would it

12   harm the plaintiffs substantively if it were stayed for some

13   short period of time?

14               We could revisit.  If we are six months down the

15   road and there's no indication that a ruling is forthcoming,

16   then maybe the Court has a different perspective at that point.

17         MR. SCHOEN:  I hear you, Your Honor.

18               A couple of things in response.  One, part of the

19   prejudice is something that can't be undone.  We would not have

20   entered into the stipulation if that were going to be some

21   unknown date.  We entered into a stipulation with specific

22   briefing dates.  And they knew that they were filing a motion

23   and that it was pending at the time.

24               Number two, it allows the moving party to

25   circumvent their burden.  The statute is quite clear.  They

1   have the burden at the time they file their motion of proving

2   that the transferee court has jurisdiction.  They cannot in

3   this case because they've argued in that court that they don't

4   have jurisdiction.  That's *New Hampshire versus Maine* and so on

5   and other cases like that.

6          The main burden, I suppose, is, as the Court

7   said, we want to move forward with our claims.  I do think in a

8   sense that if the Court -- first of all, I'll say this from the

9   beginning.  And I meant to say this at the beginning.  I don't

10  think -- the Court has great -- I do think the Court has great

11  discretion as to how to resolve this thing.  I don't think in

12  fairness, and with all due respect to the Court -- and I don't

13  mean this as a matter of authority.  I don't think a fair or

14  reasonable result today would be to enter a transfer order;

15  that I don't think we can do for -- even if just for the

16  reasons that the defendants have cited:  efficiency.  We can't,

17  as the Court alluded to earlier, send this case up there

18  knowing they don't -- we can't do it under 1404(a).  If we did

19  it under first-file rule, we're undermining the efficiency

20  because it may well get sent right back here.

21          I would also say -- and with respect to the

22  first-file rule that the Ninth Circuit is quite clear on it.

23  And I think that *In Re Bozic* works in our favor.  There is an

24  Eleventh Circuit case that says first-filed creates a

25  rebuttable presumption, but the 1404(a) analysis is relevant to

1    the question.  And that's in *Manuel versus Convergys Corp* at

2    430 F.3d 1132, page 1135, Eleventh Circuit 2005.  It doesn't go

3    quite as far as the Ninth Circuit.

4         I will say that the cite that I have to a

5    well-respected treatise, *Moore's,* in the case says that the

6    Ninth Circuit has it right that the analysis is cabined by

7    1404(a).  And that makes sense logically.  In the same reasons

8    we don't want to send it up there, have it get kicked back.  It

9    applies to the first-file ruling.  If the Court doesn't have

10   jurisdiction there, then it doesn't make sense.

11        But back to, you know, the prejudice.  Listen,

12   Judge, think of this.  Any reasonable person would say it's not

13   a radical proposition to stay the case for reasons that Your

14   Honor has identified.  I just -- I don't think it's the best

15   resolution in this case unless -- I'll say this.  And I don't

16   mean this in any way to be pandering.  Your Honor has thought

17   out these issues.  That's very clear.  Your Honor has done his

18   homework and put a lot of time and thought into this.  If in

19   your wisdom, that's what you believe to be the best course, a

20   stay in this case for the reasons the Court has articulated,

21   nobody could attack that and say that's an absolutely absurd

22   result.

23        I think that given the burdens here under

24   1404(a), the best result would be to move forward with our case

25   expeditiously on their motions to dismiss, whatever they want

1   to do.  We're going to have an issue in this case, you know, as
2   to service.  Because I will say this.  And again, I don't
3   attribute any intentions.  I was surprised -- given our
4   discussion earlier in the case and -- and entering the
5   stipulation, I'm surprised by the argument that Mister -- that
6   the defense has made that part of the personal jurisdiction
7   issue is that Zhao and Binance were never served.  I understand
8   from reading the papers Mr. Enzer had that, as he wrote in his
9   papers, on the top of his mind at all times this is going to be
10  an issue.  And it's especially an issue here because BAM has
11  been served.  So we're going to have to get into the
12  relationship between BAM and the others that may have affected
13  service.  It may be our argument.
14          But we -- you know, as I say, one resolution they
15  have in the Troell cases is they've had a special process
16  server appointed.  I don't know that that's going to do it for
17  them because that was the U.S. Marshals office, and now we hear
18  he's already left for the Middle East.
19          THE COURT:  Well, let me -- Mr. Enzer, let me ask you
20  a quick question.  I was -- and maybe I misread.  I thought
21  there was an agreement as part of the stipulation to waive --
22  to waive service or service-related defenses.
23          MR. ENZER:  Your Honor, we -- it -- we phrased it very
24  carefully, and that's for a very specific reason.  We were
25  essentially taking off the table a service defense.  So we're

