# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | |
|---|---|
| ADIN GESS, NOACH NEWMAN, MAYA PARIZER, NATALIE SANANDAJI, YONI DILLER, HAGAR ALMOG, LISHAY LAVI, DAVID BROMBERG, and ARIEL EIN-GAL, <br><br> Plaintiffs, <br><br> - v. - <br><br> BAM TRADING SERVICES INC. d/b/a BINANCE.US, a Delaware corporation, and BINANCE HOLDINGS LTD. d/b/a BINANCE, a foreign company, and CHANGPENG ZHAO, <br><br> Defendants. | Civil Action Case No. 24 Civ. 00134 <br><br><br> **ORAL ARGUMENT REQUESTED** |

## BINANCE HOLDINGS LIMITED'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................1

THE COMPLAINT'S ALLEGATIONS ..................................................................3

ARGUMENT ...........................................................................................................7

I.    NEARLY HALF THE PLAINTIFFS LACK STANDING UNDER THE
      ATA/JASTA OR THE ATS. ...................................................................................7

II.   THE COMPLAINT SHOULD BE DISMISSED AS AN IMPERMISSIBLE
      "SHOTGUN PLEADING" ...................................................................................7

III.  THE COMPLAINT FAILS TO ADEQUATELY PLEAD PERSONAL
      JURISDICTION OVER BHL. .............................................................................8

IV.   THE COMPLAINT FAILS TO STATE A CLAIM FOR PRIMARY
      LIABILITY UNDER THE ATA (COUNTS 3 AND 4). ...............................12

V.    THE COMPLAINT FAILS TO STATE AN AIDING-AND-ABETTING
      CLAIM UNDER THE ATA AND JASTA (COUNT 1). .............................18

   A.  The Complaint Does Not Allege That Defendants Knowingly and
       Substantially Assisted the Attacks. ............................................................19

   B.  The *Halberstam* Factors Confirm That the Complaint Does Not State an
       Aiding-and-Abetting Claim. .......................................................................25

   C.  The Complaint Does Not Allege That BHL Was Generally Aware of Any
       Role in the Relevant Terrorist Activity. .....................................................27

VI.   THE COMPLAINT FAILS TO STATE A CONSPIRACY CLAIM UNDER
      THE ATA (COUNT 2). .......................................................................................29

   A.  Plaintiffs Do Not Allege an Agreement Between BHL and FTOs to
       Commit Acts of International Terrorism. ....................................................30

   B.  Plaintiffs Fail to Allege an Overt Act in Furtherance of an Agreement to
       Commit Terrorism. .....................................................................................31

VII. PLAINTIFFS' CLAIM UNDER THE ATS FAILS FOR LACK OF
      JURISDICTION (COUNT 5). ...........................................................................32

VIII. THE COMPLAINT FAILS TO STATE A CLAIM FOR NEGLIGENT
INFLICTION OF EMOTIONAL DISTRESS (COUNT 6)...........................33

CONCLUSION..........................................................................................................34

# TABLE OF AUTHORITIES

**Cases**

**Page(s)**

*Alvarez Galvez* v. *Fanjul Corp.*,
    533 F. Supp. 3d 1268 (S.D. Fla. 2021)................................................................32

*Averbach* v. *Cairo Amman Bank*,
    2022 WL 2530797 (S.D.N.Y. Apr. 11, 2022) .....................................................16

*Bernhardt* v. *Islamic Republic of Iran*,
    47 F.4th 856 (D.C. Cir. 2022)..........................................................25, 28, 30, 31

*Calder* v. *Jones*,
    465 U.S. 783 (1984)...............................................................................................8

*Cherry* v. *Pinson Termite & Pest Control, LLC*,
    206 So. 3d 557 (Ala. 2016)..................................................................................34

*In re Chiquita Brands International, Inc.*,
    284 F. Supp. 3d 1284 (S.D. Fla. 2018)................................................................30

*Coinbase, Inc.* v. *SEC*,
    126 F.4th 175 (3d Cir. 2025) ...............................................................................24

*Day* v. *Taylor*,
    400 F.3d 1272 (11th Cir. 2005) .............................................................................5

*Direct Sales Co.* v. *U.S.*,
    319 U.S. 703 (1943)..............................................................................................24

*Doe* v. *Drummond Co.*,
    782 F.3d 576 (11th Cir. 2015) .............................................................................32

*Doe* v. *Unocal Corp.*,
    27 F. Supp. 2d 1174 (C.D. Cal. 1998).................................................................10

*Durham* v. *LG Chem, Ltd.*,
    2022 WL 274498 (11th Cir. Jan. 31, 2022) (per curiam)..............................10, 11

*Fields* v. *Twitter, Inc.*,
    881 F.3d 739 (9th Cir. 2018) ...............................................................................17

iii

*Flagstar Enterprises, Inc.* v. *Davis*,
709 So. 2d 1132 (Ala. 1997)................................................................................33

*Freeman* v. *HSBC Holdings PLC*,
57 F.4th 66 (2d Cir. 2023) .............................................................................30, 31

*Halberstam* v. *Welch*,
705 F.2d 472 (D.C. Cir. 1983).......................................................................25, 26

*Honickman* v. *BLOM Bank SAL*,
6 F.4th 487 (2d Cir. 2021) ..................................................................................29

*Jarvis* v. *Taylor*,
2018 WL 1833874 (M.D. Ala. Feb. 12, 2018)....................................................34

*Jesner* v. *Arab Bank, PLC*,
584 U.S. 241 (2018)........................................................................................3, 32

*Kaplan* v. *Lebanese Canadian Bank, SAL*,
999 F.3d 842 (2d Cir. 2021) ................................................................................29

*Kemper* v. *Deutsche Bank AG*,
911 F.3d 383 (7th Cir. 2018) ..................................................................14, 15, 30

*King* v. *Habib Bank Ltd.*,
2022 WL 4537849 (S.D.N.Y. Sept. 28, 2022) ....................................................13

*In re LIBOR-Based Financial Instruments Antitrust Litigation*,
2019 WL 1331830 (S.D.N.Y. Mar. 25, 2019)...............................................11, 12

*Linde* v. *Arab Bank, PLC*,
882 F.3d 314 (2d Cir. 2018) ..........................................................................16, 27

*Mack* v. *Cooper Surgical, Inc.*,
2023 WL 2653365 (M.D. Ala. Mar. 27, 2023) .....................................................8

*Moore* v. *Lowe*,
591 F. Supp. 3d 1087 (N.D. Ala. 2022)...............................................................11

*Newman* v. *Associated Press*,
2024 WL 5063288 (S.D. Fla. Dec. 10, 2024)...............................................*passim*

*O'Sullivan* v. *Deutsche Bank AG*,
2019 WL 1409446 (S.D.N.Y. Mar. 28, 2019)........................................13, 16, 24

*Raanan* v. *Binance Holdings Ltd.*,
2025 WL 605594 (S.D.N.Y. Feb. 25, 2025) ................................................*passim*

*Republic of Panama* v. *BCCI Holdings (Luxembourg) S.A.*,
119 F.3d 935 (11th Cir. 1997) ...............................................................................8

*Rosner* v. *Bank of China*,
528 F. Supp. 2d 419 (S.D.N.Y. 2007) ..................................................................25

*Rothstein* v. *UBS AG*,
708 F.3d 82 (2d Cir. 2013) ...................................................................................17

*Ruiz de Molina* v. *Merritt & Furman Insurance Agency, Inc.*,
207 F.3d 1351 (11th Cir. 2000) ............................................................................11

*Siegel* v. *HSBC North America Holdings, Inc.*,
933 F.3d 217 (2d Cir. 2019) .................................................................................24

*Snow* v. *DirecTV, Inc.*,
450 F.3d 1314 (11th Cir. 2006) ..............................................................................9

*Taamneh* v. *Twitter, Inc.*,
No. 3:17 Civ. 04107 (EMC) (N.D. Cal. May 16, 2018), ECF No.
55.............................................................................................................................29

*Taylor* v. *Alabama*,
95 F. Supp. 2d 1297 (M.D. Ala. 2000)..................................................................33

*In re Terrorist Attacks on Sept. 11, 2001*,
714 F.3d 118 (2d Cir. 2013) ...........................................................................17, 18

