**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

ADIN GESS, et al.,

               Plaintiffs,

       v.

BAM TRADING SERVICES INC. d/b/a
BINANCE.US, et al.,

               Defendants.

Case No. 2:24-cv-00134-ECM-CWB

**ORAL ARGUMENT REQUESTED**

**MEMORANDUM OF LAW IN SUPPORT OF
<u>MR. CHANGPENG ZHAO'S MOTION TO DISMISS</u>**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................1

STATEMENT OF THE FACTS ........................................................................................3

PROCEDURAL BACKGROUND......................................................................................5

ARGUMENT .....................................................................................................................5

I.      The Complaint Should Be Dismissed Under Rule 8. ...........................................6

II.     Plaintiffs' Claims Against Mr. Zhao Should Be Dismissed Under Rule 12(b)(2). .............6

        A.      The Relevant Legal Standard for Specific Jurisdiction ...........................7

        B.      Plaintiffs Fail to Allege Specific Jurisdiction Over Mr. Zhao. ...............8

                1.      Plaintiffs Fail to Plead Sufficient Alabama Contacts. ................9

                2.      Plaintiffs Fail to Allege Sufficient United States Contacts........10

III.    Plaintiffs' Claims Against Mr. Zhao Should Be Dismissed Under Rule 12(b)(6). ...........12

        A.      Plaintiffs Fail to State a Claim Against Mr. Zhao Under the ATA. ......12

                1.      The Relevant Legal Standard for Stating a Claim Under the ATA. ..........12

                2.      Three Plaintiffs Lack ATA Standing and Their ATA Claims Must Be
                        Dismissed (Claims I-IV)...............................................................14

                3.      Plaintiffs Fail to State a Claim for Primary Liability Under the ATA
                        Against Mr. Zhao (Claims III & IV)............................................14

                4.      Plaintiffs Fail to State a Claim for ATA/JASTA Aiding & Abetting
                        Against Mr. Zhao (Claim I). .........................................................18

                5.      Plaintiffs Fail to State Claim for ATA/JASTA Conspiracy Against
                        Mr. Zhao (Claim II). .....................................................................23

        B.      Plaintiffs Fail to State an ATS Claim Against Mr. Zhao (Claim V)......................24

        C.      Plaintiffs Fail to Sufficiently Allege that Mr. Zhao is Liable for Negligent
                Infliction of Emotional Distress (Claim VI). .........................................26

CONCLUSION.................................................................................................................26

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abecassis v. Wyatt*,
   704 F. Supp. 2d 623 (S.D. Tex. 2010) ......................................................................26

*Allen v. Walker*,
   569 So. 2d 350 (Ala. 1990) .....................................................................................26

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ...........................................................................................12, 24

*Associated Transp. Line, Inc. v. Productos Fitosanitarios Proficol El Carmen, S.A.*,
   197 F.3d 1070 (11th Cir. 1999) ................................................................................8

*Averbach v. Cairo Amman Bank*,
   No. 19-cv-0004, 2020 WL 486860 (S.D.N.Y. Jan 21, 2020) ................................20

*Barboza v. Drummond Co.*,
   No. 06—61527-CIV, 2007 WL 8025825 (S.D. Fla. July 17, 2007) ................25, 26

*Barmapov v. Amuial*,
   986 F.3d 1321 (11th Cir. 2021) ................................................................................6

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) ...............................................................................................12

*Bernhardt v. Islamic Republic of Iran*,
   No. 18-2739, 2020 WL 6743066 (D.D.C. Nov. 16, 2020) ................................11, 23

*Bernhardt v. Islamic Republic of Iran*,
   47 F.4th 856 (D.C. Cir. 2022) .............................................................................11, 24

*Cain v. Twitter, Inc.*,
   No. 17-cv-2506, 2018 WL 4657275 (N.D. Cal. Sept. 24, 2018) ...........................23

*Cascade Yarns, Inc. v. Knitting Fever, Inc.*,
   No. C10-861RSM, 2011 WL 1042578 (W.D. Wash. Mar. 18, 2011) ..................8, 9

*Cohen v. Williams*,
   318 So. 2d 279 (Ala. 1975) .......................................................................................9

*Cont'l Motors, Inc. v. Jewell Aircraft, Inc.*,
   882 F. Supp. 2d 1296 (S.D. Ala. 2012) .....................................................................7

*Crosby v. Twitter, Inc.*,
   303 F. Supp. 3d 564 (E.D. Mich. 2018)................................................16, 17

*Daimler AG v. Bauman*,
   571 U.S. 117 (2014)..........................................................................8

*Doe v. Unocal Corp.*,
   27 F. Supp. 2d 1174 (C.D. Cal. 1998) .................................................9

*Don't Look Media LLC v. Fly Victor Ltd.*,
   999 F.3d 1284 (11th Cir. 2021) ...............................................7, 17, 20

*Edge v. Daechang Seat Corp. USA*,
   No. 3:23-cv-684, 2024 WL 1321072 (M.D. Ala. Mar. 27, 2024) ...........12

*Euroboor B.V. v. Grafova*,
   No. 17-2157, 2021 WL 4325694 (N.D. Ala. Sept. 23, 2021)................15

*Ex parte Kohlberg Kravis Roberts & Co.*,
   78 So.3d 959 (Ala. 2011)................................................................10

*Ex parte M.E.J.*,
   392 So.3d 52 (Ala. 2023).................................................................8

*Facebook, Inc. v. K.G.S.*,
   294 So.3d 122 (Ala. 2019)..............................................................10

*Fields v. Twitter, Inc.*,
   881 F.3d 739 (9th Cir. 2018) ......................................................13, 17

*Force v. Qatar Charity*,
   No. 20-cv-2578, 2025 WL 43163 (E.D.N.Y. Jan. 7, 2025)..................11

*Freeman v. HSBC Holdings PLC*,
   413 F. Supp. 3d 67 (E.D.N.Y. 2019) ...........................................14, 15

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*,
   592 U.S. 351 (2021)..........................................................................8

*Gilbert v. James Russell Motors, Inc.*,
   812 So.2d 1269 (Ala. Civ. App. 2001) ...............................................9

*Gonzalez v. Google LLC*,
   2 F.4th 871 (9th Cir. 2021) ............................................................16

*Goodyear Dunlop Tires, S.A. v. Brown*,
    564 U.S. 915 (2011) ........................................................................................7, 8

*Halberstam v. Welch*,
    705 F.2d 472 (D.C. Cir. 1983) ...................................................... *passim*

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
    466 U.S. 408 (1984) ........................................................................................7, 8

*Honickman v. Blom Bank Sal*,
    6 F.4th 487 (2d Cir. 2021) ...............................................................................22

*In re Terrorist Attacks on Sept. 11, 2001*,
    714 F.3d 118 (2d Cir. 2013) ..............................................................17, 18, 25

*Int'l Shoe Co. v. Washington*,
    326 U.S. 310 (1945) ...........................................................................................7

*Jefferson Pilot Broadcasting Co. v. Hilary & Hogan, Inc.*,
    617 F.2d 133 (5th Cir. 1980) ..........................................................................15

*Johnson v. City of Atlanta*,
    107 F.4th 1292 (11th Cir. 2024) .......................................................................4

*Kaplan v. Lebanese Canadian Bank, SAL*,
    405 F. Supp. 3d 525 (S.D.N.Y. 2019) ...............................................17, 23

*Kaplan v. Lebanese Canadian Bank, SAL*,
    999 F.3d 842 (2d Cir. 2021) ..............................................................17, 20

*Kemper v. Deutsche Bank AG*,
    911 F.3d 383 (7th Cir. 2018) ...........................................................16, 17

*Kiobel v. Royal Dutch Petroleum Co.*,
    569 U.S. 108 (2013) ...........................................................................24, 25

*King v. Habib Bank Ltd.*,
    20 Civ. 4322 (LGS), 2022 WL 4537849 (S.D.N.Y. Sept. 28, 2022) ...............11, 22

*Lelchook v. Lebanese Canadian Bank*,
    No. 18-cv-12401, 2024 WL 967078 (S.D.N.Y. Mar. 6, 2024) ...............14

*Linde v. Arab Bank, PLC*,
    882 F.3d 314 (2d Cir. 2018) .............................................................15, 22, 23

*Lyons v. Dothan*,
   No. 1:20-cv-00035, 2020 WL 7134926 (M.D. Ala. Oct. 20, 2020) .......................................24

*Newman v. Associated Press*,
   No. 24-cv-20684, 2024 WL 5063288 (S.D. Fla. Dec. 10, 2024)........................................... 13

*Nimbus Techs., Inc. v. SunData Prods., Inc.*,
   484 F.3d 1305 (11th Cir. 2007) ........................................................................................7, 9

*Ofisi v. BNP Paribas, S.A.*,
   278 F. Supp. 3d 84 (D.D.C. 2017) ........................................................................................23

*O'Sullivan v. Deutsche Bank AG*,
   No. 17-cv-8709, 2019 WL 1409446 (S.D.N.Y. Mar. 28, 2019).......................................16, 18

