# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

|  |  |  |
|---|---|---|
| ADIN GESS, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No.: 24-cv-00134-ECM-CWB |
| | ) | |
| BAM TRADING SERVICES INC. d/b/a | ) | **ORAL ARGUMENT REQUESTED** |
| BINANCE.US et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## BAM TRADING SERVICES INC.'S MOTION TO DISMISS AND SUPPORTING MEMORANDUM OF LAW

## <u>TABLE OF CONTENTS</u>

Page

I.    INTRODUCTION ...................................................................1

II.   THE ALLEGATIONS AND JURISDICTIONAL FACTS ............................5

III.  ARGUMENT....................................................................8

    A.    The Complaint Should Be Dismissed Pursuant to Rule 8 and
          Rule 10 Because It Is an Impermissible "Shotgun" Pleading..............8

    B.    The Complaint Should Be Dismissed Pursuant to Rule 12(b)(2)
          Because the Court Does Not Have Personal Jurisdiction over
          BAM. .....................................................................10

          1.    There Is No General Jurisdiction over BAM in Alabama. .......11

          2.    There Is No Specific Jurisdiction over BAM or
              Jurisdiction under FRCP 4(k)(1)(C). .........................................14

    C.    The Complaint Should Be Dismissed Pursuant to Rule 12(b)(6)
          Because It Fails to State a Claim Against BAM. ...............................17

          1.    Plaintiffs Do Not Allege Any Actual Wrongdoing by
              BAM...........................................................................18

          2.    Plaintiffs Fail to State an ATA/JASTA Claim Against
              BAM...........................................................................19

          3.    Plaintiffs Fail to State a Claim for Negligent Infliction of
              Emotional Distress (Count VI). .................................................31

    D.    The Court Lacks Subject Matter Jurisdiction over Plaintiffs' ATS
          Claim (Count V)...........................................................32

IV.   CONCLUSION...............................................................36

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams v. Alcolac, Inc.*,
2019 WL 4774006 (S.D. Tex. Sept. 6, 2019) ...................................................31

*Aldana v. Del Monte Fresh Produce, N.A., Inc.*,
416 F.3d 1242 (11th Cir. 2005) ..........................................................................33

*Associated Transp. Line, Inc. v. Productos Fitosanitarios Proficol El
Carmen, S.A.*,
197 F.3d 1070 (11th Cir. 1999) ..........................................................................13

*Barmapov v. Amuial*,
986 F.3d 1321 (11th Cir. 2021) ...........................................................................8

*Beasley v. Providence Hosp.*,
2018 WL 2994380 (S.D. Ala. June 13, 2018) ............................................11, 12

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ...........................................................................................17

*Bernhardt v. Islamic Republic of Iran*,
47 F.4th 856 (D.C. Cir. 2022) ................................................................22, 23, 27

*Brannon v. Fin. Am., LLC*,
483 F. Supp. 2d 1136 (M.D. Ala. 2007) .............................................................12

*Castillo v. Allegro Resort Mktg.*,
603 F. App'x 913 (11th Cir. 2015) .....................................................................12

*In re Chiquita Brands Int'l, Inc.*,
284 F. Supp. 3d 1284 (S.D. Fla. 2018) ...............................................................26

*In re Chiquita Brands Int'l Inc.*,
792 F. Supp. 2d 1301 (S.D. Fla. 2011), *rev'd on other grounds*,
*Cardona v. Chiquita Brands Int'l, Inc.*, 760 F.3d 1185 (11th Cir.
2014) ...................................................................................................................33

*In re Chiquita Brands Int'l Inc. Alien Tort Statute & Shareholders Deriv. Litig.*,
  2022 WL 22236064 (S.D. Fla. Aug. 23, 2022) ...................................................35

*In re Chiquita Brands Int'l Inc. Alien Tort Statute & Shareholders Deriv. Litig.*,
  690 F. Supp. 2d 1296 (S.D. Fla. 2010) .............................................................25

*Consol. Dev. Corp. v. Sherritt, Inc.*,
  216 F.3d 1286 (11th Cir. 2000) .......................................................................12

*Daimler AG v. Bauman*,
  571 U.S. 117 (2014) ........................................................................................11

*Doe I v. Cisco Sys.*,
  113 F.4th 1230 (11th Cir. 2024) ................................................................33, 34

*Doe v. Drummond Co., Inc.*,
  782 F.3d 576 (11th Cir. 2015) ..............................................................33, 34, 35

*Douglas v. Yates*,
  535 F.3d 1316, 1322 (11th Cir. 2008) ..............................................................18

*Durham v. LG Chem, Ltd.*,
  2022 WL 274498 (11th Cir. Jan. 31, 2022) .....................................................15

*Freeman ex rel. Est. of Freeman v. HSBC Holdings PLC*,
  57 F.4th 66 (2d Cir. 2023) ..........................................................................25, 26

*Fin. Sec. Assurance, Inc. v. Stephens, Inc.*,
  500 F.3d 1276 (11th Cir. 2007) .........................................................................2

*Freeman v. HSBC Holdings PLC*,
  413 F. Supp. 3d 67 (E.D.N.Y. 2019) ...........................................................28, 29

*Freeman v. HSBC Holdings PLC*,
  465 F. Supp. 3d 220 (E.D.N.Y. 2020) ...........................................................21, 22

*Fullman v. Graddick*,
  739 F.2d 553 (11th Cir. 1984) .....................................................................25, 26

*Galvez v. Fanjul Corp.*,
  533 F. Supp. 3d 1268 (S.D. Fla. 2021) .............................................................34

*Halberstam v. Welch,*
  705 F.2d 472 (D.C. Cir. 1983) ...................................................................20, 22, 23, 25

*HomeBingo Network, Inc. v. Chayevsky,*
  428 F. Supp. 2d 1232 (S.D. Ala. 2006) ......................................................13, 14

*Honickman v. BLOM Bank SAL,*
  6 F.4th 487 (2d Cir. 2021) ..........................................................................21

*Int'l Shoe Co. v. Washington,*
  326 U.S. 310 (1945) ....................................................................................14

*Ismail v. Ascensionpoint Recovery Servs., LLC,*
  2019 WL 5894311 (N.D. Ala. Nov. 12, 2019) ...........................................32

*Jacob v. Mentor Worldwide, LLC,*
  40 F.4th 1329 (11th Cir. 2022) ..................................................................17

*Kabbaj v. Obama,*
  568 F. App'x 875 (11th Cir. 2014) ...............................................................9

*Kiobel v. Royal Dutch Petroleum Co.,*
  569 U.S. 108 (2013) ...............................................................................34, 35

*Lasalle Bank N.A. v. Mobile Hotel Props., LLC,*
  274 F. Supp. 2d 1293 (S.D. Ala. 2003) ......................................................14

*Licci v. Lebanese Canadian Bank, SAL,*
  673 F.3d 50 (2d Cir. 2012) .........................................................................29

*Linde v. Arab Bank, PLC,*
  882 F.3d 314 (2d Cir. 2018) ..........................................................20, 21, 28, 29

*Mason v. United Parcel Serv. Co.,*
  674 F. App'x 943 (11th Cir. 2017) ..............................................................31

*Mathews v. United States,*
  2024 WL 3371053 (N.D. Ala. June 10, 2024) ...........................................31

*Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.,*
  288 F.3d 1264 (11th Cir. 2002) ..................................................................11

*Moore v. eNom, Inc.*,
  2007 WL 9711946 (N.D. Ala. Nov. 9, 2007) .....................................................17

*N. Am. Sugar Indus., Inc. v. Xinjiang Goldwind Sci. & Tech. Co.*,
  124 F.4th 1322 (11th Cir. 2025) ..........................................................................2

*Nestle USA, Inc. v. Doe*,
  593 U.S. 628 (2021)......................................................................................34, 35

*Newman v. Associated Press*,
  2024 WL 5063288 (S.D. Fla. Dec. 10, 2024)...........................................*passim*

*O'Sullivan v. Deutsche Bank AG*,
  2019 WL 1409446 (S.D.N.Y. Mar. 28, 2019).....................................................27

*Oxford Asset Mgmt. v. Jaharis*,
  297 F.3d 1182 (11th Cir. 2002) ...................................................................18, 29

*Pruitt v. AAA Interstate Transp., LLC*,
  358 So. 3d 1144 (Ala. 2022).................................................................................13

*Reed v. Strickland*,
  2023 WL 5948055 (M.D. Ala. June 9, 2023)......................................................12

*Republic of Panama v. BCCI Holdings (Lux.) S.A.*,
  119 F.3d 935 (11th Cir. 1997) .....................................................................10, 17

