# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
### NORTHERN DIVISION

NOACH NEWMAN, et al.,

            Plaintiffs,

       v.

BAM TRADING SERVICES INC. d/b/a
BINANCE.US, et al.,

            Defendants.

Case No. 2:24-cv-00134-ECM-CWB

**ORAL ARGUMENT REQUESTED**

**MEMORANDUM OF LAW IN SUPPORT OF
MR. CHANGPENG ZHAO'S MOTION TO DISMISS
<u>PLAINTIFFS' FIRST AMENDED COMPLAINT</u>**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................... iii

PRELIMINARY STATEMENT ............................................................................................... 1

STATEMENT OF THE FACTS ............................................................................................... 3

PROCEDURAL BACKGROUND ............................................................................................ 5

ARGUMENT .............................................................................................................................. 6

I.     The FAC Must Be Dismissed for Failure to Comply with Rules 8 and 10. ...................... 6

II.    The FAC Must Be Dismissed for Lack of Personal Jurisdiction. ..................................... 6

    A.    The Legal Standard for Personal Jurisdiction. ......................................................... 6

    B.    The FAC Does Not Provide a Basis for Veil Piercing or Alter Ego Under Alabama Law. ............................................................................................................ 8

        1.    BHL's Corporate Form Cannot Be Disregarded. ........................................ 9

        2.    BAM's Corporate Form Cannot Be Disregarded. ..................................... 10

    C.    The FAC Pleads No Contacts with Alabama to Support Personal Jurisdiction. ... 12

    D.    The FAC Pleads No Nexus with the United States to Support Personal Jurisdiction. ............................................................................................................ 12

III.    Plaintiffs' Claims Against Mr. Zhao Should Be Dismissed Under Rule 12(b)(6). .......... 14

    A.    The Legal Standard for Rule 12(b)(6). ................................................................... 14

    B.    Veil Piercing for Liability Purposes Is Not Sufficiently Pleaded. ......................... 15

    C.    Plaintiffs Fail to State a Claim Under the ATA. ..................................................... 17

        1.    Seventeen Plaintiffs Lack ATA Standing, and Their ATA Claims Must Be Dismissed (Claims I-IV). ............................................................ 18

        2.    Plaintiffs Fail to State a Claim for Primary Liability Under the ATA Against Mr. Zhao (Claims III & IV). ......................................................... 18

            a.    There Is No "Act of International Terrorism." .............................. 18

            b.    There Is No Requisite *Mens Rea*. .................................................. 20

i

           c.      There Is No Proximate Causation. ..................................................20

     3.      Plaintiffs Fail to State a Claim for ATA/JASTA Aiding & Abetting Against Mr. Zhao (Claim I). .......................................................22

           a.      Legal Standard for Pleading Aiding and Abetting........................22

           b.      The FAC Does Not Sufficiently Plead JASTA Aiding and Abetting..........................................................................................24

                 i.      There Is No Requisite Affirmative Act.............................24

                 ii.      There is No Requisite Intent. ...............................................26

                 iii.     The FAC Fails to Plead the *Halberstam* Factors. ..............28

     4.      Plaintiffs Fail to State Claim for ATA/JASTA Conspiracy Against Mr. Zhao (Claim II). ...................................................................29

  D.     Plaintiffs Fail to State an ATS Claim Against Mr. Zhao (Claim V)......................30

  E.     Plaintiffs Fail to State a Claim for Negligence and Wantonness Under Alabama Law (Claim VI). .........................................................................33

CONCLUSION.................................................................................................................36

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*AALAR Ltd., Inc. v. Francis,*
    716 So. 2d 1141 (Ala. 1998) ................................................................................36

*Almog v. Arab Bank, PLC,*
    471 F. Supp. 2d 257 (E.D.N.Y. 2007) ................................................................32

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ....................................................................................15, 30

*Associated Transp. Line, Inc. v. Productos Fitosanitarios Proficol El Carmen, S.A.,*
    197 F.3d 1070 (11th Cir. 1999) ............................................................................7

*Averbach v. Cairo Amman Bank,*
    No. 19-cv-0004, 2020 WL 486860 (S.D.N.Y. Jan 21, 2020) ................................27

*Barboza v. Drummond Co.,*
    No. 06-61527-CIV, 2007 WL 8025825 (S.D. Fla. July 17, 2007) ........................33

*Bartlett v. Societe Generale de Banque au Liban SAL,*
    No. 19-CV-00007, 2024 WL 5497906 (E.D.N.Y. Sept. 18, 2024) .......................14

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ............................................................................................15

*Belle Meade Title & Escrow Corp. v. Fifth Third Bank,*
    282 F. Supp. 3d 1033 (M.D. Tenn. 2017) ...........................................................35

*Bernhardt v. Islamic Republic of Iran,*
    47 F.4th 856 (D.C. Cir. 2022) ..................................................................26, 29, 30

*Bernhardt v. Islamic Republic of Iran,*
    No. 18-2739, 2020 WL 6743066 (D.D.C. Nov. 16, 2020) .........................13, 14, 29

*Bufkin v. Thermage, Inc.,*
    No. 08-465, 2009 WL 114780 (S.D. Miss. 2009) ................................................13

*Cain v. Twitter, Inc.,*
    No. 17-cv-2506, 2018 WL 4657275 (N.D. Cal. Sept. 24, 2018) ..........................29

*Carty v. Beech Aircraft Corp.,*
    679 F.2d 1051 (3d Cir. 1982) ..............................................................................13

*Cascade Yarns, Inc. v. Knitting Fever, Inc.,*
    No. C10-861, 2011 WL 1042578 (W.D. Wash. Mar. 18, 2011) .............................8

iii

*Chen Jun v. Regions Bank*,
No. 1:19-CV-01524, 2020 WL 5603527 (N.D. Ala. Sept. 18, 2020)...............................34, 35

*Childs v. Ponner*,
348 So. 3d 379 (Ala. 2021) ........................................................................................................9

*Chlebda v. H.E. Fortna & Bro. Inc.*,
609 F.2d 1022 (1st Cir. 1979)...................................................................................................13

*Co-Ex Plastics, Inc. v. Alappat, Inc.*,
536 So. 2d 37 (Ala. 1988)...........................................................................................................8

*Colonial BancGroup Inc. v. PricewaterhouseCoopers LLP*,
No. 11-746, 2017 WL 8890271 (M.D. Ala. Dec. 28, 2017)....................................................34

*Comeens v. HM Operating, Inc.*,
No. 14-521, 2014 WL 12650102 (N.D. Ala. Dec. 1, 2014) ......................................................8

*Cont'l Motors, Inc. v. Jewell Aircraft, Inc.*,
882 F. Supp. 2d 1296 (S.D. Ala. 2012)......................................................................................6

*Crosby v. Twitter, Inc.*,
303 F. Supp. 3d 564 (E.D. Mich. 2018)....................................................................................20

*Daimler AG v. Bauman*,
571 U.S. 117 (2014)...............................................................................................................7, 8

*Direct Sales Co. v. United States*,
319 U.S. 703 (1943).................................................................................................................23

*Doe v. Drummond Co., Inc.*,
782 F.3d 576 (11th Cir. 2015) .................................................................................................31

*Doe v. Unocal Corp.*,
27 F. Supp. 2d 1174 (C.D. Cal. 1998) .......................................................................................8

*Edge v. Daechang Seat Corp. USA*,
No. 3:23-cv-684, 2024 WL 1321072 (M.D. Ala. Mar. 27, 2024) ...........................................15

*Euroboor B.V. v. Grafova*,
No. 17-cv-02157, 2021 WL 4325694 (N.D. Ala. Sept. 23, 2021)...........................................15

*Ex parte Grand Manor, Inc.*,
778 So. 2d 173 (Ala. 2000)......................................................................................................36

*Ex parte M.E.J.*,
392 So. 3d 52 (Ala. 2023).........................................................................................................7

*Ex parte Puccio*,
    923 So. 2d 1069 (Ala. 2005) ................................................................................9

*Facebook, Inc. v. K.G.S.*,
    294 So. 3d 122 (Ala. 2019) ...............................................................................13

*Fields v. Twitter, Inc.*,
    881 F.3d 739 (9th Cir. 2018) .............................................................................21

*Filus v. LOT Polish Airlines*,
    907 F.2d 1328 (2d Cir. 1990) ............................................................................13

*Fiske v. Sandvik Mining*,
    540 F. Supp. 2d 250 (D. Mass. 2008) ...............................................................13

*Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*,
    592 U.S. 351 (2021) .............................................................................................7

*Gardner v. MGC Mortg., Inc.*,
    No. 2:12-CV-131, 2013 WL 800741 (M.D. Ala. Mar. 4, 2013) ........................34

*Gilbert v. James Russell Motors, Inc.*,
    812 So. 2d 1269 (Ala. Civ. App. 2001) .........................................................9, 11

*Glob. Gaming Philippines, LLC v. Razon*,
    No. 21-2655, 2022 WL 836716 (S.D.N.Y. Mar. 21, 2022) ...............................15

*Gonzalez v. Google LLC*,
    2 F.4th 871 (9th Cir. 2021) ...............................................................................20

*Goodyear Dunlop Tires, S.A. v. Brown*,
    564 U.S. 915 (2011) .............................................................................................7

*Halberstam v. Welch*,
    705 F.2d 472 (D.C. Cir. 1983) .....................................................................27, 28

*Harman v. Taurus Int'l Mfg., Inc.*,
    No. 3:21-CV-98, 2023 WL 2534622 (M.D. Ala. Mar. 15, 2023) .......................9

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
    466 U.S. 408 (1984) .............................................................................................7

*Holmes v. Sec. Inv. Prot. Corp.*,
    503 U.S. 258 (1992) ...........................................................................................21

*Honickman v. Blom Bank Sal*,
    6 F.4th 487 (2d Cir. 2021) .................................................................................28

*I Am Athlete, LLC v. IM EnMotive, LLC*,
 No. 2023-0332, 2023 WL 8933592 (Del. Ch. Dec. 27, 2023)..................................17

*IBEW-NECA Local 505 Pension and Welfare Plans v. Smith*,
 No. 06-0455, 2008 WL 4067363 (S.D. Ala. Aug. 27, 2008).....................................9

*In re Bass*,
 No. 10-01101, 2011 WL 722384 (Bankr. W.D. Tex. Feb. 11, 2011)......................15

*In re Chiquita Brands Int'l, Inc. Alien Tort Statute & S'holder Derivative Litig.*,
 792 F. Supp. 2d 1301 (S.D. Fla. 2011) ..................................................................33

*In re Terrorist Attacks on Sept. 11, 2001*,
 714 F.3d 118 (2d Cir. 2013) ...................................................................21, 22, 33

*In re Tyson*,
 433 B.R. 68 (S.D.N.Y. 2010)..................................................................................16

*Int'l Shoe Co. v. Washington*,
 326 U.S. 310 (1945)...................................................................................................6

*Jefferson Pilot Broadcasting Co. v. Hilary & Hogan, Inc.*,
 617 F.2d 133 (5th Cir. 1980) ..................................................................................15

*Jesner v. Arab Bank, PLC*,
 584 U.S. 241 (2018)............................................................................................32, 33

*Johnson v. City of Atlanta*,
 107 F.4th 1292 (11th Cir. 2024) ...............................................................................5

*Kaplan v. Lebanese Canadian Bank, SAL*,
 405 F. Supp. 3d 525 (S.D.N.Y. 2019)................................................................21, 29

*Kemper v. Deutsche Bank AG*,
 911 F.3d 383 (7th Cir. 2018) .............................................................19, 20, 21, 30

*Kindrick v. CMI Elecs., Inc.*,
 No. 09-cv-169, 2012 WL 4344069 (M.D. Ala. Sept. 21, 2012)..............................11

*King v. Habib Bank Ltd.*,
 No. 20-CV-4322, 2022 WL 4537849 (S.D.N.Y. Sept. 29, 2022).....................14, 27

*Kiobel v. Royal Dutch Petroleum Co.*,
 569 U.S. 108 .............................................................................................................31

*Lee v. Foris DAX, Inc.*,
 No. 24-CV-06194, 2025 WL 1084794 (N.D. Cal. Apr. 10, 2025).........................35

*Lelchook v. Lebanese Canadian Bank,*
No. 18-cv-12401, 2024 WL 967078 (S.D.N.Y. Mar. 6, 2024)................................18

