## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

NOACH NEWMAN, *et al.*,

                        Plaintiffs,

- v. -

BAM TRADING SERVICES INC. d/b/a
BINANCE.US, a Delaware corporation, and
BINANCE HOLDINGS LTD. d/b/a
BINANCE, a foreign company, and
CHANGPENG ZHAO,

                        Defendants.

Civil Action Case No.
24 Civ. 00134

**ORAL ARGUMENT
REQUESTED**

## BINANCE HOLDINGS LIMITED'S
## MEMORANDUM OF LAW IN SUPPORT OF ITS
## <u>MOTION TO DISMISS THE AMENDED COMPLAINT</u>

# Table of Contents

PRELIMINARY STATEMENT ................................................................................1

THE AMENDED COMPLAINT'S ALLEGATIONS ............................................4

ARGUMENT ...........................................................................................................8

I. SEVERAL PLAINTIFFS LACK STANDING UNDER THE ATA/JASTA
OR THE ATS..........................................................................................................8

II. THE AMENDED COMPLAINT FAILS TO COMPLY WITH FEDERAL
RULES OF CIVIL PROCEDURE 8 AND 10. ....................................................9

III. THE AMENDED COMPLAINT FAILS TO ADEQUATELY PLEAD
PERSONAL JURISDICTION OVER BHL...........................................................9

IV. THE AMENDED COMPLAINT FAILS TO STATE A CLAIM FOR
PRIMARY LIABILITY UNDER THE ATA (COUNTS 3 AND 4)................18

V. THE AMENDED COMPLAINT FAILS TO STATE AN AIDING-AND-
ABETTING CLAIM UNDER THE ATA AND JASTA (COUNT 1). .............23

    A. The Amended Complaint Does Not Allege That Defendants Knowingly
    and Substantially Assisted the Attacks.........................................................24

    B. The *Halberstam* Factors Confirm That the Amended Complaint Does
    Not State an Aiding-and-Abetting Claim. .....................................................33

    C. The Amended Complaint Does Not Allege That BHL Was Generally
    Aware of Any Role in the Relevant Terrorist Activity. ................................34

VI. THE AMENDED COMPLAINT FAILS TO STATE A CONSPIRACY
CLAIM UNDER THE ATA (COUNT 2). ........................................................37

    A. Plaintiffs Do Not Allege an Agreement Between BHL and FTOs to
    Commit Acts of International Terrorism.......................................................38

    B. Plaintiffs Fail to Allege an Overt Act in Furtherance of an Agreement to
    Commit Terrorism. .........................................................................................39

VII. PLAINTIFFS' CLAIM UNDER THE ATS FAILS FOR LACK OF
JURISDICTION (COUNT 5)..............................................................................40

VIII.  THE AMENDED COMPLAINT FAILS TO STATE A CLAIM FOR
NEGLIGENCE/WANTONNESS (COUNT 6).................................................41

CONCLUSION.......................................................................................................45

# TABLE OF AUTHORITIES

## Cases

**Page(s)**

*Abbott* v. *Mega Trucking, LLC*,
2023 WL 2390535 (M.D. Ala. Mar. 7, 2023) .....................................................44

*Alvarez Galvez* v. *Fanjul Corp.*,
533 F. Supp. 3d 1268 (S.D. Fla. 2021) ...............................................................40

*Asahi Metal Industry Co.* v. *Superior Court of Cal., Solano Cty.*,
480 U.S. 102 (1987) ...........................................................................................17

*Averbach* v. *Cairo Amman Bank,*
2022 WL 2530797 (S.D.N.Y. Apr. 11, 2022) .....................................................21

*Bernhardt* v. *Islamic Republic of Iran*,
47 F.4th 856 (D.C. Cir. 2022) ......................................................... 35, 36, 38, 39

*BLOM Bank SAL* v. *Honickman*,
605 U.S. ___, 2025 WL 1583305 (June 5, 2025)...............................................37

*Borden* v. *CSX Transp., Inc.*,
843 F. Supp. 1410 (M.D. Ala. 1993)...................................................................44

*Burnett* v. *Al Baraka Investment & Development Corp.*,
274 F. Supp. 2d 86 (D.D.C. 2003)......................................................................43

*Cable/Home Commc'n Corp.* v. *Network Prods., Inc.*,
902 F.2d 829 (11th Cir. 1990) ............................................................................15

*Chen Jun* v. *Regions Bank*,
2020 WL 5603527 (N.D. Ala. Sept. 18, 2020)........................................... 42, 43

*Coinbase, Inc.* v. *SEC*,
126 F.4th 175 (3d Cir. 2025) ..............................................................................30

*Continental Motors, Inc.* v. *Jewell Aircraft, Inc.*,
882 F. Supp. 2d 1296 (S.D. Ala. 2012) ..............................................................12

*Cook's Pest Control, Inc.* v. *Rebar*,
28 So. 3d 716 (Ala. 2009)............................................................................. 44, 45

*Daimler AG* v. *Bauman*,
571 U.S. 117 (2014)...................................................................................... 13, 14

*Davis* v. *Wal-Mart Stores, Inc.*,
64 F. Supp. 2d 1176 (M.D. Ala. 1999)................................................................44

*Day* v. *Taylor*,
400 F.3d 1272 (11th Cir. 2005) .........................................................................6, 7

*Doe* v. *Drummond Co.*,
782 F.3d 576 (11th Cir. 2015) ..............................................................................40

*Doe* v. *Unocal Corp.*,
27 F. Supp. 2d 1174 (C.D. Cal. 1998)................................................................16

*Durham* v. *LG Chem, Ltd.*,
2022 WL 274498 (11th Cir. Jan. 31, 2022).......................................................16

*Ellis* v. *Advanced Tech., Servs., Inc.*,
2010 WL 3526169 (M.D. Ala. Sept. 3, 2010).....................................................44

*Ex parte Essary*,
992 So. 2d 5 (Ala. 2007)......................................................................................41

*Ex Parte Fidelity Bank*,
893 So. 2d 1116 (Ala. 2004)................................................................................13

*Fields* v. *Twitter, Inc.*,
881 F.3d 739 (9th Cir. 2018) ...................................................................... 22, 23

*First Health, Inc.* v. *Blanton*,
585 So. 2d 1331 (Ala. 1991)................................................................................11

*Freeman* v. *HSBC Holdings PLC*,
57 F.4th 66 (2d Cir. 2023) ...................................................................... 38, 39, 40

*Fuld* v. *Palestine Liberation Org.*,
606 U.S. ___, 2025 WL 1716140 (June 20, 2025) ...........................................17

*Gadasalli* v. *Bulasa*,
2023 WL 3586424 (E.D. Tex. May 22, 2023) ...................................................10

*Halberstam* v. *Welch*,
705 F.2d 472 (D.C. Cir. 1983)...................................................................... 33, 34

*In re Chiquita Brands International, Inc.*,
284 F. Supp. 3d 1284 (S.D. Fla. 2018)...............................................................39

*In re Terrorist Attacks on Sept. 11, 2001*,
349 F. Supp. 2d 765 (S.D.N.Y. 2005) .................................................................43

*In re Terrorist Attacks on September 11*,
740 F. Supp. 2d 494 (S.D.N.Y. 2010) .................................................................43

*In re Terrorist Attacks on Sept. 11, 2001*,
714 F.3d 118 (2d Cir. 2013) ......................................................................... 22, 23

*Ismail* v. *Ascensionpoint Recovery Servs., LLC*,
2019 WL 5894311 (N.D. Ala. Nov. 12, 2019)...................................................45

*Jesner* v. *Arab Bank, PLC*,
584 U.S. 241 (2018)........................................................................................4, 40

*Kaplan* v. *Lebanese Canadian Bank, SAL*,
999 F.3d 842 (2d Cir. 2021) ...............................................................................37

*Keenan* v. *Matchmaker Int'l, Inc. of Mobile*,
1999 WL 33590522 (S.D. Ala. Jan. 20, 1999)...................................................10

*Kemper* v. *Deutsche Bank AG*,
911 F.3d 383 (7th Cir. 2018) ........................................................................ 20, 38

*King* v. *Habib Bank Ltd.*,
2022 WL 4537849 (S.D.N.Y. Sept. 28, 2022) ...................................................18

*Leithead* v. *Banyan Corp.*,
926 So. 2d 1025 (Ala. 2005)...............................................................................13

*Linde* v. *Arab Bank, PLC*,
882 F.3d 314 (2d Cir. 2018) .................................................................. 21, 22, 35

*Louis Vuitton Malletier, S.A.* v. *Mosseri*,
736 F.3d 1339 (11th Cir. 2013) .................................................................... 14, 15

*Mack* v. *Cooper Surgical, Inc.*,
2023 WL 2653365 (M.D. Ala. Mar. 27, 2023) ................................. 9, 10, 11, 12

*Martin* v. *Arnold*,
643 So. 2d 564 (Ala. 1994)........................................................................... 42, 44

*Maximum Efficiency Squared, LLC* v. *Samsara Works Corp.*,
2015 WL 5053758 (M.D. Ala. Aug. 26, 2015) ...................................................13

*Molex Co., LLC* v. *Andress*,
887 F. Supp. 2d 1189 (N.D. Ala. 2012)..............................................................15

*Moore* v. *Lowe*,
591 F. Supp. 3d 1087 (N.D. Ala. 2022)..............................................................14

*Newman* v. *Associated Press*,
758 F. Supp. 3d 1357 (S.D. Fla. 2024)....................................................... passim

*O'Sullivan* v. *Deutsche Bank AG*,
2019 WL 1409446 (S.D.N.Y. Mar. 28, 2019)................................. 18, 19, 22, 30

*Raanan* v. *Binance Holdings Ltd.*,
2025 WL 605594 (S.D.N.Y. Feb. 25, 2025) .............................................. passim

*Republic of Panama* v. *BCCI Holdings (Luxembourg) S.A.*,
119 F.3d 935 (11th Cir. 1997) ..............................................................................9

*Reynolds* v. *Binance Holdings Ltd.*,
481 F. Supp. 3d 997 (N.D. Cal. 2020)................................................................11

*Rothstein* v. *UBS AG*,
708 F.3d 82 (2d Cir. 2013) ..................................................................................23

*Siegel* v. *HSBC North America Holdings, Inc.*,
933 F.3d 217 (2d Cir. 2019) ...............................................................................30

*Smith* v. *AmSouth Bank, Inc.*,
892 So. 2d 905 (Ala. 2004)..................................................................................42

*Smith & Wesson Brands, Inc.* v. *Estados Unidos Mexicanos*,
605 U.S. ___, 2025 WL 1583281 (June 5, 2025)........................................ passim

