# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | |
|---|---|
| NOACH NEWMAN, et al.,<br><br>　　　　　　Plaintiffs,<br><br>　　v.<br><br>BAM TRADING SERVICES INC. d/b/a BINANCE.US et al.,<br><br>　　　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Case No.: 24-cv-00134-ECM-CWB

**ORAL ARGUMENT REQUESTED**

## BAM TRADING SERVICES INC.'S MOTION TO DISMISS THE AMENDED COMPLAINT AND SUPPORTING MEMORANDUM OF LAW

## <u>TABLE OF CONTENTS</u>

**Page**

I.    INTRODUCTION AND BACKGROUND ...................................................1

II.    ARGUMENT.........................................................................................6

    A.    The Amended Complaint Should Be Dismissed Pursuant to Rule 8 and Rule 10 Because It Is an Impermissible "Shotgun" Pleading. ..................................................................................6

    B.    The Complaint Should Be Dismissed Pursuant to Rule 12(b)(2) Because the Court Does Not Have Personal Jurisdiction over BAM. .......................................................................................8

        1.    There Is No General Jurisdiction over BAM in Alabama. .......11

        2.    There Is No Specific Jurisdiction over BAM or Jurisdiction under FRCP 4(k)(1)(C). ........................................14

    C.    The Complaint Should Be Dismissed Pursuant to Rule 12(b)(6) Because It Fails to State a Claim Against BAM. ................................18

        1.    Plaintiffs Fail to State an ATA/JASTA Claim Against BAM....................................................................................19

            a.    The Complaint Fails to Allege Aiding-and-Abetting Liability under the ATA/JASTA (Count I). ..............................19

            b.    The Complaint Fails to State a Claim for Conspiracy under the ATA/JASTA (Count II)........................................................26

            c.    Plaintiffs Fail to State a Claim for Primary Liability under the ATA (Counts III and IV)........................................................28

        2.    Plaintiffs Fail to State a Claim for Negligence/Wantonness (Count VI). ...................................................................................32

            a.    Plaintiffs Fail to State a Claim for Negligence .................32

            b.    Plaintiffs Fail to State a Claim for Wantonness ................37

             c.    Plaintiffs Cannot Recover for Emotional Injuries Under Alabama's "Zone-of-Danger" Test. ..........................................38

D.    Plaintiffs Fail to Establish that BAM Is the "Alter Ego" of BHL or Mr. Zhao ........................................................................39

    1.    Plaintiffs Cannot Establish that BAM Is an Alter Ego for Jurisdictional Purposes............................................43

    2.    Plaintiffs Cannot Establish that BAM Is an Alter Ego for Liability Purposes. ...................................................52

E.    The Court Lacks Subject Matter Jurisdiction over Plaintiffs' ATS Claim (Count V). ...............................................................55

III.    CONCLUSION.................................................................59

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AALAR Ltd., Inc. v. Francis*,
  716 So. 2d 1141 (Ala. 1998)................................................................39

*Adams v. Alcolac, Inc.*,
  2019 WL 4774006 (S.D. Tex. Sep. 6, 2019) ......................................31

*Associated Transp. Line, Inc. v. Productos Fitosanitarios Proficol El
  Carmen, S.A.*,
  197 F.3d 1070 (11th Cir. 1999) ....................................................13, 15

*Averbach v. Cairo Amman Bank*,
  2020 WL 1130733 (S.D.N.Y. Mar. 9, 2020).......................................33

*Baloco v. Drummond Co., Inc.*,
  767 F.3d 1229 (11th Cir. 2014) ..........................................................58

*Barmapov v. Amuial*,
  986 F.3d 1321 (11th Cir. 2021) ............................................................6

*Beasley v. Providence Hosp.*,
  2018 WL 2994380 (S.D. Ala. June 13, 2018) .....................................11

*Bernhardt v. Islamic Republic of Iran*,
  47 F.4th 856 (D.C. Cir. 2022)........................................................22, 28

*Cable/Home Commc'n Corp. v. Network Prods., Inc.*,
  902 F.2d 829 (11th Cir. 1990) ............................................................17

*Carmouche v. Tamborlee Mgmt., Inc.*,
  789 F.3d 1201 (11th Cir. 2015) ..........................................................11

*Chen Jun v. Regions Bank*,
  2020 WL 5603527 (N.D. Ala. Sep. 18, 2020)................................36, 37

*In re Chiquita Brands Int'l, Inc.*,
  284 F. Supp. 3d 1284 (S.D. Fla. 2018)................................................27

*In re Chiquita Brands Int'l Inc.*,
  792 F. Supp. 2d 1301 (S.D. Fla. 2011) .........................................................57, 58

*In re Chiquita Brands Int'l Inc. Alien Tort Statute & Shareholders*
  *Deriv. Litig.*,
  2022 WL 22236064 (S.D. Fla. Aug. 23, 2022) ....................................................59

*In re Chiquita Brands Int'l Inc. Alien Tort Statute & Shareholders*
  *Deriv. Litig.*,
  690 F. Supp. 2d 1296 (S.D. Fla. 2010) ...............................................................26

*Cleveland-Cliffs Burns Harbor LLC v. Boomerang Tube, LLC*,
  2023 WL 5688392 (Del. Ch. Sep. 5, 2023) ........................................................55

*Comeens v. HM Operating, Inc.*,
  2014 WL 12650102 (N.D. Ala. Dec. 1, 2014) ....................................................39

*Consol. Dev. Corp. v. Sherritt, Inc.*,
  216 F.3d 1286 (11th Cir. 2000) ..........................................................................10

*Cox v. CoinMarketCap OpCo, LLC*,
  2023 WL 1929551 (D. Ariz. Feb. 10, 2023), *rev'd in part on other*
  *grounds by* 112 F.4th 822 (9th Cir. 2024) ....................................................40, 50

*Dickinson v. Land Devs. Constr. Co.*,
  882 So. 2d 291 (Ala. 2003) .................................................................................33

*Doe I v. Cisco Sys.*,
  113 F.4th 1230 (9th Cir. 2024) ...........................................................................56

*Doe v. Cisco Sys.*,
  73 F.4th 700 (9th Cir. 2023) ...............................................................................58

*Doe v. Drummond Co.*,
  782 F.3d 576 (11th Cir. 2015) .......................................................................56, 59

*Douglas v. Yates*,
  535 F.3d 1316 (11th Cir. 2008) ..........................................................................18

*Durham v. LG Chem., Ltd.*,
  2022 WL 274498 (11th Cir. Jan. 31, 2022) ........................................................15

*E.H. v. Overlook Mountain Lodge*,
 638 So. 2d 781 (Ala. 1994) .................................................................37

*ECB USA, Inc. v. Savencia, S.A.*,
 2025 WL 254504 (D. Del. Jan. 16, 2025) ..........................................41

*Est. of Amergi v. Palestinian Auth.*,
 611 F.3d 1350 (11th Cir. 2010) ..........................................................57

*Freeman ex rel. Est. of Freeman v. HSBC Holdings PLC*,
 57 F.4th 66 (2d Cir. 2023) ............................................................26, 27

*Euroboor B.V. v. Grafova*,
 2021 WL 4325694 (N.D. Ala. Sep. 23, 2021) .....................................40

*First Health, Inc. v. Blanton*,
 585 So. 2d 1331 (Ala. 1991) ...........................................40, 43, 44, 45

*Freeman v. HSBC Holdings PLC*,
 413 F. Supp. 3d 67 (E.D.N.Y. 2019) ..................................................28

*Freeman v. HSBC Holdings PLC*,
 465 F. Supp. 3d 220 (E.D.N.Y. 2020) ................................................24

*Fuld v. Palestine Liberation Org.*,
 2025 WL 1716140 (U.S. June 20, 2025) ................................15, 16, 17

*Fullman v. Graddick*,
 739 F.2d 553 (11th Cir. 1984) ............................................................26

*Gadsden v. Home Pres. Co.*,
 2004 WL 485468 (Del. Ch. Feb. 20, 2004) .........................................55

*Galvez v. Fanjul Corp.*,
 533 F. Supp. 3d 1268 (S.D. Fla. 2021) ...............................................58

*Gardner v. MGC Mortg., Inc.*,
 2013 WL 800741 (M.D. Ala. Mar. 4, 2013) ........................................37

*Gilbert v. James Russell Motors, Inc.*,
 812 So. 2d 1269 (Ala. Civ. App. 2001) ..................................40, 49, 50

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
   564 U.S. 915 (2011) .................................................................................... 11, 12

*Gracey v. Albawardi*,
   2024 WL 5116368 (Del. Ch. Dec. 13, 2024) ..................................................... 40

*Ex parte Grand Manor, Inc.*,
   778 So. 2d 173 (Ala. 2000) ............................................................................ 39

*Guarini v. Doe*,
   634 F. Supp. 3d 1100 (S.D. Fla. 2022) ............................................................ 41

*Haggai v. Kiswani*,
   No. 25-cv-02400 (S.D.N.Y. May 29, 2025) ......................................................... 8

*Halberstam v. Welch*,
   705 F.2d 472 (D.C. Cir. 1983) ................................................................... 20, 26

*Harris v. Liberty Home Equity Sols., Inc.*,
   2018 WL 4075903 (N.D. Ala. Aug. 27, 2018) ..................................................... 37

*Heisz v. Galt Indus.*,
   93 So. 3d 918 (Ala. 2012) .............................................................................. 46

*HomeBingo Network, Inc. v. Chayevsky*,
   428 F. Supp. 2d 1232 (S.D. Ala. 2006) ............................................................ 14

*Int'l Shoe Co. v. Washington*,
   326 U.S. 310 (1945) ...................................................................................... 10

*Ismail v. Ascensionpoint Recovery Servs., LLC*,
   2019 WL 5894311 (N.D. Ala. Nov. 12, 2019) ..................................................... 32

*Jesner v. Arab Bank*,
   584 U.S. 241 (2018) ...................................................................................... 57

*JPMorgan Chase Bank, N.A. v. Ballard*,
   213 A.3d 1211 (Del. Ch. 2019) ....................................................................... 41

*Kabbaj v. Obama*,
   568 F. App'x 875 (11th Cir. 2014) ..................................................................... 7

*Keenan v. Matchmaker Int'l, Inc. of Mobile*,
  1999 WL 33590522 (S.D. Ala. Jan. 20, 1999) ....................................................47

*Kent v. Callaway Gardens Resort, Inc.*,
  2009 WL 10688923 (N.D. Ala. Apr. 3, 2009)........................................10, 12, 14

*Kiobel v. Royal Dutch Petroleum Co.*,
  569 U.S. 108 (2013)...........................................................................................59

*Kirksey v. Schindler Elevator Corp.*,
  2016 WL 3189242 (S.D. Ala. June 7, 2016) ....................................................35

*Kuklinski v. Binance Cap. Mgmt.*,
  2023 WL 2788654 (S.D. Ill. Apr. 4, 2023)........................................................40

*Landgarten v. York Rsch. Corp.*,
  1988 Del. Ch. LEXIS 20 (Del. Ch. Feb. 3, 1988) ............................................54

*Lee v. Foris DAX, Inc.*,
  2025 WL 1084794 (N.D. Cal. Apr. 10, 2025)....................................................37

*Lelchook v. Lebanese Canadian Bank*,
  2024 WL 967078 (S.D.N.Y. Mar. 6, 2024)........................................................34

*Leslie v. Telephonics Office Techs., Inc.*,
  1993 WL 547188 (Del. Ch. Dec. 30, 1993) ......................................................54

*Licci v. Lebanese Canadian Bank, SAL*,
  673 F.3d 50 (2d Cir. 2012) ...............................................................................29

*Linde v. Arab Bank, PLC*,
  882 F.3d 314 (2d Cir. 2018) ................................................................23, 28, 29

*Mack v. CooperSurgical, Inc.*,
  2023 WL 2653365 (M.D. Ala. Mar. 27, 2023) ..................................................43

*Madara v. Hall*,
  916 F.2d 1510 (11th Cir. 1990) ...........................................................................9

*Madison Cnty. Commc'ns Dist. v. CenturyLink, Inc.*,
  2012 WL 6685672 (N.D. Ala. Dec. 20, 2012) .............................................47, 49

*Ex parte Maint. Grp., Inc.*,
  261 So. 3d 337 (Ala. 2017)................................................................17

*Manichaean Cap., LLC v. Exela Techs., Inc.*,
  251 A.3d 694 (Del. Ch. 2021) ...........................................................53

*Marlin v. Moody Nat'l Bank, N.A.*,
  2006 WL 2382325 (S.D. Tex. Aug. 16, 2006) .............................36, 37

*Martin v. Arnold*,
  643 So. 2d 564 (Ala. 1994).............................................................36, 37

*Maxus Liquidating Tr. v. YPF S.A. (In re Maxus Energy Corp.)*,
  641 B.R. 467 (Bankr. D. Del. 2022)................................................53, 55

*Meeks v. Budco Grp.*,
  631 So. 2d 916 (Ala. 1993)...............................................................44

*Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*,
  288 F.3d 1264 (11th Cir. 2002) .........................................................43

*Messick v. Moring*,
  514 So. 2d 892 (Ala. 1987)................................................................43

*MGF Healthcare Partners, Inc. v. Blue Ridge Healthcare
  Birmingham, LLC*,
  542 F. Supp. 3d 1237 (N.D. Ala. 2021)..............................................47

*Molex Co., LLC v. Andress*,
  887 F. Supp. 2d 1189 (N.D. Ala. 2012)..............................................17

*Moore v. eNom, Inc.*,
  2007 WL 9711946 (N.D. Ala. Nov. 9, 2007).....................................18

*N. Am. Sugar Indus., Inc. v. Xinjiang Goldwind Sci. & Tech. Co.*,
  124 F.4th 1322 (11th Cir. 2025) ..........................................................2

*Nestle USA, Inc. v. Doe*,
  593 U.S. 628 (2021).....................................................................58, 59

*Newman v. Associated Press*,
  758 F. Supp. 3d 1357 (S.D. Fla. 2024).............................22, 27, 30, 31

*Nippon Credit Bank, Ltd. v. Matthews*,
  291 F.3d 738 (11th Cir. 2002) ...........................................................................11

*O'Sullivan v. Deutsche Bank AG*,
  2019 WL 1409446 (S.D.N.Y. Mar. 28, 2019)....................................................28

*Oxford Asset Mgmt. v. Jaharis*,
  297 F.3d 1182 (11th Cir. 2002) .........................................................................29

*Pruitt v. AAA Interstate Transp., LLC*,
  358 So. 3d 1144 (Ala. 2022)..............................................................................13

*Pruitt v. Oliver*,
  331 So. 3d 99 (Ala. 2021)..................................................................................34

*Republic of Panama v. BCCI Holdings (Lux.) S.A.*,
  119 F.3d 935 (11th Cir. 1997) .......................................................................9, 18

