**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | |
|---|---|
| NOACH NEWMAN, et al., | |
| Plaintiffs, | |
| v. | Case No. 2:24-cv-00134-ECM-CWB |
| BAM TRADING SERVICES INC. d/b/a BINANCE.US, et al., | **ORAL ARGUMENT REQUESTED** |
| Defendants. | |

**MR. CHANGPENG ZHAO'S REPLY IN SUPPORT OF HIS
<u>MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT</u>**

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................................................1

ARGUMENT .........................................................................................................3

I.      Plaintiffs Misrepresent Key Facts. ..........................................................3

II.     Plaintiffs Have Abandoned Key Issues. ...................................................5

III.    The FAC Must Be Dismissed for Failure to Comply with Rules 8 and 10. ......................7

IV.     The FAC Fails to Plead a Basis for Personal Jurisdiction Over Mr. Zhao. .........................7

        A.      Plaintiffs Do Not Plausibly Allege BAM's Undercapitalization. ...........................9

        B.      Plaintiffs Do Not Plausibly Allege a Fraudulent Purpose. ...................................10

        C.      Plaintiffs Do Not Plausibly Allege Alter Ego/Instrumentality. ...........................11

                1.      Plaintiffs Improperly Conflate Mr. Zhao and BHL. .................................11

                2.      Plaintiffs Fail to Allege BAM Was Under the Complete Dominion and Control of Mr. Zhao. ...................................12

                        a.      The Government Actions Do Not Support Veil Piercing. .............13

                        b.      The Brooks Deposition Excerpt Does Not Support Veil Piercing. ...................................14

                        c.      The BAM Settlement Does Not Support Veil Piercing. ...............15

                        d.      Plaintiffs Fail to Allege Mr. Zhao's Misuse of BAM's Corporate Form. .................................16

V.      Plaintiffs' Claims Against Mr. Zhao Must Be Dismissed. ..................................16

        A.      Allegations About the Entity Defendants Cannot Be Imputed to Mr. Zhao. .........17

        B.      Plaintiffs Fail to Plausibly Plead Claims Under the ATA (Claims I-IV). .............18

                1.      The FAC Does Not Plead the Requisite *Mens Rea* for Plaintiffs' ATA Claims. ...................................19

                2.      Five Plaintiffs Lack Standing to Bring ATA Claims. ..............................20

                3.      The FAC Does Not Plead Material Support Claims (Claims III & IV) .....20

                4.      The FAC Does Not Plead a JASTA Conspiracy Claim (Claim II) ...........21

5.    The FAC Does Not Plead a JASTA Aiding-and-Abetting Claim. ............24

C.    Plaintiffs Fail to Plead ATS Liability (Claim V). ....................................................30

1.    Fifteen Plaintiffs Cannot Bring ATS Claims. ............................................30

2.    Plaintiffs Fail to Rebut the Presumption Against Extraterritorial
Application of the ATS. ..............................................................................31

3.    Plaintiffs Do Not Plead a Basis for ATS Primary Liability. .....................32

4.    Plaintiffs Do Not Plead a Basis for ATS Secondary Liability. .................33

D.    Plaintiffs Fail to Plead a Negligence/Wantonness Claim (Claim VI) ...................34

CONCLUSION ........................................................................................................................35

**<u>TABLE OF AUTHORITIES</u>**

**Page(s)**

**Cases**

*In re Agape Litig.*,
   681 F. Supp. 2d 352 (E.D.N.Y. 2010) ........................................................................34

*Aiken v. Interglob. Mergers & Acquisitions*,
   No. 05 Civ. 5503, 2006 WL 1878323 (S.D.N.Y. July 5, 2006) ..............................34

*Armstrong v. Am. Pallet Leasing Inc.*,
   678 F. Supp. 2d 827 (N.D. Iowa 2009).......................................................................34

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)......................................................................................................5

*Ashley v. Deutsch Bank Aktiengesellschaft*,
   144 F.4th 420 (2d Cir. 2025) .............................................................................. *passim*

*Bernhardt v. Islamic Republic of Iran*,
   47 F.4th 856 (D.C. Cir. 2022)...............................................................................22, 23

*Bernhardt v. Islamic Republic of Iran*,
   No. 18-2739, 2020 WL 6743066 (D.D.C. Nov. 16, 2020)......................................21

*Best Canvas Products & Supplies, Inc. v. Ploof Truck Lines, Inc.*,
   713 F.2d 618 (11th Cir. 1983) ..................................................................................19

*Bowden ex rel. Bowden v. Wal–Mart Stores, Inc.*,
   124 F. Supp. 2d 1228 (M.D. Ala. 2000) ....................................................................6

*Brown v. Univ. of Ala.*,
   No. 7:24-CV-1069, 2025 WL 1908737 (N.D. Ala. July 10, 2025) ...........................9

*In re Chiquita Brands Int'l, Inc.*,
   792 F. Supp. 2d 1301 (S.D. Fla. 2011) ................................................................32, 33

*Coal. for the Abolition of Marijuana Prohibition v. City of Atlanta*,
   219 F.3d 1301 (11th Cir. 2000) ..................................................................................6

*Consol. Dev. Corp. v. Sherritt, Inc.*,
   216 F.3d 1286 (11th Cir. 2000) ..................................................................................8

*d'Amico Dry d.a.c. v. Nikka Fin., Inc.*,
   429 F. Supp. 3d 1290 (S.D. Ala. 2019)........................................................................8

*Daughtry v. Jenny G, LLC,*
    703 F. App'x 883 (11th Cir. 2017) ..................................................................12

*Direct Sales Co. v. United States,*
    319 U.S. 703 (1943) ......................................................................................28

*Doe v. Drummond Co.,*
    782 F.3d 576 (11th Cir. 2015) ......................................................................34

*Freeman ex rel. Est. Freeman v. HSBC Holdings PLC,*
    57 F.4th 66 (2d Cir. 2023) ...............................................................18, 22, 23

*First Health, Inc. v. Blanton,*
    585 So. 2d 1331 (Ala. 1991) ....................................................................11, 12

*Fraenkel v. Standard Chartered Bank,*
    Nos. 24-CV-4484 and 24-CV-5788, 2025 WL 2773251
    (S.D.N.Y. Sept. 26, 2025) ..............................................................................30

*Gilbert v. James Russell Motors, Inc.,*
    812 So. 2d 1269 (Ala. Civ. App. 2001) .......................................................8, 11

*Gillaspy v. Wells Fargo Bank, N.A. as Trustee for Park Place Sec., Inc.,*
    No. 2:22-cv-193, 2024 WL 898887 (M.D. Ala. Mar. 1, 2024) ..........................6

*Grayson v. Warden,*
    869 F.3d 1204 (11th Cir. 2017) ....................................................................13

*Halmos v. Bomardier Aerospace Corp.,*
    404 F. App'x 376 (11th Cir. 2010) ................................................................4

*Hammett v. 46 Enter., Inc.,*
    No. 5:19-cv-01918, 2021 WL 5040495 (N.D. Ala. Oct. 29, 2021) ...................6

*Heisz v. Galt Indus., Inc.,*
    93 So. 3d 918 (Ala. 2012) ..............................................................................9

*Hill v. Fairfield Nursing and Rehab. Ctr., LLC,*
    134 So. 3d 396 (Ala. 2013) ............................................................................8

*Hoefling v. City of Mia.,*
    811 F.3d 1271 (11th Cir. 2016) ......................................................................3

*Hofschutle v. SunTrust Banks, Inc.,*
    No. 1:20-cv-01676, 2021 WL 5230732 (N.D. Ga. Mar. 4, 2021) ...............34, 35

*Holder v. Humanitarian Law Project,*
    561 U.S. 1 (2010) ..........................................................................................26

*Honickman v. BLOM Bank SAL*,
 6 F.4th 487 (2d Cir. 2021) ...................................................................26

*Hooper v. City of Montgomery*,
 482 F. Supp. 2d 1330 (M.D. Ala. 2007) ................................................6

*IBEW-NECA Local 505 Pension &Welfare Plans v. Smith*,
 No. 06-0455, 2008 WL 4067363 (S.D. Ala. Aug. 27, 2008)..................10

*James v. Heritage Valley Fed. Credit Union*,
 197 F. App'x 102 (3d Cir. 2006) ...........................................................35

*In re Jan. 2021 Short Squeeze Trading Litig.*,
 76 F.4th 1335 (11th Cir. 2023) ...............................................................5

*Jan v. People Media Project*,
 783 F. Supp. 3d 1300 (W.D. Wash 2025)........................................31, 34

*Jesner v. Arab Bank, PLC*,
 584 U.S. 241 (2018)...............................................................................32

*Johnson v. City of Atlanta*,
 107 F.4th 1292 (11th Cir. 2024) ..............................................................4

*Kelley v. BMO Harris Bank N.A.*,
 No. 19-cv-1756, 2022 WL 4547022 (D. Minn. Sept. 29, 2022)............34

*Kindrick v. CMI Electronics, Inc.*,
 No. 2:09-cv-169, 2012 WL 4344069 (M.D. Ala. Sept. 21, 2012)....10, 12

*Krishanthi v. Rajaratnam*,
 2010 WL 3429529 (D.N.J. Aug. 26, 2010) ...........................................32

*Lavi v. UNRWA USA Nat'l Comm., Inc.*,
 No. CV 24-312, 2025 WL 2300038 (D. Del. Aug. 8, 2025) ..............3, 30

*Lelchook v. Lebanese Canadian Bank*,
 No. 18-cv-12401, 2024 WL 967078 (S.D.N.Y. Mar. 6, 2024)...............17

*Messick v. Moring*,
 514 So. 2d 892 (Ala. 1987).......................................................................8

*Nahl v. Jaoude*,
 968 F.3d 173 (2d Cir. 2020).....................................................................32

*Nestle USA, Inc. v. Doe*,
 593 U.S. 628 (2021)................................................................................31

*Newman v. Assoc. Press*,
 758 F. Supp. 3d 1357 (S.D. Fla. Dec. 10, 2024)................................................................23, 24

*Newman v. Assoc. Press*,
 No. 1:24-CV-20684, 2025 WL 2753930 (S.D. Fla. Sept. 29, 2025) ........................................3

*Nye & Nissen v. United States*,
 336 U.S. 613 (1949)...............................................................................................................29

*O'Neal v. Allstate Indem. Ins. Co. Inc.*,
 No. 20-14712, 2021 WL 4852222 (11th Cir. 2021) ..............................................................13

*O'Sullivan v. Deutsche Bank AG*,
 No. 17 CV 8709, 2019 WL 1409446 (S.D.N.Y. Mar. 28, 2019)............................................21

*Parizer v. AJP Educ. Found., Inc.*,
 No. 1:24-CV-724, 2025 WL 2382933 (E.D. Va. Aug. 15, 2025)..................................*passim*

*Parsons & Whittemore Enter. Corp. v. Cello Energy, LLC*,
 No. 09-631, 2011 WL 382813 (S.D. Ala. Feb. 3, 2011)....................................................10, 12

*Raanan v. Binance Holdings, Ltd.*,
 No. 24-cv-697, 2025 WL 605594 (S.D.N.Y. Feb. 25, 2025) ...............................21, 29, 30, 34

*Resnick v. AvMed, Inc.*,
 693 F.3d 1317 (11th Cir. 2012) ..............................................................................................20

*SEC v. Binance Holdings Ltd.*,
 No. 1:23-cv-01599 (D.D.C. May 29, 2025)..............................................................................14

