## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | |
|---|---|
| NOACH NEWMAN, *et al.*,<br><br>                          Plaintiffs,<br><br>- v. -<br><br>BAM TRADING SERVICES INC. d/b/a BINANCE.US, a Delaware corporation, and BINANCE HOLDINGS LTD. d/b/a BINANCE, a foreign company, and CHANGPENG ZHAO,<br><br>                          Defendants. | Civil Action Case No. 24 Civ. 00134<br><br><br>**ORAL ARGUMENT REQUESTED** |

## BINANCE HOLDINGS LIMITED'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS THE AMENDED COMPLAINT

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................1

ARGUMENT ........................................................................................................2

   I.  THE COURT LACKS PERSONAL JURISDICTION OVER BHL. .............2

   II. THE AMENDED COMPLAINT DOES NOT STATE A CLAIM
   AGAINST BHL. ................................................................................................9

     A.  Plaintiffs Concede that the Amended Complaint Does Not State a Claim
     for Primary ATA Liability. ................................................................................12

     B.  The Amended Complaint Does Not State an ATS Claim. ........................12

     C.  The Amended Complaint Does Not State a JASTA Aiding-and-Abetting
     Claim. ...............................................................................................................14

     D.  The Amended Complaint Does Not State a JASTA Conspiracy Claim...23

     E.  The Amended Complaint Does Not State a Negligence/Wantonness
     Claim. ...............................................................................................................25

   III.SEVERAL PLAINTIFFS LACK STANDING UNDER THE ATA/JASTA
   OR THE ATS....................................................................................................27

CONCLUSION......................................................................................................28

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*In re Agape Litig.*,
   681 F. Supp. 2d 352 (E.D.N.Y. 2010) ...............................................................26

*Alvarez Galvez* v. *Fanjul Corp.*,
   533 F. Supp. 3d 1268 (S.D. Fla. 2021) ..............................................................13

*Ashley et al.* v. *Deutsche Bank Aktiengesellschaft et al.*,
   144 F.4th 420 (2d Cir. July 21, 2025)...........................................................*passim*

*Belle Meade Title & Escrow Corp.* v. *Fifth Third Bank*,
   282 F. Supp. 3d 1033 (M.D. Tenn. 2017) .........................................................26

*Bernhardt* v. *Islamic Republic of Iran*,
   47 F.4th 856 (D.C. Cir. 2022)............................................................................24

*Cont'l Motors, Inc.* v. *Jewell Aircraft, Inc.*,
   882 F. Supp. 2d 1296 (S.D. Ala. 2012) ..............................................................9

*Day* v. *Taylor*,
   400 F.3d 1272 (11th Cir. 2005) .........................................................................11

*First Health, Inc.* v. *Blanton*,
   585 So. 2d 1331 (Ala. 1991)...........................................................................6, 7

*Fraenkel et al.* v. *Standard Chartered Bank*,
   2025 WL 2773251 (S.D.N.Y. Sept. 26, 2025) ...........................................*passim*

*Freeman* v. *HSBC Holdings PLC*,
   57 F.4th 66 (2d Cir. 2023) .........................................................................24, 25

*Fuld* v. *Palestine Liberation Org.*,
   606 U.S. 1 (2025)................................................................................................4

*Gardiner* v. *RoundPoint Mortg. Servicing Corp.*,
   2024 WL 3526887 (N.D. Ala. July 23, 2024) .....................................................3

*Gillaspy* v. *Wells Fargo Bank, N.A. as Tr. for Park Place Sec., Inc. Asset-Backed Pass-Through Certificates, Series 2005-WCW2*,
 2024 WL 898887 (M.D. Ala. Mar. 1, 2024) ....................................................3, 4

*Jesner* v. *Arab Bank, PLC*,
 584 U.S. 241, 272 (2018) .............................................................................12, 13

*Jones* v. *Black*,
 2023 WL 5197882 (M.D. Ala. Aug. 11, 2023) ....................................................4

*Kaplan* v. *Lebanese Canadian Bank, SAL*,
 999 F.3d 842 (2d Cir. 2021)   ..............................................................................19

*Keenan* v. *Matchmaker Int'l, Inc. of Mobile*,
 1999 WL 33590522 (S.D. Ala. Jan. 20, 1999) ....................................................6

*King* v. *Habib Bank Ltd.*,
 2022 WL 4537849 (S.D.N.Y. Sept. 28, 2022) ...................................................20

*Mack* v. *CooperSurgical, Inc.*,
 2023 WL 2653365 (M.D. Ala. Mar. 27, 2023) ........................................6, 7, 8, 9

*Marlin* v. *Moody Nat. Bank, N.A.*,
 2006 WL 2382325 (S.D. Tex. Aug. 16, 2006) ...................................................26

*Moore* v. *Lowe*,
 591 F. Supp. 3d 1087 (N.D. Ala. 2022)................................................................9

*Newman* v. *Associated Press*,
 758 F. Supp. 3d 1357 (S.D. Fla. 2024)................................................22, 24, 25

*O'Sullivan* v. *Deutsche Bank AG*,
 2019 WL 1409446 (S.D.N.Y. Mar. 28, 2019)....................................................20

*In re Platinum & Palladium Commodities Litig.*,
 828 F. Supp. 2d 588 (S.D.N.Y. 2011) ...............................................................10

*Raanan* v. *Binance Holdings Ltd.*,
 2025 WL 605594 (S.D.N.Y. Feb. 25, 2025) ......................................................14

*Reynolds* v. *Binance Holdings Ltd.*,
 481 F. Supp. 3d 997 (N.D. Cal. 2020)..................................................................7

*SFS Check, LLC* v. *First Bank of Delaware*,
990 F. Supp. 2d 762 (E.D. Mich. 2013) .............................................................26

*Siegel* v. *HSBC North America Holdings, Inc.*,
933 F.3d 217 (2d Cir. 2019) ...............................................................................20

*Thornton* v. *Bayerische Motoren Werke AG*,
439 F. Supp. 3d 1303 (N.D. Ala. 2020)................................................................9

*Twitter* v. *Taamneh*,
598 U.S. 471 (2023)....................................................................................*passim*

*Venture Gen. Agency, LLC* v. *Wells Fargo Bank, N.A.*,
2019 WL 3503109 (N.D. Cal. Aug. 1, 2019) ..............................................25, 26

*Watson* v. *Carnival Corp.*,
2024 WL 4137299 (S.D. Fla. Aug. 21, 2024) ......................................................3

*Zobay* v. *MTN Group Ltd.*,
695 F. Supp. 3d 301 (E.D.N.Y. 2023)................................................................15

**Statutes**

18 U.S.C. § 2334(a) ...................................................................................................5

**Other Authorities**

Federal Rule of Civil Procedure 4(k)(1)(C)..........................................................4, 6

## PRELIMINARY STATEMENT[1]

As a threshold matter, Plaintiffs' opposition to BHL's motion (ECF No. 99 (the "Opposition" or "Opp.")) effectively confirms that the Amended Complaint fails to plead personal jurisdiction over BHL. In their Opposition, Plaintiffs have waived all potential bases for jurisdiction over BHL besides the theory that BHL is an alter ego of BAM, and the Amended Complaint falls far short of the demanding requirements to plead such a theory. The claims against BHL must be dismissed on that basis alone.

