**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | | |
|---|---|---|
| NOACH NEWMAN, et al., | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| v. | ) | **Case No. 2:24-cv-134-ECM-CWB** |
| | ) | |
| BAM TRADING SERVICES, INC., | ) | |
| et al., | ) | |
| | ) | |
| **Defendants.** | ) | |

**ORDER**

## I.    Introduction

This action was filed on February 26, 2024 and seeks to recover damages arising out of a horrific terror attack in Isreal that has been attributed to Hamas and Palestinian Islamic Jihad. (*See* Doc. 1).  The original group of nine plaintiffs was comprised of various individuals who lost family members and/or friends or who themselves were in close proximity to the attacks.  (*See id.* at pp. 27 through 30, ¶¶ 19 through 27).  An Amended Complaint was filed on May 5, 2025 to bring the total number of plaintiffs above two dozen—and certain plaintiffs purported to bring claims on behalf of themselves and others.  (*See* Doc. 84 at pp. 16 through 25, ¶¶ 46 through 68). Three of those plaintiffs later voluntarily dismissed their claims.  (*See* Docs. 109 & 110).

Named as defendants in the action are Binance Holdings, LTD., Changpeng Zhoa, and BAM Trading Services, Inc.  (*See* Docs. 1 & 84).  Liability is sought against the defendants under (1) the Antiterrorism Act, (2) the Alien Tort Statute, and (3) common law theories of negligence and wantonness.  (*See id.*).  Separate motions to dismiss have been filed by each of the defendants (*see* Docs. 89, 91, & 93) and remain pending for resolution.

1

After careful review and consideration of the lengthy allegations and equally lengthy dismissal briefing (*see* Docs. 1, 84, 89, 90, 91, 92, 93, & 99), and as was explained during the February 24, 2026 status conference (*see* Doc. 126), the First Amended Complaint has been determined to be legally and factually deficient. Additional rationale will be provided below. Nonetheless, the plaintiffs will be afforded an opportunity to cure the deficiencies by amendment prior to facing the prospect of a total or partial dismissal.

## II.     Pleading Standard

The Federal Rules of Civil Procedure require that a Complaint include "a short and plain statement of [each] claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To satisfy that requirement, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). Stated differently, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. While plausibility "does not require 'detailed factual allegations,' … it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). A complaint thus will not pass muster if it merely "offers labels and conclusions or a formulaic recitation of the elements of a cause of action" or if it "tenders naked assertion[s] devoid of further factual enhancement." *Id.* (internal quotation marks omitted) (quoting *Twombly*, 550 U.S. at 555 & 557). And "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id*. at 678 (quoting *Twombly*, 550 U.S. at 557); *see also Mamani v.*

*Berzain*, 654 F. 3d 1148, 1156 (11th Cir. 2011) ("The possibility that – *if* even a possibility has been alleged effectively – these defendants acted unlawfully is not enough for a plausible claim.").

Rule 10(b) of the Federal Rules of Civil Procedure imposes the additional requirement that "[a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances" and that "[i]f doing so would promote clarity, each claim founded on a separate transaction or occurrence … must be stated in a separate count … ." Fed. R. Civ. P. 10(b).

"Complaints that violate either Rule 8(a)(2) or Rule 10(b), or both, are often disparagingly referred to as 'shotgun pleadings.'" *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1320 (11th Cir. 2015). The Eleventh Circuit has identified four main types of shotgun pleadings: (1) pleadings that "contain[] multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint;" (2) pleadings that are "guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action;" (3) pleadings that "commit[] the sin of not separating into a different count each cause of action or claim for relief;" and (4) pleadings that commit "the relatively rare sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Id*. at 1321-23 (footnotes omitted). "Shotgun pleadings 'are flatly forbidden by the spirit, if not the letter, of [the procedural] rules,'" which are designed to enable courts to determine "which facts support which claims" and "whether the plaintiff has stated any claims upon which relief can be granted." *Barmapov v. Amuial*, 986 F.3d 1321, 1324 (11th Cir. 2021) (quoting *Weiland*, 792 F.3d at 1320).

