**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | |
|---|---|
| NOACH NEWMAN, et al., | |
| Plaintiffs, | |
| v. | Case No. 2:24-cv-00134-ECM-CWB |
| BAM TRADING SERVICES INC. d/b/a BINANCE.US, et al., | **ORAL ARGUMENT REQUESTED** |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF
MR. CHANGPENG ZHAO'S MOTION TO DISMISS
<u>PLAINTIFFS' SECOND AMENDED COMPLAINT</u>**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ......................................................................................... iii

PRELIMINARY STATEMENT ....................................................................................1

FACTUAL BACKGROUND ..........................................................................................3

PROCEDURAL BACKGROUND...................................................................................6

ARGUMENT .................................................................................................................7

I.     The SAC Should Be Dismissed with Prejudice for Failure to Comply with the Federal Rules and the Court's Repleading Order. ...............................................7

II.    The SAC Does Not Plead that the Entity Defendants Are Mr. Zhao's Alter Egos. ..........12

       A.    Plaintiffs Fail to Plead a Basis for Alter Ego Under Alabama Law ......................13

           1.    The SAC Fails to Allege BHL Is Mr. Zhao's Alter Ego Under Alabama Law. ...................................................................................14

           2.    The SAC Fails to Allege BAM Is Mr. Zhao's Alter Ego Under Alabama Law. ...................................................................................16

       B.    Plaintiffs Fail to Plead a Basis for Alter Ego Under Cayman Law. ......................18

       C.    Plaintiffs Fail to Claim a Basis for Alter Ego Under Delaware Law.....................19

III.    The SAC Should Be Dismissed with Prejudice Under Rule 12(b)(2) Because the Court Lacks Personal Jurisdiction Over Mr. Zhao. ...........................................20

       A.    Rule 4(k)(2) Cannot Serve as a Basis for Personal Jurisdiction Because Mr. Zhao Was Not Served Nor Have Plaintiffs Filed a Waiver of Service.................20

       B.    The SAC Fails to Plead Any Conduct by Mr. Zhao Sufficient to Establish Personal Jurisdiction. ........................................................................................21

           1.    The SAC Pleads No Allegations About Mr. Zhao that Establish Personal Jurisdiction. ...............................................................................22

            2.    The SAC Pleads No Allegations About BHL that Establish Personal Jurisdiction Over Mr. Zhao.......................................................................25

IV.    The SAC Should Be Dismissed with Prejudice Under Rule 12(b)(6) for Failing to State a Claim Against Mr. Zhao. ...................................................................26

i

A.      Plaintiffs Fail to State a JASTA Claim Against Mr. Zhao. ...................................26

      1.      Plaintiffs Fail to State a Claim Against Mr. Zhao for Aiding and Abetting Under JASTA (Claim III). ..........................................................26

      2.      Plaintiffs Fail to State a Claim Against Mr. Zhao for Conspiracy Under JASTA (Claim VI). ..........................................................................35

B.      Plaintiffs Fail to State a Claim Against Mr. Zhao for Aiding and Abetting Under the ATS (Claim VIII). ...................................................................37

CONCLUSION.....................................................................................................................43

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abagninin v. AMVAC Chem. Corp.*,
  545 F.3d 733 (9th Cir. 2008) ............................................................................. 41

*Aldana v. Del Monte Fresh Produce, N.A., Inc.*,
  416 F.3d 1242 (11th Cir. 2005) .................................................................. 38, 41

*Allen v. Cypress Village, Ltd.*,
  No. 3:10-CV-994-WKW, 2011 WL 1667055 (M.D. Ala. May 3, 2011) ................................... 8

*Amorosa v. Gen. Elec. Co.*,
  No. 21-CV-3137 (JMF), 2022 WL 3577838 (S.D.N.Y. Aug. 19, 2022) ................................. 11

*Asahi Metal Indus. Co. v. Superior Ct. of Cal., Solano Cnty.*,
  480 U.S. 102 (1987) ......................................................................................... 22

*Ashley v. Deutsche Bank Aktiengesellschaft*,
  144 F.4th 420 (2d Cir. 2025) ....................................................................... 29, 32

*Atchley v. AstraZeneca UK Ltd.*,
  165 F.4th 592 (D.C. Cir. 2026) ........................................................................ 29

*Averbach v. Cairo Amman Bank*,
  No. 19-cv-0004-GHW-KHP, 2022 WL2530797 (S.D.N.Y. Apr. 11, 2022) ........................... 16

*Bartlett v. Societe Generale de Banque au Liban SAL*,
  No. 19-CV-00007, 2024 WL 5497906 (E.D.N.Y. Sept. 18, 2024) ..................................... 25

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ......................................................................................... 32

*Bernhardt v. Islamic Republic of Iran*,
  47 F.4th 856 (D.C. Cir. 2022) ........................................................................... 36

*Bernhardt v. Islamic Republic of Iran*,
  No. 18-2739, 2020 WL 6743066 (D.D.C. Nov. 16, 2020) ............................... 23, 25, 35

*Bonner v. City of Prichard, Ala.*,
  661 F.2d 1206 (11th Cir. 1981) ......................................................................... 13

*Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*,
  582 U.S. 255 (2017) ......................................................................................... 21

*Cabello v. Fernandez-Larios*,
   402 F.3d 1148 (11th Cir. 2005) ................................................................................. 43

*Cain v. Twitter, Inc.*,
   No. 17-cv-2506, 2018 WL 4657275 (N.D. Cal. Sept. 24, 2018)................................. 35

*Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*,
   511 U.S. 164 (1994) .................................................................................................... 39

*Childs v. Pommer*,
   348 So. 3d 379 (Ala. 2021).......................................................................................... 14

*City of Monroe Emps. Ret. Sys. v. Bridgestone Corp.*,
   399 F.3d 651 (6th Cir. 2005) ....................................................................................... 25

*Co-Ex Plastics, Inc. v. Alappat, Inc.*,
   536 So. 2d 37 (Ala. 1988)............................................................................................ 13

*Colonial BancGroup Inc. v. PricewaterhouseCoopers LLP*,
   No. 11-746, 2017 WL 8890271 (M.D. Ala. Dec. 28, 2017) ....................................... 15

*Comeens v. HM Operating, Inc.*,
   No. 14-521, 2014 WL 12650102 (N.D. Ala. Dec. 1, 2014) ........................................ 13

*Consol. Dev. Corp. v. Sherritt, Inc.*,
   216 F.3d 1286 (11th Cir. 2000) ................................................................................... 22

*Daimler AG v. Bauman*,
   571 U.S. 117 (2014) .................................................................................................... 22

*Dent v. U.S. Tennis Ass'n, Inc.*,
   No. CV-08-1533 (RJD)(VVP), 2008 WL 2483288 (E.D.N.Y. June 17, 2008) ......................... 10

*DePaola v. Nissan N. Am., Inc.*,
   No. 1:04CV267-W, 2005 WL 2122265 (M.D. Ala. Aug. 29, 2005)........................................ 21

*Doe I v. Cisco Systems, Inc.*,
   73 F.4th 700 (9th Cir. 2023).................................................................................. 39, 43

*Doe v. Drummond Co.*,
   782 F.3d 576 (11th Cir. 2015) ..................................................................................... 40

*Env't Prot. Comm'n of Hillsborough Cnty. v. Mercedes-Benz USA, LLC*,
   No. 8:20-CV-2238-VMC-MRM, 2022 WL 4355666 (M.D. Fla. Sept. 20, 2022).................... 10

*Estate of Amergi v. Palestinian Auth.*,
611 F.3d 1350 (11th Cir. 2010) .................................................................................... 40

*Euroboor B.V. v. Grafova*,
No. 17-cv-02157, 2021 WL 4325694 (N.D. Ala. Sept. 23, 2021) ............................................ 13

*Ex parte Garland*,
71 U.S. 333 (1866) ....................................................................................................... 24

*Ex parte Puccio*,
923 So. 2d 1069 (Ala. 2005).......................................................................................... 14

*Facebook, Inc. v. K.G.S.*,
294 So. 3d 122 (Ala. 2019)............................................................................................ 24

*FDIC v. Milken*,
781 F. Supp. 226 (S.D.N.Y. 1991) ................................................................................. 25

*First Health, Inc. v. Blanton*,
585 So. 2d 1331 (Ala. 1991).......................................................................................... 16

*Freeman v. HSBC Holdings PLC*,
57 F.4th 66 (2d Cir. 2023) ............................................................................................ 36

*Fuld v. Palestine Liberation Org.*,
606 U.S. 1 (2025) ................................................................................................... 21, 22

*Geinko v. Padda*,
No. 00 C 5070, 2002 WL 276236 (N.D. Ill. Feb. 27, 2002) ...................................................... 11

*Gilbert v. James Russell Motors, Inc.*,
812 So. 2d 1269 (Ala. Civ. App. 2001)................................................................. 13, 14, 15, 17

*Gilford Motor Co. v. Horne*,
[1933] Ch 935 (C.A.).................................................................................................... 18

*Glob. Gaming Philippines, LLC v. Razon*,
No. 21-2655, 2022 WL 836716 (S.D.N.Y. Mar. 21, 2022)......................................................... 18

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
564 U.S. 915 (2011) ..................................................................................................... 21

*Halberstam v. Welch*,
705 F.2d 472 (D.C. Cir. 1983)................................................................................... 33, 34

*Harman v. Taurus Int'l Mfg., Inc.*,
   No. 3:21-CV-98, 2023 WL 2534622 (M.D. Ala. Mar. 15, 2023) ............................................. 13

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
   466 U.S. 408 (1984) ................................................................................................................. 21

*Herederos De Roberto Gomez Cabrera, LLC v. Teck Resources Ltd.*,
   43 F.4th 1303 (11th Cir. 2022) ............................................................................................... 22

*I Am Athlete, LLC v. IM EnMotive, LLC*,
   No. 2023-0332, 2023 WL 8933592 (Del. Ch. Dec. 27, 2023) ................................................. 20

*IBEW-NECA Local 505 Pension & Welfare Plans v. Smith*,
   No. 06-0455, 2008 WL 4067363 (S.D. Ala. Aug. 27, 2008) ................................................... 14

*In re Baan Co. Sec. Litig.*,
   245 F. Supp. 2d 117 (D.D.C. 2003) ......................................................................................... 24

*In re Bass*,
   No. 10-01101, 2011 WL 722384 (Bankr. W.D. Tex. Feb. 11, 2011) ....................................... 18

*In re Bulk [Extruded] Graphite Prods. Antitrust Litig.*,
   No. 02-6030, 2004 WL 7338471 (D.N.J. Oct. 28, 2004) ........................................................ 24

*In re Chiquita Brands Int'l, Inc. Alien Tort Statute & S'holder Derivative Litig.*,
   792 F. Supp. 2d 1301 (S.D. Fla. 2011) ................................................................................... 41

*In re Chiquita Brands Int'l, Inc.*,
   284 F. Supp. 3d 1284 (S.D. Fla. 2018) ................................................................................... 37

*In re Merrill Lynch &amp; Co., Inc. Rsch. Reps. Sec. Litig.*,
   218 F.R.D. 76, 79 (S.D.N.Y. 2003) ......................................................................................... 10

*In re Platinum & Palladium Commodities Litig.*,
   828 F. Supp. 2d 588 (S.D.N.Y. 2011) ..................................................................................... 10

*In re Rough Rice Commodity Litig.*,
   No. 11 C 618, 2012 WL 473091 (N.D. Ill. Feb. 9, 2012) ....................................................... 10

*In re South African Apartheid*,
   617 F. Supp. 2d 228 (S.D.N.Y. 2009) ..................................................................................... 43

*In re Terrorist Attacks on September 11, 2001*,
   714 F.3d 118 (2d Cir. 2013) ................................................................................................... 41

*In re Tyson*,
433 B.R. 68 (S.D.N.Y. 2010) ........................................................................... 18

*Jefferson Pilot Broadcasting Co. v. Hilary & Hogan, Inc.*,
617 F.2d 133 (5th Cir. 1980) .......................................................................... 13

*Jesner v. Arab Bank, PLC*,
584 U.S. 241 (2018) ....................................................................... 37, 38, 42

*Johns v. Bayer Corp.*,
No. 09CV1935 DMS (JMA), 2010 WL 476688 (S.D. Cal. Feb. 9, 2010) ............................... 10

*Johnson v. City of Atlanta*,
107 F.4th 1292 (11th Cir. 2024) ......................................................................... 3

*Johnson v. Georgia*,
661 F. App'x 578 (11th Cir. 2016) ...................................................................... 12

*Joseph v. Bernstein*,
612 F. App'x 551 (11th Cir. 2015) ....................................................................... 7

*Kaplan v. Lebanese Canadian Bank, SAL*,
405 F. Supp. 3d 525 (S.D.N.Y. 2019) ................................................................... 35

*Kelly v. Water Works*,
No. 2:24-CV-348-RAH-JTA, 2025 WL 1271298 (M.D. Ala. May 1, 2025) ............................ 12

*Kemper v. Deutsche Bank AG*,
911 F.3d 383 (7th Cir. 2018) ....................................................................... 35, 37

*Kindrick v. CMI Elecs., Inc.*,
No. 09-cv-169, 2012 WL 4344069 (M.D. Ala. Sept. 21, 2012) ....................................... 15

*King v. Habib Bank Ltd.*,
No. 20-CV-4322, 2022 WL 4537849 (S.D.N.Y. Sept. 29, 2022) ..................................... 25

*Kiobel v. Royal Dutch Petroleum Co.*,
569 U.S. 108 (2013) ....................................................................... 38, 39, 40

*Kozial v. Bombardier-Rotax GmbH*,
129 F. App'x 543 (11th Cir. 2005) ...................................................................... 25

*Lelchook v. Lebanese Canadian Bank*,
No. 18-cv-12401, 2024 WL 967078 (S.D.N.Y. Mar. 6, 2024) ...................................... 31

*Linder v. Portocarrero,*
   963 F.2d 322 (11th Cir. 1992) .................................................................................. 40

*Lipsky v. Commonwealth United Corp.*,
   551 F.2d 887 (2d Cir. 1976) .................................................................................... 10