1   not going to argue that they haven't served us; but given that

2   the statute here has a nationwide service of process provision,

3   we did not consent to service or waive service as a technical

4   matter.  And that's because we wanted to reserve our right to

5   argue lack of personal jurisdiction, if that makes sense.  And,

6   Your Honor, I have the stip in front of me.  I can read the

7   language.  It's in paragraph one, if that would be helpful.

8           THE COURT:  I've got it in front of me as well.  Let

9   me scan over it.

10              (Brief pause in proceedings)

11          THE COURT:  And I'll lift or plagiarize language from

12  a number of your filings.

13              So to be clear, will service -- if the case were

14  to move forward here, would your position be that service has

15  to be perfected under the Hague Convention, or are you saying

16  we're -- we're going to accept service but without waiver to a

17  personal jurisdiction argument?

18          MR. ENZER:  I would phrase it a little differently,

19  Your Honor.  But the point I'm making is we're not going to

20  move to dismiss for a lack of service.  For -- for purposes of

21  the case moving forward, service is not at issue.  We are --

22          THE COURT:  Okay.

23          MR. ENZER:  -- just preserving on the issue of

24  personal jurisdiction.

25              As Your Honor may recall, one of the grounds for

1  which personal jurisdiction can attach is this concept of tag

2  jurisdiction; that is, if I serve you in a state, you have -- I

3  now have personal jurisdiction over you in that state.  And I

4  think the -- that is sort of the concept of the nationwide

5  service provision of the antiterrorism statute.  And so the

6  concept here is within the rubric of jurisdiction on the

7  question of personal jurisdiction.  We are free to argue we

8  haven't been served in Alabama or anywhere for purposes of

9  jurisdiction, but we are not contesting service.

10        THE COURT:  All right.  So there -- to get into my

11  ultimate concern, there's not a scenario where we would have a

12  significant period of delay because they're going to have to

13  jump through service hoops and Hague Convention requirements?

14        MR. ENZER:  No, Your Honor.

15        THE COURT:  Okay.  Okay.

16        And I'm sorry, Mr. Schoen.  You had just -- you

17  had raised an issue I want to go ahead and try to get clarified

18  in my mind, so I'll let you pick up where you were.

19        MR. SCHOEN:  Judge, I -- I -- I mean, I think I'm

20  really finished with -- I think the outstanding question that I

21  had rambled in my answer about was what prejudice we would

22  suffer if the Court would enter the stay.  So I kind of touched

23  on, you know, the prejudice can't be undone and the idea of

24  moving forward and I believe that it allows them to circumvent

25  their burden.

1              And I think, respectfully, that if the Court were

2    to enter a stay, the purpose of that stay is to determine

3    whenever -- down the road whether the court in New York is

4    going to find that the court in New York has jurisdiction, and

5    then that may be -- again, as Judge Moses says in her order,

6    for these reasons, plaintiffs' letter motion is denied without

7    prejudice to renewal after the motion to dismiss is decided.

8    That's on jurisdictional discovery, Document 35, entered on

9    September 3rd.  Is there going to be an appeal that we need to

10   now find out, you know, what's going to happen with respect to

11   personal jurisdiction in New York?

12             So I think in a sense, if the Court -- one

13   consequence I'm concerned about with the stay is that the stay

14   essentially releases them from their burden when they file the

15   motion.  And it kind of decides the question because, you know,

16   if the New York court finds that they have jurisdiction in New

17   York, then this case is going to be transferred, if that's the

18   idea of waiting for a consistent decision.

19             THE COURT:  Well, I don't think that waiting and then

20   getting an affirmative decision on jurisdiction out of the

21   Southern District of New York mandates or controls this Court's

22   decision on transfer.  As I envision it, it would then shift

23   the analysis from what I'm going to call the threshold 1404(a)

24   issue of is there jurisdiction in that court, and then we reach

25   the nine factors and have the balancing fixed.

1          As I see it currently -- and just in candor to

2    the defense, I don't think this Court has the authority, if it

3    wanted to in this posture, to transfer this case under 1404(a).