*Tinsley* v. *BP Corp. North America*,
112 F. Supp. 3d 1253 (N.D. Ala. 2015)..................................................................9

*Twitter, Inc.* v. *Taamneh*,
598 U.S. 471 (2023)......................................................................................*passim*

*United Steelworkers of America, AFL-CIO-CLC* v. *Connors Steel Co.*,
855 F.2d 1499 (11th Cir. 1988) .........................................................................8, 9

*Weiss* v. *National Westminster Bank, PLC*,
   993 F.3d 144 (2d Cir. 2021) ................................................................................14

*Zapata* v. *HSBC Holdings PLC*,
   414 F. Supp. 3d 342 (E.D.N.Y. 2019) ................................................................18

*Zobay* v. *MTN Group Ltd.*,
   695 F. Supp. 3d 301 (E.D.N.Y. 2023) ....................................................10, 20, 30

**Statutes**

18 U.S.C. § 2331 ..........................................................................................13, 14, 16

18 U.S.C. § 2333 ............................................................................................*passim*

18 U.S.C. § 2334(a) ...............................................................................................10

18 U.S.C. § 2339A ............................................................................................3, 15

18 U.S.C. § 2339B ............................................................................................3, 15

28 U.S.C. § 1350 ............................................................................................*passim*

**Other Authorities**

Fed. R. Civ. P. 4(k)(1) ...................................................................................9, 10, 11

Fed. R. Civ. P. 8 ..................................................................................................1, 7

Fed. R. Civ. P. 10(b) ...........................................................................................1, 7

Fed. R. Civ. P. 44.1 ...............................................................................................33

## PRELIMINARY STATEMENT[1]

This case concerns the abhorrent attacks of October 7, 2023 (the "Attacks"), which Binance Holdings Limited ("BHL") unequivocally condemns. The perpetrators of the Attacks should be brought to justice, but they are not before the Court. Instead, Plaintiffs are trying to hold an operator of a global, generally available cryptocurrency exchange liable for the Attacks, asserting claims under the Anti-Terrorism Act of 1990 ("ATA") (18 U.S.C. § 2333(a)), the Justice Against Sponsors of Terrorism Act ("JASTA") (18 U.S.C. § 2333(d)), the Alien Tort Statute ("ATS") (28 U.S.C. § 1350), and state law. As explained below, Plaintiffs' Complaint fails as a matter of law for several reasons, and should be dismissed.

*First*, as explained more fully in Sections III.A.2 and III.B of the moving brief of Defendant Changpeng Zhao, in which BHL joins, several Plaintiffs lack standing to assert ATA/JASTA and ATS claims.

*Second*, as detailed in Section III.A of the moving brief of Defendant Binance.US ("BAM"), in which BHL also joins, the Complaint should be dismissed as an impermissible "shotgun pleading" because its confusing and conclusory allegations run afoul of Federal Rules of Civil Procedure 8 and 10(b).

---

[1] Unless otherwise noted, capitalized terms have the same definitions as in the Complaint (ECF No. 1) ("Compl."), emphasis is added, and internal citations and quotations are omitted.

*Third*, as discussed below, the Complaint fails to plead any basis for personal jurisdiction over BHL.

*Fourth*, the Complaint's ATA primary liability claims fail because Plaintiffs do not, and cannot, plausibly allege that BHL committed an "act of international terrorism," as the ATA requires, nor that BHL proximately caused Plaintiffs' alleged injuries.

*Fifth*, the Complaint fails to plead ATA/JASTA aiding-and-abetting liability against BHL, since, among other things, it does not plausibly allege that BHL actively, intentionally, and knowingly assisted terrorists in carrying out any of the Attacks; but rather, relies on conclusory allegations that terrorist organizations need money to carry out their violent acts, some of the money the terrorists acquired involved digital assets—including through Binance's generally-available exchange—and BHL failed to implement adequate anti-money laundering controls to prevent this, which is plainly insufficient under controlling Supreme Court precedent. *See Twitter, Inc.* v. *Taamneh*, 598 U.S. 471, 483-84 (2023).

*Sixth*, the Complaint fails to plead ATA/JASTA conspiracy liability, since it does not adequately allege an agreement between BHL and any terrorist group, nor an overt act in furtherance of such an agreement.

*Seventh*, Plaintiffs cannot bring an ATS claim against BHL since (as the Complaint acknowledges) BHL is a foreign corporation, and the Supreme Court has

2

held that foreign corporations cannot be sued under the ATS.  *See Jesner* v. *Arab Bank, PLC*, 584 U.S. 241, 272 (2018).

*And finally*, Plaintiffs' state law claim—for negligent infliction of emotional distress—is not cognizable under Alabama state law.

For these and the reasons discussed below, the Court should dismiss the Complaint.

## THE COMPLAINT'S ALLEGATIONS

Plaintiffs are nine individuals who allege they or their family members were victims of the Attacks.  While acknowledging that Hamas and the Palestinian Islamic Jihad ("PIJ") were the perpetrators of the Attacks, the Complaint seeks to hold BHL liable for the Attacks, based on six theories:  (1) aiding and abetting designated foreign terrorist organizations ("FTOs") (Count 1), and (2) conspiring with FTOs (Count 2), both in violation of the ATA and JASTA, 18 U.S.C. §§ 2333(a), (d); (3) providing material support to terrorists in violation of the ATA, 18 U.S.C. §§ 2333(a), 2339A (Count 3); (4) providing material support to FTOs in violation of the ATA, 18 U.S.C. §§ 2333(a), 2339B(a)(1) (Count 4); (5) aiding and abetting and providing material support in furtherance of violations of United States law and international treaties, in violation of the ATS, 28 U.S.C § 1350 (Count 5); and (6) negligent infliction of emotional distress (Count 6).

3

But the Complaint contains no allegations tying BHL to the Attacks or the terrorist groups that perpetrated them. Plaintiffs do not allege, for example, that BHL (1) planned or participated in the Attacks, (2) intended to support the Attacks, (3) had advance knowledge of the Attacks, or (4) had any connection to the Attacks' perpetrators. Moreover, the Complaint does not—and could not—allege a single act by BHL, nor even a single transaction by a Binance user, that funded or caused the Attacks.

Instead, the Complaint relies on disjointed allegations that, according to Plaintiffs, suggest that: (1) Binance was accessed and used by customers with connections to terrorism, often masking their location to avoid detection by BHL; (2) BHL must have known that individuals associated with Hamas and other terrorists were among the over 120 million users transacting on the Binance exchange; and (3) BHL as a general matter did not follow anti-money laundering ("AML") laws and know-your-customer ("KYC") rules, or file required Suspicious Activity Reports ("SARs"). At bottom, Plaintiffs assert that BHL aided the Attacks simply by providing a platform used by tens of millions of users, and failing to file SARs, which Plaintiffs say made it harder for U.S. authorities to cut off the FTOs' financing. (*See, e.g.*, Compl. ¶ 48).

*Allegations That BHL Knew Hamas and Associated FTOs Were Using Binance*

To support their speculative assertions that BHL knew some of its 120 million users had ties to Hamas and other terrorists, Plaintiffs rely on two sources of information, which, together or separately, fail to support an ATA claim.

*U.S. Regulatory Actions*:   Plaintiffs rely most heavily on U.S. regulators' statements and related materials, including a complaint by the Commodity Futures Trading Commission, a 2023 Consent Order between BHL and the Financial Crimes Enforcement Network ("FinCEN"), press releases by the U.S. Treasury Department, and plea agreements with the Department of Justice ("DOJ").  But—as the actual documents, rather than Plaintiffs' cherry-picked excerpts, show—those materials state only that BHL did not have adequate AML and sanctions controls, and failed to register with FinCEN as a money service business.  (*See* Declaration of Samson A. Enzer in support of BHL's Motion to Dismiss ("Enzer Decl.") Exs. 1-5).[2]  None of the regulators alleged that BHL intentionally supported any terrorist group, let alone the Attacks.  Indeed, as the Treasury Department acknowledged, despite its AML lapses, BHL "proactively cooperated with global law enforcement and

---

[2] The Court may consider these materials in deciding BHL's motion to dismiss, because they were incorporated by reference into Plaintiffs' Complaint. (*See, e.g.*, Compl. at 17-19); *Day* v. *Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005) ("[A] court may consider a document attached to a motion to dismiss [ . . . ] if the document's contents are alleged in a complaint and no party questions those contents.").

blockchain vendors to combat terrorist financing." (*See* Enzer Decl. Ex. 2 (FinCEN Consent Order) at 46). Moreover, most of Plaintiffs' out-of-context quotes, which they purport show BHL's knowledge that terrorists were using Binance, are from the regulators' backward-looking reviews, which say nothing about whether BHL knew any transactions were linked to terrorists *at the time those transactions occurred*. And even when the Complaint tries to allege BHL's contemporaneous knowledge, it does so only in conclusory terms. (*See, e.g.*, Compl. at 3 ("compliance personnel and rank-and-file employees knew that its operations were being used to fund Hamas, as well as other FTOs"); *id*. ¶ 47 ("[d]efendants moreover discussed, planned and collaborated to continue processing transactions that they knew to be illegal")).