*Oxford Asset Mgmt., Ltd. v. Jaharis*,
   297 F.3d 1182 (11th Cir. 2002) ............................................................................................12

*Rothstein v. UBS AG*,
   708 F.3d 82 (2d Cir. 2013).............................................................................................17, 18

*Rush v. Savchuk*,
   444 U.S. 320 (1980)...............................................................................................................9

*Saperstein v. Palestinian Auth.*,
   No. 04-cv-20225, 2006 WL 3804718 (S.D. Fla. Dec. 22, 2006)...........................................25

*Schrier v. Qatar Islamic Bank*,
   632 F. Supp. 3d 1335 (S.D. Fla. 2022) ................................................................................8, 9

*Se. Laborers Health & Welfare Fund v. Bayer Corp*.,
   444 F.App'x. 401 (11th Cir. 2011) ......................................................................................17

*Siegel v. HSBC Holdings, plc*,
   283 F. Supp. 3d 722 (N.D. Ill. 2017) ....................................................................................11

*Sikhs for Justice Inc. v. Indian Nat'l Cong. Party*,
   17 F. Supp. 3d 334 (S.D.N.Y. 2014)......................................................................................25

*Simmons v. Wojcicki*,
   No. 2:22-cv-683, 2023 WL 2520305 (M.D. Ala. March 14, 2023)...................................9, 10

*SkyHop Techs., Inc v. Narra*,
   58 F.4th 1121 (11th Cir. 2023) ...............................................................................................8

*Sloss Indus. Corp. v. Eurisol*,
    488 F.3d 922 (11th Cir. 2007) ..................................................................................7

*S. Ala. Pigs, LLC v. Farmer Feeders, Inc.*,
    305 F. Supp. 2d 1252 (M.D. Ala. 2004) ...............................................................10

*Sosa v. Alvarez-Machain*,
    542 U.S. 692 (2004).................................................................................................25

*Spivey v. Fred's Inc.*,
    554 F. Supp. 2d 1271 (M.D. Ala. 2008) ...............................................................26

*Steel Co. v. Citizens for Better Env't*,
    523 U.S. 83 (1998)..................................................................................................12

*Trevino v. Merscorp, Inc.*,
    583 F. Supp. 2d 521 (D. Del. 2008) ......................................................................15

*Triple Up Ltd. v. Youku Todou Inc.*,
    235 F. Supp. 3d 15 (D.D.C. 2017).........................................................................11

*Twitter, Inc. v. Taamneh*,
    598 U.S. 471 (2023)..................................................................................... *passim*

*United States v. Mehanna*,
    735 F.3d 32 (1st Cir. 2013)....................................................................................16

*United States v. Steward*,
    590 F.3d 93 (2d Cir. 2009).....................................................................................16

*Vibe Micro, Inc. v. Shabanets*,
    878 F.3d 1291 (11th Cir. 2018) ...............................................................................6

*Warren v. Harden*,
    No. 2:12-cv-228, 2013 WL 1336990 (M.D. Ala. Mar. 29, 2013) ..........................12

*Weiss v. Nat'l Westminster Bank PLC*,
    381 F. Supp. 3d 223 (E.D.N.Y. 2019) ...................................................................20

*Weiss v. Nat'l Westminster Bank*,
    993 F.3d 144 (2d Cir. 2021)...................................................................................15

*Youngblood v. City of Georgiana, Ala.*,
    No. 19-cv-1072, 2021 WL 4173514 (M.D. Ala. Sept. 14, 2021) ............................9

*Zapata v. HSBC Holdings plc*,
   No. 1:16-cv-30, 2017 WL 6939209 (S.D. Tex. Sept. 14, 2017) .......................................10, 11

*Zapata v. HSBC Holdings PLC*,
   414 F. Supp. 3d 342 (E.D.N.Y. 2019) ..............................................................................17, 18

*Zobay v. MTN Group Ltd.*,
   695 F. Supp. 3d 301 (E.D.N.Y. 2023) .......................................................................................21

## Statutes

8 U.S.C. § 1101(a)(3) ..............................................................................................................25

8 U.S.C. § 1101(a)(22) ............................................................................................................14

18 U.S.C. § 2331(1) ................................................................................................................13

18 U.S.C. § 2333 ......................................................................................................................1

18 U.S.C. § 2333(a) .....................................................................................................12, 13, 14

18 U.S.C. § 2333(d)(2) ...........................................................................................................13

18 U.S.C. § 2334(a) ..................................................................................................................8

18 U.S.C. § 2339A ............................................................................................................13, 16

18 U.S.C. § 2339B .....................................................................................................13, 16, 17

28 U.S.C. § 1350 ......................................................................................................................1

28 U.S.C. § 516 ........................................................................................................................4

28 U.S.C. § 547 ........................................................................................................................4

## Rules

Fed. R. Civ. P. 4(k)(1)(C) .........................................................................................................8

Fed. R. Civ. P. 8(a)(2) ......................................................................................................1, 5, 6

Fed. R. Civ. P. 12(b)(2) .......................................................................................................6, 7

Fed. R. Civ. P. 12(b)(6) ......................................................................................................4, 12

**Other Authorities**

Exec. Order No. 14178,
    90 Fed. Reg. 8647 (Jan. 23, 2025) ............................................................................15

Memorandum,
    Off. Deputy Atty. Gen, *Ending Regulation by Prosecution* (Apr. 7, 2025) ...........................15

U.S. Const. amend. XIV ............................................................................................................7

*United States v. Binance Holdings Ltd.*,
    No. 2:23-cr-00178 (W.D. Wash. Nov. 21, 2023), ECF No. 23 ...................................5

*United States v. Changpeng Zhao*,
    No. 2:23-cr-00179 (W.D. Wash. Nov. 21, 2023), ECF No. 31 ...........................................4, 5

Defendant Mr. Changpeng Zhao submits this memorandum of law in support of his motion ("Motion") to dismiss the complaint ("Complaint") brought by plaintiffs ("Plaintiffs") against him, Binance Holdings, Ltd. ("BHL"), BAM Trading Services Inc. ("BAM," and together with BHL, "Entity Defendants," and collectively with Mr. Zhao, "Defendants") for four claims brought under the Anti-Terrorism Act, 18 U.S.C. § 2333 ("ATA"), as amended by the Justice Against Sponsors of Terrorism Act ("JASTA"), Pub. L. No. 114-222, 130 Stat. 852 (2016), one claim brought under the Alien Tort Statute, 28 U.S.C. § 1350 ("ATS"), and one claim for negligent infliction of emotional distress.  In addition to the arguments below, Mr. Zhao adopts the arguments in Sections V and VI of BHL's moving brief in support of his Motion.

## PRELIMINARY STATEMENT

Plaintiffs bring this action seeking treble damages for injuries suffered during an October 7, 2023 terrorist attack ("October Attack") perpetrated by Hamas and Palestinian Islamic Jihad ("PIJ") in Israel.  Defendant Zhao is a Canadian businessman.  Plaintiffs do not allege that Mr. Zhao participated in the October Attack.  Nor do they allege that he funded, or had any relationship with, Hamas or PIJ.  Rather, Plaintiffs ask this Court to hold Mr. Zhao liable because he once served as the CEO of BHL, a Cayman Islands company involved in the operations of a cryptocurrency exchange.  The Court should deny this request.

As an initial matter, the Complaint is exceedingly difficult to make out, due not only to a glut of conclusory allegations, but also due to Plaintiffs' improper practice of lumping all three Defendants together as both "Binance" and "Defendants."  Defendant BHL is also referred to as "Binance" in its own right.  BAM is given four different names.  This kind of shotgun pleading is not only confusing for Defendants and the Court, it contravenes Rule 8 of the Federal Rules of Civil Procedure ("Rules") and is grounds for dismissal.

What is clear, however, is that pleaded facts specifically about Mr. Zhao are scant and allege only that, as BHL's CEO, he prioritized commercial success over compliance with U.S. banking regulations.  BHL's compliance shortcomings were the basis for certain government enforcement actions, in which BHL and Mr. Zhao pleaded guilty.  In their Complaint, Plaintiffs try to bootstrap their unrelated causes of action about a terrorist attack onto these prior actions that have nothing to do with that attack.  That effort must fail because, unlike the government's claims, Plaintiffs' tort claims require **purposeful and intentional participation in a terrorist attack**. Plaintiffs do not, and cannot, allege this.

Plaintiffs' claims should be dismissed for these additional reasons:

**First,** Plaintiffs fail to plead a basis for personal jurisdiction over Mr. Zhao.  There are zero alleged contacts between him and Alabama.  And even if it were proper to impute the Entity Defendants' contacts with the entire United States to Mr. Zhao (it is not), the Complaint still lacks a basis for personal jurisdiction because there is no meaningful relationship between those alleged contacts, the forum, and the October Attack.  Notably, **the Complaint fails to allege that any transfers to Hamas or PIJ involved U.S. BHL users or otherwise touched the United States**.