*Roche Diagnostics Corp. v. Priority Healthcare Corp.*,
  2019 WL 5102836 (N.D. Ala. Oct. 11, 2019) ....................................................10

*Rogers v. Nacchio*,
  241 F. App'x 602 (11th Cir. 2007) ......................................................................17

*Rothstein v. UBS AG*,
  708 F.3d 82 (2d Cir. 2013), *superseded by statute on other*
  *grounds.* ...............................................................................................................31

*Ruiz de Molina v. Merritt & Furman Ins. Agency, Inc.*,
  207 F.3d 1351 (11th Cir. 2000) ..........................................................................14

*Saperstein v. Palestinian Auth.*,
  2006 WL 3804718 (S.D. Fla. Dec. 22, 2006)......................................................34

*Siegel v. HSBC N. Am. Holdings, Inc.*,
　933 F.3d 217 (2d Cir. 2019) ...............................................................24

*Sosa v. Alvarez-Machain*,
　542 U.S. 692 (2004).............................................................................33

*Strauss v. Crédit Lyonnais, S.A.*,
　379 F. Supp. 3d 148 (E.D.N.Y. 2019) ...........................................21, 30

*T.D.S., Inc. v. Shelby Mut. Ins. Co.*,
　760 F.2d 1520 (11th Cir. 1985) ...........................................................8

*Tel-Oren v. Libyan Arab Republic*,
　726 F.2d 774 (D.C. Cir. 1984)............................................................34

*In re Terrorist Attacks on Sept. 11, 2001*,
　714 F.3d 118 (2d Cir. 2013) ........................................................31, 33

*Twitter v. Taamneh*,
　598 U.S. 471 (2023)......................................................................*passim*

*United States v. Scophony Corp. of Am.*,
　333 U.S. 795 (1948)............................................................................16

*United Techs. Corp. v. Mazer*,
　556 F.3d 1260 (11th Cir. 2009) ....................................................10, 11

*Walden v. Fiore*,
　571 U.S. 277 (2014).................................................................3, 15, 16

*Waldman v. Palestine Liberation Org.*,
　835 F.3d 317 (2d Cir. 2016) .......................................................15, 16, 17

*Watson v. Saudi Arabia*,
　2023 WL 4047586 (N.D. Fla. May 11, 2023), *report and
　recommendation adopted by* 2024 WL 1344643 (N.D. Fla.
　Mar. 30, 2024)......................................................................................28

*Weiland v. Palm Beach Cnty. Sheriff's Off.*,
　792 F.3d 1313 (11th Cir. 2015) ........................................................8, 9

*Weiss v. Nat'l Westminster Bank*,
　993 F.3d 144 (2d Cir. 2021) ...............................................................30

*Wildman v. Deutsche Bank Aktiengesellschaft*,
  2022 WL 17993076 (E.D.N.Y. Dec. 29, 2022), *appeal docketed*,
  No. 23-132 (2d Cir. Jan. 30, 2023) ........................................................23

*Zobay v. MTN Grp. Ltd.*,
  695 F. Supp. 3d 301 (E.D.N.Y. 2023) ...........................................18, 27

## Statutes

18 U.S.C. § 2331(1)(A)-(C) ......................................................................29

18 U.S.C. § 2333(a) ............................................................................28, 29

18 U.S.C. § 2334(a) ..................................................................................15

18 U.S.C. § 2339A ..............................................................28, 29, 30, 32

18 U.S.C. § 2339B ............................................................................*passim*

28 U.S.C. § 1350 ................................................................................32, 33

Justice Against Sponsors of Terrorism Act, Pub. L. No. 114-222,
  § 2(a)(5), 130 Stat. 852 (2016) ......................................................*passim*

## Other Authorities

Benjamin Pirus, *Binance's US branch lands in Alabama*,
  Cointelegraph (Sept. 14, 2020),
  https://cointelegraph.com/news/binance-s-us-branch-lands-in-
  alabama ................................................................................................12

5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and
  Procedure* § 1234 (3d ed. 2004) ........................................................18

Fed. R. Civ. P. 4(k)(1)(C) .....................................................10, 11, 14, 15

Fed. R. Civ. P. 8 .............................................................................1, 8, 36

Fed. R. Civ. P. 8(a)...........................................................................2, 8, 9

Fed. R. Civ. P. 10 .........................................................................1, 8, 36

Fed. R. Civ. P. 10(b) ..........................................................................2, 8

Fed. R. Civ. P. 12(b)(1)..................................................................1, 4, 36

Fed. R. Civ. P. 12(b)(2)..................................................................*passim*

Fed. R. Civ. P. 12(b)(6)..................................................................*passim*

Pursuant to Federal Rules of Civil Procedure 8 and 10, 12(b)(1), 12(b)(2), and 12(b)(6), Defendant BAM Trading Services Inc. d/b/a Binance.US ("BAM") moves the Court to dismiss BAM from this action with prejudice. As discussed below, the Court should dismiss BAM because: (i) the Complaint is an impermissible "shotgun" pleading, (ii) the Court lacks personal jurisdiction over BAM, and (iii) the federal and state claims against BAM fail to state a claim. Additionally, the Court lacks subject matter jurisdiction over Plaintiffs' Alien Tort Statute claim.

## I.    INTRODUCTION

BAM unequivocally condemns terrorism in all forms and deeply sympathizes with the victims of the devastating October 7, 2023 attacks perpetrated by Hamas and the Palestine Islamic Jihad ("PIJ") that form the basis of the Complaint. However, BAM has no connection to these acts and is not responsible for them under any theory of liability.

The paucity of specific allegations against BAM is striking. The Complaint makes wide use of the blanket terms "Defendants" or "Binance," but BAM operates Binance.US, "a separate exchange designed to comply with all applicable US federal laws." (Compl. at 8,[1] ECF No. 1.) As discussed below and in the supporting

---

[1] The Complaint unusually contains twenty-one pages of unnumbered paragraphs. As such, references to pages with unnumbered paragraphs are cited as "(Compl. at #)" and references to numbered paragraphs are cited as "(Compl. ¶ #)."

declaration of BAM's Chief Compliance Officer,[2] BAM maintains entirely separate operations and activities from co-defendant Binance Holdings, Ltd. ("BHL") and BHL's non-U.S. exchange, Binance.com. There are *no transactions* discussed in the Complaint that are alleged to have occurred on BAM's platform, which is unsurprising because Binance.US is accessible only to U.S. customers onboarded in compliance with BAM's policies and procedures that are subject to oversight by the federal government and the many states in which BAM is licensed. Indeed, a premise of the Complaint is that by acting *in compliance with* U.S. law, BAM served as a kind of regulatory "smokescreen" for others. (Compl. at 11.)

BAM should be dismissed from this Complaint for several independent reasons.

As an initial matter, the Complaint is a quintessential "shotgun" pleading, which is "flatly forbidden" in the Eleventh Circuit as violative of Rule 8(a) and Rule 10(b). By repeatedly lumping together the separate co-defendants, the Complaint renders it impossible to discern which of the three separate defendants the Complaint's substantive allegations are lodged against. *See infra* Section III(A).[3]

---

[2] References to the "Blodgett Declaration" or "Decl." refer to the Declaration of Christopher Blodgett, submitted as Exhibit A in support of BAM's Motion to Dismiss pursuant to Rule 12(b)(2). *See N. Am. Sugar Indus., Inc. v. Xinjiang Goldwind Sci. & Tech. Co.*, 124 F.4th 1322, 1333 (11th Cir. 2025) ("[T]he defendant challenging [personal] jurisdiction may submit affidavit evidence in support of its position at the pleading stage.") (internal quotation omitted).

[3] The Complaint contains a conclusory allegation that "Zhao and Binance secretly controlled the Binance.us platform's operations behind the scenes" (Compl. at 8). *See Fin. Sec. Assurance, Inc.*

Next, the Complaint fails to allege a basis for personal jurisdiction over BAM. The Complaint appears to concede that BAM—a Delaware company with its headquarters in Florida—is not "at home" in Alabama and therefore is not subject to general personal jurisdiction. It is equally clear that BAM's contacts with Alabama and the United States as a whole are insufficient to subject it to personal jurisdiction under the Alabama long-arm rule or a "nationwide contacts" theory. Both bases require the defendant's "*suit-related conduct*" to "create a substantial connection with the forum." *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (emphasis added). BAM is not alleged to have engaged in *any* suit-related conduct, so its thin connections with Alabama (and its connections with the United States) are plainly insufficient to satisfy the stringent due process requirements. *See infra* Section III(B).