*Lemley v. Wilson,*
178 So. 3d 834 (Ala. 2015)................................................................................34

*Levin v. Bank of New York Mellon,*
No. 09-cv-5900, 2013 WL 5312502 (S.D.N.Y. Sept. 23, 2013) ...........................26

*Linde v. Arab Bank, PLC,*
882 F.3d 317 (2d Cir. 2018)........................................................................22, 28

*Looney v. Moore,*
No. 13-cv-00733, 2015 WL 4773747 (N.D. Ala. Aug. 13, 2015).........................34

*Lyons v. City of Dothan, Alabama,*
No. 1:20-cv-00035, 2020 WL 7134926 (M.D. Ala. Oct. 20, 2020) ......................30

*Mamani v. Berzain,*
654 F.3d 1148 (11th Cir. 2011) .........................................................................31

*Manichaean Cap., LLC v. Exela Techs., Inc.,*
251 A.3d 694 (Del. Ch. 2021)............................................................................16

*Marlin v. Moody Nat. Bank, N.A.,*
No. H-04-cv-4443, 2006 WL 2382325 (S.D. Tex. Aug. 16, 2006).................26, 35

*Martin v. Arnold,*
643 So. 2d 564 (Ala. 1994)................................................................................34

*McIlwee v. ADM Indus., Inc.,*
17 F.3d 222 (7th Cir. 1994) ...............................................................................13

*MicroStrategy Inc. v. Acacia Rsch. Corp.,*
No. 5735, 2010 WL 5550455 (Del. Ch. Dec. 30, 2010)......................................16

*Mwani v. Laden,*
947 F. Supp. 2d 1 (D.D.C. 2013) .......................................................................32

*Newman v. Associated Press,*
No. 24-cv-20684, 2024 WL 5063288 (S.D. Fla. Dec. 10, 2024)...............18, 19, 30

*O'Sullivan v. Deutsche Bank AG,*
No. 17-cv-8709, 2019 WL 1409446 (S.D.N.Y. Mar. 28, 2019)......................19, 22

*Ofisi v. BNP Paribas, S.A.,*
278 F. Supp. 3d 84 (D.D.C. 2017) .....................................................................29

*Oxford Asset Mgmt., Ltd. v. Jaharis*,
    297 F.3d 1182 (11th Cir. 2002) ...................................................................15

*Pettengill v. Curtis*,
    584 F. Supp. 2d 348 (D. Mass. 2008) .........................................................13

*Ridgeway v. CSX Transp., Inc.*,
    723 So. 2d 600 (Ala. 1998).........................................................................36

*Rosemond v. United States*,
    572 U.S. 65 (2014)................................................................................23, 24

*Rothstein v. UBS AG*,
    708 F.3d 82 (2d Cir. 2013)...................................................................21, 22

*S. Ala. Pigs, LLC v. Farmer Feeders, Inc.*,
    305 F. Supp. 2d 1252 (M.D. Ala. 2004) ....................................................12

*S. Research Inst. v. PAM Innovation Corp.*,
    No. 19-CV-00932, 2020 WL 1433151 (N.D. Ala. Mar. 24, 2020) ...............9

*Saccuzzo v. Krystal Co.*,
    646 So. 2d 595 (Ala. 1994).........................................................................35

*Saperstein v. Palestinian Auth.*,
    No. 04-cv-20225, 2006 WL 3804718 (S.D. Fla. Dec. 22, 2006)...............33

*Schrier v. Qatar Islamic Bank*,
    632 F. Supp. 3d 1335 (S.D. Fla. 2022) ........................................................8

*Se. Laborers Health & Welfare Fund v. Bayer Corp.*,
    444 F. App'x 401 (11th Cir. 2011) ..............................................................21

*Siegel v. HSBC Holdings, plc*,
    283 F. Supp. 3d 722 (N.D. Ill. 2017) ..........................................................13

*Sloss Indus. Corp. v. Eurisol*,
    488 F.3d 922 (11th Cir. 2007) ......................................................................6

*Smith & Wesson Brands, Inc. v. Estados Unidos Mexicanos*,
    No. 23-1141, 605 U.S. ---, 2025 WL 1583281 (June 5, 2025)...................... *passim*

*Smith v. Amsouth Bank, Inc.*,
    892 So. 2d 905 (Ala. 2004).................................................................34, 35

*Sosa v. Alvarez-Machain*,
    542 U.S. 692 (2004)............................................................................32, 33

*Sprint Nextel Corp. v. iPCS, Inc.*,
    No. 3746, 2008 WL 2737409 (Del. Ch. July 14, 2008)........................................................16

*Steel Co. v. Citizens for Better Env't*,
    523 U.S. 83 (1998)........................................................14

*Stewart v. Bureaus Inv. Grp., LLC*,
    No. 10-1019, 2015 WL 7572312 (M.D. Ala. Nov. 24, 2015)..................................10

*Tel-Oren v. Libyan Arab Republic*,
    726 F.2d 774 (D.C. Cir. 1984)........................................................32

*Thetford v. City of Clanton*,
    605 So. 2d 835 (Ala. 1992)........................................................35

*Twitter, Inc. v. Taamneh*,
    598 U.S. 471 (2023)........................................................ *passim*

*United States v. Collins*,
    966 F.2d 1214 (7th Cir. 1992)........................................................30

*United States v. Mehanna*,
    735 F.3d 32 (1st Cir. 2013)........................................................20

*United States v. Steward*,
    590 F.3d 93 (2d Cir. 2009)........................................................20

*Wallace ex rel. Cencom Cable Income Partners II, Inc., L.P. v. Wood*,
    752 A.2d 1175 (Del. Ch. 1999)........................................................17

*Warren v. Harden*,
    No. 2:12-cv-228, 2013 WL 1336990 (M.D. Ala. Mar. 29, 2013)..........................................15

*Weiss v. Nat'l Westminster Bank*,
    993 F.3d 144 (2d Cir. 2021)........................................................19

*Weiss v. Nat'l Westminster Bank PLC*,
    381 F. Supp. 3d 223 (E.D.N.Y. 2019)........................................................27

*Wultz v. Islamic Republic of Iran*,
    755 F. Supp. 2d 1 (D.D.C. 2010)........................................................14

*Yu v. GSM Nation, LLC*,
    No. 12293-VCMR, 2017 WL 2889515 (Del. Ch. July 7, 2017)........................................16

*Zapata v. HSBC Holdings PLC*,
    414 F. Supp. 3d 342 (E.D.N.Y. 2019)........................................................21

*Zapata v. HSBC Holdings plc*,
    No. 1:16-CV-030, 2017 WL 6939209 (S.D. Tex Sept. 14, 2017) ........................................13

**Statutes**

8 U.S.C. § 1101 ..............................................................................................................18, 31

18 U.S.C. § 2331 ...................................................................................................................19

18 U.S.C. § 2333 ...............................................................................................................1, 18

18 U.S.C. § 2334 .....................................................................................................................7

18 U.S.C. § 2339A ..........................................................................................................19, 20

18 U.S.C. § 2339B ..........................................................................................................19, 20

28 U.S.C. § 516 .....................................................................................................................25

28 U.S.C. § 547 .....................................................................................................................25

28 U.S.C. § 1350 ...............................................................................................................1, 32

**Rules**

Fed. R. Civ. P. 4 .................................................................................................................7, 13

Fed. R. Civ. P. 8 .................................................................................................................2, 6

Fed. R. Civ. P. 10 ...............................................................................................................2, 6

Fed. R. Civ. P. 12 ..........................................................................................................5, 6, 14

**Other Authorities**

31 C.F.R. § 594.201 ..............................................................................................................26

31 C.F.R. § 1020.220 ............................................................................................................26

Exec. Order No. 14178,
    90 Fed. Reg. 8647 (Jan. 23, 2025) .................................................................................19

Memorandum,
    Off. Deputy Atty. Gen, *Ending Regulation by Prosecution* (Apr. 7, 2025) ..................19

U.S. Const. amend. XIV ..........................................................................................................6

*United States v. Binance Holdings, Ltd.*,
    No. 2:23-cr-00178 (W.D. Wash. Nov. 21, 2023), ECF No. 23 ..............................5, 10, 25, 29

*United States v. Changpeng Zhao*,
    No. 2:23-cr-00179 (W.D. Wash. Nov. 21, 2023), ECF No. 31 ..............................................25

Pursuant to Federal Rules of Civil Procedure ("Rules") 8, 10, and 12, Defendant Mr. Changpeng Zhao submits this memorandum of law in support of his motion ("Motion") to dismiss the First Amended Complaint ("FAC") brought by Plaintiffs against him, Binance Holdings, Ltd. ("BHL"), BAM Trading Services Inc. ("BAM," and together with BHL, "Entity Defendants," and collectively with Mr. Zhao, "Defendants") for claims brought under the Anti-Terrorism Act, 18 U.S.C. § 2333 ("ATA"), as amended by the Justice Against Sponsors of Terrorism Act, Pub. L. No. 114-222, 130 Stat. 852 (2016) ("JASTA"), one claim brought under the Alien Tort Statute, 28 U.S.C. § 1350 ("ATS"), and one claim for "negligence/wantonness."

## PRELIMINARY STATEMENT

Plaintiffs bring this action seeking treble damages for injuries suffered during an October 7, 2023, terrorist attack ("October Attack") perpetrated by Hamas and Palestinian Islamic Jihad ("PIJ") in Israel. Defendant Zhao is a Canadian businessman. Plaintiffs do not allege that Mr. Zhao participated in the October Attack. Nor do they allege that he funded, supported, or had any relationship with, Hamas or PIJ. Rather, Plaintiffs ask this Court to hold Mr. Zhao liable for acts of these foreign terrorist groups because he once served as the CEO of Defendant BHL, a Cayman Islands company involved in the operation of a cryptocurrency exchange.

Under Mr. Zhao's leadership, BHL went from startup in a nascent industry to one of the largest digital asset companies in the world. In its rapid ascent, however, BHL allegedly failed to follow certain statutory obligations requiring it to identify persons using the exchange and to monitor and/or block certain asset transfers. These compliance shortcomings became the basis for various U.S. government enforcement actions, which have now been settled.

Plaintiffs try to bootstrap their unrelated claims arising from foreign terrorist attacks onto these prior government actions by claiming that because BHL did not identify or block certain

users, some illicit actors used BHL's services, and some of those illicit actors—at some vague points in time—were associated with Hamas or PIJ, which, as pleaded, injured Plaintiffs. The gross attenuation between Mr. Zhao's conduct and Plaintiffs' injuries is itself a reason to dismiss Plaintiffs' claims against him. But, more than that, the FAC fails because, unlike the claims in the government's regulatory enforcement actions, Plaintiffs' ATA claims (upon which the others derive) require **purposeful and intentional participation in a terrorist attack**. Plaintiffs do not—and cannot—allege this.

Plaintiffs' claims should be dismissed for these additional reasons:

**First,** the FAC is a quintessential "shotgun" pleading that violates Rules 8(a) and 10(b).

**Second,** Plaintiffs fail to allege that this Court has personal jurisdiction over Mr. Zhao. There are zero alleged contacts between him and Alabama. And Plaintiffs' effort to base personal jurisdiction on alter ego and veil piercing theories fails because the FAC does not plead Mr. Zhao had "complete dominion and control" over the Entity Defendants, that they were complete shams, or that their corporate forms were misused by Mr. Zhao for his personal gain. In any case, as BHL and BAM explain in their motions, the FAC does not plead personal jurisdiction over them either.

**Third,** Plaintiffs fail to plead an ATA primary liability claim against Mr. Zhao. This claim requires that the defendant himself perpetrate an "act of international terrorism"—a defined term for violent or mortally dangerous activity perpetrated for terroristic reasons. The FAC alleges only that the Entity Defendants provided financial services that were generally available and were provided solely for economic reasons. Such services are not "acts of international terrorism" and would not translate into primary liability against Mr. Zhao in any event.