*Stutts* v. *De Dietrich Grp.*,
    2006 WL 1867060 (E.D.N.Y. June 30, 2006)......................................................43

*Taamneh* v. *Twitter, Inc.*,
    No. 3:17 Civ. 04107 (EMC) (N.D. Cal. May 16, 2018)............................... 36, 37

*Thornton* v. *Bayerische Motoren Werke AG*,
    439 F. Supp. 3d 1303 (N.D. Ala. 2020)...............................................................12

*Twitter, Inc.* v. *Taamneh*,
    598 U.S. 471 (2023)..................................................................................... passim

*Weiland* v. *Palm Beach Cnty. Sheriff's Off.*,
    792 F.3d 1313 (11th Cir. 2015) ................................................................... 41, 42

*Weiss* v. *National Westminster Bank, PLC*,
    993 F.3d 144 (2d Cir. 2021) ...............................................................................20

*Zapata* v. *HSBC Holdings PLC*,
    414 F. Supp. 3d 342 (E.D.N.Y. 2019)..................................................................23

*Zobay* v. *MTN Group Ltd.*,
    695 F. Supp. 3d 301 (E.D.N.Y. 2023) .................................................... 15, 26, 38

## STATUTES

18 U.S.C. § 2331............................................................................................. 19, 21

18 U.S.C. § 2333............................................................................................. *passim*

18 U.S.C. § 2334(a) ..............................................................................................15

18 U.S.C. § 2339A........................................................................................ 5, 20, 21

18 U.S.C. § 2339B ........................................................................................ 5, 20, 21

28 U.S.C. § 1350.......................................................................................... 1, 5, 40

## RULES

Fed. R. Civ. P. 4(k)(1)(C) .......................................................................... 15, 16, 17

Fed. R. Civ. P. 8 ....................................................................................................2, 9

Fed. R. Civ. P. 10 ........................................................................................... 2, 9, 42

Fed. R. Civ. P. 44.1 ................................................................................................41

## PRELIMINARY STATEMENT[1]

This case concerns the abhorrent attacks of October 7, 2023 (the "Attacks"), which Binance Holdings Limited ("BHL") unequivocally condemns. The perpetrators of the Attacks should be brought to justice, but they are not before the Court. Instead, Plaintiffs are trying to hold BHL, the operator of a global, generally available digital asset trading exchange, liable for the Attacks. Plaintiffs assert claims under the Anti-Terrorism Act of 1990 ("ATA") (18 U.S.C. § 2333(a)), the Justice Against Sponsors of Terrorism Act ("JASTA") (18 U.S.C. § 2333(d)), the Alien Tort Statute ("ATS") (28 U.S.C. § 1350), and state law. As explained below, Plaintiffs' Amended Complaint is fatally flawed for several reasons and should be dismissed.

BHL moved, on April 14, 2025, to dismiss Plaintiffs' original complaint. BHL's brief described at length the complaint's fundamental flaws, including its failure to plausibly link BHL to any of the Plaintiffs' injuries, let alone allege that BHL acted with the requisite terroristic intent. (*See* ECF No. 77). Instead of responding to BHL's motion, Plaintiffs amended their complaint, nearly tripling its

---

[1] Unless otherwise noted, capitalized terms have the same definitions as in the Amended Complaint (ECF No. 84) ("AC"), emphasis is added, and internal citations and quotations are omitted.

length with the promise that their amendment would remedy at least some of the deficiencies identified in BHL's prior motion to dismiss.  It has not.

*First*, as explained more fully in Sections II.C.1 and II.D of the moving brief of Defendant Changpeng Zhao, in which BHL joins, several of the Plaintiffs added to the Amended Complaint lack standing to assert ATA, JASTA or ATS claims.

*Second*, as detailed in Section II.A of the moving brief of Defendant Binance.US ("BAM"), in which BHL also joins, the Amended Complaint should be dismissed under Federal Rules of Civil Procedure 8 and 10.  The Amended Complaint is even more disjointed and confusing than Plaintiffs' prior pleading, frequently repeats large blocks of allegations, liberally engages in impermissible group pleading, and lacks *any* allegations as to four plaintiffs despite naming them in the caption.

*Third*, the Amended Complaint fails to plead a plausible basis for personal jurisdiction over BHL.  Lacking any suit-related contacts between BHL and the forum, the Amended Complaint pivots to a theory of alter-ego jurisdiction:  that BHL should be subject to jurisdiction in Alabama based on the contacts of a separate corporation—BAM.  But veil-piercing is an extreme remedy, and Plaintiffs come nowhere close to clearing the high bar necessary to invoke it.

*Fourth*, Plaintiffs' ATA primary liability claims fail because Plaintiffs still have not plausibly alleged that BHL committed the requisite "act of international terrorism," nor that BHL proximately caused Plaintiffs' alleged injuries.

*Fifth*, the Amended Complaint fails to plead ATA/JASTA aiding-and-abetting liability against BHL, since, among its deficiencies, it does not plausibly allege that BHL actively, intentionally, and knowingly assisted terrorists in carrying out any of the Attacks. Rather, the Amended Complaint relies on conclusory allegations that terrorist organizations need money to carry out their violent acts, that they acquired some of the money from digital assets—including through Binance's generally-available exchange—and that BHL failed to implement adequate anti-money laundering controls to prevent this. These allegations are plainly insufficient under controlling Supreme Court precedent. *See Twitter, Inc.* v. *Taamneh*, 598 U.S. 471, 483-84 (2023); *see also Smith & Wesson Brands, Inc.* v. *Estados Unidos Mexicanos*, 605 U.S. ___, 2025 WL 1583281 (June 5, 2025).

*Sixth*, the Amended Complaint does not plead ATA/JASTA conspiracy liability, since it does not adequately allege an agreement between BHL and any terrorist group, nor an overt act in furtherance of such an agreement.

*Seventh*, Plaintiffs cannot bring an ATS claim against BHL since (as the Amended Complaint acknowledges) BHL is a foreign corporation, and the Supreme

Court has held that foreign corporations cannot be sued under the ATS.  *See Jesner* v. *Arab Bank, PLC*, 584 U.S. 241, 272 (2018).

*Finally*, Plaintiffs' state law claims—for negligence or wantonness—fail, because Plaintiffs have not alleged that BHL breached a duty to any of the Plaintiffs, nor that any of the Plaintiffs' injuries were proximately caused by a breach of any duty.

For these reasons and those below, the Amended Complaint has failed to cure the prior pleading deficiencies, and should be dismissed.

## THE AMENDED COMPLAINT'S ALLEGATIONS

Plaintiffs are 28 individuals who allege they or their family members were victims of the Attacks.[2]  Plaintiffs acknowledge that Hamas and the Palestinian Islamic Jihad ("PIJ") were the perpetrators of the Attacks, but their Amended Complaint seeks to hold BHL liable for the Attacks based on six theories: (1) aiding and abetting designated foreign terrorist organizations ("FTOs") (Count 1), and (2) conspiring with FTOs (Count 2), both in violation of the ATA and JASTA, 18 U.S.C.

---

[2] Four of the 28 plaintiffs (Lishay Lavi, David Bromberg, Airel Ein-Gal, and Lior Bar Or) are listed in the case caption but are not identified in the Amended Complaint.  As there is no indication who these Plaintiffs are, what harm they have suffered, or even what claims each purports to assert, those Plaintiffs should be dismissed.  Three other Plaintiffs appear to be represented in the Amended Complaint by pseudonyms (John Doe, Jane Roe, and Richard Moe) but Plaintiffs have not made a motion to do so.  Plaintiffs should be required to either identify those individuals or explain why it is necessary to refer to each by a pseudonym.

§§ 2333(a), (d); (3) providing material support to terrorists in violation of the ATA, 18 U.S.C. §§ 2333(a), 2339A (Count 3); (4) providing material support to FTOs in violation of the ATA, 18 U.S.C. §§ 2333(a), 2339B(a)(1) (Count 4); (5) aiding and abetting and providing material support in furtherance of violations of United States law and international treaties, in violation of 28 U.S.C § 1350 (Count 5); and (6) negligence or wantonness (Count 6).

Despite its length, the Amended Complaint contains no allegations tying BHL to the Attacks or the terrorist groups that perpetrated them. Plaintiffs do not allege, for example, that BHL (1) planned or participated in the Attacks, (2) intended to support the Attacks, (3) had advance knowledge of the Attacks, or (4) had any connection to the Attacks' perpetrators. Moreover, the Amended Complaint does not—and could not plausibly—allege a single act by BHL, nor even a single transaction by a Binance user, that funded or caused the Attacks.

Instead, the Amended Complaint relies on disjointed allegations that, according to Plaintiffs, support the inference that: (1) Binance was accessed and used by customers with connections to terrorism, often masking their location to avoid detection by BHL; (2) BHL must have known that individuals associated with Hamas and other terrorists were among the users transacting on the Binance exchange; and (3) BHL, as a general matter, did not follow anti-money laundering ("AML") laws and know-your-customer ("KYC") rules, nor file required Suspicious

Activity Reports ("SARs").  At bottom, Plaintiffs assert that BHL aided the Attacks simply by providing a platform available to and accessed by users around the globe, or by failing to file SARs, which Plaintiffs say made it harder for U.S. authorities to cut off the FTOs' financing.  (*See* AC ¶ 324).

*Allegations That BHL Knew Hamas and Associated FTOs Were Using Binance*

To support their speculative assertions that BHL knew some of its users had ties to Hamas and other terrorists, Plaintiffs rely on two sources of information, which, taken together or separately, fail to support an ATA claim.

*U.S. Regulatory Actions*:  Plaintiffs rely most heavily on U.S. regulators' statements and related materials, including a complaint by the Commodity Futures Trading Commission, a 2023 Consent Order between BHL and the Financial Crimes Enforcement Network ("FinCEN"), press releases by the U.S. Treasury Department, and plea agreements with the U.S. Department of Justice ("DOJ").  But—as the actual documents, rather than Plaintiffs' cherry-picked excerpts, show—those materials state only that BHL did not have adequate AML and sanctions controls, and failed to register with FinCEN as a money service business.  (*See* June 20, 2025 Declaration of Samson A. Enzer in support of BHL's Motion to Dismiss ("Enzer Decl."), Exs. 1-8).[3]  None of the regulators alleged that BHL intentionally supported

---

[3] The Court may consider these materials in deciding BHL's motion to dismiss, because they were incorporated by reference into the Amended Complaint.  (*See, e.g.*, AC ¶¶ 73, 84, 155, 177).  *See also Day* v. *Taylor*, 400 F.3d 1272, 1276 (11th

any terrorist group, let alone the Attacks.  Indeed, as the Treasury Department acknowledged, despite its AML lapses, BHL "proactively cooperated with global law enforcement and blockchain vendors to combat terrorist financing."  (*See* Enzer Decl., Ex. 2 (FinCEN Consent Order) at 46).  Moreover, most of Plaintiffs' out-of-context quotes, which they claim show BHL's knowledge that terrorists were using Binance, are from the regulators' reviews of historical conduct, which say nothing about whether BHL knew any transactions were linked to terrorists (let alone Hamas or PIJ) *at the time those transactions occurred*.  And even when the Amended Complaint tries to allege BHL's contemporaneous knowledge, it does so based only on generic and conclusory allegations.  (*See, e.g.*, AC ¶ 169 ("compliance personnel and rank-and-file employees knew that its operations were being used to fund Hamas, as well as other FTOs"); *id*. ¶ 323 ("[d]efendants moreover discussed, planned and collaborated to continue processing transactions that they knew to be illegal")).