*Reynolds v. Binance Holdings, Ltd.*,
  481 F. Supp. 3d 997 (N.D. Cal. 2020)....................................................40, 48, 50

*Ridgeway v. CSX Transp., Inc.*,
  723 So. 2d 600 (Ala. 1998).................................................................................38

*Roche Diagnostics Corp. v. Priority Healthcare Corp.*,
  2019 WL 5102836 (N.D. Ala. Oct. 11, 2019) .....................................................9

*Rogers v. Nacchio*,
  241 F. App'x 602 (11th Cir. 2007) .....................................................................18

*Rothstein v. UBS AG*,
  708 F.3d 82 (2d Cir. 2013), *superseded by statute on other grounds* ...............31

*Rotor Blade, LLC v. Signature Util. Servs., LLC*,
  545 F. Supp. 2d 1202 (N.D. Ala. 2021)..............................................................46

*Ruiz de Molina v. Merritt & Furman Ins. Agency, Inc.*,
  207 F.3d 1351 (11th Cir. 2000) .........................................................................10

*S. Ala. Pigs, LLC v. Farmer Feeders, Inc.*,
  305 F. Supp. 2d 1252 (M.D. Ala. 2004)..............................................................49

*Saperstein v. Palestinian Auth.*,
  2006 WL 3804718 (S.D. Fla. Dec. 22, 2006) .....................................................57

*SEC v. Binance Holdings Ltd.*,
  738 F. Supp. 3d 20 (D.D.C. 2024) .....................................................................52

*SEC v. Torchia*,
  729 F. App'x 772 (11th Cir. 2018) .....................................................................44

*Shorter Bros. v. Vectus 3, Inc.*,
  343 So. 3d 508 (Ala. 2021) .................................................................................41

*Siegel v. HSBC N. Am. Holdings, Inc.*,
  933 F.3d 217 (2d Cir. 2019) ...............................................................................24

*Simmons v. Clark Equip. Credit Corp.*,
  554 So. 2d 398 (Ala. 1989) ...........................................................................44, 48

*Smith & Wesson Brands, Inc. v. Estados Unidos Mexicanos*,
  605 U.S. --, 2025 WL 1583281 (June 5, 2025) ...........................................*passim*

*Smith v. AmSouth Bank, Inc.*,
  892 So. 2d 905 (Ala. 2004) .................................................................................36

*Snow v. DirecTV, Inc.*,
  450 F.3d 1314 (11th Cir. 2006) ..........................................................................46

*Sosa v. Alvarez-Machain*,
  542 U.S. 692 (2004) ............................................................................................57

*Stewart v. Bureaus Inv. Grp., LLC*,
  2015 WL 7572312 (M.D. Ala. Nov. 24, 2015) ...................................................44

*Strauss v. Crédit Lyonnais, S.A.*,
  379 F. Supp. 3d 148 (E.D.N.Y. 2019) ...........................................................23, 30

*In re Terrorist Attacks on Sep. 11, 2001*,
  714 F.3d 118 (2d Cir. 2013) ..........................................................................31, 57

*Thornton v. Bayerische Moteren Werke AG*,
  439 F. Supp. 3d 1303 (N.D. Ala. 2020) ..............................................................49

*Tillery v. Mar. Grp.*,
  1996 U.S. Dist. LEXIS 3630 (S.D. Ala. Jan. 29, 1996) ..................................12

*Trs. of Arden v. Unity Constr. Co.*,
  2000 Del. Ch. LEXIS 7 (Del. Ch. Jan. 26, 2000) ................................................54

*Twitter, Inc. v. Taamneh*,
  598 U.S. 471 (2023)......................................................................................*passim*

*United Techs. Corp. v. Mazer*,
  556 F.3d 1260 (11th Cir. 2009) ...........................................................................9

*Walden v. Fiore*,
  571 U.S. 277 (2014)......................................................................4, 13, 15, 16

*Waldman v. Palestine Liberation Org.*,
  835 F.3d 317 (2d Cir. 2016) ....................................................................15, 16, 18

*Wallace v. Wood*,
  752 A.2d 1175 (Del. Ch. 1999) .........................................................................53

*Weiland v. Palm Beach Cnty. Sheriff's Off.*,
  792 F.3d 1313 (11th Cir. 2015) .......................................................................6, 7

*Weiss v. Nat'l Westminster Bank*,
  993 F.3d 144 (2d Cir. 2021) ...............................................................................30

*Wenske v. Blue Bell Creameries, Inc.*,
  2018 WL 5994971 (Del. Ch. Nov. 13, 2018) ....................................................54

*Whatley v. Ohio Nat'l Life Ins. Co.*,
  2019 WL 6173500 (M.D. Ala. Nov. 19, 2019), *aff'd*, 851 F. App'x
  910 (11th Cir. 2021).............................................................................................12

*Wildman v. Deutsche Bank Aktiengesellschaft*,
  2022 WL 17993076 (E.D.N.Y. Dec. 29, 2022), *appeal docketed*,
  No. 23-132 (2d Cir. Jan. 30, 2023) ....................................................................22

*Winberry v. United Collection Bureau, Inc.*,
  697 F. Supp. 2d 1279 (M.D. Ala. 2010).............................................................33

*Wright v. Alan Mills, Inc.*,
  567 So. 2d 1318 (Ala. 1990)........................................................................45, 48

*Zatarain v. Swift Transp., Inc.*,
  776 F. Supp. 2d 1282 (M.D. Ala. 2011) .............................................................33

*Zobay v. MTN Grp. Ltd.*,
  695 F. Supp. 3d 301 (E.D.N.Y. 2023) ...............................................................28

**Statutes**

18 U.S.C. § 2333(a) ...........................................................................................29, 34

18 U.S.C. § 2334(a) ....................................................................................................14

18 U.S.C. § 2339A .................................................................................................31, 57

18 U.S.C. § 2339B .................................................................................................32, 57

28 U.S.C. § 1350 .........................................................................................................56

N.D. Cent. Code § 13-09.1-01(7) ...............................................................................51

**Other Authorities**

Ala. R. Civ. P. 4.2 ........................................................................................................8

Ala. R. Civ. P. 4.2(b) ...................................................................................................8

Fed. R. Civ. P. 4(k)(1)(C) ...............................................................................8, 14, 15

Fed. R. Civ. P. 8 ...............................................................................................1, 6, 60

Fed. R. Civ. P. 8(a).............................................................................................2, 6, 7

Fed. R. Civ. P. 10 .............................................................................................1, 6, 60

Fed. R. Civ. P. 10(b)..............................................................................................2, 6

Fed. R. Civ. P. 12(b)(1)......................................................................................1, 60

Fed. R. Civ. P. 12(b)(2).................................................................................*passim*

Fed. R. Civ. P. 12(b)(6).................................................................................*passim*

Pursuant to Federal Rules of Civil Procedure ("FRCP") 8 and 10, 12(b)(1), 12(b)(2), and 12(b)(6), Defendant BAM Trading Services Inc. d/b/a Binance.US ("BAM") moves the Court to dismiss BAM from this action with prejudice. As discussed below, the Court should dismiss BAM because: (i) the Amended Complaint ("AC") is an impermissible "shotgun" pleading, (ii) the Court lacks personal jurisdiction over BAM, and (iii) the federal and state claims against BAM fail to state a claim. Additionally, the Court lacks subject matter jurisdiction over Plaintiffs' Alien Tort Statute claim.

## I.    INTRODUCTION AND BACKGROUND

BAM unequivocally condemns terrorism in all forms and deeply sympathizes with the victims of the devastating October 7, 2023 attacks perpetrated by Hamas and the Palestinian Islamic Jihad ("PIJ") that form the basis of the Amended Complaint. However, BAM has no connection to these acts and is not responsible for them under any theory of liability.

The Amended Complaint, as its predecessor, attempts to conflate BAM with its codefendants, Binance Holdings, Ltd. ("BHL") and Mr. Zhao. But, as Plaintiffs themselves acknowledge, BAM operates "a separate exchange designed to comply with all US federal laws" that is "authorized to do business" in most of the United States. (AC ¶ 94.) As discussed below and in the supporting declaration of BAM's

Chief Operating Officer,[1] BAM maintains entirely separate operations and activities from BHL and BHL's non-U.S. exchange, Binance.com. *See infra* Section II(D).

The Amended Complaint fails to cure the Complaint's fatal flaw as to BAM: it does not identify any BAM transactional activity or customer, and it contains no allegation that BAM was utilized by Hamas or any terrorist organization in any way. There are no allegations regarding conduct *by BAM* sufficient to establish personal jurisdiction in this Court or liability for the attacks at issue, and BAM should be dismissed from this action for several independent reasons.

As an initial matter, the Amended Complaint is a quintessential "shotgun" pleading, which is "flatly forbidden" in the Eleventh Circuit as violative of Rule 8(a) and Rule 10(b). In an apparent effort to bolster its deficient allegations by lumping together all Defendants, the Amended Complaint adds scores of pages of allegations, but it continues to assert all claims against all Defendants without attributing conduct to any particular party. *See infra* Section II(A). BAM is not even mentioned in any of the paragraphs describing the six causes of action. (AC ¶¶ 331-65.)

Plaintiffs further attempt to conflate these separate entities (and Mr. Zhao) through a disfavored alter ego/veil-piercing theory. In this regard, Plaintiffs rely

---

[1] References to the "Blodgett Declaration" or "Decl." refer to the Declaration of Christopher Blodgett, submitted as Exhibit A in support of BAM's Motion to Dismiss pursuant to Rule 12(b)(2). *See N. Am. Sugar Indus., Inc. v. Xinjiang Goldwind Sci. & Tech. Co.*, 124 F.4th 1322, 1333 (11th Cir. 2025) ("[T]he defendant challenging [personal] jurisdiction may submit affidavit evidence in support of its position at the pleading stage.") (internal quotation omitted).

heavily on governmental proceedings against "Binance" (*e.g.*, AC ¶¶ 72, 73, 86, 87, 96, 119), but BAM was not a target of (or party to) any of those proceedings.[2] Referencing these proceedings against BHL and Mr. Zhao, Plaintiffs assert that BAM was part of a "scheme" to deceive regulators. (*See, e.g.*, AC ¶ 92.) But Plaintiffs themselves allege that BAM's primary role in this purported scheme was merely passive, serving as a regulatory "smokescreen" because BAM was "designed *to comply* with all applicable US federal laws" and was subject to U.S. regulatory oversight. (*Id.* ¶¶ 105, 178; *see also id.* ¶ 191 (alleging that BAM was intended to provide U.S. regulators "a direct avenue . . . to reach/hammer").)

The AC does not contest what numerous other courts have recognized: BAM (i) maintains legitimate business operations separate from BHL (i.e., a functioning, regulated U.S. cryptocurrency exchange); (ii) observes corporate formalities; and (iii) is adequately capitalized, rather than a mere shell designed to evade liability.

---

[2] *See, e.g.*, Consent Order, *CFTC v. Zhao*, No. 23-cv-01887 (N.D. Ill. Dec. 14, 2023), ECF No. 80; Plea Agreement, *United States v. Binance Holdings Ltd.*, No. 23-cr-00178 (W.D. Wash. Nov. 21, 2023), ECF No. 23; Plea Agreement, *United States v. Changpeng Zhao*, No. 23-cr-00179 (W.D. Wash. Nov. 21, 2023), ECF No. 31; FinCEN Consent Order, *In re Binance Holdings Ltd.*, No. 2023-04 (Nov. 21, 2023); OFAC Settlement Agreement (Nov. 21, 2023), https://ofac.treasury.gov/system/files/2023-11/20231121_binance_settlement.pdf. Plaintiffs also reference SEC litigation against both BHL and BAM. *See* AC ¶ 71 (citing Compl., *SEC v. Binance Holdings Ltd.*, No. 23-cv-01599 (June 5, 2023), ECF No. 1). That litigation is irrelevant to this action and did not involve allegations of terrorism; instead, it arose from the SEC's attempt to reclassify cryptocurrencies as "securities." In any event, the SEC recently dismissed the action against BAM with prejudice. *See SEC Announces Dismissal of Civil Enforcement Action Against Binance Entities and Founder Changpeng Zhao*, U.S. Sec. & Exch. Comm'n (May 29, 2025), https://www.sec.gov/enforcement-litigation/litigation-releases/lr-26316.

These uncontested facts are fatal to Plaintiffs' alter ego allegations. *See infra* Section II(D).

Next, the Amended Complaint fails to allege a basis for personal jurisdiction over BAM. BAM—a Delaware company with its headquarters in Florida—is not "at home" in Alabama and therefore is not subject to general personal jurisdiction. It is equally clear that BAM's contacts with Alabama and the United States as a whole are insufficient to subject it to personal jurisdiction under the Alabama long-arm provision or a "nationwide contacts" theory. Both bases require the defendant's "*suit-related conduct*" to "create a substantial connection with the forum." *Walden v. Fiore*, 571 U.S. 277, 284 (2014).[3] BAM is not alleged to have engaged in *any* suit-related conduct, so its thin connections with Alabama (and its connections with the United States) are plainly insufficient to satisfy the stringent due process requirements. *See infra* Section II(B).

On the substance of the allegations, Plaintiffs' claims should also be dismissed pursuant to Rule 12(b)(6) because the Amended Complaint fails to state a claim against BAM. Every claim suffers from the same incurable defect: the minimal allegations against BAM do not meet the elements necessary to establish liability.

With respect to their claims for aiding and abetting under the Anti-Terrorism Act ("ATA") and the Justice Against Sponsors of Terrorism Act ("JASTA") (Count

---

[3] All emphasis in quotations is added unless otherwise indicated.

I), Plaintiffs fail to connect BAM's conduct to the attacks or the terrorists that perpetrated them. The Supreme Court recently reiterated "[the] canonical formulation" that "an aider and abettor must participate in a crime as in something that he wishes to bring about and seek by his action to make it succeed." *Smith & Wesson Brands, Inc. v. Estados Unidos Mexicanos*, 145 S. Ct. 1556, 1565 (2025). Accordingly, "[t]o aid and abet a crime, a person must take *an affirmative act* in furtherance of that offense." *Id*. The Amended Complaint does not allege *any* act by BAM in furtherance of the acts of terror. Instead, Plaintiffs allege that BAM operated a regulated U.S. exchange and that other defendants allowed certain high-value U.S. customers access to BHL's platform. *See infra* pp. 23-24, 43-44. But the AC does not allege *any acts by BAM* related to those customers. The Supreme Court has definitively stated that these types of "passive[] acts" do not state a claim for "culpable assistance" under the ATA. *Twitter, Inc. v. Taamneh*, 598 U.S. 471, 501 (2023); *see infra* Section II(C)(1)(a).