*Shaffer v. Deutsche Bank AG*,
 No. 16-cr-497, 2017 WL 8786497 (S.D. Ill. Dec. 7, 2017).............................................22, 23

*Simmons v. Clark Equip. Credit Corp.*,
 554 So. 2d 398 (Ala. 1989).............................................................................................8, 10, 15

*Smith & Wesson Brands, Inc. v. Estados Unidos Mexicanos*,
 605 U.S. 280 (2025)......................................................................................................28, 29, 30

*Smith v. Avon Prods., Inc.*,
 No. 2:18-cv-00826, 2019 WL 921461 (N.D. Ala. Feb. 25, 2019)..........................................12

*Sosa v. Alvarez-Machain*,
 542 U.S. 692 (2004).................................................................................................................32

*Stewart v. Bureaus Inv. Grp., LLC*,
 No. 3:10-CV-1019, 2015 WL 7572312 (M.D. Ala. Nov. 24, 2015) .......................................13

*Twitter Inc. v. Taamneh*,
    598 U.S. 471 (2023) ................................................................................. *passim*

*United States v. Zhao*,
    No. 2:23-cr-00179 (W.D. Wash. May 3, 2024) ........................................................4

*Whitesell Corp. v. Screw Prod., Inc.*,
    No. 3:16-cv-00929, 2018 WL 10593639 (N.D. Ala. June 29, 2018) ....................................16

*Wiggins v. Ellis*,
    No. 2:12-cv-02705, 2021 WL 535536 (N.D. Ala. Feb. 12, 2021) ........................................15

**Statutes**

18 U.S.C. § 2333 ....................................................................................... *passim*

18 U.S.C. § 2339A ............................................................................................20

18 U.S.C. § 2339B(a)(1) ....................................................................................20

**Rules**

Fed. R. Civ. P. 8 ..........................................................................................2, 7

Fed. R. Civ. P. 10 ........................................................................................2, 7

**Other Authorities**

Financing Convention, Dec. 9, 1999, 16 U.S. 49, 2178 U.N.T.S. 197 ..................................32, 33

Defendant Mr. Changpeng Zhao submits this reply brief in further support of his Motion to dismiss the FAC.[1]

## PRELIMINARY STATEMENT

Plaintiffs' meandering Opposition confirms why their claims against Mr. Zhao cannot proceed. Rather than confronting the deficiencies in the FAC that Mr. Zhao identified in his Motion, Plaintiffs misrepresent the record, improperly conflate Mr. Zhao with the Entity Defendants, and ignore legal arguments they cannot answer. These ploys do not cure the FAC's shortcomings.

As an initial matter, the Opposition's repeated suggestions that Mr. Zhao "pled guilty" to facilitating funds to Hamas and other terrorist groups is patently false. As Mr. Zhao's Motion made clear, and as confirmed by his plea agreement with the DOJ, Mr. Zhao pleaded guilty to a single charge of failing to implement a BSA-compliant program at BHL. Further, the court in that case explicitly found no evidence that Mr. Zhao knew of any specific transactions with criminal proceeds over the Binance Platform. The court also recognized Mr. Zhao's "extraordinary commitments and dedication to philanthropic opportunities . . . not just in his country, but across the planet" and commended him as "a dedicated family man, and a giving person, as demonstrated by [his] charitable deeds."

As for the SEC complaint that the Opposition persistently highlights, it alleged violations of federal securities laws based on a now-abandoned theory that cryptocurrency tokens are investment contracts. The SEC asserted no claims that Mr. Zhao supported terrorism. And importantly—though omitted from the Opposition—the SEC subsequently dismissed all of its

---

[1] Abbreviations and capitalized terms have the same meaning as in Mr. Zhao's brief in support of his Motion (ECF No. 90, hereinafter "Zhao Mot."). Unless otherwise noted, emphasis is added in case citations.

claims, voluntarily and with prejudice. In sum, no government agency has ever alleged, much less found, that Mr. Zhao supported terrorism.

The Opposition also repeats the FAC's error of conflating the Entity Defendants and Mr. Zhao to impute BAM's actions to him to support personal jurisdiction and impute BHL's actions to him as a basis for liability. Alabama law (applicable to veil piercing for personal jurisdiction) does not allow for veil piercing where, as here, only limited control and some ownership by the individual defendant is plausibly pleaded. Cayman law (which Plaintiffs concede applies to veil piercing for liability) requires that a shareholder created the corporation to evade a pre-existing personal liability or personal legal obligation.

Mr. Zhao's Motion should also be granted for the following reasons. **First,** the FAC fails to meet the standards set forth in Rules 8 and 10. As made clear in their Opposition, even Plaintiffs themselves are confused as to what claims they pleaded. **Second,** there is no basis for personal jurisdiction over Mr. Zhao. The only Defendant with purported contacts to Alabama is BAM; again, the FAC pleads no basis to pierce its corporate veil to impute those contacts to Mr. Zhao (and they are insufficient to establish specific jurisdiction in any event). **Third,** Plaintiffs' two material support claims, which underlie ATA primary liability, are not pleaded at all, and Plaintiffs concede as much in their Opposition. **Fourth,** Plaintiffs' conspiracy claim fails because, as the Opposition admits, it is based on their allegation that Mr. Zhao "micromanaged" the Entity Defendants, not on an agreement with a terrorist group to conduct a terrorist attack (which is not pleaded as to any Defendant). **Fifth,** there is no basis for a JASTA aiding-and-abetting claim against Mr. Zhao. An executive decision regarding BHL's compliance program—which by all accounts was made for economic reasons—does not reflect that Mr. Zhao "associated himself" with the October Attack, "participated in it as something that he wished to bring about," or sought

"by his action to make it succeed," as is required for JASTA aiding-and-abetting liability. **Sixth,** Plaintiffs' ATS claim is barred by, among other things, extraterritoriality principles. **Lastly,** Plaintiffs' claim for negligence/wantonness fails because Mr. Zhao has no duty to Plaintiffs, and Plaintiffs plead no proximate causal link between their injuries and Mr. Zhao's alleged corporate compliance decisions.

This is not the first case in which Plaintiffs and their counsel have sought to stretch tort law beyond its limits to find defendants liable for the acts of terrorists. District courts in Florida, Delaware, and Virginia have already dismissed similar claims brought by Plaintiffs against different defendants related to the October Attack.[2] As explained below, this Court should likewise dismiss Plaintiffs' claims against Mr. Zhao with prejudice.

## ARGUMENT

### I.    Plaintiffs Misrepresent Key Facts.

The Opposition abounds with statements that are unsupported by the FAC and contradicted by the documents Plaintiffs incorporate therein, including filings from enforcement actions brought by the DOJ, FinCEN, OFAC, CFTC, and the SEC ("Government Actions"). *See generally Hoefling v. City of Mia.*, 811 F.3d 1271, 1277 (11th Cir. 2016) ("[I]f the allegations of the complaint about a particular exhibit conflict with the contents of the exhibit itself, the exhibit controls."). Perhaps most egregious is Plaintiffs' continuous suggestion that Mr. Zhao "pled guilty" to facilitating the movement of funds to terrorist groups. (Opp. at 2, ECF No. 99.) That is

---

[2] *Lavi v. UNRWA USA Nat'l Comm., Inc.*, No. CV 24-312, 2025 WL 2300038, at *1 (D. Del. Aug. 8, 2025) (dismissing Lishay Lavi, Adin Gess, Maya Parizer, Noach Newman, Natalie Sanandaji, David Bromberg, Ariel Ein-Gal, Hagar Almog, and Yoni Diller's ATA, ATS, and negligent infliction of emotional distress claims related to the October Attack); *Parizer v. AJP Educ. Found., Inc.*, No. 1:24-CV-724, 2025 WL 2382933, at *1 (E.D. Va. Aug. 15, 2025) (dismissing Maya Parizer, Adin Gess, Noach Newman, Natalie Sanandaji, David Bromberg, Ariel Ein-Gal, Hagar Almog, and Yoni Diller's ATA and ATS claims related to the October Attack); *Newman v. Assoc. Press*, No. 1:24-CV-20684, 2025 WL 2753930, at *1 (S.D. Fla. Sept. 29, 2025) (dismissing Noach Newman, Adin Gess, and Natalie Sanandaji's ATA claims related to the October Attack).

false.  As shown by his Plea Agreement, Mr. Zhao pleaded guilty to one charge brought by the DOJ for "[f]ailure to maintain an effective anti-money laundering ('AML') program"—the only criminal claim with which he was ever charged.  (Zhao Plea Agreement ¶ 2, ECF No. 92-6.)  And the government has acknowledged that BHL, beginning in 2019 and under Mr. Zhao's leadership, had "taken significant steps to remediate its AML and sanctions compliance programs" over a year before the October Attack.  (Zhao Mot. at 5.)  Plaintiffs' other fictional claims are addressed in the sections that follow.  To be clear, Mr. Zhao was neither charged with, nor pleaded guilty to, supporting a terrorist organization.  Plaintiffs' effort to reframe a BSA-compliance plea as an admission of something far more nefarious is not only inaccurate but a transparent attempt to supplement the FAC with allegations Plaintiffs cannot plead and that no record can support.

To the contrary, at his sentencing hearing, the court found that "no evidence existed" showing that Mr. Zhao "explicitly was informed of any specific transaction, or [that] a specific user transacted on Binance with criminal proceeds."  (Zhao Hr'g Tr. at 6:16-19, *United States v. Zhao*, No. 2:23-cr-00179 (W.D. Wash. May 3, 2024), ECF No. 93, attached to the Decl. of J. Wasick as Ex. 1 ("Zhao Hr'g Tr.").)[3]  There was "no evidence" that Mr. Zhao "was aware of suspicious circumstances, making it reasonable to believe such funds were processed, or proceeds of, unlawful activities."  (*Id.* at 6:20-23.)  There was nothing in the record that Mr. Zhao would risk BHL to support a terrorist; rather, the court noted that "at one point [Mr. Zhao] risked [his] entire net worth, because of [his] belief and strength of [his] conviction to make Binance a success."  (*Id.* at 79:20-22.)  The court went on to extol Mr. Zhao's character:

---

[3] Plaintiffs rely heavily on Mr. Zhao's criminal case and conviction (*see e.g.*, FAC ¶¶ 138, 195, 212, 310, 314; Opp. at 2-3, 5-7, 17-18), and the sentencing hearing transcript is therefore incorporated by reference because it is integral to understanding the scope and nature of the conviction, the overall DOJ case is "central to the plaintiffs' claims," and the transcript's authenticity cannot be challenged. *Johnson v. City of Atlanta*, 107 F.4th 1292, 1300 (11th Cir. 2024).  The Court may also take judicial notice of the transcript.  *Halmos v. Bomardier Aerospace Corp.*, 404 F. App'x 376, 377 (11th Cir. 2010) ("[A] district court may take judicial notice of matters of public record," such as sentencing hearing transcripts, "without converting a Rule 12(b)(6) motion into a Rule 56 motion.").

> [I]t's rare that I see, and I don't think I've ever seen this volume of letters, with glowing statements, not just from family, but people that have known you for long periods of time . . . It's also clear from the letters that you provided that you're a dedicated family man, and a giving person, as demonstrated by your charitable deeds . . . I could go on and on with the other entities and operations you helped fund, not of recent vintage but for some period of time.

(*Id.* at 79:10-11; *see also id.* at 29:11-15 (noting Mr. Zhao's "extraordinary commitments and dedication to philanthropic opportunities . . . not just in his country, but across the planet").)