Beyond that, the Opposition seems to concede many of the Amended Complaint's other fatal deficiencies. The Opposition effectively withdraws Counts 3 and 4, acknowledging that Plaintiffs have no viable primary liability claim against any Defendant. Plaintiffs also fail to meaningfully respond to BHL's grounds for dismissing Count 5—that Plaintiffs' Alien Tort Statute claim is foreclosed by controlling Supreme Court precedent—waiving any objection to dismissal of that claim. And with respect to seventeen plaintiffs, the Opposition's failure to establish standing requires dismissal of all of their claims.

---

[1] Capitalized terms not defined herein have the same definitions as in the Amended Complaint (ECF No. 84) ("AC") and BHL's Moving Brief (ECF No. 92) ("Moving Brief" or "Br."). Unless otherwise noted, emphasis and alterations are added, and internal citations and quotations are omitted.

This leaves Plaintiffs' aiding-and-abetting (Count 1) and conspiracy (Count 2) claims under JASTA, and their negligence/wantonness claim under Alabama law (Count 6), all of which the Opposition does nothing to rescue. If anything, the Opposition confirms that the Amended Complaint's allegations against BHL boil down to alleged lapses in AML compliance that enabled users allegedly associated with terrorists to transact on the Binance exchange. BHL has already paid fines to federal regulators concerning these regulatory lapses, but the Amended Complaint seeks to hold BHL liable for ***acts of terrorism***, which is not permissible under JASTA or Alabama common law. Indeed, as the federal government acknowledged, despite its AML lapses, BHL "proactively cooperated with global law enforcement and blockchain vendors to combat terrorism financing[,]" belying any argument that BHL assisted or conspired in terrorism. (*See* ECF No. 92-3 (FinCEN Consent Order) at 46). BHL unequivocally condemns the terrorists and Attacks that injured Plaintiffs, but BHL is not to blame for them, and cannot be held liable for them.

## ARGUMENT

## I.   THE COURT LACKS PERSONAL JURISDICTION OVER BHL.

Plaintiffs' Opposition waives nearly every possible basis for personal jurisdiction over BHL by failing to respond to arguments in BHL's Moving Brief (*See* ECF No. 92). Instead, the Opposition relies exclusively on alter ego jurisdiction—an attempt to impute BAM's jurisdictional contacts to BHL—as a

2

basis for exercising jurisdiction over BHL.  But Plaintiffs come nowhere close to satisfying the high bar for invoking alter ego jurisdiction.  Having abandoned all other bases for jurisdiction (which were insufficient in any event), Plaintiffs cannot satisfy the threshold requirement of pleading jurisdiction over BHL, and all claims against BHL should be dismissed.

*First*, Plaintiffs have waived any argument that BHL is subject to general jurisdiction in the forum, by failing to address BHL's arguments on this point (*see* Br. at 13) in their Opposition.  Plaintiffs claim that "[t]o the extent any argument is left unaddressed, it should not be deemed to be a concession or waiver by the Plaintiffs; rather it just reflects Plaintiffs' evaluation that no response is required." (Opp. at 1-2).  But that is not the law.  Courts routinely hold that "when a party fails to respond to an argument or otherwise address a claim, the Court deems such an argument or claim abandoned."  *Gillaspy* v. *Wells Fargo Bank, N.A. as Tr. for Park Place Sec., Inc. Asset-Backed Pass-Through Certificates, Series 2005-WCW2*, 2024 WL 898887, at *3 (M.D. Ala. Mar. 1, 2024) (quoting *Jones* v. *Bank of Am., N.A.*, 564 F. App'x 432, 434 (11th Cir. 2014)); *see also Gardiner* v. *RoundPoint Mortg. Servicing Corp.*, 2024 WL 3526887, at *6 (N.D. Ala. July 23, 2024) ("By failing to respond to the defendants' arguments with respect to his breach of contract claims . . . [plaintiff] effectively has abandoned these claims."); *Watson* v. *Carnival Corp.*, 2024 WL 4137299, at *13 (S.D. Fla. Aug. 21, 2024) ("Plaintiff failed to respond to

any of [the arguments raised in the motion to dismiss]. The consequence of these omissions is straightforward: Plaintiff implicitly conceded the points raised by Carnival and abandoned arguments she could have made in response."), *R&R adopted*, 2024 WL 4132931 (S.D. Fla. Sept. 10, 2024). Plaintiffs had an opportunity to address general jurisdiction over BHL. Having failed to do so, they have waived any argument that BHL should be subject to general jurisdiction in the forum.

*Second*, Plaintiffs have waived any argument that BHL has sufficient suit-related contacts with the forum because Plaintiffs' Opposition similarly fails to respond to (and therefore concedes) BHL's arguments to the contrary. (*See* Br. at 14-15); *see also Gillaspy*, 2024 WL 898887, at *3. As a result, Plaintiffs cannot demonstrate that jurisdiction over BHL is proper under either the state or federal long-arm statutes. *See Jones* v. *Black*, 2023 WL 5197882, at *2 (M.D. Ala. Aug. 11, 2023) (to invoke jurisdiction under the Alabama long-arm statute, plaintiff must satisfy the requirements of due process); *Fuld* v. *Palestine Liberation Org.*, 606 U.S. 1, 20 (2025) (same).

*Third*, Plaintiffs' attempt to rely on Federal Rule of Civil Procedure 4(k)(1)(C) as a basis for jurisdiction fails for the independent reason that Plaintiffs have not served BHL in the United States as the rule requires. As BHL explained in its Moving Brief, Rule 4(k)(1) provides for the exercise of jurisdiction where service is effected pursuant to the terms of certain federal statutes—here, the ATA. *See* Fed.