3

**III.    Discussion**

The operative pleading at this stage is this First Amended Complaint filed on May 5, 2025. (*See* Doc. 84).  That pleading begins with a "Preliminary Statement" consisting of approximately 6 pages and 23 numbered paragraphs.  (*Id*. at pp. 2 through 9).  It then proceeds with over 300 numbered paragraphs spanning more than 90 additional pages discussing the parties and the supposed factual basis supporting liability. (*Id*. at pp. 9 through 106).  Only after 106 pages of text do the plaintiffs actually get about to setting out any causes of action.  In their 6 purported claims for relief, however, the plaintiffs largely reach back to the dozens of pages and hundreds of paragraphs of preceding allegations while providing almost no context specific to each claim— averaging less than 1 page of text per legal theory asserted.  (*Id*. at pp. 106 through 114). Moreover, the plaintiffs apparently seek to recover under each claim against the defendants collectively and make no effort to distinguish factual grounds that would permit liability to be imposed against any of them separately.  The plaintiffs likewise fail to make clear which among them are asserting each claim for relief—even though it is apparent from the invoked legal authorities that not all plaintiffs could bring all claims.  Accordingly, both the defendants and the court would be compelled to wade through the morass of allegations to determine what legal claims are being asserted, who is asserting them, against whom they are being asserted, and the underlying factual basis for each.  Neither the Federal Rules of Civil Procedure nor notions of fundamental fairness countenance such an approach.

**A.    First Claim for Relief**

In the First Claim for Relief, the plaintiffs seek to recover under the aiding and abetting provision of the Antiterrorism Act (the "ATA") and cite 18 U.S.C. § 2333(a) and (d) as authority. (*See* Doc. 84 at p. 106).  In asserting that claim, the plaintiffs purport to "repeat and reallege each and every allegation of the foregoing paragraphs as if fully set forth herein." (*Id*. at p. 106, ¶ 331).

4

All 330 preceding paragraphs therefore are rolled into the claim as supporting factual averments.

Although the plaintiffs go on to include another 10 paragraphs of allegations specific to the First Claim for Relief, the first 7 essentially just provide a history lesson on the background of Hamas and PIJ dating back to 1979. (*See id*. at pp. 106-08, ¶¶ 332 through 338). The only factual averment regarding the defendants in the First Claim for Relief is the conclusory allegation that "Defendants knowingly provided substantial financial assistance to Hamas and PIJ, and aided one another in doing so, and thus aided and abetted them in committing, planning, or authorizing acts of international terrorism, including the acts of international terrorism that injured Plaintiffs." (*Id*. at pp. 108-09, ¶ 340). No detail is provided as to the "substantial financial assistance" at issue, what such assistance relates to Hamas and what such assistance relates to PIJ, what assistance allegedly was provided by any one or more of the defendants, or how the assistance "aided and abetted … in committing, planning, or authorizing acts of international terrorism."

The averments made within the First Claim for Relief might provide detail as to the terrorist activities of Hamas and PIJ but provide nothing to show a plausible connection to the defendants individually—or collectively for that matter. The First Claim for Relief instead again simply contains a conclusory allegation that "[b]y aiding and abetting Hamas and PIJ in committing, planning, or authorizing acts of international terrorism, including acts that caused each of the Plaintiffs to be injured in his or her person and property, Defendants are liable pursuant to 18 U.S.C. § 2333(a) and (d) … ." (*Id*. at p. 109, ¶ 341).

Not only does the First Claim for Relief fail to distinguish among the defendants, it also fails to identify which persons among the plaintiffs are attempting to assert a claim. This omission is significant because of the limitations imposed by the ATA itself. Under the "Civil remedies" section of the ATA, a private right of action is granted to "[a]ny national of the United States

injured in his or her person, property, or business by reason of an act of international terrorism, or his or her estate, survivors, or heirs … ."  28 U.S.C. § 2333(a).  It is clear from the factual allegations in the Complaint that various of the plaintiffs do not—or may not—fall within that class of persons.  Given the number of plaintiffs involved, it is not reasonable for the defendants or the court to have to assume which plaintiffs are proceeding under the First Claim for Relief when it is the plaintiffs who hold the obligation of presenting "a short and plain statement of the claim showing that the pleader is entitled to relief."  *See* Fed. R. Civ. P. 8(a)(2).