*Madara v. Hall*,
   916 F.2d 1510 (11th Cir. 1990) ............................................................................... 21

*Maine State Ret. Sys. v. Countrywide Fin. Corp.*,
   No. 2:10-CV-0302 MRP, 2011 WL 4389689 (C.D. Cal. May 5, 2011) .................................... 11

*Mamani v. Berzain*,
   654 F.3d 1148 (11th Cir. 2011) ............................................................................... 37

*Messick v. Moring*,
   514 So. 2d 892 (Ala. 1987)...................................................................................... 17

*MicroStrategy Inc. v. Acacia Rsch. Corp.*,
   No. 5735, 2010 WL 5550455 (Del. Ch. Dec. 30, 2010).................................................... 19

*Nestlé USA, Inc. v. Doe*,
   593 U.S. 628 (2021) ............................................................................... 39, 40, 42

*Newman v. Associated Press*,
   758 F. Supp. 3d 1357 (S.D. Fla. 2024)........................................................................ 36

*Nye & Nissen v. United States*,
   336 U.S. 613 (1949) .............................................................................................. 27

*Ofisi v. BNP Paribas, S.A.*,
   278 F. Supp. 3d 84 (D.D.C. 2017)............................................................................. 35

*Oldfield v. Pueblo De Bahia Lora, S.A.*,
   558 F.3d 1210 (11th Cir. 2009) ............................................................................... 22

*Oxford Asset Mgmt., Ltd. v. Jaharis*,
   297 F.3d 1182 (11th Cir. 2002) ............................................................................... 33

*Raanan v. Binance Holdings Limited*,
   No. 24-cv-697 (JGK), 2025 WL 605594 (S.D.N.Y. Feb. 25, 2025) ...................................... 30

*S. Rsch. Inst. v. PAM Innovation Corp.*, No.,
   2020 WL 1433151 (N.D. Ala. Mar. 24, 2020) ............................................................... 14

*Scognamillo v. Credit Suisse First Bos. LLC*,
No. C03-2061 TEH, 2005 WL 8162733 (N.D. Cal. Feb. 1, 2005) ........................................... 10

*Shorter Bros., Inc. v. Vectus 3, Inc.*,
343 So. 3d 508 (Ala. 2021).................................................................................................... 13

*Siegel v. HSBC Holdings, PLC*,
283 F. Supp. 3d 722 (N.D. Ill. 2017)..................................................................................... 23

*Sinaltrainal v. Coca-Cola Co.*,
578 F.3d 1252 (11th Cir. 2009) .............................................................................................. 42

*Smith & Wesson Brands, Inc. v. Estados Unidos Mexicanos*,
605 U.S. 280 (2025) ................................................................................................... 28, 32, 33

*Sosa v. Alvarez-Machain*,
542 U.S. 692 (2004) .................................................................................... 38, 40, 41, 42

*Sprint Nextel Corp. v. iPCS, Inc.*,
No. 3746, 2008 WL 2737409 (Del. Ch. July 14, 2008) ............................................................. 19

*Stewart v. Bureaus Inv. Grp., LLC*, No.,
10-1019, 2015 WL 7572312 (M.D. Ala. Nov. 24, 2015)..................................................... 14, 15

*Tel-Oren v. Libyan Arab Republic*,
726 F.2d 774 (D.C. Cir. 1984)............................................................................................... 40

*Troell v. Binance Holdings Limited*,
No. 24-cv-7136, 2026 WL 636849 (S.D.N.Y. Mar. 6, 2026) ...........................................Passim

*Turner v. Williams*,
65 F.4th 564 (11th Cir. 2023) ............................................................................................ 9, 31

*Twitter, Inc. v. Taamneh*,
598 U.S. 471 (2023) .........................................................................................................Passim

*United States v. 51 Pieces of Real Prop., Roswell, N.M.*,
17 F.3d 1306 (10th Cir. 1994) ............................................................................................... 24

*United States v. Casaran-Rivas*,
311 F. App'x 269 (11th Cir. 2009).......................................................................................... 41

*United States v. Collins*,
966 F.2d 1214 (7th Cir. 1992) ............................................................................................... 36

*United States v. Swanson*,
  947 F.2d 914 (11th Cir. 1991) ..................................................................................... 24

*Wallace ex rel. Cencom Cable Income Partners II, L.P. v. Wood*,
  752 A.2d 1175 (Del. Ch. 1999) ................................................................................... 20

*Wultz v. Islamic Republic of Iran*,
  755 F. Supp. 2d 1 (D.D.C. 2010)................................................................................. 26

*Yu v. GSM Nation, LLC*,
  No. 12293-VCMR, 2017 WL 2889515 (Del. Ch. July 7, 2017) ................................. 19

*Zapata v. HSBC Holdings plc*,
  No. 1:16-CV-030, 2017 WL 6939209 (S.D. Tex. Sept. 14, 2017)............................. 23

## Statutes

18 U.S.C. § 2333.................................................................................................... 1, 26, 42

28 U.S.C. § 1350.................................................................................................... 1, 37, 42

31 U.S.C. §§ 5311–5336................................................................................................... 4

Pub. L. No. 114-222, 130 Stat. 852 (2016).............................................................. 1, 33

## Rules

Fed. R. Civ. P. 4(k)(2).......................................................................... 20, 21, 22, 23

Fed. R. Civ. P. 8................................................................................................. 1, 7, 12

Fed. R. Civ. P. 10............................................................................................... 1, 7, 9

Fed. R. Civ. P. 11...................................................................................................... 11

Fed. R. Civ. P. 12(b)(1).......................................................................................... 43

Fed. R. Civ. P. 12(b)(2).......................................................................................... 20

Fed. R. Civ. P. 12(b)(6).................................................................................... 3, 26, 43

Pursuant to Federal Rules of Civil Procedure ("Rules") 8, 10, and 12, Defendant Changpeng Zhao submits this memorandum of law in support of his motion to dismiss the Second Amended Complaint ("SAC") brought by Plaintiffs against him, Binance Holdings Limited ("BHL"), and BAM Trading Services Inc. ("BAM," and together with BHL, "Entity Defendants," and collectively with Mr. Zhao, "Defendants") for claims brought under the Anti-Terrorism Act, 18 U.S.C. § 2333 ("ATA"), as amended by the Justice Against Sponsors of Terrorism Act, Pub. L. No. 114-222, 130 Stat. 852 (2016) ("JASTA"), and the Alien Tort Statute, 28 U.S.C. § 1350 ("ATS") related to the October 7, 2023 terrorist attacks ("Attacks") conducted by Hamas and the Palestinian Islamic Jihad ("PIJ").

## PRELIMINARY STATEMENT

Once again, Plaintiffs have filed a legally and factually deficient complaint that relies on conclusory statements, factual distortions, and group pleading rather than a short, plain statement of their claims. And, like Plaintiffs' two prior complaints, the SAC fails to plead any basis for personal jurisdiction or liability as to Mr. Zhao. In March, the district court for the Southern District of New York dismissed nearly identical claims—based on the same Attacks, brought under the same legal theories, and against the same Defendants—because the complaint "does not plausibly allege that Defendants culpably associated themselves with these terrorist attacks, participated in them as something they wanted to bring about, or sought by their actions to ensure their success," as is necessary to establish liability. *Troell v. Binance Holdings Limited*, No. 24-cv-7136, 2026 WL 636849, at *15 (S.D.N.Y. Mar. 6, 2026). So too here.

To begin, the SAC fails to follow this Court's instructions on filing a complaint that complies with Rules 8, 10, and 11. Plaintiffs' claims should be dismissed for this reason alone. Among other things, the SAC continues to resort to group pleading and make broad conclusory

allegations about "Defendants." As purported cover, the SAC asserts that the Defendants are all alter egos of one another. But the SAC provides no basis for an alter ego theory because, as the SAC readily acknowledges, both Entity Defendants run robust, legitimate businesses, each with their own employees, and leadership apart from Mr. Zhao.

As for the scant allegations about Mr. Zhao specifically, they do not assert that he funded, supported, or had any relationship with Hamas or PIJ. Instead, Plaintiffs' case against him rests entirely on allegations that, as BHL's CEO, Mr. Zhao (a foreign defendant) sought to retain certain U.S. customers on BHL without implementing a fully adequate anti-money laundering ("AML") program at the company. However, the SAC does not plausibly plead that these U.S. customers were members of Hamas or PIJ, transferred funds to either group, or had any connection at all to the Attacks. Without alleging a connection between Mr. Zhao's alleged U.S.-based conduct and their injuries, there is no basis for personal jurisdiction.

Nor does the SAC plead a basis for liability. In *Twitter, Inc. v. Taamneh*, 598 U.S. 471 (2023), the Supreme Court affirmed that JASTA aiding-and-abetting liability carries "twin requirements" of knowing and substantial assistance to a specific terrorist group for its execution of the particular attack that injured the plaintiff. That is not pleaded here. There is no nexus between Mr. Zhao's business decisions (which Plaintiffs conceded were made for purely economic reasons) and the Attacks. Nor is there any plausible allegation that Mr. Zhao—recognized by another district court judge as "a dedicated family man" committed to philanthropic and charitable deeds—consciously participated in Hamas' and PIJ's abhorrent attack "to help it succeed," as *Twitter* requires. As in *Troell*, "this dooms the claim." *Troell*, 2026 WL 636849, at *21.

2

Plaintiffs' JASTA conspiracy claim fares no better. The SAC alleges no agreement among Mr. Zhao, Hamas, and PIJ at all, much less an agreement to commit the October Attack, which is required for this claim.

Plaintiffs' ATS aiding-and-abetting claim fails for myriad reasons. First, Plaintiffs' claim cannot displace the presumption against extraterritorial application of U.S. law. Mr. Zhao is a foreign defendant, his conduct—making business decisions for BHL—did not occur in the United States, and the Attacks took place in Israel by foreign actors. Supreme Court precedent is clear that this "foreign-cubed" claim falls outside the ATS' scope. Second, the Attacks are not one of the offenses originally contemplated under the ATS, and the SAC provides no grounds for this Court to exercise its discretion in recognizing a new kind of ATS claim, particularly where doing so would provide an end run around other federal law and trespass into the domain of the political branches by determining thorny issues, such as whether Gaza and Palestine are states and whether the Attacks are an act of "war." Because Plaintiffs plead no primary liability recognized by the ATS, they fail to plead secondary liability. Finally, whether any aiding-and-abetting cause of action even exists under the ATS is currently under review by the Supreme Court, which has narrowed the statute's scope at every opportunity. Regardless, secondary liability is not pleaded for the same reason it is not pleaded under JASTA.

For these reasons, Mr. Zhao respectfully requests that the Court dismiss all claims against him with prejudice.

## **FACTUAL BACKGROUND**

The SAC is largely comprised of recycled allegations from now-settled enforcement actions against one or more Defendants. *See Johnson v. City of Atlanta*, 107 F.4th 1292, 1300 (11th Cir. 2024) (when presented with a motion to dismiss pursuant to Rule 12(b)(6), the court

3

may also consider documents that are referenced in the complaint or that the plaintiffs relied on in bringing suit, without converting the motion into a motion for summary judgment).

In 2023, the U.S. Department of Justice ("DOJ") and Department of the Treasury brought charges against BHL related to alleged failures to adhere to certain AML and Know Your Customer ("KYC") obligations required under the Bank Secrecy Act, 31 U.S.C. §§ 5311–5336 ("BSA").[1]  The DOJ also charged Mr. Zhao with one count of failure to maintain an effective AML program at BHL.[2]  In addition to the DOJ and Treasury actions, the Commodity Futures Trading Commission ("CFTC") brought claims for alleged violations of the Commodity Exchange Act ("CEA"); the Securities and Exchange Commission ("SEC") brought claims for alleged violations of certain federal securities laws.[3]

By October 2023, BHL and Mr. Zhao were in the final stages of resolving the BSA-related claims.  During settlement, the government acknowledged that BHL, under Mr. Zhao's leadership, had "taken significant steps to remediate its AML and sanctions compliance programs," including, by May 2022, implementation of "full know your customer [KYC] requirements" for account holders.[4]  Ultimately, BHL accepted Mr. Zhao's resignation, and on November 21, 2023, he pleaded guilty to the single BSA count.[5]

---

[1] Plea Agreement at ¶ 2, *United States v. Binance Holdings Limited*, No. 23-cr-00178 (W.D. Wash. Nov. 21, 2023), ECF No. 23 ("DOJ BHL Agreement"); Consent Order Imposing Civil Money Penalty, *In re Binance Holdings Limited*, No. 2023-04 (FinCEN Nov. 21, 2023) ("FinCEN Consent Order"), https://www.fincen.gov/system/files/enforcement_action/2023-11-21/FinCEN_Consent_Order_2023-04_FINAL508.pdf; Settlement Agreement (OFAC Nov. 21, 2023) ("OFAC Settlement"), https://ofac.treasury.gov/system/files/2023-11/20231121_binance_settlement.pdf.

[2] Plea Agreement at ¶ 2, *United States v. Zhao*, No. 2:23-cr-00179 (W.D. Wash. Nov. 21, 2023), ECF No. 31 ("DOJ Zhao Agreement").

[3] Complaint, *CFTC v. Zhao,* No. 1:23-cv-01887 (N.D. Ill. Mar. 27, 2023), ECF No. 1 ("CFTC Complaint"); Complaint, *SEC v. Binance Holdings Limited,* No. 1:23-cv-01599 (D.D.C. June 5, 2023), ECF No. 1 ("SEC Complaint").

[4] *See, e.g.*, DOJ BHL Agreement at ¶¶ 8.f–g.

[5] *Id*. ¶ 8.f.xiii; DOJ Zhao Agreement at ¶ 2.  BHL separately resolved the Treasury actions the same day.  *See* FinCEN Consent Order; OFAC Settlement.