4    Because as -- again, as I understand the briefing -- and the

5    defendants can correct me if I'm wrong on this -- there's no

6    argument that venue is lacking in the Southern District of New

7    York.  There's no argument that subject matter jurisdiction is

8    lacking in the Southern District of New York, but there is an

9    argument that personal jurisdiction is lacking in the Southern

10   District of New York.  And to get a transfer -- even though I

11   acknowledge in theory, Mr. Schoen, you could have filed this

12   case in the Southern District of New York, but you would be

13   filing it subject to a right to challenge the defendants' right

14   to challenge personal jurisdiction in that court.  But in this

15   posture, where you have filed it here, they have the burden, as

16   I understand it under the law, to show that there is personal

17   jurisdiction.  So the standards are different.

18          So I don't think I can transfer it at this point

19   even if I were inclined to.  But I think a decision in that

20   court that it does have jurisdiction would do really little

21   more than inform me, okay, we can skip over threshold issue,

22   get to the balancing test, and then make an appropriate

23   determination on the efficiency arguments and other things that

24   we've spoken on.

25          MR. SCHOEN:  Like I said earlier -- and I think I

1    speak for everybody on both sides of it -- the Court has

2    thought this through very carefully and has a handle on all of

3    the issues in the case.  So -- and what the Court just

4    articulated is what I -- what I have hoped, quite frankly.

5           THE COURT:  And I do think -- and maybe I feel a

6    little bit less in this regard today after talking through,

7    well, it may just be because of the unique circumstances of

8    this case.  Coming in, I was thinking, but I still think I

9    could reach a transfer if I were so inclined under the

10   first-to-file rule because I don't know that it is wed to the

11   same jurisdictional threshold requirement as 1404(a), but I

12   don't know for efficiency reasons if that makes sense.

13          And indeed, as I understood your argument, you

14   would not want that.  If the Court were inclined to transfer --

15   if the options are stay and let's wait and see or transfer

16   under first-to-file, you would prefer stay and let's wait and

17   see because of the inefficiencies that would potentially be

18   created if the case is transferred, then that court says, no,

19   we don't have jurisdiction, and then everybody has to figure

20   out what to do.

21          MR. SCHOEN:  Correct, Your Honor.

22          And to be clear, I don't think it would be

23   reasonable for me to say that the Court doesn't have authority

24   to do that.  The Court has, as I said, broad discretion.  I

25   think, you know, the general rule is presumption they were

1   first to file.  However, under the circumstances of this case,

2   first of all, I think Ninth Circuit controls in *Moore's* and so

3   on, that it is cabined by 1404(a).  That would be a matter of

4   authority.  So I think there's an argument the Court doesn't

5   have authority to do it under first filed.  But that's not the

6   state of the law in terms of the Court's exercising its

7   discretion in the Eleventh Circuit, as I understand it.  I

8   think it is a relevant consideration under *Manuel*.

9           But yes, I'm -- I'm probably just talking to hear

10  myself talk at this point.  The Court articulated our -- our

11  position on that.

12          THE COURT:  Right.  I don't know that I necessarily

13  agree with the reasoning of the Ninth Circuit in saying, well,

14  first-to-file is necessarily cabined by 1404(a).  I think

15  certainly the Court can pull from some of the considerations

16  that are relevant to a 1404(a) analysis and utilize those, but

17  I think the Court has a lot more discretion under first-to-file

18  analysis.  But again, the standard there is different.  And as

19  I understand it, the plaintiff is going to have more of an

20  obligation if the Court were to go down the first-to-file road

21  of coming forward with a compelling reason not to transfer.