*Public Statements by Politicians*: The Complaint also cites statements by public figures about cryptocurrency, including statements from U.S. legislators that Binance was used by bad actors to fund their activities, and calling for the DOJ to crack down. (*Id.* at 15, 17). But the Complaint does not state the factual basis for these politicians' statements, and in any event the statements do not connect Binance, nor any transactions on the exchange, to the Attacks.

*Allegations Attempting to Link BHL Users' Transactions to Terrorists*

Plaintiffs next allege that BHL "processed numerous transactions to entities and accounts associated with Hamas and other FTOs." (*Id.* at 6-7). For this sweeping

and conclusory allegation, Plaintiffs rely on "data from three blockchain analytics firms." (*Id.* at 20). But that data is not attached to Plaintiffs' Complaint, nor do Plaintiffs explain how the data links BHL users' transactions to Hamas or other FTOs, nor whether those links would have been apparent to BHL at the time the transactions occurred. Plaintiffs also distort a CoinDesk.com article by suggesting it links BHL to a spike in donations to Hamas around May 2023, when in fact the article refers generally to cryptocurrency donations to Hamas in 2021, and reports that BHL *blocked* a wallet associated with Hamas. (*Id.*).

## ARGUMENT

## I. NEARLY HALF THE PLAINTIFFS LACK STANDING UNDER THE ATA/JASTA OR THE ATS.

Defendant Changpeng Zhao's moving brief details why several of the Plaintiffs lack standing to bring claims under the ATA/JASTA or the ATS. To spare the Court additional and overlapping briefing, BHL joins in Mr. Zhao's motion to dismiss those Plaintiffs' claims for lack of standing. (*See* Apr. 14, 2025 Brief of Defendant Changpeng Zhao ("Zhao Br.") at Sections III.A.2-III.B).

## II. THE COMPLAINT SHOULD BE DISMISSED AS AN IMPERMISSIBLE "SHOTGUN PLEADING."

Defendant BAM's moving brief details why the Complaint—which repeatedly lumps all Defendants together under the term "Binance" without specifying which allegations apply to each—is an impermissible "shotgun pleading" under Federal Rules of Civil Procedure 8 and 10(b). (*See* Apr. 14, 2025 Brief of

7

BAM ("BAM Br.") at Section III.A). BHL joins in BAM's motion to dismiss the Complaint on these grounds.

## III.  THE COMPLAINT FAILS TO ADEQUATELY PLEAD PERSONAL JURISDICTION OVER BHL.

"[T]o survive a motion to dismiss for lack of personal jurisdiction, a plaintiff's complaint must allege sufficient facts to make out a *prima facie* case of jurisdiction." *Mack* v. *Cooper Surgical, Inc.*, 2023 WL 2653365, at *2 (M.D. Ala. Mar. 27, 2023). This requires allegations that demonstrate both a statutory basis for jurisdiction and that the exercise of jurisdiction comports with due process. *Republic of Panama* v. *BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 942 (11th Cir. 1997). Plaintiffs have demonstrated neither with respect to BHL.

*First*, because jurisdiction is defendant-specific, a plaintiff must carry its burden as to each defendant. *See Calder* v. *Jones*, 465 U.S. 783, 790 (1984) ("Each defendant's contacts with the forum State must be assessed individually."). Plaintiffs have not even attempted to do that here. Instead, they impermissibly lump Defendants together for the purposes of pleading personal jurisdiction, claiming that "[a]ll Defendants are inextricably intertwined."[3]  (Compl. ¶ 31; *see also id.* ¶ 18

---

[3] To the extent Plaintiffs attempt to premise jurisdiction over BHL on a theory that BHL and BAM are alter-egos and any contacts BAM might have with the state of Alabama should be imputed to BHL, Plaintiffs have failed to adequately plead this in their Complaint. Not only does the Complaint lack any allegations necessary to an alter ego theory, such as domination and control or inadequate capitalization (*see United Steelworkers of America, AFL-CIO-CLC* v. *Connors Steel Co.*, 855 F.2d

("Defendants are required to have a registered agent in Alabama in order to do business in the state and, indeed, have a registered agent in Montgomery, Alabama[,]" and "Defendants solicit and conduct substantial business in the State of Alabama")).  Courts routinely reject conclusory group pleading of this sort, and this Court should do the same here.  *See, e.g.*, *Snow* v. *DirecTV, Inc.*, 450 F.3d 1314, 1318 n.3 (11th Cir. 2006) (no personal jurisdiction where plaintiff made "vague and conclusory allegations" that the defendants "acted alone and in concert to commit acts"); *Tinsley* v. *BP Corp. North America*, 112 F. Supp. 3d 1253, 1257-58 (N.D. Ala. 2015) (no personal jurisdiction where plaintiff "lump[ed] all the named defendants together as BP" and made "no particularized allegations about why the exercise of personal jurisdiction over [moving defendants] would be constitutional").

*Second*, Plaintiffs cannot rely on Federal Rule of Civil Procedure 4(k)(1)(C) as a basis for jurisdiction over BHL, because Plaintiffs did not serve BHL within the United States, as required by the rule.  Rule 4(k)(1)(C) states that "[s]erving a summons or filing a waiver of service establishes personal jurisdiction over a defendant . . . when authorized by a federal statute."  Accordingly, where a federal

---

1499, 1505 (11th Cir. 1988)), but none of BAM's alleged contacts with the state are suit-related, and they are therefore incapable of supporting personal jurisdiction over either Defendant.  (*See* BAM Br. at Section III.B.2).

statute, such as the ATA (18 U.S.C. § 2334(a)), allows nationwide service, Rule 4(k)(1)(C) "permits the exercise of personal jurisdiction over parties properly served anywhere in the United States." *Zobay* v. *MTN Group Ltd.*, 695 F. Supp. 3d 301, 322 (E.D.N.Y. 2023). But the Eleventh Circuit has held that where, as here, the defendant was not served in the United States, Rule 4(k)(1)(C) does not provide a basis for the exercise of "personal jurisdiction over a party notwithstanding its lack of contacts with the forum state." *Durham* v. *LG Chem, Ltd.*, 2022 WL 274498, at *2 (11th Cir. Jan. 31, 2022) (per curiam) (Rule 4(k)(1)(C) inapplicable because service was affected under the Hague Convention rather than pursuant to a federal statute authorizing nationwide service); *see also Doe* v. *Unocal Corp.*, 27 F. Supp. 2d 1174, 1183 (C.D. Cal. 1998) ("[I]t would be inappropriate for a federal court to effectively extend the territorial reach of a federal statute by applying a national contacts test for personal jurisdiction where service is not effected pursuant to that federal statute.").

Here, there can be no dispute that BHL was never served. To allow the Parties to litigate this motion, the Parties entered into a stipulation that explicitly provided that BHL "***do[es] not concede that service has been effectuated within the Middle District of Alabama (or anywhere else)***, and Plaintiffs agree not to argue that the waiver affects any of [BHL's] other rights, defenses, or objections (including but not limited to defenses based upon lack of personal or subject matter jurisdiction . . . ."

10

(ECF No. 15, ¶ 1). Per the terms of the Parties' stipulation, BHL has not conceded service in this action and it has not been served, and therefore cannot be subject to personal jurisdiction under Rule 4(k)(1)(C). And even if BHL were served overseas under the Hague Convention, this would be insufficient to confer jurisdiction under Rule 4(k)(1)(C). *Durham*, 2022 WL 274498, at \*2.