**Second,** Plaintiffs fail to plead an ATA primary liability claim against Mr. Zhao, which requires that the defendant himself perpetrate an "act of international terrorism," a defined term for violent or mortally dangerous activity perpetrated for terroristic reasons.  The Complaint alleges only that the Entity Defendants provided routine financial services that were generally available to all users.  Such services do not constitute an "act of international terrorism."

**Third,** Plaintiffs fail to plead an ATA secondary liability claim against Mr. Zhao.  As held by the Supreme Court in the recent *Twitter, Inc. v. Taamneh* decision, ATA aiding and abetting requires that a defendant "consciously and culpably participated in" the specific act of international

2

terrorism that injured the plaintiffs "in such a way as to help make it succeed." Plaintiffs do not allege this. Plaintiffs' ATA conspiracy claim likewise fails because they do not allege that Mr. Zhao entered into an agreement with Hamas and PIJ to conduct the October Attack.

**Fourth,** Plaintiffs fail to plead liability against Mr. Zhao under the ATS. The Complaint pleads no basis for jurisdiction or specific facts required for this claim.

**Fifth,** Plaintiffs fail to plead a basis for liability against Mr. Zhao for negligent infliction of emotional distress. This claim is not recognized in Alabama.

For these reasons and those set out below, Mr. Zhao respectfully requests that this Court dismiss all of the claims against him.

## STATEMENT OF THE FACTS

For the purposes of this Motion, the following statements are drawn from allegations in the Complaint, which Mr. Zhao neither admits nor concedes.

Mr. Zhao is a Canadian citizen, who, from 2017-2023, served as the CEO of BHL, a Cayman Islands company that operates a virtual currency exchange ("Platform"). (Compl. 4, ¶¶ 29, 30.) Plaintiffs allege that Mr. Zhao prioritized BHL's commercial success over its compliance with U.S. law, and BHL failed to follow the Bank Secrecy Act ("BSA") and related regulations requiring it to identify and know its customers ("KYC") and flag or report suspicious transactions with anti-money laundering ("AML") risks. (*See, e.g.*, *id.* at 10, 19.) According to the Complaint, BHL was banned in the United States in 2019, and its investors opened BAM, a Delaware corporation, which was designed to comply with U.S. law and service U.S. customers. (*Id.* at 8.) Plaintiffs allege that Mr. Zhao was a BAM shareholder who "secretly controlled" BAM, using it as a "smokescreen" so that BHL could hide its lucrative U.S. user base. (*Id.* at 8-11.)[1]

---

[1] Plaintiffs' use of group pleading to imply that Mr. Zhao was also BAM's CEO, Compl. 6 (alleging that Mr. Zhao was CEO of "Binance entities"), is belied by the Complaint itself and BAM's own declaration. (*See* Compl. at 8

The Complaint does not allege that Mr. Zhao had any relationship with Hamas or PIJ or that Mr. Zhao shared any terrorist group's goals. To the contrary, the Complaint repeatedly alleges that Mr. Zhao was driven by purely economic aims. (*See, e.g.*, *id.* at 7, 11.)

**The Complaint does not allege any Platform transactions between U.S. users and Hamas or PIJ.** In fact, the Complaint makes few allegations about any Hamas or PIJ Platform transactions. Plaintiffs allege that certain crypto wallets at BHL "were found to interact" with wallets "associated with groups designated as terrorist organizations," including Hamas and PIJ. (*Id.* at 18.) Plaintiffs allege that BHL failed to report certain suspicious transactions involving "a host of sanctioned groups," including a unit of Hamas. (*Id.* at 16, 19.) Plaintiffs also cite a 2021 article to allege that Hamas received up to $100,000 in bitcoin transactions and allege that BHL "was at the center" of them (but fail to note that article reported that BHL blocked the wallet in question). (*Id.* at 20.)[2] The Complaint does not allege any Platform transfers involving Hamas or PIJ that occurred close in time to the October Attack. That makes sense. By October 2023, BHL and Mr. Zhao were in the final stages of settlements with the U.S. government to resolve claims arising from various BSA violations.

Plaintiffs reference these settlements, and misleadingly state the "Binance platform" had been "charged with . . . aiding terrorist networks, including Hamas." (*Id.* at 17.) That is inaccurate as to both BHL and Mr. Zhao. From a jurisdictional perspective, only the U.S. Department of Justice ("DOJ") has authority to bring federal criminal aiding and abetting charges. *See* 28 U.S.C. §§ 516, 547. Review of the plea agreements show that no such offense was charged. *See United*

---

(citing an article that states BAM's CEO was Catherine Coley; Decl. of Christopher Blodgett, submitted as Ex. A in support of BAM's Motion to Dismiss).

[2] When presented with a motion to dismiss pursuant to Rule 12(b)(6), the court may also consider documents that are referenced in the complaint or that the plaintiffs relied on in bringing suit. *Johnson v. City of Atlanta*, 107 F.4th 1292, 1300 (11th Cir. 2024).

*States v. Changpeng Zhao*, No. 2:23-cr-00179, ¶ 2 (W.D. Wash. Nov. 21, 2023), ECF No. 31; *United States v. Binance Holdings Ltd.*, No. 2:23-cr-00178, ¶ 2 (W.D. Wash. Nov. 21, 2023), ECF No. 23 ("DOJ Plea Agreement").  Rather, Mr. Zhao was charged with a single count of failure to maintain an adequate AML program—nothing close to what is being alleged in this case.[3]  To be clear, no government entity has sued Mr. Zhao (or the Entity Defendants) for aiding and abetting terrorists. And, importantly, when settling with BHL and Mr. Zhao, the government acknowledged that BHL, under the leadership of Mr. Zhao, had "**taken significant steps to remediate its AML and sanctions compliance programs**," including **by May 2022**, implementation of "full KYC requirements" for account holders and "restricting accounts for users subject to U.S. sanctions." *See, e.g.*, DOJ Agreement ¶¶ 8.g, f (emphasis added).

## PROCEDURAL BACKGROUND

Plaintiffs filed this action in February 2024.  (ECF No. 1.)  Mr. Zhao was never served.  In May 2024, he entered a stipulation, agreeing to waive objections to the absence of service in order to streamline certain preliminary matters, "provided, however," that he did not waive, "but rather expressly reserve[d], any and all other rights, defenses and objections to the claims in this action (including but not limited to defenses based upon lack of personal or subject matter jurisdiction, lack of standing, improper venue, or a defendant having been improperly named)."  (ECF No. 15 at 2-3.)  The stipulation made clear that service on Mr. Zhao was "not effectuated in the Middle District of Alabama (or anywhere else)."  (*Id.* at 3.)

## ARGUMENT

This Motion should be granted because the Complaint does not comply with Rule 8, fails to plead personal jurisdiction over Mr. Zhao, and fails to state any claim against him.

---

[3] None of the actions that Plaintiffs cite involve any allegations by the government that any of the Defendants aided and abetted terrorism.

## I.    The Complaint Should Be Dismissed Under Rule 8.

Rule 8 requires a complaint to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Plaintiffs' Complaint contravenes this mandate in several ways. First, its glut of conclusory and vague allegations make it impossible to discern what, specifically, Mr. Zhao is alleged to have done with respect to the October Attack, thereby violating Rule 8's requirement that Plaintiffs include a plain statement showing that they are entitled to relief against Mr. Zhao here. Second, the Complaint's incessant group-pleading— attributing the key allegations of misconduct to "Binance" (which the Complaint confusingly uses in the specific form (to refer to BHL) and in the general form (to refer to all Defendants) and to "Defendants"—fails to provide basic notice as to what, exactly, Mr. Zhao is alleged to have done with respect to the October Attack. (*See, e.g.*, Compl. at 1.) Third, because "each count adopts the allegations of the preceding counts, causing each successive count to carry all that came before" the Complaint reads like a Rorschach test where the reader is left to speculate as to what is being pleaded and against whom. *Barmapov v. Amuial*, 986 F.3d 1321, 1324-25 (11th Cir. 2021). In sum, the Complaint is the very definition of a "shotgun pleading" and should therefore be dismissed under Rule 8. *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1294-95 (11th Cir. 2018).

## II.    Plaintiffs' Claims Against Mr. Zhao Should Be Dismissed Under Rule 12(b)(2).

Plaintiffs' claims against Mr. Zhao must be dismissed under Rule 12(b)(2). Plaintiffs provide no justification for hauling a Canadian citizen who resides in the United Arab Emirates ("UAE") into an Alabama court to litigate terrorism claims. Plaintiffs allege only that Mr. Zhao was CEO of BHL (a Cayman company), the Platform was accessed by users "associated with" Hamas and PIJ (none of whom were in the United States), and Hamas and PIJ later injured Plaintiffs (none of whom is an Alabama resident) in a terrorist attack (that occurred in Israel). They allege no contacts by Mr. Zhao with this forum, nor does the Complaint plead any basis to

impute purported contacts of the Entity Defendants with this forum to Mr. Zhao.  *See Nimbus Techs., Inc. v. SunData Prods., Inc.,* 484 F.3d 1305, 1308 (11th Cir. 2007).