On the substance of the allegations, Plaintiffs' claims should also be dismissed pursuant to Rule 12(b)(6) because the Complaint fails to state a claim against BAM. Every claim suffers from the same fatal flaw: the minimal allegations against BAM do not meet the elements necessary to establish liability. With respect to their claims for aiding and abetting under the Anti-Terrorism Act ("ATA") and the Justice Against

---

*v. Stephens, Inc.*, 500 F.3d 1276, 1282-83 (11th Cir. 2007) (stating that a complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable theory") (internal quotation omitted). To the extent Plaintiffs attempt to assert alter ego theories of jurisdiction or liability against BAM, the Complaint does not adequately plead such a theory and, as the Blodgett Declaration makes clear, BAM is separate and independent from BHL and Mr. Zhao.

Sponsors of Terrorism Act ("JASTA") (Count I), Plaintiffs fail to connect any of BAM's conduct to the attacks or the terrorists that perpetrated them. The key elements necessary to establish BAM's conscious and culpable participation in the attacks are therefore absent from the Complaint. *See infra* Section III(C)(2)(a).

Plaintiffs' threadbare allegations likewise fail to allege necessary elements of their JASTA conspiracy claim (Count II), which requires an agreement between BAM and the terrorists and shared intent to commit terrorism. *See infra* Section III(C)(2)(b). Of course, nor can Plaintiffs establish that BAM's conduct amounted to an act of international terrorism in its own right, as their ATA primary liability claims require (Counts III and IV). *See infra* Section III(C)(2)(c). And Plaintiffs cannot advance a claim for negligent infliction of emotional distress (Count VI) because such a cause of action does not even exist under Alabama law. *See infra* Section III(C)(3).

Finally, Plaintiffs' Alien Tort Statute ("ATS") claim (Count V) must be dismissed pursuant to Rule 12(b)(1). Plaintiffs fail to establish this Court's jurisdiction over their claim for two reasons: they fail to identify the necessary international-law underpinning, and they fail to establish a link between their claim and the United States justifying extraterritorial application of the ATS to attacks that occurred in Israel. *See infra* Section III(D).

For these reasons, BAM respectfully requests that the Court dismiss all claims against it with prejudice.

## II.    THE ALLEGATIONS AND JURISDICTIONAL FACTS

BAM operates Binance.US, a trading platform through which customers in the United States can purchase or sell digital assets. (Blodgett Decl. Ex. A, ¶ 8; Compl. ¶ 28.) BAM is organized under the laws of Delaware and headquartered in Florida. (Decl. ¶ 4; Compl. ¶ 28.) Since its inception in 2019, BAM has restricted all non-U.S. residents—and U.S. residents in certain states—from accessing and using Binance.US. (Decl. ¶¶ 9-10, 12; Compl. ¶ 28 (describing BAM's exchange as one that "offers its services to *U.S. residents*") (emphasis added).)

BAM is registered as a "money services business" with the U.S. Department of Treasury's Financial Crimes Enforcement Network, and it maintains 31 State-issued money transmitter licenses. (Decl. ¶¶ 34-35.) BAM is therefore subject to oversight by the federal government and the many states in which it is licensed. (*Id.*)

While the Complaint relies extensively on group pleading—referring to BAM, BHL, and Mr. Zhao collectively as "Defendants" or "Binance" (Compl. at 1)—BAM and Binance.US maintain entirely separate operations and platforms from BHL and its non-U.S. exchange, Binance.com. (Decl. ¶¶ 7, 13, 15-33.) The companies service customers in different geographic markets, and they have their own onboarding policies and procedures. (*Id.* ¶¶ 12-14.) BAM has its own Board of

Directors, and BAM and BHL do not share common officers, employees, or offices. (*Id.* ¶¶ 15, 21-22.) Moreover, the financial operations of BAM and BHL are completely separate: the companies do not share bank accounts, and BAM pays its own operating expenses. (*Id.* ¶¶ 27, 30.)

For its part, BAM and its U.S. domestic platform, Binance.US, are barely mentioned in the 45-page Complaint. While the Complaint contains a section of unnumbered paragraphs ostensibly devoted to "Binance.US" (Compl. at 8-15), the only allegations against BAM in that section are that (i) it was founded in 2019 by "Binance and other investors" as "a separate exchange designed to comply with all applicable US federal laws while keeping [BHL's] original platform for the rest of the world," (ii) "Binance.us is currently authorized to do business in over forty U.S. states, including Alabama," and (iii) BAM entered into a "partnership" with BHL. (*Id.* at 8-9.) In this way, the Complaint acknowledges the separateness of BAM. With respect to the references in the Complaint to a "partnership" between BAM and BHL, more precisely BAM has an arm's-length business relationship with BHL, memorialized in service-level agreements, under which BHL provides software and trademark licenses to support BAM's operation of the Binance.US platform. (Decl. ¶ 23.)

The balance of the Complaint's allegations largely conflate—through impermissible group pleading—these separate entities (and Mr. Zhao). For example,

Plaintiffs discuss at various points a series of governmental proceedings against "Binance" (*e.g.*, Compl. at 7, 20-21), *but BAM was not a target of (or party to) any of those proceedings.*[4] While the Complaint acknowledges—as it must—that Binance.US genuinely operates a regulated U.S. domestic digital asset exchange business for U.S. customers (Compl. ¶ 28), the crux of the Complaint's factual allegations as to BAM is that it was somehow utilized by others as a type of "smokescreen" to distract U.S. regulators, while BAM complied with U.S. law. (*Id.* at 11.)

Critically, there are no allegations in the Complaint regarding *any* BAM transactional activity or customer, and the Complaint contains no allegation that BAM was utilized by Hamas or any terrorist organization in any way.

---

[4] *See, e.g.*, Consent Order, *CFTC v. Zhao*, No. 23-cv-01887 (N.D. Ill. Dec. 14, 2023), ECF No. 80; Plea Agreement, *United States v. Binance Holdings Ltd.*, No. 23-cr-00178 (W.D. Wash. Nov. 21, 2023), ECF No. 23; Plea Agreement, *United States v. Changpeng Zhao*, No. 23-cr-00179 (W.D. Wash. Nov. 21, 2023), ECF No. 31; FinCEN Consent Order, *In re Binance Holdings Ltd.*, No. 2023-04 (Nov. 21, 2023); OFAC Settlement Agreement (Nov. 21, 2023), https://ofac.treasury.gov/system/files/2023-11/20231121_binance_settlement.pdf. Plaintiffs also reference SEC litigation against both BHL and BAM. *See* Compl. at 11-13 (citing Compl., *SEC v. Binance Holdings Ltd.*, No. 23-cv-01599 (June 5, 2023), ECF No. 1). That litigation is wholly irrelevant to this action and did not involve allegations of terrorism; instead, it arose from the SEC's attempt to reclassify cryptocurrencies as "securities."

## III.   ARGUMENT

### A.   The Complaint Should Be Dismissed Pursuant to Rule 8 and Rule 10 Because It Is an Impermissible "Shotgun" Pleading.

The Complaint is a quintessential "shotgun" pleading, which is "flatly forbidden" in the Eleventh Circuit as violative of Rule 8(a) and Rule 10(b). *Barmapov v. Amuial*, 986 F.3d 1321, 1324 (11th Cir. 2021) (quoting *T.D.S., Inc. v. Shelby Mut. Ins. Co.*, 760 F.2d 1520, 1544 n.14 (11th Cir. 1985) (Tjoflat, J., dissenting)). The Eleventh Circuit has "identified four rough types or categories of [impermissible] shotgun pleadings." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1321 (11th Cir. 2015). The Complaint should be dismissed because it plainly falls within at least three of the forbidden "shotgun" pleading categories.

The Complaint's most obvious "shotgun" pleading deficiency is Plaintiffs' blatant assertion of "multiple claims against multiple defendants without specifying which of the defendants are responsible for which act or omissions, or which of the defendants the claim is brought against." *Id.* at 1323. As discussed above, the Complaint makes extensive use of group pleading throughout the Complaint, referring to "Defendants" or "Binance" collectively, which makes it impossible to ascertain which of the three separate defendants the Complaint's substantive allegations are asserted against. This deficiency extends to the most central allegations in the Complaint. For example, Plaintiffs allege that "Defendants knowingly provided substantial financial assistance to Hamas and Islamic Jihad"

(Compl. ¶ 62), but they never explain what role BAM, a domestic digital asset platform that does not onboard non-U.S. customers, could possibly have played in this activity. Indeed, neither BAM, nor any other defendant, is specifically mentioned in any of the six causes of action. Complaints of this nature are subject to dismissal. *E.g.*, *Kabbaj v. Obama*, 568 F. App'x 875, 880 (11th Cir. 2014) (complaint fails to satisfy Rule 8(a) where it "refers to the defendants collectively").[5]

Second, the Complaint also commits the "mortal sin" of pleading "multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." *Weiland*, 792 F.3d at 1321-22. In contravention of the Eleventh Circuit's pleading requirements, the first allegation in each of the six causes of action purports to "repeat and reallege each and every allegation of the foregoing paragraphs as if fully set forth herein." (Compl. ¶¶ 53, 64, 66, 69, 72, 75.)