**Fourth,** Plaintiffs fail to plead an ATA secondary liability claim against Mr. Zhao. The Supreme Court recently, and unanimously, held that "[w]hen a company merely knows that 'some

2

bad actors' are taking 'advantage' of its products for criminal purposes, **it does not aid and abet**. And that is so even if the company could adopt measures to reduce their users' down-stream crimes." *Smith & Wesson Brands, Inc. v. Estados Unidos Mexicanos*, No. 23-1141, 605 U.S. ---, 2025 WL 1583281, at *6 (June 5, 2025) (emphasis added). This holding forecloses Plaintiffs' aiding and abetting claim because all they allege is that some illicit actors used BHL's services. Plaintiffs fail to plead the core requirement for aiding and abetting—that Mr. Zhao (or any Defendant) participated in the October Attack as in something that he wished to bring about, and sought by his actions to make succeed. *Id.* at *7. Plaintiffs' conspiracy claim likewise fails because they do not allege that Mr. Zhao (or any Defendant) entered into a requisite agreement with Hamas and PIJ to conduct the October Attack.

**Fifth,** Plaintiffs fail to plead liability under the ATS. First, most Plaintiffs lack standing to bring an ATS claim because they are not aliens. Second, the presumption against extraterritoriality precludes this Court from applying the ATS to adjudicate harm outside the United States. Third, the federal statutes and treaties cited in the FAC are not proper predicates for ATS liability.

**Sixth,** Plaintiffs fail to plead a claim against Mr. Zhao for "negligence/wantonness." Plaintiffs plead no duty owed to them that Mr. Zhao breached. Nor do they sufficiently plead causation because they cannot plausibly allege that, but for Mr. Zhao's actions, the October Attack would not have occurred.

For these reasons, Mr. Zhao respectfully requests that the Court dismiss all of the claims against him with prejudice.

## STATEMENT OF THE FACTS

For the purposes of this Motion, the following statements are drawn from allegations in the FAC, which Mr. Zhao neither admits nor concedes.

Mr. Zhao is a Canadian businessman, who, in 2017, co-founded BHL, a Cayman Islands company that operates a virtual currency exchange ("Platform").  (FAC ¶¶ 81, 84.)  Mr. Zhao also served as BHL's CEO until November 2023.  Plaintiffs allege that, as CEO, Mr. Zhao prioritized BHL's growth and commercial success over adherence to U.S. regulatory requirements, and that this "profit-driven policy of noncompliance" led BHL to fall short of obligations under the Bank Secrecy Act ("BSA") and related rules, including Know Your Customer ("KYC"), Anti-Money Laundering ("AML"), and Office of Foreign Assets Control ("OFAC") protocols.  (*Id.* ¶¶ 98-104, 110, 118, 136.)

According to the FAC, BHL was banned in the United States in 2019, and in response, BHL and other investors established BAM, a Delaware corporation, which had its own cryptocurrency platform and was designed to comply with U.S. law and lawfully service U.S. customers.  (*Id.* ¶ 94.)  Plaintiffs allege that BHL nevertheless continued to service "lucrative and high-volume" U.S. customers.  (*Id.* ¶¶ 96, 213.)  Plaintiffs theorize that BAM's legal operations were meant to serve as a "smokescreen," that is, that U.S. regulators would somehow be so blinded by BAM's compliance, they would fail to notice BHL's non-compliance.  (*Id.* ¶¶ 105, 178.)  Notwithstanding their allegations that BHL had U.S. customers prior to BAM's existence (*id.* ¶ 213), and that BHL operated the largest digital asset exchange in the world (*id.* ¶ 86), Plaintiffs allege that BAM was BHL's only way to attract U.S. customers.  (*Id.* ¶ 183.)

At most, Plaintiffs present Mr. Zhao as an over-zealous executive in the nascent and rapidly evolving digital assets industry, who helped grow a cryptocurrency start-up company into a financial success, albeit with compliance deficits.  But the FAC does not—and could not—plead that Mr. Zhao had any relationship with Hamas or PIJ, that he was present at or participated in the

October Attack, or that he shared any terrorist group's goals.  To the contrary, the FAC repeatedly alleges that all Defendants were driven by purely economic aims.  (*See, e.g.*, *id.* ¶¶ 101, 104, 136.)

Moreover, the FAC does not plead any transactions between any of the Entity Defendants' U.S. users and Hamas or PIJ.  Nor does it allege any transfers over the Platform involving Hamas or PIJ that occurred close in time to the October Attack.  That makes sense.  By October 2023, BHL and Mr. Zhao were in the final stages of settlements with the U.S. government to resolve claims arising from BSA violations.  And when settling with BHL and Mr. Zhao, the government acknowledged that BHL, under Mr. Zhao's leadership, had "**taken significant steps to remediate its AML and sanctions compliance programs**," including **by May 2022**, implementation of "full KYC requirements" for account holders and "restricting accounts for users subject to U.S. sanctions."  *See, e.g.*, Plea Agreement at ¶¶ 8.f.-g., *United States v. Binance Holdings, Ltd.*, No. 23-cr-00178, (W.D. Wash. Nov. 21, 2023), ECF No. 23 (emphasis added) (hereinafter "DOJ BHL Agreement").[1]

## **PROCEDURAL BACKGROUND**

Plaintiffs filed this action in February 2024.  (ECF No. 1.)  Mr. Zhao was never served.  In May 2024, he entered a stipulation, agreeing to waive objections to the absence of service in order to streamline certain preliminary matters, "provided, however," that he did not waive, "but rather expressly reserve[d], any and all other rights, defenses and objections to the claims in this action (including but not limited to defenses based upon lack of personal or subject matter jurisdiction, lack of standing, improper venue, or a defendant having been improperly named)."  (ECF No. 15 at 2-3.)  The stipulation made clear that service on Mr. Zhao was "not effectuated in the Middle

---

[1] When presented with a motion to dismiss pursuant to Rule 12(b)(6), the court may also consider documents that are referenced in the complaint or that the plaintiffs relied on in bringing suit.  *Johnson v. City of Atlanta*, 107 F.4th 1292, 1300 (11th Cir. 2024).

District of Alabama (or anywhere else)." (*Id.* at 3.)  In April, Mr. Zhao timely moved to dismiss. (ECF No. 79.)  On May 5, 2025, Plaintiffs filed the FAC.  (ECF No. 84.)

<u>**ARGUMENT**</u>

**I.     The FAC Must Be Dismissed for Failure to Comply with Rules 8 and 10.**

The FAC fails to comply with Rules 8(a) and 10(b) and, to avoid duplicative briefing, Mr. Zhao joins BAM's motion to dismiss on those grounds.  (*See* Def. BAM's Mem. Of Law in Support of its Mot. to Dismiss the FAC, § II.A. (June 20, 2025) (hereinafter "BAM's Mot.").)

**II.    The FAC Must Be Dismissed for Lack of Personal Jurisdiction.**

Plaintiffs' claims against Mr. Zhao must be dismissed under Rule 12(b)(2) because the FAC fails to establish a basis for personal jurisdiction.  The FAC pleads no basis for hauling Mr. Zhao, a Canadian and former CEO of a Cayman company, into Alabama to litigate claims brought by non-Alabama Plaintiffs related to injuries suffered in Israel at the hands of foreign terrorists. Instead, Plaintiffs rely on overlapping theories of "alter ego and veil-piercing" for their jurisdictional basis.  (FAC ¶ 43.)  As explained below, that effort fails.

**A.     The Legal Standard for Personal Jurisdiction.**

Courts deciding a Rule 12(b)(2) motion must determine whether personal jurisdiction comports with (1) the forum state's long-arm provision and (2) the requirements of the Due Process Clause of the Fourteenth Amendment.  *Cont'l Motors, Inc. v. Jewell Aircraft, Inc*., 882 F. Supp. 2d 1296, 1306 (S.D. Ala. 2012).  "Here, the two inquiries merge because Alabama's long-arm statute permits the exercise of personal jurisdiction to the fullest extent constitutionally permissible." *Sloss Indus. Corp. v. Eurisol*, 488 F.3d 922, 925 (11th Cir. 2007).  Due process requires that a foreign defendant have sufficient "minimum contacts" with the forum such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

6

There are two types of personal jurisdiction: (1) general, which permits the court to adjudicate all claims against a defendant, or (2) specific, which restricts adjudication to only those claims that relate to defendant's activities within the forum state. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8, 9 (1984). General jurisdiction lies in the forum where the defendant is "essentially at home in the forum state." *Goodyear Dunlop Tires, S.A. v. Brown*, 564 U.S. 915, 919 (2011). Specific jurisdiction is proper only if an action "arises out of or relates to the defendant's contact with the forum." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (cleaned up). Plaintiffs must establish both "purposeful availment"—active assumption of "the privilege of conducting activities within the forum"—and "an affiliation between the forum and the underlying controversy" by way of an "activity or an occurrence." *Goodyear*, 564 U.S. at 919 (citations omitted). This test "incorporates real limits, as it must to adequately protect defendants foreign to a forum." *Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*, 592 U.S. 351, 362 (2021).

Here, Plaintiffs allege personal jurisdiction under Alabama's long-arm statute and Rule 4(k)(1)(C), which authorizes personal jurisdiction through proper service of process upon a defendant pursuant to a federal statute that contains its own service provision. (FAC ¶ 29.) The ATA authorizes nationwide service in any U.S. district. 18 U.S.C. § 2334(a).

The Alabama long-arm statute requires sufficient minimum contacts with Alabama in order to establish personal jurisdiction. *Ex parte M.E.J.*, 392 So. 3d 52, 58 (Ala. 2023). When service is effectuated pursuant to the ATA (*i.e.*, within a U.S. district), the relevant forum for consideration is the United States. *Associated Transp. Line, Inc. v. Productos Fitosanitarios Proficol El Carmen, S.A.*, 197 F.3d 1070, 1074 (11th Cir. 1999). When service is ***not*** effectuated pursuant to the ATA, plaintiffs are "precluded from invoking the ATA as a statutory basis for personal jurisdiction," and

the relevant forum is the state in which the district court sits. *Schrier v. Qatar Islamic Bank*, 632 F. Supp. 3d 1335, 1346 (S.D. Fla. 2022); *see also Cascade Yarns, Inc. v. Knitting Fever, Inc.*, No. C10-861, 2011 WL 1042578, at *1 (W.D. Wash. Mar. 18, 2011) ("it would be inappropriate for a federal court to. . . apply[] a national contacts test for personal jurisdiction where service is not effected pursuant to that federal statute"); *Doe v. Unocal Corp.*, 27 F. Supp. 2d 1174, 1183-84 (C.D. Cal. 1998) (same).

Plaintiffs do not plead that Mr. Zhao is a U.S. citizen or that he lives in the United States. This forecloses general jurisdiction. *See Daimler*, 571 U.S. at 137. Mr. Zhao was not served in any U.S. district, nor did he waive service. *See supra* p. 5. Service was thus not effectuated pursuant to the ATA, and therefore the relevant forum for the Court's minimum contacts analysis for specific jurisdiction is Alabama. *See Schrier*, 632 F. Supp. 3d at 1349.

**B.    The FAC Does Not Provide a Basis for Veil Piercing or Alter Ego Under Alabama Law.**

Plaintiffs' attempt to plead personal jurisdiction over Mr. Zhao "under the doctrines of alter ego and veil-piercing" (FAC ¶ 43) fails. The Entity Defendants are not subject to personal jurisdiction here to begin with. (*See* BAM's Mot. § II; Def. BHL's Mem. of Law in Support of its Mot. to Dismiss the FAC, § III (June 20, 2025) (hereinafter "BHL's Mot.").) And besides that, under Alabama law, neither doctrine applies. *See, e.g., Comeens v. HM Operating, Inc.*, No. 14-521, 2014 WL 12650102, at *5 (N.D. Ala. Dec. 1, 2014) (holding that Alabama law applies to the analysis of whether veil piercing or alter ego is pleaded for the purpose of establishing personal jurisdiction).

That a corporation is a legal entity existing separate and apart from its shareholders, directors, and officers is well settled in this state. *See, e.g., Co-Ex Plastics, Inc. v. Alappat, Inc.*, 536 So. 2d 37, 38 (Ala. 1988). Alabama law likewise recognizes that limiting liability of

shareholders and officers is a "legitimate primary purpose of any corporation." *Gilbert v. James Russell Motors, Inc.*, 812 So. 2d 1269, 1274 (Ala. Civ. App. 2001). Thus, disregarding the corporate form under a veil piercing or alter ego theory "is not a power that is lightly exercised." *Harman v. Taurus Int'l Mfg., Inc.*, No. 3:21-CV-98, 2023 WL 2534622, at *6 (M.D. Ala. Mar. 15, 2023) (quoting *Shorter Bros., Inc. v. Vectus 3, Inc.*, 343 So. 3d 508, 514 (Ala. 2021)).