_Public Statements by Legislators_:  The Amended Complaint also cites statements by public figures about cryptocurrency, including general statements from U.S. legislators that bad actors used Binance to fund their activities.  (*Id.* ¶¶

_____

Cir. 2005) ("[A] court may consider a document attached to a motion to dismiss . . . if the document's contents are alleged in a complaint and no party questions those contents.").

115, 154).  But the Amended Complaint does not state the factual basis for these politicians' alleged statements, and in any event the statements do not connect Binance, nor any transactions on the exchange, to Hamas, PIJ, or the Attacks.

### *Allegations Attempting to Link BHL Users' Transactions to Terrorists*

Plaintiffs next allege that Defendants "processed numerous transactions to entities and accounts associated with Hamas and other FTOs." (*Id.* ¶ 123).  For this sweeping and conclusory allegation, Plaintiffs rely on supposed "data from the blockchain analytics firms and CoinDesk's analysis." (*Id.* ¶¶ 146-47; *see also* ¶ 159-60).  But that data is not attached to Plaintiffs' Amended Complaint (so it is unclear what, if anything, it shows), nor do Plaintiffs explain how the data links BHL users' transactions to Hamas or other FTOs, nor whether those links would have been apparent to BHL at the time the transactions occurred.  Plaintiffs further distort a *CoinDesk.com* article by suggesting it links BHL to a spike in donations to Hamas around May 2023, when in fact the article refers generally to cryptocurrency donations to Hamas in 2021, and reports that BHL ***blocked*** a wallet associated with Hamas.  (*Id.*).

## ARGUMENT

## I.    SEVERAL PLAINTIFFS LACK STANDING UNDER THE ATA/JASTA OR THE ATS.

Defendant Changpeng Zhao's moving brief details why at least 17 of the Plaintiffs lack standing to bring claims under the ATA/JASTA or the ATS.  To spare

8

the Court from additional and overlapping briefing, BHL joins in Mr. Zhao's motion to dismiss those Plaintiffs' claims for lack of standing.  (*See* June 20, 2025 Brief of Defendant Changpeng Zhao ("Zhao Br.") at Sections II.C.1 and II.D).

## II.   THE AMENDED COMPLAINT FAILS TO COMPLY WITH FEDERAL RULES OF CIVIL PROCEDURE 8 AND 10.

Defendant BAM's moving brief details why the Amended Complaint—which frequently lumps all Defendants together under the term "Binance" without specifying which allegations apply to each, adds a number of irrelevant allegations, and refers to plaintiffs that are not listed in the caption or who appear to be listed under pseudonyms—runs afoul of Federal Rules of Civil Procedure 8 and 10.  (*See* June 20, 2025 Brief of BAM ("BAM Br.") at Section II.A).  BHL joins in BAM's motion to dismiss the Amended Complaint on these grounds.

## III.   THE AMENDED COMPLAINT FAILS TO ADEQUATELY PLEAD PERSONAL JURISDICTION OVER BHL.

"[T]o survive a motion to dismiss for lack of personal jurisdiction, a plaintiff's complaint must allege sufficient facts to make out a *prima facie* case of jurisdiction." *Mack* v. *Cooper Surgical, Inc.*, 2023 WL 2653365, at \*2 (M.D. Ala. Mar. 27, 2023). This requires allegations that demonstrate both a statutory basis for jurisdiction and that the exercise of jurisdiction comports with due process.  *Republic of Panama* v. *BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 942 (11th Cir. 1997).  Plaintiffs demonstrate neither with respect to BHL.

*First*, Plaintiffs cannot rely on a theory of alter-ego jurisdiction to manufacture jurisdiction over BHL where it otherwise does not exist.[4] As explained further below, Plaintiffs are unable to plead any plausible factual allegations that BHL had the requisite contacts with Alabama or the United States—presumably that is why they resort to alleging that this Court can exercise jurisdiction over BHL because it supposedly "owned, managed, controlled, dominated and criminally utilized BAM Trading at all times relevant to this lawsuit," making BHL a "de facto owner" of BAM. (AC ¶ 42). But "courts do not exercise the power to pierce the corporate veil lightly[,]" and Plaintiffs come nowhere close to pleading facts that would justify such an extreme measure here. *Mack*, 2023 WL 2653365, at \*4; *see also Keenan* v. *Matchmaker Int'l, Inc. of Mobile*, 1999 WL 33590522, at \*6 (S.D. Ala. Jan. 20, 1999) (an even higher burden applies to horizontal (*i.e.*, non-parent/subsidiary) veil piercing).

Plaintiffs' theory does not get out of the starting gate because they fail to adequately allege the threshold requirement of complete domination and control.

---

[4] As BAM demonstrates in its motion to dismiss (*see* BAM Br. at Section II.B.2), Plaintiffs have not alleged sufficient suit-related contacts to justify the exercise of personal jurisdiction over BAM. For this reason, the Court need not even reach Plaintiffs' alter ego argument. *See Gadasalli* v. *Bulasa*, 2023 WL 3586424, at \*4 (E.D. Tex. May 22, 2023) (declining to engage in an alter ego analysis because even if BAM's jurisdictional contacts were imputed to BHL, those contacts would still not justify the exercise of specific jurisdiction).

*See First Health, Inc.* v. *Blanton*, 585 So. 2d 1331, 1334 (Ala. 1991) (plaintiffs must allege that "the subservient corporation had no separate mind, will, or existence of its own"); *see also Mack*, 2023 WL 2653365, at \*4 (courts "are reluctant" to label companies alter egos "when some semblance of independence has been maintained").  The Amended Complaint seeks to meet this requirement by alleging common ownership (*see, e.g.*, AC ¶ 200), marketing and IT functions (*id.* at ¶ 197), and shared clients (*id.* at ¶ 220).  But the Northern District of California has already held much the same allegations insufficient to adequately allege that BHL and BAM were alter egos.  *See Reynolds* v. *Binance Holdings Ltd.*, 481 F. Supp. 3d 997, 1005 (N.D. Cal. 2020) ("[T]hat [BHL] and BAM share board members and a CFO does not on its own sufficiently establish a unity of interest."); *see also id.* ("Shared administrative functions are not necessarily indicative of an alter ego relationship.").

In any event, "[m]ere control and dominion does not suffice to trigger alter ego status."  *Mack*, 2023 WL 2653365, at \*4.  Instead, Alabama law requires plausible allegations that the dominating corporation "misused that control" and "proximately caused harm to the plaintiff through such misuse."  *Id.*  The Amended Complaint falls far short of meeting that high standard.  At best, the Amended Complaint alleges that BHL used BAM as a mechanism for retaining U.S. customers without regulatory scrutiny.  (*See, e.g.*, AC ¶ 96).  But there are no allegations connecting any U.S. transaction—on either Binance.com or Binance.US—to the

11

Attacks, or that any U.S. transaction otherwise caused harm to Plaintiffs.  Nor have Plaintiffs offered any other explanation of how BHL's alleged control of a U.S. corporation gave rise to terror attacks across the globe.  Accordingly, Plaintiffs have not established alter ego jurisdiction over BHL.  *See, e.g.*, *Mack*, 2023 WL 2653365, at \*4-5 (rejecting alter ego theory of personal jurisdiction where plaintiffs failed to plead misuse of the allegedly controlled companies); *Continental Motors, Inc.* v. *Jewell Aircraft, Inc.*, 882 F. Supp. 2d 1296, 1304-05 (S.D. Ala. 2012) (dismissing for lack of personal jurisdiction where plaintiff "ha[d] not alleged, much less shown, that [defendant] misused its control over [its subsidiary]"); *Thornton* v. *Bayerische Motoren Werke AG*, 439 F. Supp. 3d 1303, 1313 (N.D. Ala. 2020) ("There is no evidence before the court to suggest that [defendant] misused its purported control over [its subsidiary].  As a result, [plaintiff] has not presented sufficient evidence to justify piercing the corporate veil.").

**Second**, Plaintiffs do not allege a basis for jurisdiction under Alabama's long-arm statute, because BHL does not have contacts with the State of Alabama sufficient to support personal jurisdiction.[5]  The Supreme Court has recognized "two

---

[5] Alabama's long-arm statute "permits its courts to exercise jurisdiction over nonresidents to the fullest extent allowed under the Due Process Clause of the Fourteenth Amendment to the Constitution."  *Jones* v. *Black*, 2023 WL 5197882, at \*2 (M.D. Ala. Aug. 11, 2023).  Accordingly, the statutory and due process requirements merge, and a court may only exercise personal jurisdiction where the defendant "has some minimum contacts" with the state, and "the exercise of personal jurisdiction over the defendant would not offend traditional notions of fair play and

categories of personal jurisdiction: general jurisdiction and specific jurisdiction. General jurisdiction refers to the power of a court in the forum to adjudicate any cause of action involving a particular defendant, irrespective of where the cause of action arose. Specific jurisdiction refers to jurisdiction over causes of action arising from or related to a defendant's actions with the forum." *Maximum Efficiency Squared, LLC* v. *Samsara Works Corp.*, 2015 WL 5053758, at \*4 (M.D. Ala. Aug. 26, 2015). Plaintiffs cannot establish jurisdiction under either category.