Plaintiffs' threadbare allegations likewise fail to allege necessary elements of their JASTA conspiracy claim (Count II), which requires an agreement between BAM and the terrorists and a shared intent to commit terrorism. *See infra* Section II(C)(2)(b). Of course, neither can Plaintiffs establish that BAM's conduct amounted to an act of international terrorism in its own right, as their ATA primary-liability claims require (Counts III and IV). *See infra* Section II(C)(2)(c). And Plaintiffs fail

to establish a claim for negligence/wantonness under Alabama law (Count VI). *See infra* Section II(C)(2).

Finally, Plaintiffs' Alien Tort Statute ("ATS") claim (Count V) must be dismissed pursuant to Rule 12(b)(1). Plaintiffs fail to establish this Court's subject matter jurisdiction over their claim, as the Amended Complaint does not put forth a valid international-law basis for their claim or domestic conduct sufficient to overcome the presumption against extraterritorial application of the ATS. *See infra* Section II(E).

For these reasons, BAM respectfully requests that the Court dismiss all claims against it with prejudice.

## II.    ARGUMENT

### A.    The Amended Complaint Should Be Dismissed Pursuant to Rule 8 and Rule 10 Because It Is an Impermissible "Shotgun" Pleading.

The Amended Complaint remains a quintessential "shotgun" pleading, which is "flatly forbidden" in the Eleventh Circuit as violative of Rule 8(a) and Rule 10(b). *Barmapov v. Amual*, 986 F.3d 1321, 1324 (11th Cir. 2021). The Amended Complaint should be dismissed because it falls within at least three of the forbidden "shotgun" pleading categories identified by the Eleventh Circuit. *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1321 (11th Cir. 2015).

First, although the Amended Complaint adds a raft of new allegations supposedly detailing the inner workings of BAM and BHL, when it comes to laying

6

out the allegations relevant to their claims, Plaintiffs continue to assert "multiple claims against multiple defendants without specifying which of the defendants are responsible for which act or omissions, or which of the defendants the claim is brought against." *Id.* at 1323. (*See* AC ¶¶ 331-65.) Indeed, neither BAM, nor any other defendant, is specifically mentioned in any of the six causes of action. Complaints of this nature are subject to dismissal. *E.g.*, *Kabbaj v. Obama*, 568 F. App'x 875, 880 (11th Cir. 2014) (complaint fails to satisfy Rule 8(a) where it "refers to the defendants collectively").

Second, the Amended Complaint commits the "mortal sin" of pleading "multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." *Weiland*, 792 F.3d at 1321-22. In contravention of the Eleventh Circuit's pleading requirements, the first allegation in each of the six causes of action purports to "repeat and reallege each and every allegation of the foregoing paragraphs as if fully set forth herein." (AC ¶¶ 331, 342, 344, 347, 350, 357.)

Finally, the Amended Complaint "is replete with conclusory, vague, and immaterial facts," *Weiland*, 792 F.3d at 1322, obscuring what is being substantively alleged. Additionally, the substantive allegations in the Amended Complaint are obscured by superfluous paragraphs in which the Plaintiffs repeat previous

allegations verbatim. (*Compare, e.g.*, AC ¶¶ 193, 228, 235, 237, 129, 130, 131, 273, 274 *with* AC ¶¶ 224, 251, 296, 298, 270, 271, 272, 278, 279; *compare* AC ¶ 286 *with* AC ¶¶ 192, 223, 248.)[4] This confusion is amplified by the Amended Complaint's reference to plaintiffs that are not listed in the caption or who appear to be listed under pseudonyms, as well as the lack of allegations regarding a number of named plaintiffs. (*See, e.g.*, AC ¶¶ 56, 58, 62; *see infra* p. 34.)

As the Complaint plainly falls within several forbidden "shotgun" pleading categories, it should be dismissed.

### B.    The Complaint Should Be Dismissed Pursuant to Rule 12(b)(2) Because the Court Does Not Have Personal Jurisdiction over BAM.

Plaintiffs' personal jurisdiction allegations rely on generalized claims pertaining to BAM's thin presence in Alabama that are insufficient to establish general jurisdiction, and Plaintiffs do not plead any suit-related conduct by BAM in the United States sufficient to establish specific jurisdiction or jurisdiction under Rule 4(k)(1)(C) or Ala. R. Civ. P. 4.2.[5] (AC ¶ 29.)

---

[4] Plaintiffs have also apparently recycled allegations from separate lawsuits. (*See* AC ¶¶ 58, 62, 65 (asserting claims against "Associational Defendants," a term otherwise undefined in the Amended Complaint)). Am. Compl., *Haggai v. Kiswani*, No. 25-cv-02400 (S.D.N.Y. May 29, 2025), ECF No. 36 (lawsuit involving ATA and ATS claims stemming from the October 7 attacks brought by the Haggai, Doe, Roe, Moe, Ziv, Samerano, Gvili, Baruch, and Poe Plaintiffs against "Associational Defendants" defined as activist groups affiliated with Columbia University).

[5] Plaintiffs rely on the 2004 version of the Alabama Rules of Civil Procedure. The current long-arm provision is Alabama Rule of Civil Procedure 4.2(b).

"As a general rule, courts should address issues relating to personal jurisdiction before reaching the merits of a plaintiff's claims." *Republic of Panama v. BCCI Holdings (Lux.) S.A.*, 119 F.3d 935, 940 (11th Cir. 1997). The Court will look to "[t]he four corners of a complaint [to] provide the basis for establishing personal jurisdiction." *Roche Diagnostics Corp. v. Priority Healthcare Corp.*, 2019 WL 5102836, at *3 (N.D. Ala. Oct. 11, 2019). "Where, as here, the defendant challenges jurisdiction by submitting affidavit evidence in support of its position, the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009).

Plaintiffs acknowledge that BAM is incorporated in Delaware and headquartered in Florida (and therefore is a nonresident defendant). (AC ¶ 69; *see also* Blodgett Decl. ¶ 4.) The Court's determination of whether it has personal jurisdiction over a nonresident defendant turns on a two-prong test. *See, e.g.*, *Madara v. Hall*, 916 F.2d 1510, 1515-16 (11th Cir. 1990). Only if both prongs are satisfied will the Court assert jurisdiction. *Id*. at 1514. "First, [the court] consider[s] the jurisdictional question under the state long-arm statute." *Id*. If that prong is met, the second prong requires the court to determine whether there are sufficient minimum contacts to satisfy due process concerns. *Id*.

Alabama's long-arm provision permits the exercise of jurisdiction over nonresidents to the "fullest extent allowed under the Due Process Clause of the

9

Fourteenth Amendment to the Constitution." *Ruiz de Molina v. Merritt & Furman Ins. Agency, Inc.*, 207 F.3d 1351, 1355-56 (11th Cir. 2000). "Because the due process guarantees of the Alabama Constitution are coextensive with that of the Constitution of the United States, this Court turns to the question whether the requirements for personal jurisdiction under the Due Process Clause of the Fourteenth Amendment have been satisfied." *Kent v. Callaway Gardens Resort, Inc.*, 2009 WL 10688923, at *2 (N.D. Ala. Apr. 3, 2009).

"Considerations of due process require that a non-resident defendant have certain minimum contacts with the forum, so that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice." *Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1291 (11th Cir. 2000); *see also Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). "The sufficiency of the defendant's contacts with the forum state depends on the quantity and quality of those contacts, as well as the type of personal jurisdiction being asserted: specific or general." *Kent*, 2009 WL 10688923, at *2.

Although not pled, BAM first addresses general personal jurisdiction for purposes of completeness. This Court lacks personal jurisdiction over BAM under any theory.

### 1.    There Is No General Jurisdiction over BAM in Alabama.

In the case of a nonresident defendant, "[a] court may assert general jurisdiction . . . when [the defendant's] affiliations with the State are so continuous and systematic as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). "[A] corporation's operations in a forum other than its formal place of incorporation or principal place of business will be so substantial and of such a nature as to render the corporation at home in that State *only in exceptional cases*." *Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201, 1204 (11th Cir. 2015). The due process requirements for general jurisdiction are "more stringent than that for specific jurisdiction" and must be "substantial" to warrant jurisdiction. *Nippon Credit Bank, Ltd. v. Matthews*, 291 F.3d 738, 747 (11th Cir. 2002).

Plaintiffs cannot meet the high threshold for establishing that BAM is "at home" in Alabama based on allegations that ultimately reduce to: (i) BAM has made its website available to Alabama residents and (ii) BAM has a registered agent and a related operations license in Alabama. (AC ¶¶ 33, 35, 37-39.) "[S]uch modest activity c[annot] support the exercise of general jurisdiction, and plainly it does not." *Beasley v. Providence Hosp.*, 2018 WL 2994380, at *3 (S.D. Ala. June 13, 2018) (rejecting argument that company was subject to general jurisdiction in Alabama "because it is licensed to do business in Alabama and has a registered agent for

11

service of process in Alabama"); *Whatley v. Ohio Nat'l Life Ins. Co.*, 2019 WL 6173500, at *3 (M.D. Ala. Nov. 19, 2019), *aff'd*, 851 F. App'x 910 (11th Cir. 2021) (holding that defendants' appointment of agents for service of process and registration to do business in Alabama does not support a finding of general jurisdiction and, consequently, no jurisdiction under Alabama's long-arm provision).

Similarly, Plaintiffs' generalized allegations that Defendants "solicited and conducted substantial business in [Alabama]" (AC ¶¶ 36) are insufficient to establish "continuous and systematic [affiliations with Alabama] as to render them essentially at home in the [state]." *Goodyear*, 564 U.S. at 919. Plaintiffs rely almost exclusively on a single September 24, 2020 screenshot from BAM's X account announcing that registration was open for Alabama residents. (AC ¶ 38.) But such an announcement is neither "continuous" nor "systematic" and cannot establish general jurisdiction. *See Kent*, 2009 WL 10688923, at *4 (holding that "[g]iven the ease and proficiency of communication in the modern world, advertising alone will generally not suffice to establish general jurisdiction"); *Tillery v. Mar. Grp.*, 1996 U.S. Dist. LEXIS 3630, at *11 (S.D. Ala. Jan. 29, 1996) (finding that "direct and indirect marketing activities in Alabama in order to solicit individuals and groups" were insufficient contacts to

establish general jurisdiction).[6]

Nor do Plaintiffs sufficiently allege that BAM conducts "substantial" business in the state because BAM's services are available to Alabama residents through its online platform. (AC ¶¶ 36-39.) *See Pruitt v. AAA Interstate Transp., LLC*, 358 So. 3d 1144, 1149 (Ala. 2022) (holding that allegations that defendant "performed [services] for Alabama customers" and "maintain[ed] a website accessible to potential customers" in Alabama do "not come close to establishing that [defendant] is at home in Alabama"). Plaintiffs' allegation that BAM engages third-party representatives or maintains certain remote workers, such as customer service representatives, who reside in Alabama is similarly insufficient. (AC ¶ 37.) *See Associated Transp. Line, Inc. v. Productos Fitosanitarios Proficol El Carmen, S.A.*, 197 F.3d 1070, 1075 (11th Cir. 1999) (holding that personal jurisdiction over an out-of-state defendant "has been found lacking" despite allegations that "a company had employees, agencies and salespeople regularly in the forum," "was qualified to do business in the forum," "regularly solicited business" in the forum, and "derived more than 26% of its income from the forum"); *Pruitt*, 358 So. 3d at 1149 ("Merely

---

[6] Plaintiffs' reliance on an article published by an independent national website that reported that BAM was now "approved" to operate in Alabama does not indicate that BAM itself solicited business in Alabama, and, in any event, that type of national publicity is insufficient to plead that BAM is at "home" in Alabama. (AC ¶ 36.) *See Walden v. Fiore*, 571 U.S. 277, 291 (2014) ("[I]t is the defendant, not the plaintiff or third parties, who must create contacts with the forum State.").

having employees in a state, even in large absolute numbers, is not enough to make a defendant at home there.").

### 2. There Is No Specific Jurisdiction over BAM or Jurisdiction under FRCP 4(k)(1)(C).

To constitute minimum contacts for purposes of specific jurisdiction, the defendant's contacts with the applicable forum must satisfy three criteria.

> First, the contacts must be related to the plaintiff's cause of action or have given rise to it. Second, the contacts must involve some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum ... , thus invoking the benefits and protections of its laws. Third, the defendant's contacts with the forum must be such that [the defendant] should reasonably anticipate being haled into court there.

*Kent*, 2009 WL 10688923, at *2; *see also HomeBingo Network, Inc. v. Chayevsky*, 428 F. Supp. 2d 1232, 1241 (S.D. Ala. 2006) (to establish specific jurisdiction, plaintiffs are required to plead that defendant's contacts with the forum include "activities [that] arise out of or relate to the cause of action").

The Amended Complaint asserts that this Court can exercise specific personal jurisdiction over BAM based on FRCP 4(k)(1)(C), 18 U.S.C. § 2334(a), and Alabama's long-arm provision. (AC ¶¶ 29-30, 31).

FRCP 4(k)(1)(C) provides that "[s]erving a summons or filing a waiver of service establishes personal jurisdiction over a defendant . . . when authorized by a federal statute." Plaintiffs assert that service under 18 U.S.C. § 2334(a) is sufficient here to establish jurisdiction. (AC ¶ 29.)

However, "even when a party is properly served [pursuant to Rule 4(k)(1)(C)], a court's exercise of personal jurisdiction must also comport with due process." *Durham v. LG Chem., Ltd.*, 2022 WL 274498, at *2 (11th Cir. Jan. 31, 2022). "[T]o exercise jurisdiction consistent with due process, the defendant's *suit-related conduct* must create a substantial connection with the forum." *Walden*, 571 U.S. at 284. Where, as here, a plaintiff relies on a federal statute authorizing nationwide service to establish personal jurisdiction under Rule 4(k)(1)(C), the court analyzes the defendant's contacts with the United States as a whole and whether the alleged actions are sufficiently connected to the United States to provide specific personal jurisdiction in the United States. *See Associated Transp. Line, Inc. v. Productos Fitosanitarios Proficol El Carmen, S.A.*, 197 F.3d 1070, 1074 (11th Cir. 1999); *see also Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 337 (2d Cir. 2016).

In an opinion issued today relating to the exercise of personal jurisdiction under a different statute, the Supreme Court refused to endorse an "unbounded jurisdictional theory" under Rule 4(k)(1)(C). *See Fuld v. Palestine Liberation Org.*, 2025 WL 1716140, at *10 (U.S. June 20, 2025). Instead, the Court noted that although the jurisdictional due process analyses under the Fifth and the Fourteenth Amendments could differ at times, they both may entail a similar "inquiry into the reasonableness of the assertion of jurisdiction in the particular case." *See id.* at *12. The Court ultimately held that the statute at issue satisfied the contours of the Fifth

Amendment in that case because it "ties federal jurisdiction to conduct *closely related* to the United States that implicates important federal policy concerns." *Id*. at *10.