Nor is it true that the agencies in the Government Actions "all plausibly alleged and independently established" that BAM "is the alter ego of BHL ad [*sic*] CZ" (i.e., Mr. Zhao). (Opp. at 17.) None of these agencies ever alleged alter ego or veil piercing. Other misstatements related to BAM, including the Opposition's invention that BAM ever facilitated transactions to foreign terrorists, let alone by Alabama customers (*see e.g.*, Opp. at 22, 24) are amply addressed in BAM's own reply, which Mr. Zhao incorporates. (*See* BAM Reply at § II.B.3 (filed Oct. 9, 2025).) As for BHL, the FAC does not plead (nor had the government alleged) U.S. transfers to Hamas or PIJ. (BHL Mot. at 5-8, 11-12, 33-34, ECF No. 92.) Plaintiffs' other fictional claims are addressed in the sections that follow.

On a motion to dismiss, this Court must credit only well-pleaded, plausible, factual allegations—not Plaintiffs' inflammatory and unsupported rhetoric. *See In re Jan. 2021 Short Squeeze Trading Litig.*, 76 F.4th 1335, 1352 (11th Cir. 2023) (explaining that courts "can only credit specific, plausible allegations—not vague and unsupported insinuations") (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

## II.    Plaintiffs Have Abandoned Key Issues.

The Opposition flagrantly ignores many of the legal arguments raised in Mr. Zhao's Motion, instead focusing on arguments in the Entity Defendants' briefs. For example, Plaintiffs ignore Mr. Zhao's argument on why Cayman law precludes veil piercing to impute allegations

about BHL to Mr. Zhao to plead his liability. (Zhao Mot. at 15-16.) Plaintiffs likewise fail to address his argument regarding why Alabama is the only relevant forum for the Court's personal jurisdiction analysis for Mr. Zhao. (*Id.* at 6-8, 12.) They also fail to address that the Entity Defendants' provision of financial services cannot qualify as "acts of international terrorism," as required for primary liability under the ATA. (*Id.* at 18-20.) And Plaintiffs' Opposition largely ignores the fact that the FAC does not include any allegations as to Mr. Zhao personally that can give rise to liability here, focusing instead on allegations about "Defendants" at large. (*See generally* Opp. at 21-22, 33, 65-90 (making no argument as to Mr. Zhao specifically or personally).)

Plaintiffs openly acknowledge their decision not to respond to Mr. Zhao's arguments and tell the Court that it "should not take that as any kind of concession that the defense assertion [*sic*] has any merit[.]" (Opp. at 2.) But "[i]t is not for the court to manufacture arguments on Plaintiff's behalf." *Bowden ex rel. Bowden v. Wal–Mart Stores, Inc.*, 124 F. Supp. 2d 1228, 1236 (M.D. Ala. 2000). And "failure of a party to oppose an issue in a pending motion may constitute an abandonment of the claim challenged by the issue." *Hammett v. 46 Enter., Inc.*, No. 5:19-cv-01918, 2021 WL 5040495, at *10 (N.D. Ala. Oct. 29, 2021); *see also Gillaspy v. Wells Fargo Bank, N.A. as Trustee for Park Place Sec., Inc.*, No. 2:22-cv-193, 2024 WL 898887, at *3 (M.D. Ala. Mar. 1, 2024) (finding that plaintiff abandoned claims after failing to respond to or otherwise offer legal arguments against defendants' arguments); *Coal. for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1326 (11th Cir. 2000) (finding that a party's failure to brief and argue an issue before the district court is grounds for declaring it abandoned); *Hooper v. City of Montgomery*, 482 F. Supp. 2d 1330, 1334 (M.D. Ala. 2007) (dismissing claims as abandoned when plaintiff failed to respond to claims in defendant's motion to dismiss).

Plaintiffs' inaction equals abandonment of the issues they chose to ignore. Accordingly, the issues above should be decided in Mr. Zhao's favor, and this Court should dismiss all claims against Mr. Zhao.

### III.    The FAC Must Be Dismissed for Failure to Comply with Rules 8 and 10.

As stated in Defendants' motions to dismiss, the FAC contains a glut of conclusory and vague allegations that make it impossible to discern what each Defendant is alleged to have done with regard to each specific claim. (*See*, *e.g.*, Zhao Mot. at 6.) Plaintiffs' Opposition proves Defendants' point by, among other things, informing the Defendants that the FAC did not even plead the ATA primary liability claims each Defendant thought had been pleaded. (*See* Opp. at 64 ("Defendants misconstrue Plaintiffs' requisite reference to Section 2333(a) as a claim of primary liability against Defendants. Plaintiffs never make such a claim.").) The FAC should therefore be dismissed for failure to comply with Rules 8 and 10.

### IV.    The FAC Fails to Plead a Basis for Personal Jurisdiction Over Mr. Zhao.

Plaintiffs plead no basis for personal jurisdiction over Mr. Zhao. As explained in Mr. Zhao's Motion, the relevant forum for this analysis is Alabama, not the United States generally. (Zhao Mot. at 6-8 (explaining that because service on him was not effectuated pursuant to the ATA, the relevant form for personal jurisdiction is the forum state).) The Opposition does not address this point and thus concedes it. (*See* § II, *supra*.) Plaintiffs also concede that Mr. Zhao has no Alabama contacts himself. (*See*, *e.g.*, Opp. at 20 ("Even if Zhao himself did not physically set foot in Alabama . . .").) The only Defendant with purported contacts with Alabama is BAM. As explained in BAM's briefing, its contacts with Alabama (a money transmitter license and alleged Alabama customers, none of whom made transfers to Hamas or PIJ) are unrelated to Plaintiffs' claims and could not—even in the abstract—support specific jurisdiction. (BAM Mot.

at 14-18, ECF No. 93; BAM Reply at § III.D.)  They do not support personal jurisdiction as to Mr. Zhao specifically because, additionally, the FAC pleads no basis to pierce BAM's corporate veil to impute those contacts to Mr. Zhao.

In Alabama, veil piercing is an extraordinary remedy that applies only when the company's corporate existence is "simply a formality."  *Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1293-94 (11th Cir. 2000); *see also Hill v. Fairfield Nursing and Rehab. Ctr., LLC*, 134 So. 3d 396, 415 (Ala. 2013) (Murdock, J., concurring) (stating that veil piercing is an equitable doctrine used "to prevent an injustice associated with a misuse **of the corporate form**"); *Simmons v. Clark Equip. Credit Corp.*, 554 So. 2d 398, 400 (Ala. 1989) ("plaintiff[s] must show fraud in asserting **the corporate existence** or must show that recognition **of the corporate existence** will result in injustice or inequitable consequences.").  The burden of proof, "which is significant, rests squarely on the party seeking to pierce the veil."  *d'Amico Dry d.a.c. v. Nikka Fin., Inc.*, 429 F. Supp. 3d 1290, 1301 (S.D. Ala. 2019) (citation and internal quotation marks omitted).

Plaintiffs have not met their burden.  The FAC and BAM's declaration confirm that BAM is a legitimate corporate entity that operates for genuine business reasons (providing a means for cryptocurrency trading for U.S. customers) and not for Mr. Zhao's personal benefit.  (*See e.g.*, FAC ¶¶ 2, 94; Decl. of Christopher Blodgett, ECF No. 93-1 ("Blodgett Decl."), ¶ 8.)  This alone requires the Court to reject Plaintiffs' alter ego theory.  *See Gilbert v. James Russell Motors, Inc.*, 812 So. 2d 1269, 1273-74 (Ala. Civ. App. 2001) (rejecting alter-ego argument where corporation had legitimate business operations in line with its commercial purpose; *see also Messick v. Moring*, 514 So. 2d 892, 894 (Ala. 1987) (requiring that the corporate structure be "used *solely* to avoid a personal liability of the owner" to justify veil-piercing).

As the Opposition makes clear, rather than focusing on BAM's corporate form, the thrust of Plaintiffs' veil piercing argument is that BAM's corporate veil should be pierced because it allegedly did something wrong, i.e., that by lawfully servicing U.S. customers, it distracted U.S. regulators from BHL and helped it attract U.S. customers. (Opp. at 17.) Plaintiffs' theory that lawful conduct is tortious and that it kept U.S. regulators from doing their job is both implausible and, as made clear by the existence of the Government Actions, wrong as a matter of fact. But, more to the point here, alleged corporate wrongdoing (which is present in any case with a corporate defendant) is not a reason to veil pierce. *See*, *e.g.*, *Heisz v. Galt Indus., Inc.*, 93 So. 3d 918, 927, 930 (Ala. 2012) (finding no basis for veil piercing despite company's breach of an agreement for financial reasons). And Plaintiffs fail to plead any of three reasons that do suffice: (1) undercapitalization; (2) fraudulent purpose; or (3) instrumentality/alter ego. *Id.* at 929-30.

### A. Plaintiffs Do Not Plausibly Allege BAM's Undercapitalization.

The FAC does not allege that BAM was undercapitalized. (Zhao Mot. at 17.) Nevertheless, the Opposition states, for the first time and without citation to the FAC, that BAM was undercapitalized because "BAM could not operate without BHL's financial support and was stripped of liquidity when Zhao transferred hundreds of millions from BAM." (Opp. at 25.) New allegations cannot be raised in an opposition. *Brown v. Univ. of Ala.*, No. 7:24-CV-1069, 2025 WL 1908737, at *1-2 (N.D. Ala. July 10, 2025). In any event, Plaintiffs misconstrue the meaning of "undercapitalization," which is "the financial condition of a firm that does not have enough capital to carry on its business." *Undercapitalization*, Black's Law Dictionary (12th ed. 2024). Plaintiffs do not plausibly allege (in the FAC or Opposition) that BAM lacks the capital to carry on its business (which it has continuously done since its inception).

**B.      Plaintiffs Do Not Plausibly Allege a Fraudulent Purpose.**

Plaintiffs fail to allege that BAM had a fraudulent purpose that warrants veil piercing because the FAC does not plead that BAM was a mere legal fiction or that Plaintiffs were deceived into thinking BAM was not a true entity and were injured by that misconception.

The "fraudulent purpose" required for veil piercing is that the corporate form itself is illusory, such that the company is a mere sham misused by the defendant for personal gain at plaintiffs' expense. *IBEW-NECA Local 505 Pension & Welfare Plans v. Smith*, No. 06-0455, 2008 WL 4067363, at *2 (S.D. Ala. Aug. 27, 2008). Alabama courts find that a corporation "was conceived with a fraudulent purpose or operated fraudulently" where (1) the entity is not a real corporation at all, as evidenced by its lack of records, accounts, bank accounts, employees; (2) corporate and personal funds are intermingled, and corporate funds are used for personal purposes; or (3) an individual drains funds from the corporation to the plaintiffs' detriment. *Kindrick v. CMI Electronics, Inc.*, No. 2:09-cv-169, 2012 WL 4344069, at *2-3 (M.D. Ala. Sept. 21, 2012) (quoting *Simmons*, 554 So. 2d at 401).