R. Civ. P. 4(k)(1)(C) ("[s]erving a summons or filing a waiver of service establishes personal jurisdiction over a defendant" when "authorized by a federal statute"); 18 U.S.C. § 2334(a) (permitting the exercise of personal jurisdiction for ATA claims where defendant was properly served anywhere in the United States). (*See also* Br. at 15-17). Plaintiffs have not argued, nor could they argue, that they served BHL in the District. Instead, they assert that, in the parties' stipulation accepting service, Defendants "made clear that they will [sic] do not and will not contest service of process." (Opp. at 3 n.2 (citing to portions of the October 22, 2024 hearing on Defendants BHL's and Changpeng Zhao's motion to transfer)). Plaintiffs have mischaracterized both the terms of the parties' stipulation and the portion of the hearing transcript on which they rely. As BHL explained to the Court during the October 22, 2024 hearing, ***without any objection from Plaintiffs***, the parties' stipulation was phrased "very carefully" and with the ATA's nationwide service provision in mind, such that BHL remained "free to argue [it had not] been served in Alabama or anywhere *for purposes of jurisdiction*." (ECF No. 52 (Oct. 22, 2024 Hearing Tr.) at 69-71). And in the very stipulation on which Plaintiffs rely, BHL made clear it was not conceding that service had been effectuated within the Middle District of Alabama (or anywhere else). (*See* Br. at 16; ECF No. 15 ¶ 1 (stipulation that BHL "do[es] not concede that service has been effectuated within the Middle District of Alabama (or anywhere else), and Plaintiffs agree not to argue that the

5

waiver affects any of [BHL's] other rights, defenses, or objections (including but not limited to defenses based upon lack of personal or subject matter jurisdiction[.]")).

Moreover, Plaintiffs agreed not to argue that by stipulating to service, BHL had somehow waived any of its rights, defenses, or objections, including defenses based upon lack of personal jurisdiction. (*See id.*). In other words, BHL's stipulation did not waive its argument opposing Rule 4(k)(1)(C) as a basis for jurisdiction. Because Plaintiffs cannot satisfy the requirements of Rule 4(k)(1)(C), they cannot invoke it as a basis for jurisdiction. And even if they could, Plaintiffs' failure to satisfy the requirements of due process (which they did not contest), also prevents them from relying on Rule 4(k)(1)(C).

*Finally*, Plaintiffs' allegation that BHL and BAM are alter egos also fails to establish a viable basis of jurisdiction over BHL. Courts "do not exercise the power to pierce the corporate veil lightly[,]" and Plaintiffs come nowhere close to pleading facts that would justify such an extreme measure. *Mack* v. *CooperSurgical, Inc.*, 2023 WL 2653365, at *4 (M.D. Ala. Mar. 27, 2023); *see also Keenan* v. *Matchmaker Int'l, Inc. of Mobile*, 1999 WL 33590522, at *6 (S.D. Ala. Jan. 20, 1999) (an even higher burden applies to horizontal (*i.e.*, non-parent/subsidiary) veil piercing).

More specifically, Plaintiffs cannot invoke the alter ego doctrine because they cannot establish the doctrine's threshold requirement that BHL completely dominated and controlled BAM. *See First Health, Inc.* v. *Blanton*, 585 So. 2d 1331,

6

1334 (Ala. 1991) (plaintiffs must allege that "the subservient corporation had no separate mind, will, or existence of its own"); *Mack*, 2023 WL 2653365, at \*4 (courts "are reluctant" to label companies alter egos "when some semblance of independence has been maintained"). (*See also* October 9, 2025 Brief of BAM ("BAM Reply") at Section III.C.2, 5; October 9, 2025 Brief of Changpeng Zhao ("Zhao Reply") at Section IV.C.2). Plaintiffs claim that "BHL provided BAM's technology, liquidity, and infrastructure, including matching engines, digital wallets, and branding" and "BHL executives . . . made strategic and compliance decisions for BAM and retained authority over its banking[.]" (Opp. at 24; *see also* Opp. at 30-31, 50, 51 (alleging shared directors and officers between BHL and BAM)). But as BHL explained in its Moving Brief, multiple courts have already held that such allegations—that BHL and BAM had some overlapping officers, infrastructure, or administrative function—are insufficient to establish domination and control. *See, e.g.*, *Reynolds* v. *Binance Holdings Ltd.*, 481 F. Supp. 3d 997, 1006-08 (N.D. Cal. 2020) (rejecting argument that BAM and BHL were alter egos based on allegedly overlapping directors and shared software). (*See also* Br. at 10-12 (collecting cases)). In response, Plaintiffs argue only that those decisions are irrelevant here because they occurred "*before* FinCEN issued its consent order with Binance on November 21, 2023, and before the SEC issued its ruling on June 5, 2023." (Opp.

7

at 31).   But no information from those regulatory actions supports a contrary conclusion, and Plaintiffs do not even try to argue otherwise.

And even if these allegations were sufficient to establish domination and control (which again, they are not), that is still not sufficient to invoke alter ego jurisdiction.  Instead, Alabama law requires plausible allegations that the dominating corporation "misused that control" and that the misuse "proximately caused harm to the plaintiff through such misuse."  *Mack*, 2023 WL 2653365, at *4.  Plaintiffs concede that they are required to establish proximate causation (Opp. at 28), but they nevertheless fail to allege that BHL proximately caused harm to them by misusing its purported control over BAM.  For instance, the Amended Complaint contains no allegations that BHL directed BAM to provide financial support related to the Attacks.  Nor are there any allegations connecting any U.S. transaction—on either Binance.com or Binance.US—to the Attacks, or that any U.S. transaction otherwise caused harm to Plaintiffs.  Nor have Plaintiffs offered any other explanation of how BHL's alleged control of a U.S. corporation gave rise to overseas terror attacks.[2]

---

[2] Instead, Plaintiffs seek to establish proximate causation by alleging that BHL misused "BAM's license and presence in Alabama to funnel U.S. customer funds," to BHL's global exchange, and asserting that veil-piercing is appropriate because "[t]o immunize such conduct under the guise of corporate form not only would undermine the protections Alabama law affords its citizens but also would actively reward a scheme that left Alabama consumers exposed to both financial and security risks." (Opp. at 34).  Putting aside that Plaintiffs' concerns appear to be about consumer protection, Plaintiffs have not explained what those financial and security risks are or how they relate to the Attacks.  Accordingly, Plaintiffs have not

Finally, even if Plaintiffs had pled a basis to attribute all of BAM's contacts with the forum to BHL, this would still not suffice to establish personal jurisdiction. As BAM explains in its reply brief, Plaintiffs have not established that any of *BAM's* contacts with the forum are sufficiently suit-related to support the exercise of jurisdiction over BAM, let alone BHL. (*See* BAM Reply at 35-41). *See also Moore* v. *Lowe*, 591 F. Supp. 3d 1087, 1102 (N.D. Ala. 2022) (specific jurisdiction requires that "the defendant's **suit-related conduct** . . . create a substantial connection with the forum State"). Lacking any viable theory of jurisdiction over BHL, each of Plaintiffs' claims against BHL should be dismissed.