The plaintiffs' allegations in the First Claim for Relief amount to no more than the classic "shotgun pleading."  *See Weiland*, 792 F.3d at 1321-23.  As but one example, the plaintiffs are seeking relief against three separate—albeit related—defendants, yet the allegations in the First Claim for Relief are directed against "Defendants" collectively without stating what facts give rise to a claim against each of them.  *See id*. at 1332 ("[T]here is the relatively rare sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against.").  Failure to identify which of the plaintiffs are bringing the claim is equally problematic. *See Galaxy American, Inc. v. Cuccineilli*, No. 2:21-cv-43, 2021 WL 2828857, *1 (M.D. Fla. Feb. 2, 2021) ("Plaintiffs have filed a four-count Complaint … which is a shotgun pleading that fails to clearly identify which plaintiff is proceeding in which count."); *Worldspan Marine, Inc. v. Comerica Bank*, No. 18-21924-CIV, 2019 WL 2267262, *4 (S.D. Fla. Feb. 22, 20219) ("Another deficiency of the Complaint is that while there are three named Plaintiffs and six named Defendants, the Complaint impermissibly groups together the Plaintiffs and the Defendants, failing to distinguish which Plaintiffs assert which claims against the specific Defendants, and how each Plaintiff has been injured by the respective conduct."); *Marrero v. Benetiz*, 17-CV-21026,

2017 WL 7796341, *4 (S.D. Fla. Aug. 3, 2017) ("Throughout their Amended Complaint, Plaintiffs impermissibly group together the Plaintiffs and the Defendants and fail to allege which Plaintiffs are bringing the claims against the specific Defendants and how each Plaintiff has been injured by Defendants' conduct.").

The First Claim for Relief provides no roadmap as to any purported claim and would require the court and the defendants to engage in a largely unguided scavenger hunt throughout the entirety of the First Amended Complaint for factual allegations that might potentially support a claim by some of the plaintiffs against one or more of the defendants. It is a core gatekeeping function of the court to guard against such an exercise. *See Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1359 n.9 (11th Cir. 1997) ("Many of the factual allegations appear to relate to only one or two counts, or to none of the counts at all. Thus, a reader of the complaint must speculate as to which factual allegations pertain to which count."); *Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001) ("The result is that … any allegations that are material are buried beneath innumerable pages of rambling irrelevancies.").[1]

### B.    Second Claim for Relief

The Second Claim for Relief purports to state another claim under the ATA and suffers the same maladies as the First Claim for Relief, *i.e.*, it purports to incorporate all of the previously stated factual allegations spanning more than 300 prior paragraphs (*see* Doc. 84 at p. 109, ¶ 342) into one or more claims asserted by the plaintiffs collectively against the defendants collectively— without providing any guidance as to what any one of the defendants individually did to give rise to a claim by any one of the plaintiffs individually. The Second Claim for Relief in fact

---

[1] It should be noted that the First Claim for Relief cites to the provision of the ATA that recognizes primary liability claims, 18 U.S.C. § 2333(a), while also referring to the provision of the ATA that recognizes secondary liability claims for aiding and abetting, 18 U.S.C. § 2333(d). The plaintiffs since have clarified that only secondary liability claims were intended. (*See* Doc. 99 at pp. 68).

accomplishes the difficult task of providing <u>less</u> detail than the First Claim for Relief in that regard. <u>No factual averments are made at all</u>, and the only additional paragraph contains the wholly conclusory allegation that "[b]y knowingly conspiring with Hamas and PIJ to facilitate its operations and in furtherance of their committing, planning, or authorizing acts of international terrorism, including acts that caused the Plaintiffs to be injured in his or her person and property, and aiding one another in doing so, the Defendants are liable pursuant to 18 U.S.C. § 2333(a) and (d)." (*Id*. at ¶ 343).

Even worse, the Second Claim for Relief—as all other purported claims coming after it— adopts all preceding allegations in direct contravention of Eleventh Circuit precedent:

> The second and third amended complaints are quintessential "shotgun" pleadings. <u>The typical shotgun complaint contains several counts, each one incorporating by reference the allegations of its predecessors, leading to a situation where most of the counts (i.e., all but the first) contain irrelevant factual allegations and legal conclusions.</u>  Consequently, in ruling on the sufficiency of a claim, the trial court must sift out the irrelevancies, a task that can be quite onerous.  In this case, the proposed third amended complaint contains 127 paragraphs (six more than the second amended complaint) and nine counts, with each count incorporating by reference every paragraph that precedes it.

*Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp*., 305 F.3d 1293, 1295-96 (11th Cir. 2002) (emphasis added); *see also Weiland*, 792 F.3d at 1321-22 (explaining that the "mortal sin of re-alleging all preceding counts" results in "a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint") (citations omitted); *Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1279 (11th Cir. 2006) ("Shotgun pleadings are those that incorporate every antecedent allegation by reference into each subsequent claim for relief … .") (citing *Magluta*, 256 F.3d at 1284).  Because the court cannot reasonably ascertain the basis for any claim by any of the plaintiffs against any of the defendants

without speculation, the Second Claim for Relief fails to satisfy the applicable pleading standard. *See Sledge v. Goodyear Dunlop Tires N. Am., Ltd.*, 275 F.3d 1014, 1018 n. 8 (11th Cir. 2001) ("The failure of the plaintiff to identify his claims with sufficient clarity to enable the defendant to frame a [responsive] pleading constitutes shotgun pleading.").[2]

### C.  Third Claim for Relief

The Third Claim for Relief, which purports to assert an additional claim under the ATA, can be addressed in short shrift for the reasons previously discussed at greater length, *i.e.*, it improperly incorporates all preceding legal and factual averments, it fails to distinguish among the plaintiffs or the defendants, and it is conclusory.  For example, the plaintiffs have included averments that "[w]ithout the material support of the Defendants, Hamas and PIJ would have been far less able to recruit, train, equip and deploy their armed terrorist forces against civilians in Israel including Plaintiffs" (*see* Doc. 84 at p. 110, ¶ 345) and that "[b]y committing violations of 18 U.S.C. § 2339A that have caused the Plaintiffs to be injured in his or her person, business or property, and aiding one another in doing so, Defendants are liable pursuant to 18 U.S.C. § 2333 … " (*see id*. at ¶ 346) but fail to include any factual allegations that would render such averments plausible.  Moreover, the Third Claim for Relief appears to assert <u>primary</u> liability against the defendants—even though the plaintiffs later disavowed any intent to assert such a claim. (*See* Doc. 99 at p. 68).

### D.  Fourth Claim for Relief

The Fourth Claim for Relief warrants even less discussion at this point, as it too purports to asset another claim under the ATA using the same flawed pleading style and again appears to be seeking primary liability.

---

[2]  The Second Claim for Relief also references both primary and secondary liability provisions of the ATA and thus should be clarified by amendment.

### E.   Fifth Claim for Relief

In the Fifth Claim for Relief, the plaintiffs seek recovery under the Alien Tort Statute (the "ATS"), 28 U.S.C. § 1350.  (*See* Doc. 84 at p. 111).  The ATS vests federal courts with jurisdiction over "any civil action by an alien for a tort … committed in violation of the law of nations or a treaty of the United States."  28 U.S.C. § 1350.  "To state a claim for relief under the ATS, a plaintiff must (1) be an alien (2) suing for a tort (3) committed in violation of the law of nations."  *Mamani*, 654 F.3d at 152-53.  Put most simply, "the ATS 'enable[s] federal courts to hear claims in a very limited category defined by the law of nations and recognized at common law.'"  *Sosa v. Alvarez-Machain*, 542 U.S. 692, 712 (2004).

The first filter conclusively eliminates claims brought by persons other than those meeting the statutory definition of "alien," *i.e.*, "any person not a citizen or national of the United States."  18 U.S.C. § 1101(a)(3).  Just as with the plaintiffs' purported claims under the ATA, however, the Fifth Claim for Relief makes no effort to distinguish which persons among the plaintiffs are attempting to proceed under the ATS.  Nor does the Fifth Claim for Relief provide any factual context as to what conduct by the defendants allegedly gives rise to liability—much less make any distinction among the defendants.  To the contrary, the only references to the defendants within the Fifth Claim for Relief are collective and conclusory:

> 351.   Defendants' violation of 18 U.S.C. § 2333(A) AND (D), 18 U.S.C. § 2339A, 18 U.S.C. § 2333, 18 U.S.C. § 2339B(a)(1), and 18 U.S.C. § 2333(a) constituted a violation of United States law as well as international treaties to which the United States is subject.