During Mr. Zhao's sentencing hearing, the court expressly found that there was "no evidence that [Mr. Zhao] explicitly was informed of any specific transaction, or a specific user transacted on Binance with criminal proceeds."[6]  The court also found "no evidence that [Mr. Zhao] was aware of suspicious circumstances, making it reasonable to believe such funds were processed, or proceeds of unlawful activities."[7]  The court recognized that Mr. Zhao had taken "extraordinary steps and significant steps, in terms of [his] level of cooperation with law enforcement, in their investigation."[8]  The court acknowledged Mr. Zhao as someone with "extraordinary commitments and dedication to philanthropic opportunities across the planet" and that the voluminous letters submitted on Mr. Zhao's behalf "paint a picture of a man driven . . . by [a] passion [for] technology and a drive to help people" and "a dedicated family man, and a giving person, as demonstrated by [his] charitable deeds."[9]  The court lauded Mr. Zhao's "hard work and vision" that grew BHL into an "extraordinary" success.[10]  After the DOJ and Treasury settlements, the CFTC action was settled by consent order, and the SEC dismissed its action against Defendants with prejudice.[11]

Recently, the current administration identified the above actions as part of an unjustified attack on the cryptocurrency industry and began taking steps to rectify unwarranted damage

---

[6] Sentencing Hr'g Tr. at 6:16–19, *United States v. Zhao*, No. 2:23-cr-00179 (W.D. Wash. May 3, 2024), ECF No. 93, attached to the Decl. of Ms. Joanna F. Wasick (May 26, 2026) as Ex. 1 ("Sentencing Hr'g Tr.").

[7] *Id.* at 6:20–23.

[8] *Id.* at 74:19–22.

[9] *Id.* at 29:13–15, 79:11–12, 16–18, 80:2–3.

[10] *Id.* at 80:16–20.

[11] *See* Consent Order for Permanent Injunction, Civil Monetary Penalty, and Other Equitable Relief Against Defendants Changpeng Zhao, Binance Holdings Limited, Binance Holdings (IE) Limited, and Binance (Services) Holding Limited, *CFTC v. Zhao*, No. 1:23-cv-01887 (N.D. Ill. Dec. 14, 2023) ("CFTC Consent Order"); Joint Stipulation to Dismiss and Releases, *SEC v. Binance Holdings Limited*, No. 1:23-cv-01599 (D.D.C. May 29, 2025), ECF No. 301 ("SEC Notice of Dismissal").

done.[12]  As part of that effort, on October 21, 2025, the President granted Mr. Zhao a full and unconditional pardon for his 2023 conviction.[13]  The White House explained that the President was "correcting the wrong" done by the prior administration, whose Department of Justice "abused and used" Mr. Zhao and "over-prosecuted" his case in its "war against the cryptocurrency industry."[14]  The White House emphasized that the case against Mr. Zhao included "no allegations of fraud or identifiable victims,"[15] and that "even the judge in the case said that the sentencing that the Biden administration was asking for was egregious and went too far."[16] The White House also stated that what Mr. Zhao was alleged by the government to have done "is not even a crime."[17]

## PROCEDURAL BACKGROUND

Plaintiffs filed this action in February 2024.  (ECF No. 1.)  Mr. Zhao was never served.  In May 2024, the parties stipulated that Mr. Zhao would waive objections to the absence of service for purposes of streamlining preliminary matters, provided that all defenses based upon lack of

---

[12] *See, e.g.*, Exec. Order No. 14,178, 90 Fed. Reg. 8,647 (Jan. 31, 2025) (establishing federal policy of protecting and promoting access to blockchain networks and banking services "without persecution"); Mem. from Todd Blanche, Deputy Att'y Gen., Dep't of Justice, to All Department Employees 1 (Apr. 7, 2025), https://www.justice.gov/dag/media/1395781/dl (stating that the DOJ "will stop participating in regulation by prosecution" in the digital asset industry and directing all federal prosecutors to "no longer pursue litigation or enforcement actions that have the effect of superimposing regulatory frameworks on digital assets" or "target virtual currency exchanges . . . for the acts of their end users or unwitting violations of regulations"); Release No. 9063-25, *Acting Chairman Pham Lauds DOJ Policy Ending Regulation by Prosecution of Digital Assets Industry and Directs CFTC Staff to Comply with Executive Orders*, CFTC (Apr. 8, 2025), https://www.cftc.gov/PressRoom/PressReleases/9063-25 (directing CFTC staff and the Director of Enforcement to "comply with the President's executive orders, Administration policy, [and] DOJ policy on digital asset enforcement priorities" when charging regulatory violations of the CEA.

[13] *See* President Donald J. Trump, Executive Grant of Clemency to Changpeng Zhao (Oct. 21, 2025), https://www.justice.gov/pardon/media/1416576/dl?inline.

[14] THE WHITE HOUSE, *Press Secretary Karoline Leavitt Briefs Members of the Media, Nov. 4, 2025*, at 26:23–56 (YouTube, Nov. 4, 2025), https://www.whitehouse.gov/videos/press-secretary-karoline-leavitt-briefs-members-of-the-media-nov-4-2025/. ("Nov. 4 White House Press Briefing").

[15] Aaron Navarro & Kathryn Watson, *Trump pardons billionaire crypto exchange founder who pleaded guilty to money laundering-related charge*, CBS News (Oct. 23, 2025), https://www.cbsnews.com/news/changpeng-zhao-trump-pardons-binance-crypto-exchange-founder-money-laundering/.

[16] Nov. 4 White House Press Briefing at 25:42–26:49.

[17] THE WHITE HOUSE, *President Trump Makes an Announcement, Oct. 23, 2025*, at 50:38–51:40 (YouTube, Oct. 23, 2025), https://www.whitehouse.gov/videos/president-trump-makes-an-announcement-oct-23-2025/.

personal jurisdiction were expressly reserved.  (ECF No. 15 ¶ 1.)  Plaintiffs agreed not to argue that the stipulation affected any of Mr. Zhao's defenses based on lack of personal jurisdiction.  (*Id.* ("Plaintiffs agree not to argue that the waiver affects any of [Mr. Zhao's] . . . defenses based upon lack of personal or subject matter jurisdiction. . . [.]").)

In April 2025, Mr. Zhao timely moved to dismiss.  (ECF No. 79.)  In May 2025, Plaintiffs filed a first amended complaint ("FAC"), (ECF No. 84), which Defendants moved to dismiss, (ECF Nos. 89–93).  In March 2026, the Court found that the FAC was a shotgun pleading and ordered Plaintiffs to file a new complaint that complied with the Rules and followed specific pleading instructions enumerated by the Court.  (ECF No. 127 at 6, 14–17 ("Order").)  On April 10, 2026, Plaintiffs filed the SAC.  (ECF No. 128.)

## ARGUMENT

**I.    The SAC Should Be Dismissed with Prejudice for Failure to Comply with the Federal Rules and the Court's Repleading Order.**

The SAC should be dismissed for failing to comply with Rules 8 and 10 and the Court's Order.

**First**, the SAC violates Rule 8 by impermissibly treating Defendants collectively (*see, e.g.*, SAC ¶¶ 120, 156–58, 175–79).  *Joseph v. Bernstein*, 612 F. App'x 551, 555 (11th Cir. 2015) (a complaint that indiscriminately groups defendants together "fails to comply with the minimum standard of Rule 8").  This continued practice of group pleading leaves Defendants and the Court to again ask: "What is the real theory against each individual . . . or is there one primary theory and then a vicarious theory against the others?"  Repleading Hr'g Tr. at 22:6–8.

Plaintiffs' conclusory allegation that all three Defendants are alter egos (SAC ¶ 55) does not answer that question because it is impossible to understand exactly what Plaintiffs seek to impute under that theory.  While the SAC states that BHL is Mr. Zhao's alter ego and its U.S.

7

contacts may be imputed to Mr. Zhao for jurisdictional purposes (*id.* ¶ 22), the same paragraph includes allegations about Mr. Zhao's relationship with BAM, not BHL. (*Id.*) Do Plaintiffs also intend to impute BAM's contacts to Mr. Zhao to establish personal jurisdiction? Do Plaintiffs, who separately allege BHL and BAM are each other's alter egos (*id.* ¶¶ 17–18), seek to impute jurisdictional contacts under a double imputation personal jurisdiction theory? And, apart from personal jurisdiction, do Plaintiffs seek to impute claims across Defendants for liability purposes? "[N]ot even the Divine would be able to divine what it is Plaintiff[s] seek[]." *Allen v. Cypress Village, Ltd.*, No. 3:10-CV-994-WKW, 2011 WL 1667055, at *2 (M.D. Ala. May 3, 2011) (ruling that plaintiff's complaint was a shotgun pleading); *see also infra* § II. (explaining why the SAC does not substantively plead a basis for alter ego).

**Second**, Plaintiffs have not followed the Court's order to exclude allegations that are unrelated to their asserted claims. (Order at 16.) Immaterial allegations abound (*see, e.g.*, SAC ¶ 20(c)) and so do misrepresentations. For example, the SAC insinuates that the Financial Crimes and Enforcement Network ("FinCEN") identified $60 million in transfers on the Binance platform to Hamas and PIJ-associated accounts. (*Id.* ¶ 5.) But nothing in the cited FinCEN Consent Order— or any other cited government document—includes that finding (or allegation). Nor is there any support for the entirely conclusory allegation that Hamas and PIJ transacted on the BHL platform. (SAC ¶ 110.) At most, the referenced government documents allege that certain Binance user addresses (none of which are identified as U.S. user addresses) "were found to interact" with other addresses "associated with" certain groups, including these two. (*E.g.* FinCEN Consent Order at 46). Sometimes the SAC reflects the "associated with" language (*e.g.*, SAC ¶¶ 133–34, 137, 139, 144–45, 160, 176). Sometimes it does not. (*E.g.*, *id.* ¶¶ 144, 174–75, 177, 179.)

Plaintiffs also allege that "Zhao personally directed the dismantling of the compliance infrastructure that would have detected and prevented terrorist financing on the Binance platform." (*Id.* ¶ 217.) But this allegation is belied by the record which shows that, far from "dismantling" anything, Mr. Zhao continuously tried to build and strengthen BHL's compliance program. DOJ BHL Agreement at ¶¶ 8.f–g; *see also Turner v. Williams*, 65 F.4th 564, 583 n.27 (11th Cir. 2023) ("If an exhibit attached to a complaint contradicts the allegations about the exhibit set forth in the complaint itself, the exhibit controls.").

Identifying additional misstatements is difficult because most of Plaintiffs' citations are wrong. For example, the SAC continuously cites specific paragraphs in the FinCEN Consent Order. (SAC ¶¶ 16, 20, 43, 45, 47, 107, 108, 111, 122–27, 132–37, 142–43, 145–47, 160–62, 168.) But the FinCEN Consent Order is not organized by paragraphs, and Plaintiffs' citations do not otherwise align with page numbers or anything discernible. Nor are quotes attributable to the FinCEN Consent Order found anywhere in that document. (*See, e.g.*, *id.* ¶ 216 (attributing to FinCEN Consent Order ¶ 27 for the quote, "'Cz [Zhao] doesn't see a need' to impose AML controls," which does not appear in that order); *see also id.* ¶¶ 125–26, 132, 142, 161, 168, 170 (same).)

**Third**, the SAC does not comply with Rule 10(b) or the Court's Order that the SAC "must contain factual allegations about each defendant's conduct . . . and must clearly indicate which factual allegations provide support for which claims[.]" Order at 15. The seven-paragraph section detailing "Conduct of Defendant Zhao" merely reiterates the government's allegations that, under Mr. Zhao's direction, BHL had U.S. customers but failed to follow certain BSA compliance requirements. (*See* SAC ¶¶ 164–70.) Plaintiffs then repeat these allegations in Counts Three, Six, and Eight, offering no real explanation of how or why they support each of the three distinct claims.

9

And, in Count Eight (the ATS claim), Plaintiffs state only that "Zhao aided and abetted these violations of the law of nations by knowingly providing substantial assistance to Hamas and PIJ as set forth in Count Three above." (*Id.* ¶ 255.)

Nor may Plaintiffs use unadjudicated regulatory complaints or settlements to plead the underlying facts of liability.[18] *See Env't Prot. Comm'n of Hillsborough Cnty. v. Mercedes-Benz USA, LLC*, No. 8:20-CV-2238-VMC-MRM, 2022 WL 4355666, at *4 (M.D. Fla. Sept. 20, 2022) ("The existence of another complaint does not show plausible facts."), *aff'd*, No. 22-13321, 2023 WL 4678978 (11th Cir. July 21, 2023); *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976) ("neither a complaint nor references to a complaint which results in a consent judgment may properly be cited in the pleadings under the facts of th[e] case"); *In re Platinum & Palladium Commodities Litig.*, 828 F. Supp. 2d 588, 593 (S.D.N.Y. 2011) ("[R]eferences to preliminary steps in litigations and administrative proceedings that did not result in an adjudication on the merits or legal or permissible findings of fact are, as a matter of law, immaterial."); *In re Rough Rice Commodity Litig.*, No. 11 C 618, 2012 WL 473091, at *5 (N.D. Ill. Feb. 9, 2012) (adopting *Lipsky* and *Platinum*). But, as with their prior complaints, that is exactly what Plaintiffs do. (*See, e.g.*, SAC ¶¶ 16, 17, 20, 22, 40, 41, 50, 55–58, 171–73 (SEC Complaint); *id.* ¶¶ 5, 16, 18, 20, 43, 45, 47, 107–08, 111, 122–27, 132–37, 142, 143, 145–47, 160–62, 168, 170, 172, 208, 216 (FinCEN Consent Order); *id.* ¶ 44 (CFTC Complaint); *id.* ¶¶ 16, 20, 49, 164–67, 169 (CFTC Consent Order); *id.* ¶¶ 112, 115, 166 (OFAC Settlement).) In the SAC's "Alter Ego Allegations" section, Plaintiffs not only cite to the SEC Complaint, but lift wholesale allegations, quotations,

---

[18] This is why courts routinely strike allegations that reference "unadjudicated government investigations, regulatory actions, and other litigation." *See Scognamillo v. Credit Suisse First Bos. LLC*, No. C03-2061 TEH, 2005 WL 8162733, at *6 (N.D. Cal. Feb. 1, 2005); *see also In re Merrill Lynch & Co., Inc. Rsch. Reps. Sec. Litig.*, 218 F.R.D. 76, 79 (S.D.N.Y. 2003) (striking allegations that refer to or rely on SEC complaints); *Johns v. Bayer Corp.*, No. 09CV1935 DMS (JMA), 2010 WL 476688, at *3 (S.D. Cal. Feb. 9, 2010) (striking allegations from a prior FTC action resulting in a settlement and consent decree); *Dent v. U.S. Tennis Ass'n, Inc.*, No. CV-08-1533 (RJD)(VVP), 2008 WL 2483288, at *2 (E.D.N.Y. June 17, 2008) (settlement agreements).