22  So --

23          MR. SCHOEN:  I also think, Judge -- if I might just

24  interject two other thoughts on this.  I think that the

25  Court -- at least it's fair for the Court to consider the short

1   time frame between the two filings.  That's relevant under
2   first-filed cases.  And notwithstanding opposing counsel's
3   view, I think BAM makes a significant difference in this case
4   and its connection to Alabama.  And so, therefore, I think that
5   is also a factor that ought to be considered in first filed.  I
6   think we have the stronger case for jurisdiction in Alabama.
7   That's my view.
8          THE COURT:  Well, and this is another concern I have.
9   And I don't know the answer, but I would like your perspective
10  on it, because for efficiency reasons, I think you and I both
11  agree that if the Court is leaning toward a transfer, that it
12  probably doesn't need to happen right now.
13             Let's say the Court were leaning toward a denial
14  and the Court's reasoning were Binance, Zhao, you can't satisfy
15  the threshold showing at the time this motion is filed that
16  there was jurisdiction -- personal jurisdiction in the other
17  court and then we move forward for four months, six months,
18  eight months and then there's a decision out of that court that
19  says there is jurisdiction.  Is there anything that would
20  preclude those defendants from coming back in and saying, well,
21  even though we've been moving forward here, our argument is now
22  right, we never waived, you know, our transfer argument, and
23  then the Court has to take it up and potentially end up with a
24  transfer after things have moved forward here in a way that's
25  even less inefficient than some of the other inefficient

1    options we've talked about?

2         MR. SCHOEN:  I -- I don't think there would be a bar

3    to the plaintiffs doing that.  I think it happens in other --

4    it's happened in other reported cases.  And I think then the

5    Court at that time would revert to the nine factor rule and

6    decide that issue.

7         THE COURT:  And that's what I'm thinking too,

8    Mr. Schoen.  And again, it seems like we're very likely to end

9    up -- I don't want to say very -- very likely because that

10   would be dependent upon the New York court finding that it has

11   jurisdiction.  And I don't know enough about the arguments

12   there to make an educated guess as to what that court might or

13   might not do, nor would it be appropriate for me to express

14   what I think that court might or might not do.  But a scenario

15   exists where whether the Court stays the case now or doesn't

16   stay the case now, we have to ultimately revisit the nine

17   factors.  And my concern, again, trying to respect everybody's

18   efficiency interests and the Court's efficiency interests, that

19   we go about this in a way that is as streamlined as possible.

20            Now, if we get to -- I'm going to pull an

21   arbitrary date out of the air.  If we get, you know, to

22   February, March, April and there's still no writing on the

23   wall, I don't see -- I guess what I'm trying to say,

24   Mr. Schoen, is -- and I hope you have seen this -- that I do

25   respect your client's desire to move this case forward.

1          MR. SCHOEN:  Yes, Your Honor.

2          THE COURT:  I think your clients deserve to move this

3   case forward.  But I don't see any harm to your clients if the

4   Court were to decide to wait at least some brief period of time

5   to put us in a better position to know exactly what we're

6   dealing with and not send the parties on both sides down roads

7   that maybe we don't need to go down.

8          MR. SCHOEN:  I don't think anybody could say that's a

9   radical or absurd decision, Your Honor.  I would add this,

10  though.  I was thinking about this.  You know, we're talking

11  about efficiencies here.  And I very much respect the Court's

12  consideration of our clients' interests in moving forward.

13              If the issues are so directly connected and the

14  complaint is so directly connected, it shouldn't be a real

15  hardship for the defense to brief their motion to dismiss here

16  for personal jurisdiction; that they intend to do so; that if

17  we follow 1404(a)'s language and reasoning and they have the

18  burden at the time they file their motion to prove personal

19  jurisdiction in the transferee court, they cannot do that and

20  they cannot wed, as Judge Middlebrook said in a case in the

21  Southern District of Florida, the exigencies of the

22  circumstances, determine a shift in position, then we deny the

23  motion now on the transfer.  They can refile it if some other

24  event comes up, but meanwhile we move forward with the motion

25  to dismiss that they intend to file.  I think that's a

1  reasonable position.  But I cannot say that what the Court

2  proposed is a radical or absurd position.  Probably wouldn't

3  say that even if I thought it, but I can't say it.

4       THE COURT:  Well, Mr. Schoen, do I understand, if

5  we're going to call that a proposal, that your proposal would

6  be the Court deny the transfer motion, direct the defendants to

7  file whatever responses/filings they wanted to make, and then

8  the Court proceed to examine those issues?  Presumably they'll

9  be dismissal issues, 12(b)(6) and personal jurisdiction.  Am I

10 understanding that?

11      MR. SCHOEN:  Yes, Your Honor.  And if Mr. Enzer is

12 right, maybe during that time, we would have a decision from

13 the Southern District that could inform this Court.

14      But the Court is certainly familiar with

15 competing decisions that are not binding on the Court.  I mean,

16 everybody sees in the public eye now with conflicting decisions

17 between the Eleventh Circuit and the D.C. Circuit on the

18 constitutionality of Jack Smith's appointment, for example, the

19 courts have taken different positions.