*Third*, Plaintiffs have not pled that BHL has contacts—with either the State of Alabama or the United States as a whole—sufficient to support the exercise of personal jurisdiction.[4] *See Moore* v. *Lowe*, 591 F. Supp. 3d 1087, 1102 (N.D. Ala. 2022) (specific jurisdiction requires that "the defendant's *suit-related conduct* . . . create a substantial connection with the forum State"). Indeed, the Complaint fails to allege *any* contacts between BHL and the state of Alabama, much less specific contacts "related to" or "giving rise" to Plaintiffs' claims. *Id.* To the extent Plaintiffs seek to premise jurisdiction on BHL's nationwide contacts, that too fails because, again, those contacts are not suit-related. *See, e.g.*, *In re LIBOR-Based Financial Instruments Antitrust Litig.*, 2019 WL 1331830, at \*22 (S.D.N.Y. Mar. 25, 2019)

---

[4] Alabama's long arm statute "permits its courts to exercise jurisdiction over nonresidents to the fullest extent allowed under the Due Process Clause of the Fourteenth Amendment to the Constitution." *Ruiz de Molina* v. *Merritt & Furman Insurance Agency, Inc.*, 207 F.3d 1351, 1355-56 (11th Cir. 2000). Accordingly, the statutory and due process requirements merge, and a court may only exercise personal jurisdiction where the defendant "has some minimum contacts" with the state, and "the exercise of personal jurisdiction over the defendant would not offend traditional notions of fair play and substantial justice." *Id.* at 1356.

("[I]n evaluating the existence of personal jurisdiction for federal claims arising from statutes with nationwide service of process provisions, we would make a minimum contacts inquiry and examine a defendant's suit-related contact with the entire United States, rather than just the forum state.").  BHL's alleged connections to the U.S. boil down to allegations that BHL represented to regulators that it was not operating in the U.S., while permitting U.S. users to transact on the Binance platform, including with users in Iran.  (*See, e.g.*, Compl. at 6, 9).  But there is no allegation that any transactions involving U.S. users funded or were linked to the Attacks in any way.  Without some nexus between Plaintiffs' claims and the forum, this Court cannot exercise personal jurisdiction over BHL consistent with the State's long-arm statute, the Federal Rules, or due process.

## IV.  THE COMPLAINT FAILS TO STATE A CLAIM FOR PRIMARY LIABILITY UNDER THE ATA (COUNTS 3 AND 4).

Plaintiffs attempt to hold BHL liable as a primary violator under the ATA (Counts 3 and 4), but this lacks any legal basis.[5]  In 1992, Congress enacted the ATA

---

[5] Plaintiffs' theory of primary liability is nearly identical to (and in several instances taken verbatim from) the claims Judge Koeltl of the Southern District of New York recently dismissed in *Raanan* v. *Binance Holdings Ltd.,* 2025 WL 605594 (S.D.N.Y. Feb. 25, 2025).  Moreover, in *Newman* v. *Associated Press*, 2024 WL 5063288 (S.D. Fla. Dec. 10, 2024), Judge Moore of the Southern District of Florida dismissed primary liability (and secondary liability) claims brought by several of these same plaintiffs (Gess, Newman, Parizer, Sanandaji, and Diller), alleging five of the same causes of action, also related to the October 7 Attacks.

to hold terrorists accountable for their actions. In 2016, Congress amended the ATA by enacting JASTA, to create aiding-and-abetting liability for non-terrorists under certain narrow circumstances (not presented here, *see infra* at Section V). *See Twitter*, 598 U.S. at 483-84. Since JASTA was passed, courts have consistently rejected attempts to bring ATA primary liability claims against entities that are not terrorist organizations. *See*, *e.g.*, *King* v. *Habib Bank Ltd.*, 2022 WL 4537849, at \*5 (S.D.N.Y. Sept. 28, 2022) (post-JASTA cases generally "recognize that liability for banking services provided to support a terrorist group's mission more generally are properly analyzed under JASTA's aiding-and-abetting provision"); *O'Sullivan* v. *Deutsche Bank AG*, 2019 WL 1409446, at \*8 (S.D.N.Y. Mar. 28, 2019) ("The Complaint does not allege plausibly that the provision of banking services, which are not inherently violent or dangerous, can be considered as acts dangerous to human life."). But that is precisely what Plaintiffs are impermissibly trying to do here.

### A. The Complaint Fails to Adequately Allege That BHL Committed an Act of International Terrorism, Nor Could It.

Plaintiffs cannot state an ATA primary liability claim because the Complaint fails to plausibly allege that BHL committed "an act of international terrorism" as required by the statute. Under Title 18, United States Code, Section 2331, acts of international terrorism are those that:

13

(A)  involve ***violent acts or acts dangerous to human life*** [i] that are a violation of the criminal laws of the United States or of any State, or [ii] that would be a criminal violation if committed within the jurisdiction of the United States or of any State; [and]

(B)  appear to be intended— (i)  to intimidate or coerce a civilian population; (ii)  to influence the policy of a government by intimidation or coercion; or (iii)  to affect the conduct of a government by mass destruction, assassination, or kidnapping; and

(C)  occur primarily outside the territorial jurisdiction of the United States, or transcend national boundaries[.]

*Id.*  The Complaint falls short under Sections (A) and (B).

***No Violent or Dangerous Acts.***  Plaintiffs do not even try to allege that BHL committed violent or dangerous acts (nor could they).  Instead, Plaintiffs allege that, at some point, BHL provided routine transaction services to individuals or entities later identified as having unspecified connections to Hamas or PIJ.  But courts have consistently ruled that providing ordinary transaction services, even if used by a terrorist organization, is not sufficient to plead a violent or dangerous act.  *See Weiss* v. *Nat'l Westminster Bank, PLC*, 993 F.3d 144, 162-63 (2d Cir. 2021) ("[T]he provision of banking services, in and of itself, is insufficient either to show that the services involved an act of violence or threat to human life or to give the appearance that such services were intended to intimidate or coerce a civilian population or government."); *Raanan*, 2025 WL 605594, at *15-16 (S.D.N.Y. Feb. 25, 2025) (same; collecting authority and dismissing claim).  The same is true even if the services violated AML or sanctions laws.  *See Kemper* v. *Deutsche Bank AG*, 911

14

F.3d 383, 390 (7th Cir. 2018) ("That [defendant's] business dealings may violate U.S. sanctions does not convert them into terrorist acts.").

*No Criminal Law Violations.*   Nor does the Complaint adequately allege a criminal act by BHL.  Plaintiffs assert in conclusory terms that BHL violated Title 18, United States Code, Sections 2339A (making it a crime to provide material support or resources "*knowing or intending* that they are to be used in preparation for, or in carrying out a violation of" specified criminal statutes) (Count 3) and 2339B (making it a crime to "*knowingly* provide[] material support or resources to a [FTO]") (Count 4).  However, the Complaint does not come close to pleading the requisite *mens rea* for either offense.  At best, Plaintiffs allege that certain Binance users transacted with individuals or entities somehow associated with Hamas or PIJ, and that BHL *at some point* became aware of those transactions.  Those allegations do not plausibly suggest that BHL knew—at the time BHL provided those services— that any particular transaction was connected to Hamas or PIJ, or their acts of terror. *See Newman*, 2024 WL 5063288, at *13-14 (alleging "mere notice" of third parties' "relationship with Hamas" is insufficient to satisfy *mens rea* requirement under §§ 2339A or B).  In any event, even if these allegations were sufficient to plead a criminal violation, "it is not enough to allege claims under §§ 2339A and B to automatically render them acts of international terrorism[,]" and as such Plaintiffs'

failure to plead a violent act by Binance would still be fatal. *Id.* at *11 (collecting authority); *Raanan*, 2025 WL 605594, at *15-16 (same).