General jurisdiction over Mr. Zhao has not been established because Plaintiffs allege he is a citizen of Canada who resides in the UAE (Compl. ¶ 30).  *See Goodyear Dunlop Tires, S.A. v. Brown*, 564 U.S. 915, 924 (2011) ("For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile.").  Accordingly, the only way this Court can assert personal jurisdiction over Mr. Zhao is if Plaintiffs can establish specific jurisdiction.  As explained below, the Complaint fails to plead any basis for specific jurisdiction.

### A.    The Relevant Legal Standard for Specific Jurisdiction

Plaintiffs bear the burden of alleging facts to establish a *prima facie* case of personal jurisdiction over each defendant.  *See Don't Look Media LLC v. Fly Victor Ltd.*, 999 F.3d 1284, 1292 (11th Cir. 2021).  When faced with a Rule 12(b)(2) motion, a court determines whether personal jurisdiction comports with (1) the forum state's long-arm provision and (2) the requirements of the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution.  *Cont'l Motors, Inc. v. Jewell Aircraft, Inc*., 882 F. Supp. 2d 1296, 1306 (S.D. Ala. 2012).  "Here, the two inquiries merge because Alabama's long-arm statute permits the exercise of personal jurisdiction to the fullest extent constitutionally permissible."  *Sloss Indus. Corp. v. Eurisol*, 488 F.3d 922, 925 (11th Cir. 2007).

The Due Process Clause requires that a foreign defendant have sufficient "minimum contacts" with the forum such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice."  *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).  The sufficiency of contacts depends on whether personal jurisdiction is (1) general, which permits the court to adjudicate all claims against a defendant, or (2) specific, which restricts adjudication to only those claims that relate to defendant's activities within the forum state.  *Helicopteros*

*Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8, 9 (1984).   General jurisdiction requires the defendant's contacts with that forum to be so "continuous and systematic as to render [it] essentially at home in the forum state." *Goodyear*, 564 U.S. at 919.   Specific jurisdiction is proper only if an action "arises out of or relates to the defendant's contact with the forum." *Daimler AG v.* Bauman, 571 U.S. 117, 127 (2014) (cleaned up, quotation omitted).   The focus is whether there is "a strong 'relationship among the defendant, the forum, and the litigation.'" *SkyHop Techs., Inc v. Narra*, 58 F.4th 1121, 1229 (11th Cir. 2023) (quoting *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 353 (2021)).

### B. Plaintiffs Fail to Allege Specific Jurisdiction Over Mr. Zhao.

Plaintiffs allege personal jurisdiction under Alabama's long-arm statute and Rule 4(k)(1)(C), which authorizes personal jurisdiction through proper service of process upon a defendant pursuant to a federal statute that contains its own service provision.  (Compl. ¶ 15.)  The ATA authorizes nationwide service in any U.S. district.  18 U.S.C. § 2334(a).

The Alabama long-arm statute requires sufficient minimum contacts with Alabama in order to establish personal jurisdiction. *Ex parte M.E.J.*, 392 So.3d 52, 58 (Ala. 2023).  When service is effectuated pursuant to the ATA (*i.e*., within a U.S. district), the relevant forum for personal jurisdiction is the United States. *Associated Transp. Line, Inc. v. Productos Fitosanitarios Proficol El Carmen, S.A.*, 197 F.3d 1070, 1074 (11th Cir. 1999).  When service is ***not*** effectuated pursuant to the ATA, plaintiffs are "precluded from invoking the ATA as a statutory basis for personal jurisdiction," and the relevant forum for personal jurisdiction is the state in which the district court sits. *Schrier v. Qatar Islamic Bank*, 632 F. Supp. 3d 1335, 1346 (S.D. Fla. 2022). *See also Cascade Yarns, Inc. v. Knitting Fever, Inc.*, 2011 WL 1042578, at *1 (W.D. Wash. Mar. 18, 2011) ("it would be inappropriate for a federal court to . . . apply[] a national contacts test for personal

jurisdiction where service is not effected pursuant to that federal statute"); *Doe v. Unocal Corp.*, 27 F. Supp. 2d 1174, 1183-84 (C.D. Cal. 1998) (same).

Mr. Zhao was not served in this or any U.S. district, nor did he waive service.  *See supra* p. 5.  Thus, the relevant forum for the Court's minimum contacts analysis for all six claims is Alabama.  *See Schrier*, 632 F. Supp. 3d at 1349 .

### 1.    Plaintiffs Fail to Plead Sufficient Alabama Contacts.

The only allegation in the Complaint about Alabama and Mr. Zhao is that "[u]pon information and belief, he authorized Defendant to open in Alabama."  (Compl. ¶30.)  This allegation is unintelligible, unsupported, and contradicted by BAM's own moving brief and supporting Declaration.  *Youngblood v. City of Georgiana, Ala.*, No. 19-cv-1072, 2021 WL 4173514, *3 (M.D. Ala. 2021) ("disregarding conclusory and speculative 'upon information and belief' statements").  The only other allegations in the Complaint about Alabama relate to BAM, (Compl. 8-9, ¶¶ 18, 28), and, therefore, cannot support personal jurisdiction over Mr. Zhao.  *See Rush v. Savchuk,* 444 U.S. 320, 331-32 (1980) (holding that constitutional requirements "must be met as to each defendant over whom a state court exercises jurisdiction" and that attributing one defendant's contacts to another is "plainly unconstitutional").  Likewise, Mr. Zhao exists separate and apart from BAM (and BHL).  *See Nimbus Techs.,* 484 F.3d at 1308 ("'[A] corporation is a distinct and separate entity from the individuals who . . .  manage it as directors or officers.'") (quoting *Cohen v. Williams*, 318 So. 2d 279, 281 (Ala. 1975)).  The Complaint provides no basis for the Court to disregard that separateness.  *See Gilbert v. James Russell Motors, Inc*., 812 So.2d 1269, 1273 (Ala. Civ. App. 2001) (listing requirements for veil piercing under Alabama law, which are not pleaded here).

Because Plaintiffs allege no contacts by Mr. Zhao with Alabama (much less any giving rise to Plaintiffs' claims), their claims against him must be dismissed.  *See Simmons v. Wojcicki*, No.

2:22-cv-683, 2023 WL 2520305, at *3 (M.D. Ala. March 14, 2023) (Bryan, M.J.) ("The absence of any alleged contacts with the state of Alabama [] precludes a finding of specific jurisdiction[.]").

### 2. Plaintiffs Fail to Allege Sufficient United States Contacts.

Even if the United States were the correct forum for Plaintiffs' ATA claims (it is not), the Complaint would not support personal jurisdiction over Mr. Zhao. "An officer who has never been in Alabama, nor conducted personal business in the state through an alter ego or through personal agents, may not be subjected to jurisdiction in Alabama." *S. Ala. Pigs, LLC v. Farmer Feeders, Inc.*, 305 F. Supp. 2d 1252, 1260 (M.D. Ala. 2004). Aside from the Complaint's conclusory allegation of Mr. Zhao's "secret control of BAM," the only alleged connection between Mr. Zhao, the United States, and this case is Mr. Zhao's prior role as CEO of BHL. However, "jurisdiction over individual officers and employees of a corporation may not be predicated on the court's jurisdiction over the corporation itself." *Ex parte Kohlberg Kravis Roberts & Co*., 78 So.3d 959, 974 (Ala. 2011). "[T]here must be a showing that the individual officers engaged in some activity that would subject them to the state's long-arm statute." *Id.*

A company's failure to identify and remove from its platform accountholders who allegedly contributed to plaintiffs' harm is not a "minimum contact" by that company's CEO. *See, e.g.*, *Simmons*, 2023 WL 2520305, at *3 (finding company's failure to ban account users who allegedly harassed plaintiff "woefully inadequate to establish a *prima facie* case of personal jurisdiction" for CEO). *Cf. Facebook, Inc. v. K.G.S.*, 294 So.3d 122, 140 (Ala. 2019) (finding company's alleged failure to remove social media page after notification it injured plaintiff did not establish personal jurisdiction).

Nor are certain decisions about compliance sufficient minimum contacts. For example, in *Zapata*, plaintiffs alleged that a foreign bank defendant, HSBC Holdings, was liable under the ATA because it set a "money-laundering protocol" and "actively managed" the money-laundering

efforts of its subsidiaries, "exercised systemic inaction which amounted to willful blindness towards illicit proceeds moving [into the United States]," and "intentionally failed to alert [its subsidiary] about the money-laundering risks." *Zapata v. HSBC Holdings plc*, No. 1:16-cv-30, 2017 WL 6939209, at *4 (S.D. Tex. Sept. 14, 2017). The court dismissed for lack of personal jurisdiction, finding that the "high-level policy-setting role and systemic inaction Plaintiffs attribute to HSBC Holdings" were insufficient to confer jurisdiction in the United States. *Id.* *See also Bernhardt v. Islamic Republic of Iran*, No. 18-2739, 2020 WL 6743066, at *3 (D.D.C. Nov. 16, 2020), *aff'd*, 47 F.4th 856 (D.C. Cir. 2022), *cert denied*, 144 S.Ct. 280 (2023) (finding no personal jurisdiction over the foreign bank defendant that "provided the approval necessary for [its affiliate] to continue its U.S. sanctions-evading program," and, in connection with a government settlement, admitted "it had violated U.S. law"); *Siegel v. HSBC Holdings, plc,* 283 F. Supp. 3d 722, 727, 729 (N.D. Ill. 2017) (finding no jurisdiction over foreign bank defendants that allegedly schemed to circumvent monitoring by U.S. regulators).