Finally, the Complaint "is replete with conclusory, vague, and immaterial facts," *Weiland*, 792 F.3d at 1322, obscuring what is being substantively alleged. In Count I, Plaintiffs allege—in conclusory and vague fashion—that "Defendants" "aid[ed] and abet[ed]" Hamas and PIJ (Compl. ¶ 63), but they never articulate how

---

[5] Plaintiffs' widespread use of group pleading also results in internally inconsistent allegations, such as Plaintiffs' assertion that "Binance officially blocks access from IP addresses located in the United States" (Compl. at 9) but also that BAM is a "spot digital asset trading platform that offers its services to U.S. residents" (Compl. ¶ 28).

or when. With respect to each count alleged in the Complaint, Plaintiffs follow this pattern of interposing impermissibly vague and conclusory assertions that cannot be responded to meaningfully.

As the Complaint plainly falls within several forbidden "shotgun" pleading categories, it should be dismissed.

### B.    The Complaint Should Be Dismissed Pursuant to Rule 12(b)(2) Because the Court Does Not Have Personal Jurisdiction over BAM.

The Complaint's personal-jurisdiction allegations rely on generalized claims pertaining to BAM's thin presence in Alabama that are insufficient to establish general jurisdiction, and Plaintiffs do not plead any suit-related conduct by BAM in the United States sufficient to establish specific jurisdiction or jurisdiction under Rule 4(k)(1)(C).

"As a general rule, courts should address issues relating to personal jurisdiction before reaching the merits of a plaintiff's claims." *Republic of Panama v. BCCI Holdings (Lux.) S.A.*, 119 F.3d 935, 940 (11th Cir. 1997). "A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009). The Court will look to "[t]he four corners of a complaint [to] provide the basis for establishing personal jurisdiction." *Roche Diagnostics Corp. v. Priority Healthcare Corp.*, 2019 WL 5102836, at *3 (N.D. Ala. Oct. 11, 2019). "Where, as here, the

defendant challenges jurisdiction by submitting affidavit evidence in support of its position, 'the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction.'" *Mazer*, 556 F.3d at 1274 (quoting *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002)).

Plaintiffs cite as a basis for personal jurisdiction the Alabama long-arm provision and Federal Rule of Civil Procedure 4(k)(1)(C). (Compl. ¶ 15.) Although not pled, BAM first addresses general personal jurisdiction for purposes of completeness. This Court lacks personal jurisdiction over BAM under any theory.

### 1.    There Is No General Jurisdiction over BAM in Alabama.

General jurisdiction exists when the defendant is at home in the forum state. *See Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014). The "paradig[m] . . . bases for general jurisdiction" over a corporation are its "place of incorporation and principal place of business" (*id.* at 137 (citation omitted)), and Plaintiffs acknowledge that BAM is incorporated in Delaware and headquartered in Florida. (Compl. ¶ 28; *see also* Decl. ¶ 4.)

Plaintiffs cannot meet the high threshold for establishing that BAM is "at home" in Alabama based on allegations that ultimately reduce to: (i) BAM has made its website available to Alabama residents and (ii) BAM has a registered agent and a related operations license in Alabama. (Compl. ¶ 18.) "[S]uch modest activity c[annot] support the exercise of general jurisdiction, and plainly it does not." *Beasley*

*v. Providence Hosp.*, 2018 WL 2994380, at *3 (S.D. Ala. June 13, 2018) (rejecting argument that company was subject to general jurisdiction in Alabama "because it is licensed to do business in Alabama and has a registered agent for service of process in Alabama"); *see also Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1293 (11th Cir. 2000) ("The casual presence of a corporate agent [for service of process] in the forum is not enough to subject the corporation to suit where the cause of action is unrelated to the agent's activities." (citing cases)).

Similarly, generalized allegations that "Defendants solicit and conduct substantial business in [Alabama]" (Compl. ¶ 18; *see id.* ¶ 28) are insufficient to establish that BAM is "at home" in Alabama. *See Castillo v. Allegro Resort Mktg.*, 603 F. App'x 913, 916 (11th Cir. 2015) (stating that "conclusory allegations are insufficient to establish a prima facie case of jurisdiction"); *Reed v. Strickland*, 2023 WL 5948055, at *3 (M.D. Ala. June 9, 2023) (same). Plaintiffs put forth no other allegations that BAM solicited business in Alabama apart from citing an article published on a national website that merely announced that Alabama was now included in the list of "approved" states for BAM's operations. (Compl. ¶ 18.[6]) *See Brannon v. Fin. Am., LLC*, 483 F. Supp. 2d 1136, 1140-41 (M.D. Ala. 2007) (concluding that the minimum-contacts analysis requires that defendant

---

[6] Citing Benjamin Pirus, *Binance's US branch lands in Alabama*, Cointelegraph (Sept. 14, 2020), https://cointelegraph.com/news/binance-s-us-branch-lands-in-alabama.

"specifically" targets the plaintiffs' business, as opposed to merely making "an unfocused solicitation, such as an advertisement on a nationally oriented website"). Nor do Plaintiffs sufficiently allege that BAM conducts "substantial" business in the state because BAM's services are available to Alabama residents through its online platform. (Compl. ¶ 18.) *See Pruitt v. AAA Interstate Transp., LLC*, 358 So. 3d 1144, 1149 (Ala. 2022) (holding that allegations that defendant conducted its "business nationwide," "performed [services] for Alabama customers," and "maintain[ed] a website accessible to potential customers" in Alabama does "not come close to establishing that [defendant] is at home in Alabama"). Plaintiffs' allegation that BAM maintains certain remote workers, such as customer service representatives, who reside in Alabama is similarly insufficient. (Compl. ¶ 18.[7]) *See Associated Transp. Line, Inc. v. Productos Fitosanitarios Proficol El Carmen, S.A.*, 197 F.3d 1070, 1075 (11th Cir. 1999) (noting that personal jurisdiction over an out-of-state defendant "has been found lacking" despite allegations that "a company had employees, agencies and salespeople regularly in the forum," "was qualified to do business in the forum," "regularly solicited business" in the forum, and "derived more than 26% of its income from the forum").

---

[7] The Complaint's allegation that BAM conducts business in Alabama through "third-party representatives" is discredited by the pleading itself, which purports to list three separate links for BAM's supposed "third-party representatives." (Compl. ¶ 18.) All three links are for the same Synlix page listing BAM's BUSD stablecoin, which is unrelated to BAM's services.

13

## 2. There Is No Specific Jurisdiction over BAM or Jurisdiction under FRCP 4(k)(1)(C).

To establish specific jurisdiction, Plaintiffs are required to plead that BAM's contacts with the forum include "activities [that] arise out of or relate to the cause of action." *HomeBingo Network, Inc. v. Chayevsky*, 428 F. Supp. 2d 1232, 1241 (S.D. Ala. 2006). When a defendant challenges specific personal jurisdiction, "the plaintiff has the twin burdens" of establishing that personal jurisdiction comports with the forum state's long-arm provision as well as the "strictures of the due process clause." *Id.* at 1241-42.

In Alabama, this two-pronged inquiry collapses into a single question because Alabama's long-arm provision permits its courts to exercise personal jurisdiction to the full extent permitted by the Due Process Clause. *See Ruiz de Molina v. Merritt & Furman Ins. Agency, Inc.*, 207 F.3d 1351, 1355-56 (11th Cir. 2000); *Lasalle Bank N.A. v. Mobile Hotel Props., LLC*, 274 F. Supp. 2d 1293, 1296 (S.D. Ala. 2003). The Due Process Clause permits a court to summon a nonresident to defend in the forum so long as that defendant has "minimum contacts" with the forum and the exercise of personal jurisdiction over the defendant would not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

The Complaint asserts that this Court can exercise personal jurisdiction over BAM based on Federal Rule of Civil Procedure 4(k)(1)(C) and 18 U.S.C. § 2334(a).

14

(Compl. ¶¶ 15-16.) Federal Rule of Civil Procedure 4(k)(1)(C) provides that "[s]erving a summons or filing a waiver of service establishes personal jurisdiction over a defendant . . . when authorized by a federal statute." 18 U.S.C. § 2334(a) states that:

> Any civil action under section 2333 of this title against any person may be instituted in the district court of the United States for any district where any plaintiff resides or where any defendant resides or is served, or has an agent. Process in such a civil action may be served in any district where the defendant resides, is found, or has an agent.