The point underlying veil piercing/alter ego is not simply that the corporation did something wrong or harmful (in that case, the plaintiff has redress against the corporation); the point is that the corporate fiction should be disregarded because the corporate form itself was a fraud, which was misused by the defendant for personal gain. *IBEW-NECA Local 505 Pension & Welfare Plans v. Smith*, No. 06-0455, 2008 WL 4067363, at *2 (S.D. Ala. Aug. 27, 2008). Therefore, to begin, veil piercing/alter ego requires that the dominant party had "complete control and dominion" over the entity. *S. Research Inst. v. PAM Innovation Corp.*, No. 19-CV-00932, 2020 WL 1433151, at *3 (N.D. Ala. Mar. 24, 2020). But complete control and dominion is not enough. *See, e.g.*, *Childs v. Ponner*, 348 So. 3d 379, 391 (Ala. 2021) (noting that, if it were, Alabama law would not recognize one-man corporations). "[A] plaintiff must show fraud in asserting the corporate existence or must show that recognition of the corporate existence will result in injustice or inequitable consequences." *Id; see also Ex parte Puccio*, 923 So. 2d 1069, 1076 (Ala. 2005) (finding alter ego where defendant allegedly misused the company's corporate form to avoid personal liability and to enrich himself). Last, veil piercing/alter ego requires that the dominant party's misuse of the company's corporate form was the proximate cause of the plaintiff's injury. *Gilbert*, 812 So. 2d at 1274.

### 1.    BHL's Corporate Form Cannot Be Disregarded.

The FAC lacks any basis to pierce BHL's corporate veil or otherwise plead alter ego. As an initial and dispositive matter, the FAC cannot plausibly allege that Mr. Zhao had "complete

control and dominion" over the company because "the pleadings make it clear that [Mr. Zhao] was not the only [one] taking part in the business" of BHL. *Stewart v. Bureaus Inv. Grp., LLC*, No. 10-1019, 2015 WL 7572312, at *12 (M.D. Ala. Nov. 24, 2015) (finding plaintiff had not pleaded "the sort of extraordinary control necessary to pierce the corporate veil" to find that a President and CEO was his company's alter ego). The FAC is replete with allegations describing Mr. Zhao working with BHL's extensive executive and management teams. (*See, e.g.*, FAC ¶¶ 71, 97, 149.) Plaintiffs likewise acknowledge that BHL had leadership apart from Mr. Zhao. (*Id.* ¶¶ 107, 120, 122, 190.) Documents from the government enforcement actions also show that Mr. Zhao did not run BHL alone. *See, e.g.*, Attach. A to DOJ BHL Agreement at ¶ 3, ECF No. 23-1 (stating that Mr. Zhao made strategic decisions for BHL "[t]ogether with a core senior management group").

Plaintiffs' allegations as to Mr. Zhao's ownership interest in BHL, (FAC ¶¶ 81, 196), are unavailing because "ownership alone is insufficient to pierce the corporate veil." *See, e.g.*, *Stewart*, 2015 WL 7572312, at *12. And, critically, Plaintiffs do not plead that BHL's corporate form was a mere sham; rather they describe BHL as "operat[ing] the world's largest centralized digital asset exchange," (FAC ¶ 86), and make no attempt to allege BHL was undercapitalized or lacked employees. Plaintiffs likewise do not allege that Mr. Zhao misused BHL's corporate form for his personal gain or that such (non-existent) misuse was the cause of Plaintiffs' injuries. Accordingly, Plaintiffs may not use veil piercing/alter ego to impute allegations about BHL to Mr. Zhao to establish personal jurisdiction over him.

## 2. BAM's Corporate Form Cannot Be Disregarded.

Plaintiffs also fail to establish a basis for veil piercing or alter ego as to BAM. Again, the FAC lacks any basis for concluding that Mr. Zhao had "complete dominion and control" over the company. For one, Mr. Zhao was never an officer or employee of BAM and does not authorize BAM's decisions. *See* Decl. of Mr. Christopher Blodgett ¶¶ 17-18 (June 2025) ("Blodgett Decl.").

Nor do Plaintiffs plead that he was a BAM shareholder.  (*See* FAC ¶ 75 (alleging that BAM was owned by BAM Management Company Limited).)  And the FAC is laden with allegations about others—not Mr. Zhao—who purportedly *did* exert control over the company.  Plaintiffs reference a back-office manager with signatory authority over BAM's bank accounts (*Id*. ¶ 129), a finance executive with "full access to BAM Trading's account at California-based Silvergate Bank" (*id.* ¶ 245), and a finance team that was able to make "substantial fund transfers" from BAM's bank accounts (*id.* ¶ 256).  Plaintiffs also plead that BAM personnel had full control over certain BAM bank accounts.  (*Id.* ¶ 258.)  BAM's independence is further established by its own declaration in support of its own motion to dismiss.  *See generally* Blodgett Decl.

Plaintiffs fail to plead the kind of fraudulent purpose required for veil piercing.  Their theory that BAM's legal operations somehow blinded U.S. regulators to BHL's purported malfeasance does not mean that BAM's corporate form was a fraud or that BAM was a mere sham.  Plaintiffs readily admit (as they must) that BAM operated its own cryptocurrency platform and offered over-the-counter trading, (FAC ¶¶ 77, 130), had its own "banking relationships, accounts payable and receivable, compliance infrastructure, and underlying technology," (*id.* ¶ 71), its own customers (*id.* ¶ 177) and its own "bank accounts, expenses, and cryptocurrency assets"  (*id.* ¶ 194.).  These admissions preclude veil piercing/alter ego.  *Compare Gilbert*, 812 So. 2d at 1273 (finding that used-automobile company did not have a fraudulent purpose because it "did in fact buy used automobiles and sell them"), *with Kindrick v. CMI Elecs., Inc.*, No. 09-cv-169, 2012 WL 4344069, at *2, *5 (M.D. Ala. Sept. 21, 2012) (finding fraud in the corporate form where the corporation had no legitimate business, had no employees, intermingled personal and corporate funds, and disregarded corporate formalities).  Further, Plaintiffs do not allege that Mr. Zhao

misused BAM's corporate form for his own personal use or gain, much less that such misuse caused a terrorist attack in Israel.

### C.     The FAC Pleads No Contacts with Alabama to Support Personal Jurisdiction.

"An officer who has never been in Alabama, nor conducted personal business in the state through an alter ego or through personal agents, may not be subjected to jurisdiction in Alabama." *S. Ala. Pigs, LLC v. Farmer Feeders, Inc*., 305 F. Supp. 2d 1252, 1260 (M.D. Ala. 2004).  As explained in the Entity Defendants' moving briefs, none of the FAC's alleged Alabama "contacts" were related to, or the proximate cause of, Plaintiffs' injuries, and thus they cannot support specific jurisdiction.[2]  But regardless, all of these "contacts" were allegedly made by the Entity Defendants, not Mr. Zhao, who is not alleged to have *any* Alabama contacts.  The FAC thus lacks a basis for personal jurisdiction over him, and therefore all claims against him must be dismissed.

### D.     The  FAC  Pleads  No  Nexus  with  the  United  States  to  Support  Personal Jurisdiction.

Even if the United States were the correct forum for Plaintiffs' ATA claims (it is not, *see supra* § I.A), the FAC cannot support personal jurisdiction over Mr. Zhao as to those claims.

The crux of Plaintiffs' allegations regarding Mr. Zhao himself (as explained above, allegations as to the Entity Defendants are not imputed to him) is that he, as BHL's CEO, failed to implement a BSA-compliant protocol for the company.  Courts have consistently held that this is not a constitutionally-sufficient nexus with the United States to support personal jurisdiction. *Zapata v. HSBC Holdings plc*, No. 1:16-CV-030, 2017 WL 6939209, at *4 (S.D. Tex. Sept. 14, 2017) (dismissing ATA claims for lack of personal jurisdiction, finding that "high-level policy-setting role and systemic inaction Plaintiffs attribute to HSBC Holdings" were insufficient to

---

[2] *See* BAM's Mot. and BHL's Mot.

12

confer jurisdiction in the United States under Rule 4(k)(2)); *Siegel v. HSBC Holdings, plc*, 283 F. Supp. 3d 722, 727, 729 (N.D. Ill. 2017) (allegations that foreign bank defendants allegedly schemed to circumvent monitoring by U.S. regulators were insufficient to support personal jurisdiction for ATA claims); *Bernhardt v. Islamic Republic of Iran*, No. 18-2739, 2020 WL 6743066, at *3 (D.D.C. Nov. 16, 2020), *aff'd,* 47 F.4th 856 (D.C. Cir. 2022), *cert denied*, 144 S. Ct. 280 (2023) (finding no personal jurisdiction over foreign bank defendant that "provided the approval necessary for [its affiliate] to continue its U.S. sanction-evading program," and, in connection with a deferred prosecution agreement with the U.S. government, admitted "it had violated U.S. law and undermined U.S. national security, foreign policy, and sanctions programs").

This holding is consistent with the many decisions, nationwide, that recognize that an omission or failure to act cannot support jurisdiction in the forum. *See, e.g.*, *Facebook, Inc. v. K.G.S.*, 294 So. 3d 122, 140 (Ala. 2019); *Filus v. LOT Polish Airlines*, 907 F.2d 1328, 1333 (2d Cir. 1990); *Carty v. Beech Aircraft Corp.*, 679 F.2d 1051, 1061 (3d Cir. 1982); *Chlebda v. H.E. Fortna & Bro. Inc.*, 609 F.2d 1022, 1023-24 (1st Cir. 1979); *Zapata*, 2017 WL 6939209, at *4; *Bufkin v. Thermage, Inc.*, No. 08-465, 2009 WL 114780, at *7 (S.D. Miss. 2009); *Fiske v. Sandvik Mining*, 540 F. Supp. 2d 250, 254 (D. Mass. 2008); *Pettengill v. Curtis*, 584 F. Supp. 2d 348, 358-59 (D. Mass. 2008). Founding federal jurisdiction on omissions would impermissibly rope in everyone worldwide not presently implementing U.S.-oriented compliance programs. *See McIlwee v. ADM Indus., Inc.*, 17 F.3d 222, 224 (7th Cir. 1994).

Even the allegations about the Entity Defendants lack the sufficient causal nexus for personal jurisdiction because the FAC fails to specifically allege that any transfers to Hamas and PIJ went through the United States or involved U.S. persons (much less that such transfers caused the October Attack). *See Bernhardt*, 2020 WL 6743066, at *3 (finding no personal jurisdiction

over foreign defendant bank where plaintiffs failed to plausibly plead "that the transactions play []
any role in the attack itself").  This stark lack of any nexus between Plaintiffs' claims and the
forum distinguishes this case from ATA cases involving financial services defendants where, at
the very least, a defendant used a U.S. branch or correspondent account to conduct the transfers at
issue.  *See, e.g.*, *Bartlett v. Societe Generale de Banque au Liban SAL*, No. 19-CV-00007, 2024
WL 5497906, at *1, *3 (E.D.N.Y. Sept. 18, 2024) (alleging that Defendants knowingly provided
Hezbollah with financial services through correspondent bank accounts in New York); *King v.
Habib Bank Ltd.*, No. 20-CV-4322, 2022 WL 4537849, at *3 (S.D.N.Y. Sept. 29, 2022) (transfers
that allegedly funded al-Qaeda went through foreign defendant bank's New York branch); *Wultz
v. Islamic Republic of Iran*, 755 F. Supp. 2d 1, 34 (D.D.C. 2010) (wire transfer through foreign
defendant bank's U.S. branch supported personal jurisdiction where specific transfers enabled
terrorist activities).  The FAC lacks that (or any) requisite jurisdictional hook.

## III.    Plaintiffs' Claims Against Mr. Zhao Should Be Dismissed Under Rule 12(b)(6).

"[T]he requirement that jurisdiction be established as a threshold matter. . . is inflexible
and without exception."  *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 94-95 (1998) (cleaned
up).  However, Plaintiffs' claims against Mr. Zhao are also subject to dismissal under Rule
12(b)(6).