BHL is not subject to general jurisdiction because BHL is a foreign corporation, which is neither incorporated nor headquartered or otherwise at home in Alabama (or the United States for that matter). (*See* AC ¶ 81 ("Binance, d/b/a Binance.com, is a Cayman Islands limited liability company."); ¶ 94 (BHL has not been permitted to operate in the U.S. since 2019)). *See also Daimler AG* v. *Bauman*, 571 U.S. 117, 137-39 (2014) (exercise of general jurisdiction is appropriate where a corporation is incorporated, has its principal place of business, of where it is "essentially at home in the forum State").[6]

_____

substantial justice." *Id.*

[6] Plaintiffs rely on two pre-*Daimler* Alabama Supreme Court cases in their Amended Complaint for the proposition that BHL's contacts with Alabama are sufficient to establish general personal jurisdiction over BHL. (*See* AC ¶ 41 (citing *Leithead* v. *Banyan Corp.*, 926 So. 2d 1025 (Ala. 2005) and *Ex Parte Fidelity Bank*, 893 So. 2d 1116 (Ala. 2004))). These cases are inapposite. Plaintiffs do not allege ***any*** contacts between BHL and the State of Alabama, much less contacts sufficient to render BHL

In addition, BHL is not subject to specific personal jurisdiction because Plaintiffs have not pled sufficient suit-related contacts between BHL and the State of Alabama.  *See Moore* v. *Lowe*, 591 F. Supp. 3d 1087, 1102 (N.D. Ala. 2022) (specific jurisdiction requires that "the defendant's ***suit-related conduct*** . . . create a substantial connection with the forum State").   In assessing specific personal jurisdiction, the Eleventh Circuit utilizes two applicable tests:  the "effects test" and purposeful availment analysis.  *Louis Vuitton Malletier, S.A.* v. *Mosseri*, 736 F.3d 1339, 1356 (11th Cir. 2013).  The "effects test" considers whether a defendant's conduct was "aimed at the forum state" and "caused harm that the defendant should have anticipated would be suffered in the forum state."  *Id.*  The purposeful availment analysis alternatively considers whether a defendant's contacts:  "(1) are related to the plaintiff's cause of action; (2) involve some act by which the defendant purposefully availed himself of the privileges of doing business within the forum; and (3) are such that the defendant should reasonably anticipate being haled into court in the forum."  *Id.* at 1357.

Here, regardless of which test is applied, BHL is not subject to specific personal jurisdiction.  The Amended Complaint neither alleges that BHL directed any conduct specifically to Alabama, nor that any injury was suffered in Alabama.

---

"at home" there.  *See Daimler*, 571 U.S. at 139.

In fact, the Amended Complaint does not allege *any* contacts between BHL and the State of Alabama whatsoever, never mind contacts "relate[d] to" Plaintiffs' claims.[7] *Id*. at 1355.  Accordingly, Plaintiffs cannot establish personal jurisdiction under the Alabama long-arm statute.

    ***Third***, Plaintiffs cannot rely on Federal Rule of Civil Procedure 4(k)(1)(C) as a basis for personal jurisdiction over BHL, because Plaintiffs did not serve BHL within the United States, as required by the rule.  Rule 4(k)(1)(C) states that "[s]erving a summons or filing a waiver of service establishes personal jurisdiction over a defendant" when "authorized by a federal statute."  Accordingly, where a federal statute, such as the ATA (18 U.S.C. § 2334(a)), provides for nationwide service, Rule 4(k)(1)(C) "permits the exercise of personal jurisdiction over parties properly served anywhere in the United States."  *Zobay* v. *MTN Group Ltd.*, 695 F. Supp. 3d 301, 322 (E.D.N.Y. 2023).  But the Eleventh Circuit has held that where,

---

[7] The cases referenced in the Amended Complaint (*see* AC ¶ 40) finding specific personal jurisdiction, included allegations that the defendants had ***repeated and purposeful*** contacts with the forum state, ***and*** that those contacts related or gave rise to the plaintiffs' claims.  *See Molex Co., LLC* v. *Andress*, 887 F. Supp. 2d 1189, 1200-03 (N.D. Ala. 2012) (finding purposeful availment adequately pled in a trade secrets case, where Alabama-based plaintiff alleged defendant served as a remote consultant to the plaintiff for more than fifteen years, and was "frequently contacting [plaintiff's] employees in Alabama[,]" including to request samples from, and send expense reports to, Alabama-based employees); *Cable/Home Commc'n Corp.* v. *Network Prods., Inc.*, 902 F.2d 829, 857-58 (11th Cir. 1990) (the broadcasts at issue in the litigation were purposefully directed to Florida).  As discussed, the Amended Complaint does not plead similar contacts.

as here, the defendant was not served in the United States, Rule 4(k)(1)(C) does not provide a basis for the exercise of "personal jurisdiction over a party notwithstanding its lack of contacts with the forum state." *Durham* v. *LG Chem, Ltd.*, 2022 WL 274498, at *2 (11th Cir. Jan. 31, 2022) (per curiam) (Rule 4(k)(1)(C) inapplicable because service was affected under the Hague Convention rather than pursuant to a federal statute authorizing nationwide service); *see also Doe* v. *Unocal Corp.*, 27 F. Supp. 2d 1174, 1183 (C.D. Cal. 1998) ("[I]t would be inappropriate for a federal court to effectively extend the territorial reach of a federal statute by applying a national contacts test for personal jurisdiction where service is not effected pursuant to that federal statute."), *aff'd and adopted*, 248 F.3d 915 (9th Cir. 2001).

Here, there can be no dispute that BHL was never served.  To facilitate the briefing and resolution of this motion, the Parties entered into a stipulation that explicitly provided that BHL "***do[es] not concede that service has been effectuated within the Middle District of Alabama (or anywhere else)***, and Plaintiffs agree not to argue that the waiver affects any of [BHL's] other rights, defenses, or objections (including but not limited to defenses based upon lack of personal or subject matter jurisdiction[.]"  (ECF No. 15, ¶ 1).  Accordingly, because BHL has not conceded service in this action and has not been served, it therefore cannot be subject to personal jurisdiction under Rule 4(k)(1)(C).

16

Even if BHL had been served in the United States, the exercise of personal jurisdiction under Rule 4(k)(1)(C) and the ATA's nationwide service provision would still violate due process. As the Supreme Court explained in an opinion issued today, while the jurisdictional due process analyses under the Fifth and the Fourteenth Amendments may differ in some ways, the relevant question under both standards remains whether "the assertion of jurisdiction in the particular case" is reasonable. *Fuld* v. *Palestine Liberation Org.*, 606 U.S. ___, 2025 WL 1716140, at *12 (June 20, 2025). Here, BHL's alleged connections to the United States boil down to allegations that BHL represented to regulators that it was not operating in the country, while permitting U.S. users to transact on the Binance platform, including with users in Iran. (*See, e.g.*, AC ¶¶ 96, 112). But there are no allegations that any transactions involving U.S. users funded or were linked to the Attacks in any way, and BHL is a foreign company, which is unduly burdened by being haled into court in this jurisdiction based on such attenuated links to the forum. The exercise of jurisdiction over BHL on these allegations would indeed be unreasonable, and therefore does not comport with due process. *See Asahi Metal Industry Co.* v. *Superior Court of Cal., Solano Cty.*, 480 U.S. 102, 115 (1987) (holding that due process requires a balancing of the burden on a foreign defendant); *cf Fuld*, 2025 WL 1716140, at *10 (citing *Asahi*).

## IV.    THE AMENDED COMPLAINT FAILS TO STATE A CLAIM FOR PRIMARY LIABILITY UNDER THE ATA (COUNTS 3 AND 4).

Plaintiffs have sued BHL as a primary violator under the ATA (Counts 3 and 4), but this lacks any legal basis.[8]  In 1992, Congress enacted the ATA to hold terrorists accountable for their actions.  In 2016, Congress amended the ATA by enacting JASTA, to create aiding-and-abetting liability for non-terrorists under certain narrow circumstances (not presented here, *see infra* Section V).  *See Twitter*, 598 U.S. at 483-84.  Since JASTA was passed, courts have consistently rejected attempts to bring ATA primary liability claims against entities that are not terrorist organizations.  *See, e.g.*, *King* v. *Habib Bank Ltd.*, 2022 WL 4537849, at *5 (S.D.N.Y. Sept. 28, 2022) (post-JASTA cases generally "recognize that liability for banking services provided to support a terrorist group's mission more generally are properly analyzed under JASTA's aiding-and-abetting provision"); *O'Sullivan* v. *Deutsche Bank AG*, 2019 WL 1409446, at *8 (S.D.N.Y. Mar. 28, 2019) ("The Complaint does not allege plausibly that the provision of banking services, which

---

[8] Plaintiffs' theory of primary liability is nearly identical to the claims Judge Koeltl of the Southern District of New York recently dismissed in *Raanan* v. *Binance Holdings Ltd.,* 2025 WL 605594 (S.D.N.Y. Feb. 25, 2025).  Moreover, in *Newman* v. *Associated Press*, 758 F. Supp. 3d 1357 (S.D. Fla. 2024), Judge Moore of the Southern District of Florida dismissed primary liability and secondary liability claims brought by several of these same plaintiffs (Newman, Gess, Parizer, Sanandaji, and Diller), alleging four of the same causes of action, also related to the Attacks.

are not inherently violent or dangerous, can be considered as acts dangerous to human life."). But that is precisely what Plaintiffs are impermissibly trying to do here.

## A. The Amended Complaint Does Not Adequately Allege That BHL Committed an Act of International Terrorism, Nor Could It.

Plaintiffs cannot state an ATA primary liability claim because the Amended Complaint fails to plausibly allege that BHL committed "an act of international terrorism" as required by the statute. Under Title 18, United States Code, Section 2331, acts of international terrorism are those that:

(A) involve *violent acts or acts dangerous to human life* [i] that are a violation of the criminal laws of the United States or of any State, or [ii] that would be a criminal violation if committed within the jurisdiction of the United States or of any State; [and]

(B) appear to be intended— (i) to intimidate or coerce a civilian population; (ii) to influence the policy of a government by intimidation or coercion; or (iii) to affect the conduct of a government by mass destruction, assassination, or kidnapping; and

(C) occur primarily outside the territorial jurisdiction of the United States, or transcend national boundaries[.]

*Id.* The Amended Complaint falls short under Sections (A) and (B).

*No Violent or Dangerous Acts.* Plaintiffs do not even try to allege that BHL committed violent or dangerous acts (nor could they). Instead, Plaintiffs allege that, at some point, BHL provided generally available transaction services that were used by individuals or entities later identified as having unspecified connections to Hamas or PIJ. But courts have consistently ruled that providing ordinary transaction

19

services, even if used by a terrorist organization, is insufficient to plead a violent or

dangerous act.  *See Weiss* v. *National Westminster Bank, PLC*, 993 F.3d 144, 162-

63 (2d Cir. 2021) ("[T]he provision of banking services, in and of itself, is

insufficient either to show that the services involved an act of violence or threat to

human life or to give the appearance that such services were intended to intimidate

or coerce a civilian population or government."); *Raanan*, 2025 WL 605594, at \*15-

16 (same; collecting authority and dismissing claim).  The same is true even if the

services violated AML or sanctions laws.  *See Kemper* v. *Deutsche Bank AG*, 911

F.3d 383, 390 (7th Cir. 2018) ("That [defendant's] business dealings may violate

U.S. sanctions does not convert them into terrorist acts.").