Federal courts that have considered ATA's nationwide service provision have applied these due process principles to reject similar "unbounded jurisdictional theor[ies]." *Id*. at *10. For example, in *Waldman*, the Second Circuit rejected the plaintiffs' argument that the court could exercise personal jurisdiction over the defendants pursuant to the ATA's nationwide service provision because "the statute does not answer the constitutional question of whether due process is satisfied" and the defendants' alleged suit-related conduct did not establish the constitutionally required nexus with the forum. *Waldman*, 835 F.3d at 337, 343-44 (citing *Walden*, 571 U.S. at 284). The Second Circuit emphasized that the plaintiffs failed to satisfy due process because the alleged claims "did not arise from the defendants' purposeful contacts with the [United States]." *Id.* at 343.

The same is true here. The Amended Complaint does not allege that the claims against BAM arise out of its contacts with the United States. "The question in this case is whether the defendant[s'] suit-related conduct—their role in the . . . terror attacks at issue—creates a substantial connection with the forum . . . pursuant to the ATA." *Id.* at 335. "The relevant 'suit-related conduct' by the defendant[] [is] the conduct that could have subjected them to liability under the ATA." *Id*. There can be

16

no plausible allegations that BAM's suit-related conduct is "closely related to the United States" such that it could establish any connection between BAM and the terror attacks at issue. *See Fuld,* 2025 WL 1716140, at *10. All that is alleged is that BAM served as a "smokescreen" for others, which "culminat[ed] in the material support that enabled the October 7th Attack," and that certain customers were transferred by other defendants to BHL's exchange. (*See* AC ¶¶ 102, 105, 109.) Such allegations are too attenuated to support a finding of personal jurisdiction. *See Ex parte Maint. Grp., Inc.*, 261 So. 3d 337, 346 (Ala. 2017) ("The requirement that a defendant purposefully direct activity to the forum state precludes the exercise of jurisdiction over a defendant whose affiliation with the forum state is 'attenuated' or the 'unilateral activity of another party or a third person.'"). There are no allegations in the Amended Complaint regarding any BAM transactional activity in the United States or that BAM's platform was utilized by Hamas or any terrorist organization in any way. (*See* AC ¶ 338.)[7] Therefore, "[o]n its face, the conduct in this case d[oes]

---

[7] Plaintiffs' cases discussing "minimum contacts" are inapposite. In *Molex Co., LLC v. Andress*, 887 F. Supp. 2d 1189, 1202 (N.D. Ala. 2012) (AC ¶ 40), the court explicitly "acknowledge[d] that only defendant's contacts with Alabama that are related to the claims asserted in this action are part of the specific jurisdiction inquiry" (emphasis in original). There, constitutional concerns were satisfied where defendant was sued for breach of fiduciary duty and violation of the Alabama Trade Secrets Act stemming from his engagement as a consultant for plaintiff, an Alabama company, and throughout his engagement conducted significant business in the state. Likewise, in *Cable/Home Communication Corp. v. Network Productions, Inc.*, 902 F.2d 829, 858 (11th Cir. 1990), the court held it could exercise jurisdiction over nonresident defendants based on Florida's tortious act provision and defendants' substantial business activity within the state revolving around a Florida based technology that violated copyright and communications laws. There are no such allegations

not involve [BAM's] conduct in the United States in violation of the ATA[,]" and the fixed limits of the Due Process Clause prohibit the exercise of personal jurisdiction over BAM. *Waldman*, 835 F.3d at 335.[8]

### C.   The Complaint Should Be Dismissed Pursuant to Rule 12(b)(6) Because It Fails to State a Claim Against BAM.

It is axiomatic that "[a] complaint will be held defective if it fails to connect the defendant with the alleged wrong." *Douglas v. Yates*, 535 F.3d 1316, 1322 (11th Cir. 2008) (quoting 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1234 (3d ed. 2004)). This bedrock principle mandates dismissal of the Amended Complaint because it is devoid of any allegations pertaining to any actionable wrongdoing perpetrated by BAM (instead of "Defendants" or "Binance"). Plaintiffs' allegations specific to BAM either emphasize its compliance with U.S. law or frame the alleged "wrongdoing" as Mr. Zhao or Binance's purportedly strategic decision to launch a fully compliant platform to serve U.S. customers, again

---

here, where Plaintiffs do not allege any activities by BAM in Alabama related to Plaintiff's allegations in the Amended Complaint.

[8] The Eleventh Circuit has not addressed nationwide process of service as basis for personal jurisdiction under the ATA, but in examining the issue under different statutes, it has instructed that if plaintiffs' claims under the invoked statute are "insubstantial, implausible, or otherwise completely devoid of merit," plaintiffs "may not take advantage of the nationwide service of process provisions" as a means of establishing personal jurisdiction. *Rogers v. Nacchio*, 241 F. App'x 602, 605 n.1 (11th Cir. 2007); *see also BCCI Holdings*, 119 F.3d at 942 n.9; *Moore v. eNom, Inc.*, 2007 WL 9711946, at *3 n.8 (N.D. Ala. Nov. 9, 2007). As explained below, Plaintiffs' claims here are wholly insufficient to plead any improper conduct by BAM under the ATA, and thus, Plaintiffs should not be allowed to invoke the ATA's nationwide service of process provision.

highlighting BAM's own lack of wrongdoing. Because the Amended Complaint alleges no misconduct by BAM—and, in fact, barely any *conduct* by BAM—FRCP 12(b)(6) requires dismissal.[9]

### 1.   Plaintiffs Fail to State an ATA/JASTA Claim Against BAM.

#### a.   The Complaint Fails to Allege Aiding-and-Abetting Liability under the ATA/JASTA (Count I).

In Count I, Plaintiffs allege that the "Defendants" violated the ATA/JASTA by "aid[ing] and abett[ing] [Hamas and PIJ] in committing, planning, or authorizing acts of international terrorism." (AC ¶ 341.) But Plaintiffs' allegations against BAM cannot establish aiding-and-abetting liability under the ATA and binding Supreme Court precedent.

In *Twitter, Inc. v. Taamneh*, the Supreme Court held that JASTA liability specifically requires that defendants "aided and abetted the act of international terrorism that injured the plaintiffs" through "conscious, voluntary, and culpable participation" in that specific terrorism act. 598 U.S. 471, 493, 497 (2023). There, plaintiffs alleged that social media companies knowingly allowed ISIS to use their platforms for fundraising and recruiting in order to profit from advertisements placed on ISIS's content. *See id*. at 481. The Court held that JASTA liability requires

---

[9]  Additionally, BAM joins BHL and Mr. Zhao's arguments that the non-U.S. national Plaintiffs lack standing to bring ATA and JASTA claims, and the U.S. national Plaintiffs lack standing to bring claims under the ATS.

"conscious, voluntary, and culpable participation" in the specific act of international terrorism at issue. *Id*. at 493. This analysis hinges on whether the defendant provided knowing *and* substantial assistance to the primary tortfeasor. *Id*. at 491-92. "[T]hose twin requirements . . . work[] in tandem," i.e., "less substantial assistance require[s] more scienter before a court c[an] infer conscious and culpable assistance." *Id*. at 492.[10] The Court ultimately concluded that plaintiffs failed to sufficiently plead JASTA liability because (1) defendants did not provide "substantial" assistance to ISIS because they did not treat ISIS "any differently from anyone else" and their relationship was "arm's length, passive, and largely indifferent," (2) defendants did not provide "knowing" assistance because claims of "passive[]" acts do not state a claim for "culpable assistance," and finally (3) there was "[a] lack of any concrete nexus between defendants' services and the [specific] attack." *Id.* at 500-01.

The Supreme Court very recently reiterated these strict requirements of aiding-and-abetting liability in *Smith & Wesson Brands, Inc. v. Estados Unidos Mexicanos*, 145 S. Ct. 1556, 1565-67 (2025). There, the Court addressed Mexico's claims that American gun manufacturers aided and abetted gun dealers' unlawful sales of guns to Mexican drug cartels by "supply[ing] firearms to retail dealers whom they know illegally sell to Mexican drug traffickers." *Id*. at 1564.

---

[10] The Court in *Twitter* "adapt[ed]" the framework articulated in *Halberstam v. Welch*, 705 F.2d 472 (D.C. Cir. 1983), to "ascertain" its "basic thrust." *Twitter*, 598 U.S. at 488.

The Court clearly articulated (again) "[the] canonical formulation" that "an aider and abettor must *participate in a crime* as in something that he w*ishes to bring about* and seek by his action to make it succeed." *Id*. at 1565. Accordingly, "[t]o aid and abet a crime, a person must take *an affirmative act* in furtherance of that offense." *Id*. (internal quotations and alterations omitted). "[A]iding and abetting usually requires misfeasance rather than nonfeasance." *Id*. at 1566. "Absent an 'independent duty to act,' a person's 'failure[s],' 'omissions,' or 'inactions'—even if in some sense blameworthy—will rarely support aiding-and-abetting liability." *Id*.

The Court also emphasized that "routine and general activity that happens on occasion to assist in a crime—in essence, 'incidentally'—is unlikely to count as aiding and abetting." *Id*. "So, for example, an 'ordinary merchant[ ]' does not 'become liable' for all criminal 'misuse[s] of [his] goods,' even if he knows that in some fraction of cases misuse will occur." *Id*. (quoting *Twitter*, 598 U.S. at 489, 499). "The merchant becomes liable only if, beyond providing the good on the open market, he takes steps to 'promote' the resulting crime and 'make it his own.'" *Id*.

Applying these straightforward principles to Plaintiffs' allegations makes clear that the Amended Complaint fails to satisfy the elements of aiding-and-abetting liability or to meet the rigorous requirements articulated by the Supreme Court.

***First***, Plaintiffs fail to establish that BAM provided "substantial assistance" to the attacks at issue here. The Amended Complaint does not allege that any of the

underlying transactions were conducted via BAM's platform or that BAM provided any type of assistance to the perpetrators of these attacks. (*See generally* AC ¶¶ 175-200; *see also id.* ¶ 322.) Indeed, there are no allegations in the Amended Complaint: (i) describing BAM's purported "substantial assistance" (whether in kind, amount, or duration) to any terrorists, (ii) articulating any relationship or interaction between BAM and the bad actors, or (iii) asserting a culpable state of mind on BAM's part. *See Bernhardt v. Islamic Republic of Iran*, 47 F.4th 856, 870-72 (D.C. Cir. 2022) (finding no "knowing and substantial assistance" where plaintiff failed to allege defendant's "involvement with" the FTO, "any relationship, much less a close one, between [defendant] and [the FTO]," or "defendant's state of mind"); *Newman v. Associated Press*, 758 F. Supp. 3d 1357, 1372-73 (S.D. Fla. 2024) (finding no knowing and substantial assistance where plaintiffs' "conclusory allegations [were] inadequate to establish that any amount of money or assistance from the [defendant] went to Hamas in carrying out its terrorist attacks," "that the [defendant] participated in the tortious conduct," or "any 'arms-length relationship' between the [defendant] and the Hamas-affiliates"); *Wildman v. Deutsche Bank Aktiengesellschaft*, 2022 WL 17993076, at *24 (E.D.N.Y. Dec. 29, 2022) (dismissing aiding-and-abetting claim where complaint "is unclear how much of [the] alleged amount was actually remitted by [defendant]," "does not allege" presence, alleged only an "attenuated" business

relationship, and provided "insufficient evidence" of state of mind and duration), *appeal docketed*, No. 23-132 (2d Cir. Jan. 30, 2023).

**Second**, Plaintiffs fail to establish that BAM "knowing[ly]" provided assistance to bring about the terrorist attacks at issue here "as in something that [they] wishe[d] to bring about," and "s[ought] by [their] action to make it succeed." *Smith & Wesson*, 145 S. Ct. at 1565; *see also Linde v. Arab Bank, PLC*, 882 F.3d 314, 329 (2d Cir. 2018) (plaintiffs need to plead that defendant was "'aware' that, by assisting the principal, it is itself assuming a 'role' in terrorist activities."). The Amended Complaint alleges in conclusory fashion that BAM had "full knowledge, or what should have been full knowledge, that its operations were being put to illegal use." (AC ¶ 323.) This is precisely the type of allegation rejected by the Supreme Court in *Smith & Wesson*. 145 S. Ct. at 1567 ("When a company merely knows that 'some bad actors' are taking 'advantage' of its products for criminal purposes, it does not aid and abet. And that is so even if the company could adopt measures to reduce their users' downstream crimes."). Similar claims that BAM was "aware" of a likelihood that its services were being exploited for some type of illegality by other actors (AC ¶¶ 322, 323) amount to nothing more than allegations of "passive nonfeasance" which "are rarely the stuff of aiding-and-abetting liability." *Smith & Wesson*, 145 S. Ct. at 1569; *see also Strauss v. Crédit Lyonnais, S.A.*, 379 F. Supp. 3d 148, 164 (E.D.N.Y. 2019), *aff'd* 842 F. App'x 701 (2d Cir. 2021) ("Evidence that

23

[d]efendant knowingly provided banking services to a terrorist organization, without more, is insufficient to satisfy JASTA's scienter requirement."); *Freeman v. HSBC Holdings PLC*, 465 F. Supp. 3d 220, 230 (E.D.N.Y. 2020) (even provision of "non-routine or illegal" services including sanctions-evading transactions with entities tied to terrorists does not establish culpable participation in terrorism).

Finally, the Amended Complaint is devoid of any allegations of a "definable nexus between [BAM's] assistance and th[e] attack" at issue here. *Twitter*, 598 U.S. at 503. The Amended Complaint does not come close to pleading such a connection because it does not "pinpoint . . . any specific criminal transactions that [BAM] (allegedly) assisted" occurring "at a particular time and place." *Smith & Wesson*, 145 S. Ct. at 1567.

As explained before, the Amended Complaint instead admits that any relevant transactions did not occur on BAM's platform. (*See, e.g.*, AC ¶¶ 141, 143 (discussing Hamas transactions on Binance.com in 2019, *before BAM was created*); *id.* ¶ 147 (alleging that "Binance was at the center of [Hamas] transactions").) *See Siegel v. HSBC N. Am. Holdings, Inc.*, 933 F.3d 217, 225-26 (2d Cir. 2019) (holding AML and sanctions violations insufficient for liability because they failed to show the defendant bank "knowingly assumed a role in AQI's terrorist activities or substantially assisted AQI in those activities, *specifically the November 9 Attacks*").