Plaintiffs plead nothing of the sort. The Opposition makes clear that the "fraudulent purpose" alleged by Plaintiffs is that BAM distracted U.S. regulators (by acting in compliance with U.S. law, no less) and allegedly provided BHL with access to U.S. customers. (Opp. at 17, 25.) This allegation does not concern Mr. Zhao personally, much less reflect his purported control of BAM for personal gain. But beyond that, Plaintiffs do not plead that BAM's corporate form itself was a fraud upon which Plaintiffs relied to their detriment. *See Parsons & Whittemore Enter. Corp. v. Cello Energy, LLC*, No. 09-631, 2011 WL 382813, at *13 (S.D. Ala. Feb. 3, 2011); *Kindrick*, 2012 WL 4344069, at *3-5. Plaintiffs instead allege corporate wrongdoing, and using that as a basis for veil piercing would upend decades of Alabama and constitutional law and render any foreign corporate officer, director, or shareholder subject to personal jurisdiction in Alabama

10

whenever a corporation is accused of misconduct, as is every case with a corporate defendant. This is not the law in Alabama, "where piercing the corporate veil is not a power that is lightly exercised." *First Health, Inc. v. Blanton*, 585 So. 2d 1331, 1334 (Ala. 1991).

Moreover, the FAC does not plead that BAM failed to observe corporate formalities. (*See* Zhao Mot. at 16-17.) The Opposition's attempt to remedy this deficiency falls flat. Plaintiffs cite the CFTC's complaint, which merely alleged that BHL (not BAM) acted without a board of directors and that Mr. Zhao evaluated BHL's business activities, which is normal for a CEO. (Opp. at 30.) Plaintiffs also "refute the notion that BAM and Binance operated at arm's length" with a bulleted list of new factual assertions, but none is supported with citations to the FAC (and thus cannot be countenanced), and none reflects any failure by BAM to adhere to its corporate form. (*Id.* at 30-31.)

### C.    Plaintiffs Do Not Plausibly Allege Alter Ego/Instrumentality.

Plaintiffs fail to plead a basis to veil pierce under an alter ego/instrumentality theory because they do not plausibly allege that: (1) Mr. Zhao had "complete control and domination" over BAM, (2) he "misused that control," and (3) such misuse of that control was the proximate cause of Plaintiffs' injury. *Gilbert*, 812 So. 2d at 1274.

### 1.    Plaintiffs Improperly Conflate Mr. Zhao and BHL.

As an initial matter, the Opposition largely tries to plead that BAM was Mr. Zhao's alter ego based on allegations about BHL's purported control over BAM. (*See*, *e.g.*, Opp. at 24.) But BHL and Mr. Zhao are two distinct parties; and Mr. Zhao has set forth numerous reasons why BHL's corporate veil cannot be pierced for jurisdictional purposes, including that BHL is not a sham but a functioning business with adequate capitalization, employees and management team, separate from Mr. Zhao. (Zhao Mot. at 9-10.) The FAC acknowledges as much, and the Opposition, by providing no legal argument for piercing BHL's corporate veil, cedes the point.

Notably, the court presiding over Mr. Zhao's DOJ case acknowledged that, with Mr. Zhao's hard work and vision," BHL became "[a]n operation, with daily operations, and daily transactions, and daily volume of $500 million," and told Mr. Zhao: "That's extraordinary, sir."  (Zhao Hr'g Tr. at 80:16-20.)

Accordingly, the Opposition's arguments that BHL controlled/misused BAM (which fail for the reasons set forth in BHL's reply) cannot support treating BAM as Mr. Zhao's alter ego. (*See* BHL Reply § 1 (filed Oct. 9, 2025).)

### 2.    Plaintiffs Fail to Allege BAM Was Under the Complete Dominion and Control of Mr. Zhao.

Plaintiffs do not plead the "control" prong of alter ego, which requires "total domination of the subservient corporation," such that it has "no separate mind, will, or existence of its own," and "functions solely to achieve the purposes of the [dominant corporation]."  *Daughtry v. Jenny G, LLC*, 703 F. App'x 883, 887 (11th Cir. 2017); *First Health*, 585 So. 2d at 1334; *Smith v. Avon Prods., Inc.*, No. 2:18-cv-00826, 2019 WL 921461, at *9-10 (N.D. Ala. Feb. 25, 2019).

Mr. Zhao's Motion explained why the FAC does not allege Mr. Zhao's "total domination" over BAM.  (Zhao Mot. at 10-11; *see also* Blodgett Decl. ¶¶ 7, 15, 19 (explaining that BAM is governed by its own Articles of Incorporation and Bylaws, run by its own executives and board, and staffed with its own employees).)  *Compare with Kindrick*, 2012 WL 4344069, at *3-5 (finding corporation with "no employees" and "no corporate record" was a "mere instrumentality or alter ego" when its sole owner undercapitalized the company to prevent plaintiff's recovery).  And Plaintiffs do not plausibly allege—nor could they—that Mr. Zhao used BAM for his personal gain or diverted BAM's funds for his personal use.  *Compare with Parsons*, 2011 WL 382813, at *13 (finding LLC operated as an instrumentality when used to funnel money to pay for defendant's living expenses).

12

Plaintiffs do not seriously dispute these points in their Opposition. Instead, they try to move the goalposts by emphasizing that BAM was not "truly independent." (*See*, *e.g.*, Opp. at 37.) That is not the standard. *See*, *e.g.*, *Stewart v. Bureaus Inv. Grp., LLC*, No. 3:10-CV-1019, 2015 WL 7572312, at *11 (M.D. Ala. Nov. 24, 2015). Plaintiffs otherwise attempt to confuse the issue by citing (and misrepresenting) (1) filings from the Government Actions, (2) an agreement between BAM and various state agencies regarding BAM's state money transmission licenses ("BAM Settlement"), and (3) an excerpt from the transcript of the deposition of BAM's former CEO, Brian Brooks ("Brooks Deposition Excerpt"). None reflects Mr. Zhao's "complete control and dominion" over BAM.

### a.    The Government Actions Do Not Support Veil Piercing.

Given the Opposition's extensive "Preliminary Note Regarding Judicial Notice" and its insistence that courts "should only take judicial notice of facts that are undisputed," it is ironic that the Opposition characterizes allegations from the Government Action complaints as facts or "findings." (*Compare* Opp. at 8-10 *with* Opp. at 20.) They are not. Nor do they become so simply because they are repeated in a motion to dismiss decision, such as the SEC decision Plaintiffs cite as if it were factual authority. *See O'Neal v. Allstate Indem. Ins. Co. Inc.*, No. 20-14712, 2021 WL 4852222, at *5 (11th Cir. 2021) ("We may take judicial notice of a document filed in another court only for the limited purpose of establishing the existence of such litigation and related filings and not for the truth of the matter asserted."); *see also Grayson v. Warden,* 869 F.3d 1204, 1225 (11th Cir. 2017) ("[A] court cannot take judicial notice of factual findings of another court.").

But regardless, none of the Government Actions included allegations that Mr. Zhao had complete control over BAM or that its corporate veil should be pierced. BAM was not even a defendant in the actions brought by the DOJ, IRS, OFAC, CFTC, or Treasury. (*See* Blodgett Decl. ¶¶ 48-49.) As for the SEC's matter, while the agency initially argued that Mr. Zhao exerted *some*

influence on BAM, the SEC never alleged that his control was exclusive or "complete" such that BAM was a mere instrumentality or alter ego of Mr. Zhao. Nor did the SEC (or any other government agency) allege that BAM's corporate veil should be pierced. And Plaintiffs omit the fact that the SEC action was subsequently dismissed in its entirety, with prejudice, at the SEC's request. (*See* Joint Stipulation to Dismiss and Releases, *SEC v. Binance Holdings Ltd.*, No. 1:23-cv-01599 (D.D.C. May 29, 2025), ECF No. 301.) In sum, mere instrumentality/alter ego was not alleged, was not found—and was not even briefed—in any of the Government Actions.

### b. The Brooks Deposition Excerpt Does Not Support Veil Piercing.

The Brooks Deposition Excerpt reflects nothing more than Mr. Zhao's prior position as the chairman of BAM's board of directors. In the Excerpt, Mr. Brooks describes how Mr. Zhao, in his capacity as chairman, disagreed with Mr. Brooks about the mechanics of BAM's tech migration. (Brooks Dep. Tr. at 74:6-11 ("[W]hen I talked to [Mr. Zhao], I considered myself to be talking to him in his role as board chair"), ECF No. 99-5.) When it became clear that Mr. Brooks' approach would be rejected, he felt, at that point, that "CZ was the CEO of BAM Trading." (*Id*. at 74.) Plaintiffs glom onto this statement, but Mr. Brooks immediately pulled it back:

> That wasn't because Binance.com somehow controlled us . . . It was more of an issue of if I'm Steve Ballmer and he's Bill Gates, who's really running this right? . . . **I mean, look, [Mr. Zhao's] obviously not formally the CEO of BAM Trading**, but in – in my judgment, right, there's a distinction between management and governance. The role of the board is governance. The role of the CEO is management.

(*Id*. at 74:19-75:4, 75:9-13.) In other words, Mr. Brooks felt frustrated with being "overruled" on certain matters (and recognized that such frustration is common when running a successful tech company). (*Id.* at 75:24-76:1.) The Excerpt hardly shows that Mr. Zhao had complete dominion over BAM or that it was a sham—especially given that the Excerpt also reflects that BAM had

14

scores of employees who worked to implement the technical requirements for BAM's own business purpose of operating a functional cryptocurrency exchange. (*Id.* at 50:2-51:10.)

### c.    The BAM Settlement Does Not Support Veil Piercing.

The BAM Settlement does not reflect Mr. Zhao's complete dominion over BAM either. It shows that Mr. Zhao was a partial, indirect, beneficial shareholder of BAM, through a third-party, BAM Management Company Limited (itself, a duly-formed corporation, distinct from Defendant BAM). (*See* BAM Settlement at 2 ("Changpeng Zhao indirectly beneficially owns more than ten percent (10%) of BAM Trading[.]"), ECF No. 99-1.) Such ownership does not support veil piercing. *Simmons*, 554 So. 2d at 400 ("The mere fact that a party owns all or a majority of the stock of a corporation does not, of itself, destroy the corporate identity.").

The BAM Settlement otherwise requires BAM to make continuing statements "confirming" that Mr. Zhao has no management position at, or controlling influence over, BAM. (BAM Settlement ¶ 6.) It does not state that Mr. Zhao ever had such influence. Plaintiffs' assertion that the BAM Settlement states that Mr. Zhao was "BAM's 'authorized representative'" (Opp. at 7) is wrong and reflects a careless reading of the document, which states that Mr. Zhao was a representative of **BAM Management Company Limited**—an indirect parent company to BAM—not BAM. (*See* BAM Settlement at 2 (stating that in November 2023, Mr. Zhao executed a voting proxy "as the authorized representative **of BAM Management Company Limited**"); BAM Reply at § II.A.1).[4] To the extent Plaintiffs assert that the Settlement Agreement reflects that Mr. Zhao was BAM's CEO, it does not; the Settlement references Norman Reed, BAM's CEO at that time. (*See* BAM Reply at § II.A.1.) As made clear in Mr. Zhao's and BAM's briefing, Mr.

---

[4] In any event, having an authorized representative is insufficient to veil pierce. *Wiggins v. Ellis*, No. 2:12-cv-02705, 2021 WL 535536, at *7 (N.D. Ala. Feb. 12, 2021).

Zhao was never a CEO at BAM. (*See id.*; BAM Mot. at 45 n.20 (citing Blodgett Decl. ¶ 17); Zhao Mot. at 10 (citing Blodgett Decl. ¶¶ 17-18).)

In all, the BAM Settlement only proves Mr. Zhao's point that veil piercing is unwarranted.