## II. THE AMENDED COMPLAINT DOES NOT STATE A CLAIM AGAINST BHL.

Since Plaintiffs have failed to plead personal jurisdiction over BHL, the Court need not proceed further before dismissing all claims against BHL. But even if this

---

established alter ego jurisdiction over BHL. *See, e.g.*, *Mack*, 2023 WL 2653365, at \*4-5 (rejecting alter ego theory of personal jurisdiction where plaintiffs failed to plead misuse of the allegedly controlled companies); *Cont'l Motors, Inc.* v. *Jewell Aircraft, Inc.*, 882 F. Supp. 2d 1296, 1304-05 (S.D. Ala. 2012) (dismissing for lack of personal jurisdiction where plaintiff "ha[d] not alleged, much less shown, that [defendant] misused its control over [its subsidiary]"); *Thornton* v. *Bayerische Motoren Werke AG*, 439 F. Supp. 3d 1303, 1313 (N.D. Ala. 2020) ("There is no evidence before the court to suggest that [defendant] misused its purported control over [its subsidiary]. . . . As a result, [plaintiff] has not presented sufficient evidence to justify piercing the corporate veil[.]").

were not the case, the Amended Complaint suffers from multiple other failures that require dismissing all claims against BHL.

As a threshold issue, Plaintiffs have failed to rebut BAM's argument that the Amended Complaint's jumbled allegations, which lump together all Defendants, fail to comply with Federal Rules of Civil Procedure 8 and 10, and should therefore be dismissed against all Defendants on that basis. (*See* June 20, 2025 Brief of BAM (ECF No. 93) at Section II.A). To avoid burdening the Court with duplicative briefing, BHL incorporated BAM's arguments by reference in its opening brief and it similarly incorporates BAM's reply arguments by reference herein. (*See* BAM Reply at Section III.B).

Next, Plaintiffs' Opposition takes issue with BHL having submitted the regulatory filings, from which the Amended Complaint's allegations are drawn, in support of its Motion to Dismiss. (Opp. at 3). Plaintiffs admit that the "[t]he allegations at issue in this case . . . *are taken verbatim*" from those very filings, but apparently would prefer the Court not consider parts of the filings Plaintiffs chose not to quote. (*Id.*). As BHL explained in its Moving Brief, the complete documents lend context to Plaintiffs' cherry-picked allegations. (Br. at 6). For example, many of Plaintiffs' allegations are drawn from unadjudicated allegations, which cannot support Plaintiffs' pleading burden. *See In re Platinum & Palladium Commodities Litig.*, 828 F. Supp. 2d 588, 593-94 (S.D.N.Y. 2011) ("neither a complaint nor

10

references to a complaint [that] results in a consent judgment may properly be cited in the pleadings" because "preliminary steps in litigations and administrative proceedings that did not result in an adjudication on the merits or legal or permissible findings of fact are, as a matter of law, immaterial[.]").  Elsewhere, as the documents from which Plaintiffs' allegations are drawn make clear (in portions Plaintiffs did not acknowledge), none of the regulatory agencies that investigated BHL concluded or even alleged that BHL intentionally supported terrorism.  (*See, e.g.*, Br. at 6-7 (citing ECF No. 92-3 (FinCEN Consent Order) at 46)).

Plaintiffs claim that the Court cannot take judicial notice of these documents and that if it can, it may only take notice of the documents' existence and not their contents.  (Opp. at 9-10).  But the law is clear that the Court may consider the Amended Complaint's allegations with the context of the full regulatory filings because the Amended Complaint incorporates those documents by reference (and admittedly copies selective parts of those documents verbatim).  *See Day* v. *Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005) ("[A] document need not be physically attached to a pleading to be incorporated by reference into it; if the document's contents are alleged in a complaint and no party questions those contents, we may consider such a document[.]").  When viewed in their entirety, these filings *rebut* rather than support Plaintiffs' claims that BHL intentionally supported any act of terrorism.  They demonstrate that *at most*, BHL failed to maintain adequate AML

and sanctions controls, and failed to register as a money service business.  (*See* Br. at 6-7).  With this context and for the additional reasons described below and in BHL's Moving Brief, none of Plaintiffs' claims against BHL state a claim.

### A. Plaintiffs Concede that the Amended Complaint Does Not State a Claim for Primary ATA Liability.

The Amended Complaint includes two counts seeking to hold BHL accountable for primary violations of the ATA (Counts 3 and 4).  (*See* AC ¶¶ 344-49).  BHL's Moving Brief explained that these claims are insufficiently pleaded because the Amended Complaint does not allege either an act of international terrorism by BHL or that BHL proximately caused Plaintiffs' alleged injuries, both of which are necessary to establishing primary ATA liability.  (*See* Br. at 18-23.)  In response, Plaintiffs now state that the Amended Complaint "never make[s]" a claim for primary ATA liability.  (*See* Opp. at 64 ("Defendants misconstrue Plaintiffs' requisite reference to Section 2333(a) as a claim of primary liability against Defendants.  ***Plaintiffs never make such a claim***.")).  The parties are therefore in agreement that Counts 3 and 4 do not state a primary liability claim against BHL, and any such claim should be deemed abandoned and withdrawn.