> 352.    Defendants are also liable under aiding and abetting liability under Articles 2.5(a)and Article 2.5(c)(ii) because Hamas and PIJ committed acts prohibited by the International Convention for the Suppression of the Financing of Terrorism, which recognizes aiding and abetting liability, and Defendants participated in those acts as accomplices (Article 2.5(a)).

> \*\*\*

10

356.     As a consequence of such violation, Defendants, together and individually, have caused damage to the Plaintiffs and are therefore civilly liable to Plaintiffs for their injuries for threefold any and all damages that Plaintiffs have sustained as a result of such injuries, and the costs of this suit, including attorney's fees, pursuant to the Alien Tort Statute.

(Doc. 84 at p. 111, ¶¶ 351-52).  Not only that, the Fifth Claim for Relief "repeats and realleg[s]" each of the foregoing allegations"—all 349 prior paragraphs and 4 prior claims for relief— "with the same force and effect as if more fully set forth herein."  (*Id*. at p. 111, ¶ 350).  And there is inconsistency (or, at a minimum, lack of clarity) in the record as to the predicate offenses upon which any ATS claim is based.

### E.     Sixth Claim for Relief

Finally, the Sixth Claim for Relief is styled "Negligence/Wantonness" and appears to arise under the common law.  (*See* Doc. 84 at p. 113).  But no notice is given as to what jurisdiction's common law is being invoked.  In their briefing, the plaintiffs and the defendants both address the Sixth Claim for Relief as if it arises under Alabama common law.  However, such supposition is not supported by the face of the allegations.  Nor is it supported by Alabama choice of law provisions, which for tort claims generally look to the law of the jurisdiction where injury occurred.  *See Ex parte U.S. Bank Nat. Ass'n*, 148 So. 3d 1060, 1069 (Ala. 2014) ("*Lex loci delicti* has been the rule in Alabama for almost 100 years.  Under this principle, an Alabama court will determine the substantive rights of an injured party according to the law of the state where the injury occurred."); *see also Romero v. Drummond Co., Inc.*, 552 F.3d 1303, 1319 (11th Cir. 2008) ("The plaintiffs should have known that they would need to plead tort claims under Colombian law [instead of Alabama law] because their injuries occurred in Colombia."); *RJR Nabisco, Inc. v. European Cmty.*, 579 U.S. 325, 351 (2016) (observing that "a court will ordinarily 'apply *foreign* law to determine the tortfeasor's liability' to 'a plaintiff injured in a

foreign country'") (citing *Sosa*, 542 U.S. at 705-06 (explaining that jurisdictions adhering to *lex loci delicti* "generally appl[y] the law of the place where the injury occurred": "For a plaintiff injured in a foreign country, then, the presumptive choice in American courts under the traditional rule would have been to apply foreign law to determine the tortfeasor's liability.")). Because the Sixth Claim for Relief fails to distinguish between the plaintiffs, it is unclear where each injury is alleged to have occurred and thus what common law is to be applied.

The Sixth Claim for Relief further is deficient in that it undertakes to combine two distinct legal theories into a single count. *Weiland*, 792 F.3d at 1323 (citations omitted) (discussing "the sin of not separating into a different count each cause of action or claim for relief"); *see also Barmapov*, 986 F.3d at 1325 (acknowledging that a shotgun pleading is one that "does not separate 'each cause of action or claim for relief' into a different count"). And again, the plaintiffs have rolled all prior allegations and counts into the Sixth Claim for Relief while also making no distinction among the defendants' respective conduct.

## IV.     Conclusion

"The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland*, 792 F.3d at 1323 (citations omitted). It is substance, not volume, that controls the analysis—a principle endorsed by the Rule 8(a) call for a "short and plain statement." *See* Fed. R. Civ. P. 8(a)(2) (emphasis added).

Because "[s]uch pleadings divert already stretched judicial resources into disputes that are not structurally prepared to use those resources efficiently," *Wagner*, 464 F.3d at 1279, the Eleventh Circuit has "condemned shotgun pleadings time and again," *see Jackson v. Bank of Am., N.A.*, 898 F.3d 1348, 1357 (11th Cir. 2018), and has instructed lower courts "to prevent [a] case from proceeding beyond the pleadings until the issues are reasonably

well defined," *see Johnson Enters. of Jacksonville, Inc. v. FPL Group, Inc*., 62 F.3d 1290, 1332-33 (11th Cir. 1998).  *See also Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1294 (11th Cir. 2018) ("Courts in the Eleventh Circuit have little tolerance for shotgun pleadings.").