10

and paragraphs from it (*id.* ¶¶ 60–72)—despite the fact that the SEC subsequently amended its complaint **and later dismissed it entirely, with prejudice**.  *See* Am. Compl., *SEC v. Binance Holdings Limited*, No. 1:23-cv-01599 (D.D.C. Oct. 16, 2024), ECF No. 282; SEC Notice of Dismissal at 2.

**Fourth**, Plaintiffs disregard the Court's instruction to specify allegations that reflect: "the defendants' knowledge and intent regarding terror groups generally, Hamas/PIJ, and/or the October 7, 2023 attack specifically"; "an agreement by each defendant that relates to terror groups generally, to Hamas/PIJ, and/or to the October 7, 2023 attack specifically"; and "special treatment or affirmative acts committed by each defendant toward terror groups generally and/or Hamas/PIJ specifically."  Order at 15.  The SAC has no such allegations as to Mr. Zhao (or any Defendant).

**Fifth**, Plaintiffs disregard the Court's instruction (*id.* at 16–17) to execute the SAC consistent with Rule 11, which carries "a non-delegable duty to make a reasonable inquiry into whether the factual contentions made in a complaint have evidentiary support."  *Maine State Ret. Sys. v. Countrywide Fin. Corp.*, No. 2:10-CV-0302 MRP, 2011 WL 4389689, at *20 (C.D. Cal. May 5, 2011) (citing Fed. R. Civ. P. 11(b)).  "This duty means Plaintiffs cannot rely on allegations from complaints in other cases if the Plaintiffs themselves have not investigated the allegations."  *Id.*

Plaintiffs' overwhelming reliance on government charging documents and related settlements does not pass muster under Rule 11.  *Geinko v. Padda*, No. 00 C 5070, 2002 WL 276236, at *6 (N.D. Ill. Feb. 27, 2002) ("Plaintiffs' attorneys cannot shirk their Rule 11 obligation to conduct an appropriate investigation into the facts that is reasonable under the circumstances by merely stating that 'the [government] alleges' certain additional facts."); *Amorosa v. Gen. Elec. Co.*, No. 21-CV-3137 (JMF), 2022 WL 3577838, at *1 (S.D.N.Y. Aug. 19, 2022) ("Courts

11

'generally do not consider averments taken directly from uncorroborated allegations embedded in a complaint in another action or parroted allegations for which counsel has not conducted independent investigation.'") (internal quotations omitted).

In sum, while Plaintiffs have made certain cosmetic changes to their complaint, the SAC again resorts to group pleading and is laden with conclusory, immaterial, unreliable, and inaccurate allegations. This drafting tactic not only violates the Rules and this Court's Order, it underscores the futility of Plaintiffs' case. All they can plausibly plead as to Mr. Zhao specifically is that he allegedly made certain business decisions, for purely economic reasons, that led BHL to implement ineffective AML controls. This is wholly insufficient to show that Plaintiffs are entitled to relief, as Rule 8 requires.

The SAC's deficiencies are not new. Defendants identified them in multiple motions to dismiss; the Court addressed them during conference and in its Order. (*See* ECF Nos. 35, 76, 79, 82, 89, 91, 93); Repleading Hr'g Tr. at 18:10–19:23; Order at 12–14. The Court has given Plaintiffs ample opportunities to cure these deficiencies and should now dismiss the SAC with prejudice as an impermissible shotgun pleading. *See Johnson v. Georgia*, 661 F. App'x 578, 581 (11th Cir. 2016) (finding no error in district court's dismissal of amended complaint with prejudice, given plaintiff's continued failure to comply with federal pleading requirements); *Kelly v. Water Works*, No. 2:24-CV-348-RAH-JTA, 2025 WL 1271298, at *4 (M.D. Ala. May 1, 2025) (recommending dismissal with prejudice where repeated pleading deficiencies were "waste[d] the court's limited resources, and unnecessarily delay[ed] the resolution of the case on the merits").

## II.     The SAC Does Not Plead that the Entity Defendants Are Mr. Zhao's Alter Egos.

As discussed above, Plaintiffs' allegation that all Defendants are alter egos should be disregarded because the SAC lacks guidance as to what Plaintiffs seek to impute under this theory

12

or for what purpose—personal jurisdiction, liability, or both.  But apart from this, Plaintiffs' alter ego theories must be disregarded because the SAC lacks any plausible support for them.

The applicable law for an alter ego analysis depends on whether an alter ego is pleaded for personal jurisdiction purposes or liability purposes.  Alabama law applies to the analysis of whether alter ego is pleaded for the purpose of establishing personal jurisdiction.  *Comeens v. HM Operating, Inc.*, No. 14-521, 2014 WL 12650102, at *5 (N.D. Ala. Dec. 1, 2014).  For liability purposes, the law of the state of incorporation is applied.  *Jefferson Pilot Broadcasting Co. v. Hilary & Hogan, Inc.*, 617 F.2d 133, 135 (5th Cir. 1980); *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc) (holding that Fifth Circuit decisions made on or before September 30, 1981 shall be binding as precedent in the Eleventh Circuit); *Euroboor B.V. v. Grafova*, No. 17-cv-02157, 2021 WL 4325694, at *11, 17 (N.D. Ala. Sept. 23, 2021).  As such, Cayman law is applied to the question of whether BHL is Mr. Zhao's alter ego for liability purposes.  (SAC ¶ 43.)  Delaware law applies to the question of whether BAM is Mr. Zhao's alter ego for liability purposes.  (*Id.* ¶ 12.)

Plaintiffs' alter ego theory fails under each of the three analyses.

### A.    Plaintiffs Fail to Plead a Basis for Alter Ego Under Alabama Law.

That a corporation is a legal entity that exists separate and apart from its shareholders, directors, and officers is well settled in this state.  *See, e.g.*, *Co-Ex Plastics, Inc. v. Alappat, Inc.*, 536 So. 2d 37, 38 (Ala. 1988).  Alabama likewise recognizes that limiting liability of shareholders and officers is a "legitimate primary purpose of any corporation." *Gilbert v. James Russell Motors, Inc.*, 812 So. 2d 1269, 1274 (Ala. Civ. App. 2001).  Thus, disregarding the corporate form under an alter ego or veil piercing theory "is not a power that is lightly exercised." *Harman v. Taurus Int'l Mfg., Inc.*, No. 3:21-CV-98, 2023 WL 2534622, at *6 (M.D. Ala. Mar. 15, 2023) (quoting *Shorter Bros., Inc. v. Vectus 3, Inc.*, 343 So. 3d 508, 514 (Ala. 2021)).

13

Alabama law demands three requirements for alter ego/veil piercing.  To begin, there must be "complete control and dominion" by the dominant party over the entity.  *S. Rsch. Inst. v. PAM Innovation Corp.*, No. 19-CV-00932, 2020 WL 1433151, at *3 (N.D. Ala. Mar. 24, 2020).  But complete control and dominion is not enough.  *See, e.g.*, *Childs v. Pommer*, 348 So. 3d 379, 391 (Ala. 2021) (noting that, if it were, Alabama law would not recognize one-man corporations).  A plaintiff must also "show fraud in asserting the corporate existence or must show that recognition of the corporate existence will result in injustice or inequitable consequences."  *Id.*; *see also Ex parte Puccio*, 923 So. 2d 1069, 1076 (Ala. 2005) (finding alter ego where defendant allegedly misused the company's corporate form to avoid personal liability and to enrich himself).  This requires more than mere allegations of corporate wrongdoing (in which case a plaintiff may seek redress against the corporation); plaintiffs must plead that the corporate form itself is a fraudulent fiction, created and exploited by the defendant for personal gain.  *IBEW-NECA Local 505 Pension & Welfare Plans v. Smith*, No. 06-0455, 2008 WL 4067363, at *2 (S.D. Ala. Aug. 27, 2008).  Last, veil piercing/alter ego requires that the dominant party's misuse of the company's corporate form was the proximate cause of the plaintiff's injury.  *Gilbert*, 812 So. 2d at 1274.

None of these three requirements have been met here.

### 1.    The SAC Fails to Allege BHL Is Mr. Zhao's Alter Ego Under Alabama Law.

The SAC does not plead that BHL was Mr. Zhao's alter ego under Alabama law.  **First,** the SAC does not plausibly allege that Mr. Zhao had "complete control and dominion" over the company because "the pleadings make it clear that [Mr. Zhao] was not the only [one] taking part in the business" of BHL.  *Stewart v. Bureaus Inv. Grp., LLC*, No. 10-1019, 2015 WL 7572312, at *12 (M.D. Ala. Nov. 24, 2015) (finding plaintiff had not pleaded "the sort of extraordinary control necessary to pierce the corporate veil" to find that a President and CEO was his company's alter

14

ego).  Plaintiffs admit this.  (*See, e.g.*, SAC ¶ 19 (alleging "**near**-total control") (emphasis added).)  And the SAC acknowledges BHL's extensive executive teams and leadership apart from Mr. Zhao.  (*Id.* ¶¶ 18, 47, 63, 65, 125, 126, 129, 161.)  Documents incorporated by reference into the SAC likewise reflect that Mr. Zhao did not run BHL alone.  *See, e.g.*, Attach. A to DOJ BHL Agreement at ¶ 3, ECF No. 23-1 (stating that Mr. Zhao made strategic decisions for BHL "[t]ogether with a core senior management group").  And Plaintiffs' allegations as to Mr. Zhao's ownership interest in BHL (*e.g.*, SAC ¶ 19, 47) are unavailing because "ownership alone is insufficient to pierce the corporate veil."  *See, e.g.*, *Stewart*, 2015 WL 7572312, at *12.

Second, Plaintiffs do not plead that BHL's corporate form was a mere sham; rather they describe BHL as "the world's largest cryptocurrency exchange" with its own employees and billions of dollars in revenue—even after Mr. Zhao resigned as CEO.  *Compare* SAC ¶ 107, *with Gilbert*, 812 So. 2d at 1273 (finding that used-automobile company did not have a fraudulent purpose because it "did in fact buy used automobiles and sell them"), *and Kindrick v. CMI Elecs., Inc.*, No. 09-cv-169, 2012 WL 4344069, at *3, *5 (M.D. Ala. Sept. 21, 2012) (finding fraud in the corporate form where the corporation had no legitimate business, had no employees, intermingled personal and corporate funds, and disregarded corporate formalities).

Third, because Plaintiffs fail to plead culpable misuse of BHL's corporate form by Mr. Zhao, they cannot plead that his (nonexistent) misuse was the proximate cause of their injury.  And, as explained below in Section II.A.2., the alleged conduct in the SAC as a whole is far too attenuated to Plaintiffs' injuries to constitute proximate cause.  *See, e.g.*, *Colonial BancGroup Inc. v. PricewaterhouseCoopers LLP*, No. 11-746, 2017 WL 8890271, at *19 (M.D. Ala. Dec. 28, 2017) ("Proximate cause is an act or omission that in a natural and continuous sequence, unbroken by any new independent causes, produces the injury and without which the injury would not have

15

occurred.") (cleaned up); *see also Averbach v. Cairo Amman Bank*, No. 19-cv-0004-GHW-KHP, 2022 WL2530797, at *21 (S.D.N.Y. Apr. 11, 2022) (the provision of financial services to individuals and organizations on its own is insufficient to support a plausible inference that [those] financial services . . . proximately caused the Attacks").

Accordingly, Plaintiffs may not rely on an alter ego theory to impute allegations about BHL to Mr. Zhao to establish personal jurisdiction over him.

### 2. The SAC Fails to Allege BAM Is Mr. Zhao's Alter Ego Under Alabama Law.

Plaintiffs also fail to plead that BAM was Mr. Zhao's alter ego under Alabama law. **First,** the SAC does not plead Mr. Zhao's complete dominion and control over BAM. Mr. Zhao was never an officer or employee of BAM and does not authorize BAM's decisions. *See* Decl. of Mr. Erik Kellogg ¶¶ 17–19 (May 26, 2026) (filed with BAM's current motion to dismiss). At most, the SAC asserts that Mr. Zhao was an indirect owner of BAM and had some legitimate authority as a BAM board member. (SAC ¶¶ 21–22.) That falls far short of the "complete control and domination" required to pierce the corporate veil on an alter ego theory. *First Health, Inc. v. Blanton*, 585 So. 2d 1331, 1334 (Ala. 1991). Moreover, the SAC acknowledges numerous other individuals who *did* exert control over the company. (*See* SAC ¶ 53 (recognizing a BAM manager with signatory authority over BAM's bank accounts), ¶74 (a BAM executive with authority over five BAM bank accounts) ¶ 172 (a BAM Chief Compliance Office involved in operational decisions) ¶¶ 66, 69 (multiple CEOs).)

Plaintiffs' attempt to detract from these concessions by quoting testimony by a former BAM CEO, Brian Brooks, falls flat. (SAC ¶¶ 69–72.) In that deposition, Mr. Brooks recounts a disagreement he had with Mr. Zhao regarding the mechanics of BAM's tech migration. When Mr. Brooks' approach to the migration was rejected, he felt that at that point "CZ was the CEO of

16

BAM Trading." (SAC ¶ 72.)  Plaintiffs repeatedly reference this statement (SAC ¶¶ 72, 73), but omit its context and that Mr. Brooks immediately pulled it back:

> That wasn't because Binance.com somehow controlled us . . . It was more of an issue of if I'm Steve Ballmer and he's Bill Gates, who's really running this right? . . . **I mean, look, [Mr. Zhao's] obviously not formally the CEO of BAM Trading**, but in – in my judgment, right, there's a distinction between management and governance.  The role of the board is governance.  The role of the CEO is management.