20      MR. ENZER:  Your Honor, if I could just jump in.

21 The -- I think that what Mr. Schoen is proposing is consistent

22 with the stipulation.  So paragraph three of the stipulation

23 says the defendants shall not be required to move to dismiss

24 until after a decision on the motion to transfer is issued, and

25 if the case is transferred, until after the transfer has been

1  completed and then it has a schedule that's pegged off of the

2  decision for a motion to transfer.  So if the Court decided the

3  motion to transfer by saying the case is stayed, for example,

4  except for the motion to dismiss briefing, that would be a

5  decision on the motion to transfer, and we could proceed to

6  brief the -- the motion to dismiss.

7         In other words, I don't think we have an

8  objection to -- and I -- I would want to hear BAM's position on

9  this, but I don't think we have a position on briefing the

10 motion to dismiss if that makes the plaintiffs feel like

11 there's progress.  It's just that we would not want the Court

12 to rule -- although, as I'm saying this, I would want to hear

13 about a scenario where let's say Judge Koeltl decides to deny

14 the motion to dismiss in the -- in the Raanan case and now

15 we're in the middle of briefing a motion to dismiss in this

16 court.  I'm not sure that that's efficient if this Court would

17 then end up transferring the case to New York.  So I'm not sure

18 that that -- that that works.  So I guess I with- -- I withdraw

19 my midstream thought.

20        Sorry to interrupt you, Mr. Schoen.

21     MR. SCHOEN:  I -- I -- I think it does, Judge, because

22 of the time -- respectfully, because of the time frame built in

23 this briefing.  They've got a long time before they have to

24 file their motion to dismiss.  And if they're right, we may see

25 a decision from up there before then.  Then it is efficient; if

1  not, then they can renew their motion to transfer here.  That

2  was built into the thing.  All -- all they've done is basically

3  file their -- because the claims are so directly related, as

4  we've heard, they file basically the same papers they filed in

5  New York.  They file them down here.  And they have a long time

6  to do it.  And we have a while to respond to that.

7       THE COURT:  So they would have -- and if I were to

8  deny their motion today, they would have 45 days before they

9  would have to file anything?

10      MR. SCHOEN:  Correct, Your Honor.

11      THE COURT:  And then you would have 45 in response,

12  and then they would have 30, so that's -- what's that?  That's

13  a four-month --

14      MR. SCHOEN:  Yes, sir.  I -- I was about to call

15  Mr. Enzer sophisticated before he took back his position.  I

16  gave him better than sophisticated.  Reasonable, I was going to

17  call him.  That may be a little much.

18      THE COURT:  Now, you mentioned, Mr. Schoen, the

19  conspiracy claim and I believe the alien tort claim.  Don't you

20  also have a state law claim?

21      MR. SCHOEN:  Yes, Your Honor.

22      THE COURT:  Or maybe it's infliction of emotional

23  distress.  So that's an additional claim that's different from

24  what is being pursued in the current -- on the current amended

25  complaint in the Southern District of New York.

1          MR. SCHOEN:  Yes, Your Honor.

2          THE COURT:  All right.  So I'm just going to repeat

3   back, Mr. Schoen, what I think I've heard from you, which is

4   you would like the Court to deny the motion, direct the parties

5   to move forward with briefing.  And then in that four-month

6   window, if we get a decision from the Southern District of New

7   York, we can evaluate how that affects things.

8          MR. SCHOEN:  Yes, Your Honor, with respect to the

9   transfer.

10         THE COURT:  Correct, with respect to the transfer.

11             And from Mr. Enzer, your perspective, what is

12   the burden that that would impose upon your clients?  Because I

13   would presume that your 12(b)(6) and jurisdictional arguments

14   are going to be very, very similar to what you've already

15   briefed.

16         MR. ENZER:  They certainly would be similar, Your

17   Honor.  I think the -- the only issue is from an

18   efficiency perspective.  If we're in the middle of briefing and

19   a ruling comes down from Judge Koeltl or from Judge Rakoff in

20   Troell, we would want to address that.  And -- and so that may

21   require supplemental briefing or more briefing than what the

22   current schedule contemplates.  And so it just might be more

23   efficient to just wait for that so that we have it in hand and

24   all know what we're doing.