***No Objective Terroristic Intent.*** The Complaint similarly does not satisfy Subsection (B) of Section 2331 because it lacks any factual allegations (as opposed to conclusory assertions) that BHL acted with objective terroristic intent (*i.e.*, an intent to intimidate or coerce a civilian population or influence a government). To establish objective terroristic intent, Plaintiffs must show that BHL processed transactions explicitly identified as payments for terrorist activities. *See, e.g.*, *Averbach* v. *Cairo Amman Bank,* 2022 WL 2530797, at *19 (S.D.N.Y. Apr. 11, 2022).[6] And the law is clear that providing routine transaction services to persons or entities "with connections" to terrorist organizations—as opposed to the organizations themselves—is insufficient. *See, e.g.*, *O'Sullivan*, 2019 WL 1409446 at *7-8 (no terroristic intent where defendants allegedly provided financial services to Iranian banks and businesses "with connections to terrorist organizations," as opposed to providing services directly to terrorists). That is the extent of the allegations here. (*See, e.g.*, Compl. at 6-7 (alleging that BHL "processed numerous transactions to entities and accounts ***associated with*** Hamas and other FTOs"); *id.* at

---

[6] *Cf. Linde* v. *Arab Bank, PLC*, 882 F.3d 314, 321 (2d Cir. 2018) (holding that defendant bank processing transfers that "were explicitly identified as payments for suicide bombings" was sufficient to create triable issue of fact as to whether the bank acted with the requisite intent).

18 (alleging that the DOJ and FinCEN identified "[c]rypto wallets at Binance" that "were ***found to interact*** [at unspecified times] with bitcoin wallets associated with" FTOs)).

### B. The Complaint Fails to Adequately Allege That BHL Proximately Caused Plaintiffs' Alleged Injuries.

The Complaint's failure to plausibly allege proximate causation is an independent basis for dismissal of Counts 3 and 4. *See In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 118, 125 (2d Cir. 2013) ("[T]he [ATA] restricts the imposition of such liability to situations where plaintiffs plausibly allege that defendants['] actions proximately caused their injuries.").

To plead proximate causation, Plaintiffs must plausibly allege that they were injured "by reason of" an act that BHL ***itself***—not Hamas or PIJ—committed. *Fields* v. *Twitter, Inc.*, 881 F.3d 739, 744 (9th Cir. 2018) ("[T]o satisfy the ATA's by reason of requirement, a plaintiff must show at least some direct relationship between the injuries that he or she suffered and the defendant's acts."); *Rothstein* v. *UBS AG*, 708 F.3d 82, 97 (2d Cir. 2013) (no proximate cause where plaintiff failed to allege "relationship between the cash transferred by UBS to Iran and the terrorist attacks by Hizbollah and Hamas that injured plaintiffs"). The Complaint does not come close to meeting this standard. Plaintiffs rely on the conclusory assertion that BHL's provision of routine transaction services in some way caused the Attacks, and thereby caused Plaintiffs' injuries. (*See, e.g.*, Compl. ¶¶ 35, 46, 77). Courts routinely dismiss

17

ATA claims that rest on such allegations. *See, e.g.*, *Raanan*, 2025 WL 605594, at \*17 (finding nearly identical allegations insufficient to show proximate cause); *In re Terrorist Attacks*, 714 F.3d at 124 ("We also are not persuaded that providing routine banking services to organizations and individuals said to be affiliated with al Qaeda . . . proximately caused the September 11, 2001 attacks or plaintiffs' injuries."); *Zapata* v. *HSBC Holdings PLC*, 414 F. Supp. 3d 342, 356 (E.D.N.Y. 2019) (no proximate cause where plaintiffs failed to allege "any relationship between [defendant bank's] money laundering and the acts of violence perpetrated against them").

## V. THE COMPLAINT FAILS TO STATE AN AIDING-AND-ABETTING CLAIM UNDER THE ATA AND JASTA (COUNT 1).

JASTA imposes civil liability on "any person who aids and abets, by knowingly providing substantial assistance, . . . the person who committed [the] act of international terrorism" that injured the plaintiff. 18 U.S.C. § 2333(d)(2). To plead an aiding-and-abetting claim under JASTA, a plaintiff must allege the defendant: (1) "knowingly and substantially assist[ed] the principal violation" and (2) [was] generally aware of his role as part of an overall illegal or tortious activity at the time that he provide[d] the assistance." *Twitter*, 598 U.S. at 486. The Complaint fails to adequately plead either element.[7]

---

[7] The district court in *Raanan* recently permitted a JASTA aiding-and-abetting claim to proceed against BHL. 2025 WL 605594. That decision is not binding on this Court, and BHL respectfully submits that it was wrongly decided for the reasons set forth in its motions for reconsideration and to certify an interlocutory appeal.

### A. The Complaint Does Not Allege That Defendants Knowingly and Substantially Assisted the Attacks.

*Twitter* established a demanding standard for the knowing and substantial assistance element, which requires a plaintiff to demonstrate that (1) there is a sufficient nexus between the defendant's conduct and the plaintiff's injuries, and (2) the defendant's participation was conscious, voluntary, and culpable.  598 U.S. at 493-94, 506.  The Complaint fails on both fronts.

*Twitter* instructs that the aiding-and-abetting analysis begins by evaluating the nexus (if any) between the defendant's conduct and the ***specific attack*** that injured the plaintiffs.  *Id.* at 497 ("[B]ecause they are trying to hold defendants liable for the Reina attack, plaintiffs must plausibly allege that defendants aided and abetted ISIS in carrying out ***that attack***"); *see also id.* at 506 ("The point of aiding and abetting is to impose liability on those who consciously and culpably participated in ***the tort at issue***.  ***The focus must remain on assistance to the tort for which plaintiffs seek to impose liability***.").  The Supreme Court elaborated that providing substantial assistance to terrorists' "activities in general" is not sufficient to impose aiding-and-abetting liability; "the question is whether defendants gave substantial assistance to [the FTO that carried out the attack] with respect to the [specific] attack.  The focus

---

*Raanan* v. *Binance Holdings Limited*, No. 24 Civ. 697 (JGK) (S.D.N.Y. 2024) (ECF Nos. 58, 62).  Both motions are scheduled for oral argument on April 22, 2025.

thus must remain on the [specific] attack[.]" *Id.* at 503; *see also id.* at 495 ("[I]t is not enough . . . that a defendant [has] given substantial assistance to a transcendent enterprise separate from and floating above all the actionable wrongs that constitute it.").

Under *Twitter*, there is an inverse relationship between nexus and intent. A showing of more direct and significant assistance (*i.e.*, a direct and concrete nexus) may reduce the required showing of intent, whereas a weak nexus "drastically increases" the pleading burden for intent. 598 U.S. at 503; *see id.* at 500 (where there is "distance between [the] defendants' acts (or failures to act) and the . . . attack [that injured the plaintiffs], plaintiffs would need some other very good reason to think that defendants were ***consciously trying to help or otherwise participate in the . . . attack***."). In other words, "the more attenuated the nexus, the more courts should demand that plaintiffs show culpable participation through ***intentional aid that substantially furthered the tort***." *Id.* at 506; *see also Zobay*, 695 F. Supp. 3d at 345 ("If the relationship between a defendant's assistance and the ultimate tortious act is attenuated, then plaintiffs need some other very good reason to think that defendants were consciously trying to help or otherwise participate in the [specific] attack.") (quoting *Twitter*, 598 U.S. at 500 (alteration in original)).

Here, the Complaint comes nowhere close to pleading a "definable nexus between . . . [D]efendants' [alleged] assistance and the [A]ttack." *Twitter*, 598 U.S.

20

at 503.  Rather, the Complaint alleges only that BHL's historical AML lapses enabled users allegedly associated with Hamas and other FTOs to access Binance, and that the FTOs then used these funds to commit terrorist attacks.  (*See* Compl. at 16-19).  The Complaint discusses in the broadest terms how FTOs have exploited cryptocurrency (as they of course have all types of currency) as part of their fundraising efforts.  (*See id.* at 20, ¶ 36).  But nowhere does the Complaint plead facts demonstrating how any transactions on the Binance exchange are "connect[ed] or link[ed]"[8] to the Attacks that caused Plaintiffs' alleged injuries.  At most, the allegations amount to "assistance to [the FTO's] activities in general," which *Twitter* explicitly held is insufficient.  598 U.S. at 503 (overturning Ninth Circuit decision that "framed the issue of substantial assistance as turning on defendants' assistance to ISIS' activities in general").