Besides all that, Plaintiffs fail to allege that the Entity Defendants' U.S. users had any involvement with any alleged transfers involving Hamas or PIJ or the October Attack. *See Bernhardt*, 2020 WL 6743066, at *3 ("[T]he plaintiff must show some sort of causal relationship between a defendant's U.S. contacts and the episode in suit.") (quoting *Triple Up Ltd. v. Youku Todou Inc.*, 235 F. Supp. 3d 15, 27 (D.D.C. 2017). This stark lack of any nexus between Plaintiffs' claims and the forum distinguishes this case from other ATA cases where the financial services defendants at least used a New York branch or correspondent accounts to conduct the transfers at issue. *See, e.g.*, *King v. Habib Bank Ltd.*, 2022 WL 4537849, at *3 (S.D.N.Y. Sept. 28, 2022) (New York branch); *Force v. Qatar Charity*, No. 20-cv-2578, 2025 WL 43163, at *2 (E.D.N.Y. Jan. 7, 2025) (New York correspondent account).

"[T]he requirement that jurisdiction be established as a threshold matter is inflexible and without exception." *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 94-95 (1998) (quotations omitted). Because the Complaint lacks a basis for personal jurisdiction over Mr. Zhao, all claims against him must be dismissed.

## III. Plaintiffs' Claims Against Mr. Zhao Should Be Dismissed Under Rule 12(b)(6).

This Court can separately dismiss all claims against Mr. Zhao under Rule 12(b)(6). To survive a motion to dismiss under this Rule, a complaint must permit the court, based on its "judicial experience and common sense[,] . . . to infer more than the mere possibility of misconduct." *Edge v. Daechang Seat Corp. USA*, No. 3:23-cv-684, 2024 WL 1321072, at *1 (M.D. Ala. Mar. 27, 2024) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). Instead, a complaint must contain sufficient factual matter that, accepted as true, "state[s] a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In determining plausibility, courts consider only well-pleaded, nonconclusory factual allegations. *Warren v. Harden*, No. 2:12-cv-228, 2013 WL 1336990, at *2 (M.D. Ala. Mar. 29, 2013) (citing *Ashcroft*, 556 U.S. at 681). The allegations must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "[C]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002).

Plaintiffs' claims fail to state a claim and must be dismissed for the reasons set forth below.

### A. Plaintiffs Fail to State a Claim Against Mr. Zhao Under the ATA.

#### 1. The Relevant Legal Standard for Stating a Claim Under the ATA.

The ATA provides a civil remedy for "[a]ny national of the United States injured in his or her person, property or business by reason of an act of international terrorism." 18 U.S.C. § 2333(a). ATA claims can be based on two theories of liability—primary and secondary.

ATA primary liability lies against a defendant that perpetrated the "act of international terrorism" that caused the plaintiff's injury. 18 U.S.C. § 2333(a). The necessary elements of a primary liability ATA claim as to any Defendant are threefold: (1) an "act of international terrorism"; (2) the requisite mental state, and (3) proximate causation. *Newman v. Associated Press*, No. 24-cv-20684, 2024 WL 5063288, at *11 (S.D. Fla. Dec. 10, 2024). An "act of international terrorism" is defined as activity outside the United States that (1) is violent or dangerous to human life and violates federal or state criminal law, and (2) is intended to intimidate or coerce a civilian population, influence government policy by intimidation or coercion, or affect government conduct by mass destruction, assassination, or kidnapping. *See* 18 U.S.C. § 2331(1). Two federal "material support crimes," 18 U.S.C. §§ 2339A and 2339B (those asserted by Plaintiffs, (*see* Compl. ¶¶ 51-52)), can serve as predicate crimes giving rise to ATA primary liability, but only if they independently meet the "act of international terrorism" definition. *Newman*, 2024 WL 5063288, at *11. As to the *mens rea* requirement, to be liable, the defendant must have the requisite "knowing" state of mind as to the underlying predicates. *See, e.g.*, *id.* at *13-14 (alleging "mere notice" of third parties' "relationship with Hamas" is insufficient to satisfy mens rea requirement under §§ 2339A or B). As to causation, there must be a "direct relationship between the injuries that he or she suffered and the defendant's acts." *Fields v. Twitter, Inc.*, 881 F.3d 739, 744 (9th Cir. 2018).

In 2016, JASTA added a secondary liability provision to the ATA for "any person who aids and abets, by knowingly providing substantial assistance, or who conspires with the person who committed . . . an act of international terrorism." 18 U.S.C. § 2333(d)(2). In JASTA's preamble, Congress stated that *Halberstam v. Welch*, 705 F.2d 472 (D.C. Cir. 1983), provided a framework for how secondary liability should function in ATA cases. Pub. L. No. 114-222,

§2(a)(5), 130 Stat. 852.  That case involved a defendant who spent years closely working with her live-in partner (a serial burglar), doing the bookkeeping work for his "business," facilitating the sale of his stolen goods, having customers make checks payable to her, falsifying tax returns, and otherwise keeping fraudulent accounting records.  *Halberstam*, 705 F.2d at 474-76.  The *Halberstam* court found that, because the defendant's role in her partner's illicit enterprise was so systemic and intentional, she could be liable for each act of the enterprise, including the partner's murder of his burglary victim.  *Id.* at 487-89.

### 2.   Three Plaintiffs Lack ATA Standing and Their ATA Claims Must Be Dismissed (Claims I-IV).

ATA claims may be brought only by injured U.S. nationals or their estate, survivors, or heirs.  *See* 18 U.S.C. § 2333(a).[4]  Plaintiffs Hagar Almog, Lishay Lavi, and Ariel Ein-Gal concede that they are Israeli citizens, not U.S. nationals, and bring claims for their own injuries.  (Compl. ¶¶ 24, 25, 27.)  These Plaintiffs are not entitled to relief under the ATA and their ATA claims must thus be dismissed for lack of standing.  *Lelchook v. Lebanese Canadian Bank*, No. 18-cv-12401, 2024 WL 967078, at *9 (S.D.N.Y. Mar. 6, 2024).

### 3.   Plaintiffs Fail to State a Claim for Primary Liability Under the ATA Against Mr. Zhao (Claims III & IV).

Plaintiffs' primary-liability ATA claims against Mr. Zhao fail on multiple grounds.

#### a.   Mr. Zhao Is Not a Primary Actor Under the ATA.

To begin, the Complaint does not allege that Mr. Zhao himself conducted an act of terrorism.  Plaintiffs allege that Mr. Zhao was BHL's CEO, that BHL operated the Platform, that individuals associated with Hamas and PIJ used the Platform, and that Hamas and PIJ (not Mr. Zhao, not BHL) conducted the October Attack.  An ATA primary liability claim lies only "against

---

[4] A U.S. national is a "citizen of the United States," or "a person who, though not a citizen of the United States, owes permanent allegiance to the United States." 8 U.S.C. § 1101(a)(22).

the principal perpetrators of acts of international terrorism, but **not against secondary actors** who facilitate such acts by others." *Freeman v. HSBC Holdings PLC*, 413 F. Supp. 3d 67, 82 (E.D.N.Y. 2019) (emphasis added). *See also Linde v. Arab Bank, PLC*, 882 F.3d 314, 328-29 (2d Cir. 2018) (holding that ATA primary liability depends on whether defendant's "own actions" were acts of terrorism). To the extent Plaintiffs attempt to hold Mr. Zhao liable for the general offering of financial services by the Entity Defendants, that attempt fails too. Their actions are not imputed to Mr. Zhao. *Trevino v. Merscorp, Inc.*, 583 F. Supp. 2d 521, 528 (D. Del. 2008) (addressing requirements for veil piercing under Delaware law, which are not pleaded here); Decl. of Mr. Christopher Wall, dated Apr. 13, 2025, ¶¶ 18-19 (explaining and concluding why the Complaint pleads no basis for veil piercing under Cayman law).[5] Accordingly, the primary liability ATA claims must be dismissed as Mr. Zhao is not a primary actor.