However, "even when a party is properly served [pursuant to Rule 4(k)(1)(C)], a court's exercise of personal jurisdiction must also comport with due process." *Durham v. LG Chem, Ltd.*, 2022 WL 274498, at *2 (11th Cir. Jan. 31, 2022). "[T]o exercise jurisdiction consistent with due process, the defendant's *suit-related conduct* must create a substantial connection with the forum." *Walden*, 571 U.S. at 284 (emphasis added). Where, as here, a plaintiff relies on a federal statute authorizing nationwide service to establish personal jurisdiction under Rule 4(k)(1)(C), the court analyzes the defendant's contacts with the United States as a whole and whether the alleged actions are sufficiently connected to the United States to provide specific personal jurisdiction in the United States. *See Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 337 (2d Cir. 2016).

*Waldman* is instructive. The Second Circuit in *Waldman* rejected the plaintiffs' argument that the court could exercise personal jurisdiction over the defendants

pursuant to the ATA's nationwide service provision because "the statute does not answer the constitutional question of whether due process is satisfied" and defendants' alleged suit-related conduct did not establish minimum contacts with the forum. *Id.* at 337, 343 (citing *Walden*, 571 U.S. at 284). The Second Circuit emphasized that plaintiffs failed to satisfy due process because the alleged claims "did not arise from the defendants' purposeful contacts with the [United States]." *Id.* at 343 (noting that the Supreme Court in *United States v. Scophony Corp. of Am.*, 333 U.S. 795 (1948) affirmed "the understanding . . . that due process analysis—considerations of minimum contacts and reasonableness—applies even when federal service-of-process statutes are satisfied").

The same is true here. The Complaint does not allege that the claims against BAM arise out of its contacts with the United States. "The question in this case is whether the defendant['s] suit-related conduct—their role in the . . . terror attacks at issue—creates a substantial connection with the forum . . . pursuant to the ATA." *Id.* at 335. "The relevant 'suit-related conduct' by the defendant[] [is] the conduct that could have subjected them to liability under the ATA." *Id*. There can be no plausible allegations that BAM's conduct in the United States could establish any connection between BAM and the terror attacks at issue. All that is alleged is that BAM served as a "smokescreen" for others. (*See* Compl. at 8-9, 11, 13-14.) Moreover, there are no allegations in the Complaint regarding any BAM transactional activity in the

United States or any BAM customer, and the Complaint contains no allegation that BAM was utilized by Hamas or any terrorist organization in any way. (*See* Compl. ¶ 60.) Therefore, nothing in the Complaint supports that Plaintiffs' claims related to the terror attacks "arise from [BAM's] purposeful contacts with the forum." *Waldman*, 835 F.3d at 343. "On its face, the conduct in this case d[oes] not involve [BAM's] conduct in the United States in violation of the ATA[,]" and the fixed limits of the Due Process Clause prohibit the exercise of personal jurisdiction over BAM. *Id.* at 335.[8]

### C. The Complaint Should Be Dismissed Pursuant to Rule 12(b)(6) Because It Fails to State a Claim Against BAM.

"Dismissal under Rule 12(b)(6) is appropriate when a plaintiff fails to allege facts sufficient 'to raise a right to relief above the speculative level' or fails to 'state a claim to relief that is plausible on its face.'" *Jacob v. Mentor Worldwide, LLC*, 40 F.4th 1329, 1334 (11th Cir. 2022) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56, 570 (2007)). "[C]onclusory allegations, unwarranted deductions of facts or

---

[8] The Eleventh Circuit has not addressed nationwide process of service as basis for personal jurisdiction under the ATA, but in examining the issue under different statutes, it has instructed that if plaintiffs' claims under the invoked statute are "insubstantial, implausible, or otherwise completely devoid of merit," plaintiffs "may not take advantage of the nationwide service of process provisions" as a means of establishing personal jurisdiction. *Rogers v. Nacchio*, 241 F. App'x 602, 605 n.1 (11th Cir. 2007); *see also BCCI Holdings*, 119 F.3d at 942 n.9; *Moore v. eNom, Inc.*, 2007 WL 9711946, at *3 n.8 (N.D. Ala. Nov. 9, 2007). As explained below, Plaintiffs' claims here are wholly insufficient to plead any improper conduct by BAM under the ATA, and thus, Plaintiffs should not be allowed to invoke the ATA's nationwide service of process provision.

legal conclusions masquerading as facts will not prevent dismissal." *Oxford Asset Mgmt. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002).

That is what Plaintiffs offer here. Plaintiffs assert claims against BAM for: aiding and abetting and conspiracy under JASTA (Counts I and II); primary liability under the ATA (Counts III and IV); violation of the ATS (Count V); and negligent infliction of emotional distress (Count VI). Because they allege no misconduct by BAM—and, in fact, barely any *conduct* by BAM—Federal Rule of Civil Procedure 12(b)(6) requires dismissal.[9]

### 1.    Plaintiffs Do Not Allege Any Actual Wrongdoing by BAM.

It is axiomatic that a Complaint cannot stand without plausible allegations of liability against a defendant. *Douglas v. Yates*, 535 F.3d 1316, 1322 (11th Cir. 2008) ("A complaint will be held defective if it fails to connect the defendant with the alleged wrong." (quoting 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1234 (3d ed. 2004))) (internal alterations omitted). The Complaint here is devoid of any allegations pertaining to any wrongdoing *specific* to BAM (instead of "Defendants" or "Binance"), let alone plausible allegations of liability under the ATA. *See Zobay v. MTN Grp. Ltd.*, 695 F. Supp. 3d 301, 351 (E.D.N.Y. 2023) (finding "many of Plaintiffs' allegations" against Huawei U.S.

---

[9]  Additionally, BAM joins BHL and Mr. Zhao's arguments that the non-U.S. national Plaintiffs lack standing to bring ATA and JASTA claims, and the U.S. national Plaintiffs lack standing to bring claims under the ATS.

subsidiaries "deficient because they refer amorphously to 'Huawei' or to all Defendants without differentiating each corporate defendant's conduct"). Indeed, the Complaint contains only a handful of allegations specific to BAM, most of which emphasize its compliance with U.S. law. (*See, e.g.*, Compl. at 8 ("Binance and other investors opened Binance.us, a separate exchange designed to comply with all applicable US federal laws."); *id.* at 26 ("[BAM] possesses a Money Transmission License (MT 814) issued by the Alabama Securities Commission.").) Further, the Complaint does not allege that the purportedly terrorist-linked transactions occurred on BAM's platform (which is available only to U.S. users). Although Plaintiffs improperly refer to BAM and BHL "collectively" as "Binance" (Compl. at 1), the allegations on their face make clear that the Complaint does not involve conduct by BAM. For example, Plaintiffs discuss at various points a series of governmental proceedings against "Binance" (*e.g.*, Compl. at 7, 20-21), but BAM was not a target of (or party to) any of those proceedings. *See supra* at p. 7. Accordingly, because Plaintiffs fail to plead any wrongful acts by BAM, the claims against BAM must be dismissed.

### 2.    Plaintiffs Fail to State an ATA/JASTA Claim Against BAM.

#### a.    The Complaint Fails to Allege Aiding-and-Abetting Liability under the ATA (Count I).

In Count I, Plaintiffs allege that the "Defendants" violated the ATA by "aiding and abetting Hamas and Islamic Jihad in committing, planning, or authorizing acts

of international terrorism." (Compl. ¶ 63.) But Plaintiffs' allegations against BAM cannot establish aiding-and-abetting liability under the ATA, which requires a showing that BAM (1) aided a party who "perform[ed] a wrongful act that cause[d] an injury"; (2) was "generally aware of [its] role as part of an overall illegal or tortious activity at the time [it] provide[d] the assistance"; and (3) "knowingly and substantially assist[ed] the principal violation." *Twitter v. Taamneh*, 598 U.S. 471, 486 (2023) (quoting *Halberstam v. Welch*, 705 F.2d 472, 477 (D.C. Cir. 1983)).[10] "Failure to allege all three elements warrants dismissal." *Newman v. Associated Press*, 2024 WL 5063288, at *4 (S.D. Fla. Dec. 10, 2024). Additionally, aiding a foreign terrorist organization ("FTO") "generally" is insufficient; Plaintiffs must show that BAM aided and abetted "in the commission of the actionable wrong"— that is, there must be a nexus to the "specific" attack injuring plaintiffs. *Twitter*, 598 U.S. at 494-95. And *Twitter* dictates that courts "cabin" aiding-and-abetting liability to truly "conscious, voluntary, and culpable participation" in terrorist acts. *Id.* at 489, 493. The Complaint fails to satisfy these requirements.