### A.    The Legal Standard for Rule 12(b)(6).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must permit the court,
based on its "judicial experience and common sense[,] . . . to infer more than the mere possibility
of misconduct."  *Edge v. Daechang Seat Corp. USA*, No. 3:23-cv-684, 2024 WL 1321072, at *1
(M.D. Ala. Mar. 27, 2024) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).  Instead, a
complaint must contain sufficient factual matter that, accepted as true, "state[s] a claim to relief
that is plausible on its face."  *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007).  In determining

plausibility, courts consider only well-pleaded, nonconclusory factual allegations. *Warren v. Harden*, No. 2:12-cv-228, 2013 WL 1336990, at *2 (M.D. Ala. Mar. 29, 2013) (citing *Iqbal*, 556 U.S. at 681). The allegations must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "[C]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002).

### B. Veil Piercing for Liability Purposes Is Not Sufficiently Pleaded.

As an initial matter, just as Plaintiffs fail to plead a basis to impute allegations about the Entity Defendants to Mr. Zhao to establish personal jurisdiction, Plaintiffs fail to do so to establish Mr. Zhao's liability. Here, the law of the state of incorporation is applied. *Jefferson Pilot Broadcasting Co. v. Hilary & Hogan, Inc.*, 617 F.2d 133, 135 (5th Cir. 1980); *Euroboor B.V. v. Grafova*, No. 17-cv-02157, 2021 WL 4325694, at *11, 17 (N.D. Ala. Sept. 23, 2021).

BHL is incorporated in the Cayman Islands, (FAC ¶ 81), where veil piercing is permissible only when a shareholder creates a corporation to evade a pre-existing liability or legal obligation. *See* Decl. of Mr. Christopher Wall ¶¶ 5-8 (May 18, 2025) ("Wall Decl."); *see also Glob. Gaming Philippines, LLC v. Razon*, No. 21-2655, 2022 WL 836716, at *7 (S.D.N.Y. Mar. 21, 2022) (finding that the Cayman Islands applies English common law to analyze veil piercing and under such law, veil piercing is only allowed when a person deliberately evades an existing legal obligation or liability); *In re Bass*, No. 10-01101, 2011 WL 722384, at *9 (Bankr. W.D. Tex. Feb. 11, 2011) (finding that "courts in the U.K. will pierce the veil when a company is set up to allow members of the company to get out of legal obligations owed to third parties"); *In re Tyson*, 433 B.R. 68, 88-89 (S.D.N.Y. 2010) (similar). Plaintiffs do not plead that Mr. Zhao created BHL to evade a legal obligation he owed them. The FAC thus provides no basis to pierce BHL's corporate

veil and cannot impute allegations about BHL to Mr. Zhao for liability purposes.  *See* Wall Decl. ¶¶ 18-19 (finding no basis to pierce BHL's corporate veil under Cayman law).

BAM is a Delaware entity, (FAC ¶ 69), and Delaware courts disregard the corporate form "only [in] the exceptional case." *Sprint Nextel Corp. v. iPCS, Inc.*, No. 3746, 2008 WL 2737409, at *11 (Del. Ch. July 14, 2008).  Thus, "[p]ersuading a Delaware court to disregard the corporate entity is a difficult task." *Yu v. GSM Nation, LLC*, No. 12293-VCMR, 2017 WL 2889515, at *3 (Del. Ch. July 7, 2017) (citation and internal quotation marks omitted).  "[B]ecause Delaware public policy does not lightly disregard the separate legal existence of corporations, a plaintiff must do more than plead that one corporation is the alter ego of another in conclusory fashion in order for the Court to disregard their separate legal existence." *MicroStrategy Inc. v. Acacia Rsch. Corp.*, No. 5735, 2010 WL 5550455, at *11 (Del. Ch. Dec. 30, 2010).

"In order to state a cognizable claim to pierce the corporate veil of [a corporation], plaintiffs must allege facts that, if taken as true, demonstrate the Officers' and/or the Parents' complete domination and control of the [corporation]." *Yu*, 2017 WL 2889515, at *3.  In determining whether veil piercing is appropriate, the court may consider "'(1) whether the company was adequately capitalized for the undertaking; (2) whether the company was solvent; (3) whether corporate formalities were observed; (4) whether the dominant shareholder siphoned company funds; and (5) whether, in general, the company simply functioned as a facade for the dominant shareholder.'" *MicroStrategy Inc.*, 2010 WL 5550455, at *11 (citation omitted).  "While these factors are useful, any single one of them is not determinative." *Manichaean Cap., LLC v. Exela Techs., Inc.*, 251 A.3d 694, 706-07 (Del. Ch. 2021).  The overarching issue is whether "the corporate structure [has] cause[d] fraud or similar injustice"—in other words, whether the

corporation is "a sham and exist[s] for no other purpose than as a vehicle for fraud." *Wallace ex rel. Cencom Cable Income Partners II, Inc., L.P. v. Wood*, 752 A.2d 1175, 1184 (Del. Ch. 1999).

The allegations in the FAC are insufficient to support a cognizable veil-piercing theory. As explained above, the FAC does not plead Mr. Zhao's complete dominion and control over BAM. *See supra* § II.C.2. Nor does the FAC allege that BAM functioned as a facade for Mr. Zhao or that he misused BAM's corporate form. There are no allegations that BAM was undercapitalized, failed to observe corporate formalities, failed to pay dividends, was insolvent, or lacked corporate records. There is no allegation that Mr. Zhao used BAM as a "piggy bank" for his personal use. *I Am Athlete, LLC v. IM EnMotive, LLC*, No. 2023-0332, 2023 WL 8933592, at *5 (Del. Ch. Dec. 27, 2023). The FAC does not even plead that Mr. Zhao was a shareholder of BAM (let alone a dominant one).[3] For these reasons, as well as those explained above, *see supra* § II.C.2., the FAC does not plead that BAM was a sham.

In sum, Plaintiffs fail to state an alter ego/veil piercing claim under Cayman or Delaware law, and they may not impute allegations about the Entity Defendants to Mr. Zhao for liability purposes. Because the basis of Plaintiffs' claims rests on the alleged business of the Entity Defendants, and because the allegations as to the Entity Defendants are not imputed to Mr. Zhao, Plaintiffs' claims against Mr. Zhao must be dismissed.

Plaintiffs' claims otherwise fail for the reasons set forth below.

### C.    Plaintiffs Fail to State a Claim Under the ATA.

Plaintiffs fail to plead a claim under the ATA, which provides a civil remedy for U.S. nationals who were injured "by reason of an act of international terrorism." 18 U.S.C. § 2333(a).

---

[3] At most, the FAC pleads that Mr. Zhao was a shareholder in one of BAM's parent companies (and the FAC pleads no basis for piercing the veil of that entity). (FAC ¶ 75.)

ATA claims can be based on two theories of liability—primary and secondary. The FAC establishes neither.

### 1.    Seventeen Plaintiffs Lack ATA Standing, and Their ATA Claims Must Be Dismissed (Claims I-IV).

ATA claims may be brought only by injured U.S. nationals or their estates, survivors, or heirs. *See* 18 U.S.C. § 2333(a).[4] Plaintiffs Hagar Almog, Ahl Haggai, Rahm Haggi, Zohar Haggai, Almog Meir Jan, Andrey Kozlov, Shlomi Ziv, Ayelet Samerano, Talik Gvili, Roee Baruch, and James Poe concede that they are Israeli citizens, not U.S. nationals, and bring claims for their own injuries. (FAC ¶¶ 49, 54, 59-61, 63, 64, 66, 68.) Plaintiffs Ora Cooper, Rotem Cooper, and Schachar Levy do not plead that they are U.S. nationals. (*Id*. ¶¶ 51, 67.) The estates of Yonatan Samerano, Ran Gvilli, and Uriel Baruch do not plead that the decedents were U.S. nationals. (*Id*. ¶¶ 63, 64, 66.) These Plaintiffs are not entitled to relief under the ATA, and their ATA claims must be dismissed for lack of standing. *Lelchook v. Lebanese Canadian Bank*, No. 18-cv-12401, 2024 WL 967078, at *9 (S.D.N.Y. Mar. 6, 2024).

### 2.    Plaintiffs Fail to State a Claim for Primary Liability Under the ATA Against Mr. Zhao (Claims III & IV).

To sufficiently plead a primary violation of the ATA, a plaintiff must allege: (1) an "act of international terrorism"; (2) the requisite mental state, and (3) proximate causation. *Newman v. Associated Press*, No. 24-cv-20684, 2024 WL 5063288, at *11 (S.D. Fla. Dec. 10, 2024). Plaintiffs plead none of these.

#### a.    There Is No "Act of International Terrorism."

An "act of international terrorism" is defined as activity outside the United States that (1) is violent or dangerous to human life and violates federal or state criminal law, and (2) is intended

---

[4] A U.S. national is a "citizen of the United States," or "a person who, though not a citizen of the United States, owes permanent allegiance to the United States." 8 U.S.C. § 1101(a)(22).

to intimidate or coerce a civilian population, influence government policy by intimidation or coercion, or affect government conduct by mass destruction, assassination, or kidnapping. *See* 18 U.S.C. § 2331(1). Two federal "material support crimes," 18 U.S.C. §§ 2339A and 2339B (those asserted by Plaintiffs, (FAC ¶ 330)), can serve as predicate crimes giving rise to ATA primary liability, but only if they independently meet the "act of international terrorism" definition. *Newman*, 2024 WL 5063288, at *11.

The financial services offered by the Entity Defendants are not "acts of international terrorism" because they are neither inherently violent nor mortally dangerous. *See, e.g.*, *Weiss v. Nat'l Westminster Bank*, 993 F.3d 144, 162-63 (2d Cir. 2021); *see also* Exec. Order No. 14178, 90 Fed. Reg. 8647, *Strengthening American Leadership in Digital Financial Technology* (Jan. 23, 2025)[5] (recognizing cryptocurrencies' "crucial role in innovation and economic development in the United States"); Memorandum, Off. Deputy Atty. Gen, *Ending Regulation by Prosecution* (Apr. 7, 2025)[6] (same). That the provision of financial services violated AML or sanctions laws does not change their intrinsically non-violent, non-dangerous quality. *See, e.g.*, *Kemper v. Deutsche Bank AG*, 911 F.3d 383, 390 (7th Cir. 2018) ("That [defendant bank's] business dealings may violate U.S. sanctions does not convert them into terrorist acts."); *O'Sullivan v. Deutsche Bank AG*, No. 17-cv-8709, 2019 WL 1409446, at *7-8 (S.D.N.Y. Mar. 28, 2019) (similar). Nor does an allegation that an illicit actor ended up as one of the many users of a defendant's financial services. *Crosby v. Twitter, Inc.*, 303 F. Supp. 3d 564, 576 (E.D. Mich. 2018), *aff'd*, 921 F.3d 617 (6th Cir. 2019).

---

[5]    Available    at https://www.whitehouse.gov/presidential-actions/2025/01/strengthening-american-leadership-in-digital-financial-technology/.
[6] Available at https://www.justice.gov/dag/media/1395781/dl?inline.

Besides lacking the quality of an "act of terrorism," financial services lack the requisite terroristic intent required where, as here, their provision is "motivated by economics, not by a desire to 'intimidate or coerce.'"  *See Kemper*, 911 F.3d at 390; *Gonzalez v. Google LLC*, 2 F.4th 871, 900-01 (9th Cir. 2021), *vacated and remanded*, 598 U.S. 617 (2023) (finding that Google did not commit acts of international terrorism when it allegedly "shared advertising revenue with ISIS" to further its own "economic self-enrichment").

Accordingly, the primary liability ATA claims must be dismissed as to Mr. Zhao because the FAC does not plead that he (or any Defendant) committed an "act of international terrorism."

### b.    There Is No Requisite *Mens Rea*.

The FAC also fails to plead the requisite state of mind for the two underlying material support statutes that Plaintiffs cite as predicates.  Section 2339A requires that the defendant knows the alleged material support was going to a specific terrorist group ***and*** specifically knows or intends to further the specific terror-related crimes.  *United States v. Mehanna*, 735 F.3d 32, 43 (1st Cir. 2013) (citing *United States v. Steward*, 590 F.3d 93, 113 (2d Cir. 2009)).  Plaintiffs offer no facts to support the notion that any Defendant—and certainly not Mr. Zhao, personally— provided resources to Hamas or PIJ with specific knowledge or intent that the October Attack be carried out.  Section 2339B requires that the defendant "knowingly" provided material support to a foreign terrorist organization.  18 U.S.C. § 2339B(a)(1).  Plaintiffs' allegations that Defendants "provided 'routine' services knowing only generally that some (unidentified) users could be affiliated with terrorism" are insufficient to establish a material support claim.  *Crosby*, 303 F. Supp. 3d at 577.