    *No Qualifying Criminal Law Violations.*  Nor does the Amended Complaint

adequately allege a qualifying criminal act by BHL.  Plaintiffs assert in conclusory

terms that BHL violated Title 18, United States Code, Sections 2339A (making it a

crime to provide material support or resources "*knowing or intending* that they are

to be used in preparation for, or in carrying out a violation of" specified criminal

statutes) (Count 3) and 2339B (making it a crime to "*knowingly* provide[] material

support or resources to a [FTO]") (Count 4).  However, the Amended Complaint does

not come close to pleading the requisite *mens rea* for either offense.  At best,

Plaintiffs allege that certain Binance users transacted with individuals or entities

somehow associated with Hamas or PIJ, and that BHL *at some point* became aware

of those transactions' supposed links to the FTOs.  (*See, e.g.*, AC ¶¶ 89, 140).  Those allegations do not plausibly suggest that BHL knew—at the time BHL provided those services—that any particular transaction was connected to Hamas or PIJ, or their acts of terror.  *See Newman*, 758 F. Supp. 3d at 1379-80 (alleging "mere notice" of third parties' "relationship with Hamas" is insufficient to satisfy *mens rea* requirement under §§ 2339A or B).  In any event, even if these allegations were sufficient to plead a criminal violation, "it is not enough to allege claims under §§ 2339A and B to automatically render them acts of international terrorism[,]" and as such, Plaintiffs' failure to plead a violent act by Binance would still be fatal.  *Id.* at *1376 (collecting authority); *Raanan*, 2025 WL 605594, at *15-16 (same).

**No Objective Terroristic Intent.**  The Amended Complaint similarly does not satisfy Subsection (B) of Section 2331 because it lacks any factual allegations (as opposed to conclusory assertions) that BHL acted with objective terroristic intent (*i.e.*, an intent to intimidate or coerce a civilian population or influence a government).  To establish objective terroristic intent, Plaintiffs must show that BHL processed transactions that were explicitly identified as payments for terrorist activities.  *See, e.g.*, *Averbach* v. *Cairo Amman Bank,* 2022 WL 2530797, at *19 (S.D.N.Y. Apr. 11, 2022).[9]  But the law is clear that providing routine transaction

---

[9] *Cf. Linde* v. *Arab Bank, PLC*, 882 F.3d 314, 321 (2d Cir. 2018) (holding that defendant bank processing transfers that "were explicitly identified as payments for suicide bombings" was sufficient to create triable issue of fact as to whether the bank

services to persons or entities "with connections" to terrorist organizations—as opposed to the organizations themselves—is insufficient. *See, e.g.*, *O'Sullivan*, 2019 WL 1409446 at \*7-8 (no terroristic intent where defendants allegedly provided financial services to Iranian banks and businesses "with connections to terrorist organizations[,]" as opposed to providing services directly to terrorists). Yet that is the extent of the allegations here. (*See, e.g.*, AC ¶ 123 (alleging that BHL "processed numerous transactions to entities and accounts *associated with* Hamas and other FTOs"); *id.* at ¶ 140 (alleging that the DOJ and FinCEN identified "[c]rypto wallets at Binance" that "were *found to interact* [at unspecified times] with bitcoin wallets associated with" FTOs)).

### B. The Amended Complaint Does Not Adequately Allege That BHL Proximately Caused Plaintiffs' Alleged Injuries.

The Amended Complaint's failure to plausibly allege proximate causation is an independent basis for dismissing Counts 3 and 4. *See In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 118, 125 (2d Cir. 2013) ("[T]he [ATA] restricts the imposition of such liability to situations where plaintiffs plausibly allege that defendants['] actions proximately caused their injuries.").

To plead proximate causation, Plaintiffs must plausibly allege that they were injured "by reason of" an act that BHL *itself*—not Hamas or PIJ—committed. *Fields*

---

acted with the requisite intent).

v. *Twitter, Inc.*, 881 F.3d 739, 744 (9th Cir. 2018) ("[T]o satisfy the ATA's by reason of requirement, a plaintiff must show at least some direct relationship between the injuries that he or she suffered and the defendant's acts."); *Rothstein* v. *UBS AG*, 708 F.3d 82, 97 (2d Cir. 2013) (no proximate cause where plaintiff failed to allege "relationship between the cash transferred by UBS to Iran and the terrorist attacks by Hizbollah and Hamas that injured plaintiffs").  The Amended Complaint does not come close to meeting this standard.  Plaintiffs rely on the conclusory assertion that BHL's routine transaction services in some way caused the Attacks, and thereby caused Plaintiffs' injuries.  (*See, e.g.*, AC ¶¶ 9, 346, 348).  Courts routinely dismiss ATA claims that rest on such attenuated allegations.  *See, e.g.*, *Raanan*, 2025 WL 605594, at *17 (finding nearly identical allegations insufficient to show proximate cause); *In re Terrorist Attacks*, 714 F.3d at 124 ("We also are not persuaded that providing routine banking services to organizations and individuals said to be affiliated with al Qaeda . . . proximately caused the September 11, 2001 attacks or plaintiffs' injuries."); *Zapata* v. *HSBC Holdings PLC*, 414 F. Supp. 3d 342, 356 (E.D.N.Y. 2019) (no proximate cause where plaintiffs failed to allege "any relationship between [defendant bank's] money laundering and the acts of violence perpetrated against them"), *aff'd*, 825 F. App'x 55 (2d Cir. 2020).  This Court should do the same.

## V.   THE AMENDED COMPLAINT FAILS TO STATE AN AIDING-AND-ABETTING CLAIM UNDER THE ATA AND JASTA (COUNT 1).

JASTA imposes civil liability on "any person who aids and abets, by

knowingly providing substantial assistance" to "the person who committed [the] act of international terrorism" that injured the plaintiff. 18 U.S.C. § 2333(d)(2). Generally, an aider and abettor must "intend to facilitate [the offense's] commission." *Smith & Wesson*, 2025 WL 1583281, at *5. With respect to JASTA specifically, to plead an aiding-and-abetting claim, a plaintiff must allege the defendant: (1) "knowingly and substantially assist[ed] the principal violation" and (2) "[was] generally aware of his role as part of an overall illegal or tortious activity at the time that he provide[d] the assistance." *Twitter*, 598 U.S. at 485-86. The Amended Complaint does not adequately plead either element.[10]

### A. The Amended Complaint Does Not Allege That Defendants Knowingly and Substantially Assisted the Attacks.

*Twitter* established a demanding standard for the knowing and substantial assistance element, requiring a plaintiff to demonstrate that (1) there is a sufficient nexus between the defendant's conduct and the plaintiff's injuries, and (2) the defendant's participation was conscious, voluntary, and culpable. 598 U.S. at 493-94, 506. The Amended Complaint does not meet either requirement.

---

[10] The district court in *Raanan* recently permitted a JASTA aiding-and-abetting claim to proceed against BHL. 2025 WL 605594, at *18-24. That decision is not binding on this Court, and BHL respectfully submits that it was wrongly decided for overlooking *Twitter*'s rigorous intent requirement in light of plaintiff's concession that BHL did not intend to bring about any act of terrorism. The Supreme Court's subsequent *Smith & Wesson* ruling only serves to confirm that *Raanan* improperly allowed the aiding-and-abetting claim to proceed. (*See infra* Section V.A).

*Twitter* instructs that the aiding-and-abetting analysis begins by evaluating the nexus (if any) between the defendant's conduct and the ***specific attack*** that injured the plaintiffs. *Id.* at 497 ("[B]ecause they are trying to hold defendants liable for the Reina attack, plaintiffs must plausibly allege that defendants aided and abetted ISIS in carrying out ***that attack***"); *see also id.* at 506 ("The point of aiding and abetting is to impose liability on those who consciously and culpably participated in ***the tort at issue***. ***The focus must remain on assistance to the tort for which plaintiffs seek to impose liability***."). The Supreme Court elaborated that providing substantial assistance to terrorists' "activities in general" is not sufficient to impose aiding-and-abetting liability; "the question is whether defendants gave substantial assistance to [the FTO that carried out the attack] with respect to the [specific] attack. The focus thus must remain on the [specific] attack[.]" *Id.* at 503; *see also id.* at 495 ("[I]t is not enough . . . that a defendant [has] given substantial assistance to a transcendent enterprise separate from and floating above all the actionable wrongs that constitute it.").

Under *Twitter*, there is an inverse relationship between nexus and intent. A showing of more direct and significant assistance (*i.e.*, a direct and concrete nexus) may reduce the required showing of intent, whereas a more attenuated nexus "drastically increases" the pleading burden for intent. *Id.* at 503; *see also id.* at 500 (where there is "distance between [the] defendants' acts (or failures to act) and

25

the . . . attack [that injured the plaintiffs], plaintiffs would need some other very good reason to think that defendants were ***consciously trying to help or otherwise participate in the . . . attack***"). In other words, "the more attenuated the nexus, the more courts should demand that plaintiffs show culpable participation through ***intentional aid that substantially furthered the tort***." *Id.* at 506; *see also Zobay*, 695 F. Supp. 3d at 345 ("If the relationship between a defendant's assistance and the ultimate tortious act is attenuated, then plaintiffs need some other very good reason to think that defendants were consciously trying to help or otherwise participate in the [specific] attack.") (quoting *Twitter*, 598 U.S. at 500 (alteration in original)).

Here, the Amended Complaint comes nowhere close to pleading a "definable nexus between . . . [D]efendants' [alleged] assistance and the [A]ttack." *Twitter*, 598 U.S. at 503. Rather, the Amended Complaint alleges only that BHL's historical AML lapses enabled users allegedly associated with Hamas and other FTOs to access Binance, and that the FTOs then used these funds to commit terrorist attacks, including the Attacks. (*See, e.g.*, AC ¶¶ 109, 133, 151, 152, 157, 215, 307). The Amended Complaint discusses in broad terms how FTOs have exploited cryptocurrency (as they have all types of currency) as part of their fundraising efforts. (*See id.* ¶¶ 6, 11, 23, 146). But nowhere does the Amended Complaint plead facts demonstrating how any transactions on the Binance exchange are directly

"connect[ed] or link[ed]"[11] to the Attacks that caused Plaintiffs' alleged injuries. The Amended Complaint alleges that Defendants "enabled" and "contribut[ed] to the funding of this [A]ttack" by "provid[ing] Hamas with critical financial infrastructure" that "played a role in enabling Hamas's capacity to plan, organize, and execute attacks such as the [Attacks]." (*See id.* ¶¶ 109, 133, 151-52, 157). But at most, the non-conclusory factual allegations in the Amended Complaint merely allege "assistance to [the FTO's] activities in general," which *Twitter* explicitly held is insufficient. 598 U.S. at 503 (overturning Ninth Circuit decision that "framed the issue of substantial assistance as turning on defendants' assistance to ISIS' activities in general").