Plaintiffs inaccurately characterize—without well-pled allegations—BAM as maintaining a "remittance operation so as to enable U.S. consumers to remit money to FTO entities." (AC ¶ 188.) However, Plaintiffs (at most) allege that certain U.S. customers of BAM later became customers of BHL and then had "the ability" (through BHL's platform) to remit funds to OFAC-sanctioned accounts.[11] (*See, e.g.*, AC ¶ 183; *see also id.* ¶¶ 120, 179.) These allegations do not plead any nefarious conduct on BAM's platform. Plaintiffs do not even allege that the accounts that were transferred to BHL ultimately conducted pertinent transactions. Indeed, such allegations are absent from the government enforcement actions that the Amended Complaint relies upon so heavily,[12] none of which named BAM as a party.[13]

Accordingly, because Plaintiffs fail to allege that BAM "consciously and culpably participated in" violent terrorist attacks on civilians "so as to help make

---

[11] The AC's claim that U.S. users who were sophisticated enough to utilize VPN software with the explicit purpose of circumventing U.S. laws and conduct personal transactions on offshore platforms were obtained through "BAM's promotional activity and platform" is also nonsensical. (AC ¶ 120.) BAM's platform clearly displayed that it was intended solely for U.S. users and, as Plaintiffs admit, was designed to comply with U.S. laws. (Decl. at 8-12, 14; AC ¶¶ 37, 71, 94.) A user seeking to evade U.S. restrictions and to transact with sanctioned entities would have no interest in BAM's services and would not be attracted by its "promotional activity."

[12] In discussing BHL's settlement agreement with the Treasury Department's Office of Foreign Assets Control ("OFAC"), Plaintiffs claim that U.S. users on BHL's platform "were obtained via BAM Trading's promotional activity and platform." (AC ¶ 120.) The settlement agreement contains no statement to this effect and provides no basis for this contention, which is nothing more than Plaintiffs' speculation. *See generally* OFAC Settlement Agreement.

[13] As explained above, BAM was named as a defendant in the SEC action which centered on the status of cryptocurrencies as securities under U.S. laws and was recently voluntarily dismissed. *See supra* note 4.

[them] succeed," Count I must be dismissed. *Twitter*, 598 U.S. at 493 (internal quotations and alterations omitted).

> **b.**     **The Complaint Fails to State a Claim for Conspiracy under the ATA/JASTA (Count II).**

In Count II, Plaintiffs allege that the "Defendants" "knowingly conspir[ed] with Hamas and PIJ to facilitate its operations." (AC ¶ 343.) A JASTA conspiracy claim requires "(1) an agreement between two or more persons; (2) to participate in an unlawful act . . . ; (3) an injury caused by an unlawful overt act performed by one of the parties to the agreement; (4) which . . . was done pursuant to and in furtherance of the common scheme." *Freeman v. HSBC Holdings PLC*, 57 F.4th 66, 78 (2d Cir. 2023) (quoting *Halberstam*, 705 F.2d at 477).

The Amended Complaint makes only one attenuated and conclusory reference to BAM's alleged conspiracy, claiming that "Binance and other Defendants in fact covered Hamas' and PIJ's financial tracks." (AC ¶ 324.) This falls far short of plausibly alleging that BAM "conspired" to facilitate the specific terrorist attacks at issue here. *See In re Chiquita Brands Int'l Inc. Alien Tort Statute & Shareholders Deriv. Litig.*, 690 F. Supp. 2d 1296, 1311 (S.D. Fla. 2010) (citing *Fullman v. Graddick*, 739 F.2d 553, 556-57 (11th Cir. 1984)) ("A complaint may justifiably be dismissed because of the conclusory, vague, and general nature of the allegations of conspiracy.").

Indeed, Plaintiffs fail to establish the most basic element of a conspiracy: an agreement between BAM and any terrorist group. *See Newman*, 758 F. Supp. 3d at 1375 (plaintiffs must "plausibly allege [an] agreement to commit an act of international terrorism"). None of the allegations concerning BAM support a plausible inference that BAM entered into any agreement with Hamas or PIJ, or that BAM had any contact or interaction with these organizations, and indeed, much more would be required. *See In re Chiquita Brands Int'l, Inc.*, 284 F. Supp. 3d 1284, 1316 (S.D. Fla. 2018) (finding that even allegations of direct payments to an FTO did "not permit inference that [defendant] agreed with the [FTO], expressly or impliedly, to murder American citizens abroad in Colombia").

Nor can Plaintiffs establish that BAM shared the necessary "common intent" with the terrorist groups and was "pursuing the same object." *See Freeman*, 57 F.4th at 79-80. The Amended Complaint lacks any allegations that BAM shared Hamas's goal of attacking Israeli or American civilians. *See id.* at 80 (finding no "common intent" where plaintiffs failed to "plead that the [b]anks intended to kill or injure U.S. service members in Iraq, or that the terrorist groups agreed to help the [b]anks and Iranian entities evade U.S. sanctions"). The allegations *at most* suggest that BHL, not BAM, failed to employ adequate internal controls "to prioritize commercial success over compliance with U.S. law." (*See, e.g.*, AC ¶ 104.) But it is well established that profit motive alone is insufficient to plead a common scheme to

commit acts of terror. *See Bernhardt*, 47 F.4th at 873 (finding no common objective because allegations of defendants trying to make substantial profits by evading sanctions were "wholly orthogonal" to the objective of the terrorists); *Zobay v. MTN Grp. Ltd.*, 695 F. Supp. 3d 301, 355 (E.D.N.Y. 2023) (rejecting plaintiffs' "conclusory allegations that [d]efendants 'each shared a common specific intent' to cause money and technology to flow through to terrorist campaigns" as insufficient to show "a common scheme to commit an act of international terrorism"); *see also O'Sullivan v. Deutsche Bank AG*, 2019 WL 1409446, at *9 (S.D.N.Y. Mar. 28, 2019) (similar).

Because the Amended Complaint fails to plead an "agreement" or a "common scheme" between BAM and the perpetrators of the attacks at issue here as required under the ATA, Plaintiffs' conspiracy claim fails as a matter of law.

### c. Plaintiffs Fail to State a Claim for Primary Liability under the ATA (Counts III and IV).

In Counts III and IV, plaintiffs allege that the "Defendants" committed a "primary" violation of the ATA by providing "material support" to Hamas and PIJ. (AC ¶¶ 345, 349.) As Plaintiffs' allegations fall short of establishing secondary liability, they cannot establish primary liability. *See Linde*, 882 F.3d at 320 (JASTA "expands ATA civil liability").

An ATA primary liability claim requires: "(1) an injury to a U.S. national, (2) an act of international terrorism, and (3) causation." *Freeman v. HSBC Holdings*

28

*PLC*, 413 F. Supp. 3d 67, 82 (E.D.N.Y. 2019); *see* 18 U.S.C. § 2333(a) (providing a cause of action to U.S. nationals injured "by reason of an act of international terrorism").

To satisfy the statute's definition of the second element (i.e., "international terrorism"), Plaintiffs need to plead allegations against BAM which (1) "involve violent acts or acts dangerous to human life"; (2) "qualify as 'a violation of the criminal laws of the United States or of any State'"; (3) "'appear to be intended' to intimidate a civilian population, influence government policy, or affect the conduct of a government by certain specified means"; and (4) "occur primarily outside the United States or transcend national boundaries." *Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 68 (2d Cir. 2012) (quoting 18 U.S.C. § 2331(1)(A)-(C)). Further, provision of "routine financial services to members and associates of terrorist organizations" is insufficient to plead that defendants committed an act of international terrorism. *Linde*, 882 F.3d at 327.

The allegations against BAM are a far cry from this rigorous standard. In support of their primary-liability claims, Plaintiffs offer conclusory allegations that "Defendants . . . collaborated to continue processing transactions that they knew to be illegal," and that unidentified "Defendants' employees [ ] were aware" that transactions were utilized by terrorist organizations. (AC ¶¶ 323, 327; *see generally* AC ¶¶ 327-30.) Rule 12(b)(6) and the ATA require more. *See Oxford Asset Mgmt. v.*

*Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002) ("[C]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal.").

As explained above, Plaintiffs have failed to allege any conduct by BAM linked to the alleged terrorist attacks. *See supra* pp. 21-22. Even if Plaintiffs had plausibly alleged BAM's involvement, they have—at most—made generalized allegations regarding provision of financial services which "in and of itself, is insufficient either to show that the services involved an act of violence or threat to human life or to give the appearance that such services were intended to intimidate or coerce a civilian population or government." *Weiss v. Nat'l Westminster Bank*, 993 F.3d 144, 162-63 (2d Cir. 2021); *see also Strauss*, 379 F. Supp. 3d at 160 ("Evidence that Defendant knowingly provided banking services to a terrorist organization, without more, is insufficient to satisfy JASTA's scienter requirement.").

Further, because Plaintiffs have failed to adequately allege BAM's knowledge of any terrorist-linked transactions (*see supra* pp. 23-24), they cannot establish underlying violations of the material-support statutes. *See Newman*, 758 F. Supp. 3d at 1378-80 (§§ 2339A and B respectively require "that the defendant acted with the specific knowledge or intent that its support would be used in preparation for, or in carrying out, one of the enumerated terrorism-related crimes" and with the "knowledge" that an organization was engaged in terrorism).

Finally, because the Amended Complaint does not adequately allege any connection between BAM and alleged terrorist-linked transactions, Plaintiffs cannot establish that BAM proximately caused their injuries.[14] Conclusory assertions that "Defendants' violation of 18 U.S.C. § 2339B proximately caused the damages to Plaintiffs" (AC ¶ 348; *see also id.* ¶ 346) are insufficient and should be rejected. *Rothstein v. UBS AG*, 708 F.3d 82, 97 (2d Cir. 2013) (dismissing primary-liability claim where there was "no nonconclusory allegation in the [c]omplaint that plausibly show[ed]" a "proximate causal relationship between the cash transferred" by defendant and terrorist attacks harming plaintiffs), *superseded by statute on other grounds*; *Newman*, 758 F. Supp. 3d at 1380-81(similar).

Accordingly, Plaintiffs' claims that BAM is subject to primary liability for the October 7 terrorist attacks fail on multiple fronts and should be dismissed.

---

[14] As set out in Mr. Zhao's and BHL's motions, Plaintiffs' allegations against Defendants generally are inadequate. (*See* Zhao Mot. Section III(C)(2); BHL Mot. Section IV(B).) Plaintiffs' allegations that without the Hamas- and PIJ-linked Binance transactions (which occurred at unspecified points during inconsistently alleged time frames), those groups "would have been far less able to recruit, train, equip and deploy their armed terrorist forces against civilians in Israel" (AC ¶ 345) fail to establish that the transactions proximately caused the October 7 attacks. *See In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 118, 124 (2d Cir. 2013) ("We also are not persuaded that providing routine banking services to organizations and individuals said to be affiliated with al Qaeda . . . proximately caused the September 11, 2001 attacks or plaintiffs' injuries."); *Adams v. Alcolac, Inc.*, 2019 WL 4774006, at *6 (S.D. Tex. Sep. 6, 2019) ("[L]imited facts and stacked inferences are insufficient to demonstrate proximate cause."), *aff'd*, 974 F.3d 540 (5th Cir. 2020). These allegations are further undermined by the fact that several Plaintiffs also claim that the actions of the Associated Press proximately caused their injuries. *See Newman*, 758 F. Supp. 3d at 1364, 1381.

### 2. Plaintiffs Fail to State a Claim for Negligence/Wantonness (Count VI).[15]

In Count VI, Plaintiffs allege that "Defendants' conduct, including but not limited to knowingly aiding, abetting, or conspiring with the FTO and/or its affiliates, was negligent." (*See* AC ¶ 359.) Plaintiffs' claims for negligence and wantonness are deficient. Their negligence claim, which appears to be based on a flawed negligence *per se* theory, fails because as most named Plaintiffs are not U.S. nationals as required by the ATA, they cannot establish any ATA violation by BAM, and the AC lacks allegations of BAM's wrongdoing. Absent an independent duty owed to Plaintiffs, their negligence claim also fails under traditional principles. The wantonness claim similarly fails due to these deficiencies and the absence of the requisite *mens rea* pleading. Finally, Plaintiffs' emotional-injury claims are barred by Alabama's "zone-of-danger" rule.

### a. Plaintiffs Fail to State a Claim for Negligence.

Plaintiffs allege "all the same actions [they] say[] violate the [ATA]," rather than demonstrating "a duty owed to [them] by [BAM] independent of the [ATA]. Thus, although [Plaintiffs] cast[] it as an ordinary negligence claim, [they] appear[] to be operating under a negligence *per se* framework." *Ismail v. Ascensionpoint*

---

[15] Plaintiffs previously described their negligence claim "as an Alabama state law claim." (Pls.' Resp. Opp'n Mot. Transfer at 15, *Newman v. BAM Trading Servs., Inc.*, No. 2:24-cv-00134 (M.D. Ala. July 24, 2024), ECF No. 35.) Accordingly, BAM conducts its analysis under the framework of Alabama state law principles.

*Recovery Servs., LLC*, 2019 WL 5894311, at *9 (N.D. Ala. Nov. 12, 2019); *see also Winberry v. United Collection Bureau, Inc.*, 697 F. Supp. 2d 1279, 1294 (M.D. Ala. 2010) (equating negligence and negligence *per se* claims where both claims "are founded on the FDCPA statutory duty" and the complaint "appears to identify the allegedly breached duty in terms of the duties imposed by the FDCPA").

Under Alabama law, to establish negligence *per se*, a plaintiff must prove: (1) that the statute the defendant is charged with violating was enacted to protect a class of persons to which the plaintiff belonged; (2) that the plaintiff's injury was the kind of injury contemplated by the statute; (3) that the defendant violated the statute; and (4) that the defendant's violation of the statute proximately caused the plaintiff's injury. *See Dickinson v. Land Devs. Constr. Co.*, 882 So. 2d 291, 302 (Ala. 2003); *Zatarain v. Swift Transp., Inc.*, 776 F. Supp. 2d 1282, 1290 (M.D. Ala. 2011). Because Plaintiffs fail to allege three out of the four elements of negligence *per se*, Count VI must be dismissed.

First, Plaintiffs have not adequately pled the first element of negligence *per se* because the majority of the named Plaintiffs do not allege that they fall within the class of individuals the ATA was intended to protect. To bring an action under the ATA, a plaintiff must be "a national of the United States." *See* 18 U.S.C. § 2333(a); *see also Averbach v. Cairo Amman Bank*, 2020 WL 1130733, at *2 (S.D.N.Y. Mar. 9, 2020) ("18 U.S.C. § 2333(a) [] preclud[es] claims by foreign

33

nationals (who just so happen to be survivors and heirs of U.S. nationals killed in the terrorist attacks at issue in this case) . . . . Nowhere in the statute does Congress provide remedies for non-nationals claiming damages for personal injuries."); *Lelchook v. Lebanese Canadian Bank*, 2024 WL 967078, at *9 (S.D.N.Y. Mar. 6, 2024) ("[B]ecause [plaintiff] is not an American citizen, she may only sue in a representative capacity and is thus precluded from bringing her own personal claims [under the ATA]."). Nineteen of the twenty-five named Plaintiffs are not U.S. nationals, or their nationality has not been pled. *See* AC ¶¶ 49 (Israeli), 51 (two Israeli individuals), 52-53 (nationality unclear as previously pled Israeli in AC ¶ 50), 54-55 (three Israeli individuals), 59 (Israeli), 60 (Israeli), 61 (Israeli), 63 (Israeli), 64-65 (Israeli), 66 (Israeli), 67 (unknown), 68 (Israeli). Additionally, four named Plaintiffs, Lishay Levi, David Bromberg, Lior Bar Or, and Ariel Ein-Gal, do not have a nationality listed in the Amended Complaint.