### d.  Plaintiffs Fail to Allege Mr. Zhao's Misuse of BAM's Corporate Form.

The FAC does not plead that Mr. Zhao misused BAM's corporate form for his personal gain. (Zhao Mot. at 11-12.) And the Opposition only speaks about BHL—not Mr. Zhao—on this point. (*See*, *e.g.*, Opp. at 23 (alleging that "BHL misused BAM as a vehicle to maintain U.S. customer access").) Because Plaintiffs fail to plausibly plead that Mr. Zhao "commingled personal and corporate funds," "improperly drained assets from corporate accounts for his own purposes," or that Mr. Zhao was "successfully masquerading through [BAM] so as to defeat the payment of his just obligations," Plaintiffs fail to plead the corporate misuse required for an alter ego theory. *Whitesell Corp. v. Screw Prod., Inc.*, No. 3:16-cv-00929, 2018 WL 10593639, at *6 (N.D. Ala. June 29, 2018) (finding plaintiff failed to adequately plead defendant misused his control of corporation for alter ego/veil piercing).

In sum, because there is no basis to impute BAM's alleged contacts with Alabama to Mr. Zhao, Plaintiffs have failed to plead a basis for personal jurisdiction, and all claims against him should be dismissed.[5]

## V.  Plaintiffs' Claims Against Mr. Zhao Must Be Dismissed.

Nor do Plaintiffs plead any basis for liability.

---

[5] Even if BAM's contacts were relevant here, they fail to support specific jurisdiction because they did not give rise to Plaintiffs' alleged injuries. (*See* BAM Mot. at 16-18; BAM Reply at § III.D.1.)

## A.    Allegations About the Entity Defendants Cannot Be Imputed to Mr. Zhao.

In his Motion, Mr. Zhao explained why allegations regarding the Entity Defendants cannot be imputed to him for Plaintiffs' substantive claims.  (Zhao Mot. at 15-17.)  Unlike veil piercing for personal jurisdiction (which is governed by Alabama law), veil piercing for liability purposes is governed by the law of the jurisdiction of the entity's formation: here, the Cayman Islands for BHL and Delaware for BAM.  (*Id*. at 15-16.)  Under Cayman law, veil piercing is permissible only when a shareholder creates a corporation to evade a pre-existing personal liability or a personal legal obligation.  (*Id*. at 15.)  Plaintiffs do not allege this.  (*Id*. at 15-16.)  Under Delaware law, veil piercing requires that the corporation is a sham.  (*Id*. at 16-17.)  Plaintiffs do not allege this either. (*Id.*)

The Opposition blatantly ignores Mr. Zhao's foreign law arguments.  It does not even mention Cayman law, and fails to address Delaware law, except to admit that its veil piercing law is even stricter than Alabama's.  (Opp. at 35.)  Instead, Plaintiffs assert (again, with no cited support) that Mr. Zhao, BAM, and BHL must be treated as one entity for liability purposes because "it would be inequitable to treat them as separate entities and to require Plaintiffs to litigate separately against the individual and entities."  (*Id*. at 88.)  This is not the law in the Cayman Islands or Delaware (or Alabama).

Without veil piercing, Plaintiffs' substantive claims against Mr. Zhao must fail, as they are premised on facilitating funds to Hamas and PIJ.  (*Id.* at 89 (citing FAC ¶¶ 109-10, 217).)  Plaintiffs do not allege that Mr. Zhao personally made or facilitated any such transfers.  *Compare with Lelchook v. Lebanese Canadian Bank*, No. 18-cv-12401, 2024 WL 967078, at *2, 8-9 (S.D.N.Y. Mar. 6, 2024) (ATA liability pleaded where bank manager had a personal relationship with Hizbollah, personally initiated and authorized the bank's relationship with Hizbollah, "personally processed transactions on this criminal network's behalf . . . in support of Hizbollah" and

affirmatively granted reporting exemptions to Hizbollah affiliates specifically so that they could circumvent AML rules). Instead, Plaintiffs simply re-plead the basis for Mr. Zhao's DOJ plea agreement—that, as BHL's CEO, and for purely economic reasons, he did not implement BSA-compliant AML procedures. (FAC ¶¶ 136, 138.) However, compliance decisions are insufficient for liability to attach. *See*, *e.g., Ashley v. Deutsch Bank Aktiengesellschaft*, 144 F.4th 420, 430 (2d Cir. 2025) (finding no ATA liability where defendant banks allegedly "have a history of placing profits first, failing to employ robust anti-money laundering and counter-terrorist finance policies, and operating in high-risk terrorist finance jurisdictions") (cleaned up).

For this reason, and those below, Plaintiffs' claims against Mr. Zhao must be dismissed.

### B.    Plaintiffs Fail to Plausibly Plead Claims Under the ATA (Claims I-IV).

Plaintiffs appear to have brought four claims under the ATA (Claims I-IV), but the FAC is ambiguous as to when Plaintiffs allege a secondary liability JASTA claim (§ 2333(d)), and when—if at all—they allege a primary liability ATA claim (§ 2333(a)). Claim I, for aiding and abetting, cites both § 2333(a) and JASTA, although ATA aiding and abetting is available under JASTA only. *Freeman ex rel. Est. Freeman v. HSBC Holdings PLC*, 57 F.4th 66, 75-76 (2d Cir. 2023). Claim II, for conspiracy, also cites both § 2333(a) and JASTA, although separate conspiracy claims exist for both. *Id.* at 75-76. Claim III, for provision of material support to terrorists, does not specify the ATA subsection upon which it relies. And Claim IV, for provision of material support to an FTO, is brought under § 2333(a).

While the Opposition further confuses the issue by not referencing each of Plaintiffs' four ATA claims separately, the Opposition *is* clear that Plaintiffs do not allege primary liability under § 2333(a): "Defendants misconstrue Plaintiffs' requisite reference to § 2333(a) as a claim of

primary liability against Defendants.  Plaintiffs never make such a claim." (*See* Opp. at 64.)[6]  This foreclosures both material support claims (Claims III & IV) and clarifies that Plaintiffs' conspiracy claim (Claim II) is a JASTA conspiracy claim, not a primary liability claim under § 2333(a).  *Best Canvas Products & Supplies, Inc. v. Ploof Truck Lines, Inc.*, 713 F.2d 618, 621 (11th Cir. 1983) (acknowledging the general rule that "a party is bound by the admission in his pleadings").

As explained below, these claims, as well as Plaintiffs' aiding-and-abetting claim, all fail.

**1.    The FAC Does Not Plead the Requisite *Mens Rea* for Plaintiffs' ATA Claims.**

As explained in Mr. Zhao's Motion, liability under the ATA requires a culpable *mens rea*: a level of knowledge that one is supporting terrorism.  (*See*, *e.g.*, Zhao Mot. at 20 (detailing the *mens rea* for primary liability), 26-27, 29 (secondary liability).)  The Opposition strains to paint Mr. Zhao as someone capable of this type of criminal mindset, but the court presiding over the very case Plaintiffs continually reference found that Mr. Zhao was an upstanding individual "motivated by [a] passion to technology and a drive to help people" who was "dedicat[ed] to philanthropic opportunities across the planet." (Zhao Hr'g Tr. at 29:11-15, 79:16-18.)  The court understood that Mr. Zhao is "a giving person, as demonstrated by [his] charitable deeds . . . I could go on and on . . . ." (*Id.* at 80:1-11.)  Far from intending to support terrorism, the court found "no evidence that [Mr. Zhao] explicitly was informed of any specific transaction . . . with criminal proceeds" over the BHL platform and "no evidence that [Mr. Zhao was aware of suspicious circumstances, making it reasonable to believe such funds were processed, or proceeds of unlawful activities." (*Id.* at 6:16-23.)  Because Mr. Zhao is a man dedicated to helping people, not destroying them by acts of terrorism, Plaintiffs' ATA claims against him should be dismissed.

---

[6] Apparently, Plaintiffs thought they had to reference a § 2333(a) primary liability claim to make a JASTA claim. (*Id.*)  This is true in a sense, but only in that Plaintiffs must allege a § 2333(a) violation by the primary actors (Hamas and PIJ), but not by Defendants themselves.

### 2.    Five Plaintiffs Lack Standing to Bring ATA Claims.

Mr. Zhao's Motion explained that many of the Plaintiffs lack standing to bring ATA claims because the FAC did not plead that they, or the relevant decedents, are American citizens. (Zhao Mot. at 18.) Plaintiffs' Opposition now states that the FAC was meant to plead aiding-and-abetting JASTA claims only for sixteen of the Plaintiffs ("American Plaintiffs")[7] (the Opposition does not mention standing for JASTA conspiracy claims). However, of these American Plaintiffs, Ora Cooper, Rotem Cooper, Ahl Haggai, Rahm Haggai, and Zohar Haggai are not alleged to be U.S. citizens in the FAC, and their ATA claims should therefore be dismissed on that ground. *See Resnick v. AvMed, Inc*., 693 F.3d 1317, 1325 (11th Cir. 2012) (plaintiff bears the burden to allege facts that establish each element of their own cause of action).

### 3.    The FAC Does Not Plead Material Support Claims (Claims III & IV).

Plaintiffs' claims for provision of material support to terrorists in violation of 18 U.S.C. § 2339A and 18 U.S.C. § 2333 (Claim III) and provision of material support to a designated FTO in violation of 18 U.S.C. § 2339B(a)(1) and 18 U.S.C. § 2333(a) (Claim IV) also fail (to the extent they were even asserted in the FAC).

The two material support statutes are both criminal statutes and do not have a private right of action. (Zhao Mot. at 19.) These statutes can serve as predicate crimes giving rise to ATA **primary liability** under 18 U.S.C. § 2333(a), but only if the defendants' underlying acts meet the "act of international terrorism" definition, which requires that such acts be mortally dangerous or violent and intended to intimidate a civilian population or government, or affect government conduct by mass destruction, assassination, or kidnapping. (*Id*. at 18-19.) The FAC does not plead

---

[7] *See* Opp. at 62 (listing Ora Cooper, Rotem Cooper, Yoni Diller, John Doe, Adin Gess, Ahl Haggai, the estate of Gad Haggai, Iris Weinstein Haggai, Rahm Haggai, Zohar Haggai, Jane Moe, Noach Newman, Maya Parizer, Richard Roe, Natalie Sanandaji, and the estate of Judy Lynn Weinstein).

that Mr. Zhao gave any support to Hamas and PIJ; and the financial services offered by the Entity Defendants cannot meet the statutory definition of an "act of international terrorism." (*Id*. at 19-20.) Nor does the FAC plead the other required elements for material support claims: *mens rea* and proximate causation. (*Id.* at 20-22); *see also Raanan v. Binance Holdings, Ltd.*, No. 24-cv-697, 2025 WL 605594, at *16 (S.D.N.Y. Feb. 25, 2025) (material support violations were not pleaded where complaint alleged that defendants offered financial services).

Claims III and IV should be dismissed because the Opposition does not address Mr. Zhao's arguments on material support and because Plaintiffs have ceded that they have not pleaded claims for ATA primary liability. (*See* Opp. at 64.)

### 4. The FAC Does Not Plead a JASTA Conspiracy Claim (Claim II).

Claim II must also be dismissed. As made clear by the Opposition, this claim is for JASTA conspiracy. (Opp. at 79 (citing JASTA as Plaintiffs' basis for their conspiracy), 64 (clarifying that Plaintiffs do not assert primary liability claims).)