### B. The Amended Complaint Does Not State an ATS Claim.

As BHL explained in its Moving Brief (*see* Br. at 40), pursuant to the Supreme Court's decision in *Jesner* v. *Arab Bank, PLC*, Plaintiffs may not bring an ATS claim against BHL because it is incorporated in the Cayman Islands, and foreign

12

corporations are not subject to jurisdiction under the ATS. 584 U.S. 241, 272 (2018) ("[T]he Court holds that foreign corporations may not be defendants in suits brought under the ATS."); *see also Alvarez Galvez* v. *Fanjul Corp.*, 533 F. Supp. 3d 1268, 1279 (S.D. Fla. 2021) ("[T]he Supreme Court has foreclosed lawsuits against foreign corporations under the ATS. Thus, because [defendant] is a British Virgin Islands corporation with its principal place of business in the Dominican Republic, it is not an appropriate ATS defendant."). Plaintiffs' Opposition seems to ask this Court to disregard *Jesner*—binding Supreme Court precedent—because some of BHL's alleged conduct occurred within the U.S. (*See* Opp. at 88 ("[H]ere, we have a foreign corporation [BHL] availing itself of a U.S. instrumentality [BAM] in order to circumvent the U.S. regulatory environment and conduct illegal transactions[.]")). But Plaintiffs' argument only addresses the presumption against extraterritoriality— *i.e.*, whether the conduct at issue has a sufficient nexus with the U.S.—which is separate from the Supreme Court's holding that the ATS does not reach foreign corporations. *See Jesner*, 584 U.S. at 272. Accordingly, regardless of BHL's supposed U.S. conduct, BHL is still not subject to jurisdiction for purposes of Plaintiffs' ATS claim.

13

## C. The Amended Complaint Does Not State a JASTA Aiding-and-Abetting Claim.[3]

Plaintiffs' JASTA aiding-and-abetting claim (Count 1) fails because the Amended Complaint does not plausibly allege that BHL (1) knowingly and substantially assisted the Attacks, or (2) was generally aware it was involved in terrorists' violent activities. *Twitter* v. *Taamneh*, 598 U.S. 471, 484-86, 503 (2023).

### 1. Plaintiffs Fail to Adequately Allege BHL's Knowing and Substantial Assistance.

Under the Supreme Court's holding in *Twitter*, where (as here) Plaintiffs have not alleged a "definable nexus" between BHL's alleged acts or omissions and the Attacks that injured Plaintiffs, Plaintiffs must instead plausibly allege that BHL intended to bring about the Attacks that injured Plaintiffs, or their JASTA aiding-and-abetting claim fails. *Id.* at 498, 503, 505-06 (where there is no "definable nexus" between defendants' acts or omissions and the attack that injured plaintiffs, plaintiffs

---

[3] Plaintiffs' Opposition relies heavily on Judge Koeltl's opinion in *Raanan* v. *Binance Holdings Ltd.*, 2025 WL 605594 (S.D.N.Y. Feb. 25, 2025) as support for the validity of their own aiding-and-abetting claim. However, as discussed in BHL's Moving Brief, that decision does not bind this Court, and BHL respectfully submits that it was wrongly decided because it overlooks *Twitter*'s rigorous intent requirement in light of plaintiff's concession that BHL did not intend to bring about any act of terrorism. (*See* Br. at 24 n.10). Numerous subsequent decisions—including the Supreme Court's *Smith & Wesson* ruling (*see id.* at 31-32), the Second Circuit's decision in *Ashley et al.* v. *Deutsche Bank Aktiengesellschaft et al.*, 144 F.4th 420 (2d Cir. July 21, 2025), and Judge Garnett's opinion in *Fraenkel et al.* v. *Standard Chartered Bank*, 2025 WL 2773251 (S.D.N.Y. Sept. 26, 2025)—all serve to confirm that *Raanan* improperly allowed the aiding-and-abetting claim to proceed.

14

must plausibly allege that defendants consciously and "culpably associate[d themselves] with the [relevant] attack, participate[d] in it as something that [they] wishe[d] to bring about, or sought by [their] action to make it succeed.") (first and third through final alterations in original); *see also Zobay* v. *MTN Group Ltd.*, 695 F. Supp. 3d 301, 345 (E.D.N.Y. 2023) ("If the relationship between a defendant's assistance and the ultimate tortious act is attenuated, then plaintiffs need some other very good reason to think that defendants were consciously trying to help or otherwise participate in the [specific] attack.") (alteration in original) (quoting *Twitter*, 598 U.S. at 500). As explained in BHL's Moving Brief, the Amended Complaint does not sufficiently allege knowing and substantial assistance because it fails to plead that (1) there was a definable nexus between BHL's conduct and the Attacks, and that (2) BHL's alleged participation in the Attacks was conscious, voluntary, and culpable. (*See* Br. at 24-33). Plaintiffs' Opposition does not cure these defects. (*See* Opp. at 69-79).

### i.   Plaintiffs Have Not Plausibly Alleged a Nexus Between BHL's Alleged Actions and the Attacks.

The only "nexus" alleged in the Amended Complaint is the vague and conclusory assertion that BHL's historical AML lapses enabled users allegedly associated with FTOs to access the Binance platform, and that funds that flowed through Binance were used by the FTOs to commit acts of terrorism, including the Attacks. (*See* AC ¶¶ 109, 133, 151, 152, 157, 215, 307). But as the Supreme Court

made clear in *Twitter*, alleging "assistance to [the principal wrongdoer's] activities in general[]" is not enough.  598 U.S. at 503; *see also Ashley*, 144 F.4th at 444 ("[I]t is not enough to say that the defendant assisted the terrorist organization's 'activities in general'" without offering a "discernable nexus between the [defendant's conduct] and the attacks committed against [p]laintiffs[.]") (citing *Twitter*, 598 U.S. at 501, 503).  "[T]he question is whether defendants gave substantial assistance to [the FTO that carried out the attack] with respect to the [specific] attack.  The focus thus must remain on the [specific] attack[.]"  *Twitter*, 598 U.S. at 503.

In their Opposition, Plaintiffs do not even attempt to draw this link, instead arguing they have demonstrated a nexus by alleging broadly that BHL "facilitat[ed] the transfer of millions of dollars to an FTO prior to [the Attacks]."  (Opp. at 78). But this sort of conclusory allegation of general support is insufficient.  *See Twitter*, 598 U.S. at 503 (overturning Ninth Circuit decision that "framed the issue of substantial assistance as turning on defendants' assistance to ISIS' activities in general"); *see also Ashley*, 144 F.4th at 444  (relying on *Twitter* to find "[t]he complaint offer[ed] no discernable nexus between [defendants'] money laundering and the attacks committed against [p]laintiffs" because although "it [wa]s possible that some of the [defendant]s' transactions in the money laundering schemes produced money that was transferred to the [FTO] and used to facilitate bombings in Afghanistan during the relevant time … ***the complaint fail[ed] to plead with***

16

*specificity* allegations from which this Court could draw adequate inferences to support a claim of aiding-and-abetting liability.").