As set out above, it cannot reasonably be denied that the First Amended Complaint falls within one or more of the offending "shotgun pleading" categories:

> The complaint is a quintessential "shotgun" pleading of the kind we have condemned repeatedly, beginning at least as early as 1991.  It is in no sense the "short and plain statement of the claim" required by Rule 8 of the Federal Rules of Civil Procedure.  Fed. R. Civ. P. 8(a)(2).  It is fifty-eight pages long.  It names fourteen defendants, and all defendants are charged in each count.  The complaint is replete with allegations that "the defendants" engaged in certain conduct, making no distinction among the fourteen defendants charged, though geographic and temporal realities make plain that all of the defendants could not have participated in every act complained of.  Each count incorporates by reference the allegations made in a section entitled "General Factual Allegations"—which comprises 146 numbered paragraphs—while also incorporating the allegations of any count or counts that precede it. The result is that each count is replete with factual allegations that could not possibly be material to that specific count, and that any allegations that are material are buried beneath innumerable pages of rambling irrelevancies. This type of pleading completely disregards Rule 10(b)'s requirement that discrete claims should be plead in separate counts, *see Anderson v. Dist. Bd. of Tr*., 77 F.3d 364, 366-67 (11th Cir. 1996), and is the type of complaint that we have criticized time and again.  *See, e.g., BMC Indus., Inc. v. Barth Indus., Inc.*, 160 F.3d 1322, 1326-27 n. 6 (11th Cir. 1998); *GJR Invs., Inc.*, 132 F.3d at 1368; *Pelletier v. Zweifel*, 921 F.2d 1465, 1518-19 (11th Cir. 1991).

*Magluta*, 256 F.3d 1282 at 1284; *see also Chudasama*, 123 F.3d at 1359 n.4.

"When faced with a shotgun pleading, a district court must order a litigant to replead and to make a more definite statement of the claim.  …  When the amended complaint still fails to cure the deficiency, the complaint may be subject to dismissal."  *Boatman v. Sawyer*, No. 20-12189, 2021 WL 4702578, *2 (11th Cir. Oct. 7, 2021) (citing *Byrne v. Nezhat*, 261 F.3d 1075, 1133 (11th Cir. 2001), *abrogated on other grounds by Douglas Asphalt Co. v. QORE, Inc.*, 657 F.3d 1146 (11th Cir. 2011)).  Accordingly, it is hereby **ORDERED** that the relevant

portions of the motions to dismiss filed by Changpeng Zhao (*see* Doc. 89 & Doc. 90 at p. 18), Binance Holding, Limited (*see* Doc. 92 at p. 18), and BAM Trading Services, Inc. (*see* Doc. 93 at p. 19) asserting "shotgun pleading" as a basis for dismissal will be construed as motions for more definite statement pursuant to Rule 12(e) of the Federal Rules of Civil Procedure and are hereby **GRANTED** to that extent.

It is further **ORDERED** that the plaintiffs must submit a Second Amended Complaint no later than **April 10, 2026** that complies with Rules 8(a) and 10(b) of the Federal Rules of Civil Procedure and the following specific instructions:

a. the Second Amended Complaint must contain sufficient factual allegations to make out a prima facie case of personal jurisdiction as to each defendant;

b. the Second Amended Complaint must be set out in numbered paragraphs, with each being limited as far as practicable to a specific set of circumstances;

c. the Second Amended Complaint must clearly identify all federal, state, and foreign causes of action being asserted;

d. the Second Amended Complaint must set out legal claims in separate counts that assert only one claim against one defendant in each count, must identify the defendant against whom/which each count is aimed, and must contain sufficient factual allegations in each count to state a plausible claim against the designated defendant on the asserted legal theory;

e. the Second Amended Complaint must set out the true identity of each plaintiff or be accompanied by a motion to proceed anonymously and also must identify each plaintiff in both the caption and the body;[3]