(ECF No. 99-5 at 74:19–75:4, 75:9–13 (emphasis added).)  Read in context, Mr. Brooks' statements show his frustration with being "overruled" on certain matters (and recognized that such frustration is common when running a successful tech company). (*Id.* at 75:24–76:1.)  It does not establish that Mr. Zhao had complete dominion over BAM—especially given Mr. Brooks' other statements that BAM had scores of employees who worked to implement the technical requirements for BAM's own business purpose of operating a functional cryptocurrency exchange. (*Id.* at 50:2–51:10.)

**Second,** Plaintiffs do not plausibly allege that BAM's corporate form was a fraud.  The SAC repeatedly reflects that BAM maintained legitimate business operations in line with its commercial purpose.  (SAC ¶¶ 12, 14, 40–41, 61.)  Where, as here, it is undisputed that a company maintains legitimate business operations, courts reject alter ego theories.  *See Gilbert*, 812 So. 2d at 1273–74 (rejecting alter ego argument where corporation had legitimate business operations in line with its commercial purpose); *Messick v. Moring*, 514 So. 2d 892, 894 (Ala. 1987) (requiring that the corporate structure be "used *solely* to avoid a personal liability of the owner" to justify veil-piercing (emphasis added)).  The SAC's references to Mr. Zhao's involvement with third-party entities, Merit Peak and Sigma Chain, which allegedly conducted business with BAM do nothing to move the needle.  (SAC ¶¶ 20(c), 51.)  Any business conducted by the two entities cannot be imputed to Mr. Zhao personally (the SAC does not allege they are his alter egos), and

17

the existence of legitimate business relationships between legitimate entities does not indicate that BAM is a sham.

**Third,** Plaintiffs have not plausibly pleaded that misuse of BAM's corporate form was the proximate cause of Plaintiffs' injuries. Plaintiffs have not pleaded any misuse at all, nor do they identify any link between any transfers of funds by BAM and the Attacks.

## B.      Plaintiffs Fail to Plead a Basis for Alter Ego Under Cayman Law.

The SAC also lacks any basis to pierce BHL's corporate veil under Cayman law, as required for imputation for liability purposes. Veil piercing is permissible in the Cayman Islands only when a shareholder creates a corporation to evade a pre-existing liability or legal obligation. *See* Decl. of Mr. Christopher Wall ¶¶ 5–8 (April 20, 2026) ("Wall Decl."); *see also Glob. Gaming Philippines, LLC v. Razon*, No. 21-2655, 2022 WL 836716, at *7 (S.D.N.Y. Mar. 21, 2022) (finding that the Cayman Islands applies English common law to analyze veil piercing and under such law, veil piercing is only allowed when a person deliberately evades an existing legal obligation or liability); *In re Bass*, No. 10-01101, 2011 WL 722384, at *9 (Bankr. W.D. Tex. Feb. 11, 2011) (finding that "courts in the U.K. will pierce the veil when a company is set up to allow members of the company to get out of legal obligations owed to third parties"); *In re Tyson*, 433 B.R. 68, 88–89 (S.D.N.Y. 2010) (similar). Importantly, the pre-existing liability or legal obligation must be owed to the plaintiffs bringing the claim—not some random third party. *See In re Bass*, 2011 WL 722384, at *9 (explaining that in the "landmark case" on veil-piercing under English law, the court permitted an employer to pierce the veil of a new corporation that its former employee directed his wife and son to set up to evade the former employee's restrictive covenant that prohibited him from soliciting the employer's clients (citing *Gilford Motor Co. v. Horne.* [1933] Ch 935 (C.A.))). Plaintiffs do not plead that Mr. Zhao created BHL to evade a legal obligation he owed them. The SAC thus provides no basis to pierce BHL's corporate veil and

18

impute allegations about BHL to Mr. Zhao for liability purposes. *See* Wall Decl. ¶¶ 18–19 (finding no basis to pierce BHL's corporate veil under Cayman law).

### C.      Plaintiffs Fail to Claim a Basis for Alter Ego Under Delaware Law.

Nor does the SAC plead that BAM is Mr. Zhao's alter ego under Delaware law. Delaware courts disregard the corporate form "only [in] the exceptional case." *Sprint Nextel Corp. v. iPCS, Inc.*, No. 3746, 2008 WL 2737409, at *11 (Del. Ch. July 14, 2008). Thus, "[p]ersuading a Delaware court to disregard the corporate entity is a difficult task." *Yu v. GSM Nation, LLC*, No. 12293-VCMR, 2017 WL 2889515, at *3 (Del. Ch. July 7, 2017) (citation and internal quotation marks omitted). "[B]ecause Delaware public policy does not lightly disregard the separate legal existence of corporations, a plaintiff must do more than plead that one corporation is the alter ego of another in conclusory fashion in order for the Court to disregard their separate legal existence." *MicroStrategy Inc. v. Acacia Rsch. Corp.*, No. 5735, 2010 WL 5550455, at *11 (Del. Ch. Dec. 30, 2010).

"In order to state a cognizable claim to pierce the corporate veil of [a corporation], plaintiffs must allege facts that, if taken as true, demonstrate the Officers' and/or the Parents' complete domination and control of the [corporation]." *Yu*, 2017 WL 2889515, at *3. In determining whether veil piercing is appropriate, the court may consider "'(1) whether the company was adequately capitalized for the undertaking; (2) whether the company was solvent; (3) whether corporate formalities were observed; (4) whether the dominant shareholder siphoned company funds; and (5) whether, in general, the company simply functioned as a facade for the dominant shareholder.'" *MicroStrategy Inc.*, 2010 WL 5550455, at *11 (citation omitted). The overarching issue is whether "the corporate structure [has] cause[d] fraud or similar injustice"—in other words, whether the corporation is "a sham and exist[s] for no other purpose than as a vehicle for fraud."

19

*Wallace ex rel. Cencom Cable Income Partners II, L.P. v. Wood*, 752 A.2d 1175, 1184 (Del. Ch. 1999).

The SAC does not plead that Mr. Zhao had "complete domination and control . . . to the point that [BAM] no longer has legal or independent significance of [its] own." *Id.* at 1183–84. The SAC contains no allegations that BAM was undercapitalized, was insolvent, or failed to observe corporate formalities. There is no allegation that Mr. Zhao used BAM as a "piggy bank" for his personal use. *I Am Athlete, LLC v. IM EnMotive, LLC*, No. 2023-0332, 2023 WL 8933592, at *5 (Del. Ch. Dec. 27, 2023). And, as explained above, the SAC does not plausibly plead that BAM functioned as a façade for Mr. Zhao's personal use. *See Wallace ex rel. Cencom Cable Income Partners II, L.P.*, 752 A.2d at 1183–84 (alter ego requires that the dominated entity have no "legal or independent significance of [its] own").

In sum, none of the allegations regarding the Entity Defendants can be imputed to Mr. Zhao. Plaintiffs' entire case against him thus rests on allegations that he did not implement a fully BSA-compliant protocol at BHL, which, as explained below, provide no basis for personal jurisdiction or liability for the Attacks.

## III.    The SAC Should Be Dismissed with Prejudice Under Rule 12(b)(2) Because the Court Lacks Personal Jurisdiction Over Mr. Zhao.

The SAC should be dismissed under Rule 12(b)(2) for failing to plead a basis for personal jurisdiction.

### A.    Rule 4(k)(2) Cannot Serve as a Basis for Personal Jurisdiction Because Mr. Zhao Was Not Served Nor Have Plaintiffs Filed a Waiver of Service.

Plaintiffs plead that Rule 4(k)(2) provides a basis for personal jurisdiction over Mr. Zhao. (SAC ¶ 19.) However, Rule 4(k)(2) is unavailable because Mr. Zhao was never served with a summons, nor have Plaintiffs filed a waiver of service. *See* Fed. R. Civ. P. 4(k)(2) (premising personal jurisdiction on "serving a summons or filing a waiver of service"). In the parties' May

20

2024 stipulation, Mr. Zhao made clear that service on him was not "effectuated in the Middle District of Alabama (or anywhere else)." (ECF No. 15 ¶ 1.) While the parties agreed that Mr. Zhao would waive objections to the absence of service in order to streamline certain preliminary matters, all parties acknowledged that Mr. Zhao "expressly reserve[d], any and all other rights, defenses and objections to the claims in this action (including but not limited to defenses based upon lack of personal or subject matter jurisdiction . . . ." (*Id.*) And "Plaintiffs agree[d] not to argue that the waiver affects any of [Mr. Zhao's] . . . defenses based upon lack of personal or subject matter jurisdiction[.]" (*Id.*)

Having already agreed not to rely on service as a predicate for personal jurisdiction, Plaintiffs cannot invoke Rule 4(k)(2) to do just that.

**B.     The SAC Fails to Plead Any Conduct by Mr. Zhao Sufficient to Establish Personal Jurisdiction.**

Nor do Plaintiffs otherwise plead a basis for personal jurisdiction. There are two types of personal jurisdiction: specific and general. *Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*, 582 U.S. 255, 262 (2017) (recognizing the distinction between exercise of "specific" and "general" jurisdiction); *Fuld v. Palestine Liberation Org.*, 606 U.S. 1, 12 (2025) (same). General jurisdiction lies in the forum where the defendant is "essentially at home" in the forum and permits the court to adjudicate all claims against a defendant. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). "Specific jurisdiction arises out of a party's activities in the forum that are related to the cause of action alleged in the complaint." *DePaola v. Nissan N. Am., Inc.*, No. 1:04CV267-W, 2005 WL 2122265, at *6 (M.D. Ala. Aug. 29, 2005) (citing *Madara v. Hall*, 916 F.2d 1510, 1516 n. 7 (11th Cir. 1990) (citing *Helicopteros Nacionales de Colombia*, S.A. v. Hall, 466 U.S. 408, 414 nn. 8–9 (1984)); *see also Goodyear*, 564 U.S. at 919 (holding that specific jurisdiction requires "an affiliation between the forum and the underlying controversy"). This

21

connection between the forum and controversy prevents personal jurisdiction from violating the due process protections under the Constitution. *Herederos De Roberto Gomez Cabrera, LLC v. Teck Res. Ltd.*, 43 F.4th 1303, 1308 (11th Cir. 2022). When either type of personal jurisdiction is asserted under Rule 4(k)(2), the relevant forum is the United States. *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1220 (11th Cir. 2009).

### 1. The SAC Pleads No Allegations About Mr. Zhao that Establish Personal Jurisdiction.

Plaintiffs do not plead that Mr. Zhao is a U.S. citizen or that he lives in the United States. This forecloses general personal jurisdiction. *See Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). And while Plaintiffs allege certain U.S.-related activities by Mr. Zhao (who is never pleaded to have stepped foot in the country), as explained below, **none has any meaningful connection with the Attacks or Plaintiffs' claims to support specific personal jurisdiction**. *See, e.g.*, *Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1291 (11th Cir. 2000) (holding that this connection establishes the constitutional requirement of a defendant's purposeful availment of the forum). Without that suit-related conduct, the exercise of specific personal jurisdiction would violate Constitutional due process protections and be invalid. *See, e.g.*, *Herederos*, 43 F.4th at 1308, *Fuld*, 606 U.S. at 23–24 (finding that jurisdictional statute comports with the Fifth Amendment where "there is a close connection between the [statute's] predicate conduct and the United States"); *see also* Fed. R. Civ. P. 4(k)(2) (providing for personal jurisdiction only where "exercising jurisdiction is consistent with the United States Constitution and laws").

Plaintiffs allege that Mr. Zhao owned and controlled other foreign companies that maintained New York bank accounts. (SAC ¶ 20(c).) But they offer no explanation why a foreign defendant's ownership of a foreign entity—which is not pleaded to have anything to do with the Attacks—has any relevance to this Court's jurisdictional inquiry as to Mr. Zhao. *See Asahi Metal*

22

*Indus. Co. v. Superior Ct. of Cal., Solano Cnty.*, 480 U.S. 102, 112 (1987) (the "substantial connection" necessary for specific personal jurisdiction "must come about by *an action of the defendant purposefully directed toward the forum State*") (quotation marks omitted) (emphasis in original).

Allegations that Mr. Zhao sought to retain certain U.S. Binance customers (SAC ¶ 20(b)) and that he was a beneficial owner of BAM (*id.* ¶ 21) are also irrelevant. The SAC does not plead that any BHL U.S. customers transferred funds to Hamas or PIJ, much less that they did so in a way suggesting participation in the Attack. Nor does the SAC plead that any BAM users had anything to do with the Attacks.

Plaintiffs' allegations that Mr. Zhao directed BHL not to follow certain U.S. banking rules (SAC ¶ 20(b)) fail because an alleged failure to implement a U.S. law is not a sufficient nexus with the United States to support specific personal jurisdiction. *See Zapata v. HSBC Holdings plc*, No. 1:16-CV-030, 2017 WL 6939209, at *4 (S.D. Tex. Sept. 14, 2017) (dismissing ATA claims for lack of personal jurisdiction, finding that "high-level policy-setting role and systemic inaction Plaintiffs attribute to HSBC Holdings" were insufficient to confer jurisdiction in the United States under Rule 4(k)(2)); *Siegel v. HSBC Holdings, PLC*, 283 F. Supp. 3d 722, 727, 729 (N.D. Ill. 2017) (allegations that foreign bank defendants circumvented monitoring by U.S. regulators were insufficient to support personal jurisdiction for ATA claims); *Bernhardt v. Islamic Republic of Iran*, No. 18-2739, 2020 WL 6743066, at *3 (D.D.C. Nov. 16, 2020), *aff'd*, 47 F.4th 856 (D.C. Cir. 2022), *cert. denied*, 144 S. Ct. 280 (2023) (finding no personal jurisdiction over foreign bank that "provided the approval necessary for [its affiliate] to continue its U.S. sanction-evading program," and admitted "it had violated U.S. law and undermined U.S. national security, foreign

23

policy, and sanctions programs"); *see also Facebook, Inc. v. K.G.S.*, 294 So. 3d 122, 140 (Ala. 2019) (an omission or failure to act cannot support specific personal jurisdiction in the forum).