25             For example, if --

1          THE COURT:  Well, and I think another --

2          MR. ENZER:  Oh.  Sorry to interrupt, Your Honor.

3               If Judge Koeltl were to rule -- if -- if he were

4    to rule that -- if he were to deny our jurisdiction argument,

5    that would certainly affect whether we would advance -- want to

6    advance it.  I'm not sure, but it might.  But certainly, Your

7    Honor --

8          THE COURT:  Well -- go ahead.

9          MR. ENZER:  I was just going to say if the motion to

10   transfer is disposed of, if it's denied to allow briefing on

11   the motion to dismiss, we would ask that that be without

12   prejudice to renewing the motion to transfer depending on what

13   happens down the road.

14         MR. SCHOEN:  We agree to that, Your Honor.

15         THE COURT:  Right.  Yeah, I don't think there's any

16   dispute even among counsel for plaintiffs.  But the Court's

17   view would be that essentially it would just be denied as

18   almost premature in a way and that if jurisdiction were

19   established in the Southern District of New York, then you

20   could re-assert here.  But you may not be in a position

21   currently to meet your burden under 1404(a), so it would be

22   premature, but that could change where you could then move

23   forward with that argument.

24         MR. SCHOEN:  And, Judge, if I could say, I think that

25   what we agree on at least is -- what we disagree on is the idea

1  of Southern District decision -- I mean not disagree --

2  Southern District decision being dispositive.  In other words,

3  if they find they have jurisdiction, that's certainly not

4  dispositive here.  I think that the defense is giving a little

5  more credit to that.  I don't say they say it should be

6  dispositive.

7          What we agree on, I suppose, is that if the

8  Southern District finds that it does not have jurisdiction,

9  then we are in agreement that the case goes forward here.

10  That's more reason, it seems to me, for the case going forward

11  with this briefing on the motion to dismiss with the right to

12  renew transfer based on informing the Court about the decision

13  in another court, the Southern District, and the Court to

14  evaluate how much credit to give that -- how much weight to

15  give it given the nine factors as applied in this case and the

16  presence of BAM and the other factors in this case.

17          THE COURT:  The only real downside I see to that is if

18  the Southern District of New York determines that it does have

19  jurisdiction and that the 12(b)(6) arguments did not warrant

20  dismissal so that the case will be moving forward there and

21  then this Court were to evaluate the nine factors and/or the

22  first-to-file rule and conclude that the case should be

23  transferred, then whatever briefing that Binance and Zhao have

24  done in this court really just becomes irrelevant and it's no

25  longer -- it seems that's a little bit of a wasted exercise in

1   that scenario.

2          MR. SCHOEN:  In my view, the motion to transfer has

3   been -- that -- that's the problem.  Because they had no

4   authority to get the transfer, in my view, and I think this

5   has, you know, really been an imposition on our time.  That was

6   part of the reason I put that in the reply.  It certainly

7   wasn't our understanding.

8          But, look, I don't think -- they're not

9   reinventing the wheel, as they have said in other terms with

10  their briefing here.  And they don't even have to brief

11  anything for 45 days.  So they may be right that they're

12  getting --

13         THE COURT:  And it's 45 days if I enter an order

14  today.

15         MR. SCHOEN:  That's right.

16         THE COURT:  So, you know, then that's not going to

17  happen.  I'm going to need some time to look back through this.

18  So we are -- you know, we are probably looking at some period

19  beyond 45 days before anything would be due.  So let's just say

20  if it were to be pushing 60 days, that's another two months for

21  a motion that's already been pending three months in that court

22  to potentially get resolved.

23         MR. SCHOEN:  I'm afraid that the alternative really

24  gives too much credit to what happens in the Southern District

25  in terms of the effect.  Because, look, we're already timewise

1   behind them.  And with respect to Troell, you know, nobody is

2   catching up with Judge Rakoff in that case.  He's got a trial

3   scheduled for June, literally.

4          THE COURT:  Well, what do you say, though, Mr. Schoen,

5   about BAM's argument?  Because it sounds like their motion here

6   might not look as much like their motion in New York as the

7   foreign defendants' motions would look if they were required to

8   be filed in both courts.  So why should we put BAM through

9   those paces when they potentially could then be transferred to

10  New York and have to address different arguments based upon,

11  you know, activity in that state versus in Alabama?