Where, as in this case and *Twitter*, there is no "definable nexus" between Defendants' acts or omissions and the attack, a JASTA claim is insufficient unless Plaintiffs can plausibly allege that Defendants consciously and "culpably associate[d] themselves] with the [A]ttack, participate[d] in it as something that [they] wishe[d] to bring about, or sought by [their] action to make it succeed."  *Id.* at 498 (second alteration added).  Here, the Complaint comes nowhere close to meeting that

---

[8] *Nexus*, Black's Law Dictionary (12th ed. 2024).

"drastically increase[d]" requirement.  598 U.S. at 503.  The closest Plaintiffs come to alleging *any* facts related to intent are allegations that BHL was aware FTOs were using its services and that it *failed to stop* that use.  (*See* Compl. at 3, 5-6, ¶¶ 46, 62). *Twitter* made clear that these types of allegations are insufficient.  598 U.S. at 503 ("The fact that some bad actors took advantage of these platforms is insufficient to state a claim that defendants knowingly gave substantial assistance and thereby aided and abetted those wrongdoers' acts.").

Moreover, like the social media platforms at issue in *Twitter*, the Binance exchange is global in scale, serves hundreds of millions of users (Compl. at 17), and "there are no allegations that defendants treated [FTOs] any differently from anyone else."  598 U.S. at 500.  Far from giving FTOs special treatment, BHL sought to keep them off its platform.  (*See* Enzer Decl. Ex. 2 (FinCEN Consent Order) at 46 (BHL "proactively cooperated with global law enforcement and blockchain vendors to combat terrorist financing.")).  Absent any allegations that BHL favored or attempted in any way to aid terrorists, let alone a specific attack, the Complaint clearly fails to plead the requisite "strong showing of assistance and scienter" that *Twitter* demands.  *Twitter*, 598 U.S. at 500.

Given the lack of a definable nexus between BHL's conduct and the Attacks, and the lack of any intent on BHL's part to further the Attacks, *Twitter* requires dismissal of Plaintiffs' aiding-and-abetting claim.  Although *Twitter* acknowledged

22

there may be extraordinary circumstances where these pleading requirements may be relaxed, those circumstances require that a "defendant[] so systemically and pervasively assist[ed]" the terrorist group that it can "be said to aid and abet every single . . . attack." *Id.* at 501. As the Supreme Court noted, such a finding is reserved for circumstances where "aiding-and-abetting liability begins to blur with conspiracy liability," and where "a defendant has so consciously participate[d] in a series of tortious acts in order to make [each one] succeed." *Id.* at 496; *see also id.* at 501-02 (no liability where "Plaintiffs do not claim that defendants intentionally associated themselves with [the FTO's] operations or affirmatively gave aid that would assist each of [the FTO's] terrorist acts" or otherwise "formed a near-common enterprise" with the FTO). Plaintiffs do not even attempt to plead facts suggesting that BHL aligned itself with Hamas or any other FTO in such a manner. To the contrary, as the Treasury Department acknowledged, despite its AML lapses, BHL "proactively cooperated with global law enforcement and blockchain vendors to combat terrorist financing," and "cooperated with Israeli law enforcement in numerous seizures related to the al-Qassam brigades." (Enzer Decl. Ex. 2 (FinCEN Consent Order) at 46).

Nor have Plaintiffs alleged that BHL marketed a "dangerous ware," or offered its services in an "unusual way" that could distinguish this case from the controlling holding of *Twitter*. *See* 598 U.S. at 502. Cryptocurrency transactions are not

23

inherently dangerous, but rather involve fungible digital assets functionally equivalent to any other form of currency. *See, e.g.*, *Coinbase, Inc.* v. *SEC*, 126 F.4th 175, 203 n.11 (3d Cir. 2025) (recognizing that "digital assets are a growing part of the financial sector and are emerging as an increasingly important form of online payment"). And BHL—by the Complaint's own account—offered only routine exchange services to over 120 million users worldwide. (Compl. at 17). Those services are not qualitatively different from the services offered by numerous other types of financial institutions, which are neither inherently dangerous nor unusual, even when coupled with the failure to comply with identical AML duties.[9] *See, e.g.*, *Siegel* v. *HSBC North America Holdings, Inc.*, 933 F.3d 217, 225 (2d Cir. 2019) (dismissing JASTA claim despite admitted AML failures); *O'Sullivan*, 2019 WL 1409446 (same); *compare id.*, *with Twitter*, 598 U.S. at 502 (citing *Direct Sales Co.* v. *U.S.*, 319 U.S. 703, 707, 711-12, 714-15 (1943) (registered morphine distributor could be liable as a coconspirator of an illicit operation to which it mailed morphine far in excess of normal amounts)).[10]

---

[9] Even if Plaintiffs could plausibly allege that one of these exceptions applies—which they cannot—allegations of intent would still be required, and they are utterly lacking here. *See Twitter*, 598 U.S. at 502 (where plaintiffs allege that defendant offered "dangerous wares" or "unusual" services, "plaintiffs *might* be able to establish liability with a *lesser* showing of scienter").

[10] During the recent Supreme Court argument in *Smith & Wesson Brands, Inc. et al.* v. *Estados Unidos Mexicanos*, No. 23-1141, Justice Kavanaugh expressed concerns about imposing expansive aiding-and-abetting liability on the sale of legitimate

Indeed, to suggest that a violation of AML duties equates to substantial assistance would effectively create civil liability for BSA/AML noncompliance whenever users took advantage of the lapses to commit crimes, something courts have repeatedly rejected. *See, e.g.*, *Bernhardt* v. *Islamic Republic of Iran*, 47 F.4th 856, 870 (D.C. Cir. 2022) (dismissing aiding-and-abetting claim and holding that JASTA "do[es] not equate the evasion of sanctions with terrorism liability"); *Rosner* v. *Bank of China*, 528 F. Supp. 2d 419, 427 (S.D.N.Y. 2007) (bank's alleged AML violations, "even if true, . . . do not elevate [the bank's] actions into the realm of substantial assistance"), *aff'd* 349 F. App'x 637 (2d Cir. 2009); *see also Twitter*, 598 U.S. at 501 ("even if there were such a duty [to remove ISIS's content], it would not transform defendants' distant inaction into knowing and substantial assistance that could establish aiding and abetting the [specific] attack at issue."). The same notion should be rejected here.

### B. The *Halberstam* Factors Confirm That the Complaint Does Not State an Aiding-and-Abetting Claim.

*Twitter* stated that the factors set forth in *Halberstam* v. *Welch*, 705 F.2d 472, 483-84 (D.C. Cir. 1983) are still relevant in determining whether aiding-and-abetting

---

products—which in that case were ***firearms***—notwithstanding the fact that they are indisputably dangerous, in ways currency clearly is not. (*See* Oral Argument Tr. at 88:12-89:10, *Smith & Wesson Brands, Inc. et al.* v. *Estados Unidos Mexicanos*, No. 23-1141 (Mar. 4, 2025), *available at* https://www.supremecourt.gov/oral_argum ents/argument_transcripts/2024/23-1141_8m59.pdf.).

liability has been sufficiently plead.  Here, ***all six*** *Halberstam* factors weigh in favor of dismissing Plaintiffs' JASTA aiding-and-abetting claim:

- **Nature of the Act**:  The Complaint relies on conclusory allegations that the routine services BHL provided were "indisputably important" to the Attacks.  *See Halberstam*, 705 F.2d at 488.  Plaintiffs allege that "access to outside funding" is important for FTOs, including Hamas; BHL's failure to file SARs made "it harder for the U.S. government to cut off their finances"; and the Attacks demonstrated that expensive equipment and coordination was required.  (*See, e.g.*, Compl. ¶¶ 44, 48-49).  Such general allegations fail to connect BHL's routine services to any of the Attacks; ignore the multitude of FTO funding sources; and overlook that BHL "proactively cooperated with global law enforcement and blockchain vendors to combat terrorist financing." (Enzer Decl. Ex. 2 (FinCEN Consent Order) at 46).

- **Amount of Assistance**:  Plaintiffs do not allege that Defendants processed any transactions, let alone a substantial volume, that are directly linked to the Attacks.

- **BHL's Presence**:  Plaintiffs have not (and cannot) plead any facts to show that Defendants were present during the Attacks.