### b.    There is No "Act of International Terrorism."

The routine financial services offered by the Entity Defendants do not meet the standard for an "act of international terrorism" because those services are neither inherently violent nor mortally dangerous. *See, e.g.*, *Weiss v. Nat'l Westminster Bank*, 993 F.3d 144, 162–63 (2d Cir. 2021). *See also* Exec. Order No. 14178, 90 Fed. Reg. 8647, *Strengthening American Leadership in Digital Financial Technology* (Jan. 23, 2025)[6] (recognizing cryptocurrencies' "crucial role in innovation and economic development in the United States"); Memorandum, Off. Deputy Atty. Gen, *Ending Regulation by Prosecution* (Apr. 7, 2025)[7] (same).

---

[5] The law of the state of incorporation is applied to determine if an alter ego theory may be used to establish liability. *Jefferson Pilot Broadcasting Co. v. Hilary & Hogan, Inc.*, 617 F.2d 133, 135 (5th Cir. 1980); *Euroboor B.V. v. Grafova*, No. 17-2157, 2021 WL 4325694, at *11, 17 (N.D. Ala. Sept. 23, 2021). BAM is incorporated in Delaware, (Compl. ¶ 28); BHL is incorporated in the Cayman Islands (*id.* ¶ 29).
[6] Also available at https://www.whitehouse.gov/presidential-actions/2025/01/strengthening-american-leadership-in-digital-financial-technology/.
[7] Available at https://www.justice.gov/dag/media/1395781/dl?inline.

That financial services violated AML or sanctions laws does not change their intrinsically non-violent, non-dangerous quality.  *See, e.g.*, *Kemper v. Deutsche Bank AG*, 911 F.3d 383, 390 (7th Cir. 2018) ("That [defendant bank's] business dealings may violate U.S. sanctions does not convert them into terrorist acts.");  *O'Sullivan v. Deutsche Bank AG*, No. 17-cv-8709, 2019 WL 1409446, at *7–8 (S.D.N.Y. Mar. 28, 2019) (similar).  Nor does an allegation that an illicit actor ended up as one of the many users of a defendant's financial services.  *Crosby v. Twitter, Inc.*, 303 F. Supp. 3d 564, 576 (E.D. Mich. 2018), *aff'd*, 921 F.3d 617 (6th Cir. 2019).

Besides lacking the quality of an "act of terrorism," financial services lack the requisite terroristic intent required where, as here, their provision is "motivated by economics, not by a desire to 'intimidate or coerce.'"  *See Kemper*, 911 F.3d at 390; *Gonzalez v. Google LLC*, 2 F.4th 871, 900-01 (9th Cir. 2021), *vacated and remanded*, 598 U.S. 617 (2023) (finding that Google did not commit acts of international terrorism when it allegedly "shared advertising revenue with ISIS" to further its own "economic self-enrichment").  Accordingly, the primary liability ATA claims must be dismissed as the services provided by the Entity Defendants are not "acts of international terrorism"; and Plaintiffs fail to plead any conduct by Mr. Zhao relevant to this claim.

### c.    There Is No Requisite *Mens Rea*.

The Complaint also fails to plead the requisite state of mind as to the two underlying material support statutes alleged in Plaintiffs' ATA primary liability claims.  Section 2339A requires that the defendant knows the alleged material support was going to a specific terrorist group ***and*** specifically knows or intends to further the specific terror-related crimes.  *United States v. Mehanna*, 735 F.3d 32, 43 (1st Cir. 2013) (citing *United States v. Steward*, 590 U.S. 93, 113 (2d Cir. 2009)).  Plaintiffs offer no facts to support the notion that any Defendant—and certainly not Mr. Zhao, personally—provided resources to Hamas or PIJ with specific knowledge or intent that the October Attack were to be carried out.  Section 2339B requires that the defendant "knowingly"

16

provided material support to a foreign terrorist organization.  18 U.S.C. § 2339B(a)(1).  Plaintiffs'

allegations that Defendants "provided 'routine' services knowing only generally that some

(unidentified) users could be affiliated with terrorism" are insufficient to establish a material

support claim.  *Crosby*, 303 F. Supp. 3d at 577.

### d.    There Is No Proximate Causation.

The Complaint also fails to plead causation.  The ATA requires proximate cause.  *See, e.g.*,

*Rothstein v. UBS AG*, 708 F.3d 82, 95 (2d Cir. 2013).  An ATA primary liability claim thus requires

a "direct relationship between the injuries that he or she suffered and the defendant's acts."  *Fields*,

881 F.3d at 744 (rejecting the argument that proximate cause is established if plaintiffs' injury was

merely foreseeable or if defendant was reckless).  *Cf. Se. Laborers Health & Welfare Fund v.*

*Bayer Corp.*, 444 F.App'x. 401, 409 (11th Cir. 2011) (analyzing RICO, with the same "by reason

of" language as in the ATA and finding that, when evaluating a RICO claim for proximate

causation, "the central question it must ask is whether the alleged violation led directly to the

plaintiff's injuries").  *See also Kemper*, 911 F.3d at 392 (finding that proximate cause requires

considerations of "foreseeability, directness, and the substantiality of the defendant's conduct").

The Complaint does not plead proximate cause because it is "devoid of any factual, non-

conclusory allegations that demonstrate, for example, that [the defendants] provided money

directly to [Hamas and PIJ] to carry out the attack[]; . . . or that [Hamas and PIJ] would not have

been able to carry out the attacks absent those specific funds."  *See Kaplan v. Lebanese Canadian*

*Bank, SAL*, 405 F. Supp. 3d 525, 532–33 (S.D.N.Y. 2019), *vacated in part on other grounds*, 999

F.3d 842 (2d Cir. 2021); *see also In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 118, 124 (2d

Cir. 2013 ("We . . . are not persuaded that providing routine banking services to organizations and

individuals said to be affiliated with al Qaeda—as alleged by plaintiffs—proximately caused the

September 11, 2001 attacks or plaintiffs' injuries."); *Zapata v. HSBC Holdings PLC*, 414 F. Supp.

3d 342, 356–57 (E.D.N.Y. 2019) (finding no proximate cause where plaintiffs failed to plead the money allegedly laundered by HSBC was used by cartels for their terrorist acts and where there was "no plausible inference that the [c]artels would not be able to commit these acts of violence without HSBC first laundering their money"), *aff'd,* 825 F.App'x 55 (2d Cir. 2020).

The Complaint merely alleges that some illicit actors, including Hamas and PIJ, used the Platform at some unspecified time.  Plaintiffs plead no requisite, direct tie from BHL's services to the October Attack, or even plead that such services were a substantial factor in its execution.  *See Linde*, 882 F. 3d at 327 ("[T]he mere provision of 'routine banking services to organizations and individuals said to be affiliates with' terrorists does not necessarily establish causation.") (quoting *In re Terrorist Attacks*, 714 F.3d at 124); *Rothstein*, 708 F.3d at 96-97 (allegations that banking services "made it more likely that the moneys would be used for terrorism" are insufficient to state a primary liability claim); *O'Sullivan*, 2019 WL 1409446 at *6 n. 11 ("While wrongful, Defendants' alleged evasion of U.S. sanctions and provision of financial services . . . does not support a plausible inference that those services played a substantial role in bringing about the attacks that injured Plaintiffs.").

Because Plaintiffs fail to sufficiently allege any of the necessary elements of an ATA primary liability claim (as to any Defendant, much less Mr. Zhao, personally), let alone all three, these claims against Mr. Zhao must be dismissed.

### 4.    Plaintiffs Fail to State a Claim for ATA/JASTA Aiding & Abetting Against Mr. Zhao (Claim I).

Plaintiffs fail to meet the high standard set forth in *Twitter, Inc. v. Taamneh*, which requires allegations that JASTA defendants specifically "aided and abetted the act of international terrorism that injured the plaintiffs" through "conscious, voluntary, and culpable participation" in that specific terrorism act.  598 U.S. 471, 497, 505 (2023).

In *Twitter*, victims of an ISIS attack sued social media companies alleging that ISIS used their platforms for fundraising and recruiting, that defendants knew this, and profited from advertisements on ISIS' posts. *Id.* at 478-482. The Supreme Court found no claim was stated because aiding and abetting under JASTA requires "conscious, voluntary, and culpable participation" in the specific act of terrorism that caused plaintiff's injury in such a way as to help "make it succeed." *Id.* at 497. The Court explained that conscious and culpable participation could be inferred where the defendant's assistance to the primary actor for his attack was "substantial" and "knowing." *Id.* at 491. These "twin requirements" worked in tandem "with a lesser showing of one demanding a greater showing of the other." *Id.* at 491-92. The Court also noted that conscious and culpable participation could be more easily inferred when "there is a direct nexus" between the defendant's acts and principal's tortious act. *Id.* at 505. "[T]he more attenuated the nexus, the more courts should demand that plaintiffs show culpable participation through international aid that substantially furthered the tort." *Id.* The Court found defendants' alleged assistance, the passive, general offering of the platforms' services, was not substantial. Defendants did not give ISIS any "special treatment or words of encouragement," rather ISIS used the platforms "just like everyone else." *Id.* at 498. Given the defendants' "arm's length, passive, and largely indifferent" assistance, the Court found that plaintiffs "would need some other very good reason to think that defendants were consciously trying to help or otherwise 'participate in' the Reina attack." *Id.* Instead, the Court explained that plaintiffs did not plead scienter, "[r]ather, they essentially portray[ed] defendants as bystanders, watching passively as ISIS carried out its nefarious scheme." *Id.* at 500.