  ***First***, Plaintiffs fail to establish the "general awareness" prong of aiding and abetting, which requires that BAM was "aware that, by assisting the principal, it is

---

[10] JASTA incorporates the secondary liability framework laid out in *Halberstam*. Justice Against Sponsors of Terrorism Act (JASTA), Pub. L. No. 114-222, §2(a)(5), 130 Stat. 852, 852 (2016) ("*Halberstam* . . . has been widely recognized as the leading case regarding [f]ederal civil aiding and abetting and conspiracy liability, including by the Supreme Court of the United States, [and] provides the proper legal framework for how such liability should function.").

itself assuming a role in terrorist activities." *Linde v. Arab Bank, PLC*, 882 F.3d 314, 329 (2d Cir. 2018) (internal quotations omitted). To allege general awareness in the financial services context, Plaintiffs must (at a minimum) show that a defendant knowingly provided services to an individual or entity the defendant was aware had close ties to terrorist groups. *See, e.g.*, *Honickman v. BLOM Bank SAL*, 6 F.4th 487, 501 (2d Cir. 2021) (holding that plaintiffs could not establish general awareness where they failed to plausibly allege that defendant was aware the customers it transacted with had ties to Hamas). Plaintiffs do not allege that BAM provided services to any terrorist-linked account, i.e., that BAM was "assisting the principal." *Linde*, 882 F.3d at 329. Instead, Plaintiffs' allegations of wrongdoing concern Binance.com, a different platform operated by a separate entity. (*See supra* pp. 2, 6.) Nowhere do Plaintiffs plausibly allege that BAM had any knowledge of transactions on that platform, or awareness that it was assuming a role in Hamas and PIJ's terrorist activities.

Moreover, the ATA sets the bar even higher: providing financial services to terrorist entities on its own does not prove general awareness. *See Strauss v. Crédit Lyonnais, S.A.*, 379 F. Supp. 3d 148, 164 (E.D.N.Y. 2019) ("Evidence that Defendant knowingly provided banking services to a terrorist organization, without more, is insufficient to satisfy JASTA's scienter requirement."); *Freeman v. HSBC Holdings PLC*, 465 F. Supp. 3d 220, 230 (E.D.N.Y. 2020) (even provision of "non-routine or

21

illegal" services including sanctions-evading transactions with entities tied to terrorists does not establish "general awareness" of participation in terrorism). Plaintiffs must instead allege that BAM itself was "aware that through its own conduct, whether legal or illegal, it [was] assuming a role in actual terrorist activity." *Freeman*, 465 F. Supp. 3d at 230. Because the Complaint does not allege that BAM "was in some way furthering Hamas's terrorist activities and mission," it fails to satisfy the ATA's onerous standard. *Newman*, 2024 WL 5063288, at *5.

**Second**, Plaintiffs' failure to adequately allege "general awareness" precludes a finding of "knowing and substantial assistance." *See Bernhardt v. Islamic Republic of Iran*, 47 F.4th 856, 870 (D.C. Cir. 2022) (finding dismissal warranted because "having failed to allege the requisite general awareness, [plaintiff's] complaint also fails to allege knowing assistance").

Plaintiffs' allegations are also independently insufficient to demonstrate "knowing and substantial assistance." *Id*. The ATA incorporates a six-factor framework, drawn from *Halberstam*, for assessing "knowing and substantial assistance": "(1) the nature of the act assisted, (2) the amount of assistance provided, (3) whether the defendant was present at the time of the principal tort, (4) the defendant's relation to the principal actor, (5) the defendant's state of mind, and (6) the duration of the assistance given." *Twitter*, 598 U.S. at 486 (internal quotations omitted). These factors highlight that the Complaint is devoid of allegations related

22

to BAM necessary to plead liability under the ATA. The Complaint alleges no assistance that BAM provided to the terrorists (whether in kind, amount, or duration); it alleges no relationship or interaction between BAM and the bad actors; and it pleads no culpable state of mind on BAM's part. *See Bernhardt*, 47 F.4th at 870-72 (finding no "knowing and substantial assistance" where plaintiff failed to allege defendant's "involvement with" the FTO, "any relationship, much less a close one, between [defendant] and [the FTO]," or "defendant's state of mind"); *Newman*, 2024 WL 5063288, at *7-8 (finding no knowing and substantial assistance under *Halberstam* where plaintiffs' "conclusory allegations [were] inadequate to establish that any amount of money or assistance from the [defendant] went to Hamas in carrying out its terrorist attacks," "that the [defendant] participated in the tortious conduct," or "any 'arms-length relationship' between the [defendant] and the Hamas-affiliates"); *Wildman v. Deutsche Bank Aktiengesellschaft*, 2022 WL 17993076, at *24 (E.D.N.Y. Dec. 29, 2022) (dismissing aiding-and-abetting claim under *Halberstam* framework where complaint "is unclear how much of [the] alleged amount was actually remitted by [defendant]," "does not allege" presence, alleged only an "attenuated" business relationship, and provided "insufficient evidence" of state of mind and duration), *appeal docketed*, No. 23-132 (2d Cir. Jan. 30, 2023).

Moreover, *Twitter* requires conscious and culpable aid *to the specific act of terrorism* alleged by a plaintiff. 598 U.S. at 495. But Plaintiffs fail to identify *any* BAM transactions that are tied to the specific attacks at issue here and do not come close to pleading a nexus between BAM's conduct and the specific attacks. *See Siegel v. HSBC N. Am. Holdings, Inc.*, 933 F.3d 217, 225-26 (2d Cir. 2019) (holding AML and sanctions violations insufficient for liability because they failed to show the defendant bank "knowingly assumed a role in AQI's terrorist activities or substantially assisted AQI in those activities, *specifically the November 9 Attacks*" (emphasis added)).

Plaintiffs' impermissible allegations against "Defendants" "collectively" (Compl. at 1) fare no better. At most, Plaintiffs allege the exact circumstance the Supreme Court rejected as insufficient to establish aiding-and-abetting liability: that Hamas- and PIJ-linked accounts accessed BHL's "generally available" platform on the same terms as "everyone else," and that BHL's relationship to those accounts was "arm's length, passive, and largely indifferent." *Twitter*, 598 U.S. at 498, 500. Further, the Complaint fails to plausibly allege a nexus between any Binance.com transaction and the attacks (*see* BHL Mot. at 19-24), and their allegations that Defendants aided Hamas and PIJ generally are insufficient. *Twitter*, 598 U.S. at 495 ("[I]t is not enough . . . that a defendant has given substantial assistance to a

transcendent 'enterprise' separate from and floating above all the actionable wrongs that constitute it.").

Because Plaintiffs fail to allege that BAM "consciously and culpably participated in" violent terrorist attacks on civilians "so as to help make [them] succeed," Count I must be dismissed. *Id.* at 493 (internal quotations and alterations omitted).

### b. The Complaint Fails to State a Claim for Conspiracy under the ATA (Count II).

In Count II, Plaintiffs allege that the "Defendants" "knowingly conspir[ed] with Hamas and Islamic Jihad to facilitate its operations." (Compl. ¶ 65.) A JASTA conspiracy claim requires "(1) an agreement between two or more persons; (2) to participate in an unlawful act; (3) an injury caused by an unlawful overt act performed by one of the parties to the agreement; (4) which . . . was done pursuant to and in furtherance of the common scheme." *Freeman ex rel. Est. of Freeman v. HSBC Holdings PLC*, 57 F.4th 66, 76 (2d Cir. 2023) (quoting *Halberstam*, 705 F.2d at 477).

The Complaint makes only one conclusory reference to BAM's alleged conspiracy, claiming that "after the launch of Biance.us [sic], Zhao and Binance conspired to retain U.S. customers on the Binance platform notwithstanding that Biannce.us [sic] had been launched." (Compl. at 11.) This falls far short of plausibly alleging that BAM "conspired" to facilitate the specific terrorist attacks at issue here.

*See In re Chiquita Brands Int'l Inc. Alien Tort Statute & Shareholders Deriv. Litig.*, 690 F. Supp. 2d 1296, 1311 (S.D. Fla. 2010) (citing *Fullman v. Graddick*, 739 F.2d 553, 556-57 (11th Cir. 1984)) ("A complaint may justifiably be dismissed because of the conclusory, vague, and general nature of the allegations of conspiracy.").