### c.    There Is No Proximate Causation.

The FAC also fails to plead causation.  Courts agree that the ATA's "by reason of" language requires proximate cause.  *See, e.g.*, *Rothstein v. UBS AG*, 708 F.3d 82, 95 (2d Cir. 2013).

An ATA primary liability claim thus requires a "direct relationship between the injuries that he or she suffered and the defendant's acts." *Fields v. Twitter, Inc.*, 881 F.3d 739, 744 (9th Cir. 2018) (rejecting the argument that proximate cause is established if plaintiffs' injury was merely foreseeable or if defendant was reckless); *cf. Se. Laborers Health & Welfare Fund v. Bayer Corp*., 444 F. App'x 401, 409 (11th Cir. 2011) (analyzing RICO, with the same "by reason of" language as in the ATA and finding that, when evaluating a RICO claim for proximate causation, "the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries"). *See also Kemper*, 911 F.3d at 392 (finding that proximate cause in ATA cases requires "directness"); *Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 268 (1992) (finding that the essential demand of proximate cause generally is a "direct relation between the injury asserted and the injurious conduct alleged").

Plaintiffs' attenuated theory of injury is anything but direct.  The FAC is "devoid of any factual, non-conclusory allegations that demonstrate, for example, that [the Defendants] provided money directly to [Hamas and PIJ] to carry out the attack[] . . . or that [Hamas and PIJ] would not have been able to carry out the attacks absent those specific funds." *See Kaplan v. Lebanese Canadian Bank, SAL*, 405 F. Supp. 3d 525, 532-33 (S.D.N.Y. 2019), *vacated in part on other grounds*, 999 F.3d 842 (2d Cir. 2021); *see also In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 118, 124 (2d Cir. 2013) ("We . . . are not persuaded that providing routine banking services to organizations and individuals said to be affiliated with al Qaeda—as alleged by plaintiffs— proximately caused the September 11, 2001 attacks or plaintiffs' injuries."); *Zapata v. HSBC Holdings PLC*, 414 F. Supp. 3d 342, 356-57 (E.D.N.Y. 2019) (finding no proximate cause where plaintiffs failed to plead the money allegedly laundered by HSBC was used by cartels for their terrorist acts and where there was "no plausible inference that the [c]artels would not be able to

commit these acts of violence without HSBC first laundering their money"), *aff'd,* 825 F. App'x 55 (2d Cir. 2020).

The FAC merely alleges that some illicit actors, including Hamas and PIJ, used the Platform at some unspecified time.  Plaintiffs plead no requisite, direct tie from the Entity Defendants' services to the October Attack (and nothing as to Mr. Zhao individually), or even plausibly plead that such services were a substantial factor in its execution.  *See Linde v. Arab Bank, PLC*, 882 F. 3d 317, 327 (2d Cir. 2018) ("[T]he mere provision of 'routine banking services to organizations and individuals said to be affiliates with terrorists does not necessarily establish causation." (quoting *In re Terrorist Attacks*, 714 F.3d at 124)); *Rothstein*, 708 F.3d at 96-97 (allegations that banking services "made it more likely that the moneys would be used for terrorism" are insufficient to state a primary liability claim); *O'Sullivan*, 2019 WL 1409446, at *6 n.11 ("While wrongful, Defendants' alleged evasion of U.S. sanctions and provision of financial services . . . does not support a plausible inference that those services played a substantial role in bringing about the attacks that injured Plaintiffs.").

Because Plaintiffs fail to sufficiently allege any of the necessary elements of an ATA primary liability claim (as to any Defendant, much less Mr. Zhao, personally, let alone all three), Claims III and IV against Mr. Zhao must be dismissed.

### 3.    Plaintiffs Fail to State a Claim for ATA/JASTA Aiding & Abetting Against Mr. Zhao (Claim I).

Plaintiffs' JASTA aiding and abetting claim falls far short of the high standard required for liability.

### a.    Legal Standard for Pleading Aiding and Abetting.

Aiding-and-abetting liability requires "conscious, voluntary, and culpable participation" in the underlying wrongful act (here, the October Attack) in such a way as to intentionally "make it

succeed." *Twitter, Inc. v. Taamneh*, 598 U.S. 471, 497 (2023) (dismissing JASTA aiding and abetting claim).   Aiding and abetting has both an objective and a subjective component: an "affirmative act" to assist a criminal offense; and the "intent of facilitating the offense's commission." *Id.* at 490.  As for the first component, the law distinguishes those who "incidentally facilitate a criminal venture" from those who "actively participate in it."  *Rosemond v. United States*, 572 U.S. 65, 77 n.8 (2014).   As for the second component, the defendant must intend to assist the underlying offense as to help "make it succeed."  *Twitter*, 598 U.S. at 494 (citation omitted).   "Mere knowledge" that one's actions may assist a criminal scheme is insufficient. *Direct Sales Co. v. United States*, 319 U.S. 703, 711 (1943).  Underlying both components is that, for liability to attach, defendants must have "joined both mind and hand" with the principal in committing the specific offense.  *Smith & Wesson*, 2025 WL 1583281, at *6, *8.

These principles were reaffirmed in two recent Supreme Court decisions, and in both, the Court found that aiding and abetting was not pleaded because, as here, plaintiffs failed to plead anything more than defendants' general provision of goods or services while knowing that illicit actors were using the same.   In *Twitter*, the Court found that plaintiffs did not plead that social media defendants aided and abetted an ISIS terrorist attack despite allegations that ISIS used the defendants' online platforms to fundraise and recruit, and that defendants knew about and profited from that use.   598 U.S. at 478-82.   The Court held that defendants' alleged assistance—the passive, general offering of their platforms' services—was not sufficiently substantial to constitute aiding and abetting.  *Id.* at 498-503.  Defendants did not give ISIS any "special treatment or words of encouragement," rather ISIS used the platforms "just like everyone else."  *Id.* at 498.  Nor did plaintiffs plead the requisite scienter, "[r]ather, they essentially portray[ed] defendants as bystanders, watching passively as ISIS carried out its nefarious scheme."  *Id.* at 500.  Similarly,

the Supreme Court held in *Smith & Wesson* that the plaintiff failed to sufficiently plead that gun manufacturers aided and abetted gun dealers who illegally sold defendants' firearms to Mexican cartels—despite allegations that the defendants knew who the illicit dealers were, knew these dealers were making illegal sales, and yet continued to supply the dealers in order to boost their own profits. 2025 WL 1583281, at *7-8.

### b. The FAC Does Not Sufficiently Plead JASTA Aiding and Abetting.

Under the Supreme Court's recent decisions, and the rationale and precedent underlying them, Plaintiffs' aiding-and-abetting claim fails because they do not plead that Defendants took "an affirmative act in furtherance" of the October Attack or "intend[ed] to facilitate the offense['s] commission." *Id.* at *5 (quoting *Rosemond*, 572 U.S. at 71).

### i. There Is No Requisite Affirmative Act.

The FAC does not contain a single allegation that Mr. Zhao took any affirmative steps to assist Hamas and PIJ in perpetrating the October Attack. And the Entity Defendants' alleged "relationship" with Hamas and PIJ was "the same as their relationship with their billion-plus other users: arm's length, passive, and largely indifferent." *Twitter*, 598 U.S. at 500. The connection between Hamas and PIJ and Defendants is "highly attenuated," and "their relationship with the attack is even further removed." *Id.* at 500. Far from pleading any "affirmative act" to assist a terrorist attack, Plaintiffs merely find numerous, repetitive ways to allege that BHL's platform was used generally by "illicit actors" (FAC ¶¶ 100, 148, 153, 173, 205), some of whom may or may not have been "associated with" Hamas or PIJ (*id.* ¶¶ 123, 140, 148, 164).

Plaintiffs provide no basis to conclude that Defendants "were consciously trying to help or otherwise 'participate in' the [October] attack." *Twitter*, 598 U.S. at 500. Plaintiffs' vague allegations that Defendants knew illicit actors were using the Platform do not equate to culpably

providing Hamas and PIJ assistance to enact the October Attack. As held in *Smith & Wesson*: "When a company merely knows that some bad actors are taking advantage of its products for criminal purposes, it does not aid and abet. And that is so even if the company could adopt measures to reduce their users' downstream crimes." 2025 WL 1583281, at \*6 (internal citations omitted). To hold Defendants liable merely for offering their services "knowing that . . . wrongdoers were using its services and failing to stop them" would "run roughshod over the typical limits on tort liability and take aiding and abetting far beyond its essential culpability moorings." *Twitter*, 598 U.S. at 503.

Faced with a dearth of culpable activity, Plaintiffs falsely allege that "[t]he Binance platform" was "charged" by the government with "aiding terrorist networks, including Hamas." (FAC ¶ 156.) That allegation is **false**. From a jurisdictional perspective, only the DOJ has authority to bring federal criminal aiding and abetting charges. *See* 28 U.S.C. §§ 516, 547. Review of its agreements with Mr. Zhao and BHL shows that no such offense was charged. *See* Plea Agreement at ¶ 2, *United States v. Changpeng Zhao*, No. 2:23-cr-00179, (W.D. Wash. Nov. 21, 2023), ECF No. 31; DOJ BHL Agreement. To be clear, no government entity has sued Mr. Zhao (or the Entity Defendants) for aiding and abetting terrorists.

Noncompliance with the BSA and related statutes at issue in the enforcement actions does not constitute a JASTA aiding-and-abetting claim. While the *Twitter* Court noted that plaintiffs' JASTA claim "might have more purchase if [the plaintiffs] could identify some independent duty in tort" that defendants breached, the Court went on to state that "[e]ven if there were such a duty here, it would not transform defendants' distant inaction into knowing and substantial assistance that could establish aiding and abetting the [terrorist] attack." 598 U.S. at 501. The BSA and OFAC regimes do not provide duties in tort. *Marlin v. Moody Nat. Bank, N.A.*, No. H-04-cv-4443,

2006 WL 2382325, at *7 (S.D. Tex. Aug. 16, 2006), *aff'd*, 248 F. App'x 534 (5th Cir. 2007) (finding that obligations under the BSA are "to the government rather than some remote victim"); *Levin v. Bank of New York Mellon*, No. 09-cv-5900, 2013 WL 5312502, at *17 (S.D.N.Y. Sept. 23, 2013) (finding that OFAC regulations do not create private rights or remedies or otherwise support a common law duty of care). And they operate in the very opposite fashion to aiding and abetting by focusing on banned groups or individuals, not the "wrongful act" itself. *See, e.g.*, 31 C.F.R. § 594.201(a) (OFAC regulation blocking "property and interests" of listed persons) 31 C.F.R. § 1020.220(a)(2) (BSA regulation requiring procedures for verifying customer identity). As *Twitter* made clear, ATA liability is predicated on "conscious and culpable assistance" *of a specific act of terror*. 598 U.S. at 492. And even before *Twitter*, courts routinely held that alleged "financial wrongdoing and serious violations of U.S. sanctions" with terrorist-affiliated banks did not morph into the intent required to aid and abet terrorist attacks. *See, e.g.*, *Bernhardt v. Islamic Republic of Iran*, 47 F.4th 856, 872 (D.C. Cir. 2022), *cert. denied*, 144 S. Ct. 280 (2023).

### ii.    There is No Requisite Intent.

The FAC also fails to plausibly allege that Defendants aligned themselves with Hamas' and PIJ's terrorist activities such that they were "joined in mind and hand in their illicit enterprise" to conduct the October Attack. *Smith & Wesson*, 2025 WL 1583281, at *5 (cleaned up). Plaintiffs do not plead any Defendant's "intent of facilitating" the October Attack or facts giving rise to an inference that such intent existed. *Twitter*, 598 U.S. at 490; *see also id.* at 504 (faulting the Ninth Circuit for failing to "give[] much greater weight to defendants' . . . undisputed lack of intent to support ISIS"). The FAC does not allege that Defendants gave any terrorist-linked users "special treatment or words of encouragement," "treated [them] any differently from anyone else," or operated in anything more than a "passive, and largely indifferent" posture. *Id.* at 498, 500; *compare with King*, 2022 WL 4537849, at *1, *3, *11 (finding JASTA claim was pleaded where

26

plaintiffs alleged that defendants gave terrorists affirmative, special treatment, including placing them on a "whitelist" or "good guy list," pre-clearing them for reduced scrutiny, and engaging in tactics such as "wire-stripping" to further shield their illicit account holders).  And Plaintiffs concede that Defendants were motivated by purely economic goals and "have failed to allege anything but neutral transactions." *Averbach v. Cairo Amman Bank*, No. 19-cv-0004, 2020 WL 486860, at *15 (S.D.N.Y. Jan 21, 2020), *aff'd*, 2020 WL 1130733 (S.D.N.Y. Mar. 9, 2020). "This is insufficient to state a claim under JASTA." *Id*; *see also Weiss v. Nat'l Westminster Bank PLC*, 381 F. Supp. 3d 223, 239 (E.D.N.Y. 2019) (finding "that Defendant knowingly provided banking services to a terrorist organization, without more, is insufficient to satisfy JASTA's scienter requirement").