Where, as in this case and *Twitter*, there is no "definable nexus" between Defendants' alleged acts or omissions and the attack, a JASTA claim is insufficient unless Plaintiffs can plausibly allege that Defendants consciously and "culpably associate[d themselves] with the [A]ttack, participate[d] in it as something that [they] wishe[d] to bring about, or sought by [their] action to make it succeed." *Id.* at 498 (second alteration added). Here, the Amended Complaint falls far short of that "drastically increase[d]" requirement. *Id.* at 503. The closest Plaintiffs come to alleging *any* facts related to intent are allegations that BHL was aware FTOs were

_____

[11] *See Nexus*, Black's Law Dictionary (12th ed. 2024).

using its services and that those terrorists committed acts of terrorism, that BHL *failed to stop* that use, and that accordingly attacks like the October 7 Attacks were a "foreseeable result." (*See* AC ¶¶ 169, 215, 307). *Twitter* made clear that these types of allegations are insufficient. 598 U.S. at 503 ("The fact that some bad actors took advantage of these platforms is insufficient to state a claim that defendants knowingly gave substantial assistance and thereby aided and abetted those wrongdoers' acts.").

Moreover, like the social media platforms at issue in *Twitter*, the Binance exchange is global in scale, serves hundreds of millions of users (*see* AC ¶¶ 81, 86, 90), and "there are no allegations that defendants treated [FTOs] any differently from anyone else." 598 U.S. at 500. Far from giving FTOs special treatment, BHL sought to keep them off its platform. (*See* Enzer Decl., Ex. 2 (FinCEN Consent Order) at 46 (BHL "proactively cooperated with global law enforcement and blockchain vendors to combat terrorism financing")). Absent any allegations that BHL favored or attempted in any way to aid terrorists, let alone a specific attack, the Amended Complaint fails to plead the requisite "strong showing of assistance and scienter" that *Twitter* demands. 598 U.S. at 500.

Given the lack of a definable nexus between BHL's conduct and the Attacks, and the lack of any intent on BHL's part to further the Attacks, *Twitter* requires dismissal of Plaintiffs' aiding-and-abetting claim. Although *Twitter* acknowledged

28

there may be extraordinary circumstances where these pleading requirements might be relaxed, those circumstances require that a "defendant[] so systemically and pervasively assist[ed]" the terrorist group that it can "be said to aid and abet every single" attack. *Id.* at 501. As the Supreme Court noted, such a finding is reserved for circumstances where "aiding-and-abetting liability begins to blur with conspiracy liability," and where "a defendant has so consciously participate[d] in a series of tortious acts in order to make [each one] succeed." *Id.* at 496; *see also id.* at 501-02 (no liability where "Plaintiffs do not claim that defendants intentionally associated themselves with [the FTO's] operations or affirmatively gave aid that would assist each of [the FTO's] terrorist acts" or otherwise "formed a near-common enterprise" with the FTO). Plaintiffs do not even attempt to plead facts suggesting that BHL aligned itself with Hamas or any other FTO in such a manner. To the contrary, as the Treasury Department acknowledged, despite its AML lapses, BHL "proactively cooperated with global law enforcement and blockchain vendors to combat terrorism financing," and "cooperated with Israeli law enforcement in numerous seizures related to the al Qassam brigades." (Enzer Decl., Ex. 2 (FinCEN Consent Order) at 46).

Nor have Plaintiffs alleged that BHL marketed a "dangerous ware," or offered its services in an "unusual way" that could distinguish this case from the controlling holding of *Twitter*. *See* 598 U.S. at 502. Cryptocurrency transactions are not

inherently dangerous, but rather involve fungible digital assets functionally equivalent to any other form of currency. *See, e.g.*, *Coinbase, Inc.* v. *SEC*, 126 F.4th 175, 203 n.11 (3d Cir. 2025) (recognizing that "digital assets are a growing part of the financial sector and are emerging as an increasingly important form of online payment"). And BHL, as "the world's largest centralized digital asset exchange" (AC ¶ 86), offered only routine exchange services to its hundreds of millions of users worldwide. Those services are not qualitatively different from the services offered by numerous other types of financial institutions, which are neither inherently dangerous nor unusual, even when coupled with the failure to comply with identical AML duties.[12] *See, e.g.*, *Siegel* v. *HSBC North America Holdings, Inc.*, 933 F.3d 217, 225-26 (2d Cir. 2019) (dismissing JASTA claim despite admitted AML failures); *O'Sullivan*, 2019 WL 1409446 (same); *compare id.*, *with Twitter*, 598 U.S. at 502 (citing *Direct Sales Co.* v. *U.S.*, 319 U.S. 703, 707, 711-12, 714-15 (1943) (registered morphine distributor could be liable as a coconspirator of an illicit operation to which it mailed morphine far in excess of normal amounts)).

---

[12] Even if Plaintiffs could plausibly allege that one of these exceptions applies— which they cannot—allegations of intent would still be required, and they are utterly lacking here. *See Twitter*, 598 U.S. at 502 (where plaintiffs allege that defendant offered "dangerous wares" or "unusual" services, "plaintiffs *might* be able to establish liability with a *lesser* showing of scienter").

The recent Supreme Court decision in *Smith & Wesson* underscores the insufficiencies of Plaintiffs' theory of aiding-and-abetting liability here. 2025 WL 1583281. In *Smith & Wesson*, Mexico sued seven American gun manufacturers alleging (among other things) that they aided and abetted gun dealers' unlawful sales of guns to Mexican drug cartels. *Id.* at *6.[13] Specifically, Mexico's complaint alleged that the manufacturers "supply firearms to retail dealers whom they know illegally sell to Mexican drug traffickers," and "failed to impose" adequate "controls on their distribution networks that would prevent illegal sales." *Id.* at *5.

While *Smith & Wesson* involved indisputably dangerous wares (guns), the Supreme Court unanimously held that those allegations were insufficient to establish aiding and abetting liability. *Id.* at *6. The Court explained that, even crediting the complaint's allegations that the manufacturers were aware that unlawful gun sales took place, Mexico had still not adequately pleaded "that the manufacturers participate in those sales as something that [they] wish[] to bring about and seek by

---

[13] Because the Protection of Lawful Commerce in Arms Act ("PLCAA") generally bars civil lawsuits against gun manufacturers, Mexico's claims could survive only if they fit within the PLCAA's predicate exception—hence why Mexico alleged that the gun manufacturers aided and abetted someone else's firearms offense, in violation of the federal aiding-and-abetting statute. Accordingly, it is inconsequential that the underlying lawsuit in *Smith & Wesson* was in the context of the PLCAA as opposed to JASTA; because the crux of the Supreme Court's analysis concerned the requirements for stating a claim for aiding and abetting, *Smith & Wesson* is highly relevant to the aiding and abetting analysis before the Court here.

[their] action to make succeed." *Id.* at \*4. At best, Mexico had alleged "that the manufacturers elect to sell guns to, among others, known rogue dealers[.]" *Id.* at \*7. But, as the Court explained, an aider and abettor generally "must intend to facilitate the offense's commission" and "an ordinary merchant[] does not become liable for all criminal misuse[s] of [his] goods, even if he knows that in some fraction of cases misuse will occur." *Id.* at \*6. Rather, "[t]he merchant becomes liable only if, beyond providing the good on the open market, he takes steps to promote the resulting crime and make it is own." *Id*.

Plaintiffs' allegation that BHL could or should have implemented stronger controls against illicit activity does not cure this lethal defect. As the Supreme Court explained in *Smith & Wesson*, "[w]hen a company merely knows that 'some bad actors' are taking 'advantage' of its products for criminal purposes, it does not aid and abet," and "that is so even if the company could adopt measures to reduce their users' downstream crimes." *Id.* at \*6. At most, the failure to adopt such measures reflects "passive nonfeasance" which is "rarely the stuff of aiding-and-abetting liability." *Id.* at \*8. Moreover, aiding and abetting liability does not attach just because terrorists took advantage of the same services that BHL made generally available to over 100 million customers worldwide. *Id.* (noting that guns were legal and used by ordinary consumers such that "manufacturers cannot be charged with assisting in criminal acts just because Mexican cartel members like those guns too").

32

Mexico's insufficient allegations in *Smith & Wesson* go far beyond what Plaintiffs allege here—where the Amended Complaint boils down to allegations that Binance was offered broadly to the general public, and BHL knew that accounts associated with terrorists were using Binance yet failed to stop this use. (*See* AC ¶¶ 109, 133, 151, 152, 157, 169, 215, 307, 320). In other words, if the allegations in *Smith & Wesson* fail to state an aiding-and-abetting claim, those in the Amended Complaint most certainly fail to do so here as well.

### B. The *Halberstam* Factors Confirm That the Amended Complaint Does Not State an Aiding-and-Abetting Claim.

*Twitter* stated that the factors set forth in *Halberstam* v. *Welch*, 705 F.2d 472, 483-84 (D.C. Cir. 1983) are still relevant in determining whether aiding-and-abetting liability has been sufficiently pled. 598 U.S. at 485-88. Here, ***all six*** *Halberstam* factors weigh in favor of dismissing Plaintiffs' JASTA aiding-and-abetting claim:

- **Nature of the Act**: The Amended Complaint relies on conclusory allegations that the routine services BHL provided were "indisputably important" to the Attacks. *See Halberstam*, 705 F.2d at 488. Plaintiffs allege that "access to outside funding" is important for FTOs, including Hamas; BHL's failure to file SARs made "it harder for the U.S. government to cut off their finances"; and the Attacks demonstrated that expensive equipment and coordination were required. (*See, e.g.*, AC ¶¶ 109, 151-52, 318, 324-25). Such general allegations fail to connect BHL's routine services to the Attacks, ignore the multitude of FTO funding sources, and overlook that BHL "proactively cooperated with global law enforcement and blockchain vendors to combat terrorist financing." (Enzer Decl., Ex. 2 (FinCEN Consent Order) at 46).

- **Amount of Assistance**: Plaintiffs do not allege that Defendants processed any transactions, let alone a substantial volume, that are directly linked to the Attacks, and (as noted) instead rely on conclusory allegations that Defendants "enabled"

and "contribut[ed] to the funding of this [A]ttack" by "provid[ing] Hamas with critical financial infrastructure" that "played a role in enabling Hamas's capacity to plan, organize, and execute attacks such as the [Attacks]." (*See* AC ¶¶ 109, 133, 151-52, 157).