Second, Count VI should be dismissed because Plaintiffs have not sufficiently pled the third element of negligence *per se*, as they fail to allege that BAM violated the statute at issue. *See supra* Section II(C)(1). An essential element of negligence *per se* is the violation of a statute. *See Pruitt v. Oliver*, 331 So. 3d 99, 108 (Ala. 2021) (the ultimate conclusion of whether a defendant was negligent *per se* depended "upon the proper legal classification" of certain elements of that statute). As demonstrated above, Plaintiffs' allegations fall short of establishing that BAM

violated any provision of the ATA.

Third, Count VI fails because Plaintiffs have not adequately pled the fourth element of negligence *per se*, as the Amended Complaint does not allege any wrongdoing by BAM, let alone proximate causation of alleged injuries. *See supra* Section II(C)(1). Alabama law defines proximate cause as "an act or omission that in a natural and continuous sequence, unbroken by any new independent causes, produces the injury and without which the injury would not have occurred." *Kirksey v. Schindler Elevator Corp.*, 2016 WL 3189242, at *19 (S.D. Ala. June 7, 2016). Plaintiffs do not allege that any terrorist-linked transactions occurred on the BAM platform; therefore, any alleged injuries resulting from the attacks at issue could not have been proximately caused by BAM. And Plaintiffs' own sources cited in the Amended Complaint demonstrate the improbability that *any* cryptocurrency-related transactions resulted in said attacks. (*See* AC ¶ 147 n.33 ("[C]rypto is not the main source of money for Hamas and affiliated groups such as Palestinian Islamic Jihad . . . Iran is by far the largest source, to the tune of $100 million a year. . . . Crypto is a very small part of Hamas' fundraising strategy. . . . There's a focus on it because you are trying to cut off financing by any means. But it's a relatively small part of the picture.").)[16]

---

[16] Citing https://www.coindesk.com/consensus-magazine/2023/10/11/hamas-has-raised-millions-in-crypto-donations-wsj.

The Amended Complaint's allegations fail even under traditional negligence principles because the Amended Complaint is barren of a single reference to any duty BAM owed Plaintiffs. *See Martin v. Arnold*, 643 So. 2d 564, 567 (Ala. 1994) ("To establish negligence, the plaintiff must prove: (1) a duty to a foreseeable plaintiff; (2) a breach of that duty; (3) proximate causation; and (4) damage or injury."). Under Alabama law, an individual does not "owe a 'duty to protect another from the criminal acts of a third person'" absent a "special relationship" or "special circumstances." *Chen Jun v. Regions Bank*, 2020 WL 5603527, at *7 (N.D. Ala. Sep. 18, 2020) (quoting *Smith v. AmSouth Bank, Inc.*, 892 So. 2d 905, 909 (Ala. 2004). Allegations of a deficient KYC protocol—by BHL, not BAM—pursuant to the Bank Secrecy Act ("BSA") still do not establish a legal duty to Plaintiffs, who have no relationship to BAM at all. *See Chen Jun*, 2020 WL 5603527, at *9 (Federal courts "have overwhelmingly held that KYC regulations under the [BSA] do not impose a duty upon banks to monitor accounts for the benefit of noncustomers"); *see also Marlin v. Moody Nat'l Bank, N.A.*, 2006 WL 2382325, at *7 (S.D. Tex. Aug. 16, 2006) (similar); *Smith*, 892 So. 2d at 909 n.2 ("Every court that has examined the issue has answered that banks owe no duty of care to noncustomers."); *Lee v. Foris DAX, Inc.*, 2025 WL 1084794, at *10 (N.D. Cal. Apr. 10, 2025) (affirming this principle for cryptocurrency exchanges). Similarly, a BSA violation cannot impose a duty to ensure that "account holders did not misuse funds." *Chen Jun*, 2020 WL

36

5603527, at *8; *see also Marlin*, 2006 WL 2382325, at *7 (finding that the BSA "does not create a private right of action and, therefore, does not establish a standard of care").

### b.      Plaintiffs Fail to State a Claim for Wantonness.

Plaintiffs' wantonness claim fails for the same reasons. Wantonness requires that a defendant, "with reckless indifference to the consequences, consciously and intentionally did some wrongful act or omitted some known duty." *Harris v. Liberty Home Equity Sols., Inc.*, 2018 WL 4075903, at *2 (N.D. Ala. Aug. 27, 2018). "To be actionable, that act or omission must proximately cause the injury of which the plaintiff complains." *Martin*, 643 So. 2d at 567. "Breach of some legal duty is a fundamental element of claims for both negligence and wantonness." *Gardner v. MGC Mortg., Inc.*, 2013 WL 800741, at *4 (M.D. Ala. Mar. 4, 2013); *see also E.H. v. Overlook Mountain Lodge*, 638 So. 2d 781, 783 (Ala. 1994) (recognizing duty as an "essential element[] of a negligence or wantonness action"). Thus, the Amended Complaint's shortcomings for negligence (i.e., lack of allegations demonstrating a legal duty and proximate cause) likewise preclude Plaintiffs' wantonness claim.

Even assuming that Plaintiffs had established a legal duty and proximate cause, their wantonness claim would still fail because the Amended Complaint is devoid of any allegation that any Defendant, much less BAM, possessed the requisite *mens rea* for wantonness. Plaintiffs allege that "Defendants [not BAM] knew or

should have known that providing material support to an FTO" would result in harm to Plaintiffs. (AC ¶ 362.) However, this type of conclusory allegation does not meet the high standard for wantonness, which requires "the conscious doing of some act, or the omission of some duty, under knowledge of existing conditions and while conscious that from the doing of such an act or omission of such duty injury will likely or probably result." *Ridgeway v. CSX Transp., Inc.*, 723 So. 2d 600, 608 (Ala. 1998). Because Plaintiffs do not allege that BAM's platform was being used to harm them, let alone that BAM had knowledge of any alleged harm, they have failed to state a claim for wantonness.

### c. Plaintiffs Cannot Recover for Emotional Injuries Under Alabama's "Zone-of-Danger" Test.

Finally, seventeen of the twenty-five named Plaintiffs[17] were not present at the October 7 terrorist attacks and therefore cannot recover for their alleged emotional injuries as a matter of law. It is well established in Alabama that recovery for mental anguish under either a negligence or a wantonness theory requires the plaintiff to have been within the "zone-of-danger." *Ex parte Grand Manor, Inc.*, 778 So. 2d 173, 179 (Ala. 2000). This test limits recovery to those who either sustained a physical injury or were "placed in immediate risk of physical harm" by the

---

[17] Noach Newman (FAC ¶ 44); Adin Gess (*id.* ¶ 46); Iris Weinstein Haggai (*id.* ¶ 50); Ahl Haggai (*id.* ¶¶ 54, 55); Rahm Haggai (*id.* ¶¶ 54, 55); Zohar Haggai (*id.* ¶¶ 54, 55); Ora Cooper (*id.* ¶ 51); Rotem Cooper (*id.* ¶ 51); Ayelet Samerano (*id.* ¶ 63); Hagar Almog (*id.* ¶ 49); John Doe (*id.* ¶¶ 56, 57); Schachar Levy (*id.* ¶ 67); Richard Roe (*id.* ¶ 58); Talik Gvili (*id.* ¶¶ 64, 65); Roee Baruch (*id.* ¶ 66); James Poe (*id.* ¶ 68); Jane Moe (*id.* ¶ 62).

defendant's conduct. *Id.*; *see also AALAR Ltd., Inc. v. Francis*, 716 So. 2d 1141, 1147 (Ala. 1998) (holding that one plaintiff bringing negligence and wantonness claims could not recover for emotional injury because he did not sustain a physical injury, nor was he placed in immediate risk of physical harm). By their own admission, these seventeen Plaintiffs were not present at the attack and were therefore never in the "zone-of-danger." Accordingly, their claims for emotional injury must fail.

### D. Plaintiffs Fail to Establish that BAM Is the "Alter Ego" of BHL or Mr. Zhao.

Plaintiffs cannot cure the deficiencies in their jurisdictional allegations (the failure to plead that BAM had any suit-related contacts with Alabama or the United States) or substantive allegations (the failure to plead that BAM played any role in the transactions underlying their claims) through an "alter ego" or "veil piercing" theory.[18]

To sufficiently plead an alter-ego theory, Plaintiffs are required to establish "extraordinary circumstances," *Gilbert v. James Russell Motors, Inc.*, 812 So. 2d 1269, 1273 (Ala. Civ. App. 2001), necessary to overcome the "well settled" presumption "that a corporation is a legal entity existing separately from its

---

[18] The applicable law for an alter-ego analysis depends on whether it is used to establish personal jurisdiction or liability: for personal jurisdiction, Alabama law applies; for liability, the law of the state of incorporation applies. *See Comeens v. HM Operating, Inc.*, 2014 WL 12650102, at *5 (N.D. Ala. Dec. 1, 2014) (applying Alabama's alter-ego test for jurisdictional purposes); *Euroboor B.V. v. Grafova*, 2021 WL 4325694, at *11, 17 (N.D. Ala. Sep. 23, 2021) (applying law of state of incorporation to alter-ego analysis for liability).

shareholders," *First Health, Inc. v. Blanton*, 585 So. 2d 1331, 1334 (Ala. 1991). *See also Gracey v. Albawardi*, 2024 WL 5116368, at *5 (Del. Ch. Dec. 13, 2024) ("Delaware law presumes respect for the corporate form. . . . As such, persuading a Delaware court to disregard the corporate entity is a difficult task.").

rPlaintiffs' alter-ego theory fails for multiple reasons, including that this theory has been repeatedly rejected by other courts, the vast majority of Plaintiffs' allegations do not relate to purported control during the relevant time period, and, in any event, the AC fails the exacting standard for piercing the corporate veil under either Alabama or Delaware law.

As an initial matter, numerous courts have rejected similar arguments that BAM is the alter ego of BHL or other Binance-related entities. *See Reynolds v. Binance Holdings Ltd.*, 481 F. Supp. 3d 997, 1008 (N.D. Cal. 2020) (rejecting argument that BAM and BHL were alter egos based on allegedly overlapping directors and shared software); *Kuklinski v. Binance Cap. Mgmt.*, 2023 WL 2788654, at *7 (S.D. Ill. Apr. 4, 2023) (concluding that BAM and Binance Capital Management were not alter egos); *Cox v. CoinMarketCap OpCo, LLC*, 2023 WL 1929551, at *15 (D. Ariz. Feb. 10, 2023), *rev'd in part on other grounds by* 112 F.4th 822 (9th Cir. 2024) (same); *cf. Guarini v. Doe*, 634 F. Supp. 3d 1100, 1106 (S.D. Fla. 2022) (declining to impute BAM's jurisdictional contacts because "the public

records cited by Defendant establish that . . . Binance.US is not affiliated with the Binance that has been sued in this action").

Additionally, Plaintiffs' theory suffers from a fatal flaw: their allegations do not make a showing of control "*at the time of the attacked transaction*" to establish alter-ego status. *Shorter Bros. v. Vectus 3, Inc.*, 343 So. 3d 508, 514 (Ala. 2021); *see also ECB USA, Inc. v. Savencia, S.A.*, 2025 WL 254504, at *2 (D. Del. Jan. 16, 2025) (cabining alter-ego analysis to the "relevant times related to the case" and "conclud[ing] that [d]efendants have *not* sufficiently demonstrated that [p]laintiffs were the alter ego of SFI in the relevant time period"); *JPMorgan Chase Bank, N.A. v. Ballard*, 213 A.3d 1211, 1248 (Del. Ch. 2019) (assessing whether alleged alter ego "is and was at all relevant times the alter ego of [the defendant]").

Contrary to Plaintiffs' conclusory assertion that "[a]t all relevant times, Binance and CZ fully controlled BAM Trading" (AC ¶ 34), virtually all their allegations predate 2023 and therefore cannot establish that BAM was either's alter ego when any transaction plausibly connected to the October 7 attacks occurred. Plaintiffs acknowledge, for example, that Mr. Zhao was chairman of BAM Trading and BAM Management's boards "*until approximately March 2022*" (AC ¶ 219). Similarly, Plaintiffs cite complaints about Mr. Zhao's influence on BAM policies made by former CEOs who resigned in *March 2021* and *August 2021* (*id.* ¶¶ 80, 221, 225-27), and they allege that BAM employees lacked control over its bank

accounts "[u]ntil at least *December 2020*"—expressly conceding that BAM "assume[d] control" over its bank accounts after that point (*id.* ¶¶ 228, 251). These allegations fall outside the period relevant to their claims.[19] The bulk of Plaintiffs' allegations therefore are irrelevant to whether Mr. Zhao and BHL exercised control over BAM at the time when the October 7 attacks were financed.

Moreover, as explained below, Plaintiffs' allegations fail to meet the applicable alter-ego tests for jurisdiction or liability. Plaintiffs seek to repurpose a mishmash of allegations from regulatory agency complaints and settlements to contend that BAM is essentially one and the same with Mr. Zhao and BHL, without contesting that BAM (i) maintains legitimate business operations separate from

---

[19] *See* AC ¶ 192 (complaints by CFO in November 2020); *id.* ¶ 194 (allegations that BAM had limited access to data "through much of 2021"); *id.* ¶ 221 (allegations about control of BAM technology in 2021); *id.* ¶ 222 (financing of BAM "[a]s of July 2020"); *id.* ¶ 228 (allegations concerning BAM's bank accounts in December 2020); *id.* ¶ 229 (statement about internal separation between BAM and Binance in November 2019); *id.* ¶ 232 (allegations that Binance personnel dictated BAM's "early operations"); *id.* ¶¶ 233-44, 296, 300 (transfers from BAM to Merit Peak in 2020 and "the first three months of 2021"); Angus Berwick & Tom Wilson, *Exclusive: Crypto giant Binance controlled 'independent' US affiliate's bank accounts*, Reuters (June 5, 2023), https://www.reuters.com/technology/crypto-giant-binance-controlled-independent-us-affiliates-bank-accounts-2023-06-05/ (article cited at AC ¶¶ 245-46 stating that Binance executive operated BAM bank accounts in 2019 and 2020 and specifying that the article's authors did not review records for periods other than January to March 2021); AC ¶ 247 (alleging Mr. Zhao approved large business expenditures "through at least January 30, 2020" and an additional expense "in January 2021"); *id.* ¶¶ 129, 254, 267 (Binance executive was a signatory on BAM accounts until December 2020 and a trust company account until July 2021); *id.* ¶¶ 256-57 (transfers in June and December 2020); *id.* ¶ 259 (BHL's custodian status "through December 2022"); *id.* ¶¶ 264-65 (describing audits in 2020 and 2022); *id.* ¶ 261 (Binance employees worked on Binance.US platform through December 2022); *id.* ¶ 276 (Merit Peak traded on Binance.US from 2019 to 2021, Sigma Chain traded on Binance.US until April 2022); *id.* ¶¶ 282, 287 (complaints by BAM employees and executives in 2020); *id.* ¶ 288 (personnel decisions in March 2021).