As explained in Mr. Zhao's Motion, Plaintiffs' conspiracy claim requires that Defendants entered into an agreement with Hamas and PIJ to conduct the October Attack. (Zhao Mot. at 29-30); *see also Bernhardt v. Islamic Republic of Iran,* No. 18-2739, 2020 WL 6743066, at *7-8 (D.D.C. Nov. 16, 2020), *aff'd*, 47 F.4th 856 (D.C. Cir. 2022), *cert denied*, 144 S. Ct. 280 (2023) (for a JASTA conspiracy claim, "a plaintiff must allege an agreement to commit an act of international terrorism."); *O'Sullivan v. Deutsche Bank AG*, No. 17 CV 8709, 2019 WL 1409446, at *9 (S.D.N.Y. Mar. 28, 2019) ("to be subject to secondary liability under JASTA on the basis of a conspiracy, a defendant must have conspired to commit an act of international terrorism . . . alleg[ations] that Defendants conspired . . . to defeat the economic sanctions imposed by the U.S. government . . . are insufficient."). Mr. Zhao's Motion establishes that the FAC pleads no agreement at all between Mr. Zhao and *any* terrorist group, much less one with Hamas and PIJ to

21

facilitate the October Attack. (Zhao Mot. at 30.) Nor are there any allegations giving rise to a plausible inference that Mr. Zhao, a Canadian businessman whom Plaintiffs allege was motivated purely by economic gain, would ever want to conspire to commit such a devastating atrocity as the October Attack. (*Id.*)

In response, the Opposition merely states that "Defendant CZ 'micromanaged' the operations of Defendants BAM and BHL" who had a "shared objective" of "material support." (Opp. at 81.) But micromanaging two companies is a far cry from conspiring with terrorists. Nor is a "shared objective" a conspiracy, which, as Plaintiffs agree, requires: (1) an agreement between two or more persons; (2) to participate in an unlawful act; (3) an injury caused by an unlawful act of one of the parties to the agreement; (4) which overt act was done pursuant to and in furtherance of the common scheme. (Opp. at 79-80.) Moreover, the object of a JASTA conspiracy claim in particular must be the underlying terrorist attack—here, the October Attack. (*See* Zhao Mot. at 29-30 (citing and explaining cases).)

The ATA cases cited in the Opposition do not hold otherwise. The *Bernhardt* decision, which Mr. Zhao specifically examined in support of his Motion, clearly held that a JASTA conspiracy claim requires that the defendant "was pursuing the same object as [the terrorist group]." *Bernhardt v. Islamic Republic of Iran*, 47 F.4th 856, 873 (D.C. Cir. 2022) (dismissing the JASTA conspiracy claim and stating further that a defendant's sanctions-evading objective and a terrorist group's objective to conduct terrorism were "wholly orthogonal to one another"). The other two cases cited in the Opposition, *Freeman v. HSBC Holdings PLC* and *Shaffer v. Deutsche Bank AG*, both dealt with primary liability conspiracy claims. Notably, the *Freeman* court declined to adopt the magistrate judge's Report and Recommendation and chided the judge for "erroneously elid[ing] the distinction between a conspiracy-predicated primary liability claim brought under §

2333(a) and a secondary liability conspiracy claim brought under § 2333(d)(2)." 413 F. Supp. 3d 67, 84 n.25 (E.D.N.Y. 2019); *see also id.* (noting that a primary liability claim "imposes requirements that are distinct" from a JASTA conspiracy claim). Nevertheless, Plaintiffs cherry-pick a quote from *Freeman*'s discussion of a primary liability claim to argue that an agreement regarding a terrorist act is not required. (Opp. at 81 (quoting the following from *Freeman*: "Plaintiffs must allege facts from which it can be reasonably inferred that Defendants joined a conspiracy that had as its object the provision of material support.").) But that quote is supported by one from *Shaffer*, which makes clear that, even for a primary liability claim, the object of the participants' conspiracy must be to "provide material support **for terrorism**." *See Freeman*, 413 F. Supp. 3d at 86 (quoting *Shaffer*, No. 16-cr-497, 2017 WL 8786497, at *5 (S.D. Ill. Dec. 7, 2017)). Both *Freeman* and *Shaffer* underscore that conspiracy requires an **actual agreement** between the defendant and primary actor **in support of terrorism**. *Id*. at 87-89 (dismissing conspiracy claims because "Plaintiffs have failed to plausibly allege that Defendants agreed to provide material support for terrorism or knowingly agreed to join a conspiracy having that common goal"); *Shaffer*, 2017 WL 8786497, at *5 (explaining that "a single objective must be embraced by [all] participants" in a conspiracy). Here, no such agreement exists—tacit or otherwise.

Indeed, Plaintiffs' claim for JASTA conspiracy in another district court case was recently dismissed with prejudice for this reason—the court found that Plaintiffs failed to sufficiently plead that defendants "reach[ed] an agreement" to "carry out any scheme of international terrorism." *Newman v. Assoc. Press*, 758 F. Supp. 3d 1357, 1374 (S.D. Fla. Dec. 10, 2024) (recognizing that "[f]or there to be an agreement, Plaintiffs here must allege that the [defendant] was 'pursuing the same object' as Hamas" (citing *Bernhardt*, 47 F.4th at 873)). While Plaintiffs there, as here,

"allege[d] as a 'common objective' Hamas's 'committing, planning, or authorizing acts of international terrorism," *compare id. with* (FAC ¶ 343), "the allegations in the Amended Complaint d[id] not plausibly support that the [defendant] shared in that goal," *Newman*, 758 F. Supp. 3d at 1374.

Because Plaintiffs' allegation that Mr. Zhao "micromanaged" the Entity Defendants does not suffice to plead conspiracy liability, Claim II must be dismissed as to Mr. Zhao.

### 5.    The FAC Does Not Plead a JASTA Aiding-and-Abetting Claim.

Mr. Zhao's Motion explained that Plaintiffs' aiding-and-abetting JASTA claim fails because they did not plead his "conscious, voluntary, and culpable participation" in the October Attack in such a way as to intentionally "make it succeed." (Zhao Mot. at 22-23 (citing *Twitter Inc. v. Taamneh*, 598 U.S. 471, 497 (2023)).) First, the FAC fails to allege that Mr. Zhao has "take[n] some 'affirmative act'" cognizable under the aiding-and-abetting standard. *Twitter*, 598 U.S. at 490 (citation omitted); (Zhao Mot. at 24-26). Second, the FAC fails to allege that Mr. Zhao harbored "the intent of facilitating the offense's commission," as precedent also requires. *Twitter*, 598 U.S. at 490 (citation omitted); (Zhao Mot. at 26-27). Plaintiffs are unpersuasive in responding to these basic points.

Beginning with the first element, the Opposition denies that Plaintiffs must allege an "affirmative act" by recharacterizing *Twitter*'s discussion of the governing standard as "dicta" concerning "*criminal* liability." (Opp. at 76.) But *Twitter* plainly stated that "[s]imilar principles" govern "tort law" and announced a requirement that the plaintiff allege "assistance" with "a direct relation" to the primary tort. *Twitter*, 598 U.S. at 490-91. This requirement is "[s]imilar to the criminal-law rule." *Id.* at 491. While the criminal standard differs in such particulars as the burden of proof, the standards align in requiring some "affirmative act" to aid the primary wrongdoer. *Id.* at 490-92. The Court then *applied* this standard in *rejecting* claims that "rest[] less on affirmative

misconduct and more on an alleged failure to stop ISIS from using [internet] platforms." *Id.* at 500. That is the holding of *Twitter*, not dicta.

Plaintiffs' resistance to the governing standard betrays their lack of confidence in their backup argument that they satisfied that standard. (*See* Opp. at 76-77.) Elsewhere in the Opposition, Plaintiffs effectively concede inability to "allege that the funds" reaped by someone on the exchange "were directly linked to the Attacks" or even that "the funds actually went to Hamas." (Opp. at 70 (quotation marks omitted).) Plaintiffs are wrong on the law yet again. *See Twitter*, 598 U.S. at 500 (looking for a "relationship between defendants and the Reina attack"). Simply put, Plaintiffs did *not* allege that Mr. Zhao substantially assisted Hamas, and references to regulatory failings concerning duties owed to the United States government do not make up the difference, as Mr. Zhao explained. (Zhao Mot. at 25-26.) Plaintiffs have no response. (*See* Opp. at 76 (addressing "federal regulations" without explaining how they establish *Twitter*'s standard).)

Moving to the second requirement of "**intentional** participation," *Twitter*, 598 U.S. at 490, Plaintiffs again dodge the issue. Their Opposition focuses mainly on the D.C. Circuit Court's 1983 *Halberstam* decision (Opp. at 64-82), but the factors it identified are not "a sequence of disparate, unrelated considerations without a common conceptual core," *Twitter*, 598 U.S. at 504. "The point of those factors is to help courts capture the essence of aiding and abetting: participation in another's wrongdoing that is both significant and culpable enough to justify attributing the principal wrongdoing to the aider and abettor."[8] *Id.* Accordingly, while the *Halberstam* factors are tools "to help determine whether a defendant's **assistance** was 'substantial,'" *id.* at 486—

---

[8] It is telling that Plaintiffs display a weak grasp of the governing standard, proposing *Halberstam* as a type of starting point that "does not mark the conclusion of the analysis." (Opp. at 65.) That is not how *Twitter* articulated the governing standard.

confirming again the requirement to allege assistance—they are no substitute for alleging "the intent of facilitating the offense's commission," *id.* at 490.

Mr. Zhao demonstrated that the *Halberstam* factors uniformly undercut Plaintiffs' claim, (Zhao Mot. at 28-29), and Plaintiffs' Opposition proves this point (*see* Opp. at 70-74). Plaintiffs contort each factor in isolation to make it mean something unrelated to the common conceptual core of intentional participation. To begin, Plaintiffs claim the "*Amount and Kind of Assistance*" alleged supports their claim, but they (as noted) proceed to deny that they needed to plead Defendants assisted Hamas at all. (Opp. at 70-71.) They are, in fact, vague about whether it was Hamas or merely "affiliates" who accessed the generally available platform. (*Id.* at 72); *see*, *e.g.*, *Honickman v. BLOM Bank SAL*, 6 F.4th 487, 502 (2d Cir. 2021) (illustrating the difficulty in alleging knowing assistance, not to an FTO, but to entities that interacted with an FTO). Moreover, Plaintiffs "posit a theory based on money's fungibility," reasoning that regulatory violations "with an apparent or possible connection to terrorists" means "some of the money must have gone to the terrorists' activities." *See Ashley*, 144 F.4th at 444. But a "fungibility theory" is precisely what does *not* work because it would "evade" JASTA's "'central' tenet" of intentional participation in wrongdoing. *Id.* Oblivious to this doctrine, Plaintiffs stake their case on the theory that "[m]oney is fungible." (Opp. at 78 (quoting *Holder v. Humanitarian Law Project*, 561 U.S. 1, 31 (2010))); *compare with Ashley*, 144 F.4th at 444 (explaining why *Holder* does not govern JASTA claims); *Honickman*, 6 F.4th at 498-99 (same). This failing equally dooms their argument under the first *Halberstam* factor, nature of the act assisted, where Plaintiffs merely restate their fungibility theory. (*See* Opp. at 70.)