Even more recently, in *Fraenkel et al.* v. *Standard Chartered Bank*, Judge Garnett in the Southern District of New York dismissed a JASTA aiding-and-abetting claim where the plaintiffs had similarly failed to allege a "concrete nexus" between the defendant bank's conduct and the attacks that injured plaintiffs. 2025 WL 2773251, at *9-10. The *Fraenkel* plaintiffs argued that a sufficient nexus was established by the defendant bank's provision of services to terrorist fronts under the control of the Islamic Revolutionary Guard Corps ("IRGC"), and that the "IRGC systematically used such fronts to finance the attacks that killed or injured [p]laintiffs." *Id*. at *10. But Judge Garnett disagreed: "Far from demonstrating a concrete nexus . . . , [p]laintiffs' theory of liability would 'hold [the bank] liable for all the torts of an enterprise,' but without the corresponding 'pervasive and systemic' support of terroristic activities that *Twitter* demands." *Id.* at *10 (citing *Twitter*, 598 U.S. at 506). Judge Garnett further noted that *Ashley* had rejected the nexus theory posited by the *Fraenkel* plaintiffs: namely, that engaging in widespread money laundering and other financial services for individuals and entities with an apparent or possible connections to terrorists *must have* resulted in *some* of the money funding the terrorists' violent activities. *Id.* (citing *Ashley*, 144 F.4th at 444). As Judge Garnett explained, "it is not enough for [p]laintiffs to say that [the defendant bank]

17

aided and abetted the [a]ttacks that harmed [p]laintiffs by moving money for people or entities who were not themselves FTOs but had apparent connections to entities in Iran known to support terrorist activities, which activities included funding or sponsoring some of the FTOs that then carried out the [a]ttacks." *Id.*

Plaintiffs in this case have alleged nothing more—and, in fact, have alleged much less—than the conduct Judge Garnett found insufficient in *Fraenkel*. Here, at most, Plaintiffs allege that Defendants provided "critical financial infrastructure" that aided FTOs, because Defendants knew or must have known FTO-associated accounts were using Binance and failed to stop this use. (*See, e.g.*, AC ¶¶ 133, 161-62). Such allegations of passive nonfeasance stand in stark contrast to the affirmative misconduct described above.

### ii. Plaintiffs Have Not Plausibly Alleged that BHL Had the Requisite Intent to Participate in the Attacks.

Because Plaintiffs have not pled a nexus between BHL's conduct and the Attacks, Plaintiffs must plausibly allege that Defendants consciously and "culpably associate[d themselves] with the [A]ttack, participate[d] in it as something that [they] wishe[d] to bring about, or sought by [their] action to make it succeed." *Twitter*, 598 U.S. at 498 (second alteration added). (*See also* Br. at 27-28). Plaintiffs have not done so here.

Plaintiffs argue that BHL's intent can be inferred from its treatment of FTO-affiliated customers "in a wholly special manner" as a result of its AML lapses,

18

(Opp. at 75), but this argument fails for several reasons. *First*, BHL's historical AML lapses were platform-wide—they were in no way aimed at giving FTOs special treatment. In other words, BHL offered the same services to all of its hundreds of millions of users worldwide and, although BHL at that time did not comply with AML obligations, Plaintiffs do not (and cannot) allege that BHL sought to treat FTOs in a manner different than any other user of the platform. *Cf. Kaplan* v. *Lebanese Canadian Bank, SAL*, 999 F.3d 842, 865-66 (2d Cir. 2021) (allowing JASTA claim to proceed where defendant bank gave "special treatment" to "integral" members of Hizbollah); *see also Fraenkel*, 2025 WL 2773251, at \*10 (dismissing aiding-and-abetting claim and contrasting with allegations in *Kaplan*).

*Second*, even though BHL historically failed to implement comprehensive AML controls, BHL actively sought to keep terrorists off of its platform, as the U.S. government acknowledged. (Br. at 28 (citing ECF No. 92-3 (FinCEN Consent Order))). Accordingly, Plaintiffs cannot plausibly allege that BHL provided the FTOs with systemic and pervasive assistance. (*See* Opp. at 78). To qualify as such, the assistance must be so extensive that the analysis begins to "blur" with conspiracy liability, *Twitter*, 598 U.S. at 496—and even then, it still requires intent to aid terrorists. *See Ashley*, 144 F.4th at 445 ("Even assuming the Banks' aid was pervasive and systemic, the complaint does not support the inference that the Banks' money laundering operations were designed or performed with the intent to aid the

19

[terrorists]."). Simply put, just because a defendant fails in its AML duties, it does not follow that it is liable as an aider-and-abettor under JASTA. *See, e.g.*, *Siegel* v. *HSBC North America Holdings, Inc.*, 933 F.3d 217, 221, 225-26 (2d Cir. 2019); *O'Sullivan* v. *Deutsche Bank AG*, 2019 WL 1409446, at \*3, 10 (S.D.N.Y. Mar. 28, 2019); *cf. King* v. *Habib Bank Ltd.*, 2022 WL 4537849, at \*3 (S.D.N.Y. Sept. 28, 2022) (denying motion to dismiss aiding-and-abetting claim where defendant was alleged to have had AML systems in place that it intentionally avoided in order to "whitelist" and "wire-strip" on behalf of FTOs).

    *Ashley* is again instructive in this regard. Unlike BHL, the defendants in *Ashley* were alleged to have given "special treatment" to bad actors even after being notified by the U.S. government that such actors were utilizing their services; not only did those defendants continue to provide banking services to specific customers after being explicitly told by the U.S. military that those services were facilitating terrorism, the defendants were also alleged to have actively engaged in terrorist financing, by "custom build[ing]" and "operat[ing]" money laundering schemes known to fund terrorism. 144 F.4th at 429-31. Still, the Second Circuit found that such allegations did not support a JASTA aiding-and-abetting claim, because defendants' continued services did not amount to "interested cooperation" with the FTOs. *Id.* at 443.

20

### iii.    Plaintiffs Misapply the *Halberstam* Factors.

As explained in the Moving Brief, the *Halberstam* factors weigh heavily in favor dismissal of the aiding-and-abetting claim.  (Br. at 33-34).  Plaintiffs' Opposition (at 70-74) does not change the balance.

- **Nature of the Act**.  Plaintiffs resort to the threadbare allegation that funds FTOs obtained through Binance were "critical in ensuring Hamas had the capacity to plan, coordinate, and execute the October 7 terror attacks."  (Opp. at 70).  But as explained (Br. at 33), this sort of conclusory allegation does not establish a link between BHL and the Attacks, ignores that FTOs rely on a multitude of funding sources, and that (despite its historical lapses), BHL "proactively cooperated with global law enforcement and blockchain vendors to combat terrorism financing."  (ECF No. 92-3 (FinCEN Consent Order) at 46).