---

[3] The caption and body of the First Amended Complaint contain what appear to be pseudonyms. But Rule 10(a) of the Federal Rules of Civil Procedure requires an action to be prosecuted in the true name of the real parties in interest. If any of the plaintiffs desire to proceed anonymously, they must so request by motion and make the required legal showing. *See, e.g., Doe v. Frank*, 951 F.2d 320, 323 (11th Cir. 1992) ("The ultimate test for permitting a plaintiff to proceed anonymously is whether the plaintiff has a substantial privacy right which outweighs the 'customary and constitutionally-embedded presumption of openness in judicial proceedings.'") *see also Chiquita Brands Int'l, Inc.*, 965 F.3d 1238, 1242 (11th Cir. 2020) (listing factors for

f.   the Second Amended Complaint must clearly identify which plaintiffs are asserting each claim against the designated defendant in each count and must include sufficient information to show such plaintiffs' status to assert the claim;

g.   the Second Amended Complaint must contain factual allegations about each defendant's conduct (*i.e.*, what actions each defendant took that constitute the claims being asserted) and must clearly indicate which factual allegations provide support for which claims by which plaintiffs against which defendants;

h.   the Second Amended Complaint must draw emphasis to allegations that reflect upon the defendants' knowledge and intent regarding terror groups generally, Hamas/PIJ, and/or the October 7, 2023 attack specifically;

i.   the Second Amended Complaint must draw emphasis to allegations that connect each defendant's conduct to the alleged injuries and damages;

j.   the Second Amended Complaint must draw emphasis to allegations of any particular transactions made by any defendant or using any defendant's platform that relate to terror groups generally, to Hamas/PIJ, and/or to the October 7, 2023 attack specifically;

k.   the Second Amended Complaint must draw emphasis to allegations of conduct that reflect an agreement by each defendant that relates to terror groups generally, to Hamas/PIJ, and/or to the October 7, 2023 attack specifically;

l.   the Second Amended Complaint must draw emphasis to allegations of special treatment or affirmative acts committed by each defendant toward terror groups generally and/or Hamas/PIJ specifically;

m.   the Second Amended Complaint must draw emphasis to allegations of conduct that touches and concerns the United States and must clearly identify all predicate offenses being relied upon to meet any necessary requirements of a particular claim;

n.   the Second Amended Complaint must include sufficient factual allegations to render plausible any alter ego/veil piercing theory that is asserted to impose liability against any defendant;

o.   the Second Amended Complaint must omit claims that cannot be plausibly stated at this stage;

---

consideration).  The plaintiffs additionally should ensure that the persons identified in the caption correspond to the persons identified within the body of the amendment.

p.  the Second Amended Complaint must only include claims that are asserted on behalf of plaintiffs who could be legally entitled to recover under the specific theory asserted and that name a defendant who could be subject to liability under the specific theory asserted;

q.  the Second Amended Complaint must exclude all generalized and immaterial facts, statements, and allegations not specifically related to the asserted claims for relief;

r.  the Second Amended Complaint must not incorporate by reference any legal averments from an earlier count into a subsequent count;

s.  the Second Amended Complaint must contain a demand for relief as to each count asserted against each defendant; and

t.  the Second Amended Complaint must be executed by counsel consistent with Rule 11(c) of the Federal Rules of Civil Procedure.[4]

In short, the Second Amended Complaint should use simple, concise, and direct allegations establishing plausible claims by specified plaintiffs against specified defendants and be sufficient to "give the defendant[s] fair notice of what [each] ... claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (internal quotation marks and citation omitted); *see also Edge v. Daechang Seat Corp. USA*, No. 3:23-cv-684, 2024 WL 1321072, *1 (M.D. Ala. Mar. 27, 2024)

---

[4] Rule 11 provides in part:

By presenting to the court a pleading, written motion, or other paper – whether by signing, filing, submitting, or later advocating it – an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
(1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; [and]
(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery;
***

Fed. R. Civ. P. 11(b).  A failure to adhere to Rule 11 can lead to the imposition of sanctions against the offending attorney or party, including monetary sanctions.  *See* Fed. R. Civ. P. 11(c).

("But if the facts in the complaint 'do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "shown"—"that the pleader is entitled to relief,"' and the complaint must be dismissed.") (citations omitted).