Nor does Mr. Zhao's guilty plea to a now-pardoned offense constitute, as Plaintiffs allege (SAC ¶ 16(e)), a blanket "submi[ssion] to United States jurisdiction" or otherwise constitute a basis for specific personal jurisdiction. The Supreme Court has long recognized that a pardon eliminates the legal consequences of the pardoned offense. *Ex parte Garland*, 71 U.S. 333, 380–81 (1866) ("[I]f granted after conviction, [a pardon] removes the penalties and disabilities, and restores him to all his civil rights; it makes him, as it were, a new man, and gives him a new credit and capacity."); *United States v. Swanson*, 947 F.2d 914, 918 (11th Cir. 1991) (adopting *Garland*). Moreover, "treating a guilty plea as a submission to jurisdiction in an unrelated civil case would strongly undermine the federal policy of encouraging settlement of criminal charges." *In re Bulk [Extruded] Graphite Prods. Antitrust Litig.*, No. 02-6030, 2004 WL 7338471, at *6 (D.N.J. Oct. 28, 2004) (citing 1A CHARLES ALAN WRIGHT & ARTHUR A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 171.1 (3d ed. 1999)); *see also United States v. 51 Pieces of Real Prop., Roswell, N.M.*, 17 F.3d 1306, 1313 (10th Cir. 1994) (declining to find personal jurisdiction in the civil case because guilty plea does "not automatically confer jurisdiction" and defendant did not consent to jurisdiction in the civil case).

Finally, Plaintiffs' allegation that the CFTC designated Mr. Zhao as a "control person" under the Commodity Exchange Act ("CEA") in its long-resolved regulatory action is also insufficient. (SAC ¶ 20(e).) A control person designation does not bear on personal jurisdiction. *See In re Baan Co. Sec. Litig.*, 245 F. Supp. 2d 117, 129 (D.D.C. 2003) (conflating control person liability and personal jurisdiction "impermissibly conflates statutory liability with the Constitution's command that the exercise of personal jurisdiction must be fundamentally fair");

24

*City of Monroe Emps. Ret. Sys. v. Bridgestone Corp.*, 399 F.3d 651, 667 (6th Cir. 2005) ("[C]ontrol person liability under the securities laws is not germane to the issue of personal jurisdiction[.]" (quoting *FDIC v. Milken*, 781 F. Supp. 226, 234 (S.D.N.Y. 1991)).  That is especially true here, where Plaintiffs' theory of liability—conducting transfers to known terrorists—is completely outside the CEA's scope.

"Specific jurisdiction is founded on a party's activities in the forum that are related to the cause of action alleged in the complaint." *Kozial v. Bombardier-Rotax GmbH*, 129 F. App'x 543, 545 (11th Cir. 2005).  Because the SAC pleads no activities by Mr. Zhao that are related to Plaintiffs' JASTA or ATS claims, Plaintiffs' claims against him must be dismissed.

### 2.   The SAC Pleads No Allegations About BHL that Establish Personal Jurisdiction Over Mr. Zhao.

In the alternative, Plaintiffs plead that BHL's contacts with the United States should be imputed to Mr. Zhao for jurisdictional purposes.  (SAC ¶ 22.)  But, as explained above, *see supra* § II., the SAC pleads no basis for imputation.

Moreover, the SAC does not plead that BHL facilitated any transfers to Hamas and PIJ that went through the United States or involved U.S. persons (much less that such transfers caused the Attacks).  *See Bernhardt*, 2020 WL 6743066, at *3 (finding no personal jurisdiction over foreign defendant bank where plaintiffs failed to plausibly plead "that the transactions play[ ] any role in the attack itself").  This case is thus distinguished from ATA cases involving financial services defendants where, at the very least, the defendant used a U.S. branch or correspondent account to conduct the relevant transfers.  *See, e.g.*, *Bartlett v. Societe Generale de Banque au Liban SAL*, No. 19-CV-00007, 2024 WL 5497906, at *1, *3 (E.D.N.Y. Sept. 18, 2024) (alleging that Defendants knowingly provided Hezbollah with financial services through correspondent bank accounts in New York); *King v. Habib Bank Ltd.*, No. 20-CV-4322, 2022 WL 4537849, at *3

25

(S.D.N.Y. Sept. 29, 2022) (transfers that allegedly funded al-Qaeda went through foreign defendant bank's New York branch); *Wultz v. Islamic Republic of Iran*, 755 F. Supp. 2d 1, 34 (D.D.C. 2010) (wire transfer through foreign defendant bank's U.S. branch supported personal jurisdiction where specific transfers enabled terrorist activities). The SAC lacks that requisite jurisdictional hook.

Mr. Zhao also joins the Entity Defendants' motion to dismiss briefs on why the SAC fails to plead personal jurisdiction over them.

## IV.    The SAC Should Be Dismissed with Prejudice Under Rule 12(b)(6) for Failing to State a Claim Against Mr. Zhao.

Plaintiffs' claims against Mr. Zhao are also subject to dismissal under Rule 12(b)(6).

### A.    Plaintiffs Fail to State a JASTA Claim Against Mr. Zhao.

Plaintiffs fail to plead a claim under JASTA, which permits U.S. nationals to sue "any person who aids and abets, by knowingly providing substantial assistance, or who conspires with the person who committed . . . an act of international terrorism." 18 U.S.C. § 2333(d)(2).

#### 1.    Plaintiffs Fail to State a Claim Against Mr. Zhao for Aiding and Abetting Under JASTA (Claim III).

Recent decisions by the Supreme Court, two Circuit Courts, and the Southern District Court of New York confirm that Plaintiffs have not—and cannot—plead that Mr. Zhao aided and abetted Hamas and PIJ in their horrific Attacks.

##### a.    Legal Standard for Pleading Aiding and Abetting

###### i.    Supreme Court Precedent

In *Twitter*, the Supreme Court held that JASTA aiding-and-abetting liability requires "conscious, voluntary, and culpable participation" in the underlying terrorist attack in such a way as to "make it succeed." *Twitter, Inc. v. Taamneh*, 598 U.S. 471, 493, 497 (2023) (dismissing JASTA aiding-and-abetting claim). The *Twitter* plaintiffs had sued three social-media companies

26

for aiding and abetting ISIS' terrorist attack in the Reina nightclub in Istanbul. *Id.* at 478–79. The plaintiffs alleged that ISIS used defendants' platforms to solicit funds, recruit terrorists, and spread its message, and that defendants knew of ISIS' use, but continued to host ISIS content, amplify it through algorithms, and profit from it with ads on ISIS posts. *Id.* at 480–82.

The Supreme Court held that these allegations did not plead a viable JASTA aiding-and-abetting claim because plaintiffs did not plead that defendants gave "knowing and substantial assistance" to ISIS for the Reina attack. *Id.* at 497–98. The Court explained that these "twin requirements" work in tandem: "less substantial assistance required more scienter before a court could infer conscious and culpable assistance . . . [and] if the assistance were direct and extraordinary, then a court might more readily infer conscious participation in the underlying tort." *Id.* at 492. The *Twitter* plaintiffs did not plead "direct and extraordinary" assistance: there were no allegations that defendants gave ISIS any "special treatment or words of encouragement," rather ISIS used the platforms "just like everyone else." *Id.* at 498. Nor did plaintiffs plead that defendants culpably "associate[d themselves] with" the Reina attack, "participate[d] in it as something that [they] wishe[d] to bring about," or sought "by [their] action to make it succeed." *Id.* (quoting *Nye & Nissen v. United States*, 336 U.S. 613, 619 (1949)).

Given the lack of any concrete nexus between defendants' services and the Reina attack, "a strong showing of assistance and scienter would thus be required" for liability to attach. *Id.* at 500 (noting that "both tort and criminal law have long been leery of imposing aiding-and-abetting liability for mere passive nonfeasance"). The complaint did not meet that standard. The relationship between defendants and the Reina attack was "highly attenuated." *Id.* Defendants' relationship with ISIS was "the same as their relationship with their billion-plus other users: arm's length, passive, and largely indifferent . . . [a]nd their relationship with the Reina attack is even

27

further removed." *Id*. Plaintiffs pointed to no act of "encouraging, soliciting, or advising the commission of the Reina attack." *Id*. Nor was it alleged that defendants and ISIS formed a "near-common enterprise" in which defendants intentionally associated themselves with ISIS' operations or affirmatively gave aid that would assist each of ISIS' terrorist acts." *Id*. at 502. In short, the aiding-and-abetting claim failed because there was no "good reason to think that defendants were consciously trying to help or otherwise 'participate in' the Reina attack." *Id*. at 500.

The Supreme Court applied the same reasoning in *Smith & Wesson*, holding that the plaintiff failed to sufficiently plead that gun manufacturers aided and abetted gun dealers who illegally sold defendants' firearms to Mexican cartels—despite allegations that the defendants knew who the illicit dealers were, knew they were making illegal sales, and yet continued to supply them in order to boost profits. *Smith & Wesson Brands, Inc. v. Estados Unidos Mexicanos*, 605 U.S. 280, 292 (2025). The Supreme Court explained that when liability is premised on aiding and abetting "a broad category of misconduct," the defendant's "participation must be correspondingly 'pervasive, systemic, and culpable,'" such that the defendant effectively aided every wrongful act. *Id*. (quoting *Twitter*, 598 U.S. at 502). An "ordinary merchant does not become liable for all criminal misuses of his goods, even if he knows that in some fraction of cases misuse will occur[,]" and is liable only if "he takes steps to promote the resulting crime and make it his own." *Id*. at 292 (cleaned up) (emphasis added).

### ii.    Circuit Court Decisions

Two circuit courts have recently applied *Twitter* and *Smith & Wesson* to emphasize the need for a sufficient nexus under JASTA. In *AstraZeneca*, the D.C. Circuit Court found the plaintiffs' JASTA aiding-and-abetting claim sufficiently pleaded because they alleged "a plainly discernable nexus" through plausible allegations that the defendants: had an "active, direct, and particularized" relationship with the relevant terrorist group; made bespoke, substantial, bribery

28

payments directly to that group, and knew those payments would be used to plan and execute specific attacks on Americans. *Atchley v. AstraZeneca UK Ltd.*, 165 F.4th 592, 605, 612 (D.C. Cir. 2026). In contrast, the Second Circuit in *Ashley* found that plaintiffs' JASTA claim failed where plaintiffs alleged the defendant banks knowingly facilitated money laundering and other suspect transactions by terrorist-affiliated entities, failed to employ robust anti-money laundering and counter-terrorist finance policies, and operated in high-risk terrorist finance jurisdictions. *Ashley v. Deutsche Bank Aktiengesellschaft*, 144 F.4th 420, 444–45 (2d Cir. 2025). The court concluded that *"the complaint offers no discernable nexus between the money laundering and the attacks committed against Plaintiffs." Id.* at 444.

### iii.    The *Troell* Decision

Recently, the *Troell* court, drawing heavily from *Twitter* and *Ashley*, held that plaintiffs failed to plausibly allege JASTA aiding and abetting against Mr. Zhao and the Entity Defendants. 2026 WL 636849, at *23–25. As here, the *Troell* plaintiffs' claims were based on BHL's alleged failure to establish an effective AML program that allegedly allowed access to its platform by terrorists responsible for numerous attacks, including the Attacks. *Id.* at *5. The court found that plaintiffs did not plead aiding-and-abetting under JASTA because their complaint "does not plausibly allege that Defendants culpably associated themselves with these terrorist attacks, participated in them as something they wanted to bring about, or sought by their actions to ensure their success, as is necessary to establish secondary liability under JASTA." *Id*. at *15.

Key to the court's decision was plaintiffs' failure to allege a definable nexus between Defendants' conduct and support for a specific terrorist attack. *Id.* at *16. The court acknowledged plaintiffs' allegation that BHL and Mr. Zhao deliberately violated regulatory requirements designed to prevent illicit activity. *Id.* at *17. The court even credited plaintiffs' allegations that BHL helped Hamas and PIJ obtain millions of dollars. *Id.* at *21. But absent from the complaint

29

was any "detail regarding the nature of transactions or the individuals who allegedly conducted the transactions from which a linkage with the terrorist attacks can reasonably be drawn." *Id.* That "the lack of a definable nexus between Defendants' conduct and the terrorist attacks at issue" doomed the plaintiffs' claims because it "drastically increased plaintiffs' burden to show that defendants somehow consciously and culpably assisted the attack." *Id.* (cleaned up) (quoting *Twitter*, 598 U.S. at 496). That heightened burden was not met because, like the *Twitter* defendants, plaintiffs had not alleged that Defendants gave any special treatment to Hamas or PIJ such that the court could infer that Defendants "were intentionally seeking to associate themselves with terrorist organizations or to form a common enterprise with them." *Id.* The court also found that *Halberstam* reinforced its decision because none of the six factors for determining culpable "substantial assistance" were plausibly pleaded. *Id.* at *22.

The court acknowledged that its decision differed from another Southern District court's decision that plaintiffs had pleaded a JASTA aiding-and-abetting claim against BHL and Mr. Zhao, despite the lack of nexus between their actions and the Attacks. *Id.* (referencing *Raanan v. Binance Holdings Limited*, No. 24-cv-697 (JGK), 2025 WL 605594, at *23 (S.D.N.Y. Feb. 25, 2025)). However, the court explained that decision antedated *Ashley*, which made clear that, under *Twitter*, failure to employ robust AML and counter-terrorist finance policies could not support JASTA liability because such failure "did not suffice to show the intent to further terrorist activities and an awareness that one is assisting those activities, as is required for an aiding-and-abetting claim." *Id.* at *15.[19]

---

[19] The *Raanan* court has since allowed Defendants to renew their motions to dismiss to raise arguments based on the *Ashley* and *Troell* decisions. Order, *Raanan v. Binance Holdings Limited*, No. 1:24-cv-00697 (S.D.N.Y. Apr. 28, 2026), ECF No. 109. Those motions are currently pending.