12         MR. SCHOEN:  Well, it -- it's interesting how that

13  would play out, frankly.  The transfer's effect on BAM when our

14  allegations about BAM's conduct in Alabama, how that's going to

15  play out in the Southern District, that may be part -- have to

16  be part of the transfer analysis, frankly, and the severance on

17  the transfer if their argument is going to be BAM doesn't

18  really have connection to the Southern District and our choice

19  of forum was Alabama.  But I don't know the answer to that.

20             I think that the arguments here by all of the

21  parties are going to be the same with respect to Twitter, as

22  Mr. Enzer said, and some of these other questions.  There's an

23  issue here about BAM's connection to Alabama and the service

24  that's been made and so on on BAM and their -- then their

25  relationship to -- to the others, to Binance and to Mr. Zhao.

1    But I don't think I can answer that any better than that,
2    really.
3                I think they would be virtually on the same page.
4    BAM may have additional arguments to make here.  But I don't
5    think that -- that's certainly not a reason to transfer; in
6    other words, to let them get out of the argument that, you
7    know, they're more connected to Alabama than to the Southern
8    District.  That would be, I think, an unfair result.
9            THE COURT:  And let me direct this back to Mr. Enzer
10   because it pertains to the first-to-file rule.
11               In looking -- and I haven't done a deep dive on
12   this by any means.  But in looking at some of the cases that
13   were cited, it seems that courts maybe have done different
14   things in deciding which court makes the determination of
15   whether to transfer or not.  I recall seeing one case where if
16   we apply it to this scenario, this Court will decide whether
17   there's a substantial overlap that would potentially be
18   (unintelligible) by analysis.  And if the Court so concludes, I
19   believe there was an explanation that the first court would
20   then decide whether a transfer there would be in the best
21   interest or not.
22               Are you asking this Court to make that
23   determination, number one?  And number two, if so, is that what
24   the law allows, or is there any competing authority that says
25   that the Southern District of New York should decide?

1          MR. ENZER:  Your Honor, my understanding of the case,

2     we are asking this Court to decide the issue of transfer.  My

3     understanding of the case law is that's permitted.  I'm not

4     aware of the cases saying that the transferee court has a say

5     in it.  I'm not saying Your Honor is wrong.  I just don't

6     remember anything along those lines.

7          THE COURT:  And honestly, I was surprised to read

8     something to that effect.

9          MR. SCHOEN:  There are some transfer back cases,

10    Judge.  I think Judge Thompson had one.  But there are some

11    transfer back cases.  But I think we're in agreement with

12    Mr. Enzer on the -- you know, it's -- it's for this Court to

13    decide.

14              In fact, you know, the question goes further even

15    on the personal jurisdiction thing, where some courts have made

16    the mistake in analyzing whether the transferee court had

17    jurisdiction to decide that question.  And that's really not

18    the analysis.  But I think this is the -- I think it's the

19    case, as Mr. Enzer said, for this Court to decide first-to-file

20    rule.  It may be that a party -- it is that a party can file a

21    motion -- a transfer back motion.  But again, you know, first-

22    to-file is relatively discretionary.  So --

23          MR. ENZER:  Your Honor may be thinking of the *In Re*

24    *Bozic* case, the Ninth Circuit case.  And I think they were

25    talking about the possibility in analyzing whether a writ of

1    mandamus was necessary.  They -- they discussed the

2    possibility -- the Ninth Circuit discusses the possibility that

3    the transferee court could transfer it back, as Mr. Schoen

4    suggests.  But I think the -- the first-to-file rule, as I

5    understand it, is the court with the case makes the

6    determination.  And if the first-to-file rule applies and the

7    court has the authority, then it transfers the case.  And then

8    a --

9        THE COURT:  And that was always, Mr. Enzer, my

10   understanding as well.  But I'm looking at -- and we don't have

11   to take this up now, but just to let you know what prompted

12   that question.  It's the Southern District of Alabama case

13   DOCRX.  It's 2015 Westlaw 3503170.  It seems to take a

14   different approach that was inconsistent with what my intuition

15   was, what I've seen before, what I've seen in other cases that

16   were cited in the briefing.  So I didn't know if there was any

17   disagreement.  It sounds like nobody is going to make an

18   appealable issue out of this court if it were to undertake to

19   determine that issue.

20       MR. SCHOEN:  Correct, Your Honor.

21       THE COURT:  Mr. Schoen, is there anything further that

22   you want to speak to or get into while we're together this

23   morning?  I'm not trying to short-circuit either side, but I

24   also don't want to belabor these issues that we've been

25   addressing for two hours.