- **BHL's Relation**:  The Complaint does not allege that BHL had any relationship with Hamas or PIJ, or gave them any special treatment as compared to the 120 million other users on the Binance exchange.

- **BHL's State of Mind**:  The Complaint alleges no affirmative act that Defendants undertook with the intent of facilitating the Attacks.  *Cf. Halberstam*, 705 F.2d at 487, 488 ("continuous participation" in two-person stolen goods venture as "banker, bookkeeper, recordkeeper, and secretary" reflected "intent and desire to make the venture succeed"); *see also Twitter*, 498 U.S. at 490 (no aiding-and-abetting liability where defendants were not alleged to have taken "affirmative act" with "intent of facilitating" the Reina attack).

- **Duration of the Assistance**:  The Complaint alleges that BHL provided services to FTOs for years leading up to the Attacks, but says nothing about the "quality and extent" of the alleged relationship between BHL and FTOs (compared to BHL's user base generally), nor does it suggest that the duration of the relationship resulted in an increased "amount of aid" provided.  *Halberstam*, 705 F.2d at 484 ("the length of time an alleged aider-and-abettor has been involved with a tortfeasor almost certainly affects the quality and extent of their

relationship and probably influences the amount of aid provided"). Plaintiffs also fail to connect any BHL-specific services temporally to any of the Attacks.

### C. The Complaint Does Not Allege That BHL Was Generally Aware of Any Role in the Relevant Terrorist Activity.

Because Plaintiffs fail to allege knowing and substantial assistance, their aiding-and-abetting claim fails, and the Court need not consider the general awareness element. But the Complaint's failure to sufficiently plead general awareness is an independent basis requiring dismissal of Count 1.

To plead this element, Plaintiffs must demonstrate that Defendants were "generally aware" that they were "playing a role in an FTO's violent or life-endangering activities." *Newman*, 2024 WL 5063288, at \*4 (quoting *Linde*, 882 F.3d at 329). Although the Complaint cites to internal chats temporally removed from the Attacks by many years (*see* Compl. at 16, 19), and otherwise makes unsupported and conclusory allegations that BHL "knowingly facilitated transfers of money to Hamas[,]" and "knowingly provided Hamas and Islamic Jihad with a platform with which to illicitly accept funds from the United States" (*id.* at 3, ¶ 46), this is insufficient to plead general awareness. *See Newman*, 2024 WL 5063288, at \*4-5. Simply put, even if BHL had notice that users associated with Hamas and PIJ were attempting to transact on Binance, the Complaint fails to plausibly allege that BHL was aware that it was "assuming a role" in Hamas and PIJ's terrorist activities related to the Attacks. *Linde*, 882 F.3d at 329.

Moreover, when assistance is alleged to have been provided to an FTO's intermediary—which is the most that is alleged here—a plaintiff must show that "(1) the defendant was aware of the intermediary's connection to the terrorist organization, and (2) the intermediary is so closely intertwined with the terrorist organization's illegal activities as to give rise to an inference that the defendant was generally aware of its role in the organization's terrorist activities." *Bernhardt*, 47 F.4th at 867-68, 870 (even where defendant "had client banks with ties to terrorist organizations and [had] admitted to helping those banks evade U.S. sanctions[,]" it was "not sufficient for aiding and abetting liability under the ATA"). Here, at most, the Complaint alleges that BHL permitted certain unnamed customers with undefined "associations" with Hamas or PIJ to conduct routine transactions on Binance; and that at some unspecified point in time, BHL learned of these users' apparent "association" with Hamas or PIJ. (*See, e.g.*, Compl. at 18 ("Crypto wallets at Binance were found to interact with bitcoin wallets associated with groups designated as terrorist organizations by the US and several other countries[.]")). The Complaint fails entirely to identify who these supposed intermediaries were, how they were supposedly connected to an FTO, or when BHL supposedly learned of this connection. This is plainly insufficient to establish general awareness.[11]

---

[11] The lack of specificity in Plaintiffs' pleadings stands in stark contrast to ATA cases where general awareness was adequately alleged, based on allegations that the defendants were contemporaneously aware that their customers were closely linked

## VI. THE COMPLAINT FAILS TO STATE A CONSPIRACY CLAIM UNDER THE ATA (COUNT 2).

JASTA also imposes civil liability on defendants who "conspire[d] with the person who committed [the] act of international terrorism" that injured the plaintiff. 18 U.S.C. § 2333(d)(2). To plead a conspiracy claim, Plaintiffs must plausibly allege: "(1) an agreement between two or more persons; (2) to participate in an unlawful act; (3) an injury caused by an unlawful overt act performed by one of the parties to the agreement; (4) which overt act was done pursuant to and in furtherance of the common scheme." *Newman*, 2024 WL 5063288, at *9. Here, the Complaint's conspiracy claim fails to plead facts plausibly supporting the existence of either an agreement to commit acts of terror, or an overt act in furtherance of that agreement.

---

to FTOs. For example, the Supreme Court in *Twitter* concluded that general awareness had been pled where the complaint identified specific users and accounts on the defendants' social media platforms that openly and unambiguously supported ISIS, 598 U.S. at 497, including, for example, Twitter accounts in the name of "Al-Hayat Media Center," ISIS's official public relations group. (*See* Amended Complaint at ¶¶ 14-17, *Taamneh* v. *Twitter, Inc.*, No. 3:17 Civ. 04107 (EMC) (N.D. Cal. May 16, 2018), ECF No. 55). Likewise, in *Kaplan*, plaintiffs' complaint identified specific bank customers with strong ties to Hezbollah, which were evident from public reporting. *Kaplan* v. *Lebanese Canadian Bank, SAL*, 999 F.3d 842, 849-50 (2d Cir. 2021). And in *Honickman* v. *BLOM Bank SAL*, where the Second Circuit determined the complaint ***failed*** to allege general awareness, plaintiffs' complaint still identified specific customers that plaintiffs alleged had longstanding ties to Hamas. 6 F.4th 487, 491-92, 501 (2d Cir. 2021).

### A. Plaintiffs Do Not Allege an Agreement Between BHL and FTOs to Commit Acts of International Terrorism.

Pleading an agreement in a JASTA conspiracy claim requires plausible allegations that the coconspirators were "pursuing the same object"—namely, "an agreement . . . to carry out [a] scheme of international terrorism." *Id.* Here, the Complaint offers only a barebones conclusion regarding the alleged conspiracy (Compl. ¶ 65), but does not allege facts supporting any agreement at all between BHL and the FTOs—let alone an agreement to commit terrorism. This by itself is fatal to the conspiracy claim, which requires Plaintiffs to plead a common goal of committing terrorism. *Newman*, 2024 WL 5063288, at \*10 (dismissing JASTA conspiracy claim that "fail[ed] to plausibly allege any agreement to commit an act of international terrorism."); *Zobay*, 695 F. Supp. 3d at 355 (same).

At most, the Complaint alleges that BHL "prioritize[d] commercial success over compliance with U.S. law" and evaded AML requirements, while the FTOs sought to commit acts of terror. (*Compare* Compl. at 10, ¶ 47, *with id.* ¶ 38). Courts routinely reject JASTA conspiracy claims like this, where the supposed coconspirators' "objectives are wholly orthogonal to one another." *See, e.g.*, *Bernhardt*, 47 F.4th at 873; *Freeman* v. *HSBC Holdings PLC*, 57 F.4th 66, 79-80 (2d Cir. 2023), *cert. denied*, 144 S. Ct. 83 (2023); *Kemper*, 911 F.3d at 395.

Moreover, even if it were assumed that BHL had notice that FTOs were using the Binance exchange in real-time—as opposed to in hindsight, which is all the

30

Complaint plausibly alleges—that would still be insufficient to state a JASTA conspiracy claim, since allegations of mere knowledge "do not permit [an] inference that [BHL] agreed with [Hamas or PIJ], expressly or impliedly, [to commit acts of terror]." *In re Chiquita Brands International, Inc.*, 284 F. Supp. 3d 1284, 1316 (S.D. Fla. 2018); *Freeman*, 57 F.4th at 79 (no conspiracy where bank processed transactions for known terrorist affiliates). Accordingly, Plaintiffs' conspiracy claim should be dismissed for failure to plausibly allege an agreement.