### a.    Plaintiffs Fail to Allege Substantial Assistance.

Plaintiffs fail to allege that Mr. Zhao provided any assistance to any terrorist organization. As in *Twitter*, Plaintiffs fail to plausibly allege that the Entity Defendants provided anything other

than arms-length, generally available, routine services. The Complaint also lacks any plausible allegation that these services were provided by Defendants in order to align themselves with Hamas' and PIJ's terrorist activities. *See id.* at 504 (faulting the Ninth Circuit for failing to "give[] much greater weight to defendants' . . . undisputed lack of intent to support ISIS"). *See also id.* at 501 (acknowledging common law principles that, absent culpable intent, knowledge that customers use one's product for nefarious purposes does not support liability). Nor is there any allegation that any Defendant gave any terrorist-linked users "special treatment or words of encouragement," "treated [them] any differently from anyone else," or operated in anything more than a "passive, and largely indifferent" posture. *Id*. at 498, 500. *Compare with Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 866-67 (holding that the plaintiffs sufficiently stated a JASTA claim where the bank allegedly gave Hezbollah-associated customers "special treatment."). The Complaint alleges that Hamas and PIJ used the Platform "just like everyone else." *Twitter*, 598 U.S. at 498. Therefore, Plaintiffs fail to plead that Mr. Zhao or the Entity Defendants provided substantial assistance.

### b. Plaintiffs Fail to Allege Scienter.

Because Plaintiffs allege only general, passive services, a high level of scienter is needed to find that Defendants "culpably, consciously, and voluntarily" participated in the October Attack. *Id.* at 492. Yet Plaintiffs concede that Defendants were motivated by purely economic goals, and "have failed to allege anything but neutral transactions" *Averbach v. Cairo Amman Bank*, No. 19-cv-0004, 2020 WL 486860, at *15 (S.D.N.Y. Jan 21, 2020), *aff'd* 2020 WL 1130733 (S.D.N.Y. Mar. 9, 2020). "This is insufficient to state a claim under JASTA." *Id. See also Weiss v. Nat'l Westminster Bank PLC*, 381 F. Supp. 3d 223, 239 (E.D.N.Y. 2019) (finding "that Defendant knowingly provided banking services to a terrorist organization, without more, is insufficient to satisfy JASTA's scienter requirement"). Because Plaintiffs fail to plead scienter and instead allege

20

conduct driven by legitimate business and economic objectives, their JASTA aiding-and-abetting claim must be dismissed.

**c.**      **Plaintiffs Fail to Allege a Nexus With the October Attack.**

As in *Twitter*, the Entity Defendants' alleged, so-called relationship with Hamas and PIJ "appears to have been the same as their relationship with their billion-plus other users" and their alleged "relationship with the [October Attack] is even further removed," particularly since no relationship exists at all.  *See* 598 U.S. at 500.  Of course, the Plaintiffs plead no relationship between Mr. Zhao and any terrorist organization—nor could they.  Absent Defendants' nexus with the October Attack, exceptional circumstances are needed to find JASTA aiding-and-abetting liability.  *Id*. at 503.  Plaintiffs likewise fail to allege any such exceptional circumstances, such as a "long-term intention to participate" in Hamas' and PIJ's "ongoing illicit enterprise" that reflect Defendants' "intent and desire" to make Hamas' and PIJ's terrorism venture succeed," as was the case in *Halberstam*.  705 F.2d at 488.

Nor do the Entity Defendants' services constitute "dangerous wares."  *See supra* § I.A.3.b (explaining that such services are neither violent nor dangerous).  *Compare with Zobay v. MTN Group Ltd.*, 695 F. Supp. 3d 301, 318, 345-48 (E.D.N.Y. 2023) (holding that plaintiffs sufficiently stated a JASTA claim where defendants allegedly procured for terrorists certain technologies that could "serve as detonators for specific kinds of weapons," "were of particular importance to communications infrastructure," and "were used to track enemy operatives" that were specifically used in terrorist attacks).    Plaintiffs allege only that cryptocurrencies are generally important to terrorist groups.  (Compl. 19, ¶ 36.)  Just as the Supreme Court found the same point unavailing in *Twitter*, the Court should likewise reject that classification here.  598 U.S. at 482.

Nor were the Entity Defendants' services so "unusual" as to infer the Entity Defendants' conscious and culpable participation in the October Attack.  All Platform users received the same

21

treatment, and the Entity Defendants were indifferent as to why any were using the Platform. *Compare with King*, 2022 WL 4537849, at *1, *11 (finding JASTA claim was pleaded where plaintiffs alleged that defendants gave terrorists affirmative, special treatment, including placing terrorists on a "whitelist" or "good guy list," pre-clearing them for reduced scrutiny, and engaging in tactics such as "wire-stripping" to further shield its illicit account holders). Again, Plaintiffs do not plead that Mr. Zhao provided any personal services to any terrorist organization—nor could they. Accordingly, Plaintiffs fail to plead a nexus between any Defendant and the October Attack or any justification for JASTA aiding-and-abetting claims.

### d.    The Complaint Fails to Plead the *Halberstam* Factors.

In *Twitter*, the Court acknowledged the inadequacy of *Halberstam*'s precise three-element, six-factor test, and admonished the Ninth Circuit's "analytic approach" in strictly applying it. 598 U.S. at 488, 492-93, 505. Yet, even if the *Halberstam* test were applied, that application further supports dismissal of Plaintiffs' JASTA aiding-and-abetting claim.

The *Halberstam* test looks at whether the defendant (1) was "generally aware of his role as part of an overall illegal or tortious activity at the time that he provide[d] the assistance," and (2) knowingly and substantially assisted the principal violation. *Halberstam*, 705 F.2d at 477. Relevant factors for knowing and substantial assistance include: (1) the nature of the act assisted, (2) the amount of assistance, (3) whether the defendant was present at the time of the principal tort, (4) the defendant's relation to the tortious actor, (5) the defendant's state of mind, and (6) the duration of the assistance given. *Id.* at 488.

Plaintiffs' do not plausibly allege that Mr. Zhao was generally aware of his (nonexistent) role in the October Attack at the time that he allegedly provided them assistance. *See Honickman v. Blom Bank Sal*, 6 F.4th 487, 491–92, 501 (2d Cir. 2021) (finding no general awareness despite defendant bank having clients who were specially designated global terrorists); *Linde*, 882 F.3d at

330 ("awareness that one is playing a role in [terrorist] activities" requires more than "knowledge of the organization's connection to terrorism").   As set forth above, *see supra* §§ I.A.4.a.- c., the Complaint does not plead "knowing and substantial" assistance under *Twitter*.  This element is also lacking under *Halberstam*.  Mr. Zhao's alleged "assistance" was being a CEO (*Halberstam* factors one and two).  He was not present during the October Attack (factor three).  He had no relation to Hamas or PIJ (factor four).  He was not "one in spirit" with Hamas and PIJ (factor five).  And any alleged "assistance" in the way of access to the Platform by Hamas and PIJ ended over a year before the October Attack (factor six).

For these reasons, and those set forth in Sections §§ V.B-C of BHL's moving brief, which Mr. Zhao joins, Plaintiffs' JASTA aiding-and abetting claim should be dismissed.

### 5. Plaintiffs Fail to State Claim for ATA/JASTA Conspiracy Against Mr. Zhao (Claim II).

The Court must also dismiss Plaintiffs' JASTA conspiracy claim, which requires that the defendant entered into an agreement with specific terrorists **with the object of committing international terrorism**.  *See, e.g., Bernhardt*, 2020 WL 6743066 at *7 ("[A] plaintiff must allege a factual basis 'that would lead one to infer that Defendant[s] shared a[] common goal of committing an act of international terrorism.'") (quoting *Kaplan*, 405 F. Supp. 3d at 534); *Ofisi v. BNP Paribas, S.A.*, 278 F. Supp. 3d 84, 110 (D.D.C. 2017) (dismissing conspiracy claim where "[t]he only conspiracy alleged in the complaint is a conspiracy . . . to defeat U.S. sanctions"), *vacated on other grounds*, 285 F. Supp. 3d 240 (D.D.C. 2018); *Cain v. Twitter, Inc.*, No. 17-cv-2506, 2018 WL 4657275, at *3 (N.D. Cal. Sept. 24, 2018) (dismissing JASTA conspiracy claim because "[n]othing in the [complaint] establishes an agreement, express or otherwise, between Twitter and ISIS to commit terrorist attacks").