Indeed, Plaintiffs fail to establish the most basic element of a conspiracy: an agreement between BAM and any terrorist group. *See Newman*, 2024 WL 5063288, at *10 (plaintiffs must "plausibly allege [an] agreement to commit an act of international terrorism"). None of the allegations concerning BAM support a plausible inference that BAM entered any agreement with Hamas or Islamic Jihad, much less an agreement "to facilitate [Hamas and Islamic Jihad's] operations" and "further[] their committing, planning, or authorizing acts of international terrorism." (Compl. ¶ 65.) Plaintiffs offer nothing more than conclusory allegations that "Defendants"—not BAM—"knowingly conspir[ed] with Hamas and Islamic Jihad." (*Id.*) *See In re Chiquita Brands Int'l, Inc.*, 284 F. Supp. 3d 1284, 1316 (S.D. Fla. 2018) (finding that even allegations of direct payments to an FTO did "not permit inference that [defendant] agreed with the [FTO], expressly or impliedly, to murder American citizens abroad in Colombia").

Nor can Plaintiffs establish that BAM shared the necessary "common intent" with the terrorist groups and was "pursuing the same object." *See Freeman*, 57 F.4th at 79-80. The Complaint lacks any allegations that BAM shared Hamas's goal of

attacking Israeli or American civilians. *Id.* at 80 (finding no "common intent" where plaintiffs failed to "plead that the Banks intended to kill or injure U.S. service members in Iraq, or that the terrorist groups agreed to help the Banks and Iranian entities evade U.S. sanctions"). The allegations *at most* suggest that Binance.com, not BAM, failed to employ adequate internal controls for commercial reasons (i.e., to maximize user growth and platform revenue). (*See generally* Compl. at 11-14.) It is well established that profit motive alone is insufficient to plead a common scheme to commit acts of terror. *See Bernhardt*, 47 F.4th at 873 (finding no common objective because allegations of defendants trying to make substantial profits by evading sanctions were "wholly orthogonal" to the objective of the terrorists); *Zobay*, 695 F. Supp. 3d at 355  (rejecting plaintiffs' "conclusory allegations that Defendants 'each shared a common specific intent' to cause money and technology to flow through to terrorist campaigns" as insufficient to show "a common scheme to commit an act of international terrorism"); *O'Sullivan v. Deutsche Bank AG*, 2019 WL 1409446, at *9 (S.D.N.Y. Mar. 28, 2019) ("Defendants' alleged provision of material support to Iranian entities is so far removed from the acts of terrorism that injured Plaintiffs that the Court cannot infer that Defendants shared the common goal of committing an act of international terrorism.").

Because the Complaint fails to plead an "agreement" or a "common scheme" as required under the ATA, Plaintiffs' conspiracy claim fails as a matter of law.

### c.    Plaintiffs Fail to State a Claim for Primary Liability under the ATA (Counts III and IV).

In Counts III and IV, plaintiffs allege that the "Defendants" committed a "primary" violation of the ATA by providing "material support" to Hamas and PIJ. (Compl. ¶¶ 67, 71.) As Plaintiffs' allegations fall short of establishing secondary liability, they cannot establish primary liability. *See Linde*, 882 F.3d at 320 (JASTA "expands ATA civil liability").

As explained above, Plaintiffs do not clearly or plausibly allege that BAM played any role in any transaction linked to Hamas or PIJ, and far more would be required to hold BAM liable under § 2333(a) as "the principal perpetrator[] of acts of international terrorism." *Watson v. Saudi Arabia*, 2023 WL 4047586, at *9 (N.D. Fla. May 11, 2023), *report and recommendation adopted by* 2024 WL 1344643 (N.D. Fla. Mar. 30, 2024) (quoting *Freeman v. HSBC Holdings PLC*, 413 F. Supp. 3d 67, 82 (E.D.N.Y. 2019)).

In support of their primary liability claims, Plaintiffs offer the threadbare legal conclusions that Defendants violated 18 U.S.C. §§ 2339A and 2339B, which prohibit providing material support to terrorists,[11] and that these violations "caused" or

---

[11] Section 2339A provides criminal penalties for "[w]hoever provides material support or resources or conceals or disguises the nature, location, source, or ownership of material support or resources, knowing or intending that they are to be used in preparation for, or in carrying out" enumerated terrorist acts. Section 2339B criminalizes "knowingly provid[ing] material support or resources to a foreign terrorist organization, or attempt[ing] or conspir[ing] to do so."

"proximately caused" their injuries. (Compl. ¶¶ 66-71.) Rule 12(b)(6) and the ATA require more. *See Oxford Asset Mgmt.*, 297 F.3d at 1188.

An ATA primary liability claim requires: "(1) an injury to a U.S. national, (2) an act of international terrorism, and (3) causation." *Freeman v. HSBC Holdings PLC*, 413 F. Supp. 3d at 82; *see* 18 U.S.C. § 2333(a) (providing a cause of action to U.S. nationals injured "by reason of an act of international terrorism"); *see also Newman*, 2024 WL 5063288, at *10. No alleged conduct by BAM (or any Defendant) satisfies the second element, which requires that an act (1) "involve violent acts or acts dangerous to human life"; (2) "qualify as 'a violation of the criminal laws of the United States or of any State'"; (3) "'appear to be intended' to intimidate a civilian population, influence government policy, or affect the conduct of a government by certain specified means"; and (4) "occur primarily outside the United States or transcend national boundaries." *Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 68 (2d Cir. 2012) (quoting 18 U.S.C. § 2331(1)(A)-(C)).

Courts have repeatedly held that "it is not enough to allege claims under §§ 2339A and B to automatically render them acts of international terrorism." *See Newman*, 2024 WL 5063288, at *11 (collecting cases). "[T]o qualify as international terrorism, a defendant's act must *also* involve violence or endanger human life," and meet the ATA's other definitional requirements. *Linde*, 882 F.3d at 326. At most, Plaintiffs allege the provision of "routine financial services to members and

associates of terrorist organizations." *Id.* at 327. Even if Plaintiffs had plausibly alleged BAM's involvement, the provision of financial services "in and of itself, is insufficient either to show that the services involved an act of violence or threat to human life or to give the appearance that such services were intended to intimidate or coerce a civilian population or government." *Weiss v. Nat'l Westminster Bank*, 993 F.3d 144, 162-63 (2d Cir. 2021); *see also Strauss*, 379 F. Supp. 3d at 160.

Further, because Plaintiffs have failed to adequately allege BAM's knowledge of any terrorist-linked transactions (*see supra* at pp. 21-25), they cannot establish underlying violations of the material support statutes. *See Newman*, 2024 WL 5063288, at *13-14 (§§ 2339A and B respectively require "that the defendant acted with the specific knowledge or intent that its support would be used in preparation for, or in carrying out, one of the enumerated terrorism-related crimes" and with the "knowledge" that an organization was engaged in terrorism).

Finally, because the Complaint does not adequately allege any connection between BAM and alleged terrorist-linked transactions, Plaintiffs cannot establish that BAM proximately caused their injuries.[12] Conclusory assertions that

---

[12] As set out in Mr. Zhao's and BHL's motions, Plaintiffs' allegations against Defendants generally are inadequate. (*See* Zhao Mot. at 16-18; BHL Mot. at 17-18.) Plaintiffs' allegations that without the Hamas- and PIJ-linked Binance transactions (which occurred at unspecified points during inconsistently alleged time frames), those groups "would have been far less able to recruit, train, equip and deploy their armed terrorist forces against civilians in Israel" (Compl. ¶ 67) fail to establish that the transactions proximately caused the October 7 attacks. *See In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 118, 124 (2d Cir. 2013) ("We also are not persuaded that providing routine banking services to organizations and individuals said to be affiliated with al Qaeda . . .

"Defendants' violation of 18 U.S.C. § 2339B proximately caused the damages to Plaintiffs" (Compl. ¶ 70; *see also id.* ¶ 68) are insufficient and should be rejected. *Rothstein v. UBS AG*, 708 F.3d 82, 97 (2d Cir. 2013) (dismissing primary liability claim where there was "no nonconclusory allegation in the Complaint that plausibly show[ed]" a "proximate causal relationship between the cash transferred" by defendant and terrorist attacks harming plaintiffs), *superseded by statute on other grounds*; *Newman*, 2024 WL 5063288, at *15 (dismissing primary liability claims "[g]iven the lack of any connection between Hamas's actions in carrying out the October 7 Attack and the [defendant's] alleged conduct").

Accordingly, Plaintiffs' claims that BAM is subject to primary liability for the October 7 terrorist attacks fail on multiple fronts and should be dismissed.