Plaintiffs' half-hearted effort to save their claim by peppering the FAC with vague allegations about "foreseeability" fails.  While the *Twitter* Court noted that "in appropriate circumstances" an aider and abettor could be liable for certain torts that were "a foreseeable risk" of the intended tort, it cautioned against this approach as overly expansive and blurring aiding-and-abetting liability with conspiracy liability.  598 U.S. at 496 (citing *Halberstam v. Welch*, 705 F.2d 472 (D.C. Cir. 1983)).  In any case, the FAC pleads no underlying "intended tort."  And the "appropriate circumstances" referenced in *Twitter* arise only if the defendant assumed a "systemic" role in the primary actor's illicit enterprise and there is a "close nexus" between the alleged assistance and the attack.  Such circumstances may have been present in *Halberstam*, where the defendant provided "pervasive, systemic, and culpable assistance" to the primary actor (defendant's live-in partner) and had a "long-term intention to participate in [his] ongoing illicit enterprise" and an "intent and desire to make the venture succeed."  705 F.2d at 488.  But those circumstances are not pleaded (nor could they be pleaded) in the FAC.

27

###### iii.    The FAC Fails to Plead the *Halberstam* Factors.

In *Twitter*, the Court stated that factors for evaluating knowing, substantial assistance identified in *Halberstam* may "help determine" the question, but cautioned that they "should not be accepted as immutable components," "taken as inflexible codes," or divorced from the "common conceptual core" of aiding-and-abetting doctrine. *Twitter*, 598 U.S. at 486-87, 497, 504. The *Smith & Wesson* Court found it unnecessary to utilize the *Halberstam* factors. Regardless, even if the *Halberstam* factors are considered useful in this case, they further support dismissal of Plaintiffs' JASTA aiding-and-abetting claim. The *Halberstam* test looks at whether the defendant (1) was "generally aware of his role as part of an overall illegal or tortious activity at the time that he provide[d] the assistance," and (2) knowingly and substantially assisted the principal violation. *Halberstam*, 705 F.2d at 477. Relevant factors for knowing and substantial assistance include: (1) the nature of the act assisted, (2) the amount of assistance, (3) whether the defendant was present at the time of the principal tort, (4) the defendant's relation to the tortious actor, (5) the defendant's state of mind, and (6) the duration of the assistance given. *Id.* at 488.

As detailed more fully in BHL's motion to dismiss, which Mr. Zhao joins, the FAC does not plead any of this. (*See* BHL's Mot., § V.B.) Mr. Zhao played no role in the October Attack of which he could be generally aware. Nor does the FAC plead general awareness as to the Entity Defendants. *See Honickman v. Blom Bank Sal*, 6 F.4th 487, 491-92, 501 (2d Cir. 2021) (finding no general awareness despite defendant bank having clients who were specially designated global terrorists); *Linde*, 882 F.3d at 330 ("awareness that one is playing a role in [terrorist] activities" requires more than "knowledge of the organization's connection to terrorism"). As set forth above, *see supra* § III.C.3.b.i-ii, the FAC does not plead "knowing and substantial" assistance under *Twitter*, and *Halberstam*'s five-factor analysis cannot make up for that failing. Mr. Zhao was the CEO of BHL and did not offer any assistance to Hamas or PIJ. (*Halberstam* factors one and two).

28

He was not present during the October Attack (factor three).  He had no relation to Hamas or PIJ (factor four).  He was not "one in spirit" with Hamas and PIJ (factor five).  And any alleged "assistance" in the way of access to the Platform by Hamas and PIJ ended over a year before the October Attack (factor six).  *See* DOJ BHL Agreement at ¶¶ 8.f-g. (stating that, under Mr. Zhao's leadership, BHL had remediated its AML and sanctions compliance programs by May 2022).

For the reasons set forth above, Claim I against Mr. Zhao must be dismissed.

### 4.    Plaintiffs Fail to State Claim for ATA/JASTA Conspiracy Against Mr. Zhao (Claim II).

The Court must also dismiss Plaintiffs' JASTA conspiracy claim, which requires that the defendant entered into an agreement with specific terrorists **with the object of committing international terrorism**.  *See, e.g.*, *Bernhardt*, 2020 WL 6743066, at *7 (emphasis added) ("[A] plaintiff must allege a factual basis 'that would lead one to infer that Defendant[s] shared a[] common goal of committing an act of international terrorism.'" (quoting *Kaplan*, 405 F. Supp. 3d at 534)); *Ofisi v. BNP Paribas, S.A.*, 278 F. Supp. 3d 84, 110 (D.D.C. 2017) (dismissing conspiracy claim where "[t]he only conspiracy alleged in the complaint is a conspiracy . . . to defeat U.S. sanctions"), *vacated on other grounds*, 285 F. Supp. 3d 240 (D.D.C. 2018); *Cain v. Twitter, Inc.*, No. 17-cv-2506, 2018 WL 4657275, at *3 (N.D. Cal. Sept. 24, 2018) (dismissing JASTA conspiracy claim because "[n]othing in the [complaint] establishes an agreement, express or otherwise, between Twitter and ISIS to commit terrorist attacks").

The D.C. Circuit's *Bernhardt* decision is instructive.  There, victims of an al-Qaeda attack alleged that HSBC "implemented procedures to help sanctioned entities access and benefit from U.S. financial services."  47 F.4th 856 at 862.  The court found these allegations insufficient to plead JASTA conspiracy because plaintiffs failed to establish the requisite agreement that HSBC "was pursuing the same object as al-Qaeda."  *Id.* at 873.  Rather, HSBC's sanctions-evading

objective and al-Qaeda's terroristic objective were "wholly orthogonal to one another." *Id.  See also Newman*, 2024 WL 5063288, at *10 (dismissing ATA conspiracy claim "because Plaintiffs fail to plausibly allege any agreement to commit an act of international terrorism").

Plaintiffs offer absolutely no factual allegations to support their conclusory allegation that Mr. Zhao conspired with Hamas and PIJ to facilitate the October Attack.  *See Lyons v. City of Dothan, Alabama*, No. 1:20-cv-00035, 2020 WL 7134926, at *1 (M.D. Ala. Oct. 20, 2020) ("'Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements' are insufficient to state a claim for relief." (quoting *Iqbal*, 556 U.S. at 678)), *report and recommendation adopted*, 2020 WL 7129030 (Marks, J.).  There are no allegations giving rise to a plausible inference that Mr. Zhao, a Canadian businessman, who Plaintiffs allege was motivated purely by economic gain, would want to terrorize the October 7 victims or anyone else.  There is no allegation suggesting that any Defendant cared how its customers obtained or spent the funds that flowed through the Platform.  *See Kemper*, 911 F.3d at 395 ("A person who is indifferent to the goals of an ongoing conspiracy does not become a party to this conspiracy[.]" (quoting *United States v. Collins*, 966 F.2d 1214, 1219-20 (7th Cir. 1992)).  And there are no facts supporting a plausible inference that Zhao—or any Defendant—had any agreement at all with Hamas and PIJ—much less one to conduct an atrocity like the October Attack.

For these reasons, Claim II against Mr. Zhao must be dismissed.

### D.    Plaintiffs Fail to State an ATS Claim Against Mr. Zhao (Claim V).

Plaintiffs' ATS claim must also be dismissed.  "To state a claim for relief under the ATS, a plaintiff must (1) be an alien (2) suing for a tort (3) committed in violation of the law of nations." *Mamani v. Berzain*, 654 F.3d 1148, 1152-53 (11th Cir. 2011).

**First**, fifteen Plaintiffs lack standing to bring suit under the ATS.  An "alien" is any person that is not a U.S. citizen or national.  8 U.S.C. § 1101(a)(3).  Plaintiffs Noach Newman, Yoni

30

Diller, Adin Gess, Natalie Sanandaji, Maya Parizer, Iris Weinstein Haggai,[7] John Doe, Richard Roe, and Jane Moe concede they are not aliens within the meaning of the statute. (FAC ¶¶ 44 - 48, 50, 56, 58, 62.)  Plaintiffs Ora Cooper, Rotem Cooper, and Schachar Levy do not plead that they are "aliens." (*Id.*  ¶¶ 51, 67.)  Likewise, the decedents of the estates of Yonatan Samerano, Ran Gvili, and Uriel Baruch are not pled as aliens.  (*Id.* ¶¶ 63, 64, 66.)

**Second,** Plaintiffs' ATS claim must be dismissed because the presumption against extraterritoriality applies, which "assumes U.S. law does not apply outside the United States." *Doe v. Drummond Co., Inc.*, 782 F.3d 576, 582 (11th Cir. 2015); *see also Kiobel v. Royal Dutch Petroleum Co.*, 569 U.S. 108, 124 (2013).  The ATS does not authorize U.S. courts to serve as a universal forum to adjudicate harms suffered abroad, and an ATS action seeking relief for violations "occurring outside the United States" will ordinarily be barred.  *Kiobel*, 569 U.S. at 124. Plaintiffs have asserted ATS claims against Defendants (two of which are foreign) for attacks that took place in Israel by foreign actors that were not specifically targeted at Americans.  These claims must be dismissed because they do not "touch and concern" the United States "with sufficient force to displace the presumption against extraterritorial application."  *Id.* at 124-25; *compare with Mwani v. Laden*, 947 F. Supp. 2d 1, 5 (D.D.C. 2013) (finding the presumption was overcome where a bombing in Kenya was plotted in the United States and was directed at a United States Embassy and its employees).

**Third**, Plaintiffs' alleged grounds for their ATS claim—violations of certain federal statutes, treaties, and customary international law—cannot serve as ATS predicates.  First, only the latter two are even contemplated under the ATS.  *See* 28 U.S.C. § 1350 (limiting to torts "in

---

[7] Plaintiffs allege in separate paragraphs that Iris Weinstein Haggai is an Israeli citizen and then separately that she is a U.S. citizen. (FAC ¶¶ 50, 52.)  If Ms. Weinstein Haggai is an Israeli citizen only, she does not have standing under the ATA.  If she is a dual citizen, she would not have standing under the ATS.

violation of the law of nations or a treaty of the United States"). Second, none of the treaties cited by Plaintiffs provide an adequate predicate because only "self-executing" treaties can "create obligations enforceable in the federal courts" and "establish the relevant and applicable rule of international law" for ATS purposes. *Sosa v. Alvarez-Machain*, 542 U.S. 692, 735 (2004). "A treaty that provides that party states will take measures through their own laws to enforce its proscriptions evidences its intent not to be self-executing." *Tel-Oren v. Libyan Arab Republic*, 726 F.2d 774, 809 (D.C. Cir. 1984). The Rome Statute (FAC ¶¶ 354-55) has not been signed or ratified by the United States. The other three treaties invoked, the International Convention for the Suppression of the Financing of Terrorism, the 2000 United Convention against Transnational Organized Crime ("Palermo"), and the Fourth Geneva Convention's Article 34 (*id.* ¶¶ 25-26, 352, 355), all oblige the United States to create implementing legislation and do not provide a right for private plaintiffs to sue. *See Jesner v. Arab Bank, PLC*, 584 U.S. 241, 261-62 (2018) (plurality op.) (holding that Palermo does not authorize courts, without congressional authorization, to allow ATS claims); *Tel-Oren*, 726 F.2d at 809 (holding that the Geneva Convention "expressly call[s] for implementing legislation"); *Almog v. Arab Bank, PLC*, 471 F. Supp. 2d 257, 277 (E.D.N.Y. 2007) (noting the United States implemented the Financing Convention with 18 U.S.C.§ 2339C, a criminal statute that does not grant a private right of action).