- **BHL's Presence**:  Plaintiffs have not (and cannot) plead any facts to show that Defendants were present during the Attacks.

- **BHL's Relation**:  The Amended Complaint does not allege that BHL had any relationship with Hamas or PIJ, or gave them any special treatment as compared to the hundreds of millions of other users who transacted on the Binance exchange during the period covered by the Amended Complaint.

- **BHL's State of Mind**:  The Amended Complaint alleges no affirmative act that Defendants undertook with the intent of facilitating the Attacks. *Cf. Halberstam*, 705 F.2d at 487, 488 ("continuous participation" in two-person stolen goods venture as "banker, bookkeeper, recordkeeper, and secretary" reflected "intent and desire to make the venture succeed"); *see also Twitter*, 498 U.S. at 490 (no aiding-and-abetting liability where defendants were not alleged to have taken "affirmative act" with "intent of facilitating" the attack).

- **Duration of the Assistance**:  The Amended Complaint alleges that BHL provided services to FTOs for years leading up to the Attacks, but says nothing about the "quality and extent" of the alleged relationship between BHL and FTOs (compared to BHL's user base generally), nor does it suggest that the duration of the relationship resulted in an increased "amount of aid" provided. *Halberstam*, 705 F.2d at 484 ("[T]he length of time an alleged aider-and-abettor has been involved with a tortfeasor almost certainly affects the quality and extent of their relationship and probably influences the amount of aid provided.").  Plaintiffs also fail to connect any BHL-specific services temporally to any of the Attacks.

### C. The Amended Complaint Does Not Allege That BHL Was Generally Aware of Any Role in the Relevant Terrorist Activity.

Because Plaintiffs fail to allege knowing and substantial assistance, their aiding-and-abetting claim fails, and the Court need not consider the general awareness element.  But the Amended Complaint's failure to sufficiently plead general awareness is an independent basis requiring dismissal of Count 1.

To plead this element, Plaintiffs must demonstrate that Defendants were "generally aware" that they were "playing a role in an FTO's violent or life-endangering activities." *Newman*, 758 F. Supp. 3d at 1368 (quoting *Linde*, 882 F.3d at 329). Although the Amended Complaint cites to internal chats temporally removed from the Attacks by many years (*see* AC ¶¶ 110, 141, 143), and otherwise makes unsupported and conclusory allegations that BHL "knowingly facilitated transfers of money to Hamas," and "knowingly provided Hamas and PIJ with a platform with which to illicitly accept funds from the United States" (*id.* ¶¶ 169, 320), this is insufficient to plead general awareness. *See Newman*, 758 F. Supp. 3d at 1367-69. Simply put, even if BHL had notice that users associated with Hamas and PIJ were attempting to transact on Binance, the Amended Complaint fails to plausibly allege that BHL was aware it was "assuming a role" in Hamas and PIJ's terrorist activities related to the Attacks. *Linde*, 882 F.3d at 329.

Moreover, when assistance is alleged to have been provided to an FTO's intermediary—which is the most that is alleged here—a plaintiff must show that "(1) the defendant was aware of the intermediary's connection to the terrorist organization, and (2) the intermediary is so closely intertwined with the terrorist organization's illegal activities as to give rise to an inference that the defendant was generally aware of its role in the organization's terrorist activities." *Bernhardt* v. *Islamic Republic of Iran*, 47 F.4th 856, 867-68, 870 (D.C. Cir. 2022) (even where

defendant "had client banks with ties to terrorist organizations and [had] admitted to helping those banks evade U.S. sanctions[,]" it was "not sufficient for aiding and abetting liability under the ATA"). Here, at most, the Amended Complaint alleges that BHL permitted certain unnamed customers with undefined "associations" with Hamas or PIJ to conduct routine transactions on Binance; and that at some unspecified point in time, BHL learned of these users' supposed "association" with Hamas or PIJ. (*See, e.g.*, AC ¶ 140 ("Crypto wallets at Binance were found to interact with bitcoin wallets associated with groups designated as terrorist organizations by the US and several other countries[.]"); *see also id.* ¶ 161 (noting that "transactions frequently involved complex, multi-step processes" that "masked transaction origins[] and concealed the ultimate recipients" before the "cryptocurrency ultimately reached the wallets controlled by Hamas and [PIJ]")). The Amended Complaint does not identify these supposed intermediaries, how they were supposedly connected to an FTO, or when BHL supposedly learned of this connection. This is not enough to allege general awareness.[14]

---

[14]  The lack of specificity in Plaintiffs' pleading (particularly after an amendment) stands in stark contrast to ATA cases where general awareness was adequately alleged, based on allegations that the defendants were contemporaneously aware that their customers were closely linked to FTOs. For example, the Supreme Court in *Twitter* concluded that general awareness had been pled where the complaint identified specific users and accounts on the defendants' social media platforms that openly and unambiguously supported ISIS, 598 U.S. at 497, including, for example, Twitter accounts in the name of "Al-Hayat Media Center," ISIS's official public relations group. (*See* Amended Complaint at ¶¶ 14-17, *Taamneh* v. *Twitter, Inc.*,

## VI.    THE AMENDED COMPLAINT FAILS TO STATE A CONSPIRACY CLAIM UNDER THE ATA (COUNT 2).

JASTA also imposes civil liability on defendants who "conspire[d] with the person who committed [the] act of international terrorism" that injured the plaintiff. 18 U.S.C. § 2333(d)(2).  To plead a conspiracy claim, Plaintiffs must plausibly allege: "(1) an agreement between two or more persons; (2) to participate in an unlawful act; (3) an injury caused by an unlawful overt act performed by one of the parties to the agreement; (4) which overt act was done pursuant to and in furtherance of the common scheme." *Newman*, 758 F. Supp. 3d at 1373-74.  Here, the Amended Complaint's conspiracy claim fails to plead facts plausibly supporting the existence of either an agreement to commit acts of terror, or an overt act in furtherance of that agreement.

---

No. 3:17 Civ. 04107 (EMC) (N.D. Cal. May 16, 2018), ECF No. 55).  Likewise, in *Kaplan*, plaintiffs' complaint identified specific bank customers with strong ties to Hezbollah, which were evident from public reporting.    *Kaplan* v. *Lebanese Canadian Bank, SAL*, 999 F.3d 842, 849-50 (2d Cir. 2021).  And in *Honickman* v. *BLOM Bank SAL*, where the Second Circuit determined the complaint **failed** to allege general awareness, plaintiffs' complaint still identified specific customers that plaintiffs alleged had longstanding ties to Hamas.  6 F.4th 487, 491-92, 501 (2d Cir. 2021); *see also BLOM Bank SAL* v. *Honickman*, 605 U.S. ___, 2025 WL 1583305, at *2 (June 5, 2025) (confirming that, where plaintiff had repeatedly affirmed they would not seek to amend their complaint if it were dismissed, district court properly denied plaintiff's leave to amend for failure to demonstrate "extraordinary circumstances" as required for Rule 60(b)(6)).

### A. Plaintiffs Do Not Allege an Agreement Between BHL and FTOs to Commit Acts of International Terrorism.

Pleading an agreement in a JASTA conspiracy claim requires plausible allegations that the coconspirators were "pursuing the same object"—namely, "an agreement . . . to carry out [a] scheme of international terrorism." *Id.* Here, the Amended Complaint offers only a barebones conclusion regarding the alleged conspiracy (AC ¶ 343), but does not allege facts supporting any agreement at all between BHL and the FTOs—let alone an agreement to commit terrorism. This by itself is fatal to the conspiracy claim, which requires Plaintiffs to plead an agreement with a common goal of committing terrorism. *Newman*, 758 F. Supp. 3d at 1375 (dismissing JASTA conspiracy claim that "fail[ed] to plausibly allege any agreement to commit an act of international terrorism"); *Zobay*, 695 F. Supp. 3d at 355 (same).

At most, the Amended Complaint alleges that BHL "prioritize[d] commercial success over compliance with U.S. law" and evaded AML requirements, while the FTOs sought to commit acts of terror. (*Compare* AC ¶ 104, *with id.* ¶ 7). Courts routinely reject comparable JASTA conspiracy claims, where the supposed coconspirators' "objectives are wholly orthogonal to one another." *Bernhardt*, 47 F.4th at 873; *see also Freeman* v. *HSBC Holdings PLC*, 57 F.4th 66, 79-80 (2d Cir. 2023), *cert. denied*, 144 S. Ct. 83 (2023); *Kemper*, 911 F.3d at 395.

Moreover, even assuming that BHL had notice that FTOs were using the Binance exchange in real-time (which the Amended Complaint fails to plausibly

allege), that would still be insufficient to state a JASTA conspiracy claim, since allegations of mere knowledge "do not permit [an] inference that [BHL] agreed with [Hamas or PIJ], expressly or impliedly, [to commit acts of terror]." *In re Chiquita Brands International, Inc.*, 284 F. Supp. 3d 1284, 1316 (S.D. Fla. 2018); *see also Freeman*, 57 F.4th at 79 (no conspiracy where bank processed transactions for known terrorist affiliates).  Accordingly, Plaintiffs' conspiracy claim should be dismissed for failure to plausibly allege an agreement.

### B. Plaintiffs Fail to Allege an Overt Act in Furtherance of an Agreement to Commit Terrorism.

The JASTA conspiracy claim must be dismissed for the additional reason that Plaintiffs fail to adequately plead "an overt act" in "furtherance of the common scheme" to commit an act of terrorism. *Newman*, 758 F. Supp. 3d at 1373-74. "[T]he overt act must be the act of international terrorism that injures the plaintiff." *Bernhardt*, 47 F.4th at 873.

Even if Plaintiffs had adequately alleged an agreement between BHL and the FTOs—which they have not, and cannot—Plaintiffs' conspiracy claim would still fail because they do not and cannot plausibly allege the Attacks were "the overt act that furthered a conspiracy between [BHL] and [the FTOs]." *Id.* (S*ee* AC ¶¶ 1; 44-68).  It is simply not "plausible to infer" that a series of barbaric attacks on civilians in Israel would "further [BHL's] alleged objective of maximizing profits through the evasion of [various U.S. financial regulations]." *Bernhardt*, 47 F.4th at 873; *see also*

*Freeman*, 57 F.4th at 82. Given the failure to plead an overt act, Plaintiffs' conspiracy claim must be dismissed on this independent ground.

## VII.   PLAINTIFFS' CLAIM UNDER THE ATS FAILS FOR LACK OF JURISDICTION (COUNT 5).

The ATS provides that "[t]he district courts shall have original jurisdiction of any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States." 28 U.S.C. § 1350. The ATS "is a strictly jurisdictional statute"—*i.e.*, it does not provide for an independent cause of action— rather it "empowers federal courts to recognize [a very limited number of] private claims under federal common law." *Doe* v. *Drummond Co.*, 782 F.3d 576, 583 (11th Cir. 2015).