BHL, i.e., a functioning, regulated U.S. cryptocurrency exchange (*see* Decl. ¶¶ 4-8); (ii) observes corporate formalities (*see* Decl. ¶¶ 7, 15-20, 29, 33-34); (iii) transacts with BHL on an arm's-length basis (*see* Decl. ¶¶ 23-24), and (iv) is adequately capitalized, rather than a mere shell designed to evade liability (*see* Decl. ¶¶ 25-29). These factors eviscerate Plaintiffs' theory under either Alabama or Delaware law.

### 1.   Plaintiffs Cannot Establish that BAM Is an Alter Ego for Jurisdictional Purposes.

Alabama courts and "[t]he Eleventh Circuit ha[ve] recognized that personal jurisdiction may be based on an alter ego theory when a subsidiary's 'separate corporate status is formal only' and has no 'semblance of individual identity.'" *Mack v. CooperSurgical, Inc.*, 2023 WL 2653365, at *4 (M.D. Ala. Mar. 27, 2023) (quoting *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1272 (11th Cir. 2002)); *Blanton*, 585 So. 2d at 1334 ("[p]iercing the corporate veil is not a power that is lightly exercised"). Accordingly, Alabama law will not allow the corporate structure to be disregarded under an alter-ego theory unless "it is used *solely* to avoid a personal liability of the owner while reserving to the owner the benefits gained through use of the corporate name." *Messick v. Moring*, 514 So. 2d 892, 894 (Ala. 1987). To satisfy this burden, Plaintiffs need to establish three elements: (1) "[t]he dominant party must have *complete control and domination* of the subservient corporation's finances, policy and business practices so that at the time of the attacked transaction, the subservient corporation had no separate mind, will, or

existence of its own"; (2) "[t]he control must have misused by the dominant party"; and (3) "[t]he misuse of this control must *proximately cause the harm* or unjust loss complained of." *Blanton*, 585 So. 2d at 1334-35.

As a threshold matter, with respect to BAM, Plaintiffs ask the Court to engage in "'reverse veil piercing,' in which a corporation is held liable for the [acts] of a principal." *SEC v. Torchia*, 729 F. App'x 772, 777 (11th Cir. 2018). However, this theory is not even recognized under Alabama law. *See Meeks v. Budco Grp.*, 631 So. 2d 915, 916-17 (Ala. 1993) ("[Plaintiff] asks us to consider a theory he calls 'reverse piercing of the corporate veil'. . . this Court is unaware of [that theory's] existence outside of [plaintiff's] brief.").

Setting this major issue aside, Plaintiffs cannot meet the elements necessary to establish alter ego. Alabama courts have consistently held that the allegations of "[o]wnership and advisory management" that Plaintiffs rely upon are insufficient to establish that BAM is Mr. Zhao's alter ego. *Stewart v. Bureaus Inv. Grp., LLC*, 2015 WL 7572312, at *11 (M.D. Ala. Nov. 24, 2015); *see also Simmons v. Clark Equip. Credit Corp.*, 554 So. 2d 398, 400 (Ala. 1989) ("The mere fact that a party owns all or a majority of the stock of a corporation does not, of itself, destroy the separate corporate identity."). Although Plaintiffs paint Mr. Zhao's influence over some BAM business decisions as sinister, their own allegations supply the more benign explanation: Mr. Zhao is a majority owner in BAM's parent company and, until

44

2022, served as Chairman of its Board and exercised some degree of influence as an appropriate function of his official executive position (AC ¶¶ 75, 124).[20] *See Wright v. Alan Mills, Inc.*, 567 So. 2d 1318, 1319 (Ala. 1990) (finding owner's involvement in even the "day-to-day operations of the corporation" insufficient to find alter ego).

Further, "[m]ere domination or control of a corporation by its stockholder cannot be enough to allow a piercing of the corporate veil absent misuse of control and harm or loss resulting from it." *Blanton*, 585 So. 2d at 1335. Here, Plaintiffs do not allege that any control that Mr. Zhao or BHL had over BAM was misused to proximately cause the harm they suffered. Plaintiffs allege that BAM was established to function as a regulatory "smokescreen" for BHL, by redirecting and bearing the brunt of U.S. regulatory attention. (AC ¶¶ 178, 191.) Not only did BAM's role in this alleged scheme center on its *compliance with U.S. law*, U.S. regulators—not Plaintiffs—were the focus of any supposed deception. (*See* AC ¶ 285 (alleging that Binance intended to "deceive regulators").)

Nor does Plaintiffs' allegation that "Binance" purportedly "instructed" certain of BAM's U.S. customers to make accounts on its platform through the use of VPNs aid their alter-ego theory. (*See, e.g.*, AC ¶¶ 95-98, 102, 103, 132, 175-76, 187, 214.) This allegation does not support the inference of misuse or manipulation of any of

---

[20] Plaintiffs do not contest that Mr. Zhao never served as an officer or employee of BAM. (*See* Decl. ¶ 17.)

BAM's internal systems or operations. *See Rotor Blade, LLC v. Signature Util. Servs., LLC*, 545 F. Supp. 3d 1202, 1216 (N.D. Ala. 2021) (rejecting alter-ego theory where plaintiff failed to "allege facts plausibly showing that [defendant] dominated [the corporation] or misused his power in a way that harmed [plaintiff]").

Plaintiffs' allegations of transactions involving BAM's funds again do not support a theory of misuse or a link to the alleged loss. *See Heisz v. Galt Indus.*, 93 So. 3d 918, 931 (Ala. 2012) (transactions directed by the shareholder who allegedly controlled the corporation did not constitute evidence of misuse absent evidence that "those transactions were somehow unfair, fraudulent, or otherwise not legitimate").

Moreover, the Amended Complaint cannot draw a plausible link between any purported control or misuse of BAM and the attacks through a series of speculative leaps, including that (1) certain of BAM's customers were migrated to BHL's platform (without BAM's participation), (2) those customers transacted on a platform that was violating U.S. law, and (3) the funds of those customers *could have* algorithmically and "randomly" been matched to illicit orders. (AC ¶ 204; *see also, e.g.*, AC ¶¶ 119, 120, 122, 171.) *See Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1318 (11th Cir. 2006) ("[V]ague and conclusory allegations . . . are insufficient to establish a prima facie case of personal jurisdiction.").

Nor does Mr. Zhao's alleged involvement with both BAM and BHL support Plaintiffs' theory that BAM is *BHL*'s alter ego, given the absence of allegations that

BHL holds any ownership interest in BAM. *See MGF Healthcare Partners, Inc. v. Blue Ridge Healthcare Birmingham, LLC*, 542 F. Supp. 3d 1237, 1242 (N.D. Ala. 2021) ("Alabama law does not allow corporate veil-piercing to reach '[an entity] who is associated with a corporate entity,' but . . . is not themselves a shareholder, officer, or director."); *see also Madison Cnty. Commc'ns Dist. v. CenturyLink, Inc.*, 2012 WL 6685672, at *4 (N.D. Ala. Dec. 20, 2012) ("[G]enerally the corporate veil cannot be pierced horizontally between sibling corporations."). Further, even in rare cases in which courts consider "horizontal" veil-piercing, the burden is "higher." *Keenan v. Matchmaker Int'l, Inc. of Mobile*, 1999 WL 33590522, at *6 (S.D. Ala. Jan. 20, 1999). "Rather than merely showing dominance, control, or micro-management by the parent of the subsidiary, as one would be required to do in a vertical veil piercing . . . in order to conduct a horizontal piercing, the plaintiff must show that the corporate form is but a mirage." *Id*.

Plaintiffs' innocuous allegations that suggest BHL "controlled" BAM are insufficient to meet this "higher" burden. *See id*. For instance, they allege that BAM entered into licensing agreements with BHL regarding software and technology services, or custody arrangements. (*See* AC ¶¶ 74, 200). But the Amended Complaint contains no allegation that these dealings between BAM and BHL did not occur at arm's length, and Plaintiffs themselves allege that the BHL personnel who provided these services "'*operated independently of*' BAM Trading" such that BAM

employees would interact with them only when they needed technological or software issues resolved. (*Id*. ¶ 250 (emphasis added); *see also* Decl. ¶ 23 (BHL provides software and trademark licenses to BAM pursuant to arm's-length service agreements).) *See Wright*, 567 So. 2d at 1319 (holding that owner writing checks on the corporation's account to herself and her son's business did not render the corporation her alter ego where they "were arm's-length transactions made in the ordinary course of business"); *see also Reynolds*, 481 F. Supp. 3d at 1006-07 (finding that allegations that BAM and BHL shared a website, wallet technology, and other software described "administrative" functions insufficient to establish alter ego).

Moreover, the Amended Complaint lacks allegations regarding many of the most significant factors critical to an alter-ego analysis under Alabama law. *See Simmons*, 554 So. 2d at 401 (factors permitting piercing the corporate veil include failure to "observe the corporate form," "maintain[ing] no corporate records," "maintain[ing] no corporate bank account," and "ha[ving] no employees"). Plaintiffs cannot dispute that BAM has its own Board, makes its own employment decisions, maintains its own employee handbooks, maintains its own terms of use for its Platform and its own policies and procedures for its operations, has its own employees and office space, pays its own expenses and debt obligations, prepares its own tax returns, and maintains its own bank accounts. (*See* Decl. ¶¶ 15-16, 19-23, 27-30.) *See Thornton v. Bayerische Moteren Werke AG*, 439 F. Supp. 3d 1303, 1312

(N.D. Ala. 2020) (rejecting alter-ego theory where companies were "separate legal entities that maintain distinct policies and procedures for their respective operations"); *Madison Cnty. Commc'ns Dist.*, 2012 WL 6685672, at *3 (rejecting alter-ego theory where there were no allegations "that any entity failed to maintain its corporate existence, neglected to keep separate corporate and accounting records, or used assets of employees of other entities as their own regardless of corporate boundaries"); *S. Ala. Pigs, LLC v. Farmer Feeders, Inc.*, 305 F. Supp. 2d 1252, 1258-59 (M.D. Ala. 2004) (no evidence that corporation failed to follow corporate formalities where it "had its own bank account and paid its debts from this account"). Nor do Plaintiffs allege that BAM was inadequately capitalized. *Gilbert*, 812 So. 2d at 1273 (rejecting alter-ego theory where there were no allegations that corporation "was inadequately capitalized" or "that the amounts invested in [corporation] were inadequate for the purposes of operating the business"). (*See* Decl. ¶ 26 (BAM has maintained sufficient capital resources since its launch).) Not only is the failure to allege these factors fatal under Alabama law, courts have repeatedly cited similar pleading deficiencies to reject alter-ego claims against BAM specifically. *See Reynolds*, 481 F. Supp. 3d at 1007 (rejecting alter-ego theory where plaintiff failed to allege that BAM and BHL "held [themselves] out as liable for the debts of the other," "inadequate capitalization, disregard for corporate formalities, [or] segregation of corporate records"); *Cox*, 2023 WL 1929551, at *14 (rejecting alter-

ego theory where there were no allegations that separate Binance entity paid BAM's debts, expenses, or salaries, or that BAM was inadequately capitalized).

Further, legitimate operations strongly undermine a finding of alter ego. *See Gilbert*, 812 So. 2d at 1273-74 (rejecting alter-ego argument where corporation "was created to buy and sell" and the "evidence indicate[d] without dispute that [it] was operated in accordance with its stated purpose, that of buying and selling automobiles"). Plaintiffs, despite their framing, do not—and obviously could not—allege that BAM's platform did not in fact function as a cryptocurrency exchange, available to U.S. users and subject to U.S. regulations.

Plaintiffs stretch and embellish the regulatory sources they rely on to paint a sensationalistic, but inaccurate, picture of the agencies' claims and findings.[21] For example, Plaintiffs cite the revocation of BAM's North Dakota money transmitter license and the voluntary surrender of its Georgia money transmitter license to allege that "BAM has failed to comply" with state laws. (*See* AC ¶¶ 309-17.) This assertion

---

[21] Beyond these embellishments, Plaintiffs' theory is based not only on unsupported allegations, but also inaccurate allegations. For example, Plaintiffs assert without citation that BHL's Terms of Use "refer to BAM as a 'fiat gateway' for Binance." (AC ¶ 180.) Plaintiffs appear to have copied this allegation from an unverified complaint in a different case. *See* Compl., *Osterer v. BAM Trading Servs., Inc.*, No. 23-cv-22083 (S.D. Fla. June 6, 2023), ECF No. 1. But BHL's current Terms of Use make no reference to "fiat gateways." *Terms of Use*, Binance (May 6, 2025), https://www.binance.com/en/terms. And although an earlier version of Binance's terms discussed fiat gateways, it did not refer to BAM as a "fiat gateway" for Binance, and in fact it made no reference to BAM or its exchange at all. *See* https://web.archive.org/web/20230620202159/https://www.binance.com/en/terms (June 2023 Terms of Use).

is inaccurate and misleading. The revocation of the North Dakota license came after Mr. Zhao's guilty plea and stemmed from state statutes that provide for the revocation of licenses issued to companies whose owners or executives are convicted of a crime. (*See* AC ¶¶ 309-17.) The applicable North Dakota statute applies to individuals "exercising control" over a licensee and uses a narrow and innocuous definition of "control": holding 25 percent of voting shares, "[t]he power to elect or appoint a majority of key individuals or executive officers," or direct or indirect controlling influence over the company's management or policies. N.D. Cent. Code § 13-09.1-01(7).[22] Similarly, Georgia law provides for revocation if "any person who is a director, officer, partner, covered employee, or ultimate equitable owner of ten (10) percent or more of a licensee has been convicted of a felony."[23] Neither decision is premised on any purported involvement by BAM in the

---

[22] The North Dakota Department of Financial Institutions also determined that BAM had committed a state-law violation unconnected to Plaintiffs' claims (holding funds in "a type of asset which does not meet [North Dakota's] requirements of a permissible investment, and suspending payments and withdrawals of fiat currency). Order for Revocation, *In Re BAM Trading Services Inc.* (N.D. Dep't Fin. Inst.), https://www.nd.gov/dfi/sites/www/files/documents/Orders/Order%20-%20Revocation%20Notice%20of%20Right%20to%20Request%20Hearing.pdf (cited at AC ¶ 102 n.91).