On the third and fifth factors, relationship to the tortious actor and duration of assistance, Plaintiffs again rely on alleged regulatory failings. (*See id.* at 72-74.) And, again, this is not the

26

type of relationship that establishes "intent to further [a terrorist organization's] terrorist activities." *Ashley*, 144 F.4th at 444 (citation omitted). "[I]t is not enough . . . that a defendant have given substantial assistance to a transcendent 'enterprise' separate from and floating above all the actionable wrongs that constitute it." *Twitter*, 598 U.S. at 495. At the very most, that is all Plaintiffs allege. (Opp. at 72-73.) BHL's alleged failure to employ U.S.-compliant protocols was not something enacted especially for Hamas and PIJ. (*See* FAC ¶¶ 92, 136 (alleging that BHL and Mr. Zhao avoided "federal regulations in order to maximize profits").) Nor was this failure driven out of an intent to aid a terrorist attack, but instead "profit-driven." (*See, e.g., id.* ¶ 100 (alleging further that Binance employees ignored the risks of its compliance measures "to maintain user growth and profitability").)

The references to regulatory omissions do not work for the same reason they did not work in *Ashley*. There, the Second Circuit dismissed a JASTA complaint against banks, even though the plaintiffs alleged that they aided terrorists (the "Syndicate") by "contribut[ing] to" "money laundering operations" through "U.S.-dollar transactions for entities connected to a well-known Syndicate money launderer" and lying "to conceal and sustain" the scheme. *Ashley*, 144 F.4th at 430-31. The court assumed the "aid was pervasive and systemic," but affirmed dismissal because "the complaint does not support the inference that the Banks' money laundering operations were designed or performed with the **intent to aid the Syndicate**." *Id.* at 445-46. So too here.

*Ashley* also exposes Plaintiffs' flawed logic in citing supposed failures "to file a single suspicious activity report ('SAR')" as evidence of supposed intent to aid "money-laundering, fraud, terrorism, or other crimes." (Opp. at 72.) *Ashley* rejected a similar theory predicated on underlying legal violations because its very breadth showed that the defendant at issue did not treat terrorists "differently than it treat[s] its other clients." 144 F.4th at 443. As in *Ashley*, Plaintiffs

27

would have a better case if they could allege Defendants *did* file SARs but selectively did not file them where Hamas was concerned. *See id.* ("If SCB routinely cut off those clients whom the U.S. military asked it to but then refused in the instant case, the context would more readily allow an inference that the failure to act was nonetheless culpable.").

As to state of mind, Plaintiffs throw up their hands, declare it too difficult to allege direct evidence of intent to aid terrorism, and cite a few stray allegations—that do not involve Mr. Zhao— as sufficient. (Opp. at 73.) This effectively concedes defeat. The difficulty in alleging intent is present across cases, but that did not stop the Court in *Twitter* and *Smith & Wesson* from imposing exacting requirements and dismissing those cases on the pleadings. And, while Plaintiffs are right that circumstantial evidence may suffice in some cases, they ignore that it must be of the caliber necessary to satisfy the governing test. Mere knowledge of "processing transaction for terrorist affiliates" (which Mr. Zhao did not have in any event) does not work.[9] *See Ashley*, 144 F.4th at 443-44.

Plaintiffs should understand these principles. In yet another case Plaintiffs brought against different defendants under the ATA, the court dismissed claims for reasons Mr. Zhao advocates here. *Parizer*, 2025 WL 2382933, at *23. There, Plaintiffs sued defendants, alleging a history of material support provided to Hamas and liability under the ATA, JASTA, and ATS for injuries suffered during the October Attack. *Id.* In dismissing Plaintiffs' JASTA aiding-and-abetting claim, the court emphasized that "Plaintiffs' broad assertion that 'Defendants' support has been so

---

[9] The Supreme Court has pointed to *Direct Sales Co. v. United States*, 319 U.S. 703 (1943) as a case where the standard may be met. *Smith & Wesson Brands, Inc. v. Estados Unidos Mexicanos*, 605 U.S. 280, 281 (2025). There, a pharmacy aided "a small-town doctor's illegal distribution of narcotics" by selling "the doctor massive quantities of morphine …, actively stimulat[ing] his purchases through special discounts and high-pressure sales methods, and continu[ing] these practices despite law enforcement warnings." *Id.* Plaintiffs here have not alleged provision of anything dangerous, any special discounts, or law enforcement warnings followed by additional aid, and instead rely on money's fungibility. Plaintiffs' discussion of the *Direct Sales* ignores all facts material to its disposition. (*See* Opp. at 77.)

systematic'" did not overcome their failure to plead "**intentional** aid" that "substantially furthered" the October Attack.  *Id*. at \*22-23; *see also Twitter*, 598 U.S. at 496 (holding that, in the case of allegations of "systemic" support, a court must determine "whether a defendant has so consciously 'participate[d] in' a series of tortious acts in order to make the terrorist attack at issue "succeed" (quoting *Nye & Nissen v. United States*, 336 U.S. 613, 619 (1949)); *id.* at 506 ("The focus must remain on assistance to the tort for which plaintiffs seek to impose liability.").

In a last-ditch effort to save Plaintiffs' aiding-and-abetting claim, the Opposition argues that the New York district court's decision in *Raanan* compels denial of Mr. Zhao's Motion.  (Opp. at 61, 65-66, 74-79.)  It does not.  This Court is not bound by the New York decision, which in itself was based on a different complaint, by different Plaintiffs, with different counsel (as to both Mr. Zhao and Plaintiffs).  Further, *Raanan* predates *Smith & Wesson* and the Second Circuit's *Ashley* decision (that Plaintiffs omit from their Opposition), which reinforces and confirms *Twitter*'s and *Smith & Wesson*'s meaning.

In *Ashley*, the Second Circuit held that victims of terrorist attacks failed to plausibly allege aiding-and-abetting liability despite allegations that the defendants, among other things, actively facilitated money laundering and tax fraud schemes that benefitted the terrorists.  144 F.4th at 445-46.  **First**, *Ashley* correctly applies the "conception core" of "aiding-and-abetting liability": that the defendant "consciously and culpably" participated in the principal's act (here, the October Attack).  *Id*. at 440 (citing *Twitter*, 598 U.S. at 497).  General awareness "of one's role in terrorist activities by itself is insufficient."  *Id.*  Rather, the *Twitter* decision "reaffirms that the defendant must aid and abet a specific act . . . [and] that JASTA expressly provides that liability only attaches for aiding a particular terrorist attack."  *Id*. at 448.  **Second**, *Ashley* correctly reads *Twitter* to require a "discernable nexus between [a defendant's conduct] and the attacks committed against

Plaintiffs." *Id.* at 444. Connections "based on money's fungibility," *id.*, or the "value" of a defendant's conduct that "ultimately inured to the benefit" of terrorists, *id.* at 440, are insufficient. **Third**, *Ashley* correctly reads *Smith & Wesson* to hold that the "pervasive, systemic, and culpable" participation sufficient for aiding-and-abetting liability without a "concrete nexus" requires that a defendant's participation was "designed or performed with the *intent* to aid" terrorists. *Id.* at 445.

As in *Ashley*, Plaintiffs' allegations here "do not meet that high bar." *Id.*; *see also Fraenkel v. Standard Chartered Bank*, Nos. 24-CV-4484 and 24-CV-5788, 2025 WL 2773251, at *9-10 (S.D.N.Y. Sept. 26, 2025) (deciding, in another case post-dating *Raanan*, that the defendant's evasion of sanctions and assisting customer to evade those sanctions "far too attenuated to establish a direct nexus" under *Ashley*).

Plaintiffs' ATA claims against Mr. Zhao should be dismissed with prejudice for the reasons above.

### C.  Plaintiffs Fail to Plead ATS Liability (Claim V).

Plaintiffs' efforts to use the ATS as a hook for compensation for October Attack injuries recently failed in two district court cases. *Parizer*, 2025 WL 2382933, at *14-20; *Lavi*, 2025 WL 2300038, at *8-9. They fail here too.

#### 1.  Fifteen Plaintiffs Cannot Bring ATS Claims.

The Opposition concedes that only Plaintiffs who are "exclusively Israeli citizens" may bring ATS claims. (Opp. at 83-84.) However, Plaintiffs err in continuing to include among them Maya Parizer, who the FAC pleads is a dual American-Israeli citizen (FAC ¶ 48), and the

Opposition identifies as an "American Plaintiff" (Opp. at 62). This Court should dismiss the ATS claims of all non-exclusively-Israeli plaintiffs, including Maya Parizer.[10]

### 2. Plaintiffs Fail to Rebut the Presumption Against Extraterritorial Application of the ATS.

The presumption against the extraterritorial application of the ATS not only "has . . . life in the current instance," as the Opposition notes (*id*. at 89) but applies in full force.

The primary authority Plaintiffs use to argue that they have overcome the presumption—*Jan v. People Media Project*—only shows that the domestic activity needed for ATS liability is absent here. 783 F. Supp. 3d 1300, 1310-11 (W.D. Wash. 2025). There, the court found the presumption against extraterritoriality was defeated because the plaintiffs had plausibly pleaded that the Seattle-based defendant employed and made payments to a Hamas operative *from Seattle*, knowing that its U.S. payments to him would be involved in the October Attack. *Id*. at 1308, 1310-11. In *Jan*, the "conduct relevant to the focus of the ATS claims"—aiding and abetting through financial support—occurred in the United States. *Id*. at 1311 ("Plaintiffs have alleged the requisite *mens rea* for accomplice liability and **thus the domestic decision** to pay [the Hamas operative] has a sufficient nexus" to the relevant conduct.").

Here, the FAC pleads no U.S. conduct by Mr. Zhao. And BHL is a foreign corporation whose "operational decisions," even if they occurred in the United States (which they did not) are insufficient as a matter of law to create a domestic hook. *Nestle USA, Inc. v. Doe*, 593 U.S. 628, 634 (2021) (allegations of general corporate activity "like decision making" cannot establish domestic application of the ATS). Further, to the extent Plaintiffs seek ATS liability against Mr. Zhao because of BHL's purported ATS violation, that effort fails because BHL is a foreign

---

[10] These Plaintiffs include: the estate of Uriel Baruch; Ora Cooper; Rotem Cooper; Yoni Diller; John Doe; Adin Gess; the estate of Ran Gvili; Iris Weinstein Haggai; Schachar Levy; Jane Moe; Noach Newman; Maya Parizer; Richard Roe; the estate of Yonatan Samerano; and Natalie Sanandaji. (*See* FAC ¶¶ 44-48, 51-52, 56, 58, 62-67.)

corporation and "foreign corporations may not be defendants in suits brought under the ATS." *Jesner v. Arab Bank*, *PLC*, 584 U.S. 241, 272 (2018).

Plaintiffs have not rebutted the presumption of extraterritoriality, and their ATS claim should be dismissed on that ground. *See Parizer*, 2025 WL 2382933, at *18 (dismissing the same Plaintiffs' ATS claim where "Plaintiffs do not allege that any planning, preparation, funding, or execution of the October 7, 2023 attack or any violations of international law by Hamas occurred in the United States. None of the direct attackers are alleged to be citizens of the United States.").