- **Amount of Assistance**.  Plaintiffs wrongly conflate the "general awareness" and "knowing and substantial assistance" prongs of an aiding-and-abetting claim, yet come no closer to linking any transactions to the Attacks—once again relying on the insufficient allegations that BHL "generally" aided FTOs (Opp. at 70-71), which (as noted *supra*) is insufficient under *Twitter*.

- **BHL's Presence**.  It is undisputed that BHL was not present during the Attacks.

- **BHL's Relation**. Plaintiffs argue that BHL "flouted its own protocol" to "process transactions worth millions of dollars" for FTOs (Opp. at 72), once again ignoring that BHL's AML lapses applied equally to all users and that BHL did not single FTOs out for any sort of special treatment.

- **BHL's State of Mind**.  Plaintiffs rely on internal chats, that pre-date the Attacks by years, to suggest that BHL willingly processed transactions for FTOs (Opp. at 73), but have not alleged any facts suggesting that BHL ever had any intent of facilitating or any advance knowledge of the October 7 Attacks.

- **Duration of the Assistance**. Although Plaintiffs allege assistance to FTOs spanning multiple years (Opp. at 74), Plaintiffs do not temporally connect any of this to the Attacks, nor do Plaintiffs suggest that the duration somehow led to an increased amount of aid to the FTOs.

### 2. Plaintiffs Fail to Adequately Allege BHL's General Awareness.

As an independent basis for dismissal of Count 1, Plaintiffs fail to demonstrate BHL's general awareness that it was "playing a 'role' in an FTO's violent or life-endangering activities." *Newman* v. *Associated Press*, 758 F. Supp. 3d 1357, 1368 (S.D. Fla. 2024). Plaintiffs assert that the Amended Complaint's reference to years-old internal chats is sufficient to demonstrate BHL's general awareness because "[t]here is no question that planning the October 7 terror attacks took considerable time[.]" (Opp. at 67). This argument misses the point. What Plaintiffs allege (at most) is that BHL was aware users in some way affiliated with FTOs used its platform in some capacity, years prior to the October 7th Attacks. But Plaintiffs do not allege that BHL was aware it was "playing a role" in the FTOs' activities.

Plaintiffs also argue that they need not identify the FTO affiliates and intermediaries that purportedly transacted on Binance. (Opp. at 68-69). Even if Plaintiffs' position were correct (which BHL disputes), Plaintiffs still fail to adequately allege the intermediary theory of liability because they also do not—and cannot—identify how the unidentified FTO affiliates are supposedly affiliated with an FTO or when BHL would have learned of such an affiliation. (Br. at 36).[4]

---

[4] Plaintiffs' reliance on the FinCEN Consent Order (Opp. at 68) is misplaced, because contrary to Plaintiffs' assertion, BHL did not admit to "all factual assertions therein." (Opp. at 68).

**D.    The Amended Complaint Does Not State a JASTA Conspiracy Claim.**

Plaintiffs' Opposition confirms that Count 2—alleging a conspiracy claim under JASTA—rests on speculation, and should be dismissed for failure to plausibly plead any agreement at all between BHL and FTOs, let alone an agreement to commit acts of international terrorism.  (Br. at 38-39).

Plaintiffs argue that proof of a tacit (as opposed to an explicit) agreement is sufficient, (Opp. at 80), but Plaintiffs have not plausibly pled even a tacit agreement. Instead, Plaintiffs incorrectly try to invoke a lesser standard—an agreement to ***materially support*** terrorism—and suggest that certain "discussions" among BHL employees demonstrate this agreement.  (Opp. at 81-82).  Even assuming that lesser standard applies (and it does not[5]), cherry-picked snippets in which BHL employees acknowledged bad actors using the Binance platform comes nowhere close to demonstrating an agreement to materially support terrorism.  Simply put, Plaintiffs must allege more than parallel conduct or business choices—they must allege a "common intent" and "pursui[t] [of] the same object."  *Freeman* v. *HSBC Holdings PLC*, 57 F.4th 66, 79-80 (2d Cir. 2023).

---

[5] Plaintiffs incorrectly reference the "materially support" standard, which applies to a primary liability claim, but not a secondary liability claim.  (*See* Opp. at 81-82).

Here, the most Plaintiffs allege is that BHL prioritized its own growth over regulatory compliance, but this does not support any sort of common objective between BHL and FTOs.  Of course, Plaintiffs do not (and cannot) point to a single instance of BHL employees ever communicating with, encouraging, or knowingly supporting FTOs.  Simply acknowledging that some bad actors may be among the millions of Binance users in no way supports an inference that BHL had a common intent with FTOs to materially support terrorism. *See Freeman*, 57 F.4th at 79 (no conspiracy where bank processed transactions for known terrorist affiliates); *Bernhardt* v. *Islamic Republic of Iran*, 47 F.4th 856, 874 (D.C. Cir. 2022) (rejecting conspiracy claim for lack of common intent where bank allegedly evaded sanctions, thus allowing money to flow to FTOs).

Given that Plaintiffs come nowhere close to demonstrating their manufactured standard of an agreement to materially support terrorism, it follows that Plaintiffs are even further from satisfying the actual standard, namely an agreement "to carry out [a] scheme of international terrorism."  *Newman*, 758 F. Supp. 3d at 1373. Plaintiffs merely argue that BHL "hid" from U.S. authorities and that BHL employees used "callous" language when discussing bad actors (*id.*)—in other words, the same insufficient allegations discussed above.  The bottom line is that Plaintiffs have no support to even remotely insinuate—let alone plausibly allege— that BHL itself intended to commit acts of terrorism.  *Newman*, 758 F. Supp. 3d at

1374 (dismissing JASTA conspiracy claim that "fail[ed] to plausibly allege any agreement to commit an act of international terrorism").

### E. The Amended Complaint Does Not State a Negligence/Wantonness Claim.

In their Opposition, Plaintiffs reinvent their negligence/wantonness claim yet again, this time premising liability on BHL's prior violations of U.S. banking regulations in relation to AML and sanctions controls. (*See* Opp. at 89). Not only is this theory of liability absent from the Amended Complaint (*see* AC ¶¶ 357-65), and offered for the first time in Plaintiffs' Opposition, but even with this impermissibly late change in strategy, Plaintiffs have still failed to plead the requisite elements of duty and causation. This claim must therefore be dismissed.