All of the pending motions to dismiss (Docs. 89, 91, & 93) otherwise are hereby **DENIED WITHOUT PREJUDICE**, and the defendants shall be permitted to reassert all applicable arguments as appropriate in response to the Second Amended Complaint.  In drafting the Second Amended Complaint, the plaintiffs should be mindful (1) of the need to eliminate "shotgun pleading" characteristics of the First Amended Complaint, (2) of the core requirement to set out "a short and plain statement of [each] claim showing that the pleader is entitled to relief," *see* Fed. R. Civ. P. 8(a)(2), and (3) of those grounds for dismissal raised by the defendants that could potentially be reasserted.  The plaintiffs likewise should be mindful of the obligations and limitations imposed under Rule 11.  Absent extraordinary circumstances, the plaintiffs will not be afforded any additional opportunity to amend their allegations in response to renewed motions to dismiss.  Nor will the plaintiffs be permitted to amend their allegations through briefing. *See Burgess v. Religious Tech. Ctr., Inc*., 600 F. App'x 657, 665 (11th Cir. 2015) ("We repeatedly have held that plaintiffs cannot amend their complaint through a response to a motion to dismiss."); *Kuhn v. Thompson*, 304 F. Supp. 2d 1313, 1321 (M.D. Ala. 2004) ("It is axiomatic that a plaintiff cannot amend the complaint by arguments of counsel made in opposition to a motion to dismiss.").

**The plaintiffs are hereby cautioned that failure to file a Second Amended Complaint meeting the requirements of the Federal Rules of Civil Procedure and this Order may result in a recommendation that the action be dismissed.  The plaintiffs further are cautioned that the only issues before the court will be those raised in the Second Amended Complaint and that they will not be permitted to rely upon any allegations or claims from either**

17

**the Complaint or the First Amended Complaint that are not specifically included within the Second Amended Complaint**. *See Dresdner Bank AG v. M/V Olympia Voyager*, 463 F.3d 1210, 1215 (11th Cir. 2006) ("An amended pleading supersedes the former pleading; 'the original pleading is abandoned by the amendment, and is no longer a part of the pleader's averments against his adversary.'") (citation omitted).

Suffice it to say that the undersigned shares the parties' likely frustrations with having to engage in a new beginning after reaching this depth in the proceedings. But the procedural rules simply do not permit the fallout from deficiently pleaded claims to be foisted upon the courts. To allow this action to proceed on the First Amended Complaint as is would not just risk—but would expressly invite—the type of adverse consequences warned of by the Eleventh Circuit:

> If the trial judge does not quickly demand repleader, all is lost—extended and largely aimless discovery will commence, and the trial court will soon be drowned in an uncharted sea of depositions, interrogatories, and affidavits. Given the massive record and loose pleadings before it, the trial court, whose time is constrained by the press of other business, is unable to squeeze the case down to its essentials; the case therefore proceeds to trial without proper delineation of issues, as happened here. An appeal ensues, and the court of appeals assumes the trial court's responsibility of sorting things out. The result is a massive waste of judicial and private resources; moreover, "the litigants suffer, and society loses confidence in the court[s'] ability to administer justice." *Ebrahimi v. City of Huntsville Bd. of Educ.*, 114 F.3d 162, 165 (11th Cir. 1997).

> We recognize the time pressures that the federal district courts face because of crowded dockets; it is much easier in the short term to permit shotgun pleadings—in the hope that the parties will settle their dispute … . In the long term, however, the judicial work that results from shotgun pleading is far more time consuming than the work required up front to prevent the case from proceeding beyond the pleadings until the issues are reasonably well defined. <u>As we have previously stated, and state once again, district courts have the power and the duty to define the issues at the earliest stages of litigation</u>. *See Ebrahimi*, 114 F.3d at 165 (11th Cir. 1997); *Fikes*, 79 F.3d at 1082-83 & n. 6 (11th Cir. 1996); *Anderson v. District Bd. of Trustees of Cent. Fla. Community College*, 77 F.3d 364, 367 n. 5 (11th Cir. 1996).

*Johnson,* 162 F.3d at 1332-33 (emphasis added).  Stated differently, the court cannot further burden the limited resources of the judiciary to accomplish what the Federal Rules of Procedure have placed squarely upon the plaintiffs.

The underlying harm here is serious; the allegation that the defendants are implicated is serious; the potential liability the plaintiffs seek to impose is serious; and the weight upon the court is serious.  The operative pleading thus must demonstrate a commensurate level of seriousness before the action will be permitted to proceed.

**DONE** this the 11th day of March 2026.

**CHAD W. BRYAN**
**UNITED STATES MAGISTRATE JUDGE**