30

**b.    The SAC Does Not Plead That Mr. Zhao Culpably and Consciously Participated in the Attacks.**

Plaintiffs' JASTA aiding-and-abetting claim must be dismissed because it rests solely on Mr. Zhao's alleged failure to implement effective AML controls at BHL. (*E.g.*, SAC ¶ 216.) There is neither a concrete nexus between Mr. Zhao's conduct and the Attacks, nor is there any scienter plausibly pleaded, to establish Mr. Zhao's "conscious, voluntary, and culpable participation" in these abhorrent acts of terror. *Cf. Lelchook v. Lebanese Canadian Bank*, No. 18-cv-12401, 2024 WL 967078, at *2, *8–9 (S.D.N.Y. Mar. 6, 2024) (JASTA liability pleaded where bank executive with a personal relationship with Hizbollah personally initiated and authorized the bank's relationship with Hizbollah, "personally processed transactions on this criminal network's behalf . . . in support of Hizbollah" and affirmatively granted reporting exemptions specifically to Hizbollah). This falls far short of plausibly alleging that Mr. Zhao was "consciously trying to help or otherwise 'participate in' the [October] attack." *Twitter*, 598 U.S. at 500.

Plaintiffs plead no direct activity between Mr. Zhao and Hamas or PIJ at all, much less that he sought to "help or otherwise participate" in their Attacks. Instead, the SAC reflects a concerted effort by Mr. Zhao and BHL to improve its compliance program by 2021. (SAC ¶¶ 122–24.) And the government documents upon which Plaintiffs cite and rely reflect that—over a year prior to the attack—Mr. Zhao "taken significant steps to remediate its AML and sanctions compliance programs," including, by May 2022, implementation of "full KYC requirements" for account holders and "restricting accounts for users subject to U.S. sanctions." *See, e.g.*, DOJ BHL Agreement ¶¶ 8.f.–g.; *Turner*, 65 F.4th at 583 n.27 ("If an exhibit attached to a complaint contradicts the allegations about the exhibit set forth in the complaint itself, the exhibit controls.").

Plaintiffs' allegation that Mr. Zhao's business decisions led to BHL "knowingly processing transactions for Hamas and PIJ" (SAC ¶ 217(g)) is entirely conclusory and belied by the

31

government pleadings that Plaintiffs cite, which—at most—allege that BHL user addresses "were found to interact" with third-party wallets "associated with" certain terrorist groups. *See, e.g.*, FinCEN Consent Order at 46. And, unlike the SAC's allegations about Mr. Zhao's purported effort to retain U.S. customers (SAC ¶ 164), the SAC is devoid of any similar allegations as to Hamas or PIJ. And there are no plausible allegations that an actual member of Hamas or PIJ was a BHL customer or that any platform transaction was used to fund or assist the Attacks. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level.").

At most, Plaintiffs allege that, under Mr. Zhao's leadership, the BHL platform may have been used by its customers to facilitate transfers to illicit actors. (SAC ¶ 216.) What BHL is alleged to have done is not imputed to Mr. Zhao. *See infra* § II. But in any event, this allegation does not plead a basis for liability as to any Defendant because "[w]hen a company merely knows that some bad actors are taking advantage of its products for criminal purposes, it does not aid and abet . . . even if the company could adopt measures to reduce their users' downstream crimes." *Smith & Wesson*, 605 U.S. at 293; *Twitter*, 598 U.S. at 495 ("[I]t is not enough, as plaintiffs contend, that a defendant have given substantial assistance to a transcendent 'enterprise' separate from and floating above all the actionable wrongs that constitute it."); *see also Ashley*, 144 F.4th at 440 (rejecting JASTA liability based on money's fungibility because of "the tenuous connection between the banking services and the terrorist attacks"). "Courts have routinely found allegations that financial institutions intentionally and knowingly facilitated transactions by sanctioned entities insufficient to establish the nexus required to render a defendant secondarily liable for specific terrorist attacks." *Troell*, 2026 WL 636849, at *18 (dismissing JASTA claims against the same Defendants).

32

This lack of "direct, active, and substantial assistance," requires that Plaintiffs plead the highest level of scienter. But they cannot plausibly plead any. Plaintiffs concede that Mr. Zhao's business decisions were made "to prioritize revenue" (SAC ¶ 121), not to partake in a terrorist attack. *See Troell*, 2026 WL 636849 at *15 (dismissing aiding-and-abetting claim because the complaint did not plausibly allege that Defendants' activity was done to effectuate the Attacks). There are no allegations that reflect that Mr. Zhao singled out Hamas and PIJ for special treatment. *See Troell*, 2026 WL 636849, at *22 (finding that the "high bar" of pleading "pervasive, systemic, and culpable" conduct is not met with allegations that "at most indicate that Defendants generally permitted and solicited illicit actors of all ilks to use its platforms"). It simply strains credulity that Mr. Zhao was "joined in mind" with Hamas and PIJ in their illicit enterprise, as is required for the "culpable" conduct that permits aiding-and-abetting liability. *Smith & Wesson*, 605 U.S. at 283; *see also Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002) ("unwarranted deductions of facts . . . will not prevent dismissal"); *Twitter*, 598 U.S. at 504 (faulting the Ninth Circuit for failing to "give[] much greater weight to defendants' . . . undisputed lack of intent to support ISIS").

**c.**     **Plaintiffs' JASTA Aiding-and-Abetting Claim Also Fails Under the *Halberstam* Framework.**

The D.C. Circuit's *Halberstam* decision, which is referenced in JASTA's preamble, further confirms Plaintiffs' failure to sufficiently allege liability. Justice Against Sponsors of Terrorism Act, Pub. L. No. 114-222, § 2(a)(5), 130 Stat. 852, 852 (2016) (referencing *Halberstam v. Welch*, 705 F.2d 472 (D.C. Cir. 1983)). There, the court recognized three elements of civil aiding-and-abetting liability: "(1) the party whom the defendant aids must perform a wrongful act that causes an injury; (2) the defendant must be generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance; (3) the defendant must knowingly and

33

substantially assist the principal violation." *Halberstam*, 705 F.2d at 477–78.   The court also provided six factors to use for considering the third element: (1) the nature of the act assisted, (2) the amount of assistance, (3) whether the defendant was present at the time of the principal tort, (4) the defendant's relation to the tortious actor, (5) the defendant's state of mind, and (6) the duration of the assistance given.   *Id.* at 488.

The SAC does not plead that Mr. Zhao was "generally aware of his role as part of an overall illegal or tortious activity at the time that he provide[d] the assistance."   *Halberstam*, 705 F.2d at 477.   Mr. Zhao had been making increased efforts to strengthen BHL's compliance program since at least 2021.   (SAC ¶¶ 122–24); *see also* Sentencing Hr'g Tr. at 6:16–19 (stating that there was "no evidence that [Mr. Zhao] explicitly was informed of any specific transaction, or a specific user transacted on Binance with criminal proceeds").   Nor does the SAC plead any of the six factors for determining "substantial assistance."   Mr. Zhao took no steps to encourage or solicit Hamas or PIJ to commit the Attacks (*Halberstam* factors one and two).   He was not present during the Attacks (factor three).   He had no relation to Hamas or PIJ (factor four).   He was not "one in spirit" with Hamas and PIJ (factor five).   And even if there were any "assistance" in the way of access to the Platform by Hamas and PIJ, Plaintiffs cite documents showing that it ended over a year before the Attacks (factor six).   *See, e.g.*, DOJ BHL Agreement at ¶¶ 8.f.–g. (stating that, under Mr. Zhao's leadership, BHL had remediated its AML and sanctions compliance programs by May 2022); *see also Troell*, 2026 WL 636849, at *22 (finding that none of the six *Halberstam* factors for substantial assistance were pleaded as to any Defendant).

For all of these reasons, Plaintiffs' JASTA aiding-and-abetting claim against Mr. Zhao must be dismissed.

### 2.    Plaintiffs Fail to State a Claim Against Mr. Zhao for Conspiracy Under JASTA (Claim VI).

The Court must also dismiss Plaintiffs' JASTA conspiracy claim against Mr. Zhao. This claim requires that the defendant entered into an agreement with specific terrorists to commit an act of international terrorism. *See, e.g.*, *Bernhardt*, 2020 WL 6743066, at *7 ("[A] plaintiff must allege a factual basis 'that would lead one to infer that Defendant[s] shared a[] common goal of committing an act of international terrorism.'" (quoting *Kaplan v. Lebanese Canadian Bank, SAL*, 405 F. Supp. 3d 525, 534 (S.D.N.Y. 2019)); *Ofisi v. BNP Paribas, S.A.*, 278 F. Supp. 3d 84, 110 (D.D.C. 2017) (dismissing JASTA conspiracy claim where "[t]he only conspiracy alleged in the complaint is a conspiracy . . . to defeat U.S. sanctions"), *vacated on other grounds*, 285 F. Supp. 3d 240 (D.D.C. 2018); *Cain v. Twitter, Inc.*, No. 17-cv-2506, 2018 WL 4657275, at *3 (N.D. Cal. Sept. 24, 2018) (dismissing JASTA conspiracy claim because "[n]othing in the [complaint] establishes an agreement, express or otherwise, between Twitter and ISIS to commit terrorist attacks").

The SAC pleads no facts supporting a plausible inference that Zhao had any agreement at all with Hamas and PIJ—much less one to conduct an atrocity like the Attacks. *See Troell*, 2026 WL 636849, at *22 (dismissing JASTA conspiracy where "Plaintiffs have failed to adequately allege facts from which it can plausibly be inferred that Defendants entered into the requisite agreement."). Each of the "overt acts" the SAC pleads as a basis for this claim have to do with (again) that Mr. Zhao worked with the Entity Defendants to avoid certain AML requirements. (SAC ¶ 235.) Neither terrorist group is even mentioned. Moreover, the SAC is devoid of any facts plausibly showing that Mr. Zhao, a businessman who Plaintiffs allege was motivated purely by economic gain, shared the groups' goal of conducting the Attacks. *See Kemper v. Deutsche Bank AG*, 911 F.3d 383, 395 (7th Cir. 2018) ("A person who is indifferent to the goals of an

35

ongoing conspiracy does not become a party to this conspiracy[.]" (quoting *United States v. Collins*, 966 F.2d 1214, 1219–20 (7th Cir. 1992)); *Bernhardt v. Islamic Republic of Iran*, 47 F.4th 856, 862, 873 (D.C. Cir. 2022) (finding allegations that HSBC "implemented procedures to help sanctioned entities access and benefit from U.S. financial services" insufficient to plead JASTA conspiracy because plaintiffs failed to establish the requisite agreement that HSBC "was pursuing the same object as al-Qaeda."); *Newman v. Associated Press*, 758 F. Supp. 3d 1357, 1375 (S.D. Fla. 2024) (dismissing ATA conspiracy claim "because Plaintiffs fail to plausibly allege any agreement to commit an act of international terrorism").

*Freeman* is instructive. *Freeman v. HSBC Holdings PLC* 57 F.4th 66 (2d Cir. 2023). There, plaintiffs, a group of Americans killed or injured by terrorist attacks in Iraq, alleged that several banks "shared the common goal of . . . providing Iran and the Iranian banks . . . the ability to illegally transfer billions of dollars (undetected) through the United States," which allowed "Iranian banks to transfer hundreds of billions of dollars to terrorist organizations without detection" and "acquire prohibited goods, technologies, and weapons." *Id.* at 73, 80 (cleaned up). But the Second Circuit found these allegations insufficient to allege a JASTA conspiracy claim "because the Complaint [was] devoid of any fact suggesting that the Banks conspired—***directly*** or ***indirectly***—with the terrorist perpetrators." *Id.* at 79. Specifically, the plaintiffs failed to "plead that the Banks intended to kill or injure U.S. service members in Iraq, or that the terrorist groups agreed to help the Banks and Iranian entities evade U.S. sanctions." *Id.* at 80. Because the complaint was devoid of any allegations that the banks and the terrorist groups "engaged in a common pursuit," the Second Circuit affirmed the dismissal of the plaintiffs' conspiracy claims. *Id.*; *see also Newman*, 758 F. Supp. 3d at 1374–75 (relying on the "instructive" *Freeman* decision and dismissing ATA conspiracy claim "because Plaintiffs fail to plausibly allege any agreement

36

to commit an act of international terrorism"); *Kemper*, 911 F.3d at 395 (JASTA conspiracy was not pleaded because the complaint alleged "at most, that Deutsche Bank joined a conspiracy to evade sanctions"); *In re Chiquita Brands Int'l, Inc.*, 284 F. Supp. 3d 1284, 1316 (S.D. Fla. 2018) (while defendant may have given terrorist group money "knowing it would be used for nefarious purposes, including murder," the same allegations did not permit an inference that defendant agreed with the group to carry out the specific terrorist attack at issue in the complaint).

Because the SAC does not plausibly plead that Mr. Zhao conspired with Hamas and PIJ to conduct the Attacks, Plaintiffs' JASTA conspiracy claim must be dismissed. *See Troell*, 2026 WL 636849, at *24 (dismissing JASTA conspiracy claim against Defendants where plaintiffs had not alleged facts giving rise to a plausible inference that Defendants agreed to provide material support for terrorism).

**B.      Plaintiffs Fail to State a Claim Against Mr. Zhao for Aiding and Abetting Under the ATS (Claim VIII).**

Plaintiffs' ATS claim for aiding and abetting violations of the law of nations, the International Covenant on Civil and Political Rights ("International Covenant"), Article 34 of the Fourth Geneva Convention and Article 8(2)(a) and (b) of the Rome Statute ("Rome Statute"), and Common Article 3 of the Geneva Conventions and the Convention Against Torture, must also be dismissed.

The ATS was enacted as part of the Judiciary Act of 1789 and provides that "[t]he district courts shall have original jurisdiction of any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States." *Jesner v. Arab Bank, PLC*, 584 U.S. 241, 249 (2018) (quoting 28 U.S.C. § 1350); *see also Mamani v. Berzain*, 654 F.3d 1148, 1152–53 (11th Cir. 2011) ("To state a claim for relief under the ATS, a plaintiff must (1) be an alien (2) suing for a tort (3) committed in violation of the law of nations.").