1          MR. SCHOEN:  I'd be surprised if anyone could suggest

2     that Your Honor short-circuited the discussion in this case.

3     And I'm going to go so far as to say in any case, given your

4     approach in the cases.  So I don't have anything further that

5     I'd like to say, Your Honor.  And I appreciate very much the

6     time you've given to all of the counsel and all counsel on

7     these issues.  The Court takes it very seriously and his

8     preparation very seriously.

9          THE COURT:  Well, I have -- thanks for that.  I have a

10    number of pages of notes here with embedded questions.  I don't

11    know if I've covered them all.  But part of the problem that

12    arises from handwriting such as mine is what makes sense at the

13    time when I'm doing this does not always translate to when I'm

14    in court trying to read it on the fly.

15         MR. SCHOEN:  Same here, Your Honor.

16         THE COURT:  And you may be seated, Mr. Schoen.

17         MR. SCHOEN:  Thank you, Your Honor.

18         THE COURT:  Mr. Enzer, do you have anything that you

19    want to get into that we haven't gotten into?

20              I know that we haven't spoken directly to the

21    nine factors that would be triggered if the Court were inclined

22    to go farther down the road of the 1404(a) analysis.  It seems

23    like we're all in agreement that we really can't go down and

24    shouldn't go down that road in the current posture.  And when

25    and if we are in a position potentially to go down that road if

1  that becomes an issue in the case, then we can have a resumed
2  hearing.  So don't feel compelled to get into all of those
3  issues.  But is there anything in terms of the issue on the
4  stay or the first-to-file that hasn't been spoken to that you
5  want an opportunity to speak to?
6         MR. ENZER:  Just one thing, Your Honor.  In light of
7  where the discussion was headed, as Your Honor, I'm sure,
8  knows, there is a six-month list in the Southern District of
9  New York and I think in all federal courts across the nation,
10  and I believe that comes out in March.  And so perhaps the
11  thing to do here just as a practical consideration is to peg
12  the -- the -- to sort of hold the motion open or peg it to that
13  as the sort of next check-in, with the expectation and hope
14  that we would have a ruling from Judge Koeltl and/or Judge
15  Rakoff by then and potentially well in advance of then.  And if
16  we haven't gotten a ruling by then, as the Court said, we would
17  be in a different posture and may look at this whole thing
18  differently.
19         But that's it, Your Honor.  And thank you for the
20  consideration.
21         THE COURT:  Well, what I found, Mr. Enzer, is that I
22  traded the pressure of the billable hour requirement for the
23  pressure of the six-month report, which I will say, much like
24  when you're being recruited as an associate, was perhaps not as
25  fully disclosed as it could have been until you show up.

1          MR. ENZER:  Yes, Your Honor.  I clerked -- the first
2  job I had after law school was a clerkship for two years for
3  Judge Stanton in the Southern District.  And August and
4  September and February and March were long -- they were long
5  days in those parts.
6          THE COURT:  Mr. Prater, do you have anything to add?
7          MR. PRATER:  No, sir, Your Honor.  Thank you.
8          THE COURT:  I mean, you have done yeoman's work here
9  today.
10          MR. PRATER:  I thought it was good.
11          THE COURT:  Today may be the best I've ever seen
12  (unintelligible).
13          MR. PRATER:  The less said by me, the better.
14          THE COURT:  And, Ms. McCracken, I don't want to short-
15  change you.
16          MS. McCRACKEN:  Nothing from me either, Your Honor.
17  Thank you for the time.
18          THE COURT:  Okay.  Anything further from BAM?
19          MR. SANSOM:  No, Your Honor.
20          THE COURT:  There being nothing further, thank you
21  all.  I will give this a good look and try to get something out
22  relatively soon while it's fresh.  I know the parties need to
23  and deserve to know how we're going to move forward.  I can't
24  say if that will be the next few days or the next week or two.
25  It really depends on what else may pop up unexpectedly, but

1  this is on the front burner to try to get handled.  But there
2  being nothing further, we are adjourned for today.
3                    (Proceedings concluded at 12:31 p.m.)

1              COURT REPORTER'S CERTIFICATE

2         I certify that the foregoing is a correct transcript

3    to the best of my ability from the official sound recording of

4    proceedings in the above-entitled matter.

5         This 22th day of November, 2024.

6

7                              /s/ Dee Coker
                               Official Court Reporter
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25