### B. Plaintiffs Fail to Allege an Overt Act in Furtherance of an Agreement to Commit Terrorism.

The JASTA conspiracy claim must be dismissed for the additional reason that Plaintiffs fail to adequately plead "an overt act . . . in furtherance of the common scheme" to commit terrorism. *Newman*, 2024 WL 5063288, at *9. "[T]he overt act must be the act of international terrorism that injures the plaintiff." *Bernhardt*, 47 F.4th at 873.

Even if Plaintiffs had adequately alleged an agreement between BHL and the FTOs—which they have not, and cannot—Plaintiffs' conspiracy claim would still fail because they cannot allege the Attacks were "the overt act that furthered a conspiracy between [BHL] and [the FTOs]." *Id.*; (*see* Compl. ¶¶ 19-27; 40-43). It is simply not "plausible to infer" that a series of barbaric attacks on civilians in Israel would "further [BHL's] alleged objective of maximizing profits through the evasion of [various U.S. financial regulations]." *Bernhardt*, 47 F.4th at 873; *see also*

31

*Freeman*, 57 F.4th at 82.  Given its failure to plead an overt act, Plaintiffs' conspiracy claim must be dismissed on this independent ground.

## VII.  PLAINTIFFS' CLAIM UNDER THE ATS FAILS FOR LACK OF JURISDICTION (COUNT 5).

The ATS provides that "[t]he district courts shall have original jurisdiction of any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States."  28 U.S.C. § 1350.  The ATS "is a strictly jurisdictional statute"—*i.e.*, it does not provide for an independent cause of action—rather it "empowers federal courts to recognize [a very limited number of] private claims under federal common law."  *Doe* v. *Drummond Co.*, 782 F.3d 576, 583 (11th Cir. 2015).

In *Jesner* v. *Arab Bank, PLC*, the United States Supreme Court held unequivocally that foreign corporations cannot be sued under the ATS.  584 U.S. at 272 ("[T]he Court holds that foreign corporations may not be defendants in suits brought under the ATS.").  As Plaintiffs themselves concede, BHL is incorporated in the Cayman Islands.  (Compl. ¶ 29).  It therefore cannot be sued under the ATS.  *See Alvarez Galvez* v. *Fanjul Corp.*, 533 F. Supp. 3d 1268, 1276 (S.D. Fla. 2021) (dismissing ATS claim against a British Virgin Islands corporation with its principal place of business in the Dominican Republic for lack of subject matter jurisdiction) (citing *Jesner*, 584 U.S. at 272).

To avoid burdening the Court with duplicative briefing, BHL also adopts and joins in BAM's argument that Plaintiffs' claims under the ATS fail to overcome the presumption against extraterritoriality, and are otherwise insufficiently pled. (BAM Br. at Section III.D).

## VIII. THE COMPLAINT FAILS TO STATE A CLAIM FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS (COUNT 6).

Plaintiffs' attempt to assert a state law claim for negligent infliction of emotional distress ("NIED") fails for the simple reason that the State of Alabama does not recognize such a cause of action. *Flagstar Enterprises, Inc.* v. *Davis*, 709 So. 2d 1132, 1141 n.5 (Ala. 1997) ("[T]here is no cause of action in Alabama for the negligent infliction of emotional distress[.]"); *see also Taylor* v. *Alabama*, 95 F. Supp. 2d 1297, 1318 (M.D. Ala. 2000) (dismissing NIED claim because it is not recognized in Alabama).[12]

Even if the Court were to construe the Complaint as asserting a claim for negligence—which it should not—Plaintiffs' claim would still fail. To plead a claim for negligence *per se* under Alabama law (*see* Compl. ¶ 77 (alleging "a willful

---

[12] Although the Complaint is unclear about what law Plaintiffs believe applies to their NIED claim, BHL assumes for purpose of this motion that it is Alabama state law because: (1) in opposing transfer of this action to the Southern District of New York, Plaintiffs relied, in part, on their "Alabama state law claim" (ECF No. 35, at 15), and (2) Plaintiffs have not filed a notice under Fed. R. Civ. P. 44.1 reflecting an intention to rely upon foreign law.

violation of a statutory standard")), "a plaintiff must prove:  (1) that the statute the defendant is charged with violating was enacted to protect a class of persons to which the plaintiff belonged; (2) that the plaintiff's injury was the kind of injury contemplated by the statute; (3) that the defendant violated the statute; and (4) that the defendant's violation of the statute proximately caused the plaintiff's injury." *Cherry* v. *Pinson Termite & Pest Control, LLC*, 206 So. 3d 557, 567 (Ala. 2016). Here, as explained above (Section IV), the Complaint fails to adequately allege a statutory violation by BHL or that BHL proximately caused Plaintiffs' injuries. *See Jarvis* v. *Taylor*, 2018 WL 1833874, at \*3 (M.D. Ala. Feb. 12, 2018) (dismissing negligence claim where the complaint stated only "a formulaic recitation of elements with no discernable effort to distinguish the alleged duty, breach, harm, or damages in any way from those otherwise pleaded" in other counts), *report and recommendation adopted*, 2018 WL 1831419 (M.D. Ala. Apr. 17, 2018).  As a consequence, Plaintiffs' claim, whether construed as a claim for NIED or negligence, must be dismissed.

## CONCLUSION

The Court should dismiss the Complaint with prejudice against BHL.  BHL respectfully requests oral argument on this motion.

Date: April 14, 2025

*/s/ Harlan I. Prater IV*
Harlan I. Prater IV, ASB-7485-T62H
Lightfoot, Franklin & White, LLC
400 20th Street North
Birmingham, AL 35203
(205) 581-0720
hprater@lightfootlaw.com

CAHILL GORDON & REINDEL LLP
Samson A. Enzer
Anirudh Bansal
Sesi Garimella
32 Old Slip
New York, NY 10005
(212) 701-3125
SEnzer@cahill.com
ABansal@cahill.com
SGarimella@cahill.com

*Attorneys for Defendant Binance*
*Holdings Limited d/b/a Binance*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing has been filed with the

Court and served by the Court's ECF system, on this the 14th day of April, 2025,

on:

David I. Schoen (ASB-0860-O42D)
David I. Schoen, Attorney at Law
2800 Zelda Road, Suite 100-6
Montgomery, AL 36106
(334) 395-6611
schoenlawfirm@gmail.com

Mark Goldfeder (*pro hac vice*)
National Jewish Advocacy Center, Inc.
1718 General George Patton Drive
Brentwood, TN 37027
(800) 269-9895
mark@jewishadvocacycenter.org

Ben Schlager (*pro hac vice forthcoming*)
GOLDFEDER AND TERRY, LLC
666 Harless Place
West Hempstead, NY 11552
(917) 495-5790
ben@goldfederterry.com

*Attorneys for Plaintiffs*

Kenneth D. Sansom (SAN 047)
Michael T. Sansbury (SAN 054)
SPOTSWOOD SANSOM & SANSBURY LLC
Financial Center
505 20th Street North, Suite 700
Birmingham, AL 35203-3329
(205) 986-3620
Msansbury@spotswood.com
Ksansom@spotswood.com

Athanasia Charmani (*pro hac vice*)
WINSTON & STRAWN, LLP
1901 L. Street N.W.
Washington, DC 20036
(202) 282-5026

Daniel T. Stabile (*pro hac vice*)
Gabriela Plasencia (*pro hac vice*)
WINSTON & STRAWN, LLP
200 S. Biscayne Boulevard
Suite 2400
Miami, FL 33131
(305) 910-0787

*Attorneys for Defendant BAM Trading*
*Services, Inc. d/b/a Binance.US*

Teresa Goody Guillén (*pro hac vice*)
Marco Molina (*pro hac vice*)
Joanna F. Wasick (*pro hac vice*)
BAKER & HOSTETLER LLP
45 Rockefeller Plaza
New York, NY 10111
(212) 589-4200

Charles A. Stewart III
BRADLEY ARANT BOULT CUMMINGS LLP
RSA Dexter Avenue Building
445 Dexter Avenue
Suite 9075
Montgomery, AL 36104
(334) 956-7608

*Attorneys for Defendant Changpeng Zhao*