The D.C. Circuit's *Bernhardt* decision is instructive. There, victims of an al-Qaeda terrorist attack alleged that HSBC "implemented procedures to help sanctioned entities access and benefit from U.S. financial services." 47 F.4th 856 at 862. The court found these allegations insufficient to plead JASTA conspiracy because plaintiffs failed to establish the requisite agreement that HSBC "was pursuing the same object as al-Qaeda." *Id.* at 873. Rather, HSBC's sanctions-evading objective and al-Qaeda's terroristic objective were "wholly orthogonal to one another." *Id.*

Here, Plaintiffs offer no factual allegations to support their entirely conclusory allegation that Mr. Zhao conspired with Hamas and PIJ to execute the October Attack (Compl. ¶ 65). Conclusory allegations, without factual support, are insufficient to survive a motion to dismiss. *See Lyons v. Dothan*, No. 1:20-cv-00035, 2020 WL 7134926, at *1 (M.D. Ala. Oct. 20, 2020) ("'Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements' are insufficient to state a claim for relief." (quoting *Ashcroft*, 556 U.S. at 678)), *report and recommendation adopted*, 2020 WL 7129030 (M.D. Ala. Dec. 4, 2020)).

For these reasons, and those set forth in Section VI of BHL's moving brief, which Mr. Zhao joins, Plaintiffs' JASTA conspiracy claim should be dismissed.

### B.    Plaintiffs Fail to State an ATS Claim Against Mr. Zhao (Claim V).

Plaintiffs' ATS claim should also be dismissed. "To state a claim for relief under the ATS, a plaintiff must (1) be an alien (2) suing for a tort (3) committed in violation of the law of nations." *Mamani v. Berzain*, 654 F. 3d 1148, 1152-53 (11th Cir. 2011). Plaintiffs' ATS claim fails for at least four reasons.

**First,** as a preliminary matter, there is a presumption against extraterritoriality. The ATS does not authorize U.S. courts to serve as a universal forum to adjudicate harms suffered outside the United States and an ATS action seeking relief for violations "occurring outside the United

States" will ordinarily be barred. *Kiobel v. Royal Dutch Petroleum Co.*, 569 U.S. 108, 124 (2013). As explained in Section I.B.2., *supra*, Plaintiffs' claims do not relate to conduct in the United States. Nor have Plaintiffs alleged any domestic conduct by Mr. Zhao that could overcome this presumption. Accordingly, for this reason, the Plaintiff's ATS claim against Mr. Zhao should be dismissed.

**Second,** six Plaintiffs lack standing to bring suit under the ATS. "A district court lacks subject-matter jurisdiction under the ATS if the plaintiff is not an alien." *Sikhs for Justice Inc. v. Indian Nat'l Cong. Party*, 17 F. Supp. 3d 334, 345 (S.D.N.Y. 2014) (internal citation omitted). An "alien" is any person that is not a U.S. citizen or national. 8 U.S.C. § 1101(a)(3). Plaintiffs Gess, Newman, Parizer, Sanandaji, Diller, and Bromberg concede they are not "aliens" within the meaning of the statute. (Compl. ¶¶ 19-23, 26.)

**Third,** Plaintiffs fail to plead that Mr. Zhao violated a "law of nations." *Mamani*, 654 F.3d at 1153. The ATS does not create a cause of action; it is primarily jurisdictional, granting federal courts authority over "a very limited category defined by the law of nations and recognized at common law" at the time of enactment of the ATS in 1789. *Sosa v. Alvarez-Machain*, 542 U.S. 692, 712 (2004). No federal court has found that general claims for terrorism constitute a recognized violation of the law of nations. *See, e.g.*, *In re Terrorist Attacks,* 714 F.3d at 125 ("Plaintiffs fail to . . . plead a violation of the ATS because no universal norm against 'terrorism' existed under customary international law (i.e., the 'law of nations')"); *Saperstein v. Palestinian Auth.*, No. 04-cv-20225, 2006 WL 3804718, at *7-8 (S.D. Fla. Dec. 22, 2006) (holding that plaintiffs' claim against defendant for "acts of terrorism as defined in federal law, and … related tortious terrorist behavior" has not reached the status of a violation of the law of nations and is insufficient to invoke the court's subject matter jurisdiction under the ATS); *Barboza v.*

*Drummond Co.*, No. 06—61527-CIV, 2007 WL 8025825, at \*9-12 (S.D. Fla. July 17, 2007) (declining to recognize jurisdiction over claim that defendants violated international law by providing financial support and aided and abetted a terrorist organization abroad).

**Fourth,** even assuming *arguendo* that the ATA qualified as a "law of nations" (it does not), for the reasons previously stated, Plaintiffs have not plausibly alleged secondary aiding-and-abetting liability as to Mr. Zhao. *See supra* § III.A.4. *See also Abecassis v. Wyatt*, 704 F. Supp. 2d 623, 655-56 (S.D. Tex. 2010) (dismissing ATS claim where there were only conclusory allegations that defendants any aided and abetted an international act of terrorism). Thus, Plaintiffs also fail to plead that Mr. Zhao committed a violation of the law of nations on this ground.

For one or all of these reasons, Plaintiffs' ATS claim against Mr. Zhao should be dismissed.

### C.    Plaintiffs Fail to Sufficiently Allege that Mr. Zhao is Liable for Negligent Infliction of Emotional Distress (Claim VI).

Plaintiffs' claim for negligent infliction of emotional distress claim fails because it is "not cognizable under Alabama law." *Spivey v. Fred's Inc.*, 554 F. Supp. 2d 1271, 1275 (M.D. Ala. 2008). *See also Allen v. Walker*, 569 So. 2d 350, 352 (Ala. 1990) (same).

## <u>CONCLUSION</u>

Mr. Zhao unequivocally condemns all forms of terrorism, and, in particular, the October Attack. Mr. Zhao also categorically denies any involvement in or support of that atrocity, and for the reasons set forth above, he respectfully requests that this Court dismiss Plaintiffs' claims against him.

Dated: April 14, 2025

Respectfully submitted,

*/s/ Charles A. Stewart III*

**BRADLEY ARANT BOULT CUMMINGS LLP**

Charles A. Stewart III (ASB-4955-A56C)
445 Dexter Avenue, Suite 9075
Montgomery, AL 36104
(334) 956-7700
cstewart@bradley.com

**BAKER & HOSTETLER LLP**

Teresa Goody Guillén*
Washington Square, Suite 1100
1050 Connecticut Ave., N.W.
Washington, D.C. 20036
(202) 861-1500
tgoodyguillen@bakerlaw.com

Joanna F. Wasick*
Marco Molina*
45 Rockefeller Plaza
New York, NY 10111
(212) 589-4200
jwasick@bakerlaw.com
mmolina@bakerlaw.com

*Counsel for Defendant Changpeng Zhao*

*Admitted *pro hac vice*

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 14, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

*Counsel for Plaintiffs*
Mark Goldfeder, Esq.
NATIONAL JEWISH ADVOCACY CENTER, INC.
1718 General George Patton Drive
Brentwood, TN 37027
mark@jewishadvocacycenter.org

Ben Schlager, Esq.
GOLDFEDER AND TERRY, LLC
666 Harless Place
West Hampstead, NY 11552
ben@goldfederterry.com

David Schoen, Esq.
LAW OFFICE OF DAVID I. SCHOEN
2800 Zelda Road, Suite 100-6
Montgomery, AL 36106
Schoenlawfirm@gmail.com

*Counsel for Defendant BAM Trading Services, Inc.*
Kenneth D. Sansom, Esq.
Michael T. Sansbury, Esq.
SPOTSWOOD, SANSOM & SANSBURY LLC
1819 5th Avenue North, Suite 1050
Birmingham, AL 35203
ksansom@spotswoodllc.com
msansbury@spotswoodllc.com

Alexandra E. Chopin, Esq.
WINSTON & STRAWN, LLP
1901 L. Street, N.W.
Washington, DC 20036-3506
achopin@winston.com

Athanasia "Thania" Charmani, Esq.
WINSTON & STRAWN, LLP
200 Park Avenue
New York, NY 10166-4193
acharmani@winston.com

*Counsel for Defendant BAM Trading Services, Inc. (cont.)*
Daniel T. Stabile, Esq.
Gabriela "Gabie" Plasencia, Esq.
WINSTON & STRAWN, LLP
200 S. Biscayne Boulevard, Suite 2400
Miami, FL 33131-5340
dstabile@winston.com
gplasencia@winston.com

*Counsel for Defendant Binance Holdings Limited*
Harlan I. Prater IV, Esq.
Mary Parrish McCracken, Esq.
LIGHTFOOT FRANKLIN & WHITE LLC
400 20th Street North
Birmingham, AL 35203
hprater@lightfootlaw.com
mmcracken@lightfootlaw.com

Samson A. Enzer, Esq.
Anirudh Bansal, Esq.
Sesi V. Garimella, Esq.
Lauren A. Riddell, Esq.
Jason M. Ecker, Esq.
CAHILL GORDON & REINDEL LLP
32 Old Slip
New York, NY 10005
SEnzer@cahill.com
ABansal@cahill.com
SGarimella@cahill.com
LRiddell@cahill.com
JEcker@cahill.com

*/s/ Charles A. Stewart III*
Charles A. Stewart III (ASB-4955-A56C)