### 3. Plaintiffs Fail to State a Claim for Negligent Infliction of Emotional Distress (Count VI).

Plaintiffs' claim for negligent infliction of emotional distress fails because Alabama law provides no basis for such a claim. *See, e.g.*, *Mathews v. United States*, 2024 WL 3371053, at *8 (N.D. Ala. June 10, 2024) (citing *Mason v. United Parcel Serv. Co.*, 674 F. App'x 943, 949 n.8 (11th Cir. 2017)) ("Under Alabama law, claims

---

proximately caused the September 11, 2001 attacks or plaintiffs' injuries."); *Adams v. Alcolac, Inc.*, 2019 WL 4774006, at *6 (S.D. Tex. Sept. 6, 2019) ("[L]imited facts and stacked inferences are insufficient to demonstrate proximate cause."). These allegations are further undermined by the fact that several Plaintiffs also claim that the actions of the Associated Press proximately caused their injuries. *See Newman*, 2024 WL 5063288, at *1, *15.

for negligent infliction of emotional distress … are not actionable"), *report and recommendation adopted by* 2024 WL 3362470 (N.D. Ala. July 10, 2024).

Moreover, even if such a cause of action existed, Plaintiffs' claim would still fail because it is premised on the same deficient factual allegations underlying their federal claims: that BAM "provided support and aid to Hamas," which "constituted a willful violation of federal statutes." (Compl. ¶¶ 76-77.) As argued above, Plaintiffs do not plausibly allege that BAM provided aid to Hamas or committed violations of the ATA, JASTA, or ATS. *See supra* Section III(C)(2); *see infra* Section III(D); *cf. Ismail v. Ascensionpoint Recovery Servs., LLC*, 2019 WL 5894311, at *9-10 (N.D. Ala. Nov. 12, 2019) (dismissing negligence per se claim where plaintiff did not plausibly allege a "[statutory] violation to support such a claim").

### D. The Court Lacks Subject Matter Jurisdiction over Plaintiffs' ATS Claim (Count V).

In Count V, the "foreign-born citizen" Plaintiffs bring a claim under the Alien Tort Statute, 28 U.S.C. § 1350, premised on BAM's alleged violations of the ATA, JASTA, and 18 U.S.C. §§ 2339A and B. (*See* Compl. ¶¶ 72-74; *see also id.* ¶¶ 24, 25, 27; *id.* at 44.) The Court lacks jurisdiction over this claim because Plaintiffs do not identify a valid international-law basis for their claim or domestic conduct sufficient to overcome the presumption against extraterritorial application of the ATS.

The ATS provides district courts "original jurisdiction of any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States." 28 U.S.C. § 1350. The requirements for jurisdiction are therefore that: "the plaintiff [is] '(1) an alien, (2) suing for a tort, which was (3) committed in violation of international law.'" *Doe v. Drummond Co., Inc.*, 782 F.3d 576, 583 (11th Cir. 2015) (quoting *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1246 (11th Cir. 2005)). That Plaintiffs allege "violation[s] of United States law" (Compl. ¶ 73) as the partial basis for their ATS claim is therefore irrelevant—"the scope of liability under the ATS is determined by reference to international law not federal statutes." *Doe I v. Cisco Sys.*, 113 F.4th 1230, 1234 (11th Cir. 2024) (citing *Sosa v. Alvarez-Machain*, 542 U.S. 692, 733 (2004)).

To the extent Plaintiffs seek to argue that violations of domestic anti-terrorism statutes constitute concomitant violations of international law, multiple courts have rejected this argument. *See, e.g.*, *In re Chiquita Brands Int'l Inc.*, 792 F. Supp. 2d 1301, 1321-22 (S.D. Fla. 2011) (dismissing "terrorism-based claims [as] not actionable under the ATS" because "a claim for terrorism in general, or material support thereof, is not based on a sufficiently accepted, established, or defined norm of customary international law to constitute a violation of the law of nations"), *rev'd on other grounds*, *Cardona v. Chiquita Brands Int'l, Inc.*, 760 F.3d 1185, 1189 (11th Cir. 2014); *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 118, 125 (2d Cir. 2013)

("Plaintiffs . . . fail to plead a violation of the ATS because no universal norm against 'terrorism' existed under customary international law (*i.e.*, the 'law of nations') as of September 11, 2001."); *Saperstein v. Palestinian Auth.*, 2006 WL 3804718, at \*7 (S.D. Fla. Dec. 22, 2006) (citing *Tel-Oren v. Libyan Arab Republic*, 726 F.2d 774, 795 (D.C. Cir. 1984)) ("[P]olitically motivated terrorism has not reached the status of a violation of the law of nations.").

Seemingly conceding this, Plaintiffs identify no relevant provision of international law concerning terrorism in the Complaint and instead make a passing allusion to money laundering and the 2000 UN Convention Against Transnational Organized Crime. (Compl. ¶ 14; *see id.* ¶ 73 (vaguely referencing "international treaties to which the United States is subject").) The Court should decline to recognize a cause of action for money laundering under the ATS based on a throwaway citation to a single treaty. *See Nestle USA, Inc. v. Doe*, 593 U.S. 628, 635 (2021) ("[C]ourts must refrain from creating a cause of action whenever there is even a single sound reason to defer to Congress."); *Cisco*, 113 F.4th at 1241 ("[T]he judicial creation of new causes of action under the ATS is extraordinarily disfavored if not dead letter."); *Galvez v. Fanjul Corp.*, 533 F. Supp. 3d 1268, 1280 (S.D. Fla. 2021) ("[I]n the absence of state action, the ATS typically only imposes liability on private parties for violations of the most serious international norms, such as war crimes, slave trading, and genocide.") (collecting cases). And even if one existed,

34

Plaintiffs' allegations fail to establish that any conduct by BAM constituted money laundering, or direct or indirect financing of terrorism.

Dismissal is also independently required for a second reason: "ATS claims are subject to the presumption against extraterritoriality," which "assumes U.S. law does not apply outside the United States." *Drummond*, 782 F.3d at 582 (citing *Kiobel v. Royal Dutch Petroleum Co.*, 569 U.S. 108, 124 (2013)). Plaintiffs' claims do not "touch and concern the territory of the United States . . . with sufficient force to displace" that presumption and subject BAM to liability for attacks that occurred abroad. *Kiobel*, 569 U.S. at 124.

"[T]o ensure a 'permissible domestic application' of the ATS, a plaintiff must show that 'the conduct relevant to the statute's focus occurred in the United States,' even if other relevant conduct occurred abroad." *In re Chiquita Brands Int'l Inc. Alien Tort Statute & Shareholders Deriv. Litig.*, 2022 WL 22236064, at *10 (S.D. Fla. Aug. 23, 2022) (quoting *Nestle*, 593 U.S. at 634). Under Supreme Court and Eleventh Circuit precedent, neither BAM's status as a U.S. corporation, the United States' general interest in combatting terrorism, nor "general corporate activity," "strike with 'sufficient force' to displace the presumption and permit jurisdiction." *Nestle*, 593 U.S. at 634; *Drummond*, 782 F.3d at 596-97.

Plaintiffs cannot show more. The only conduct (domestic or otherwise) alleged in the Complaint concerning BAM is that it (1) has customer service

35

representatives in Alabama and (2) operates a U.S.-based cryptocurrency exchange compliant with U.S. regulations. Compl. ¶¶ 18, 28; *id.* at 8-9. Plaintiffs connect none of this to "the conduct relevant to the statute's focus"—the terrorist-linked transactions that purportedly facilitated the attacks on Plaintiffs. Plaintiffs identify no Binance.US transaction linked to Hamas, PIJ, or those groups' terrorist attacks.

The Court lacks jurisdiction over Plaintiffs' ATS claim, and it must be dismissed.

## IV.  CONCLUSION

For the reasons stated herein, the Court should dismiss BAM from this action, with prejudice, pursuant to Federal Rules of Civil Procedure 8 and 10, 12(b)(1), 12(b)(2), and 12(b)(6).

Dated: April 14, 2025                    Respectfully submitted,

                                         */s/ Daniel Tramel Stabile*
                                         Daniel Tramel Stabile (*pro hac vice*)
                                         Thania (Athanasia) Charmani (*pro hac vice
                                         admission pending*)
                                         **WINSTON & STRAWN LLP**
                                         200 Park Avenue
                                         New York, NY 10166
                                         Tel.: (212) 294-4659
                                         DStabile@winston.com
                                         ACharmani@winston.com

                                         */s/ Kenneth D. Sansom*
                                         Kenneth D. Sansom (SAN 047)
                                         Michael T. Sansbury (SAN 054)
                                         **SPOTSWOOD SANSOM & SANSBURY
                                         LLC**
                                         Financial Center
                                         505 20th St North, Suite 700
                                         Birmingham, AL 35203-3329
                                         Tel.: (205) 986-3620
                                         Fax: (205) 986-3639
                                         ksansom@spotswood.com
                                         msansbury@spotswood.com

                                         *Attorneys for Defendant BAM Trading
                                         Services Inc. d/b/a Binance.US*

37

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on April 14, 2025, a true and correct copy of the foregoing document was served via the Court's ECF filing system on all counsel of record.

*/s/ Kenneth D. Sansom*
OF COUNSEL

38