**Fourth,** Plaintiffs' reliance on customary international law also fails. The ATS allows for only "a very limited category defined by the law of nations and recognized at common law" as understood at the time of the ATS' enactment in 1789. *Sosa*, 542 U.S. at 712. New causes of action can only be created (1) for violations of "specific, universal, and obligatory" international norms and (2) where caution does not require the political branches to grant specific authority before a new form of liability may be imposed. *Id*. at 732-33. No federal court has found that

general claims for terrorism constitute a recognized violation of the law of nations.  *See, e.g.*, *Saperstein v. Palestinian Auth.*, No. 04-cv-20225, 2006 WL 3804718, at *7-8 (S.D. Fla. Dec. 22, 2006) (holding that "acts of terrorism as defined in federal law" and "related tortious terrorist behavior" have not reached the status of a violation of the law of nations); *In re Terrorist Attacks*, 714 F.3d at 125 (similar);  *Barboza v. Drummond Co*., No. 06-61527-CIV, 2007 WL 8025825, at *9-12 (S.D. Fla. July 17, 2007) (similar).  Plaintiffs' references to the Rome Statute and Article 34 of the Fourth Geneva Convention (FAC ¶¶ 354-55) do not rectify this failure, because any referenced "international norm" against terrorism must be shown as "universally accepted" and "well-established."  *In re Chiquita Brands Int'l, Inc. Alien Tort Statute & S'holder Derivative Litig*., 792 F. Supp. 2d 1301, 1318 (S.D. Fla. 2011), *rev'd sub nom. Cardona v. Chiquita Brands Int'l, Inc.*, 760 F.3d 1185 (11th Cir. 2014).  Similarly, financing terrorism is not a recognized customary international law violation.  *See id.* at 1321.

    With no principal violation, the claim fails.  But no secondary liability exists either.  As explained above, *see supra* § III.C.3., the FAC does not plead a basis for aiding-and-abetting liability.  And even if the Court construed the ATS standard differently than the ATA, it should be stricter, because, while JASTA expressly and statutorily created secondary liability for the ATA, Congress has never done so for the ATS.  *See Jesner*, 584 U.S. at 261-62 (plurality op.).

    For one or all of these reasons, Plaintiffs' ATS claim against Mr. Zhao must be dismissed.

### E.    Plaintiffs Fail to State a Claim for Negligence and Wantonness Under Alabama Law (Claim VI).

    Plaintiffs' final claim for negligence/wantonness also fails.

    For one, negligence and wantonness both require proximate cause.  *Lemley v. Wilson*, 178 So. 3d 834, 842 (Ala. 2015) (quoting *Martin v. Arnold*, 643 So. 2d 564, 567 (Ala. 1994)).  Proximate causation requires "an act or omission that in a natural and continuous sequence,

unbroken by any new independent causes, produces the injury **and without which the injury would not have occurred**." *Colonial BancGroup Inc. v. PricewaterhouseCoopers LLP*, No. 11-746, 2017 WL 8890271, at *19 (M.D. Ala. Dec. 28, 2017) (emphasis added) (quoting *Lemley*, 178 So. 3d at 842 and *Martin*, 643 So. 2d at 567); *see also Looney v. Moore*, No. 13-cv-00733, 2015 WL 4773747, at *4 (N.D. Ala. Aug. 13, 2015). But Plaintiffs cannot plausibly allege that the October Attack would not have occurred absent something Mr. Zhao (or any Defendant) did or did not do. *See supra* § III.C.2.c. (addressing failure of proximate cause under the ATA).

In addition, the FAC fails to plead that Defendants owed and breached a duty to Plaintiffs. *See Gardner v. MGC Mortg., Inc.*, No. 2:12-CV-131, 2013 WL 800741, at *4 (M.D. Ala. Mar. 4, 2013) ("Breach of some legal duty is a fundamental element of claims for both negligence and wantonness."). An individual does not "owe a 'duty to protect another from the criminal acts of a third person'" absent a "special relationship" or "special circumstances." *Chen Jun v. Regions Bank*, No. 1:19-CV-01524, 2020 WL 5603527, at *7 (N.D. Ala. Sept. 18, 2020) (quoting *Smith v. Amsouth Bank, Inc.*, 892 So. 2d 905, 909 (Ala. 2004)). "Such circumstances are illustrated where, for instance, a business invitee is 'uniquely dependent upon' the owner of premises" or "where a hotel ignores a guest's desperate plea not to disclose the guest's presence and discloses that guest's presence and location, and that disclosure leads to the murder of the guest." *Smith*, 892 So. 2d at 910 (quoting *Saccuzzo v. Krystal Co.*, 646 So. 2d 595, 597 (Ala. 1994) and citing *Thetford v. City of Clanton*, 605 So. 2d 835 (Ala. 1992)). These circumstances involve a "reason to know of a probability of conduct by third persons that would endanger *the plaintiff*," specifically. *Id.* (emphasis added). Mr. Zhao and Plaintiffs were complete strangers.

Defendants' alleged failures to follow certain statutory requirements do not cure this defect. *See Chen Jun*, 2020 WL 5603527, at *6-11 (dismissing a claim for negligence and wantonness

premised on federal EB-5 program and BSA violations because defendant did not owe plaintiffs a duty); *see also Smith*, 892 So. 2d at 909 n.2 ("Every court that has examined the issue has answered that banks owe no duty of care to noncustomers."); *Lee v. Foris DAX, Inc.*, No. 24-CV-06194, 2025 WL 1084794, at *10 (N.D. Cal. Apr. 10, 2025) (affirming this principle for cryptocurrency exchanges).  The obligation under the BSA "is to the government rather than some remote victim." *Marlin*, 2006 WL 2382325, at *7; *see also supra* § III.C.3.b.i.    Federal courts "have overwhelmingly held that the KYC regulations under the [BSA] do not impose a duty upon banks to monitor accounts for the benefit of noncustomers." *Chen Jun*, 2020 WL 5603527, at *9; *see also Belle Meade Title & Escrow Corp. v. Fifth Third Bank*, 282 F. Supp. 3d 1033, 1039-40 (M.D. Tenn. 2017) (collecting cases).  Likewise, a BSA violation cannot impose a duty to ensure that "account holders did not misuse [] funds." *Chen Jun*, 2020 WL 5603527, at *8; *see also Marlin*, 2006 WL 2382325, at *7 (finding that the BSA "does not create a private right of action and, therefore, does not establish a standard of care").

Separately, Plaintiffs do not plead that Mr. Zhao—or any Defendant—had the requisite *mens rea* for a separate wantonness claim.  Plaintiffs allege only that Defendants "knew or should have known that providing material support to an FTO"  (which they did **not**  provide, *see supra* § III.C.2.a.-b.) would result in some harm to Plaintiffs.  (FAC ¶ 362.)  "Knew or should have known" is not the standard for wantonness, which involves "the conscious doing of some act, or the omission of some duty, *under knowledge* of existing conditions and while conscious that from the doing of such act or omission of such duty injury will likely or probably result." *Ridgeway v. CSX Transp., Inc*., 723 So. 2d 600, 608 (Ala. 1998) (emphasis added).

Lastly, the 17 Plaintiffs[8] who allege emotional injuries and were not present during the October Attack cannot recover under a negligence/wantonness claim. "In negligence actions, Alabama follows the 'zone-of-danger' test, which limits recovery of mental anguish damages to those plaintiffs who sustain a physical injury as a result of a defendant's negligent conduct, or who are placed in immediate risk of physical harm by that conduct." *Ex parte Grand Manor, Inc.*, 778 So. 2d 173, 179 (Ala. 2000) (citation and quotations omitted). The same test has been applied to wantonness claims. *AALAR Ltd., Inc. v. Francis*, 716 So. 2d 1141, 1147 (Ala. 1998) (holding that one plaintiff bringing negligence and wantonness claim could not recover mental anguish damages because he was never at risk of physical harm).

## CONCLUSION

Mr. Zhao unequivocally condemns all forms of terrorism, and, in particular, the horrific October Attack. Mr. Zhao also categorically denies any involvement in or support of that atrocity, and for the reasons set forth above, he respectfully requests that this Court dismiss Plaintiffs' claims against him.

---

[8] Noach Newman (FAC ¶ 44); Adin Gess (*id.* ¶ 46); Iris Weinstein Haggai (*id.* ¶¶ 50, 52); Ahl Haggai (*id.* ¶¶ 54, 55); Rahm Haggai (*id.* ¶¶ 54, 55); Zohar Haggai (*id.* ¶¶ 54, 55); Ora Cooper (*id.* ¶ 51); Rotem Cooper (*id.* ¶ 51); Ayelet Samerano (*id.* ¶ 63); Hagar Almog (*id.* ¶ 49); John Doe (*id.* ¶¶ 56, 57); Schachar Levy (*id.* ¶ 67); Richard Roe (*id.* ¶ 58); Talik Gvili (*id.* ¶¶ 64, 65); Roee Baruch (*id.* ¶ 66); James Poe (*id.* ¶ 68); Jane Moe (*id.* ¶ 62).

36

Dated: June 20, 2025

Respectfully submitted,

*/s/ Charles A. Stewart III*

**BRADLEY ARANT BOULT CUMMINGS LLP**

Charles A. Stewart III (ASB-4955-A56C)
445 Dexter Avenue, Suite 9075
Montgomery, AL 36104
(334) 956-7700
cstewart@bradley.com

**BAKER & HOSTETLER LLP**

Teresa Goody Guillén*
Washington Square, Suite 1100
1050 Connecticut Ave., N.W.
Washington, D.C. 20036
(202) 861-1500
tgoodyguillen@bakerlaw.com

Joanna F. Wasick*
Marco Molina*
45 Rockefeller Plaza
New York, NY 10111
(212) 589-4200
jwasick@bakerlaw.com
mmolina@bakerlaw.com

*Counsel for Defendant Changpeng Zhao*

*Admitted pro hac vice

37

## CERTIFICATE OF SERVICE

I hereby certify that on June 20, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

*Counsel for Plaintiffs*
Mark Goldfeder, Esq.
NATIONAL JEWISH ADVOCACY CENTER, INC.
1718 General George Patton Drive
Brentwood, TN 37027
mark@jewishadvocacycenter.org

Ben Schlager, Esq.
GOLDFEDER AND TERRY, LLC
666 Harless Place
West Hampstead, NY 11552
ben@goldfederterry.com

David Schoen, Esq.
LAW OFFICE OF DAVID I. SCHOEN
2800 Zelda Road, Suite 100-6
Montgomery, AL 36106
Schoenlawfirm@gmail.com

*Counsel for Defendant BAM Trading Services, Inc.*
Kenneth D. Sansom, Esq.
Michael T. Sansbury, Esq.
SPOTSWOOD, SANSOM & SANSBURY LLC
1819 5th Avenue North, Suite 1050
Birmingham, AL 35203
ksansom@spotswoodllc.com
msansbury@spotswoodllc.com

Alexandra E. Chopin, Esq.
WINSTON & STRAWN, LLP
1901 L. Street, N.W.
Washington, DC 20036-3506
achopin@winston.com

Athanasia "Thania" Charmani, Esq.
WINSTON & STRAWN, LLP
200 Park Avenue
New York, NY 10166-4193
acharmani@winston.com

*Counsel for Defendant BAM Trading Services, Inc. (cont.)*
Daniel T. Stabile, Esq.
Gabriela "Gabie" Plasencia, Esq.
WINSTON & STRAWN, LLP
200 S. Biscayne Boulevard, Suite 2400
Miami, FL 33131-5340
dstabile@winston.com
gplasencia@winston.com

*Counsel for Defendant Binance Holdings Limited*
Harlan I. Prater IV, Esq.
Mary Parrish McCracken, Esq.
LIGHTFOOT FRANKLIN & WHITE LLC
400 20th Street North
Birmingham, AL 35203
hprater@lightfootlaw.com
mmcracken@lightfootlaw.com

Samson A. Enzer, Esq.
Anirudh Bansal, Esq.
Sesi V. Garimella, Esq.
Lauren A. Riddell, Esq.
Jason M. Ecker, Esq.
CAHILL GORDON & REINDEL LLP
32 Old Slip
New York, NY 10005
SEnzer@cahill.com
ABansal@cahill.com
SGarimella@cahill.com
LRiddell@cahill.com
JEcker@cahill.com

*/s/ Charles A. Stewart III*
Charles A. Stewart III (ASB-4955-A56C)