In *Jesner* v. *Arab Bank, PLC*, the Supreme Court held unequivocally that foreign corporations cannot be sued under the ATS. 584 U.S. at 272 ("[T]he Court holds that foreign corporations may not be defendants in suits brought under the ATS."). As Plaintiffs themselves concede, BHL is a Cayman Islands company. (AC ¶ 81). It therefore cannot be sued under the ATS. *See Alvarez Galvez* v. *Fanjul Corp.*, 533 F. Supp. 3d 1268, 1276 (S.D. Fla. 2021) (dismissing ATS claim against a British Virgin Islands corporation for lack of subject matter jurisdiction) (citing *Jesner*, 584 U.S. at 272).

To avoid burdening the Court with duplicative briefing, BHL adopts and joins in BAM's argument that Plaintiffs' claims under the ATS fail to overcome the

presumption against extraterritoriality, and are otherwise insufficiently pled.  (BAM Br. at Section II.E).

## VIII.    THE AMENDED COMPLAINT FAILS TO STATE A CLAIM FOR NEGLIGENCE/WANTONNESS (COUNT 6).[15]

The Amended Complaint repleads Plaintiffs' deficient claim for negligent infliction of emotional distress (which BHL's original motion demonstrated is not cognizable under Alabama state law) with an equally defective claim for negligence/wantonness.  This claim also fails and should be dismissed.

As a preliminary matter, Plaintiffs assert these two distinct causes of action in the same count (it is not clear whether they are pleaded separately or in the alternative), but "[n]egligence and wantonness, plainly and simply, are qualitatively different tort[s]." *Ex parte Essary*, 992 So. 2d 5, 9 (Ala. 2007).  The failure to plead negligence and wantonness separately constitutes a "quintessential shotgun pleading" in violation of Federal Rule of Civil Procedure 10(b) .  *Weiland* v. *Palm*

---

[15] Although the Amended Complaint is unclear about what law Plaintiffs believe applies to their negligence/wantonness claim, BHL assumes for purpose of this motion that it is Alabama state law because:  (1) in opposing transfer of this action to the Southern District of New York, Plaintiffs relied, in part, on their "Alabama state law claim" (ECF No. 35, at 15), and (2) Plaintiffs have not filed a notice under Fed. R. Civ. P. 44.1 reflecting an intention to rely upon foreign law, despite BHL having raised this issue in its motion to dismiss Plaintiffs' prior complaint (ECF No. 77, at 33 n.12).

*Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1323 n.13 (11th Cir. 2015) (collecting authority).

Moreover, Plaintiffs fail to adequately plead either cause of action. "To establish negligence, the plaintiff must prove: (1) a duty to a foreseeable plaintiff; (2) a breach of that duty; (3) proximate causation; and (4) damage or injury. To establish wantonness, the plaintiff must prove that the defendant, with reckless indifference to the consequences, consciously and intentionally did some wrongful act [which] proximately cause[d] the injury of which the plaintiff complains." *Martin* v. *Arnold*, 643 So. 2d 564, 567 (Ala. 1994).

Plaintiffs' negligence claim fails for the independent reason that BHL did not breach a duty of care owed to Plaintiffs. The Amended Complaint does not allege facts that any Plaintiff was a BHL customer, interacted with BHL in any way, or any other facts that would support the existence of a duty. *See Smith* v. *AmSouth Bank, Inc.*, 892 So. 2d 905, 909 (Ala. 2004) ("It is axiomatic that to maintain a negligence claim, one must point to the existence of a duty on the part of the defendant."). Instead, the Amended Complaint appears to suggest that BHL owed some general duty to all "civilians, including the Plaintiffs" here. (AC ¶ 359). Courts in Alabama and across the country have consistently rejected such an expansive theory of negligence. *See, e.g.*, *Chen Jun* v. *Regions Bank*, 2020 WL 5603527, at *7 (N.D. Ala. Sept. 18, 2020) (under Alabama law, one generally does not "owe a duty to

protect another from the criminal acts of a third person"); *id.* at \*9 (federal courts "have overwhelmingly held that know your customer regulations under the Bank Secrecy Act do not impose a duty upon banks to monitor accounts for the benefit of noncustomers"); *In re Terrorist Attacks*, 349 F. Supp. 2d at 830 ("[b]anks do not owe non-customers a duty to protect them from the intentional torts of their customers"); *Burnett* v. *Al Baraka Investment & Development Corp.*, 274 F. Supp. 2d 86, 109 (D.D.C. 2003) ("Plaintiffs offer no support, and we have found none, for the proposition that a bank is liable for injuries done with money that passes through its hands in the form of deposits, withdrawals, check clearing services, or any other routine banking service."); *Stutts* v. *De Dietrich Grp.*, 2006 WL 1867060, at \*15 (E.D.N.Y. June 30, 2006) (an injured plaintiff "must show that the defendant owed not merely a general duty of care to society, but a specific duty that was owed to him or her").[16]

---

[16] To the extent the Amended Complaint suggests BHL owes a general duty to safeguard the public owing from a supposed violation of the material support statutes (*see* AC ¶ 358), that too fails. *See In re Terrorist Attacks on September 11*, 740 F. Supp. 2d 494, 514 n.6 (S.D.N.Y. 2010), *aff'd sub nom. In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 118 (2d Cir. 2013) ("The moving defendants are alleged to have acted knowingly and intentionally in providing material support to al Qaeda. The negligence claim cannot be maintained where, as here, there is no basis to find that these defendants owed a duty to plaintiffs to protect[] them from the intentional torts committed by others.").

Plaintiffs are similarly unable to demonstrate the requisite proximate causation.  *Martin*, 643 So. 2d at 567 ("Proximate cause is an essential element of both negligence claims and wantonness claims.").  The Amended Complaint does not, and cannot, establish that BHL's conduct—providing routine transaction services to individuals or entities with some unidentified affiliation to FTOs— proximately caused Plaintiffs' injuries.  (*See supra* Section IV.B).  This flaw is fatal to both causes of action.  *See, e.g.*, *Davis* v. *Wal-Mart Stores, Inc.*, 64 F. Supp. 2d 1176, 1181 (M.D. Ala. 1999) (dismissing both negligence and wantonness claims simultaneously for lack of proximate cause); *Ellis* v. *Advanced Tech., Servs., Inc.*, 2010 WL 3526169, at \*4 (M.D. Ala. Sept. 3, 2010) (granting motion to dismiss where "both [plaintiff's] negligence and wantonness claims are lacking a basis in proximate causation"); *Abbott* v. *Mega Trucking, LLC*, 2023 WL 2390535, at \*2 (M.D. Ala. Mar. 7, 2023) (denying leave to add claims for negligence and wantonness where plaintiff failed to plead proximate cause); *Borden* v. *CSX Transp., Inc.*, 843 F. Supp. 1410, 1423 n.9 (M.D. Ala. 1993) (granting defendants' motion for summary judgment on negligence and wantonness claims because plaintiff could not establish proximate cause).

Lastly, Plaintiffs' claim fails under a per se theory of negligence as well.[17] *See Cook's Pest Control, Inc.* v. *Rebar*, 28 So. 3d 716, 726 (Ala. 2009) ("To establish

---

[17] Alabama law does not recognize a cause of action for wantonness per se.  *See*

negligence per se, a plaintiff must prove: (1) that the statute the defendant is charged with violating was enacted to protect a class of persons to which the plaintiff belonged; (2) that the plaintiff's injury was the kind of injury contemplated by the statute; (3) that the defendant violated the statute; and (4) that the defendant's violation of the statute proximately caused the plaintiff's injury.").    First, as discussed in Section IV.A, Plaintiffs fail to establish a statutory violation—*i.e.*, BHL did not violate the ATA nor the material support statutes.  And second, as discussed above, the Amended Complaint does not allege proximate cause.

As Plaintiffs are unable to allege any viable theory to sustain this claim, it should also be dismissed.

## CONCLUSION

The Court should dismiss the Amended Complaint with prejudice against BHL.  BHL respectfully requests oral argument on this motion.

---

*Ismail* v. *Ascensionpoint Recovery Servs., LLC*, 2019 WL 5894311, at \*10 (N.D. Ala. Nov. 12, 2019).

Date: June 20, 2025

*/s/ Harlan I. Prater IV*
Harlan I. Prater IV, ASB-7485-T62H
Lightfoot, Franklin & White, LLC
400 20th Street North
Birmingham, AL 35203
(205) 581-0720

CAHILL GORDON & REINDEL LLP
Samson A. Enzer
Anirudh Bansal
Sesi Garimella
32 Old Slip
New York, NY 10005
(212) 701-3125

*Attorneys for Defendant Binance*
*Holdings Limited d/b/a Binance*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing has been filed with the

Court and served by the Court's ECF system, on this the 20th day of June, 2025, on:

David I. Schoen (ASB-0860-O42D)
David I. Schoen, Attorney at Law
2800 Zelda Road, Suite 100-6
Montgomery, AL 36106
(334) 395-6611
schoenlawfirm@gmail.com

Mark Goldfeder (*pro hac vice*)
National Jewish Advocacy Center, Inc.
1718 General George Patton Drive
Brentwood, TN 37027
(800) 269-9895
mark@jewishadvocacycenter.org

Ben Schlager (*pro hac vice forthcoming*)
GOLDFEDER AND TERRY, LLC
666 Harless Place
West Hempstead, NY 11552
(917) 495-5790
ben@goldfederterry.com

*Attorneys for Plaintiffs*

Kenneth D. Sansom (SAN 047)
Michael T. Sansbury (SAN 054)
SPOTSWOOD SANSOM & SANSBURY LLC
Financial Center
505 20th Street North, Suite 700
Birmingham, AL 35203-3329
(205) 986-3620

Athanasia Charmani (*pro hac vice*)
Daniel T. Stabile (*pro hac vice*)

WINSTON & STRAWN, LLP
200 Park Avenue
New York, NY 10166
(212) 294-4659

*Attorneys for Defendant BAM Trading*
*Services, Inc. d/b/a Binance.US*

Teresa Goody Guillén (*pro hac vice*)
Marco Molina (*pro hac vice*)
Joanna F. Wasick (*pro hac vice*)
BAKER & HOSTETLER LLP
45 Rockefeller Plaza
New York, NY 10111
(212) 589-4200

Charles A. Stewart III
BRADLEY ARANT BOULT CUMMINGS LLP
RSA Dexter Avenue Building
445 Dexter Avenue
Suite 9075
Montgomery, AL 36104
(334) 956-7608

*Attorneys for Defendant Changpeng Zhao*