[23] *See* AC ¶ 314 n.92 (citing *BAM Trading Services, Inc. d/b/a Binance.US Voluntarily Surrenders Georgia License*, Ga. Dep't Banking and Finance (Aug. 1, 2024), https://dbf.georgia.gov/press-releases/2024-08-01/voluntarily-surrenders-georgia-license).

51

underlying criminal cases, and neither made any finding that Mr. Zhao controlled

BAM under the applicable alter-ego requirements.[24]

Plaintiffs' allegations fail to establish that BAM was an alter ego of either

BHL or Mr. Zhao.

### 2. Plaintiffs Cannot Establish that BAM Is an Alter Ego for Liability Purposes.

Just as these allegations are insufficient to establish jurisdiction under

Alabama law, they similarly fail to establish liability under the law of BAM's state

of incorporation, Delaware. (*See* AC ¶ 69.) Like Alabama, Delaware sets a high bar

for piercing the corporate veil. To disregard the corporate entity—"a difficult task"—

a plaintiff must show "complete domination and control . . . to the point that [the

dominated entity] no longer has legal or independent significance of [its] own."

*Wallace v. Wood*, 752 A.2d 1175, 1183-84 (Del. Ch. 1999).

Delaware courts look to multiple factors to determine control or domination,

including: "(1) whether the company was adequately capitalized for the undertaking;

(2) whether the company was solvent; (3) whether corporate formalities were

---

[24] Plaintiffs also emphasize that BAM was a defendant in the SEC's now-dismissed lawsuit. (AC ¶¶ 71-72, 328; *SEC Announces Dismissal of Civil Enforcement Action Against Binance Entities and Founder Changpeng Zhao*, U.S. Sec. & Exch. Comm'n (May 29, 2025), https://www.sec.gov/enforcement-litigation/litigation-releases/lr-26316.) But that lawsuit did not involve claims of terrorism, inadequate internal controls, or any other conduct relevant to Plaintiffs' claims. Instead, the SEC's claims centered on whether certain BAM and BHL "offerings and sales of crypto assets [constituted] 'securities' for purposes of the Securities Act and the Exchange Act[.]" *SEC v. Binance Holdings Ltd.*, 738 F. Supp. 3d 20, 38 (D.D.C. 2024).

observed; (4) whether the dominant shareholder siphoned company funds; and (5) whether, in general, the company simply functioned as a facade for the dominant shareholder." *Manichaean Cap., LLC v. Exela Techs., Inc.*, 251 A.3d 694, 706-07 (Del. Ch. 2021). In addition to these factors, "an overall element of injustice or unfairness must be present," *id.* at 707, as well as "a causal connection between the damages alleged and the abuse of the corporate form," *Maxus Liquidating Tr. v. YPF S.A. (In re Maxus Energy Corp.*), 641 B.R. 467, 505 (Bankr. D. Del. 2022).

Importantly, Delaware law mandates that to allow piercing of the corporate veil " the corporation must be a sham and exist for *no other purpose* than as a vehicle for fraud." *Wood*, 752 A.2d at 1184. This is fatal to Plaintiffs' theory. As Plaintiffs themselves acknowledge, BAM operates "a separate exchange designed to comply with all US federal laws," with its own customers, that is "authorized to do business" in most of the United States. (AC ¶¶ 94; *see also id.* ¶ 130 (acknowledging that BAM's exchange offers over-the-counter trading with independent counterparties).) Even when alleging that BHL and Mr. Zhao "controlled" BAM, Plaintiffs necessarily acknowledge that BAM did not operate as a mere shell, but was a functioning business with its own customers, bank accounts, and assets. (*Id.* ¶¶ 130, 177, 259.)

Several other factors also undermine Plaintiffs' allegations that BAM is the alter ego of either Mr. Zhao or BHL. Under Delaware law, Plaintiffs' citations to Mr.

Zhao's status as owner and chairman are insufficient to render BAM his alter ego. (*See* AC ¶¶ 75, 124.) *See Wenske v. Blue Bell Creameries, Inc.*, 2018 WL 5994971, at *6 n.44 (Del. Ch. Nov. 13, 2018) ("It is hornbook law that the exercise of the control which stock ownership gives to the stockholders . . . will not create liability beyond the assets of the subsidiary."). Nor does his historical involvement with both BAM and BHL, or past common management between the two companies, render BAM and BHL alter egos. (*See, e.g.*, AC ¶ 200 (citing FinCEN statement that Binance executives served on BAM's Board).[25]) *See Landgarten v. York Rsch. Corp.*, 1988 Del. Ch. LEXIS 20, at *12 (Del. Ch. Feb. 3, 1988) ("Neither total stock ownership nor the existence of common management, without more, is sufficient to pierce the corporate veil."); *Trs. of Arden v. Unity Constr. Co.*, 2000 Del. Ch. LEXIS 7, at *12 (Del. Ch. Jan. 26, 2000) ("Of course, common management of two entities does not, by itself, justify piercing the corporate veil."); *Leslie v. Telephonics Office Techs., Inc.*, 1993 WL 547188, at *8 (Del. Ch. Dec. 30, 1993) ("[M]ore often than not, Delaware courts have upheld the legal significance of corporate form, in a corporate-subsidiary complex, despite the fact of substantial overlap in the management and control of the two entities."). In fact, as in Alabama, "[h]orizontal veil piercing . . . ha[s] not been adopted in Delaware." *Cleveland-Cliffs Burns*

---

[25] *See also id.* ¶¶ 75-76, 124, 149, 180, 184, 220, 225, 267, 272, 308.

*Harbor LLC v. Boomerang Tube, LLC*, 2023 WL 5688392, at *7 (Del. Ch. Sep. 5, 2023).

Nor do Plaintiffs plead that BAM was undercapitalized, was insolvent, or failed to observe corporate formalities to the point that it was merely a "sham." *See Gadsden v. Home Pres. Co.*, 2004 WL 485468, at *5 (Del. Ch. Feb. 20, 2004) (disregarding corporate status where corporation had "no assets, capital, or tools" and shareholder actively "remov[ed] all funds from the corporate accounts" to profit off "promises that his company had no ability to perform"). And Plaintiffs have not established that any use of BAM's corporate form resulted in fraud or injustice that caused their damages, as there is no plausible connection between Mr. Zhao and BHL's alleged "control" of BAM and the terrorist attacks that harmed Plaintiffs. *See supra* Section II(C)(1); *In re Maxus Energy Corp.*, 641 B.R. at 505 (requiring a causal connection between "abuse of the corporate form" and plaintiff's damages).

Plaintiffs cannot establish that BAM was Mr. Zhao or BHL's alter ego for either jurisdictional or liability purposes.

### E.    The Court Lacks Subject Matter Jurisdiction over Plaintiffs' ATS Claim (Count V).

In Count V, the "foreign-born citizen" Plaintiffs bring a claim under the Alien Tort Statute, 28 U.S.C. § 1350, premised on BAM's alleged violations of the ATA, JASTA, and 18 U.S.C. §§ 2339A and B. (*See* AC ¶¶ 350-52; *see also, e.g., id.* ¶¶ 49, 50, 54, 59-61; *id.* at 115.) The Court lacks jurisdiction over this claim because

Plaintiffs do not identify a valid international-law basis for their claim or domestic conduct sufficient to overcome the presumption against extraterritorial application of the ATS.

The ATS provides district courts "original jurisdiction of any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States." 28 U.S.C. § 1350. The requirements for jurisdiction are therefore that: "the plaintiff [is] '(1) an alien, (2) suing for a tort, which was (3) committed in violation of international law.'" *Doe v. Drummond Co.*, 782 F.3d 576, 583 (11th Cir. 2015). That Plaintiffs allege "violation[s] of United States law" (AC ¶ 351) as the partial basis for their ATS claim is therefore irrelevant—"the scope of liability under the ATS is determined by reference to international law not federal statutes." *Doe I v. Cisco Sys.*, 113 F.4th 1230, 1234 (9th Cir. 2024) (citing *Sosa v. Alvarez-Machain*, 542 U.S. 692, 733 (2004)).[26]

The AC's reliance on certain treaties and conventions is misplaced. (*See* AC ¶¶ 25, 353-54 (citing the 2000 UN "Palermo Convention" Against Transnational Organized Crime, the Convention for the Suppression of the Financing of Terrorism,

---

[26] To the extent Plaintiffs argue that violations of domestic anti-terrorism statutes constitute concomitant violations of international law, multiple courts have rejected this argument. *See, e.g.*, *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 118, 125 (2d Cir. 2013) ("Plaintiffs fail to . . . plead a violation of the ATS because no universal norm against 'terrorism' existed under customary international law (i.e., the 'law of nations') as of September 11, 2001."); *Saperstein v. Palestinian Auth.*, 2006 WL 3804718, at *7 (S.D. Fla. Dec. 22, 2006) ("[P]olitically motivated terrorism has not reached the status of a violation of the law of nations."); *In re Chiquita Brands Int'l Inc.*, 792 F. Supp. 2d 1301, 1321-22 (S.D. Fla. 2011) (similar).

the Rome Statute of the International Criminal Court, and Article 34 of the Fourth Geneva Convention).) No court has recognized the Palermo Convention as a basis for an ATS claim, and the other treaties have been specifically rejected. *See Jesner v. Arab Bank*, 584 U.S. 241, 261-62 (2018) (plurality opinion) ("[B]y its terms the [terrorist financing] Convention imposes its obligations only on nation-states 'to enable' corporations to be held liable in certain circumstances under domestic law. . . . The Convention neither requires nor authorizes courts, without congressional authorization, to displace those detailed regulatory regimes by allowing common-law actions under the ATS."); *Est. of Amergi v. Palestinian Auth.*, 611 F.3d 1350, 1363 (11th Cir. 2010) (concluding that "a violation of the Geneva Conventions does not establish a violation of the law of nations, which is required to maintain jurisdiction under the ATS"); *Doe v. Cisco Sys.*, 73 F.4th 700, 731 (9th Cir. 2023) ("[T]he Rome Statute was not intended to codify customary international law nor to inhibit or otherwise affect its development."); *In re Chiquita Brands Int'l, Inc.*, 792 F. Supp. 2d 1301, 1318 (S.D. Fla. 2011) ("The Court finds that the [terrorist] Financing Convention neither codifies nor creates an international-law norm against terrorism or terrorist financing.").

The Court should decline Plaintiffs' invitation to recognize a cause of action under any of these provisions here. *See Nestle USA, Inc. v. Doe*, 593 U.S. 628, 635 (2021) ("[C]ourts must refrain from creating a cause of action whenever there is

even a single sound reason to defer to Congress."); *Baloco v. Drummond Co., Inc.*, 767 F.3d 1229, 1234 (11th Cir. 2014) ("[I]t is well settled that [the ATS] does not empower a cause of action for just any alleged violation of the law of nations."); *Galvez v. Fanjul Corp.*, 533 F. Supp. 3d 1268, 1280 (S.D. Fla. 2021) ("[I]n the absence of state action, the ATS typically only imposes liability on private parties for violations of the most serious international norms, such as war crimes, slave trading, and genocide.") (collecting cases). And even if a cause of action existed, Plaintiffs' allegations fail to establish that any conduct by BAM violated these provisions, for the reasons set out in Section II(C) *supra*.

Dismissal is also independently required for a second reason: "ATS claims are subject to the presumption against extraterritoriality," which "assumes U.S. law does not apply outside the United States." *Drummond*, 782 F.3d at 582. Plaintiffs' claims do not "touch and concern the territory of the United States . . . with sufficient force to displace" that presumption and subject BAM to liability for attacks that occurred abroad. *Kiobel v. Royal Dutch Petroleum Co.*, 569 U.S. 108, 124 (2013).

"[T]o ensure a 'permissible domestic application' of the ATS, a plaintiff must show that 'the conduct relevant to the statute's focus occurred in the United States,' even if other relevant conduct occurred abroad." *In re Chiquita Brands Int'l Inc. Alien Tort Statute & Shareholders Deriv. Litig.*, 2022 WL 22236064, at *10 (S.D. Fla. Aug. 23, 2022) (quoting *Nestle*, 593 U.S. at 634). Under Supreme Court and

Eleventh Circuit precedent, neither BAM's status as a U.S. corporation, the United States' general interest in combatting terrorism, nor "general corporate activity" "strike with 'sufficient force' to displace the presumption and permit jurisdiction." *Nestle*, 593 U.S. at 634; *Drummond*, 782 F.3d at 596-97.

Plaintiffs cannot show more. The only conduct (domestic or otherwise) alleged in the Amended Complaint concerning BAM is that it operates a U.S.-based cryptocurrency exchange compliant with U.S. regulations. (AC ¶¶ 37, 94.) As explained above, Plaintiffs do not plausibly connect BAM's U.S. platform to "the conduct relevant to the statute's focus"—the terrorist-linked transactions that purportedly facilitated the attacks on Plaintiffs. *See supra* Section II(C)(1).

The Court lacks jurisdiction over Plaintiffs' ATS claim, and it must be dismissed.

## III.   CONCLUSION

For the reasons stated herein, the Court should dismiss BAM from this action, with prejudice, pursuant to Federal Rules of Civil Procedure 8 and 10, 12(b)(1), 12(b)(2), and 12(b)(6).

Dated: June 20, 2025                    Respectfully submitted,

*/s/ Daniel Tramel Stabile*
Daniel Tramel Stabile (*pro hac vice*)
Thania (Athanasia) Charmani (*pro hac vice*)
**WINSTON & STRAWN LLP**
200 Park Avenue
New York, NY 10166
Tel.: (212) 294-4659
DStabile@winston.com
ACharmani@winston.com

*/s/ Kenneth D. Sansom*
Kenneth D. Sansom (SAN 047)
Michael T. Sansbury (SAN 054)
**SPOTSWOOD SANSOM & SANSBURY LLC**
Financial Center
505 20th St North, Suite 700
Birmingham, AL 35203-3329
Tel.: (205) 986-3620
Fax: (205) 986-3639
ksansom@spotswood.com
msansbury@spotswood.com

*Attorneys for Defendant BAM Trading Services Inc. d/b/a Binance.US*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on June 20, 2025, a true and correct copy of the foregoing

document was served via the Court's ECF filing system on all counsel of record.

*/s/ Kenneth D. Sansom*

OF COUNSEL