### 3.    Plaintiffs Do Not Plead a Basis for ATS Primary Liability.

The Opposition urges the Court to find a financing terrorism cause of action under the ATS, but cites no precedent that financing terrorism is a violation of a universally accepted norm. (Opp. at 86.) Plaintiffs instead rely on the International Convention for the Suppression of the Financing of Terrorism ("Financing Convention"). (*Id.* at 84-87 (citing Financing Convention, art. 2.5(c)(ii), Dec. 9, 1999).) But Mr. Zhao cannot be a suitable defendant because the Financing Convention provides the basis for suits against corporations, not individuals. *See Jesner*, 584 U.S. at 261-62 (plurality op. of Kennedy, J.). Moreover, the "Financing Convention neither codifies nor creates an international-law norm against terrorism or terrorist financing," *In re Chiquita Brands Int'l, Inc.*, 792 F. Supp. 2d 1301, 1318 (S.D. Fla. 2011), *rev'd sub nom. on other grounds*, *Cardona v. Chiquita Brands Int'l, Inc.*, 760 F.3d 1185 (11th Cir. 2014), *cert denied*, 575 U.S. 962 (2015), and "is neither self-executing nor does it create a private right of action," *Krishanthi v. Rajaratnam*, 2010 WL 3429529, at *10-11, *13 (D.N.J. Aug. 26, 2010); *see also Nahl v. Jaoude*, 968 F.3d 173, 184-89 (2d Cir. 2020) (Walker, Jr., J., concurring); Financing Convention, arts. 4-7 (specifying that enforcement relies on adoption of implementing legislation by parties to the Convention); *Sosa v. Alvarez-Machain*, 542 U.S. 692, 734-35 (2004) (for a treaty to be susceptible to judicial enforcement it must both confer individual rights and be self-executing). And while the

Opposition notes that many states have ratified the Financing Convention, many states have indicated that they do not accept its definition of "financing terrorism."[11]  As the *Chiquita* court concluded, the "disagreements, nonconsents and divergent interpretations of the Finance Convention demonstrate that the prohibitions of the convention are disputed and not well-established."  792 F. Supp. at 1319.

Moreover, as noted by the *Parizer* court in dismissing Plaintiffs' ATS claims there, the Financing Convention "concerns the *financing* of terrorism," and one commits an offense thereunder by "directly or indirectly, unlawfully and willfully, provid[ing] or collect[ing] funds with the intention that they should be used or in the knowledge that they are to be used . . . to carry out: (a) An act which constitutes an offence" defined in the "treaties listed in the annex; or (b) [a]ny other act intended to cause death or serious bodily injury to a civilian . . . ."  2025 WL 2382933, at *14 n.7 (emphasis in the original) (citing and quoting Financing Convention, art. 2.1, Dec. 9, 1999, 16 U.S. 49, 2178 U.N.T.S. 197).  Plaintiffs have not alleged that any of the Defendants directly financed Hamas or PIJ, nor that any funds were provided to Hamas or PIJ with the knowledge or intent that the funds were to be used to carry out the October Attack.

Plaintiffs' reliance on the Rome Statute and Geneva Conventions is similarly misplaced, as discussed in Mr. Zhao's Motion and in detail in BAM's Reply, which Mr. Zhao incorporates. (Zhao Mot. at 32; BAM Reply at § III.G.)

### 4.    Plaintiffs Do Not Plead a Basis for ATS Secondary Liability.

Last, Plaintiffs' own aiding-and-abetting ATS standard requires that Mr. Zhao "provided practical and significant assistance to" the terrorist groups "with the purpose of facilitating Hamas

---

[11] The list of reservations and objections to the Financing Convention is extensive and reflects significant substantive disagreements as to the definition of terrorism.  A complete list of the signatories and the reservations can be found at https://treaties.un.org/pages/ViewDetails.aspx?src=TREATY&mtdsg_no=XVIII-11&chapter=18&clang=_en  (last visited Oct. 9, 2025).

and PIJ's crimes on October 7." (Opp. at 85.) The FAC pleads no such facts as to any Defendant. *See* § V.B.1., *supra*. *Compare with Jan*, 783 F. Supp. 3d at 1307-10 (finding ATS aiding and abetting plausibly pleaded where defendant employed and paid a known Hamas operative who defendant knew was involved in the October Attack). As Mr. Zhao has maintained in his Motion and *supra*, Plaintiffs have not plausibly alleged secondary aiding-and-abetting liability as to Mr. Zhao under JASTA or the ATS. (Zhao Mot. at 22-26.) Nor can an ATS secondary liability claim lie, as here, if the alleged assistance occurred extraterritorially. *Doe v. Drummond Co.*, 782 F.3d 576, 592-94 (11th Cir. 2015).

Plaintiffs' ATS claims fail and must be dismissed.

### D.    Plaintiffs Fail to Plead a Negligence/Wantonness Claim (Claim VI).

Finally, Claim VI for "Negligence/Wantonness" also fails. Plaintiffs' agreement with Defendants that this claim requires a breach of a duty by Defendants to Plaintiffs is fatal. (Opp. at 89.) Plaintiffs cite no law to support the assertion that an executive of a digital asset exchange owes a duty to non-customers. As set forth in Mr. Zhao's Motion, that duty does not exist. (Zhao Mot. at 34-35.)

The Opposition endeavors to leverage mention of a "duty" in the *Raanan* decision. (Opp. at 89-90 (citing *Raanan*).) But *Raanan* did not involve a negligence claim; the word appears in the court's discussion of duties under the BSA. 2025 WL 605594, at *21. BSA obligations are "to the government rather than some remote victim," like Plaintiffs. (Zhao Mot. at 35.) Courts "have uniformly rejected [the] argument" that the BSA can provide a standard of care. *See Armstrong v. Am. Pallet Leasing Inc.*, 678 F. Supp. 2d 827, 874 (N.D. Iowa 2009); *Aiken v. Interglob. Mergers & Acquisitions*, No. 05 Civ. 5503, 2006 WL 1878323, at *2 (S.D.N.Y. July 5, 2006); *In re Agape Litig.*, 681 F. Supp. 2d 352, 360-61 (E.D.N.Y. 2010); *Kelley v. BMO Harris Bank N.A.*, No. 19-cv-1756, 2022 WL 4547022, at *17 (D. Minn. Sept. 29, 2022); *Hofschutle v.*

*SunTrust Banks, Inc.*, No. 1:20-cv-01676, 2021 WL 5230732, at *4 (N.D. Ga. Mar. 4, 2021); *see also James v. Heritage Valley Fed. Credit Union*, 197 F. App'x 102, 106 (3d Cir. 2006), *cert denied*, 550 U.S. 939 (2007).  Mr. Zhao's Motion is replete with additional authority on why the FAC otherwise fails to establish that he, or any Defendant, owed Plaintiffs a duty required for a negligence/wantonness claim.  (Zhao Mot. at 33-34.)

The Opposition also fails to sufficiently counter Mr. Zhao's argument that the FAC does not plead the proximate cause required for Claim VI.  (*Id.* at 20-22, 33-34.)  Instead, Plaintiffs baldly assert that "Hamas and PIJ would have been unable to carry out their attacks" without Defendants' actions.  (Opp. at 90.)  But, once again, Plaintiffs fail to cite anything to support their assertion.  In contrast, the legal arguments set forth in Mr. Zhao's Motion explain why proximate cause is lacking.  (Zhao Mot. at 20-22, 33-34.)  Further, Plaintiffs do not contest Mr. Zhao's point that Claim VI is otherwise unavailable to all of the Plaintiffs alleging emotional injuries who were not present during the October Attack.[12]  (*Id.* at 36.)

For these reasons, and those set forth in Mr. Zhao's Motion, Claim VI should be dismissed.

## CONCLUSION

For these reasons, and those asserted in Mr. Zhao's Motion, Plaintiffs' claims against him must be dismissed.  And given that this is Plaintiffs' second attempt to plead a case against Mr. Zhao, and that their liability theories have already been rejected numerous times in other federal court proceedings, dismissal should be with prejudice.

---

[12] These Plaintiffs are Hagar Almog; Roee Baruch; Ora Cooper; Rotem Cooper; John Doe; Adin Gess; Talik Gvili; Ahl Haggai; Iris Weinstein Haggai; Rahm Haggai; Zohar Haggai; Schachar Levy; Jane Moe; Noach Newman; James Poe; Richard Roe; Ayelet Samerano.  (*See* FAC ¶¶ 44, 46, 49, 50-52, 54-58, 62-68.)

Dated: October 9, 2025

Respectfully submitted,

*/s/ Charles A. Stewart III*

**BRADLEY ARANT BOULT CUMMINGS LLP**

Charles A. Stewart III (ASB-4955-A56C)
445 Dexter Avenue, Suite 9075
Montgomery, AL 36104
(334) 956-7700
cstewart@bradley.com

**BAKER & HOSTETLER LLP**

Teresa Goody Guillén*
Washington Square, Suite 1100
1050 Connecticut Ave., N.W.
Washington, D.C. 20036
(202) 861-1500
tgoodyguillen@bakerlaw.com

Joanna F. Wasick*
Marco Molina*
45 Rockefeller Plaza
New York, NY 10111
(212) 589-4200
jwasick@bakerlaw.com
mmolina@bakerlaw.com

*Counsel for Defendant Changpeng Zhao*

*Admitted pro hac vice

36

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 9, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

*Counsel for Plaintiffs*
Mark Goldfeder, Esq.
NATIONAL JEWISH ADVOCACY CENTER, INC.
1718 General George Patton Drive
Brentwood, TN 37027
mark@jewishadvocacycenter.com

Erielle Azerrad, Esq.
NATIONAL JEWISH ADVOCACY CENTER, INC.
3 Times Square
New York, New York 10036
ErielleA@NJAClaw.org

Ben Schlager, Esq.
GOLDFEDER AND TERRY, LLC
666 Harless Place
West Hampstead, NY 11552
ben@goldfederterry.com

David Schoen, Esq.
LAW OFFICE OF DAVID I. SCHOEN
2800 Zelda Road, Suite 100-6
Montgomery, AL 36106
Schoenlawfirm@gmail.com

*Counsel for Defendant BAM Trading Services, Inc.*
Kenneth D. Sansom, Esq.
Michael T. Sansbury, Esq.
SPOTSWOOD, SANSOM & SANSBURY LLC
1819 5th Avenue North, Suite 1050
Birmingham, AL 35203
ksansom@spotswoodllc.com
msansbury@spotswoodllc.com

Alexandra E. Chopin, Esq.
WINSTON & STRAWN, LLP
1901 L. Street, N.W.
Washington, DC 20036-3506
achopin@winston.com

*Counsel for Defendant BAM Trading Services, Inc. (cont.)*
Athanasia "Thania" Charmani, Esq.
WINSTON & STRAWN, LLP
200 Park Avenue
New York, NY 10166-4193
acharmani@winston.com

Daniel T. Stabile, Esq.
Gabriela "Gabie" Plasencia, Esq.
WINSTON & STRAWN, LLP
200 S. Biscayne Boulevard, Suite 2400
Miami, FL 33131-5340
dstabile@winston.com
gplasencia@winston.com

*Counsel for Defendant Binance Holdings Limited*
Harlan I. Prater IV, Esq.
Mary Parrish McCracken, Esq.
LIGHTFOOT FRANKLIN & WHITE LLC
400 20th Street North
Birmingham, AL 35203
hprater@lightfootlaw.com
mmcracken@lightfootlaw.com

Samson A. Enzer, Esq.
Anirudh Bansal, Esq.
Sesi V. Garimella, Esq.
Lauren A. Riddell, Esq.
Jason M. Ecker, Esq.
CAHILL GORDON & REINDEL LLP
32 Old Slip
New York, NY 10005
SEnzer@cahill.com
ABansal@cahill.com
SGarimella@cahill.com
LRiddell@cahill.com
JEcker@cahill.com

*/s/ Charles A. Stewart III*
Charles A. Stewart III (ASB-4955-A56C)