*First*, Plaintiffs contend that BHL owed a duty of care "to the general public" because BHL failed to abide by "United States laws and regulations [that] required [BHL] to implement robust anti-money laundering programs, perform due diligence on its customers, and file SARs with regulators flagging suspected illicit activity[.]" (Opp. at 89-90). But these banking regulations (*e.g.*, the Bank Secrecy Act or "BSA") do not provide for a private right of action—the only duty owed is to the government—and it is therefore well established that a violation does not give rise to a duty of care to third-party customers, much less the public at large. *See Venture Gen. Agency, LLC* v. *Wells Fargo Bank, N.A.*, 2019 WL 3503109, at \*7 (N.D. Cal. Aug. 1, 2019) ("[C]ourts are unanimous in holding that there is no private right of

action under the [Bank Secrecy Act] or Patriot Act. . . . Further, as there is no private right of action, there can be no duty of care arising out of the BSA's monitoring requirements."); *In re Agape Litig.*, 681 F. Supp. 2d 352, 360 (E.D.N.Y. 2010) ("[T]he Court can perceive no sound reason to recognize a duty of care that is predicated upon the [BSA]'s monitoring requirements."); *Marlin* v. *Moody Nat. Bank, N.A.*, 2006 WL 2382325, at \*7 (S.D. Tex. Aug. 16, 2006) ("The obligation under that statute is to the government rather than some remote victim. The [bank's] obligation is not to roam through its customers looking for crooks and terrorists."), *aff'd*, 248 F. App'x 534 (5th Cir. 2007); *Belle Meade Title & Escrow Corp.* v. *Fifth Third Bank*, 282 F. Supp. 3d 1033, 1040 (M.D. Tenn. 2017) ("[T]he federal statutes and regulations upon which the plaintiff relies do not create a common law duty on the part of banks to non-customers."); *SFS Check, LLC* v. *First Bank of Delaware*, 990 F. Supp. 2d 762, 775 (E.D. Mich. 2013) ("[U]nder any theory of negligence predicated on [customer identification program] or Bank Secrecy Act compliance, monitoring, or implementation—whether pleaded as a failure to exercise due care, a failure to exercise due diligence, a failure to supervise employees, respondeat superior, or gross negligence—the law does not provide a basis for imposing a duty of care owed by [bank defendant] to Plaintiff."), *aff'd*, 774 F.3d 351 (6th Cir. 2014). This failure alone is sufficient to defeat Plaintiffs' negligence/wantonness claim.

*Second*, Plaintiffs' failure to plead proximate causation is an independent basis for dismissal of this claim. Plaintiffs' Opposition makes the conclusory assertion that BHL proximately caused the Attacks because (i) "funding is so elemental to a terrorist organization[,]" (ii) BHL allegedly helped to facilitate funding for FTOs, and (iii) "Hamas and PIJ would have been unable to carry out" the Attacks without this funding. (Opp. at 90). Moreover, Plaintiffs contend that the Attacks were somehow foreseeable to BHL because certain unidentified individuals with indeterminate connections to FTOs allegedly used the Binance platform at some unspecified time. (*Id.*). But as explained in BHL's Moving Brief, Plaintiffs do not—and cannot—connect a single user, or even transaction, on the Binance platform directly to the Attacks. (Br. at 22-23, 44). Plaintiffs' theory of causation is far too attenuated and cannot sustain their negligence/wantonness claim.

## III. SEVERAL PLAINTIFFS LACK STANDING UNDER THE ATA/JASTA OR THE ATS.

For the reasons set forth in Defendant Changpeng Zhao's reply brief, Plaintiffs have failed to establish that at least 17 of the individual plaintiffs lack standing to bring claims under the ATA/JASTA or ATS, and their claims should be dismissed on that basis. BHL incorporated Mr. Zhao's standing arguments by reference into its moving brief and it similarly incorporates his arguments in further support here. (*See* Zhao Reply at Sections V.B and V.C; *see also* June 20, 2025 Brief of Defendant Changpeng Zhao (ECF No. 90) at Sections II.C.1 and II.D).

## CONCLUSION

The Court should dismiss the Amended Complaint with prejudice against BHL.

Date: October 9, 2025

*/s/ Harlan I. Prater IV*
Harlan I. Prater IV, ASB-7485-T62H
Lightfoot, Franklin & White, LLC
400 20th Street North
Birmingham, AL 35203
(205) 581-0720
hprater@lightfootlaw.com

CAHILL GORDON & REINDEL LLP
Samson A. Enzer
Anirudh Bansal
Sesi Garimella
32 Old Slip
New York, NY 10005
(212) 701-3125
SEnzer@cahill.com
ABansal@cahill.com
SGarimella@cahill.com

*Attorneys for Defendant Binance*
*Holdings Limited d/b/a Binance*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing has been filed with the

Court and served by the Court's ECF system, on this the 9th day of October, 2025,

on:

David I. Schoen (ASB-0860-O42D)
David I. Schoen, Attorney at Law
2800 Zelda Road, Suite 100-6
Montgomery, AL 36106
(334) 395-6611
schoenlawfirm@gmail.com

Mark Goldfeder (*pro hac vice*)
National Jewish Advocacy Center, Inc.
1718 General George Patton Drive
Brentwood, TN 37027
(800) 269-9895
mark@jewishadvocacycenter.org

Ben Schlager (*pro hac vice forthcoming*)
GOLDFEDER AND TERRY, LLC
666 Harless Place
West Hempstead, NY 11552
(917) 495-5790
ben@goldfederterry.com

*Attorneys for Plaintiffs*

Kenneth D. Sansom (SAN 047)
Michael T. Sansbury (SAN 054)
SPOTSWOOD SANSOM & SANSBURY LLC
Financial Center
505 20th Street North, Suite 700
Birmingham, AL 35203-3329
(205) 986-3620
Msansbury@spotswood.com
Ksansom@spotswood.com

Athanasia Charmani (*pro hac vice*)
Daniel T. Stabile (*pro hac vice*)
WINSTON & STRAWN, LLP
200 Park Avenue
New York, NY 10166
(212) 294-4659

*Attorneys for Defendant BAM Trading
Services, Inc. d/b/a Binance.US*

Teresa Goody Guillén (*pro hac vice*)
Marco Molina (*pro hac vice*)
Joanna F. Wasick (*pro hac vice*)
BAKER & HOSTETLER LLP
45 Rockefeller Plaza
New York, NY 10111
(212) 589-4200

Charles A. Stewart III
BRADLEY ARANT BOULT CUMMINGS LLP
RSA Dexter Avenue Building
445 Dexter Avenue
Suite 9075
Montgomery, AL 36104
(334) 956-7608

*Attorneys for Defendant Changpeng Zhao*