37

Over the past twenty years, the Supreme Court has issued several key decisions clarifying—and narrowing—the scope of the ATS. In *Sosa v. Alvarez-Machain*, the Court explained that the ATS is a strictly jurisdictional statute that provides a remedy for a limited category of international law violations recognized under the common law as it existed in 1789— acts of piracy, injury to ambassadors, and violations of obligations of safe conduct. 542 U.S. 692, 712 (2004). The Court did acknowledge that, in narrow circumstances, courts may recognize new causes of action under the ATS if the claim "rest[s] on a norm of international character accepted by the civilized world and defined with a specificity comparable to the features of the 18th century paradigms we have recognized." *Id*. at 725. But the Court was explicit that federal courts should maintain "vigilant doorkeeping" and exercise "great caution" when expanding the ATS' original scope. *Id*. at 728–29; *see also Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1246–47 (11th Cir. 2005) (same).

In *Kiobel*, the Supreme Court held that the ATS is subject to the presumption against extraterritoriality, a judicially created canon of statutory interpretation that assumes U.S. law does not apply outside of the United States. *See Kiobel v. Royal Dutch Petroleum Co.*, 569 U.S. 108, 124–25 (2013). The Court further held that, because of the presumption, an ATS claim may not reach conduct occurring exclusively in the territory of a foreign sovereign; ATS claims must "touch and concern the territory of the United States . . . with sufficient force to displace the presumption." *Id*. at 125. "[M]ere corporate presence" in the United States does not suffice. *Id*. In *Jesner*, the Court continued to narrow the ATS' scope, holding that foreign corporations are not proper defendants under the ATS at all. *Jesner*, 584 U.S. at 265.

In *Nestlé*, the Court held that plaintiffs' allegations that the defendants' financing decisions originated in the United States and that every major operational decision was made or approved in

38

the U.S. were insufficient to establish a domestic application of the ATS. *Nestlé USA, Inc. v. Doe*, 593 U.S. 628, 632 (2021). Citing *Kiobel* for the proposition that alleging "mere corporate presence" of a defendant in the United States is insufficient to overcome the presumption against extraterritoriality, the Court observed that "[n]early all the conduct that . . . aided and abetted forced labor—providing training, fertilizer, tools, and cash to overseas farms—occurred in Ivory Coast," and concluded that "plaintiffs must allege more domestic conduct than general corporate activity" to support a permissible application of the ATS. *Id*. at 634.

Currently, whether the ATS permits secondary liability is under review by the Supreme Court. *Doe I v. Cisco Systems, Inc.*, 73 F.4th 700 (9th Cir. 2023), *cert. granted*, --- S. Ct. ---, 2026 WL 73088, at *1 (Jan. 9, 2026) (No. 24-856, 2025 Term). There are numerous reasons why the Court—which has consistently narrowed the ATS' scope—will answer in the negative. For one, in civil contexts, aiding-and-abetting liability is the exception rather than the rule, and, because Congress makes such decisions on a statute-by-statute basis, the Supreme Court has called for "congressional direction" before it will conclude that civil liability extends to aiders and abettors. *Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 182–83 (1994).

Against this background, it is clear that Plaintiffs' ATS claim against Mr. Zhao must be dismissed.

**First**, the SAC does not plead sufficient domestic activity to displace the presumption against extraterritoriality. The Attacks occurred in Israel. The Plaintiffs asserting ATS claims are Israeli citizens. Hamas and PIJ are foreign actors. And the SAC does not plead that Mr. Zhao conducted any activity from within the United States. Plaintiffs' ATS claim is exactly the type of "foreign-cubed" claim barred under *Kiobel*—foreign plaintiffs seeking to hold a foreign defendant liable under the ATS for foreign conduct. 569 U.S. at 124; *see Doe v. Drummond Co.*, 782 F.3d

39

576, 585 (11th Cir. 2015) ("*Kiobel* precluded jurisdiction under the ATS with regard to a []
'foreign-cubed' action."). "On these facts" the presumption against extraterritoriality precludes
ATS jurisdiction and requires dismissal. *Id.*

As for BAM's U.S. conduct (which cannot be imputed to Mr. Zhao anyway, *see supra* §
II.), all that is plausibly alleged is that it operates a U.S.-based cryptocurrency exchange compliant
with U.S. regulations. (SAC ¶¶ 40–41, 202.) Such conduct—merely existing—is not enough to
outweigh the foreign locus of the tort. *Kiobel*, 569 U.S. at 124–25 (considering that "all the
relevant conduct took place outside the United States" and finding "mere corporate presence"
insufficient to support jurisdiction); *Nestlé*, 593 U.S. at 634 (finding that domestic "allegations of
general corporate activity" are insufficient to create statutory standing under the ATS). ATS
claims with far more relevant U.S. activity have been dismissed on extraterritoriality grounds. *See
Nestlé*, 593 U.S. at 634 (finding the presumption of extraterritoriality applied to plaintiffs' ATS
claim because they did "not draw a sufficient connection between the cause of action," which was
aiding and abetting forced labor overseas, and the alleged domestic conduct—making operational
decisions and originating financial agreements *from within the United States*).

**Second**, Plaintiffs do not rely on an adequate predicate for ATS liability. Only "self-
executing" treaties can "create obligations enforceable in the federal courts" and "establish the
relevant and applicable rule of international law" for ATS purposes. *Sosa*, 542 U.S. at 735. "A
treaty that provides that party states will take measures through their own laws to enforce its
proscriptions evidences its intent not to be self-executing." *Tel-Oren v. Libyan Arab Republic*,
726 F.2d 774, 809 (D.C. Cir. 1984). Here, none of the treaties cited by Plaintiffs are self-executing.
"[T]he Geneva Conventions are not self-executing." *Linder v. Portocarrero*, 963 F.2d 322, 332,
334 (11th Cir. 1992); *see also Estate of Amergi v. Palestinian Auth.*, 611 F.3d 1350, 1363 (11th

40

Cir. 2010) ("[A] violation of the Geneva Conventions does not establish a violation of the law of nations, which is required to maintain jurisdiction under the ATS."). Neither is the Rome Statute. *Abagninin v. AMVAC Chem. Corp.*, 545 F.3d 733, 738 (9th Cir. 2008). Neither is the International Covenant. *Sosa*, 542 U.S. at 735; *see also Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1247 (11th Cir. 2005) (affirming district court's dismissal of ATS claim)). Nor is the Convention Against Torture. *United States v. Casaran-Rivas*, 311 F. App'x 269, 272 (11th Cir. 2009).

Plaintiffs' reliance on customary international law also fails to constitute an adequate predicate. "Terrorism—unlike piracy, war crimes, and crimes against humanity—does not provide a basis for universal jurisdiction under customary international law." *In re Terrorist Attacks on September 11, 2001*, 714 F.3d 118, 125 (2d Cir. 2013) (cleaned up); *see also Nestlé*, 593 U.S. at 637 ("Decisions since *Sosa*, as well as congressional activity, compel the conclusion that federal courts should not recognize private rights of action for violations of international law beyond the three historical torts identified in *Sosa*."); *In re Chiquita Brands Int'l, Inc. Alien Tort Statute & S'holder Derivative Litig.*, 792 F. Supp. 2d 1301, 1317 (S.D. Fla. 2011) ("Plaintiffs thus attempt to group this broad, ill-defined class of conduct under the umbrella of 'terrorism,' or material support thereof, and create a cause of action against it under the ATS . . . . [T]his Court . . . reject[s] Plaintiffs attempt to categorize these broad claims as violations of the law of nations.").

**Third**, Plaintiffs plead no reason for this Court to abandon its "vigilant doorkeeping" to expand the ATS' original scope. *Nestlé*, 593 U.S. at 644. This is not an ATS claim based on "piracy, injury to ambassadors, and violations of obligations of safe conduct." And there are "sound reason[s] to think Congress might doubt the efficacy or necessity of the new remedy" Plaintiffs urge. *Id.* at 637. For one, Congress has already adopted a detailed regulatory regime

governing terrorism-related claims, the ATA, and it limits claims to American nationals. *See* 18 U.S.C. § 2333(a). And the Torture Victim Protection Act ("TVPA"), 28 U.S.C. § 1350, which is "the only cause of action under the ATS created by Congress rather than the courts," *Jesner*, 584 U.S. at 265, limits claims to those who act in an official capacity for a foreign nation—not terrorist organizations like Hamas and PIJ. These two statutes "suggest[] that there should be no common-law action under the ATS" for foreign citizens alleging harm from foreign acts of terrorism, and allowing Plaintiffs' ATS claim to proceed would allow them and others similarly situated to "bypass Congress' express limitations on liability under the [ATA and TVPA] simply by bringing an ATS lawsuit." *Id.* at 267–68.

The foreign policy implication of Plaintiffs' claim is another "sound reason" to decline jurisdiction. ATS claims require that plaintiffs plead state action, that the perpetrator "acted under color of law of a foreign nation." *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1267 (11th Cir. 2009). An exception applies for torture and murder claims (the "war crime exception"), but only when the underlying act was perpetrated in the course of war. *Id.* (declining to exercise jurisdiction over ATS claim noting that "[i]f the war crimes exception to the state action requirement permitted all non-state torture claims occurring during a period of civil disorder, federal courts would be open to lawsuits occurring during any period of civil unrest in a foreign country"). By requesting adjudication of their ATS claims, Plaintiffs ask this Court to weigh in on whether Hamas and PIJ operatives are state actors, whether Palestine and Gaza are states, and whether the Attacks constitute a "war." The Court should decline to follow "where that path leads us: directly into confrontation with the political branches." *Sosa*, 542 U.S. at 748.

**Last,** the SAC does not plead ATS aiding and abetting. Whether the ATS allows for secondary liability at all is currently under review by the Supreme Court, which, as explained

above, has historically taken a narrow view on the ATS' scope. *Doe I v. Cisco Systems, Inc.*, 73 F.4th 700 (9th Cir. 2023), *cert. granted*, --- S. Ct. ---, 2026 WL 73088, at *1 (Jan. 9, 2026) (No. 24-856, 2025 Term).  In any event, all of the reasons why aiding and abetting is not plausibly pleaded for Plaintiffs' ATA claim, *see supra* § IV.A, apply to their claim under the ATS.  *See Cabello v. Fernandez-Larios*, 402 F.3d 1148, 1158 (11th Cir. 2005) (requiring that the defendant  provided substantial assistance to the principal with the knowledge that it would assist the activity at the time the assistance was provided); *see also In re South African Apartheid,* 617 F. Supp. 2d 228, 269 (S.D.N.Y. 2009) ("supplying a violator of the law of nations with funds . . . is not sufficiently connected to the primary violation to fulfill the actus reus requirement of aiding and abetting a violation of the law of nations").

For one or all of these reasons, Plaintiffs' ATS claim against Mr. Zhao must be dismissed under Rule 12(b)(1) and 12(b)(6) with prejudice.

## CONCLUSION

The SAC fails to cure the same fundamental defect of its predecessors—it does not plausibly plead facts establishing a legal basis to hold Mr. Zhao liable for Attacks he neither participated in nor supported. This third attempt makes clear that this failure is not merely a pleading failure—it underscores the reality that ***there are no facts*** that satisfy the most basic pleading standards.  For these reasons, the SAC should be dismissed with prejudice.

43

44

Dated: May 26, 2026

Respectfully submitted,

*/s/ Joanna F. Wasick*

**BAKER & HOSTETLER LLP**

Joanna F. Wasick (admitted *pro hac vice*)
Marco Molina (admitted *pro hac vice*)
45 Rockefeller Plaza
New York, NY 10111
(212) 589-4200
jwasick@bakerlaw.com
mmolina@bakerlaw.com

*/s/ Charles A. Stewart III*

**BRADLEY ARANT BOULT CUMMINGS LLP**

Charles A. Stewart III (ASB-4955-A56C)
445 Dexter Avenue, Suite 9075
Montgomery, AL 36104
(334) 956-7700
cstewart@bradley.com

*Counsel for Defendant Changpeng Zhao*

## CERTIFICATE OF SERVICE

I hereby certify that on May 26, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

***Counsel for Plaintiffs***
Mark Goldfeder, Esq.
NATIONAL JEWISH ADVOCACY CENTER, INC.
1718 General George Patton Drive
Brentwood, TN 37027
mark@jewishadvocacycenter.org

Ben Schlager, Esq.
GOLDFEDER AND TERRY, LLC
666 Harless Place
West Hampstead, NY 11552
ben@goldfederterry.com

David Schoen, Esq.
LAW OFFICE OF DAVID I. SCHOEN
2800 Zelda Road, Suite 100-6
Montgomery, AL 36106
Schoenlawfirm@gmail.com

***Counsel for Defendant BAM Trading Services, Inc.***
Kenneth D. Sansom, Esq.
Michael T. Sansbury, Esq.
SPOTSWOOD, SANSOM & SANSBURY LLC
1819 5th Avenue North, Suite 1050
Birmingham, AL 35203
ksansom@spotswoodllc.com
msansbury@spotswoodllc.com

Athanasia "Thania" Charmani, Esq.
WINSTON & STRAWN, LLP
200 Park Avenue
New York, NY 10166-4193
acharmani@winston.com

***Counsel for Defendant BAM Trading Services, Inc. (cont.)***
Daniel T. Stabile, Esq.
WINSTON & STRAWN, LLP
200 S. Biscayne Boulevard, Suite 2400
Miami, FL 33131-5340
dstabile@winston.com

Gabriela "Gabie" Plasencia, Esq.
WINSTON & STRAWN, LLP
101 California Street, 21st Floor
San Francisco, CA 94111
gplasencia@winston.com

***Counsel for Defendant Binance Holdings Limited***
Harlan I. Prater IV, Esq.
Mary Parrish McCracken, Esq.
LIGHTFOOT FRANKLIN & WHITE LLC
400 20th Street North
Birmingham, AL 35203
hprater@lightfootlaw.com
mmcracken@lightfootlaw.com

Christopher N. LaVigne, Esq.
Joseph E. Gallo, Esq.
Alexander C. Haden, Esq.
WITHERS BERGMAN LLP
430 Park Avenue, 10th Floor
New York, NY 10022
Christopher.LaVigne@withersworldwide.com
Joseph.Gallo@withersworldwide.com
Alex.Haden@withersworldwide.com

*/s/ Joanna F. Wasick*
Joanna F. Wasick (admitted *pro hac vice*)